UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:23-cv-24251-FAM

WILLIAM FULLER, et al.,

    Plaintiffs,

v.

THE CITY OF MIAMI, et al.,

    Defendants.
_____/

### DEFENDANT YVONNE BAYONA'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

Defendant YVONNE BAYONA ("Bayona")[1] moves pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss Plaintiffs' Complaint [D.E. 1] for failure to state a claim upon which relief may be granted.

### INTRODUCTION

Plaintiffs filed a two count Complaint alleging that Code Enforcement Board Member Bayona, while acting in a quasi-judicial capacity, engaged in a vast conspiracy with other city officials to retaliate against the Plaintiffs for exercising free speech rights under the First Amendment. There are no allegations in the Complaint stating that Bayona was aware that the Plaintiffs engaged in alleged protected conduct under the First Amendment. Bayona was sued in her individual capacity even though the allegations in the Complaint clearly demonstrated that she was acting in her official capacity as a member of the City of Miami Code Enforcement Board. Compl. ¶ 278. The Complaint contains 384 paragraphs of salacious allegations of conspiracies between city officials to allegedly violate the constitutional rights of the numerous Plaintiffs who

---

[1] In their Complaint, the Plaintiffs misspelled Yvonne Bayona's first name as Ivonne.

did not engage as a group of any conduct protected under the U.S. Constitution. Out of the 384 paragraphs in the Complaint, Bayona's name was only mentioned *once* in this vast conspiracy. *Id.*

To demonstrate this so-called vast conspiracy, in the one paragraph the Plaintiffs allege that Bayona, at a publicly advertised Code Enforcement Board Hearing on April 27, 2022, **"argued that [Plaintiff] Fuller had to pay more than $400,000 in fines on the property, despite the fact it was only worth approximately $250,000. In the end, Fuller (who was in the exact same position as Mendez' husband who had his entire fine abated) was ordered to pay a fine of $85,000, which at the time, was unheard of." Compl. ¶ 278.** (emphasis added) Contrary to Plaintiffs' false allegations of vast conspiracy, the Code Enforcement Board, which Bayona is a member, reviewed a motion to mitigate fines in the amount of $857,400.00 filed by Plaintiff Little Havana Bungalows, LLC, not Plaintiff Fuller. In its order, the Court Enforcement Board reduced the fines from $857,400.00 to $85,740.00 based on the evidence at the hearing according to the Mitigation Order issued on April 27, 2022. The Mitigation Order is attached hereto as Exhibit "A". [2] If there was a conspiracy against the Plaintiffs, it was a conspiracy to benefit the Plaintiff by reducing the fines to ten percent (10%) of the total fine amount. That reduction is "unheard of" if the vast conspiracy was an actual conspiracy as asserted by the Plaintiffs.

In her motion to dismiss, Code Enforcement Board Member Bayona argues that (1) she is entitled to absolute quasi-judicial immunity for her conduct during a code enforcement board

---

[2] Defendant Yvonne Bayona respectfully requested that the Court take Judicial Notice of the Mitigation Order issued on April 27, 2022 for the property owned by Little Havana Bungalows, LLC. Judicial notice of the City's Mitigation Order is appropriate because such other complies with the requirements of Fed. R. Evid. 201. *Northwest Bypass Group v. U.S. Army Corps of Engineers*, 488 F. Supp. 2d 22 (D.N.H. 2007) (judicial notice of hearing date and zoning board's decision to deny variance request were appropriate); See also, *Newcomb v. Brennan*, 558 F. 2d 825, 829 (7th Cir. 1977) ("We hold that matters of public record such as state statutes, city charters, and city ordinances fall within the category of "common knowledge" and are therefore proper subjects for judicial notice").

hearing; and (2) that she is entitled to qualified immunity because the allegations in the Complaint failed to show that she violated a protected constitutional right.

Additionally, the City and the other Defendants have filed motions to dismiss the Plaintiffs' complaint. Defendant Bayona adopts and incorporates by reference all the arguments raised in the motions to dismiss filed by the City and the other Defendants in this case provided that the Court finds these arguments as a basis for dismissal of the Complaint. These arguments include, but are not limited to, the fact that the Plaintiffs failed to allege a claim under the First Amendment.

## I. LEGAL ANALYSIS

### A. STANDARD OF REVIEW FOR MOTION TO DISMISS

A Rule 12 (b)(6) motion to dismiss tests the sufficiency of the Complaint against the legal standard set forth in Rule 8 of Fed. Civ. P., which provides for a "a short and plain statement of the claims showing that the pleader is entitled to relief." In general, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face." *McGriff v. City of Miami Beach*, 522 F. Supp. 3d 1225, 1238 (S.D. Fla. 2020) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009)). Moreover, a plaintiff's claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard requires more than a sheer possibility that a defendant has acted unlawfully. Where the complaints plead facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. Determining whether a complaint states a plausible claim for relief is a context-specific undertaking that requires the court to draw upon its judicial experience and common sense." *Id.* at 1239.

