UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 23-CV-24251-FAM

WILLIAM O. FULLER, *et al.*,

    Plaintiffs

v.

CITY OF MIAMI, *et al.*

    Defendants.

_____/

**DEFENDANT ASAEL MARRERO'S MOTION TO DISMISS**

Defendant Asael Marrero, pursuant to Fed. R. Civ. P. 12(b)(6), moves to dismiss the Amended Complaint [D.E. 77] for lack of subject matter jurisdiction and failure to state a claim for which relief can be granted.

**Introduction**

Mr. Marrero is the Director of the City of Miami's Building Department. The Building Department enforces codes and regulations governing the construction, alteration, and maintenance of commercial and residential buildings and structures within the City. Messrs. Fuller and Pinilla, along with a group of companies they control (the "Entity Plaintiffs") bring this § 1983 action against Mr. Marrero, claiming First Amendment retaliation based on actions taken by Mr. Marrero as Director of the City's Building Department.

But Plaintiffs already had their day in court on the same issues they complain about here. Messrs. Fuller and Pinilla brought a nearly identical § 1983 action against Defendant Carollo in this District, asserting that Mr. Carollo violated their First Amendment rights to free speech and freedom of association ("*Fuller I*"). *Fuller I* was tried to a jury, which awarded Messrs. Fuller and Pinilla $63 million in compensatory and punitive damages, and final judgment was entered against Mr. Carollo. And there is no question that *Fuller I* is central to this case—it is expressly referred

to numerous times in the Amended Complaint, and testimony from *Fuller I* and the final judgment entered in that prior case is the subject of the Amended Complaint's first two pages. And Plaintiffs pepper the Amended Complaint with exhibits from *Fuller I*. Because *res judicata* bars Plaintiffs' claims here, the Amended Complaint should be dismissed with prejudice.

Equally fatal to Plaintiffs' claims is the fact that Mr. Marrero, as a public official, is entitled to qualified immunity. The Amended Complaint should be dismissed with prejudice on that independent ground as well.

The Amended Complaint suffers from additional flaws. For example, the Amended Complaint remains a textbook example of shotgun pleading, it fails to state a claim for First Amendment retaliation, and it fails to state a claim for conspiracy. Each of these provide a separate basis for dismissal.

This is a case involving multiple defendants, each of whom is filing a motion to dismiss that raise similar factual and legal issues. In the interest of judicial economy, this Motion endeavors to focus on allegations specific to Mr. Marrero and, where appropriate, will incorporate by reference factual discussion and legal analysis from other Defendants' motions.

## Factual Allegations Relating to Asael Marrero

Mr. Marrero is the City's Building Director and has been sued in his individual capacity. Am. Compl., ¶ 23. The allegations in the Amended Complaint that mention Mr. Marrero are few.

First, Plaintiffs allege that on May 27, 2020, Mr. Marrero wrote (presumably to his staff) that, after a "lengthy meeting" with the City Manager Arthur Noriega, the City Attorney's office, and Adele Valencia about Plaintiff William Fuller, Mr. Noriega wanted Mr. Marrero and his staff to "revise and update our policies to be more stringent when it comes to work without permit, clearly define what are unsafe conditions, and shut down all structures that don't comply." *Id.*, ¶

2

82. Plaintiffs also allege that Mr. Marrero wrote that he wanted to spend the next day "brainstorming about these issues" and that they needed to "circle back" with Rachel Dooley "if we need to update any of our ordinances" and have a "follow up meeting" with Mr. Noriega "to provide an update on these issues." *Id.,* ¶ 83.

Second, Plaintiffs allege that Mr. Marrero "carried out orders of Carrollo, Noriega and Dooley to draft and revise City policies and ordinances in order to shut down plaintiffs' business" and "changed the City's policy in a discriminatory manner" to mainly impact Plaintiffs. *Id*. ¶ 138.

Throughout the balance of the Amended Complaint, Plaintiffs group Mr. Marrero with other defendants in their conclusory allegations of purported constitutional violations.

## Legal Standards Governing Motions to Dismiss

The pleading requirements of Federal Rule of Civil Procedure 8 and the standards governing motions to dismiss under Rule 12(b)(6) are well known, and Marrero incorporates and adopts by reference the "Legal Standard" section of Defendant Mendez's Motion to Dismiss.

