UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 1:23-cv-24251-FAM

WILLIAM FULLER, et al.,

    Plaintiffs,
v.

THE CITY OF MIAMI, et al.,

    Defendants.
_____/

## DEFENDANT YVONNE BAYONA'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

Defendant YVONNE BAYONA ("Bayona") moves pursuant to Fed. R. Civ. P. 12(b) (6) to dismiss Plaintiffs' Amended Complaint [D.E. 77] for failure to state a claim upon which relief may be granted.

## INTRODUCTION

At a status conference held by the Court on February 2, 2024, the Court directed the Plaintiffs to amend its original complaint to simplify and specify the constitutional violations allegedly committed by each Defendant. [D.E. 72] Instead of following the directive of the Court, the Plaintiffs filed a poorly written movie script disguised as an Amended Complaint alleging that the Defendants, including volunteer Code Enforcement Board Member Bayona, were engaging in a "criminal" conspiracy in a manner of a "Medellin Cartel" to retaliate against the Plaintiffs for exercising free speech rights under the First Amendment.[1]  Notwithstanding the vitriolic attack with distorted pictures hurled against the Defendants in the Amended Complaint, Plaintiffs have

---

[1] The Plaintiffs have maliciously decided to display a picture of Defendant Bayona's primary residence in this lawsuit solely for harassment purposes because Defendant Bayona's residence is irrelevant to any alleged violations of constitutional rights in this case. Compl. ¶¶ 658-661.

failed to demonstrate that Defendant Bayona violated Plaintiffs' constitutional rights in her official or individual capacities. While Plaintiffs labeled the lawsuit against Defendant Bayona as an individual capacity lawsuit, the allegations in the Amended Complaint reflect that Defendant Bayona was acting in her official capacity as a volunteer member of the Code Enforcement Board "at all relevant times". Compl. ¶ 30. As such and as stated below, dismissal of Plaintiffs' claims against Defendant Bayona is required because a suit against a defendant in her official capacity is a suit against the government entity. Since the City of Miami is a defendant in this case, a lawsuit against Defendant Bayona in her official capacity is not permitted under Florida law.

As stated previously, the allegations in the Amended Complaint relate to Defendant Bayona's conduct as a member of the Code Enforcement Board, Defendant Bayona is entitled to quasi-judicial immunity and qualified immunity. Specifically, Defendant Bayona's comments or alleged "eye contact" with Defendant Rachel Dooley during a Code Enforcement Board Hearing does not rise to a level of a constitutional violation especially where the Code Enforcement Board reduced Plaintiff Little Havana Bungalows, LLC's fines from $857,400.00 to $85,740.00 based on the evidence at the hearing according to the Mitigation Order issued on April 27, 2022. The Mitigation Order is attached hereto as Exhibit "A". [2] If there was a "criminal" conspiracy against the Plaintiffs, it was a conspiracy to benefit the Plaintiff by reducing the fines to ten percent (10%) of the total fine amount. That reduction is "unheard of" if the conspiracy was an actual conspiracy

---

[2] Defendant Yvonne Bayona respectfully requests that the Court take Judicial Notice of the Mitigation Order issued on April 27, 2022, for the property owned by Little Havana Bungalows, LLC. Judicial notice of the City's Mitigation Order is appropriate because such other complies with the requirements of Fed. R. Evid. 201. *Northwest Bypass Group v. U.S. Army Corps of Engineers*, 488 F. Supp. 2d 22 (D.N.H. 2007) (judicial notice of the hearing date and zoning board's decision to deny variance request were appropriate); See also, *Newcomb v. Brennan*, 558 F. 2d 825, 829 (7th Cir. 1977) ("We hold that matters of public record such as state statutes, city charters, and city ordinances fall within the category of "common knowledge" and are therefore proper subjects for judicial notice").

as asserted by the Plaintiffs.[3]

In her motion to dismiss, Code Enforcement Board Member Bayona argues that dismissal of the amended complaint is required: (1) her conduct was in her official capacity and such lawsuit is a lawsuit against the City of Miami under Florida law; (2) she is entitled to absolute quasi-judicial immunity for her conduct during a code enforcement board hearing; and (3) that she is entitled to qualified immunity because the allegations in the Amended Complaint failed to show that she violated a protected constitutional right.

