UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CV-24251-FAM

WILLIAM O. FULLER, *et al.*,

    Plaintiffs,

v.

CITY OF MIAMI, *et al.,*

    Defendants.
_____/

**MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT
BY DEFENDANTS LUIS TORRES, ADRIAN PLASENCIA, AND RENE DIAZ**

**INTRODUCTION**

For years, Plaintiffs William O. Fuller and Martin Pinilla, II gained preferential treatment from City of Miami Commissioners as they grew their portfolio of businesses throughout Little Havana. Having nurtured "productive relationships with" Carollo's predecessors, Plaintiffs immunized themselves from enforcement of the City's building, zoning, health and safety ordinances, codes, and regulations: one Plaintiff "never applied for or obtained a special events permit" during 18 years of operation; one Plaintiff submitted plans forty-nine days after a deadline; one Plaintiff's staircases did "not meet the current fire code standards"; and Plaintiffs routinely failed to obtain the requisite permits for construction. Once those City Commissioners left office, however, Plaintiffs were finally required to comply with the law. This is not a story spun by Defendants Luis Torres, Adrian Plasencia, or Rene Diaz, but instead the Plaintiffs' confessions in their own complaint. (*See, e.g.*, FAC ¶¶ 42, 94, 95, 313, 361, 382, 488).

Notwithstanding these confessions, Plaintiffs now sue an array of Defendants for matters already in litigation or matters they previously chose not to litigate. This action is but one in a series of lawsuits that Fuller, Pinilla, and the entities they control, have brought over the last five years in four different courts that are designed to intimidate the City of Miami and its officials, and obstruct their efforts to enforce the law.[1] Many of the new Defendants brought into this lawsuit have little to do with the highly publicized feud over City policies and enforcement between Carollo and Plaintiffs. Defendants Torres, Plasencia, and Diaz did not develop or implement policies to target Plaintiffs. In fact, the operative complaint admits that Torres, Plasencia, and Diaz did not even have final policymaking authority.

Plaintiffs' initial complaint was an unwieldy shotgun pleading that made it impossible for Defendants and the Court to determine what each Defendant did (and when) to each Plaintiff. Hence, during the February 2, 2024, status conference, the Court explained Plaintiffs must cure this defect by alleging, as to each individual Defendant, "he did A, B, C on this date or refused to do this." Hr'g Tr. 44:13-46:6. Plaintiffs' counsel committed to filing an amended complaint "providing even more detail along the lines" suggested by the Court. *Id.* at 46:10-47:10. While the

---

[1] *See* (1) *Fuller, et al. v. Carollo*, Case No. 2018-cv-24190 in the S.D. Fla. ("*Fuller I*") before Judge Smith, which has resulted in a trial and Final Judgment that is on appeal; (2) *Mad Room LLC v. City*, Case No. 2021-cv-23485 in the S.D. Fla. before Judge Altman ("*Mad Room*"); (3) *Tower Hotel LLC, et al. v. City of Miami*, Case No. 2022-8069-CA-44 (Fla. 11th J. Cir. 2022) ("*Tower Hotel*"); and (4) *Fuller v. City of Miami*, Case No. 2024-793-CA-07 (Fla. 11th J. Cir. 2024).

First Amended Complaint ("FAC") may have doubled in length, it fails to provide any of the details the Court found necessary for Plaintiffs' claims to be submitted to a jury. Rather than heed the Court's admonition that "we don't try the case for the media," the FAC doubles down on scandalous and conclusory allegations that impugn the integrity of public officials without clearly and simply alleging what each Defendant did to each Plaintiff and when.

For their part, once stripped of conclusory allegations, the well-pleaded facts of the FAC allege only that Torres (the Assistant Director of the Building Department), Plasencia, (the Assistant Fire Chief and former Fire Marshal), and Diaz (the Senior Chief of the Unsafe Structures department) lawfully acted within the scope of their discretionary authority. And according to the FAC, even if Defendants Torres, Plasencia, and Diaz were forced to target anybody, it was under coercion and the threat of being demoted or fired, not because they personally held any retaliatory animus towards Plaintiffs.

On these thin allegations, Plaintiffs attempt to hold Defendants Torres, Plasencia, and Diaz liable for more than $60 million in damages purportedly caused by violations of Plaintiffs' First Amendment rights. Despite their tactical pleading, Plaintiffs cannot avoid multiple fundamental defects. First, Defendants Torres, Plasencia, and Diaz should be dismissed from the FAC because they are entitled to qualified immunity and the FAC fails to state a First Amendment retaliation claim against them for various reasons. Second, Plaintiffs' claims against Diaz must be dismissed to the extent they rely on allegations that he played a role in the passing of ordinances because Diaz is entitled to absolute legislative immunity for such actions. Third, the FAC is still an impermissible shotgun pleading. Fourth, this action violates the claim-splitting doctrine. Fifth, the conspiracy claim is barred as a matter of law by the intra-corporate conspiracy doctrine and otherwise fails to sufficiently allege an agreement among the Defendants to violate Plaintiffs' constitutional rights. Finally, the statute of limitations bars Plaintiffs' claims to the extent they rely on conduct that occurred on or before November 6, 2019.

After more than five years of litigation over the same set of facts, including multiple rounds of amending complaints, extensive discovery, and a weeks-long jury trial, there is no excuse for these deficiencies. Plaintiffs know full well the pleading standards they are required to satisfy and their failure to do so is a brazen attempt to expand their legal rights and sway public opinion with inflammatory conclusions. For these reasons, as detailed below and in the Co-Defendants' Motions to Dismiss, the Court should dismiss the FAC.

**LEGAL STANDARD**

Plaintiffs have the burden of showing a plausible First Amendment retaliation claim against Defendants using well-pleaded facts, not conclusory statements. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* In determining whether a complaint states a plausible claim for relief, "conclusory statements" and "bare assertions" are given no weight. *Id.* at 678, 681. "[W]here the *well-pleaded facts* do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (emphasis supplied; quoting Fed. R. Civ. P. 8(a)(2)).