While a motion to dismiss generally will be treated as a motion for summary judgment

under Federal Rules of Civil Procedure, if the district court considers matters outside the complaint, the "district court need not convert a motion to dismiss into one for summary judgment where the documents are (1) central to the plaintiff's claims and (2) undisputed." *McGriff v. City of Miami Beach*, 522 F. Supp. 3d 1225, 1239 (S.D. Fla. 2020) (citing *Day v. Taylor*, 400 F. 3d 1272, 1276 (11th Cir. 2005). To defeat a motion to dismiss against a Section 1983 claim, the "plaintiff must allege that a person acting under color of state law committed an act that deprived him of some right protected by the Constitution or laws of the United States." *Alcocer v. Mills*, 906 F. 3d 944, 950-51 (11th Cir. 2018). Here, as described below and in the other Defendants' motions to dismiss, the Plaintiffs failed to allege that Code Enforcement Board Member Bayona committed an act that deprived Plaintiffs of some right protected by the Constitution or laws of the United States.

Here, the only allegation that mentioned Bayona's name clearly does not rise to the level of a deprivation of constitutional rights. Compl. ¶ 278. As stated below, Bayona was merely exercising the discretionary authority she has as a member of the Code Enforcement Board.

**B. CODE ENFORCEMENT BOARD MEMBER BAYONA IS ENTITLED TO ABSOLUTE QUASI-JUDICIAL IMMUNITY**

It is well-established that [j]udges are entitled to absolute immunity from damages for those acts taken while they are acting in their judicial capacity unless they acted in the clear absence of all jurisdictions." *Sibley v. Lando*, 437 F. 3d 1067, 1070 (11th Cir. 2005) (quoting *Bolin v. Story*, 225 F. 3d 1234, 1239 (11th Cir. 2000)). Judicial immunity is designed to protect judges from personal liability "even when the judge's acts are in error, malicious, or excess of his or her jurisdiction." *Id.* Indeed, judicial immunity is "for the benefit of the public whose interest it is that judges should be at liberty to exercise their functions with independence and without fear of consequences." *Pierson v. Ray*, 386 U.S. 547, 554 (1967). While judicial immunity is designed to

provide judges with the liberty to make decisions without corrupt influence, the following factors must exist for judicial immunity to apply: "(1) the act complained of constituted a normal judicial function; (2) the events occurred in the judge's chambers in open court; (3) the controversy involved a case pending before the judge; and (4) the confrontation arose immediately out of a visit to the judge in her official capacity." *Sibley v. Lando*, 437 F. 3d 1067, 1070 (11th Cir. 2005).

In terms of non-judicial officials, the Eleventh Circuit has consistently held that judicial immunity not only applies to judges, but to other persons whose "official duties have an integral relationship with the judicial process." *Roland v. Phillips*, 19 F. 3d 552, 555 (11th Cir. 1994); *See also, Fuller v. Georgia State Bd. of Pardons and Paroles*, 851 F. 2d 1307 (1988) (holding that individual members of a state Parole Board are entitled to absolute quasi-judicial immunity from suit for damages filed by black inmates challenging the denial of parole). Quasi-judicial immunity derives from absolute judicial immunity. *Roland at* 19 F. 3d 552, 555 (11th Cir. 1994). Further, a court determines quasi-judicial immunity "through a functional analysis of the action taken by the official in relation to the judicial process." *Roland*, 19 F. 3d at 555. To clarify further, "[w]hen judicial immunity is extended to officials other than judges, it is because their judgments are functionally comparable to judges—that is, because they, too, exercise a discretionary judgment as a part of their function." *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 436 (1993).

The Eleventh Circuit has recognized that Code Enforcement Board proceedings under local and state law in Florida involved the exercise of discretionary judgment by board members or a special magistrate. *See Club Madonna Inc. v. City of Miami Beach*, 924 F. 3d 1370 (11th Cir. 2020) It is undisputed that the code enforcement hearing process in Florida has characteristics of a judicial proceeding to ensure the protection of the rights of property owners. *Lindbloom v Manatee County*, 800 Fed. Appx. 745 (2020). In describing the judicial characteristics of a code

enforcement proceeding, the Eleventh Circuit noted the following:

> Florida's Local Government Code Enforcement Boards Act was created to promote the health and safety of state citizens by creating administrative boards to impose administrative fines and other non-criminal penalties to provide an effective and inexpensive method of enforcing county and municipal codes and ordinances where a pending or repeated violation persists. Fla. Stat. §§ 162.02. A special magistrate has the same status as an enforcement board. ..§162.03(2). Enforcement is initiated by a code inspector who notifies the violator and gives him reasonable time to comply, and if the violation continues, the code inspector notifies special magistrate [or Code Enforcement Board] and requests a hearing.. …§162.06(2). At the hearing, the special magistrate [or the Code Enforcement Board] must take testimony from the code inspector and the alleged violator, and formal rules of evidence do not apply…§162.07(3). The special magistrate [or Code Enforcement Board] must issue findings of fact, conclusions of law, and an order affording the proper relief. § 162.07(4)………..An appeal of the administrative order may be taken within 30 days to the state circuit court, which must be limited to appellate review of the record created before the special magistrate [or Code Enforcement Board]. §162.11.

*Lindbloom v Manatee County*, 800 Fed. Appx. 745, 751 (2020). The process outlined above is the minimum process that local governments in Florida must provide to property owners in regulating the condition of private properties. This process has been adopted by numerous local governments, including the City of Miami. *See*, Section 2-811-2-830 of the City of Miami Code of Ordinances. Under the City's process, a violator is provided with the same rights outlined above in Florida's Local Government Code Enforcement Boards Act. Indeed, Florida state courts have recognized boards, like code enforcement boards, as quasi-judicial boards. *Rodriguez v. Tax Adjustment Experts of Florida, Inc.*, 551 So. 2d 537 (Fla. 3rd DCA 1989) (holding that the special master appointed by county property appraisal adjustment board was a quasi-judicial officer who was immune from taxpayers' suit); *Johansson v. Miami-Dade County Adjustment*, 346 So. 3d 90 (Fla. 3rd DCA 2022) (motion to dismiss was affirmed because the Value Adjustment Board was a quasi-judicial body and thus was entitled to quasi-judicial immunity from suit). The immunity from a lawsuit for members of a quasi-judicial board even extends where the board makes a

mistake. *Andrews v. The Florida Parole Commission,* 768 So. 2d 1257 (Fla. 2nd DCA 2000) (holding that quasi-judicial immunity applies even where board members committed an error in the release date of a prisoner).

In the instant case, the Plaintiff, who appeared before the Code Enforcement Board, was provided with the rights outlined in Florida's Local Government Code Enforcement Boards Act before the Code Enforcement Board. Nevertheless, Plaintiffs alleges that Bayona violated their constitutional rights because, at a Code Enforcement Hearing, she "argued that Fuller had to pay more than $400,000 in fines on the property." Complaint ¶ 278. On its face, this allegation does not rise to a violation of constitutional rights. More importantly, Bayona's alleged conduct, if true, was within the zone of protection for absolute quasi-judicial immunity to apply. Bayona was merely exercising the discretionary authority that she has as a member of the Code of Enforcement Board to state that a reasonable reduction of the fine amount was warranted based on the evidence of the case. Bayona's alleged statement to impose a fine of $400,000 against the property was not even adopted by the Code Enforcement Board as conceded by the Plaintiffs. *Id.* Since Plaintiffs' claim against Bayona is based on her actions during a code enforcement board hearing, Bayona is entitled to absolute quasi-judicial immunity.

### C. CODE ENFORCEMENT BOARD MEMBER BAYONA IS ENTITLED TO QUALIFIED IMMUNITY

Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Dalrymple v. Reno,* 334 F.3d 991, 994 (11th Cir. 2003) (*citing Hope v. Pelzer,* 536 U.S. 730, 739 (2002). Qualified immunity is meant to ensure that government officials are not afraid to fulfill their job-related

responsibilities. *Williams v. Consolidated City of Jacksonville,* 381 F.3d 1298, 1307 11th Cir. 2004). Essentially, the purpose of the doctrine of qualified immunity is to permit "officials to perform their duties, without the threat of civil liability, if they act in a lawful manner. It is immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Therefore, questions of qualified immunity should be resolved at the earliest possible stage in litigation. *Hunter v. Bryant,* 502 U.S. 224, 227 (1991). In order to be entitled to the qualified immunity defense, a government official must demonstrate that the acts complained of were committed within the scope of the officials' discretionary authority. *See, Kingsland v. City of Miami,* 382 F. 3d 1220, 1232 (11th Cir. 2004). A government official proves he acted within the purview of his discretionary authority by showing "objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of authority." *Hutton v. Strickland*, 919 F. 2d 1531, 1537 (11th Cir. 1990). "Once discretionary authority is established, the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity." *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003). "To overcome qualified immunity, the plaintiff must show that (1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *McGriff v. City of Miami Beach*, 522 F. Supp. 3d 1225, 1252 (S.D. Fla. 2020).