Regarding Mr. Marrero's motion to dismiss based on *res judicata*, resolution of that issue will require the Court to consider documents from *Fuller I*. Documents referenced in a complaint, even if not physically attached, can be considered on a motion to dismiss without converting it into a motion for summary judgment if the documents are central to the complaint and their authenticity is undisputed. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2006); *Madura v. Bank of America, N.A.*, 767 F. App'x 868, 870 (11th Cir. 2019) (where complaint outlined plaintiffs' prior lawsuits, claims arose out of prior litigation conduct, and attached some record excepts from prior litigation, district court properly considered prior orders without converting motion to dismiss to motion for summary judgment).

Alternatively, and particularly in the context of a motion to dismiss based on *res judicata*, a district court may, pursuant to Federal Rule of Evidence 201, take judicial notice of court documents from a plaintiff's first case without converting the motion into a motion for summary judgment. *Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010) (affirming dismissal on *res judicata* grounds and holding that district court "properly took judicial notice of the documents in Horne's first case, which were public records that were not subject to reasonable dispute because they were capable of accurate and ready determination by resort to sources whose accuracy could not reasonably be questioned") (internal quotations and citation omitted). *See also Smith v. Sec'y of Veterans Affairs*, 808 F. App'x 852 (11th Cir. 2020) (district court could take judicial notice of prior court orders referenced in motion to dismiss based on *res judicata* without converting motion into one for summary judgment, as court orders were "public record, known within the trial court's jurisdiction").

Attached as exhibits to this Motion are the following records (organized in docket entry order) from *Fuller I*:[1]

Exhibit 1 – *Fuller I* Amended Complaint, D.E. 43;
Exhibit 2 – *Fuller I* Second Amended Complaint, D.E. 125;
Exhibit 3 – *Fuller I* June 1, 2023, Final Judgment, D.E. 479;
Exhibit 4 – *Fuller I* Trial Exhibit 304, D.E. 506-4;
Exhibit 5 – Excerpt, *Fuller I* Trial Day 10 Transcript, D.E. 555;
Exhibit 6 – Excerpt, *Fuller I* Trial Day 19 Transcript, D.E. 564;
Exhibit 7 – *Fuller I* Trial Exhibit 602, D.E. 506-7.
Exhibit 8 – Excerpt, *Fuller I* Trial Day 22 Transcript, D.E. 567; and
Exhibit 9 – Excerpt, *Fuller I* Trial Day 23 Transcript, D.E. 568.

Mr. Marrero respectfully requests that the Court consider these exhibits in connection with his *res judicata* argument pursuant to the centrality/authenticity rule articulated in cases like *Day* and

---

[1] Some of these documents are also attached as exhibits to Defendants' Request for Judicial Notice, which is filed on behalf of all Defendants in this action, including Marrero. They are attached separately to this Motion for ease of reference.

4

*Madura*. *Fuller I* is indisputably central to Plaintiffs' claims in this case—indeed, the introductory pages of the Amended Complaint discuss trial testimony from and the final judgment entered in *Fuller I*, and the Amended Complaint contains trial exhibits admitted into evidence during *Fuller I*. Nor can there be a dispute about the authenticity of pleadings, the official transcript, and the final judgment filed in the public docket in *Fuller I*. Alternatively, Marrero requests that the Court take judicial notice of these public records pursuant to cases like *Horne* and *Smith*.

## Argument

### I. Plaintiffs' Claims Are Barred By Res Judicata and Should Be Dismissed With Prejudice.

Plaintiffs' claims are barred entirely by *res judicata*. In 2018, Plaintiffs Fuller and Pinilla filed a nearly identical action in this District that asserted that Defendant Carollo violated 42 U.S.C. § 1983 and Messrs. Fuller and Pinilla's First Amendment rights to free speech and freedom of association (*Fuller I*). In their Amended Complaint in *Fuller I*, Plaintiffs named as defendants "John Doe 1-10," identifying them as "employees of the City of Miami and others whose identities and exact roles are currently unknown, but who willingly and materially assisted Carollo in his campaign of harassment, political retribution and First Amendment retaliation directed against the Plaintiffs." Exhibit 1, *Fuller I* Am. Compl., ¶ 7, D.E. 43. These unnamed City employees were dropped as defendants when Plaintiffs filed their Second Amended Complaint in *Fuller I*. Exhibit 2, *Fuller I* Second Am. Compl., D.E. 125. Moreover, in *Fuller I*, Fuller and Pinilla alleged that all claims by entities associated with them had been assigned to Fuller and Pinilla in their individual capacities. *Id.*, ¶¶ 111, 207, 298. On June 1, 2023, the jury in *Fuller I* found Carollo liable and awarded Fuller and Pinilla $63.5 million in compensatory and punitive damages. The court entered its final judgment that same day. Exhibit 3, *Fuller I* Final Judgment, D.E. 479.