Additionally, the City and the other Defendants have filed motions to dismiss the Plaintiffs' Amended Complaint. Defendant Bayona adopts and incorporates by reference all the arguments raised in the motions to dismiss filed by the City and the other Defendants in this case provided that the Court finds these arguments as a basis for dismissal of the Amended Complaint. These arguments include, but are not limited to, the fact that the Plaintiffs failed to allege a claim under the First Amendment, quasi-judicial immunity, and qualified immunity.

## I. LEGAL ANALYSIS

### A. STANDARD OF REVIEW FOR MOTION TO DISMISS

A Rule 12 (b)(6) motion to dismiss tests the sufficiency of the Complaint against the legal standard set forth in Rule 8 of Fed. Civ. P., which provides for "a short and plain statement of the claims showing that the pleader is entitled to relief." In general, to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim of relief that is

---

[3] The Code Enforcement Board hearings are opened to the public and are generally recorded. Defendants have asked the Court to take judicial notice of the Code Enforcement Hearing which took place on April 27, 2022. While the Defendants will produce a video of the Code Enforcement Board Hearing to support their motion to dismiss, Plaintiffs will not produce such videos because the videos would confirm that the Plaintiffs' treatment before the Code Enforcement Board was consistent with due process and Defendant Bayona did not violate the Plaintiffs' constitutional rights.

plausible on its face." *McGriff v. City of Miami Beach*, 522 F. Supp. 3d 1225, 1238 (S.D. Fla. 2020) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009)). Moreover, a plaintiff's claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard requires more than a sheer possibility that a defendant has acted unlawfully. Where the complaints plead facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. Determining whether a complaint states a plausible claim for relief is a context-specific undertaking that requires the court to draw upon its judicial experience and common sense." *Id.* at 1239.

While a motion to dismiss generally will be treated as a motion for summary judgment under Federal Rules of Civil Procedure, if the district court considers matters outside the complaint, the "district court need not convert a motion to dismiss into one for summary judgment where the documents are (1) central to the plaintiff's claims and (2) undisputed." *McGriff v. City of Miami Beach*, 522 F. Supp. 3d 1225, 1239 (S.D. Fla. 2020) (citing *Day v. Taylor*, 400 F. 3d 1272, 1276 (11th Cir. 2005). To defeat a motion to dismiss against a Section 1983 claim, the "plaintiff must allege that a person acting under color of state law committed an act that deprived him of some right protected by the Constitution or laws of the United States." *Alcocer v. Mills*, 906 F. 3d 944, 950-51 (11th Cir. 2018). Here, as described below and in the other Defendants' motions to dismiss, the Plaintiffs failed to allege that Code Enforcement Board Member Bayona committed an act that deprived Plaintiffs of some right protected by the Constitution or laws of the United States. The video of the Code Enforcement Board hearing on April 27, 2022, is uncontroverted evidence that Defendant Bayona did not violate the constitutional rights of the Plaintiffs.

## B. DISMISSAL WITH PREJUDICE OF THE CLAIMS AGAINST DEFENDANT BAYONA IS REQUIRED

Under Florida law, a "suit against a defendant in his official capacity is, in actuality against the government entity." *Geidel v. City of Bradenton Beach*, 56 F. Supp. 2d 1359 (1999), citing, *Stephens v. Geograhegan*, 702 So. 2d 517, 527 (Fla. 2nd DCA 1997); *See also, Dugan v. Rank*, 372 U.S. 609, 620 (1963) ("The general rule is that a suit is against the sovereign if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act") Indeed, dismissal is required where the government entity is a party to the lawsuit and the city official is sued in her official capacity. *See, Braden Woods Homeowners Assn'v v. Mavard Trading, Ltd.*, 277 So. 3d 664, 671 (Fla. 2d DCA 2019) (dismissing claims against a government official in his official capacity where the government was a party to the lawsuit).