Here, the Court must also analyze the FAC through the lens of qualified immunity, which "protects government actors performing discretionary functions from being sued in their individual capacities." *Chesser v. Sparks*, 248 F.3d 1117, 1121 (11th Cir. 2001). "Claims for money damages against government officials in their individual capacity involve substantial costs not only for the individual official – who incidentally may be innocent – but for society in general." *Foy v. Holston*, 94 F.3d 1528, 1532 (11th Cir. 1996). Qualified immunity is thus both a defense to liability and an entitlement not to stand trial or even face the discovery process. *Iqbal*, 556 U.S. at 672; *Chesser*, 248 F.3d at 1122. The Supreme Court has repeatedly "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

**ARGUMENT**

**I. THE COURT SHOULD DISMISS THE FAC BECAUSE TORRES, PLASENCIA, AND DIAZ ARE ENTITLED TO QUALIFIED IMMUNITY.**

Qualified immunity involves a burden shifting analysis. Public officials first have the burden to show qualified immunity applies by establishing they were acting within the scope of their discretionary authority when the allegedly wrongful act occurred. *Carollo v. Boria*, 833 F.3d 1322, 1328 (11th Cir. 2016). The burden then shifts to the plaintiffs to show qualified immunity is not appropriate. *Id.*; *Montoute v. Carr*, 114 F.3d 181, 184 (11th Cir. 1997) ("Once an officer or

official has raised the defense of qualified immunity, the burden of persuasion as to that issue is on the plaintiff."). To defeat qualified immunity, Plaintiffs must establish that "(1) [their] complaint pleads a plausible claim that the defendant violated [their] federal rights (the 'merits' prong), and that (2) precedent in this Circuit at the time of the alleged violation 'clearly established' those rights (the 'immunity' prong)." *Carollo*, 833 F.3d at 1328. *See also Wilson v. Layne*, 526 U.S. 603, 609 (1999); *Stanley v. City of Dalton*, 219 F.3d 1280, 1285 (11th Cir. 2000).

Plaintiffs' "burden is not easily discharged: 'That qualified immunity protects government actors is the usual rule; only in exceptional cases will government actors have no shield against claims made against them in their *individual capacities*.'" *Foy*, 94 F.3d at 1532 (emphasis in original; quoting *Lassiter v. Alabama A & M Univ.*, 28 F.3d 1146, 1150 (11th Cir. 1994) (*en banc*)). "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who would knowingly violate the law.'" *Hunter*, 502 U.S. at 229 (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 343 (1986)).

Plaintiffs cannot defeat qualified immunity. The face of the FAC establishes that Defendants Torres, Plasencia, and Diaz were acting within the scope of their discretionary authority. The FAC does not establish, however, a plausible First Amendment retaliation claim, much less the violation of clearly established law, for three reasons. First, Plaintiffs did not engage in constitutionally protected speech. Second, none of Plaintiffs' allegations show that the actions of Defendants Torres, Plasencia, or Diaz adversely affected protected speech. Third, the FAC fails to allege a plausible causal connection between the actions of Defendants Torres, Plasencia, and Diaz and an adverse effect on Plaintiffs' speech. Defendants Torres, Plasencia, and Diaz are accordingly entitled to dismissal from the FAC.

### A. Torres, Plasencia, and Diaz Acted Within Their Discretionary Authority.

Defendants Torres, Plasencia, and Diaz are entitled to qualified immunity because all actions they allegedly took were within the scope of their discretionary authority. Public officials can show they were acting within their discretionary authority by showing their actions were (1) undertaken pursuant to the performance of their duties, and (2) were within the scope of their authority. *Roberts v. Spielman,* 643 F.3d 899, 903 (11th Cir. 2011). The Court must examine "the general nature of the defendant's action" at "the minimum level of generality necessary to remove the constitutional taint" when determining whether the conduct was within the official's discretionary authority. *Holloman ex rel. Holloman v. Harland,* 370 F.3d 1252, 1266 (11th Cir.

4

2004); *see also Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998) ("[W]e look to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or other conditionally inappropriate circumstances.")

Torres. Torres is the Assistant Director of Building for the City. (FAC ¶ 26.) Building is a division of the City's Planning, Building, and Zoning Department. City Code § 2–205(a). The functions of that Department include "the management and supervision of all functions and personnel of the planning, building, electrical, plumbing, and zoning functions, and boiler and elevator inspection." *Id*. at § 2-204. The FAC alleges that Torres closed Plaintiffs' business (FAC ¶ 27), delayed the completion and opening of properties and businesses, including, but not limited to, the Tower Hotel (*id*. ¶ 240), and decided Plaintiffs would have to replace properties no longer up to code (*e.g. id.* ¶ 277). Put differently, Plaintiffs allege that Torres enforced the Florida Building Code and City of Miami Code against their properties. There can be no dispute that applying the building codes to Plaintiffs' property is a power that legitimately forms a part of Torres' job. *See 625 Fusion, LLC v. City of Fort Lauderdale*, 595 F. Supp. 3d 1228, 1255 (S.D. Fla. 2022); *see also* § 468.604, Fla. Stat. (defining responsibilities of a building code administrator). Torres was thus acting within the scope of his discretionary authority.

Plasencia. Plasencia is the Assistant Fire Chief and at all relevant times was the City of Miami Fire Marshal. (FAC ¶ 28.) The Fire Marshal is the chief in charge of the fire prevention bureau. City Code § 2-235(b). The fire prevention bureau is responsible for enforcing the fire code. *Id*. at § 2-235(a). Plaintiffs allege that Plasencia sent fire inspectors to Plaintiffs' properties for inspections, "directly or indirectly" ordered subordinates to search for violations, and directed another fire department official to request dimensions for the Piedra Villas property's back staircase that did not meet fire codes. (FAC ¶¶ 148, 211, 309, 313.) Plaintiffs further allege Plasencia determined (at an unspecified point in time) to "shut down the [LHAB] property because of a fire safety issue, stating the property needed a sprinkler system installed . . . . [and LHAB] was not entitled to the benefit of a firewatcher," (*id*. ¶ 230-31). Such conduct involves enforcing the fire code and falls within Plasencia's discretionary authority as Fire Marshal. *See H & J Land Invs., Inc. v. City of Jacksonville,* 2014 WL 4540200, at *3 n.3 (M.D. Fla. Sept. 11, 2014) (concluding Fire Marshal acted within his discretionary authority when conducting inspections of buildings and enforcing the fire code).