In this case, it is undisputed that Code Enforcement Board Member Bayona was acting within her discretionary authority during the code enforcement board hearing. The Plaintiffs allege that Bayona violated their constitutional rights at a Code Enforcement Hearing on April 27, 2022 by suggesting that "Fuller had to pay more than $400,000 in fines for the property." Compl. ¶ 278. The allegations in the Complaint fail to show that Bayona violated a clearly established constitutional right of any of the Plaintiffs. Even if the one allegation against Bayona is true, a

mere suggestion at a code enforcement hearing for a reasonable reduction of code enforcement fines against a property does not rise to the level of a Section 1983 violation. Bayona, like all code enforcement board members, had the discretionary right to review the code case and make a recommendation whether Plaintiffs agreed with the recommendation or not. More importantly, if Plaintiffs strongly believed that their constitutional rights were violated in proceedings before the Code Enforcement Board, they should have appealed the Code Enforcement Board's decision to the circuit court of the State of Florida instead of filing this frivolous claim in federal court against Bayona, who was merely carrying out her duties as a member of the Code Enforcement Board.

## II. CONCLUSION

For all the good and sufficient reasons stated above, the Court should grant Defendant Yvonne Bayona's motion to dismiss on the basis of absolute quasi-judicial immunity and qualified immunity. The Court should also dismiss Plaintiffs' Complaint based on the arguments asserted in the motions to dismiss filed by the City and other Defendants in this case.

Dated: January 26, 2024

                                                  Respectfully submitted:

                                                  s/ Hans Ottinot
                                                  *Counsel for Ivonne Bayona*

                                                  **Ottinot Law, P.A.**
                                                  5944 Coral Ridge Drive, PM#201
                                                  Coral Springs, FL 33076
                                                  Telephone: 786-202-1136
                                                  Fla. Bar No. 77577
                                                  Email: hans@ottinotlawpa.com

## CERTIFICATE OF SERVICE

I certify that on January 26, 2024, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify that this document is being served today on all counsel of record by transmission of Notices of Electronic Filing generated by CM/ECF.

By: s/ *Hans Ottinot*
HANS OTTINOT

# City of Miami

THE CITY OF MIAMI, FLORIDA

vs.

LITTLE HAVANA BUNGALOWS LLC

Date: April 27, 2022

Case No.: CE2013020301

Property Address: 28 NW 10 AV

## MITIGATION ORDER

THIS CAUSE having been brought before the City of Miami Code Enforcement Board, by the violator's Motion to Mitigate Fines, on April 27, 2022, and after hearing the arguments of both parties and being otherwise fully advised, it is hereby ORDERED AND ADJUDGED that the fine in this matter in the amount of $857,400.00 is to be mitigated to $ 85740.00 . The City of Miami will release the recorded lien against the above mentioned property provided that:

(1) The above mentioned property has been brought into full compliance pursuant to the City of Miami Code and Ordinances and the Florida Building Code.
(2) A single payment or installment payments are made to the City of Miami, satisfying the mitigated fine. Should the payment be made in installments, the principal balance will accrue interest at the maximum statutory rate for which the violator will be liable. Additionally, any balance, which remains unpaid for thirty (30) days from the date of this order, shall accrue interest. Payments should be made to the City of Miami, C/O Department of Finance, 444 SW 2nd Avenue, 6th Floor, Miami, FL 33130.

- Installment Payments within a two (2) year period.
- _____.

Once the payment is made in full with the Finance Department, a Release of Lien will be executed by Hearing Boards. Should the violator fail to make payment arrangements within twenty (20) days of receipt of this Mitigation Order, this Order will be void and the original amount in fines shall be reimposed against the above mentioned subject property, less any sums previously paid. Should the violator fail to sign and return this Mitigation Order within thirty (30) days of receipt, this Order will be void and the original amount in fines shall remain as a lien on the above mentioned subject property. Should the violator enter into a payment plan with the City of Miami and miss a scheduled payment, this Order will be void and the original amount in fines shall be reimposed against the above mentioned subject property, less any sums previously paid. Furthermore, the City of Miami may elect to proceed with foreclosure on its lien against any real or personal property owned by the violator. Nothing in this order will waive the City's right to collect any additional surplus funds held by the Clerk of Court which may be a result of a foreclosure and/or tax deed sale. Any partial payments previously collected by the City, shall be retained by the City and not contemplated in the mitigation order executed hereto.

_____
Code Enforcement Board Chairperson

AGREED AND ACCEPTED:

Print Name: Coral López

Signature: Corel L...

Address: 28 NW 10 AV

Date: April 27, 2022

Officially filed and rendered on April 27, 2022 in the records of the City of Miami, Hearing Boards



EXHIBIT A