In this case, Messrs. Fuller and Pinilla and the Entity Plaintiffs bring this § 1983 action against Carollo, the City of Miami, and various now-named City officials, including Mr. Marrero, asserting that the Defendants violated Plaintiffs' right to free speech and freedom of association. As discussed in more detail below, this case is all but identical to the issues and claims tried to the jury in *Fuller I*. The Amended Complaint in this case expressly refers to the trial and verdict in *Fuller I*. *See, e.g.*, Am. Compl., pp. 1–2. And, as Plaintiffs told this court at the February 2, 2024, hearing, the main difference between *Fuller I* and this case are the addition of new parties to the claims previously brought in *Fuller I*.

"The doctrine of *res judicata* bars the filing of claims which were raised or could have been raised in an earlier proceeding." *Dixon v. Bd. of Cty. Com'rs Palm Beach Cnty., Fla.*, 518 F. App'x 607, 609 (11th Cir. 2013). *Res judicata* applies when four elements are present:

(1) there is a final judgment in a prior suit on the merits;
(2) the decision in the prior suit is rendered by a court of competent jurisdiction;
(3) the prior suit involved the same parties, or those in privity with them; and
(4) both suits involve the same cause of action.

*O'Connor v. PCA Fam. Health Plan, Inc.*, 200 F.3d 1349, 1355 (11th Cir. 2000). And as explained by the Eleventh Circuit, *res judicata* not only bars the claims brought in the prior suit but also those claims that a plaintiff could have raised in the prior suit as long as they arise "out of the same nucleus of operative fact as the former action." *Id.* at 1356. *See also Maldonado v. U.S. Att'y Gen.*, 664 F.3d 1369, 1376 (11th Cir. 2011) ("*Res judicata* applies not only to the precise legal theory presented in the previous litigation, but to all legal theories and claims arising out of the same operative nucleus of fact.") (internal quotation marks and citation omitted).

Marrero incorporates and adopts by reference Defendants Carollo and Mendez's arguments regarding the first two elements of *res* judicata—there is a prior final judgment on the merits by a court of competent jurisdiction—in their respective Motions to Dismiss.

Regarding the third element—*Fuller I* involve the same parties or their privies—the only difference between this case and *Fuller I* is that Fuller and Pinilla have added the Entity Plaintiffs (which are their wholly owned entities) and additional defendants (who are other City of Miami officials and employees).  Mr. Marrero incorporates and adopts by reference Defendant Carollo's and Defendant City of Miami's arguments in their respective Motions to Dismiss as to Fuller and Pinilla being in privity with the Entity Plaintiffs.  And Mr. Marrero incorporates and adopts by reference Defendant Mendez's argument in her Motion to Dismiss as to City of Miami officials being in privity with Carollo, who was the defendant in *Fuller I*, for purposes of *res judicata*.  *See also Muhammad v. Sec'y Fla. Dept. of Corrections*, 739 F.3d 683, 689 (11th Cir. 2014); *Estevez v. Nabers*, 218 F.2d 321, 323 (5th Cir. 1955) ("The fact that the defendant is a different person in the present action does not affect the availability of the plea of *res judicata*, since the government, its officers, and its agencies are regarded as being in privity for such purposes.")[2]

But even without privity, Plaintiffs cannot avoid application of *res judicata* because the Eleventh Circuit holds that "a party may not avoid the application of *res judicata* by adding new parties" where the claims against the new defendants "could and should have been brought" in the prior action.  *Ardis v. Anderson*, 662 F. App'x 729, 732 (11th Cir. 2016) (quotation marks and citation omitted).  To the extent Plaintiffs seek to avoid *res judicata* by naming new defendants here, that "effort, to put it mildly, is duplicitous and to no avail." *Id.*  Mr. Marrero incorporates and adopts by reference the discussion of *Destin v. Brooks*, 2023 WL 6340279 (S.D. Fla., Apr. 13, 2023) in Defendant Mendez's Motion to Dismiss.  *See also*, *Makozy v. Westcor Land Title*, 2022

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

WL 2758368, at * 2 (S.D. Fla., Apr. 5, 2022) (applying *Ardis* and finding that adding new defendant "does not transform the present case into a new lawsuit.")