In the instant case, the Plaintiffs have sued Defendant Bayona in her individual capacity even though the allegations in the Amended Complaint clearly confirmed that Defendant Bayona was acting "at all times" in her official capacity as a member of the Code Enforcement Board. Compl. ¶ 30. Thus, the Plaintiffs labeling Defendant Bayona as a party defendant in her individual capacity does not defeat the fact that Defendant Bayona was acting in her official capacity based on the allegations in the Amended Complaint. Plaintiffs cannot circumvent Florida law by merely labeling the lawsuit as an individual capacity claim to bring Defendant Bayona as a party defendant in this case. Moreover, the City of Miami was the prosecutorial agency in enforcing violations of municipal law committed by the Plaintiffs. If the Plaintiffs had appealed the decisions of the Code Enforcement Board in state court, the appeal would have been against the City of Miami, not Defendant Bayona. Based on the allegations in the Amended Complaint relating to Defendant

Bayona, dismissal of the claims against Defendant Bayona is required with prejudice because the City of Miami is a defendant in this case and Defendant Bayona was acting in her official capacity.

### C. CODE ENFORCEMENT BOARD MEMBER BAYONA IS ENTITLED TO ABSOLUTE QUASI-JUDICIAL IMMUNITY

It is well-established that [j]udges are entitled to absolute immunity from damages for those acts taken while they are acting in their judicial capacity unless they acted in the clear absence of all jurisdictions." *Sibley v. Lando*, 437 F. 3d 1067, 1070 (11th Cir. 2005) (quoting *Bolin v. Story*, 225 F. 3d 1234, 1239 (11th Cir. 2000)). Judicial immunity is designed to protect judges from personal liability "even when the judge's acts are in error, malicious, or excess of his or her jurisdiction." *Id.* Indeed, judicial immunity is "for the benefit of the public whose interest it is that judges should be at liberty to exercise their functions with independence and without fear of consequences." *Pierson v. Ray*, 386 U.S. 547, 554 (1967). While judicial immunity is designed to provide judges with the liberty to make decisions without corrupt influence, the following factors must exist for judicial immunity to apply: "(1) the act complained of constituted a normal judicial function; (2) the events occurred in the judge's chambers in open court; (3) the controversy involved a case pending before the judge; and (4) the confrontation arose immediately out of a visit to the judge in her official capacity." *Sibley v. Lando*, 437 F. 3d 1067, 1070 (11th Cir. 2005).

In terms of non-judicial officials, the Eleventh Circuit has consistently held that judicial immunity not only applies to judges but also to other persons whose "official duties have an integral relationship with the judicial process." *Roland v. Phillips*, 19 F. 3d 552, 555 (11th Cir. 1994); *See also, Fuller v. Georgia State Bd. of Pardons and Paroles*, 851 F. 2d 1307 (1988) (holding that individual members of a state Parole Board are entitled to absolute quasi-judicial immunity from suit for damages filed by black inmates challenging the denial of parole). Quasi-

6

judicial immunity derives from absolute judicial immunity. *Roland* at 19 F. 3d 552, 555 (11th Cir. 1994). Further, a court determines quasi-judicial immunity "through a functional analysis of the action taken by the official in relation to the judicial process." *Roland*, 19 F. 3d at 555. To clarify further, "[w]hen judicial immunity is extended to officials other than judges, it is because their judgments are functionally comparable to judges—that is, because they, too, exercise a discretionary judgment as a part of their function." *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 436 (1993).