Diaz. Diaz is the Senior Chief of the Unsafe Structures department. (FAC ¶ 29.) The officials of the Unsafe Structures department are responsible for examining the safety of buildings within the City and issuing notices of violations for unsafe structures. *See generally* City Code § 10-101. Plaintiffs allege that Diaz "directly or indirectly" ordered subordinates to search for violations (FAC ¶ 211) and that Diaz was "involved in the use of all of the unsafe structure violations aimed at shutting down Plaintiffs' business . . .." (*Id.* ¶ 139.) Based on these allegations, all the conduct allegedly committed by Diaz was within the scope of his discretionary authority as the Senior Chief of the Unsafe Structures department.

Accordingly, Defendants Torres, Plasencia, and Diaz are entitled to raise the defense of qualified immunity and the burden shifts to Plaintiffs to defeat their qualified immunity.

### B. The FAC Fails To Allege A Violation Of Plaintiffs' First Amendment Rights.

Plaintiffs assert First Amendment retaliation claims against all Defendants. To survive a motion to dismiss based on a claim of First Amendment retaliation under Section 1983, a plaintiff must allege facts establishing: (1) speech that was constitutionally protected; (2) the defendant's retaliatory conduct adversely affected the protected speech; and (3) a causal connection between the retaliatory actions and the adverse effect on speech. *Randall v. Scott*, 610 F.3d 701, 716 (11th Cir. 2010). The FAC fails to adequately allege each element.

#### 1. Plaintiffs did not engage in constitutionally protected speech.

Defendants Torres, Plasencia, and Diaz incorporate by reference and adopt the arguments advanced by the Co-Defendants that Plaintiffs fail to plead the first element of a First Amendment violation. *See, e.g.,* Carollo Mot. § (II)(B)(2), (II)(D); City Mot. § VI; Noriega Mot. § (VI)(A). Because these arguments are equally applicable and without distinction to Defendants Torres, Plasencia, and Diaz, the interests of justice and judicial economy favor the Court considering the arguments on their behalf.

#### 2. Neither Torres, Plascencia, nor Diaz adversely affected Plaintiffs' protected speech.

The second prong of a retaliation claim requires a plaintiff to establish that the defendant's retaliatory conduct adversely affected the protected speech. *Thompson v. Hall*, 426 F. App'x 855, 859 (11th Cir. 2011). A plaintiff suffers such adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from exercising First Amendment rights. *Id.* While the FAC added photographs of every single Defendant, hundreds of paragraphs, and dozens of pages, the FAC did not cure the original complaint's basic deficiencies: none of the

6

FAC's allegations demonstrate Defendants Torres, Plasencia, and Diaz engaged in conduct that would likely deter a person of ordinary firmness from exercising First Amendment rights.

<u>Torres</u>. The FAC alleges Torres directly participated in only two categories of actions: (1) "clos[ing] Plaintiffs' businesses, including Taquerias and Ball & Chain, and caus[ing] extensive damage to Plaintiffs' other businesses[,]" (FAC ¶ 27); and (2) "delay[ing] or derail[ing] the completion and opening of many properties and businesses, including, but not limited to, the Tower Hotel[,]" (*id.* ¶ 140). These conclusory allegations do not identify when or how Torres accomplished these actions and thus are entitled to no weight. The claims that Torres "decided Plaintiff would have to replace the staircase as the previous staircase plan was no longer up to code," (*id.* ¶ 277) and "sought to require Plaintiff to provide a 'shop drawing' . . . [and] forestalled the procedure to obtain a pool permit" (*id.* ¶ 430) still fail to specify when and how Torres engaged in these actions. The claims that Torres "decided," "sought to require," or "forestalled" certain requirements do not equate to factual allegations. But even if the Court generously construed these allegations in favor of Plaintiffs, they still do not establish an adverse effect on any Plaintiffs' protected speech. Where, like here, there are no allegations showing that a business closure was unjustified, closing a business through regulatory enforcement actions does not implicate the First Amendment. *H & J Land Invs.*, 2014 WL 4540200, at *10-11 (dismissing First Amendment claim based on theory that defendant "violated Plaintiffs' First Amendment rights by closing its business on pretextual grounds because of Defendant's objections to the content of Plaintiff's speech"). *See also* Noriega Mot. § VI(D) (citing cases that establish a retaliation claim fails where there is a lawful basis for government action).

<u>Plasencia</u>. As with Torres, the FAC alleges Plasencia directly participated in only two categories of actions: (1) Plasencia "instructed his subordinates to go out and find, or rather manufacture, violations on the Piedra Villas property" including the "the dimensions for the back staircases of the Piedra Villas Property[,]" (FAC ¶¶ 309-13); (2) he "would send" unidentified "fire inspectors" at unknown times to "Plaintiffs' properties" (which are also unidentified) "with the instruction to manufacture violations[,]" (*id.* ¶ 147). The FAC does not allege that any fire inspector followed these "instructions" described in paragraph 147, nor does it allege that any fire inspector issued violations to any of the Plaintiffs, precluding an inference that Plasencia's alleged instruction adversely affected Plaintiffs' protected speech. In any event, neither issuing a notice of violation nor requesting the dimensions of staircases—which do not impose a fine or other

7

penalty—would deter persons of ordinary firmness from exercising their First Amendment rights. *See Frankel v. Town of Bay Harbor Islands*, 2007 WL 9709777, at *3 (S.D. Fla. Apr. 16, 2007) ("Even if these Notices [of code violations] were sent in retaliation as Plaintiff contends, the Court does not find an actionable claim because a person of ordinary firmness, when faced with the Notices, would not be deterred from exercising her/his First Amendment rights.").