And Plaintiffs admit that the difference between *Fuller I* and this action is the simply the addition of new parties:

> THE COURT: Okay. Mr. Gutchess, what's new in this Complaint before me that you didn't get a chance to bring up in front of the jury in front of Judge Smith?
>
> MR. GUTCHESS: The main issue, Your Honor, is the different parties.

*Status Conference Hearing (February 2, 2024)* Transcript, at 35:4-9.

Turning to the final element of *res judicata*—both suits involve the same cause of action—the facts and claims alleged in this Amended Complaint mirror those made in *Fuller I*. Mr. Marrero incorporates and adopts by reference Defendant Carollo's and Defendant City of Miami's arguments on this issue in their respective Motions to Dismiss.

Additionally, the record in *Fuller I* establishes that the allegations at issue in this case that relate to Mr. Marrero were presented to and considered by the jury in that case. As noted at the outset of this Motion, Plaintiffs allege that Mr. Marrero took part in Carollo's targeting of Plaintiffs because:

> (1) at the request of other City officials, Mr. Marrero spent the day reviewing City policies/ordinances to determine if they needed to be made more stringent regarding work without a permit, more clearly define what are unsafe conditions, and shut down noncomplying structures; and
>
> (2) Mr. Marrero drafted and revised City policies and ordinances and enforced policies in a manner that targeted Messrs. Fuller and Pinilla.

But Mr. Marrero's alleged actions directed against the Plaintiffs at the behest of Mr. Carollo were part of the trial in *Fuller I*. Indeed, during their closing argument in *Fuller I*, Plaintiffs told the jury:

8

> After Joe Carollo's election, nothing would ever be the same for Mr. Fuller and Mr. Pinilla in Miami. Commissioner Carollo has inflicted a relentless five and a half year campaign of a political payback against Bill Fuller and Martin Pinilla *which continues to this day*, and only you can put an end to this.
>
> …
>
> Once Joe Carollo was able to get an obedient city manager in Art Noriega who he had known for 22 years and an obedient Zoning Director in Dan Goldberg who worked for the city attorney for many years and Carollo's private attorney, Mr. Marc Sarnoff, *and an obedient Building Director in Ace Marrero who had his team pursue the Carollo investigation, . . . and execute on his plan to shut down Ball & Chain and Taquerias and seek to demolish plaintiffs' properties.*
>
> You heard Mr. Fuller testify that he was forced to sign Compliance Agreements without a lawyer reviewing them or else the city would demolish his buildings just like they did with the historic 100-year old little casita that you have seen. And, of course, Mr. Fuller signed because he wanted to protect his properties and keep them from being demolished.
>
> …
>
> A mountain of evidence of First Amendment retaliation will lead you to Joe Carollo. For five and a half years, Carollo has maliciously abused his power as a commissioner by weaponizing the City of Miami against Mr. Fuller and Mr. Pinilla, the police department, the fire department, the Code Department, the Legal Department, *the Building Department*, all weaponized against these two individual men. It's been relentless. You've seen it.
>
> …
>
> Ace Marrero, who sent text messages about how the city manager mandated they shut down plaintiffs' businesses and *spend an entire day during COVID finding a way to make laws to shut down plaintiffs['] businesses*.

Exhibit 9, Excerpt, *Fuller I* Trial Day 23 Transcript, D.E. 568 at 34:14-19; 38:16–39:5; 39:19–40:1; 59:18–21 (emphasis added).

During trial, Plaintiffs called Mr. Carollo in their case-in-chief and, among other things, elicited testimony from him regarding the properties owned by the Entity Plaintiffs. As set out below, Plaintiffs' counsel examined Mr. Carollo regarding Trial Exhibit 304, which lists a number of properties owned by the Entity Plaintiffs. Exhibit 4, *Fuller I* Trial Exhibit 304, D.E. 506-4.