The Eleventh Circuit has recognized that Code Enforcement Board proceedings under local and state law in Florida involved the exercise of discretionary judgment by board members or a special magistrate. *See Club Madonna Inc. v. City of Miami Beach*, 924 F. 3d 1370 (11th Cir. 2020) It is undisputed that the code enforcement hearing process in Florida has characteristics of a judicial proceeding to ensure the protection of the rights of property owners. *Lindbloom v Manatee County*, 808 Fed. Appx. 745 (11th Cir. 2020). In describing the judicial characteristics of a code enforcement proceeding, the Eleventh Circuit noted the following:

> Florida's Local Government Code Enforcement Boards Act was created to promote the health and safety of state citizens by creating administrative boards to impose administrative fines and other non-criminal penalties to provide an effective and inexpensive method of enforcing county and municipal codes and ordinances where a pending or repeated violation persists. Fla. Stat. §§ 162.02. A special magistrate has the same status as an enforcement board. ..§162.03(2). Enforcement is initiated by a code inspector who notifies the violator and gives him reasonable time to comply, and if the violation continues, the code inspector notifies special magistrate [or Code Enforcement Board] and requests a hearing.. …§162.06(2). At the hearing, the special magistrate [or the Code Enforcement Board] must take testimony from the code inspector and the alleged violator, and formal rules of evidence do not apply…§162.07(3). The special magistrate [or Code Enforcement Board] must issue findings of fact, conclusions of law, and an order affording the proper relief. § 162.07(4)………..An appeal of the administrative order may be taken within 30 days to the state circuit court, which must be limited to appellate review of the record created before the special magistrate [or Code Enforcement Board]. §162.11.

*Lindbloom v Manatee County*, 808 Fed. Appx. 745, 751 (11th Cir. 2020). The process outlined above is the minimum process that local governments in Florida must provide to property owners in regulating the condition of private properties. This process has been adopted by numerous local governments, including the City of Miami. *See*, Section 2-811-2-830 of the City of Miami Code of Ordinances. Under the City's process, a violator is provided with the same rights outlined above in Florida's Local Government Code Enforcement Boards Act. Indeed, Florida state courts have recognized boards, like code enforcement boards, as quasi-judicial boards. *Rodriguez v. Tax Adjustment Experts of Florida, Inc.*, 551 So. 2d 537 (Fla. 3rd DCA 1989) (holding that the special master appointed by county property appraisal adjustment board was a quasi-judicial officer who was immune from taxpayers' suit); *Johansson v. Miami-Dade County Adjustment*, 346 So. 3d 90 (Fla. 3rd DCA 2022) (motion to dismiss was affirmed because the Value Adjustment Board was a quasi-judicial body and thus was entitled to quasi-judicial immunity from suit). The immunity from a lawsuit for members of a quasi-judicial board even extends to cases where the board makes a mistake. *Andrews v. The Florida Parole Commission,* 768 So. 2d 1257 (Fla. 2nd DCA 2000) (holding that quasi-judicial immunity applies even where board members committed an error in the release date of a prisoner).

In the instant case, the Plaintiffs allege that they have appeared numerous times before the Code Enforcement Board, and Defendant Bayona was acting on the advice of Defendant Carollo and his Chief of Staff. Since the Code Enforcement Board Hearings were videotaped, the Plaintiffs have failed to provide one ounce of evidence to support the false allegations against Defendant Bayona. In fact, the video of April 27, 2022, Code Enforcement Board Hearing revealed that the Plaintiffs were treated with the due process required by the law, and the decision made by the Board was favorable to the Plaintiff notwithstanding an alleged "eye-contact"

between Defendant Bayona and Defendant Dooley during the hearing. Compl. ¶ 569., Nevertheless, the Plaintiffs allege that Defendant Bayona violated their constitutional rights because the Board reduced the fines against the Plaintiff's property by 90%. See, Code Enforcement Mitigation Hearing Order attached hereto as Exhibit "A". In sum, Defendant Bayona was merely exercising the discretionary authority that she has as a member of the Code of Enforcement Board to state that a reasonable reduction of the fine amount was warranted based on the evidence of the case. Bayona's alleged statement to reduce the fine amount to $400,000 against the property owner was not even adopted by the Code Enforcement Board as conceded by the Plaintiffs. Compl. ¶ 570.