> Diaz. The FAC attempts to hold Diaz liable for other parties' actions. For example, Plaintiffs allege Diaz attended a meeting on May 27, 2020, where another Defendant (not Diaz) talked about a Plaintiff and instructed the City (not Diaz) to be more stringent. (FAC ¶ 169; *see also id.* ¶ 82 (alleging other Defendants wanted "policies to be more stringent")). The FAC lacks any logical inference that Diaz committed any affirmative act that adversely effected Plaintiffs' protected speech. *See Gomez v. City of Miami*, 2023 WL 6376511 *10, -- F. Supp. 3d --, -- (S.D. Fla. Sept. 29, 2023) (dismissing First Amendment retaliation claim where the plaintiff did "not specify when each retaliatory action occurred, who engaged in each action, or what role" each defendant "played in each event"). Moreover, Plaintiffs claim Diaz sent an email on May 28, 2020 that listed some of Plaintiffs' properties (*id.* ¶ 77); Diaz failed to respond to an email Diaz was carbon copied on (*id.* ¶ 380); and Diaz "received a raise for his involvement, and protected his house from violations" (*id.* ¶ 657). Each of these allegations fails to establish actionable conduct. Not responding to emails is not actionable. *See Coker v. Warren*, 660 F. Supp. 3d 1308, 1332 (M.D. Fla. 2023) ("Allegations of inaction are not sufficient to establish an actionable claim for retaliation."). Nor is circulating information about the Plaintiffs gathered through an investigation. *See Hernandez v. City of Homestead, Fla.*, 2022 WL 6569684 at *12 (S.D. Fla. Aug. 8, 2022) ("The Supreme Court has never defined retaliatory investigation, standing alone, as a constitutional tort, and neither has the Eleventh Circuit.") (cleaned up; quoting *Thompson v. Hall*, 426 F. App'x 855, 858 (11th Cir. 2011)).

At bottom, Plaintiffs' claims against Defendants Torres, Plasencia, and Diaz stem from their enforcement of generally applicable government regulations and investigating Plaintiffs. But "Plaintiffs may not 'claim special protection from governmental regulations of general applicability simply by virtue of their First Amendment protected activities.'" *H & J Land Invs.*, 2014 WL 4540200, at *11 (quoting *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 705 (1986)). And the Eleventh Circuit has held the specific "right to be free from a retaliatory investigation is not clearly established." *Shiver v. City of Homestead, Fla.*, 2021 WL 5174526, at *9 (S.D. Fla. Oct. 4,

8

2021) (citing *Rehberg v. Paulk*, 611 F.3d 828, 851 (11th Cir. 2010)). Plaintiffs thus fail to state a First Amendment retaliation claim that deprives Defendants Torres, Plasencia, and Diaz of their qualified immunity.

>   3. *The FAC fails to plausibly establish causation under the doctrine of qualified immunity.*

As to the third prong of a retaliation claim, "a plaintiff must establish a 'causal connection' between the government defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury.'" *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 259 (2006)). "It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must cause the injury." *Id.* "Specifically, it must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id.* (quoting *Hartman*, 547 U.S. at 260). Causation may be shown by pleading "(1) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory act, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lozman v. City of Riviera Beach*, 39 F. Supp. 1392, 1405-06 (S.D. Fla. 2014).

The FAC fails to plausibly allege causation for four reasons. First, Plaintiffs have not alleged that either Torres, Plasencia, or Diaz possessed any retaliatory animus against Plaintiffs, or how any such animus is connected to Plaintiffs' injuries, that would plausibly establish causation. Plaintiffs instead allege that the conduct of Defendants Torres, Plasencia, and Diaz is a product of coercion because they were required to act in the manner they did so to avoid being demoted or fired. (*See* FAC ¶ 130 ("City employees also knew as early as 2018 and 2019 that if they did not carry out Carollo's political vendetta that they would be fired, demoted, or chased out of office (like Diez, Gonzalez, and others)[.]").) Indeed, the only retaliatory animus against Plaintiffs alleged with any specificity belonged to Carollo. (*See, e.g., id.* ¶¶ 45, 52, 54, 55, 146, 648, 664.) Plaintiffs fail to allege a causal connection between (i) the actions of Torres, Plasencia, or Diaz, and (ii) any such personally held retaliatory animus by Torres, Plasencia, or Diaz towards Plaintiffs. This is fatal to Plaintiffs' claims. *See Turner v. Williams*, 65 F.4th 564, 581 (11th Cir. 2023) ("To prevail on a First Amendment retaliation claim, a plaintiff must establish a causal connection between the government defendant's retaliatory animus and the plaintiff's subsequent injury.") (cleaned up) (quoting *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019)).

Second, "[o]nly those with 'the power to make official decisions' may 'be held individually liable under § 1983.'" *See Gomez*, 2023 WL 6376511 *10. "The causal relation does not exist

9

when the continuum between Defendant's action and the ultimate harm is occupied by the conduct of deliberative and autonomous decision-makers." *Dixon v. Burke County*, 303 F.3d 1271, 1275 (11th Cir.2002*); see also Troupe v. Sarasota Cnty., Fla.*, 419 F.3d 1160, 1165 (11th Cir. 2005) ("A § 1983 claim requires proof of an affirmative causal connection between the defendant's acts or omissions and the alleged constitutional deprivation."). The FAC admits that Defendants Torres, Plasencia, and Diaz were not official decision makers. The FAC claims only that Carollo, Noriega, and Mendez had "final policymaking authority." (*Id.* ¶ 184 ("Here, there were three individuals targeting Plaintiffs with final policymaking authority: Carollo, Noriega, and Mendez")); *see also id.* ¶¶ 169, 172-74, 183, 185-87.) Dismissal is warranted on this basis alone.

Third, in the context of qualified immunity, a defendant cannot be held liable for First Amendment retaliation where he is motivated at least in part by a single lawful consideration. *Stanley*, 219 F.3d at 1295-96; *Foy*, 94 F.3d at 1535; *see also Brannon v. Finkelstein*, 754 F.3d 1269, 1278-79 (11th Cir. 2014) (qualified immunity applies where "there exists evidence of both lawful and unlawful motivations" for the defendant's conduct). Defendants Torres, Plasencia, and Diaz incorporate and adopt Defendants' arguments that because the actions were justified and because there was probable cause for the Defendants' actions, the retaliation claims fail. *See* Carollo Mot. § (II)(D); Noriega Mot. § VI(D). Specifically with regards to Defendants Torres, Plasencia, and Diaz, Plaintiffs do not allege how or if their actions were unjustified considering Plaintiffs' own admissions to violating codes.