9

> MR. GUTCHESS: Your Honor, we'd like to show Exhibit 304 which has already been admitted into evidence.
> THE COURT: All right. Maybe you can enlarge that so
> Mr. Carollo can see it.
> BY MR. GUTCHESS:
> Q. And, Mr. Carollo, Mr. Miro testified that this was a list of properties owned by the plaintiffs that you had prepared and had given him to make copies of. And what I want to ask you, if you could look over to the right hand side of this, do you recognize all those companies, the property search owner as properties belonging to the plaintiffs?
> A.  Not all, but a lot of them.

Exhibit 5, Excerpt, *Fuller I* Trial Day 10 Transcript, D.E. 555 at 19:11-23.  Subsequently, the court ruled that any property brought up by Plaintiffs during their examination was at issue and properly subject to rebuttal by Mr. Carollo.  Exhibit 6, Excerpt, *Fuller I* Trial Day 19 Transcript, D.E. 564 at 55:4–12; 55:17–20. During the cross-examination of Mr. Marrero, Plaintiff introduced Plaintiff's Exhibit 602, Exhibit 7, which is reproduced in ¶77 of the Amended Complaint here, and examined Mr. Marrero about it, Exhibit 6. *Fuller I* Trial Day 19 Transcript D.E. 564 at 135:24-137:18. The exhibit is allegedly a list of properties being targeted. The court later granted Plaintiffs' *ore tenus* motion to conform the pleadings to the evidence presented at trial.  Exhibit 8, Excerpt, *Fuller I* Trial Day 22 Transcript, D.E. 567 at 125:11–16.[3]

Given Plaintiffs' own presentation of evidence and argument to the *Fuller I* jury, there should be no serious dispute that the allegations against Mr. Marrero in this case arise out of the same nucleus of operative facts as the conduct and claims already litigated to final judgment in *Fuller I*.

---

[3] Exhibits 304 and 602 account for the properties at issue in Counts I, II, III, V, VI, VII, VIII, X, XI, XII, and XIII. Count IX is brought by Viernes Culturales, which was also an issue in *Fuller I* (Exhibit 2, Second Am. Compl. ¶¶ 216–24). Count IV relates to a property that is not listed in Exhibits 304 and 602 but alleges actions occurring in April, 2022.  Count XIV relates to a property that the City already purchased and demolished.  Count XV is by the management company, and it realleges all prior counts, as does the count by the individual Plaintiffs (Count XVI) and the count for conspiracy (Count XVII).

Because Plaintiffs' claims against Marrero are barred by *res judicata*, the Amended Complaint should be dismissed with prejudice.

## II. Marrero Is Entitled to Qualified Immunity.

Like other government officials sued in their individual capacity, Mr. Marrero is entitled to qualified immunity from liability as long as his conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Bldg. Empowerment by Stopping Trafficking, Inc. v. Jacobo*, 2013 WL 5435729, at *1 (S.D. Fla. Sept. 27, 2013) (quotation and citation omitted). On this issue, Mr. Marrero incorporates and adopts by reference the legal standards and discussion of qualified immunity set out in Defendant Mendez's Motion to Dismiss. Under those standards, Mr. Marrero is entitled to qualified immunity because he was acting in his discretionary role as the City's Building Director and because he was not on notice that his conduct as Building Director would violate a "clearly established" right.

First, Mr. Marrero was acting within his discretionary function as the Building Director when:

> (1) at the request of other City officials, Mr. Marerro spent the day reviewing City policies/ordinances to determine if they needed to be made more stringent regarding work without a permit, more clearly define what are unsafe conditions, and shut down noncomplying structures; and
>
> (2) at the behest of Mr. Carollo, Mr. Marrero, with other defendants, crafted policies, "passed ordinances," and enforced policies in a manner that improperly targeted Messrs. Fuller and Pinilla, or some variation thereof.

Revising City ordinances and policies—and here Plaintiffs allege that the revisions would strengthen and clarify the City's policies—was at least within the outer perimeters of Marrero's official duties as Building Director. The same is true for Mr. Marrero's application of the City's ordinances and policies. The inquiry here "is not whether it was within the defendant's authority to commit the allegedly illegal act [but i]nstead, a court must ask whether the act complained of,

if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties." *O'Boyle v. Sweetapple*, 2015 WL 13574304, at *11 (S.D. Fla. June 4, 2015). All acts allegedly take by Mr. Marrero were in his capacity as City Building Director and, if done for a proper purpose, constitute the kind of building, health, and safety decisions that are within or reasonably related to Mr. Marrero's discretionary duties.