Realizing that the one (1) single paragraph relating to Defendant Bayona in their original complaint failed to state a cause of action against Defendant Bayona, the Plaintiffs decided to create fictional stories about Defendant Bayona's conduct at Code Enforcement Hearings.[4] For example, the Plaintiffs falsely alleged during a public hearing that Defendant Bayona "recited Ortiz's exact words to the Board, that Carollo's enemy is here today and that we have to vote against them." Compl. ¶ 278. If this allegation was true, it is safe to assume based on the Plaintiffs' penchant to try this case in the media, that the Plaintiffs would have submitted to this Court a videotape of the statement or a transcript of the Code Enforcement Hearing or hold a press conference to claim a "criminal conspiracy". Contrary to the Plaintiffs' false allegations, the video of the April 27, 2022, Code Enforcement Hearing demonstrated that Plaintiffs were treated with the utmost fairness by Defendant Bayona and other members of the Code Enforcement Board. Even if we assume that the Plaintiffs' allegations were true, the Plaintiffs had the right to appeal

---

[4] Certain allegations in the Complaint seem to suggest that Defendant Bayona was a member of the Unsafe Structure Board. Defendant Bayona is only a member of the Code Enforcement Board. Compl. ¶ 30.

with the appropriate transcript to state court any due process violations committed by the Code Enforcement Board. The Plaintiffs did not appeal but now seek to tell this Court fictional stories in the Amended Complaint about the Defendants, especially about Defendant Bayona. *Lindbloom v. Manatee County*, 808 Fed. Appx. 745 (11th Cir. 2020) (dismissal of Section 1983 complaint was required where property owner failed to pursue available state court remedy in code enforcement case) Without hesitation, Defendant Bayona is entitled to absolute quasi-judicial immunity based on the allegations in the Amended Complaint.

### D. CODE ENFORCEMENT BOARD MEMBER BAYONA IS ENTITLED TO QUALIFIED IMMUNITY

Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Dalrymple v. Reno,* 334 F.3d 991, 994 (11th Cir. 2003) (*citing Hope v. Pelzer,* 536 U.S. 730, 739 (2002). Qualified immunity is meant to ensure that government officials are not afraid to fulfill their job-related responsibilities. *Williams v. Consolidated City of Jacksonville,* 381 F.3d 1298, 1307 11th Cir. 2004). Essentially, the purpose of the doctrine of qualified immunity is to permit "officials to perform their duties, without the threat of civil liability, if they act in a lawful manner. It is immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Therefore, questions of qualified immunity should be resolved at the earliest possible stage in litigation. *Hunter v. Bryant,* 502 U.S. 224, 227 (1991). In order to be entitled to the qualified immunity defense, a government official must demonstrate that the acts complained of were committed within the scope of the officials' discretionary authority. *See, Kingsland v. City of Miami*, 382 F. 3d 1220, 1232 (11th Cir. 2004). A government official proves he acted within the

purview of his discretionary authority by showing "objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of authority." *Hutton v. Strickland*, 919 F. 2d 1531, 1537 (11th Cir. 1990). "Once discretionary authority is established, the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity." *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003). "To overcome qualified immunity, the plaintiff must show that (1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *McGriff v. City of Miami Beach*, 522 F. Supp. 3d 1225, 1252 (S.D. Fla. 2020).

In this case, it is undisputed that Code Enforcement Board Member Bayona was acting within her discretionary authority during the Code Enforcement Board hearing. The Plaintiffs allege that Bayona violated their constitutional rights at Code Enforcement Hearings. The Plaintiffs have failed to provide any documentary evidence to support such conduct alleged in the Amended Complaint. The allegations in the Amended Complaint fail to show that Bayona violated a clearly established constitutional right of any of the Plaintiffs. Even if the allegations against Bayona are true, discussions between members of a Code Enforcement Board relating to evidence are not constitutional violations under Section 1983. Bayona, like all Code Enforcement Board members, had the discretionary right to review the code case and make a recommendation whether the Plaintiffs agreed with the recommendation or not. More importantly, if Plaintiffs strongly believed that their constitutional rights were violated in proceedings before the Code Enforcement Board, they should have appealed the Code Enforcement Board's decisions to the circuit court of the State of Florida instead of filing this frivolous claim in federal court against Defendant Bayona, who was merely carrying out her legal duties as a member of the Code Enforcement Board.