Finally, the FAC fails to allege any temporal connection between Plaintiffs' protected speech and the actions of Defendants Torres, Plasencia, and Diaz. Of the 671 paragraphs in the FAC, only ***three*** paragraphs contain any factual description of the speech Plaintiffs expressed. (*See* FAC ¶¶ 45, 162, 661.) Yet, with the same conclusory allegation through the FAC, Plaintiffs claim that each Plaintiff engaged in protected speech. (*Id.* ¶¶ 190, 244, 283, 295, 331, 346, 391, 427, 483, 515, 549, 577, 588, 606, 617, 625.) None of the paragraphs in the FAC identify the date of when Plaintiffs engaged in the protected speech or which of the Plaintiffs engaged in the protected speech. Absent factual details describing when or which of the Plaintiffs engaged in the protected speech, the Court cannot reasonably infer that any actions of Defendants Torres, Plasencia, or Diaz were taken in response to each Plaintiff's exercising their First Amendment rights. *See Gomez*, 2023 WL 6376511 *10 n.9 (explaining the court could not determine whether defendant's actions were taken in response to plaintiff's allegedly protected speech because the complaint lacked

details regarding the timing of events); *Eisenberg v. City of Miami Beach*, 1 F. Supp. 3d 1327, 1345 (S.D. Fla. 2014) (dismissing First Amendment retaliation claim to the extent it relied on "relatively bare" allegations about "the nature and frequency" of protected speech because "[w]ithout more factual detail," the court could not "assess whether a sufficient causal connection—and thereby a retaliatory motive—can be inferred"). This, too, provides the Court with an independent basis to dismiss Defendants Torres, Plasencia, and Diaz from the FAC.

## II. DIAZ IS ENTITLED TO ABSOLUTE LEGISLATIVE IMMUNITY.

In addition to qualified immunity, Diaz is also entitled to absolute legislative immunity. Plaintiffs seek to hold Diaz liable for his role in the passing of City ordinances. (FAC ¶¶ 86, 121, 221, 234, 272, 357, 398, 422, 477, 558.) As a matter of law, Diaz is immune from liability for any actions undertaken in connection with the passing of ordinances.

"[L]ocal legislators are entitled to absolute immunity from civil liability for their legislative activities." *Beach Blitz Co. v. City of Miami Beach, Fla*., 2018 WL 11260453, at *4 (S.D. Fla. Feb. 5, 2018) (citing *Bogan v. Scott-Harris*, 523 U.S. 44, 54-55 (1998)). Absolute legislative immunity also extends to "officials outside the legislative branch . . . when they perform legislative functions," including actions that "were integral steps in the legislative process." *Bogan*, 523 U.S. at 55. "Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." *Id*. at 54; *see also Beach Blitz*, 2018 WL 11260453, at *4 (holding the defendants were "entitled to absolute immunity in connection with their legislative activity regardless of any purported ill motive or intent"). Activities such as "considering and passing ordinances" are "quintessentially legislative." *Beach Blitz Co.*, 2018 WL 11260453, at *4.

Accordingly, Plaintiffs' claims against Diaz must be dismissed to the extent they rely on allegations that he played a role in the passing of ordinances.

## III. THE FAC SHOULD BE DISMISSED BECAUSE IT IS AN IMPERMISSIBLE SHOTGUN PLEADING.

Defendants Torres, Plasencia, and Diaz incorporate and adopt by reference co-Defendants' motions arguing that the FAC is an impermissible shotgun pleading and improperly lumps claims and parties together. *See* Mendez Mot. §§ VI-VII; Carollo Mot. §§ II(B); Noriega Mot. § II. As demonstrated below, it is unclear what exact actions Plaintiffs claim Defendants Torres, Plasencia, and Diaz took, and how their actions relate to Plaintiffs' constitutional right. The FAC focuses on Carollo's "political vendetta" (FAC ¶¶ 130, 167) and Carollo's retaliation against Plaintiffs. (*See, e.g.*, FAC ¶ 45 (alleging "Carollo's five-year campaign of retaliation against Plaintiffs"); *id*. ¶ 76

11

(alleging "Carollo's campaign of retaliation"); *id.* ¶¶ 165, 172 (alleging that policies were "on Carollo's behalf for political retaliation"); *see also id.* ¶¶ 643, 648, 664). And, to a lesser extent, the FAC focuses on City Attorney Mendez (*id.* ¶¶ 135, 172) and City Manager Noriega. (*Id.* ¶¶ 82, 101, 133). The FAC claims only those three Defendants had "final policymaking authority." (*Id.* ¶ 184). Plaintiffs sue each of these three Defendants in every single count (except Noriega is not included in Count thirteen). Lumping Defendants Torres, Plasencia, and Diaz together with all other parties into these claims is not permitted. *See McDonough v. City of Homestead, Fla.*, 2023 WL 3035215 (11th Cir. Apr. 21, 2023); *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1321 n.9 (11th Cir. 2015).

Moreover, Plaintiffs continue to make conclusory claims devoid of factual allegations. The FAC added boilerplate language such as claiming that Defendants Torres, Plasencia, and Diaz all "knowingly worked in furtherance of the retaliation, to find, manufacture, or falsely claim violations on Plaintiffs' properties, intentionally cause delays and hardships, and selectively implemented and enforced City Policies against Plaintiffs," "mobilized City resources, selectively enforced policies, discriminated against Plaintiffs, and effectuated Carollo's harassment," and "corruptly attacked and selectively enforced city policies against Plaintiff." (FAC ¶¶ 152, 156, 193, *see also id.* ¶¶ 96, 193, 297, 643.) Yet again, Plaintiffs commit "the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Weiland*, 792 F.3d 1313, 1322; *see also Ebrahimi v. City of Huntsville Bd. of Educ.,* 114 F.3d 162, 164 (11th Cir. 1997) (describing a complaint that "offered vague and conclusory factual allegations in an effort to support a multiplicity of discrimination claims leveled against 15 defendants" as a "prototypical 'shotgun complaint'").