Second, Marrero did not violate a clearly established right. Plaintiffs cannot show that Marrero should have known that that performing job-related functions as the City Building Director, such as strengthening and clarifying City policies or determining when a property owner has failed to meet the requirements of a City's building ordinances, would violate the Constitution or somehow deter somebody in Plaintiffs' position of ordinary firmness from exercising his First Amendment rights. Plaintiffs do not allege that Mr. Marrero harbored any personal animus against the Plaintiffs, nor do they allege that Mr. Marrero even knew that Plaintiffs were purporting to exercise their constitutionally protected speech rights. Plaintiffs cannot establish that Mr. Marrero's actions clearly and obviously violated Plaintiffs' First Amendment rights. Nor can Plaintiffs point to any specific precedent on point putting Mr. Marrero on notice that his actions violated their constitutional rights.

This case is barred by qualified immunity as against Marrero and should be dismissed with prejudice.[4]

---

[4] To the extent Plaintiffs allege that Mr. Marrerro—the Director of the Building Department—had a role in "passing ordinances," he is entitled to absolute immunity. *Bogan v. Scott-Harris*, 523 U.S. 44, 55, 118 S.Ct. 966, 973 (1998) ("officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions.")

### III. Plaintiffs Fail to State a Claim for First Amendment Retaliation.

To state a claim for First Amendment retaliation, each Plaintiff must plead: "(1) [the plaintiff] engaged in constitutionally protected activity; (2) the defendant's responsive actions were motivated or substantially caused by the exercise of that right, i.e., there was a causal connection between the protected activity and the retaliatory action; and (3) the defendant's retaliatory actions were sufficient to deter a person of ordinary firmness from exercising his or her constitutional rights, i.e., the defendant's actions effectively chilled the exercise of the plaintiff's First Amendment right." *Lozman v. City of Riviera* Beach, 39 F. Supp. 3d 1392, 1405 (S.D. Fla. 2014) (citations omitted). Here, the Amended Complaint fails to identify what constitutionally protected speech each of the Entity Plaintiffs engaged in and therefore fails to state a claim. Regarding this issue, Mr. Marrero incorporates and adopts by reference the argument on this point set forth in Defendant Carollo's Motion to Dismiss Motion to Dismiss.

In addition, and a separate but related basis for dismissal for failure to state a claim, the Amended Complaint does not allege that Mr. Marrero had a retaliatory animus that was the but-for cause of any alleged adverse action against any of the Plaintiffs, Individual or Entity. Plaintiffs have therefore failed to state a claim against Mr. Marrero for First Amendment retaliation, and Marrero incorporates and adopts by reference the argument on this point set forth in Defendant Mendez's Motion to Dismiss.

Moreover, Counts I-XV contain the following conclusory statement "[Plaintiff Entity] was targeted for its association with Plaintiffs Fuller and Pinilla, by which Defendants violated its rights to free speech, association and assembly, and to petition the government for redress of grievances." *See Am. Compl.*, ¶¶190, 244, 283, 295, 331, 346, 391, 427, 483, 515, 549, 577, 588, 606, 617. Those conclusory allegations are insufficient to survive a motion to dismiss. *Ashcroft v. Iqbal*, 566

U.S. 602, 678, 129 S.Ct 1937, 173 L. Ed. 2d 868 (2009) ("To survive a motion to dismiss…[t]threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.")

Further, if the Entity Plaintiffs are attempting to allege a violation of their right to freedom of association, they miss the mark. Freedom of association protects expressive association and intimate association.[5]

Expressive association is the "freedom to associate for the purpose of engaging in activities protected by the First Amendment such as speech, assembly, petition for redress of grievances, and the exercise of religion…" *Id.* The Entity Plaintiffs were not formed nor did they associate with their owners for expressive association, and there are no allegations claiming that they did. Thus, the Entity Plaintiffs fail to state a claim under 42 U.S.C. §1983.

IV. **The Amended Complaint Violates Multiple Prohibitions Against Shotgun Pleadings.**

The Court instructed the Plaintiffs to file an Amended Complaint to correct the improper grouping of Defendants by alleging what each defendant did "as opposed to putting it all together." The Amended Complaint, however, remains a shot gun pleading.