## II. CONCLUSION

For all the good and sufficient reasons stated above, the Court should grant Defendant Yvonne Bayona's motion to dismiss with prejudice for the following reasons (1) Defendant Bayona was acting in her official capacity and such lawsuit must be filed against the government entity; and (2) she is entitled to absolute quasi-judicial immunity and qualified immunity. The Court should also dismiss Plaintiffs' Amended Complaint based on the arguments asserted in the motions to dismiss filed by the City and other Defendants in this case.

## III. REQUEST FOR ORAL ARGUMENT

Under Local Rule 7.1(b)920, Defendant Bayona respectfully requests a hearing on her motion to dismiss. Defendant Bayona supports the requests for oral arguments filed by other Defendants and hereby joined such requests.

Dated: February 29, 2024

Respectfully submitted:

s/ Hans Ottinot
*Counsel for Yvonne Bayona*

**Ottinot Law, P.A.**
5944 Coral Ridge Drive, PM#201
Coral Springs, FL 33076
Telephone: 786-202-1136
Fla. Bar No. 77577
Email: hans@ottinotlawpa.com

## CERTIFICATE OF SERVICE

I certify that on February 29, 2024, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify that this document is being served today on all counsel of record by transmission of Notices of Electronic Filing generated by CM/ECF.

By: s/ *Hans Ottinot*
HANS OTTINOT

# City of Miami

THE CITY OF MIAMI, FLORIDA

vs.

LITTLE HAVANA BUNGALOWS LLC

Date: April 27, 2022

Case No.: CE2013020301

Property Address: 28 NW 10 AV

## MITIGATION ORDER

THIS CAUSE having been brought before the City of Miami Code Enforcement Board, by the violator's Motion to Mitigate Fines, on April 27, 2022, and after hearing the arguments of both parties and being otherwise fully advised, it is hereby ORDERED AND ADJUDGED that the fine in this matter in the amount of $857,400.00 is to be mitigated to $ 85740.00. The City of Miami will release the recorded lien against the above mentioned property provided that:

(1) The above mentioned property has been brought into full compliance pursuant to the City of Miami Code and Ordinances and the Florida Building Code.

(2) A single payment or installment payments are made to the City of Miami, satisfying the mitigated fine. Should the payment be made in installments, the principal balance will accrue interest at the maximum statutory rate for which the violator will be liable. Additionally, any balance, which remains unpaid for thirty (30) days from the date of this order, shall accrue interest. Payments should be made to the City of Miami, C/O Department of Finance, 444 SW 2nd Avenue, 6th Floor, Miami, FL 33130.

- Installment Payments within a two (2) year period.
- _____.

Once the payment is made in full with the Finance Department, a Release of Lien will be executed by Hearing Boards. Should the violator fail to make payment arrangements within twenty (20) days of receipt of this Mitigation Order, this Order will be void and the original amount in fines shall be reimposed against the above mentioned subject property, less any sums previously paid. Should the violator fail to sign and return this Mitigation Order within thirty (30) days of receipt, this Order will be void and the original amount in fines shall remain as a lien on the above mentioned subject property. Should the violator enter into a payment plan with the City of Miami and miss a scheduled payment, this Order will be void and the original amount in fines shall be reimposed against the above mentioned subject property, less any sums previously paid. Furthermore, the City of Miami may elect to proceed with foreclosure on its lien against any real or personal property owned by the violator. Nothing in this order will waive the City's right to collect any additional surplus funds held by the Clerk of Court which may be a result of a foreclosure and/or tax deed sale. Any partial payments previously collected by the City, shall be retained by the City and not contemplated in the mitigation order executed hereto.

_____
Code Enforcement Board Chairperson

AGREED AND ACCEPTED:

Print Name: Coral López

Signature: Corel Lo

Address: 28 NW 10 AV

Date: April 27, 2022

Officially filed and rendered on April 27, 2022 in the records of the City of Miami, Hearing Boards



EXHIBIT A