## IV. THE FAC SHOULD BE DISMISSED WITH PREJUDICE AGAINST DEFENDANTS TORRES, PLASENCIA, AND DIAZ FOR IMPROPER CLAIM SPLITTING.

The Court should also dismiss the FAC against Defendants Torres, Plasencia, and Diaz because it violates the claim-splitting doctrine. "The rule against claim-splitting requires a plaintiff to assert all of its causes of action arising from a common set of facts in one lawsuit. By spreading claims around in multiple lawsuits in other courts or before other judges, parties waste 'scarce judicial resources' and undermine 'the efficient and comprehensive disposition of cases.'" *Vanover*

*v. NCO Fin. Servs., Inc.*, 857 F.3d 833, 841 (11th Cir. 2017).[2] Claim-splitting "applies where a second suit has been filed before the first suit has reached a final judgment." *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1236 (11th Cir. 2021). "Claim-splitting has been analyzed as an aspect of res judicata or claim preclusion." *Vanover*, 857 F.3d at 841.[3]

In determining whether a party has improperly split its claims among lawsuits, courts examine "(1) whether the case involves the same parties and their privies, and (2) whether separate cases arise from the same transaction or series of transactions." *Vanover*, 857 F.3d at 841-42 (quotation marks omitted). Both factors are readily met here with respect to the *Mad Room* and *Tower Hotel* actions. *See also* Noriega Mot. § IX.

On the first factor, "[p]rivity exists where a party to the original suit is so closely aligned to a nonparty's interest as to be his virtual representative." *Sound Around, Inc. v. O'Donnell*, No. 22-23395-CIV, 2023 WL 2306017, at *2 (S.D. Fla. Mar. 1, 2023). For example, in the context of claim splitting, privity exists when the defendant in the second action is the president of the companies named as defendants in the first action. *Id.* Privity also exists when the second action names as defendants the employees of the defendant in the first action. *See Bakov v. Consol. Travel Holdings Grp., Inc.*, 2020 WL 9934410, at *3 (S.D. Fla. Apr. 9, 2020). Such is the case here. The City is the defendant in both the *Mad Room* and *Tower Hotel* actions. Defendants Torres, Plasencia, and Diaz are each an employee of the City, and their interests are closely aligned. As for the Plaintiff Little Havana Arts Building, LLC and Plaintiff La Gran Fiesta LLC, they are plaintiffs in

---

[2] The claim-splitting doctrine may be asserted in a motion to dismiss. *Vanover*, 857 F.3d at 836, n.1. For the reasons set forth in Defendants' Request for Judicial Notice, filed on behalf of all Defendants, including Torres, Plasencia, and Diaz, the Court may consider the pleadings referenced herein, which are attached to the Request.

[3] As articulated in co-Defendants' motions to dismiss, Plaintiffs' claims are also barred against City officials due to the prior final judgment in *Fuller I*. Defendants Torres, Plasencia, and Diaz incorporate and adopt these arguments, including co-Defendant Carollo's arguments as to Plaintiffs being in privity with each other and that the cases arise from the same facts with the same claims, and co-Defendant Mendez's Motion to Dismiss. *See* Mendez Mot. § I; Carollo Mot. §§ II(A)(2), (3); *see also* City Mot. § I. Plaintiffs' claims against Defendants Torres, Plasencia, and Diaz are barred for the same reasons Plaintiffs' claims against Mendez are barred. Defendants Torres, Plasencia, and Diaz did not, and still do not, agree to be bound by the judgment against Carollo in *Fuller I*. Rather, Plaintiffs' claims are barred because Plaintiffs' claims seek double recovery of a claim against Carollo, seek recovery against Carollo (again), and any claims brought against other City employees, should they even exist, could have been brought in *Fuller I*—but Plaintiffs chose not to do so.

both this case and in *Mad Room*. (*See Mad Room*, ECF 212 (First Am. Compl.) ¶¶ 10, 11.) And the two remaining *Mad Room* plaintiffs (Mad Room, LLC d/b/a Ball & Chain and Altos Mexicano, LLC d/b/a Taquerias) are each owned and controlled, in whole or in part, by Plaintiff Fuller. (*See id*. ¶¶ 8-9.) The same is true with respect to the *Tower Hotel* plaintiffs. Tower Hotel, LLC, Piedra Villas, LLC, Beatstik, LLC, El Shopping, LLC, and Yo Amo Calle Siete, LLC are Plaintiffs both here and in *Tower Hotel*. (*See Tower Hotel*, ECF 132 (Corr. Third Am. Compl.) ¶¶ 3-7.) Privity thus exists among the parties here and in *Mad Room* and *Tower Hotel*.

As to the second factor, "[s]uccessive causes of action arise from the same transaction or series of transactions when the two actions are based on the same nucleus of operative facts." *Vanover*, 857 F.3d at 842. There can be no dispute that this action is based on the same nucleus of operative facts as the *Mad Room* and *Tower Hotel* actions. Both this action and *Mad Room* assert claims based on City officials' alleged unjustified interference with the operations of Ball & Chain and Taquerias through code enforcement, as alleged throughout the FAC, and in particular Counts I and II. (*Compare* FAC ¶¶ 27, 38, 194, 247-256 *with Mad Room*, ECF 212 (First Am. Compl.) ¶¶ 20-27.) Similarly, both this action and *Tower Hotel* assert claims based on allegations that the properties owned by Tower Hotel, LLC, Piedra Villas, LLC, Beatstik, LLC, El Shopping, LLC, and Yo Amo Calle Siete, LLC are subject to being demolished because of the improper actions and inactions of City officials, as alleged throughout the FAC and in particular Counts IV, V, VI, VII, and VIII. (*Compare* FAC p. 2, ¶¶ 299, 384, 401, 473 *with Tower Hotel*, ECF 132 (Corr. Third Am. Compl.) ¶¶ 2, 31-195.) All three actions further share the common nexus of the alleged misconduct being committed in furtherance of Carollo's vendetta against Plaintiffs Fuller and Pinilla. (*See, e.g.,* FAC pp. 1-3; *Mad Room*, ECF 212 (First Am. Compl.) ¶¶ 1, 25, 28, 30-40, 44-46, 69, 129-30, 202, 222; *Tower Hotel*, ECF 132 (Corr. Third Am. Compl.) ¶¶ 1, 12-15.)