Rather than alleging a claim against each Defendant or alleging what each Defendant did in a claim brought against multiple Defendants, Plaintiffs simply listed out the names of numerous defendants in each claim, but failed to allege what each defendant actually did. For example, although the word "Defendants" in the Initial Complaint was replaced with the words "Defendants the City of Miami, Carollo, Noriega, Mendez and Marrero," Plaintiffs still fail to tell Mr. Marrero

---

[5] Intimate association does not apply because it protects "the freedom to choose to enter into and maintain certain intimate human relationships," such as marriage. *See, McCabe v. Sharret*, 12 F.3d 1558, 1563 (11th Cir. 1994).

what he did (as opposed to any of the other listed parties) in violation of the law. *See, e.g.* Count VI, ¶347. Moreover, as to Counts XV, XVI and XVII Plaintiffs do not even attempt to list out individual defendants but instead return to their already-rejected approach of asserting claims against "All Defendants". Mr. Marrero incorporates and adopts by reference those parts of the Carollo Motion to Dismiss and the Mendez Motion to Dismiss that address shotgun pleadings.

Additionally, the Amended Complaint is also a shotgun pleading under the first category identified in *Weiland* — "a complaint containing multiple counts, where each count adopts the allegations of the preceding counts." *Weiland v. Palm Beach Cty. Sheriff's Off.*, 792 F.3d 1313, 1321 n.9 (11th Cir. 2015). In the first paragraph of Counts XV, XVI, and XVIII, Plaintiffs impermissibly reallege all previous paragraphs and proceeding counts of the Amended Complaint. The Amended Complaint's multiple pleading deficiencies require dismissal.

### V. Count XVII Is Barred By the Intracorporate Conspiracy Doctrine and, Additionally, Fails to State a Claim.

Count XVII is barred pursuant to the intracorporate conspiracy doctrine as applicable to public entities and their employees. Regarding this point, Mr. Marrero incorporates and adopts by reference the arguments set forth in Defendant Mendez's Motion to Dismiss. Mr. Marrero notes that Plaintiffs allege that he was employed by the City of Miami "at all relevant times." Am. Compl., ¶ 23. Count XVII must be therefore be dismissed with prejudice for failure to state a claim.

Additionally, Count XVII fails to state a claim because the existence of a conspiracy is vaguely alleged with insufficient specificity as to Defendants, who (as noted elsewhere) Plaintiffs improperly lumped together in the Amended Complaint. Mr. Marrero incorporates and adopts by reference the argument on this point in Defendant City of Miami's Motion to Dismiss.

**VI.     Plaintiffs Have No § 1983 Claim Because Their Amended Complaint Alleges that the City's Enforcement Actions Were Justified.**

Marrero incorporates and adopts by reference the arguments on this point in Defendant Carollo's Motions to Dismiss. Indeed, the allegations that mention Mr. Marrero deal principally with properties that were in violation of the law.

**VII.    Plaintiffs' Claims for Acts Taken On or Before November 6, 2019, Are Barred by the Statute of Limitations.**

To the extent Plaintiffs seek to impose liability on Mr. Marrero based on acts that occurred beyond the four-year limitations period applicable to § 1983 claims (whether individually or via a theory of conspiracy liability). Marrero incorporates and adopts by reference the arguments on this point in Defendant Carollo's Motion to Dismiss.

## Conclusion

For the foregoing reasons, Defendant Asael Marrero respectfully requests that the Court dismiss the Amended Complaint.

## Request for Hearing

Pursuant to Local Rule 7.1(b)(2), Mr. Marrero requests a one-hour hearing on his motion to dismiss. The motion raises numerous complex issues and a hearing would be beneficial to address those issues.

Dated: February 29, 2024.

                                                Respectfully submitted,

                                                DORTA LAW
                                                334 Minorca Avenue
                                                Coral Gables, Florida 33134
                                                Telephone:  305-441-2299
                                                Telecopier:  305-441-8849
                                                mrd@dortalaw.com
                                                sgutierrez@dortalaw.com

By:  */s/ Matias R. Dorta*
 Matias R. Dorta
 Florida Bar No. 770817
 Gonzalo R. Dorta
 Florida Bar No. 650269

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on February 29, 2024, I electronically filed the foregoing with the Clerk of the Court using CM/ECF. Copies of the foregoing document will be served on all parties via transmission of Notice of Electronic Filing generated by CM/ECF.

*/s/ Matias R. Dorta*
Matias R. Dorta, Esq.
Florida Bar No. 770817
Gonzalo R. Dorta
Florida Bar No. 650269