Moreover, "it is well settled that a plaintiff may not file duplicative complaints in order to expand their legal rights." *Vanover*, 857 F.3d at 841 (internal quotations omitted). Plaintiffs are doing just that. Plaintiffs seek millions of dollars on behalf of Tower Hotel, LLC, Piedra Villas, LLC, Beatstik, LLC, El Shopping, LLC, and Yo Amo Calle Siete, LLC both here (Counts IV-VIII) and in *Tower Hotel*, (*Tower Hotel*, ECF 132 (Corr. Third Am. Compl.) pp. 29-34). Plaintiffs Fuller and Pinilla seek business disruption and emotional distress damages for alleged interference with the operations of Ball & Chain and Taquerias (Counts I, II), while the Plaintiffs in *Mad Room*, all owned by Fuller, seek the same damages, (*Mad Room*, ECF 212 (First Am. Compl.) ¶¶ 20-27,

14

247). The Plaintiffs are not entitled to a double recovery through various lawsuits and their tactics are impermissible under the claim-splitting doctrine, which "ensures that a plaintiff may not split up his demand and prosecute it by piecemeal, or present only a portion of the grounds upon which relief is sought, and leave the rest to be presented in a second suit, if the first fails." *Vanover*, 857 F.3d at 841 (internal quotations omitted).

If Plaintiffs wanted to sue Defendants Torres, Plasencia, and Diaz for the conduct alleged in the FAC, and if such claims were even existent, then Plaintiffs were required to bring their claims in the other actions. Plaintiffs' failure to do so violates the claim-splitting doctrine and Defendants Torres, Plasencia, and Diaz must be dismissed from the FAC. Because the violation of the claim-splitting doctrine is an incurable defect, the claims against Defendants Torres, Plasencia, and Diaz should be dismissed with prejudice.

V. **THE FAC FAILS TO STATE A SECTION 1983 CONSPIRACY CLAIM.**

As a threshold matter, because the FAC fails to plausibly allege a First Amendment retaliation claim against any of the Defendants, the conspiracy claim fails as a matter of law. *See Denney v. City of Albany*, 247 F.3d 1172, 1190 (11th Cir. 2001) ("Having concluded that Plaintiffs' substantive claims fail on the merits, their conspiracy claim fails as well because Plaintiffs would not have been 'deprived of any rights or privilege' by the Defendants' allegedly wrongful acts."). But even if Plaintiffs did sufficiently allege their First Amendment retaliation claim, the conspiracy claim still fails for two reasons. First, the conspiracy claim is barred as a matter of law by the intra-corporate conspiracy doctrine. Second, the FAC fails to allege a plausible agreement among the Defendants to violate Plaintiffs' First Amendment rights.

  A. **The Conspiracy Claim Is Barred As A Matter Of Law By The Intra-corporate Conspiracy Doctrine.**

Under the intra-corporate conspiracy doctrine, it is impossible "for a single legal entity consisting of the corporation and its agents to conspire with itself." *See McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000); *see also Denney*, 247 F.3d at 1190 (applying intra-corporate conspiracy doctrine to city, city fire chief, and city manager); *Rehberg v. Paulk*, 611 F. 3d 828, 854 (11th Cir. 2010). All individual Defendants are City employees. (FAC ¶¶ 19-30.) Any conspiracy claim is therefore barred as a matter of law. Defendants Torres, Plasencia, and Diaz additionally incorporate and adopt the City's argument on this issue. *See* City Mot. § VII.

> B. **The FAC Fails to Plausibly Allege An Agreement Among Defendants To Violate Plaintiffs' First Amendment Rights.**

Even without the intra-corporate conspiracy doctrine, Plaintiffs' conspiracy claim fails. To survive a motion to dismiss a Section 1983 conspiracy, a plaintiff must allege that the defendants reached an agreement to deprive plaintiff of his constitutional rights and committed an act in furtherance of that conspiracy. *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1261 (11th Cir. 2010) (citing *Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir. 1990) ("The plaintiff attempting to prove such conspiracy must show that the parties 'reached an understanding' to deny the plaintiff his or her rights. The conspiratorial acts must impinge upon the federal right; the plaintiff must prove an actionable wrong to support the conspiracy.").

Plaintiffs do not sufficiently allege an agreement among Defendants Torres, Plasencia, or Diaz and any of the other Defendants to deprive Plaintiffs of their constitutional rights. The FAC merely makes conclusory allegations that they agreed to a conspiracy. (*E.g.* FAC ¶¶ 140, 643, 655.) Moreover, the allegations that the investigations and other conduct of Defendants Torres, Plasencia, and Diaz were performed in accordance with their official duties — a "far cry from showing" an agreement. *See Grider*, 618 F.3d 1240, 1260. And simply being aware of another official's misconduct does not equate to a conspiracy. *See id.* The FAC does not adequately allege a conspiracy claim against Defendants Torres, Plasencia, or Diaz.

## VI. THE STATUTE OF LIMITATIONS BARS PLAINTIFFS' CLAIMS TO THE EXTENT THEY RELY ON ACTIONS TAKEN ON OR BEFORE NOVEMBER 6, 2019.

Section 1983 claims are governed by the forum state's residual personal injury statute of limitations, which in Florida is four years. *See City of Hialeah v. Rojas*, 311 F.3d 1096, 1103 n.2 (11th Cir. 2002) (citing *Burton v. City of Belle Glade*, 178 F.3d 1175, 1188 (11th Cir. 1999)). Defendants Torres, Plasencia, and Diaz incorporate and adopt co-Defendants' arguments demonstrating the FAC is barred by the statute of limitations. *See* Carollo Mot. § II(C); City Mot. § IX; Mendez Mot. § IX; Noriega Mot. § VIII. Any allegations stemming from conduct that occurred before November 6, 2019, four years before the filing of this lawsuit, are time barred.

Many of Plaintiffs' claims are facially barred by the statute of limitations based on Plaintiffs' own allegations. The allegations regarding "LHAB [Ball & Chain] began on February 18, 2018." (FAC ¶ 195.) The allegations relating to La Gran Fiesta, LLC (Taquerias) began before February 14, 2019. (FAC ¶ 258; *see also Mad Room*, ECF 212 (First Am. Compl.) ¶ 22 (alleging

16

this began in January 2018).) The allegations relating to Piedra Villas began on May 9, 2019. (FAC ¶ 300.) The allegations regarding Tower Hotel's comments began on June 12, 2019. (*Id.* ¶ 440.) The allegations regarding Futurama began in 2017. (*Id.* ¶¶ 515-528 (alleging actions on and before January 6, 2018).) The allegations regarding Calle Ocho Marketplace, LLC began on August 20, 2018. (*Id.* ¶ 595.) Because these claims are not subject to the continuing violation doctrine, they must be dismissed. *Tony*, 847 Fed. Appx. 642, 646-47.

  For most of the allegations against Defendants Torres, Plasencia, and Diaz, Plaintiffs failed to include any temporal allegations concerning their allegedly retaliatory conduct. This was intentional. The allegations in the *Fuller I*, *Mad Room*, and *Tower Hotel*, confirm that Plaintiffs' claims against Defendants Torres, Plasencia, and Diaz are partially, if not completely, time barred.

  With respect to Torres, Plaintiffs intentionally did not plead temporal allegations because, as demonstrated in other lawsuits brought by Plaintiffs and their entities, such claims are time barred. *Compare* FAC ¶ 27 (claiming Torres shut down Ball & Chain without a temporal allegation); *and id.* ¶¶ 140, 420 (claiming Torres delayed the Tower Hotel completion without a temporal allegation) *with Mad Room*, ECF 212 (First Am. Compl.) ¶ 75(a) (alleging unjustifiable conduct with respect to Ball & Chain beginning February 18, 2018);[4] *Fuller I*, ECF 125 ¶ 120 (S.D. Fla. June 28, 2019) (Plaintiffs' Second Amended Complaint in *Fuller I* alleges misconduct with respect to Ball & Chain on February 18, 2018); *and Tower Hotel*, ECF 132 (Corr. Third Am. Compl.) ¶¶ 83, 86 (alleging Plaintiffs' Tower Hotel plans began on August 28, 2018 and Plaintiffs first received comments on June 12, 2019).

  The same is true for Diaz—the FAC does not allege when many of his actions occurred. (*See, e.g.*, FAC ¶¶ 579-581 (alleging Diaz's involvement with LHAB TOO without any temporal allegations); *id.* ¶¶ 283-289 (alleging Diaz's involvement with Brickell Station without any temporal allegations)). Plaintiffs allege Diaz circulated "the Excel spreadsheet containing the list of Plaintiffs' properties to target." (*Id.* ¶ 139.) But Plaintiffs already alleged such lists were

---

[4] On a motion to dismiss, when considering whether claims that omit "critical dates" are barred by the statute of limitations, "courts may take judicial notice of public records, such as a pleading filed in another court, because such documents are capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." *Navarro v. City of Riviera Beach*, 192 F. Supp. 3d 1353, 1364-65 (S.D. Fla. 2016) (internal quotations omitted) (taking judicial notice, on a motion to dismiss, of a pleading in another case "to ascertain" the "critical date" of a plaintiff's arrest in a section 1983 action to determine whether the claim is barred by the statute of limitations).

circulated in December 2017 and February 2019. (*Id.* ¶¶ 72, 75.); *see also Fuller I*, ECF 125 ¶¶ 54, 59-62 (Plaintiffs' Second Amended Complaint in *Fuller I* alleges that this "spreadsheet" or "list" was drafted by Carollo immediately upon Carollo taking office in 2017).) The only allegations with specific temporal allegations, such as the allegation that Diaz passed Ordinance 13936 on October 22, 2020 (*id.* ¶ 211), are protected by immunity. *See* § I, *supra*.

As for Plasencia, Plaintiffs alleged without any temporal allegation that he would send fire inspectors to Plaintiffs' properties with the instruction to manufacture violations. (FAC ¶ 148). With respect to LHAB, they claim Plasencia directly or indirectly would arbitrarily search for, create, or manufacture violations. *Id.* ¶ 211. However, Plaintiffs already claimed that this occurred throughout 2018, including on July 6, 2018, and August 28, 2018. *Mad Room*, ECF 212 (First Am. Compl.) ¶¶ 75(c), (d).

The claims against Torres, Plasencia, and Diaz are time barred at least in part, if not completely. Allowing amendment to plead dates for certain acts would be futile. As demonstrated by both the FAC and by Plaintiffs' other lawsuits, Plaintiffs cannot make a good faith argument that all of the acts occurred within the statute of limitations period, and Plaintiffs' deliberate omissions should not avoid dismissal.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the FAC against Torres, Plasencia, and Diaz.

**REQUEST FOR HEARING**

Torres, Plasencia, and Diaz, pursuant to S.D. Fla. L.R. 7.1(b)(2), respectfully request that the Court set this matter for oral argument. Oral argument would be helpful to the Court because it would help focus the Court's analysis of the material allegations and the applicability of those allegations to the complex areas of law at issue here. Torres, Plasencia, and Diaz estimate that the time required for argument on issues specific to them would be one hour.

Dated: February 29, 2024.

Respectfully submitted,

By: /s/          *Jorge L. Piedra*

Jorge L. Piedra (FBN 88315)
jpiedra@kttlaw.com
Michael R. Lorigas (FBN 123597)
mlorigas@kttlaw.com
Daniel T. DiClemente (FBN 1025369)
ddiclemente@kttlaw.com
**KOZYAK TROPIN & THROCKMORTON LLP**
2525 Ponce de Leon Boulevard, 9th Floor
Miami, FL 33134
(305) 372-1800

*Counsel for Defendants Luis Torres, Adrian Plasencia, and Rene Diaz*

**CERTIFICATE OF SERVICE**

I certify that on February 29, 2024, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify that this document is being served today on all counsel of record by transmission of Notices of Electronic Filing generated by CM/ECF.

By: /s/ *Jorge L. Piedra*

Jorge L. Piedra