# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 1:23-cv-24251-FAM

WILLIAM O. FULLER,
MARTIN PINILLA, II,
THE BARLINGTON GROUP, LLC,
CALLE OCHO MARKETPLACE, LLC,
YO AMO CALLE SIETE, LLC,
LITTLE HAVANA ARTS BUILDING, LLC,
LITTLE HAVANA ARTS BUILDING TOO, LLC,
TOWER HOTEL, LLC,
BRICKELL STATION, LLC,
PIEDRA VILLAS, LLC,
FUTURAMA, LLC,
EL SHOPPING, LLC,
BEATSTIK, LLC,
VIERNES CULTURALES/CULTURAL FRIDAYS, INC.,
LITTLE HAVANA BUNGALOWS, LLC,
LHAB TRES, LLC,,

       Plaintiffs,

v.

CITY OF MIAMI,
JOE CAROLLO, in his individual capacity,
ARTHUR NORIEGA, in his individual capacity,
VICTORIA MENDEZ, in her individual capacity,
RACHEL DOOLEY, in her individual capacity,
ASAEL MARRERO, in his individual capacity,
DANIEL S. GOLDBERG, in his individual capacity,
WILLIAM ORTIZ, in his individual capacity,
LUIS TORRES, in his individual capacity,
ADRIAN PLASENCIA, in his individual capacity,
RENE DIAZ, in his individual capacity,
IVONNE BAYONA, in her individual capacity,
JOHN DOES 1-20,

       Defendants.

_____/

## DEFENDANT ARTHUR NORIEGA'S MOTION TO DISMISS
## PLAINTIFFS' FIRST AMENDED COMPLAINT

Defendant, Arthur Noriega ("Noriega"), files his Motion to Dismiss Plaintiffs' First Amended Complaint ("Complaint", "Compl.") (DE 77), pursuant to F.R.C.P. 8, 10, and 12(b).

## I.        Introduction

Plaintiffs are weaponizing the First Amendment in yet another saga in their multiyear crusade against City Commissioner Joe Carollo ("Carollo") and the City of Miami (the "City"). Plaintiffs have filed their Complaint under the guise of 42 U.S.C. § 1983 in an attempt to stop the City and eleven City employees from enforcing the law against them. Contrary to Plaintiffs' assertion, Defendants are not targeting them. Defendants are holding the Plaintiffs accountable to the rules that apply to them as property owners and businesses that operate in the City.

The Complaint must be dismissed for multiple, independent reasons. First, Plaintiffs' Complaint is a futile effort to rearrange the deck chairs on the Titanic. It is littered with bombastic and hyperbolic claims of cabals, conspiracies, and assassins in an effort to hide the inescapable fact that the Complaint still fails to state a claim. Despite this Court's insistence that Plaintiffs specifically allege which Plaintiff engaged in what protected activity, and which Defendant retaliated for said protected activity (2/2/2024 Hrg. Tr. 44:16-18, 45:9-12, 47:19-23 (excerpts attached as Ex. 7)), the Complaint continues to double down on improper lumping of Plaintiffs' and Defendants' alleged actions.

The Complaint alleges that all "Plaintiffs" collectively (and in two instances, "Plaintiffs Fuller and Pinilla" together), engaged in protected speech or conduct. *See* Ex. 1 (Chart of Plaintiffs' Alleged Protected Activity); *see also* Compl. at ¶¶ 45, 162. These instances of activity allegedly engaged in by fifteen entities and two individuals *collectively* cannot support Plaintiffs' retaliation claims because they fail to comply with the requirements to plead facts to show who spoke, who retaliated based on that speech, and who was damaged.

In implicit recognition of its failure to specify instances of speech by any one Plaintiff, the Complaint attempts to circumvent First Amendment pleading requirements based on allegations of the entity Plaintiffs' "association" with Fuller and Pinilla. However, there are two types of protected association under the First Amendment: intimate and expressive association, and the Complaint is devoid of any allegations supporting either. Rather, the association as alleged is commercial and therefore is not protected by the First Amendment.

Additionally, the Complaint must be dismissed for the following, *inter alia*, reasons:

- The limited factual allegations about Noriega are not plausible because they are

1

demonstrably false.

- Plaintiffs do not have standing to bring this action.
- Plaintiffs fail to plausibly state a claim for First Amendment retaliation.
- Noriega had probable cause and non-retaliatory reason to take action against Plaintiffs.
- Noriega is entitled to qualified immunity.
- The Complaint is time-barred.
- Plaintiffs are engaged in improper claim splitting.[1]

## II.    The Complaint remains a shotgun pleading because Plaintiffs have not corrected the pleading deficiencies that the Court identified.

The Eleventh Circuit routinely condemns shotgun pleadings similar to the Complaint because they violate Rule 8's requirement that a plaintiff plead "a short and plain statement of the claim showing that the pleading is entitled to relief." *Jackson v. Bank of America, N.A.*, 898 F.3d 1348, 1357-58 (11th Cir. 2018) (affirming dismissal of shotgun pleading). Shotgun pleadings can also violate Rule 10(b)'s requirement that claims be set forth "in numbered paragraphs, each limited as far as practicable to a single set of circumstances." *See Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015). Recognizing these deficiencies in the original complaint, the Court instructed Plaintiffs to replead and to specifically allege which Plaintiff engaged in what protected activity, and which Defendant retaliated for said protected activity. *See* Ex. 7 at 44:16-18, 45:9-12, 47:19-23. The Complaint fails to remedy these issues.

The most glaring deficiency of the Complaint is that, despite the Court's instructions, Plaintiffs continue to allege "Plaintiffs" and "Defendants" over 250 times each, and improperly lump numerous Defendants together in broad, conclusory statements, often without specifying which Defendant is responsible for what acts that span more than five years and 671 paragraphs of the Complaint. *See, e.g., D.B.C. Corp. v. Nucita Venezola, C.A.*, 464 F. Supp. 3d 1323, 1328 (S.D. Fla. 2020) (dismissing complaint as shotgun pleading because complaint alleged conduct by "Defendants" generally but did not identify which defendant was responsible for what conduct); *Gazzola v. NCL (Bahamas) Ltd.*, No. 19-21535-CIV-MORENO, 2019 WL 3067506, at *2 (S.D.

---

[1] Noriega incorporates by reference all arguments and positions raised by other Defendants in their Motions to Dismiss, if applicable, as additional grounds for dismissal of the Complaint, including the motion to strike under Rule 12(f) on behalf of Defendant Daniel S. Goldberg.

Fla. July 12, 2019) (dismissing allegations that grouped defendants together because they did not "give fair notice of what one defendant allegedly failed to do as opposed to the other"). *See, e.g.,* Compl. at ¶¶ 86, 101, 111, 121, 151, 486, 550 (against 5-7 Defendants). Noriega cannot adequately respond because Plaintiffs continue to group Defendants together. *See Weiland*, 792 F.3d at 1321-23 (holding that complaint that asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against" should be dismissed as shotgun pleading); *Gazzola*, 2019 WL 3067506, at *1 (discussing four types of shotgun pleadings and citing *Weiland*).

There is a myriad of examples of improper lumping with no specificity as to which Plaintiff spoke and which Defendant engaged in an activity against that Plaintiff. Look no further than the primary allegation of "Plaintiffs'" alleged protected speech and conduct:

> **Plaintiffs** exercised their right to free speech and free association by, among other things, supporting Mr. Leon in the run-off election through advertisements and hosting a rally for Mr. Leon on **Plaintiffs'** property, by filing an ethics complaint against Carollo, by filing a Section 1983 action against Carollo, and by exposing Carollo's hypocrisy with his own unpermitted work and code violations. In addition, Carollo also believed that **Plaintiffs** had exercised their First Amendment rights to finance a lawsuit challenging his election and participating in efforts to recall him from office. Once the other Defendants became involved, **Plaintiffs** continued to exercise their First Amendment rights by filing lawsuits, including to stop the demolition of their buildings.

Compl. at ¶ 162 (emphasis added); *see also id.* at ¶ 45. What is missing from this paragraph and the Complaint is any allegation that specifically identifies which Plaintiff engaged in this alleged purported speech and conduct. *See* Ex. 1 (Chart of Plaintiffs' Alleged Protected Activity).

Additionally, the Complaint is a shotgun pleading to the extent certain counts incorporate allegations of other counts. *See* Compl. at ¶¶ 330, 514, 616, 622, 642. Plaintiffs have asserted three counts against *all* Defendants – for violation of Barlington's (Count XV), Fuller and Pinilla's (Count XVI), and all Plaintiffs' (Count XVII) constitutional rights and conspiracy. In doing so, Plaintiffs reallege all preceding 615, 621, and 641 paragraphs, respectively, without distinguishing among Defendants, their conduct, and how that conduct gives rise to each claim. *See Magula v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (dismissing complaint where "all defendants are charged in each count. The complaint is replete with allegations that 'the defendants' engaged in certain conduct, making no distinction among" them).

Because the Complaint hopelessly complicates any effort to untangle what facts apply to

which claims, Plaintiffs, or Defendants, it violates Rules 8 and 10 and should be dismissed as a shotgun pleading and repleaded in compliance with the Rules. However, as set forth below, any efforts to replead would be in vain because each Plaintiff cannot bring a plausible claim against each Defendant. Accordingly the Complaint should be dismissed with prejudice.

### III. The Complaint cannot plausibly state a claim because the limited factual allegations about Noriega are demonstrably false.

This Court is the gatekeeper to determine whether the Complaint plausibly gives rise to an entitlement to relief. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is **plausible on its face**.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (emphasis added)). To the extent Plaintiffs have alleged specific conduct by Noriega, those limited allegations cannot plausibly state a claim against Noriega because they are demonstrably false.

For example, Plaintiffs allege that Carollo, Noriega, Mendez, Dooley, Marrero, and Diaz "passed ordinances" to shut down one of Fuller's properties. *See* Compl. at ¶ 86; *see also id.* at ¶¶ 121, 209, 234, 272, 325, 357, 385, 386, 398, 422, 477, 558. This allegation is factually and legally impossible because only commissioners can pass ordinances and as the City Manager, Noriega has no authority to pass an ordinance. *See* City of Miami Charter, § 4(a) ("The city commission shall constitute the governing body with powers (as hereinafter provided) to pass ordinances adopt regulations and exercise all powers conferred upon the city except as hereinafter provided."); § 15 ("The city manager shall be the head of the administrative branch of the city government.").

As a basis for their retaliation claims, Plaintiffs allege that Defendants including Noriega conjured or caused imposition of fictitious or improper code violations or changed policies to favor arbitrary issuance of such violations. *See* Compl. at ¶¶ 101, 284, 335. Again, these allegations are demonstrably false. Plaintiffs admitted they are Code violators and they performed work without permits, including admissions in their Compliance Agreements with the City. *See Fuller I*, Def. Tr. Exs. 5, 6, 9-11, 13, 16, 24, 28-30, 32-34, 37, 39, 41, 43, 45, 63-80, 89, 90, 98, 100, 101, 111, 603, 604, 716, 719; *see also* Ex. 5 (DE 562 Tr. 5/11/23 (Fuller) 30:24-31:2, 186:13-187:6).[2]

---

[2] The Court can consider testimony and evidence from the 2023 trial of *Fuller v. Carollo*, Case #18-cv-24190-RS (S.D. Fla.) ("*Fuller I*") to determine the objective falsity of Plaintiffs' allegations. *See Roberto v. Shendell & Associates, P.A.*, No. 17-cv-81213, 2018 WL 1367445, at *2 (S.D. Fla. March 16, 2018) (taking judicial notice of public records attached to motion to

Because these allegations cannot possibly be true, they cannot satisfy the *Twombly* standard, and, any claims based upon them must be dismissed.

**IV.    Plaintiffs do not have standing to bring this action.**

The Court lacks subject matter jurisdiction over the Complaint because Plaintiffs cannot establish standing, or that they have a "case" or "controversy" as required by Article III of the Constitution. *See Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1245 (11th Cir. 2020) (defining Article III standing); *Alabama v. United States Envtl. Prot. Ag.*, 871 F.2d 1548, 1554 (11th Cir. 1989) ("Standing is a jurisdictional prerequisite to suit in federal court. . . .") (citations omitted). In order to establish standing, Plaintiffs must allege facts that, if true, would support the following elements: "(1) an injury in fact that (2) is fairly traceable to the challenged action of the defendant and (3) is likely to be redressed by a favorable decision." *Jacobson*, 974 F.3d at 1245 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). Each of the seventeen Plaintiffs must satisfy each of these elements for each of the twelve Defendants. *See Walt Disney Parks & Resorts United States, Inc. v. Desantis*, No. 4:23-cv-163, 2024 WL 442546, at *2 (N.D. Fla. Jan. 31, 2024) ("[B]ecause 'standing is not dispensed in gross,' [Plaintiff] must show standing as to each Defendant it has sued.") (citation omitted). Further, the Eleventh Circuit places a high burden on plaintiffs to establish standing "[b]ecause [it] implicates jurisdiction. [Thus], a court must satisfy itself that the plaintiff has standing before proceeding to consider the merits of her claim, no matter

---

dismiss that defendant used to demonstrate that plaintiff's allegations were objectively false); *Bateman Harden PA v. Francis*, No. 4:10CV136-MRC/CAS, 2012 WL 3689402, at *2 (N.D. Fla. Aug. 27, 2012) (taking judicial notice of documents from other lawsuit because "court documents from a prior proceeding are matters of public record 'capable of accurate and ready determination by resort to sources whose accuracy could not reasonably be questioned"). Further, the Complaint relies heavily on testimony and evidence from *Fuller I. See, e.g.*, Compl. at pp. 1-2, ¶¶ 85, 108, 296-299, 330, 350, 352, 356-359. A court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if it is central to the plaintiff's claim and undisputed (authenticity of the document not challenged). *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005); *Horsley v. Feldt*, 304 F.3d 1125, 1134-35 (11th Cir. 2002). Excerpts of the trial transcripts in *Fuller I* that are cited herein are attached hereto as Ex. 5, and their authenticity cannot be challenged (*Fuller I*, DE 506, DE 546-569). To any extent Plaintiffs' claims are based on Noriega's testimony as a witness in *Fuller I* or otherwise (*see* Compl. at ¶¶ 81, 133), he is entitled to absolute immunity. *See Rehberg v. Paulk*, 566 U.S. 356, 367 (2012) (original emphasis) (citation omitted) ("trial witness has absolute immunity with respect to any claim based on the witness' testimony."); *Baker v. City of Hollywood*, 391 F. App'x 819, 822 (11th Cir. 2010) (affirming dismissal of complaint for constitutional violations and conspiracy under § 1983).

how weighty or interesting." *Gardner v. Mutz*, 962 F.3d 1329, 1339 (11th Cir. 2020) (citation omitted). As set forth below, none of the Plaintiffs has met these requirements as to Noriega.[3]

### A.      Plaintiffs have not established injury in fact.

In order to satisfy the injury in fact requirement, Plaintiffs must establish "an invasion of a legally protected interest that is both (1) 'concrete and particularized' and (2) 'actual or imminent, not conjectural or hypothetical.'" *Support Working Animals, Inc. v. Governor of Fla.*, 8 F.4th 1198, 1201 (11th Cir. 2021) (quoting *Lujan*, 504 U.S. at 560). A claim for retaliation, and therefore standing, lies directly with the person who was the subject of the retaliation, not with a third person. *See, e.g., Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1188-89 (11th Cir. 1997) (stating that an employee did not have standing to pursue claim on behalf of family member who was the target of employer's retaliation because claim lies directly with the family member who was the subject of retaliation). A plaintiff must claim an injury to his/her own personal legal rights and cannot rely on a third party's rights or interests in bringing a cause of action. In the case of a corporation specifically, since it constitutes a legal entity separate and apart from its owners, the shareholders cannot sue to vindicate its alleged constitutional rights, even where they are sole stockholders. *Colon-Pratts v. Municipality of San Sebastian*, 194 F. Supp. 2d 67, 72 (D.P.R. 2002); *see also Muldrow v. Davis*, No. 4:08-CV-109-SPM, 2009 WL 903281, at *4 (N.D. Fla. Mar. 30, 2009) ("Stockholders may bring § 1983 actions only if they have suffered some injury which is distinct from that suffered by the corporation, i.e., not an indirect, derivative injury."). Accordingly, Fuller and Pinilla have no standing to assert claims for injuries allegedly suffered by their entities.

As to the entities' claims, many of the counts allege precisely what they cannot – harm to yet another entity. For example, Plaintiffs asserting Counts I, II, IV, VI, VII, VIII, X, and XII are entities that own property. *See* Compl. at ¶¶ 194, 247, 298, 349, 394, 431, 519, 580. While each entity seeks damages in its own name, it fails to allege any facts to support alleged injury. Instead, the facts relate to purported harm suffered by each entity's tenants. There are no allegations supporting the conclusion that that harm to the tenants has resulted in harm to Plaintiffs. Count XV is by "the master head and umbrella company" that manages Plaintiffs' properties. *See* Compl. at ¶ 618. That entity has not alleged any injury to itself. Because Plaintiffs asserting these counts

---

[3] Plaintiffs also lack standing as they fail to allege claims asserted by the entities are authorized. For example, the Complaint alleges that Viernes is a non-profit entity whose former chairman was Fuller, *see* Compl. at ¶¶ 14, 486, with no allegation that Viernes authorized the lawsuit or claims.

have not alleged any facts to give rise to a reasonable inference that there has been retaliation against them (and, therefore, no harm that has been suffered), they have not established injury in fact. *See Jacobson*, 974 F.3d at 1246 (holding plaintiffs did not establish injury because there was no evidence as to what harm they suffered or would suffer); *see also Coker v. Warren*, 660 F. Supp. 3d 1308, 1325 (M.D. Fla. 2023) (holding plaintiff could not establish injury in fact because he did not "place[ ] herself among the injured" and did not identify any discernible injury as to plaintiff).

To the extent Plaintiffs equate their attempts to preserve Little Havana's historical significance and cultural identity with speech and the City's alleged destruction or attempts to destroy those properties as retaliation, *see* Compl. at ¶ 35, these allegations fall significantly short of establishing injury in fact. *See Gardner*, 962 F.3d at 1341 (holding that assignment of meaning and message to a monument, its consequent removal, and psychological consequences thereof does not constitute injury in fact). Similarly, simply disagreeing with government action and recitation that the government is violating one's constitutional rights do not establish a concrete injury in fact. *See Ladies Mem'l Ass'n v. City of Pensacola*, 34 F.4th 988, 993 (11th Cir. 2022).

### B.   Plaintiffs have not established traceability.

Even if Plaintiffs had sufficiently alleged injury in fact, which they have not, they still lack standing because those purported injuries are not traceable to Noriega. To satisfy this element of standing, which is also described as a "causation requirement," a plaintiff's injury must be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party . . . ." *Jacobson*, 974 F.3d at 1253 (quoting *Lujan*, 504 U.S. at 560)); *see also City of S. Miami v. Governor,* 65 F.4th 631, 640 (11th Cir. 2023) (stating that Article III standing requires a plaintiff to show a "causal connection" between its injury and the defendant's challenged conduct) (citation omitted). The Court must ask what Noriega did wrong, and how do Plaintiffs trace their injury to this conduct. *See Lewis v. Governor of Alabama*, 944 F.3d 1287, 1301 (11th Cir. 2019) (finding that plaintiffs did not establish traceability because, based on complaint allegations, defendant did not do or fail to do anything that contributed to plaintiffs' harm). Because Plaintiffs have not alleged how Noriega caused them harm, they cannot satisfy this requirement.

Plaintiffs' factual allegations about what Noriega purportedly did are limited primarily to their assertion that he "enacted" certain ordinances or amendments. *See, e.g.,* Compl. at ¶¶ 209, 221, 234, 272, 325, 357. These allegations do not plausibly establish traceability because, as set forth in Section III, *supra*, this is a factual impossibility. *See Jacobson*, 974 F.3d at 1253 (holding

that plaintiffs could not establish traceability where plaintiffs could not show that defendant was tasked with printing or listing candidates' names on ballots, and their injury arose from the order on which candidates' names were printed and rejecting the idea that an official's role in duly enacting legislation could establish traceability); *O'Boyle v. Sweetapple*, 187 F. Supp. 3d 1365, 1373 (S.D. Fla. 2016) (dismissing § 1983 claim, in part, because improper subjective motivation for enacting otherwise neutral ordinance cannot serve as basis for First Amendment violation). Elsewhere, Plaintiffs allege that Noriega measured the distance between Taquerias and a church, but they do not explain how this harmed them. *See* Compl. at ¶ 253-54. Plaintiffs' allegation that Noriega "instructed the building department" to impose an unsafe structure violation on Calle Siete does not establish traceability because, as Plaintiffs allege, it was the building department that imposed that violation. *See* Compl. at ¶ 335; *see also City of S. Miami*, 65 F.4th at 640 (holding that traceability not established where it was others who detained and transported illegal aliens, not the defendants named in lawsuit); *Walt Disney Parks*, 2024 WL 442546, at *3 (holding that allegations others were acting under defendant's thumb were legally insufficient). In other counts, Plaintiffs name Noriega as a defendant but do not allege any conduct at all by him. *See, e.g.,* Counts III, X, XII, XIV, XVI; *see also Walt Disney Parks*, 2024 WL 442546, at *3 (holding traceability not established where plaintiffs failed to articulate any injury attributable to that defendant). The conduct alleged in Counts I, X, and XIII also fails to satisfy the traceability requirement because, in whole or in part, those claims are based on conduct that predates Noriega being the City Manager. Plaintiffs have not established traceability as to Noriega's alleged past conduct.

### C.   Plaintiffs have not established redressability.

Plaintiffs also fail to establish standing because they have not alleged sufficient facts from which to conclude that any purported injury allegedly caused by Noriega (again, neither requirement which they have alleged) would be redressable by relief against Noriega. That is, because Noriega did not cause Plaintiffs any injury, relief against him would not address Plaintiffs' claimed injuries. *See Jacobson*, 974 F.3d at 1254 (finding relief against defendant secretary of state would not satisfy redressability requirement where injuries were not traceable to secretary).

Assuming an independent analysis of this element were necessary, Plaintiffs still fail to plead sufficient facts to establish redressability. Redressability requires a plaintiff to show that a decision in its favor would "'significant[ly] increase . . . the likelihood that [it] 'would obtain relief that directly redresses the injury' that [it] claims to have suffered." *Lewis*, 944 F.3d at 1301

(citations omitted). It must be the "effect of the court's judgment on the defendant . . . that redresses the plaintiff's injury." *Jacobson*, 974 F.3d at 1254 (citation omitted). Here, no relief by the Court against Noriega could redress Plaintiffs' purported harm. This is particularly true because most, if not all, of Plaintiffs' claims arise from Noriega's alleged past actions, yet the relief Plaintiffs seek is prospective. Under such circumstances, courts find that plaintiffs cannot establish redressability. *See, e.g., Donovan v. Rivadeniera*, 557 F. Supp. 3d 1236, 1245 (S.D. Fla. 2021) (holding that protesters failed to establish redressability where their claims arose from defendants' past actions, and there were no allegations that defendants would respond similarly if plaintiffs protested again).

As to that prospective relief, while Plaintiffs' request is vague, they seem to be asking the Court to require the Defendants to stop enforcing duly enacted ordinances against them. This is essentially an obey-the-law injunction that has already been rejected by the Court in *Fuller I. See Fuller I*, Doc. 621 at 3 (describing injunction sought by plaintiffs as "pure malarkey – an injunction is not a 'get out of jail free' card"); *see also* 2/2/2024 Hrg. Tr. 24:3-4 (Ex. 7) ("I'm not sure I can restrain law enforcement from enforcing certain laws."). And it is not even clear that the relief that Plaintiffs seek is enforceable against Noriega because, as set forth in Section III, *supra*, Plaintiffs' primary gripe with him is his "passage" of ordinances, yet he has no authority to do so. *See Lewis*, 944 F.3d at 1301-02 (redressability not established where plaintiffs' requested relief against attorney general would not significantly increase the likelihood their employers would increase pay because it was with employers who were not paying the requested wages). Furthermore, most of Plaintiffs' alleged protected conduct occurred in 2017 and 2018, prior to Noriega becoming City Manager. It is not plausible to conclude that the Court can award Plaintiffs any relief against Noriega to address others' conduct that occurred before his tenure.

**V.      Plaintiffs fail to state a claim for retaliation based on freedom of association.**

A significant change in Plaintiffs' new pleading it that it attempts to bring claims for First Amendment freedom of association. All fifteen entity Plaintiffs' causes of action appear to solely assert that their First Amendment rights were violated because they were "targeted for [their] association with Plaintiffs Fuller and Pinilla, by which Defendants violated [their] rights to . . . association and assembly". *See* Compl. at Counts I-XV and ¶¶ 190, 244, 283, 295, 331, 346, 391, 427, 483, 515, 549, 577, 606, 617. These allegations fail to plausibly state a First Amendment claim because Plaintiffs have alleged nothing more than a commercial relationship, which is not a cognizable basis for a First Amendment freedom of association claim.

There are two types of protected association under the First Amendment: intimate association and expressive association. *See McCabe v. Sharrett*, 12 F.3d 1558, 1562–63 (11th Cir.1994) (citing *Roberts v. United States Jaycees*, 468 U.S. 609, 617-18 (1984)). The right to intimate association is "the freedom to choose to enter into and maintain certain intimate human relationships," whereas the right to expressive association is "the freedom to associate for the purpose of engaging in activities protected by the First Amendment, such as speech, assembly, petition for the redress of grievances, and the exercise of religion." *McCabe*, 12 F.3d at 1563.

Plaintiffs have not alleged any facts to establish either intimate or expressive association. Plaintiffs do not and cannot assert claims based on intimate association standing, which encompass relationships such as "marriage, childbirth, the raising and education of children, and cohabitation with one's relatives." *Id.*; *see also Bd. of Dir. of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 546 (1987) (holding relationship among rotary club members not sufficiently intimate). Nor have Plaintiffs alleged facts to establish an expressive association, which exists when "the purpose of the association is to engage in activities independently protected by the First Amendment." *McCabe*, 12 F.3d at 1563; *see also Weinberger v. Navarro*, 957 F. Supp. 220, 223 (S.D. Fla. 1997) (dismissing First Amendment association complaint where plaintiff failed to allege group activity to pursue goals independently protected by First Amendment).

Here, Plaintiffs have not alleged, nor can they, that the predominant purpose of their association was to petition the government, to engage in speech, to redress any grievances, or to exercise religion. Instead, the entity Plaintiffs are in commercial relationships with Fuller and Pinilla. This is fatal for Plaintiffs' association claims because "activities and services that are primarily commercial rather than communicative do not qualify as expressive association that is protected under the First Amendment." *Edmondson v. Velvet Lifestyles, LLC*, No. 15-24442-CIV, 2016 WL 7048363, *10 (S.D. Fla. Dec. 5, 2016). As the Eleventh Circuit has explained, "the more commercial the associational interest involved the less likely first amendment protection attaches." *Rivers v. Campbell*, 791 F.2d 837, 840 (11th Cir. 1986) (holding that snow cone vendor's association was based on commercial gain only and therefore "association" was not entitled to First Amendment protection) (citing *Roberts*, 468 U.S. at 609); *see also United States v. Bell*, 414 F.3d 474, 485 (3d Cir. 2005) (holding that seller of tax avoidance strategies ran primarily a commercial enterprise, not a political group, and therefore was not entitled to First Amendment protection); *IDK, Inc. v. Clark County*, 836 F2d 1185, 1196 (9th Cir. 1988) (holding that escort

service was not entitled to expressive association protective because their activities and purposes were primarily commercial, not communicative); *Skiles v. City of Reading*, No. 10-2270, 2011 WL 53069, *5 (E.D. Pa. Jan. 7, 2011) (dismissing First Amendment association claim by plaintiff who claimed that city was unfairly enforcing zoning rules and targeting his rental properties and restaurants where plaintiff failed to allege that his establishments functioned as an organization for the purpose of engaging in political speech, activism, or any other social or cultural end and it was apparent that bar was "first and foremost, a commercial enterprise with no expressive purpose"); *Little v. Jacksonville State Univ.*, No. CV-07-BE-002-E, 2008 WL 11422611, *7 (N.D Ala. March 31, 2008) (dismissing complaint filed by former research lab employees, in part, due to failure to allege facts to establish either intimate or expressive association).

Indeed, the Supreme Court has determined that there is only minimal constitutional protection for commercial association. *Roberts*, 468 U.S. at 634 (O'Connor, J., concurring). In determining whether an association is commercial, courts look to the "purpose" of the association and whether the activities are "predominantly" commercial or expressive. *Id.* at 635-37. Here, based on the allegations, it is undisputed that the sole purpose of the corporate entities' association with their members is solely commercial (operating a commercial business or property), and the predominant purpose of these commercial associations is to make money. Look no further than the alleged damages exceeding $100 million, which includes loss of revenue, lost reinvestment opportunity, and lost rent and sale value. *See* Compl. at ¶¶ 188, 240, 279, 291, 327, 342, 387, 423, 479, 511, 545, 573, 584, 602, 613. The Supreme Court in *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 649-650 (2000) (citing *Roberts*, 468 U.S. at 636), adopting Justice O'Connor's concurrence in *Roberts*, analyzed whether the Boy Scouts was a commercial or expressive association and concluded it was expressive because it is an association that seeks to transmit a system of values and therefore engages in expressive activity.[4] Here, the corporate entities, as the vehicles for owning commercial businesses and properties, cannot be considered expressive but rather only commercial associations and thus they are not entitled to assert First Amendment retaliation claims based on association. Plaintiffs' relationships are commercial, and serve no expressive purpose

---

[4] In addition to the Supreme Court adopting the concurrence, circuit courts have acknowledged the adoption. *See, e.g., Green v. Miss United States of America, LLC*, 533 F. Supp. 3d 978 (D. Or. Apr. 8, 2021), *aff'd*, 52 F.4th 773 (9th Cir. 2022) (citations omitted) ("While Supreme Court concurrences generally lack precedential effect, the Ninth Circuit has adopted the expressive-commercial distinction as described by Justice O'Connor, as have most other circuits.").

protected by the First Amendment. Each Plaintiff that has asserted a freedom of association claim, other than Viernes, is a Florida for profit entity. *See* Compl. at ¶¶ 3-17. The Complaint is devoid of *any* allegation from which the Court can conclude Plaintiffs associated to engage in activities protected by the First Amendment. As for Viernes, its purpose was to coordinate a weekly festival. *Id.* at ¶ 486. This failure to allege any facts to support the conclusion "that expression is a significant or necessary component of [Plaintiffs'] activities," *IDK, Inc.*, 836 F.2d at 1195, compels dismissal of Plaintiffs' freedom of association claims against Noriega.

**VI.     Plaintiffs fail to plausibly state a claim for retaliation based on speech.**

To state a First Amendment retaliation claim based on speech, "a plaintiff must establish first, that his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech." *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005). As set forth below, the Court should exercise its gatekeeping role and dismiss the Complaint because Plaintiffs have failed to adequately allege sufficient facts to state a plausible claim for First Amendment retaliation based on speech.[5]

**A. Plaintiffs fail to satisfy the first prong requiring that each Plaintiff allege constitutionally protected speech or conduct.**

To satisfy the first prong of a First Amendment retaliation claim, each plaintiff must allege sufficient facts for the Court to conclude "that his speech or act was constitutionally protected." *Bennett*, 423 F.3d at 1250. As set forth below, each Plaintiff has not satisfied this requirement.

**1. Each Plaintiff fails to allege it engaged in its own protected activity.**

While the Complaint attempts to separate the Plaintiffs into different counts, it falls significantly short of satisfying the first element of a retaliation claim, which requires that each Plaintiff allege that "he himself" engaged in constitutionally protected activity. *See Easton v. Sundram*, 947 F.2d 1011, 1015 (2d Cir. 1991) (affirming dismissal and holding individual's retaliation claim "fails at the outset because he himself has not engaged in conduct deserving of

---

[5] In *Davis v. Fresh Mkt., Inc.*, No. 19-cv-24245-PCH, 2020 WL 3489369 (S.D. Fla. June 26, 2020) (Huck, J.), defendants primarily argued that plaintiffs' deceptive practices claim was preempted by federal law. The court rejected defendants' preemption argument, however, acting as the gatekeeper, the court dismissed the complaint with prejudice concluding plaintiffs' allegations did not plausibly state a claim. Here, Plaintiffs' Complaint should suffer a similar fate.

first amendment protection" where corporation, not individual, engaged in protected activity), *abrogated on other grounds, Washington v. County of Rockland*, 373 F.3d 310 (2d Cir. 2004); *see also Falco v. Zimmer*, 767 F. App'x 288, 307 (3d Cir. 2019) (affirming dismissal and finding that activity was not protected under First Amendment, in part, because "one cannot claim First Amendment protection for the speech of another"); *Prestopnik v. Whelan*, 253 F. Supp. 2d 369, 374 (N.D.N.Y. 2003), *aff'd*, 83 Fed. App'x 363 (2d Cir. 2003) ("[P]laintiffs may not rely upon the conduct of others to support their claimed First Amendment violations."); *Lilly v. Town of Lewiston*, No. 1:18-CV-0002 EAW, 2019 WL 2501555, at *5 (W.D.N.Y. June 17, 2019) (granting dismissal, "Plaintiff has not alleged that he himself engaged in any protected activity."). This is because constitutional rights are personal rights that "may not be vicariously asserted." *See Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978) (citation omitted); *see also Leake v. Drinkard*, 14 F.4th 1242, 1247 (11th Cir. 2021) ("[W]hether that personal right [protected by the First Amendment] has been abridged depends crucially on whose speech is at issue."); *Wolff v. Cash 4 Titles*, 351 F.3d 1348, 1353 (11th Cir. 2003) ("plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties").

As discussed in Section II, *supra*, **none** of the Plaintiffs has alleged his or its **own** instance of protected activity. *See also* Ex. 1 (Chart of Alleged Protected Activity). Instead, "Plaintiffs'" exercise of free speech is exclusively alleged to be collective. *See* Compl. at ¶¶ 45, 162. For this reason alone, Plaintiffs cannot satisfy the first element of their First Amendment speech claim.

Moreover, several Plaintiffs did not even exist in 2017-2018, when the Complaint alleges that "Plaintiffs" allegedly supported Carollo's opponent and filed an ethics complaint, the primary instances of alleged protected activity from which all retaliation stems. Thus, those entities did not and could not have engaged in the alleged protected conduct. *See, e.g.*, Little Havana Bungalows LLC, formed 5/5/2018; El Shopping LLC, formed 12/12/2018; and Yo Amo Calle Siete LLC formed 8/27/2020. *See* Ex. 2 (Sunbiz public records). If these Plaintiffs did not exist when Plaintiffs purportedly engaged in protected speech, then they cannot plausibly satisfy the first requirement of their First Amendment claim at least for those Plaintiffs.

The Complaint is replete with Plaintiffs' *collective* allegations of speech which cannot plausibly satisfy the first element of their First Amendment claim:[6]

---

[6] These examples also show why Plaintiffs' factual allegations are demonstrably false, as set forth in Section III, *supra*. *See also* Ex. 1 (Chart of Plaintiffs' Alleged Protected Activity).

- The Complaint implausibly alleges "Plaintiffs" filed the 3/2018 ethics complaint (Compl. at ¶¶ 45, 162, 661); however, only one Plaintiff, the Barlington Group, LLC, filed the ethics complaint. *See* Ex. 5 (*Fuller I*, DE 1-1; DE 506-15 at 48, Def. Tr. Ex. 126; DE 559, Tr. 5/8/23 (Pinilla) 215:13-15; DE 560, Tr. 5/9/23 (Pinilla) 84:6-7 (Pinilla testified, "Q. Who filed this complaint? A. Barlington Group did."); DE 562, Tr. 5/11/23 (Fuller) 221:8-17 (Fuller testified, "I was signing on behalf of the Barlington Group.").[7] Even if the ethics complaint was filed by both the Barlington Group LLC and its members, which is not the case, that would be three, not seventeen, Plaintiffs.
- The Complaint implausibly alleges "Plaintiffs" filed the 10/2018 *Fuller I* case (Compl. at ¶¶ 45, 162, 661); however, only Fuller and Pinilla individually did. (*Fuller I*, DE 1).
- The Complaint implausibly alleges "Plaintiffs" hosted a 5/2019 press conference (Compl. at ¶¶ 45, 162); however, only Fuller and Pinilla individually held it. *See* Ex. 5 (*Fuller I*, DE 559, Tr. 5/8/23 (Pinilla) 192:13-15; DE 560, Tr. 5/9/23 (Pinilla) 68:4-70:12).
- The Complaint implausibly alleges "Plaintiffs" filed a lawsuit to stop the demolition of their buildings (Compl. at ¶ 162); however, only certain Plaintiffs filed complaints in other courts and other Plaintiffs do not own buildings. *See* Exs. 3 and 4 (Complaints in *Mad Room* and *Tower Hotel* cases,[8] respectively).
- The Complaint implausibly alleges "Plaintiffs" "vocal opposition to the retaliatory practices of the City," "promoting" murals "that Carollo disliked," and Fuller and Pinilla's continuing "to speak out against the City," as protected activity. *See* Compl. at ¶¶ 45, 634, 661. These collective allegations are vague and conclusory and fail to put Noriega on notice of the claim in that they fail to state, *inter alia*, who made the speech, the content of the speech, the date of the speech, how the speech was made, and to whom the speech was made. *See, e.g.*, *Mulloney v. Polk Cnty. Bd. of Cnty. Comm.*, No. 8:17-cv-2573-T-36TGW, 2018 WL 11485769, at *5 (M.D. Fla. Sept. 10, 2018) ("[T]he Complaint is vague and conclusory and lacks sufficient factual matter to state a cognizable claim for retaliation in violation of the First Amendment"; plaintiff "does not state how or when she made the speech, describe the content of her speech, or state who she made the speech to.").

### 2. "Plaintiffs'" alleged support of Leon is not actionable.

All instances of protected activity and targeting flow from Plaintiffs' alleged support of Carollo's opponent, Alfie Leon, including hosting rallies, in November 2017. *See* Compl. at ¶¶ 45, 162, 634. Without that claimed initial political activity, the rug is pulled out from Plaintiffs' entire First Amendment claim. However, the alleged support of Leon is not legally protected speech or conduct by any of the Plaintiffs in this case.

---

[7] *See supra* footnote 2. Excerpts of trial transcripts in *Fuller I* cited herein are attached as Ex. 5, and their authenticity cannot be challenged (*Fuller I*, DE 506, DE 546-569).

[8] *Mad Room LLC, d/b/a Ball and Chain, Altos Mexicano, LLC d/b/a Taquerias El Mexicano, Little Havana Arts Building, LLC, and La Gran Fiesta, LLC v. City of Miami*, Case #21-cv-23485-RKA (S.D. Fla.) ("*Mad Room* case"); *Tower Hotel, LLC, Piedra Villas, LLC, and Beatstik, LLC v. City of Miami*, Case #22-8069-CA-44 (Miami-Dade County Circuit Court) ("*Tower Hotel*" case).

Importantly, the rallies were held on property owned by non-party, 1393 LLC. *See* Ex. 5 (*Fuller I*, DE 559, Tr. 5/8/23 (Pinilla) 221:11-20). The rallies were hosted by Jenny Lee Molina, her company JLPR, and/or Leon's campaign, not Plaintiffs. (*Fuller I*, Pl. Tr. Exs. 314, 315, 413). Fuller did not attend the rallies. (*Fuller I*, DE 560, Tr. 5/9/23 (Fuller) 187:20-21). Pinilla's claimed presence at the rallies is not evidence that he adopted the rally organizer's speech, *see Gathright v. City of Portland*, 439 F.3d 573, 577 (9th Cir. 2006) (merely being present at public event does not make one part of organizer's message for First Amendment purposes), and therefore does not suffice to establish individual speech or activity by Pinilla. Even if any of the Plaintiffs hosted the rallies, which is not the case, a host's accommodation of the message of another does not equate to speech by the host. *See Rumsfeld v. Forum for Academic & Inst'l Rights, Inc.*, 547 U.S. 47, 64 (2006) ("schools are not speaking when they host interviews and recruiting receptions").

The First Amendment protects only "conduct that is inherently expressive." *Id.* To determine if conduct is expressive, the law requires both an "intent to convey a particularized message" and "the likelihood must be great that 'the message would be understood by those who viewed it.'" *Zinman v. Nova SE. Univ., Inc.*, No. 21-13476, 2023 WL 2669904, at *5 (11th Cir. Mar. 29, 2023) (citation omitted). The second prong asks "whether the reasonable person would interpret the conduct as *some* sort of message, not whether an observer would necessarily infer a *specific* message." *Id.* (citation omitted) (original emphasis).

Here, there was no intent of "Plaintiffs" to convey any message, or likelihood that reasonable persons would interpret the alleged speech as an attempt to convey any message by any of the Plaintiffs. Rallies on property owned by non-party, 1393 LLC, are not "inherently expressive" speech of any of the sixteen Plaintiffs, let alone all "Plaintiffs." Moreover, Fuller and Pinilla's alleged support of Leon was purposefully concealed to avoid public disclosure. *See* Ex. 5 (*Fuller I*, DE 560, Tr. 5/9/23 (Fuller) 171:9-15, 174:23-25, 186:11-15). Fuller and Pinilla's names were deliberately kept off promotional materials, and no publicly available information in connection with the rallies identified them as having any association with the rallies. *See* Ex. 5 (*Fuller I*, DE 559, Tr. 5/8/23 (Pinilla) 223:6-14, 223:20-23, 224:19-22; DE 558, Tr. 5/5/23 (Bernheim) 189:10-12; Pl. Ex. 314, 315, 413). Plaintiffs' alleged "conduct at issue here is not so inherently expressive that it warrants [First Amendment] protection." *See Rumsfeld*, 547 U.S. at 66. Therefore, none of the Plaintiffs engaged in protected activity in connection with alleged support of Leon, including the rallies, which is the basis of Plaintiffs' retaliation claim.

### 3. "Plaintiffs" "having a different vision for Calle Ocho and Little Havana" is not actionable.

Plaintiffs rely on "Plaintiffs generally having a different vision" of the neighborhood than Carollo as an instance of protected activity (Compl. at ¶ 45), but it is not, because the First Amendment protects only "conduct that is inherently expressive." *Rumsfeld*, 547 U.S. at 65-66. "Having a different vision" is simply not inherently expressive. Rather, "[h]aving a different vision" is similar to engaging in "a general course of conduct" which does not constitute protected conduct. *See Welton v. Durham Cty.*, 781 F. App'x 242, 244 (4th Cir. 2019) (citation omitted) (affirming dismissal of First Amendment retaliation claim in county employee's § 1983 case, stating, "we agree with the district court's conclusion that Welton merely engaged in a general course of conduct unprotected by the First Amendment.").

### B. Plaintiffs fail to satisfy the second prong requiring that the Defendants' conduct adversely affected their protected speech.

Plaintiffs fail to satisfy the second prong of a retaliation claim, that the defendant's retaliatory conduct adversely effected the protected speech. *See Bennett*, 423 F.3d at 1250. "A plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Id.* at 1254. While the test directs the Court to consider a person of ordinary firmness, "the plaintiff's actual response to the defendant's conduct provides some evidence of the tendency of that conduct to chill First Amendment activity." *Bethel v. Town of Loxley*, 221 F. App'x 812, 813 (11th Cir. 2006).

Here, Plaintiffs fail to adequately allege facts satisfying the ordinary firmness test because the face of the Complaint reflects they have not been chilled in their speech by their alleged actions. Based on their own allegations, Plaintiffs have aggressively voiced their opinions by filing an ethics complaint against Carollo, filing a federal lawsuit against Carollo and the City, filing a second lawsuit against the City, filing this third lawsuit against the City and eleven City officials, holding a press conference at City Hall to expose Carollo and complain about Carollo and the City, promoting their views and vision, and speaking out against the City. *See* Compl. at ¶¶ 45, 162, 661, 634, 664. Because these allegations show that Plaintiffs have not been deterred in exercising their First Amendment rights, they cannot plausibly satisfy the second prong of their claim.

### C. Plaintiffs fail to satisfy the third prong requiring each to allege a "causal connection."

Plaintiffs also fail to satisfy the third prong, "that there is a causal connection between the

retaliatory actions and the adverse effect on speech." *See Bennett*, 423 F.3d at 1250. "[P]laintiff must establish a 'causal connection' between the government defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury.'" *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (citation omitted). "It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must *cause* the injury." *Id.* (original emphasis). "[I]t must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id.* If the government takes adverse action against someone based on an official's prohibited motive, but there are non-retaliatory grounds that cause the adverse consequences, then retaliatory animus is not the "but-for" cause of the injury. *Id.*

"In order to establish a causal connection, the plaintiff must show that the defendant was subjectively motivated to take the adverse action because of the protected speech." *Castle v. Appalachian Tech. Coll.*, 631 F.3d 1194, 1197 (11th Cir. 2011). "Subjective motivation in turn requires that the defendants had actual knowledge of the plaintiffs' protected speech. . . ." *Indigo Room, Inc. v. City of Ft. Myers*, 589 F. App'x 938, 947 (11th Cir. 2014) (citations omitted). Assuming that Plaintiffs' allegations establish protected speech, which they do not, Plaintiffs fail to allege that Noriega had actual knowledge of that speech. Plaintiffs' core allegations are based on two alleged "protected activities" – support of Leon and the filing of the ethics complaint. *See* Compl. at ¶¶ 45, 162, 634, 661, 664. Both of these occurred in 2017-2018, well before Noriega became City Manager in 2020. Plaintiffs do not otherwise allege Noriega's knowledge of that speech before Noriega became City Manager. Accordingly, it is not plausible that Noriega was subjectively motivated to take any adverse action against the Plaintiffs when he was not even a City employee when they engaged in the purported protected activity.

Instead of pleading Noriega's actual knowledge, Plaintiffs inadequately rely on general allegations of what "everyone in the City knew." *See* Compl. at ¶ 179. Moreover, Plaintiffs repeatedly lump all twelve Defendants together without specific allegations as to Noriega's alleged motive or knowledge. *See, e.g.*, Compl. at p. 2, ¶¶ 87-95, 103-109, 126, 154-155, 179-182, 188, 616-619, 626-628. These general allegations are legally insufficient to satisfy Plaintiffs' pleading requirements.[9] Therefore, these Plaintiffs fail to adequately allege a causal connection between

---

[9] In addition to their failure to sufficiently plead Noriega's "actual knowledge" of their alleged protected activity, Plaintiffs' allegation as to what "everyone in the City knew" is inadmissible hearsay. *See* Compl. at ¶ 179. *See Evans v. McClain*, 131 F. 3d 957, 962 (11th Cir. 1997) ("The

any protected activity in which they allegedly engaged and any alleged retaliation by Noriega.

**D. Because the Complaint alleges that the City's enforcement actions were justified, Noriega had probable cause and non-retaliatory reason to take action.**

Scrutiny of governmental action based on a plaintiff's allegations of free-speech infringement is warranted only "where the government directly limits speech itself or takes action *because of the speech in question*." *Mech v. Sch. Bd. of Palm Beach Cnty.*, No. 13-80437-CIV-MARRA, 2014 WL 11444112, at *3 (S.D. Fla. 2014), *aff'd sub nom. Mech v. Sch. Bd. of Palm Beach Cnty.*, 806 F.3d 1070 (11th Cir. 2015) (emphasis added). Courts have long recognized that a lawful basis for governmental action breaks the causal link between a defendant's retaliatory animus and a plaintiff's alleged § 1983 injury. *See, e.g.*, *O'Boyle v. Com. Grp., Inc.*, No. 22-10865, 2023 WL 2579134, at *4 (11th Cir. Mar. 21, 2023) (stating that when a government actor has "probable cause to take legal action against the plaintiff's protected activity," even if personal animus also was a motive, the plaintiff's retaliation claim fails "as a matter of law"); *Brienza v. City of Peachtree City*, No. 21-12290, 2022 WL 3841095, at *5-6 (11th Cir. Aug. 30, 2022). To show probable cause for enforcement, officials need only "a reasonable belief, based on the facts and circumstances known to [them] that the citation was valid." *Robson 200, LLC v. City of Lakeland*, 593 F. Supp. 3d 1110, 1128 (M.D. Fla. 2022) (citation omitted). The actions of Noriega and all Defendants were justified, and probable cause existed for their enforcement of the City's building, zoning, health and safety ordinances, codes, and regulations. The Complaint admits as much as to some enforcement actions and fails to allege that the others lacked probable cause.

The Complaint's allegations confirm that there was a "reasonable belief" that Plaintiffs had violated the City's Code when enforcement actions occurred. Indeed, Plaintiffs repeatedly admit that they violated city laws and codes. *See O'Boyle*, 2023 WL 2579134, at *5 (stating that parties' stipulation to probable cause for charging plaintiff with trespass and disorderly conduct was fatal to his retaliatory prosecution claim). For example, the Complaint admits that:

- "During the 18-year history of the Viernes Culturales festival, and right up until October 2018, Viernes Culturales had never applied for or obtained a special events permit in relation to Domino Plaza, where a key part of the festival occurred." *See* Compl. at ¶ 488.

---

district court correctly dismissed this evidence as 'not significantly probative' because it was based on gossip, common knowledge, and the hearsay statement of an unidentified representative."); *Alexander v. United States*, 2022 WL 17688692, *5 (11th Cir. 2022) (affirming exclusion of "common knowledge" evidence, and district court's explanation, "we don't try cases on rumors.").

- "[T]he dimensions of the staircases would not meet the current fire code standards". *See* Compl. at ¶ 313.
- "On or about December 20, 2021, Reid responded to Sotolongo, via an email, indicating that the permit application required a scope of work that more specifically addressed the violation for prior work performed without a permit…" *See* Compl. at ¶ 361.
- "Some properties Plaintiffs purchase are older buildings that are not built to the current Miami Building Code. In addition, many of these properties are purchased with existing code violations from work done by prior owners that in many instances was unpermitted." *See* Compl. at ¶ 89.

Each of these admissions concedes a code violation for which any property owner should reasonably expect enforcement action. These Plaintiffs readily admit to being scofflaws, yet contend that their alleged political opposition somehow immunizes them from complying with laws that apply to every other Miami property owner. Plaintiffs' admissions of their code violations bar any related § 1983 claim. *See Bey v. City of Tampa Code Enf't*, 607 F. App'x 892, 896–97 (11th Cir. 2015) (finding plaintiff could not state a case for § 1983 religious discrimination where she admitted to the code violations and had simply chosen not to comply with land-use ordinances); *6420 Roswell Rd., Inc. v. City of Sandy Springs, Georgia*, 484 F. Supp. 3d 1321, 1339 (N.D. Ga. 2020) (being cited for an actual, serious fire-code violation does not violate First Amendment rights); *Mech*, 2014 WL 11444112, at *4 (finding no retaliation where "[d]efendant did not remove Plaintiff's banners because of the expression contained therein" but rather "for a reason unrelated to Plaintiff's speech").[10] Plaintiffs not only admit violating zoning and building codes, but they also fail to allege that the other challenged enforcement actions lacked probable cause. They allege that "[b]ecause Plaintiffs had established another culturally significant property, this time in Overtown, the City issued several violations to the property seeking to shut down the business to intentionally harm Plaintiffs without regard to the negative consequences to Copper Door Properties or the Overtown community." *See* Compl. at ¶ 355. Vague and conclusory statements that an enforcement action was retaliatory, without allegations that it was unjustified, are legally insufficient. *See Bey*, 607 F. App'x at 899 (citing *Iqbal*, 556 U.S. at 678).

Similarly, Plaintiffs fail to allege that the Unsafe Structure Notice issued to El Shopping did not reflect an actually unsafe structure. Instead, they allege "as a result of the threats made by

---

[10] Further, Plaintiffs admitted they are serial Code violators and they performed work without permits, including their admissions in their Compliance Agreements with the City. *See Fuller I*, Def. Tr. Exs. 5, 6, 9-11, 13, 16, 24, 28-30, 32-34, 37, 39, 41, 43, 45, 63-80, 89, 90, 98, 100, 101, 111, 603, 604, 716, 719; Ex. 5 (DE 562 Tr. 5/11/23 (Fuller) 30:24-31:2, 186:13-187:6).

the City to demolish the El Shopping Property, El Shopping was left with no alternative but to sign a Compliance Agreement." *See* Compl. at ¶¶ 401. Executing compliance agreements promising to make unsafe structures safe is precisely what owners of unsafe structures are required to do. Plaintiffs do not allege the building was not unsafe. If it was unsafe, or if city officials had "a reasonable belief, based on the facts and circumstances known to them" that it was unsafe, then there can be no claim based on the Unsafe Structure Notice. *Robson*, 593 F. Supp. 3d at 1128.

Plaintiffs likewise fail to allege that Unsafe Structure Notices issued to the Piedra Villas Property were unwarranted. They merely state that "[a]fter Carollo was elected, on May 9, 2019, the City issued the first of two Unsafe Structure Notices relating to the Piedra Villas Property." *See* Compl. at ¶ 300. These acts predate Noriega's appointment. There is no allegation that these notices lacked probable cause, without which there can be no retaliation claim, even if the notices had issued on election night. Plaintiffs cannot allege retaliation based on the mere timing of an Unsafe Structure Notice. *See, e.g.*, *Beach Blitz Co. v. City of Miami Beach*, No. 1:17-cv-23958-UU, 2018 WL 11260453, at *8 (S.D. Fla. Feb. 5, 2018) ("Plaintiffs' retaliation claim is based solely on the timing of Ocean 9's closure. . . . Moreover, Plaintiff neglects to acknowledge that . . . Plaintiff was in fact operating Ocean 9 without a valid BTR.").

Plaintiffs' failure to allege that any enforcement action taken against any of their properties lacked probable cause or a lawful motive is fatal to their § 1983 claim against Noriega and the other Defendants. Indeed, in light of Plaintiffs' history of admitted Code violations and unpermitted work, Noriega had probable cause and non-retaliatory reasons to take the alleged actions. *See Warren v. DeSantis*, No. 23-10459, 2024 WL 132518, at *9 (11th Cir. Jan. 11, 2024) (acknowledging no First Amendment retaliation claim exists if defendant would have made same decision even if plaintiff did not engage in protected activity). Here, the retaliation claim against Noriega is not plausible because, based on the face of the Complaint that concedes Code violations, Noriega would have made the same decisions. Accordingly, Plaintiffs' First Amendment claims must be dismissed on these grounds as well.

**VII.   The Complaint against Noriega must be dismissed based on qualified immunity.**

Noriega is entitled to qualified immunity as to Plaintiffs' claims. Qualified immunity protects government officials sued in their individual capacities as long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Bldg. Empowerment by Stopping Trafficking, Inc. v. Jacobo*, No. 12-23925-CIV,

2013 WL 5435729, at *1 (S.D. Fla. Sept. 27, 2013) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation." *Id.* (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)).

**A. Noriega was acting within the scope of his discretionary authority.**

To the extent Plaintiffs have alleged any conduct specific to Noriega, those alleged acts were within the scope of his discretionary authority and therefore immune from civil liability. Noriega is employed as City Manager. *See* Compl. at ¶ 20.

All of Noriega's alleged acts are within the broad scope of his authority as the head of the administrative branch of City government including carrying out alleged policies of the City.

The Complaint alleges that "Carollo, Noriega and Mendez had accomplished their goal of passing new ordinances to shut down one of Fuller's most prominent properties" and lists five such ordinances. *See* Compl. at ¶ 86. The Complaint thus alleges retaliatory acts of Noriega based on the legislative function of passage of ordinances. *Id.* However, as set forth in Section III, *supra*, Noriega has no power to pass ordinances. Even under a conspiracy analysis, Plaintiffs sued only one Commissioner, yet it takes a majority of the five City Commissioners to pass an Ordinance. Noriega's actions in carrying out ordinances passed by the Commission "would be within, or reasonably related to, the outer perimeter of an official's discretionary duties." *Minnifield v. City of Birmingham Dep't of Police*, 791 F. App'x 86, 89 (11th Cir. 2019). Therefore, Plaintiffs fail to set forth plausible allegations against Noriega, and the Complaint should be dismissed.

The Complaint also contains Plaintiffs' characterizations of Noriega's alleged role – that he was "one of the prime architects behind the City's political retaliation for Carollo," and his alleged intention – that he organized an all-day meeting with City officials "for the sole purpose of pursuing policies aimed at shutting down Plaintiffs' businesses." *See* Compl. at ¶ 133. Where the alleged acts are within an official's discretionary function, *i.e.*, organizing a meeting with City officials, hyperbolic allegations as to alleged motive and intent do not abrogate immunity.

**B. Plaintiffs cannot defeat Noriega's qualified immunity because they cannot meet their burden to show his alleged conduct violates clearly established law.**

A plaintiff seeking to defeat qualified immunity must show that:

the conduct in question violates clearly established law. A plaintiff need not identify a case directly on point, but "existing precedent must have placed the statutory or

constitutional question beyond debate." Clearly established law must not be identified with a "high level of generality." General legal propositions are not enough. Rather, the clearly established law must be "particularized" to the facts of the case. In this way, the test focuses "on whether the officer had fair notice that [his] conduct was unlawful." "[P]re-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated reasonable government agent that what defendant is doing violates federal law in the circumstances. "This standard does not require that the "very action in question has previously been held unlawful," but "the unlawfulness must be apparent" under then-existing law.

*Minnifield*, 791 F. App'x at 89-90 (citations omitted); *see also Washington v. Warden*, 847 F. App'x 734, 737 (11th Cir. 2021) (for right to be clearly established, plaintiff must either identify precedents with materially similar facts or that the violation was "so obvious that every reasonable officer would know that his actions were unconstitutional").

Noriega's alleged violations were not "so obvious" that he would have known his actions were unconstitutional where Plaintiffs fail to allege Noriega's knowledge of the alleged protected speech, they rely on inadmissible hearsay, and they fail to overcome their admitted repeated Code violations which provided probable cause for Noriega's alleged acts. Moreover, Noriega cannot be said to have been on "fair notice" that he could be liable under "clearly established law" for retaliating due to protected activity that occurred before he became City Manager. Plaintiffs concede Noriega was not City Manager in 2017 when they allegedly hosted rallies and supported Leon, in 2018 when they filed an ethics complaint and civil rights action, or in 2019 when they held a press conference exposing violations, and that he was not appointed as City Manager until February 2020, yet they inconsistently claim he was City Manager "at all relevant times." *See* Compl. at ¶ 20. This critical pleading deficiency renders the core allegations implausible and insufficient to state a retaliation claim against Noriega. In light of Plaintiffs' failure to adequately allege Noriega's actual knowledge of such past activity, Plaintiffs fail to defeat Noriega's entitlement to rely on qualified immunity. Plaintiffs also fail to overcome Noriega's immunity because he cannot be said to have been on fair notice that he could be liable under clearly established law for violating rights of Plaintiffs who did not engage in speech, whose associations are commercial, entities that did not exist at the time of the alleged speech, and where probable cause existed.

**VIII.   The Complaint was filed too late, and the statute of limitations has run.**

### A. The entire Complaint should be dismissed as untimely.

"Claims brought pursuant to 42 U.S.C. § 1983 are subject to the statute of limitations period governing personal injury actions in the state where the action is brought." *Wellons v. Comm'r, Ga. Dep't of Corr.*, 754 F.3d 1260, 1263 (11th Cir. 2014). The applicable limitations period under Florida law is four years. *See Omar ex rel. Cannon v. Lindsey*, 334 F.3d 1246, 1251 (11th Cir. 2003). The limitations period on a § 1983 claim starts running when a plaintiff knows or should have known it has "suffered the injury that forms the basis of [its] complaint and who has inflicted the injury." *Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003).

"To establish a civil conspiracy under § 1983, the plaintiff must demonstrate an underlying constitutional violation. Because the constitutional violation—***and not the agreement***—is the basis for liability, the statute of limitations runs separately for each unlawful overt act in furtherance of the conspiracy." *Wall v. Wall*, No. 1:09-cv-527-MEF, 2009 WL 3110208, at *5 (M.D. Ala. Sept. 24, 2009) (emphasis added). Thus, if *any* of plaintiffs' claims for alleged infringement of free speech are time barred, their § 1983 conspiracy claim also is time barred. *Id.*; *Hope For Fams. & Cmty. Serv., Inc. v. Warren*, 721 F. Supp. 2d 1079, 1176 (M.D. Ala. 2010) (holding § 1983 conspiracy claim was time barred where underlying equal protection claim was time barred).

Plaintiffs refer to a February 14, 2019, Commission meeting as the "Valentine's Day Massacre" during which Carollo and the Commission passed "a resolution establishing a task force . . . . aimed at investigating all aspects of Plaintiffs' properties." *See* Compl. at ¶ 56. Fuller attended and made a presentation at the Commission meeting claiming, *inter alia*, "[e]verybody in the city knows you've been targeting my businesses." *See Fuller I*, DE 562 Tr. 5/11/23 (Fuller) 181:18-21, 200:6-17, 207:2-18. Thus, any purported conspiracy and free speech violation was immediately known to Plaintiffs as of February 14, 2019. Importantly, Noriega was not the City Manager at that time. Moreover, it was alleged that on February 14, 2019, Carollo persuaded the Commission to "go after Plaintiffs' properties in Little Havana," and "presented false and misleading documents and photographs claiming to show various code violations on Plaintiffs' properties". *See* Ex. 6 *Fuller I*, DE 125 ¶¶ 255-265. Because Plaintiffs knew or should have known that their alleged claims accrued no later than February 14, 2019, when they allege that Carollo and the City began improperly to investigate and scrutinize their properties, their claims expired in February 2023. Having filed their initial Complaint more than eight months later, on November 6, 2023, their claims are time-barred and must be dismissed.

**B. If some claims could survive the statute of limitations, most would still be time-barred.**

Although the Complaint purports to allege a continuing violation, claims that allege a single, discrete act are *not* continuing and, if time-barred, *cannot* count towards a continuing violation claim. *See Eaton v. Keith*, 154 F. App'x 844, 848 (11th Cir. 2005) ("The critical distinction in continuing violation analysis . . . is whether the plaintiff[] complain[s] of the present consequence of a one-time violation, which does not extend the limitations period, or the continuation of a violation into the present, which does.") (internal quotations omitted).

While Plaintiffs lump themselves together in most factual allegations, certain Plaintiffs attempt to allege claims for one-time violations. Even if all Plaintiffs' claims did not expire in February 2023, any claims stemming from the following allegations, all of which would have occurred before Noriega became City Manager, have certainly expired:

- Barlington Group alleges that Carollo shut down the restaurant Sanguich on its property; a single event in 2017, which was litigated in *Fuller I. See* Compl. at ¶ 51; Ex. 6 (*Fuller I*, DE 125 ¶¶ 91-112). Barlington Group does not allege any other specific misconduct but instead alleges it is the "master head and umbrella company responsible in managing all Plaintiffs' companies." *See* Compl. at ¶ 618.
- Calle Ocho Marketplace alleges Carollo's efforts against it resulted in the City revoking Calle Ocho Marketplace's temporary use permit and building permit. *See* Compl. at ¶¶ 593-600. These two discrete acts occurred in September 2018, more than 4 years ago. *Id.*
- Viernes alleges Carollo intended and worked to shut down its festival. *See* Compl. at ¶¶ 501-509. *Fuller I* made the same allegations. Plaintiffs there admitted knowing about this alleged intent since 2018, when Steve Miro gave a declaration stating that Carollo was targeting the festival because Fuller was the president. Ex. 6 (*Fuller I*, DE 125 ¶¶ 223-224); Compl. at ¶ 509 (allegation as to Miro statement). The very latest that Viernes could have learned of its claim was when the second amended complaint in *Fuller I* was filed.
- LHAB Tres alleges that it lost out to the City in attempting to buy a property. *See* Compl. at ¶¶ 606-611. While LHAB Tres does not allege when this occurred, in *Fuller I*, Fuller and Pinilla admitted they have known about this one-time, discrete act since "late 2018." Ex. 6 (*Fuller I*, DE 125 ¶¶ 276-278).
- Taquerias El Mexicano alleges that Carollo "began issuing voluminous public records requests [] for Taquerias," "demanded that the police officers who had inspected Taquerias appear before him at the next City Commission Hearing on February 14, 2019 to explain why they had not issued citations," and "requested the attendance of other City employees to explain why no code violations or other citations had been issued to Plaintiffs' Taquerias". *See* Compl. at ¶ 53. The hearing was more than four years before this action.

Any claims based on these discrete, one-time "bad acts" allegedly suffered by Barlington Group, Calle Ocho Marketplace, Viernes, LHAB Tres, and Taquerias El Mexicano based on the allegations set forth above are time-barred, and should be dismissed with prejudice.

24

### IX.     Plaintiffs are engaged in improper claim splitting.

The Complaint should be dismissed as it involves the same parties and a common nucleus of operative fact as the *Mad Room* and *Tower Hotel* cases. In *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1236 (11th Cir. 2021) (affirming dismissal) (citations omitted), the court explained:

> In determining whether a party has improperly split its claims among lawsuits, this Court examines: "(1) whether the case involves the same parties and their privies, and (2) whether separate cases arise from the same transaction or series of transactions." . . . "Successive causes of action arise from the same transaction or series of transactions when the two actions are based on the same nucleus of operative facts."

Here, all three cases involve alleged targeting of Plaintiffs' businesses, four of the Plaintiffs in this case are plaintiffs in one of those cases, and the City is a defendant in all three of the cases. *Cf.* Compl. at p. 2 ("the City and its employees engaged in a well-known, widespread and pervasive custom of weaponizing City resources to target and harass Plaintiffs, their businesses, and business associates, with the aim of shutting down Plaintiffs' businesses, tearing down Plaintiffs' properties, and destroying Plaintiffs' reputations and their personal wellbeing"); Exs. 3 and 4 (Complaints in *Mad Room* and *Tower Hotel* cases alleging the same). *See Vanover v. NCO Fin. Servs.*, 857 F.3d 833, 837 (11th Cir. 2017) (affirming dismissal with prejudice where the two cases "involve the same parties along with a common nucleus of operative fact"). Because the cases involve the same parties and their privies and arise from the same series of transactions, this case should be dismissed as an improper attempt to split Plaintiffs' claims.

### X.     Plaintiffs fail to state a claim against Noriega individually.

The allegations against Noriega largely stem from the acts of his subordinates and seek to assert liability under a respondent superior theory. The Complaint is brought against Noriega in his individual capacity but it fails to meet the "extremely rigorous" pleading standard. *See, e.g.*, *Verrier v. Reno*, No. 4:21-cv-500-MW/MJF, 2023 WL 5836837 (N.D. Fla. Aug. 9, 2023) (dismissing § 1983 claims for failure to plausibly allege individual liability under "extremely rigorous standard for supervisory liability").

### XI.     Conclusion

Defendant Arthur Noriega respectfully requests that this Court grant his Motion to Dismiss Plaintiffs' Amended Complaint with prejudice, award Defendant's attorneys' fees pursuant to 42 U.S.C. § 1988(b), and grant such further relief as this Court deems just, equitable, and proper.

## <u>REQUEST FOR ORAL ARGUMENT</u>

Pursuant to Local Rule 7.1(b)(2), Noriega respectfully requests a two-hour hearing on his motion to dismiss. Noriega's motion raises a number of complex issues, and oral argument would be beneficial to address and illuminate those issues.

Respectfully submitted,

KRINZMAN HUSS LUBETSKY
   FELDMAN & HOTTE
Counsel for Defendant,
*Arthur Noriega, City Manager*
Alfred I. duPont Building
169 E. Flagler Street, Suite 500
Miami, Florida 33131
Telephone: (305) 854-9700
Primary email:  map@khllaw.com
Primary email:  lg@khllaw.com
Primary email:  mschneider@khllaw.com
Secondary:  eservicemia@khllaw.com

By:  */s/ Mason A. Pertnoy*
     Mason A. Pertnoy, Esq.
     Florida Bar No. 18334

and

KENNY NACHWALTER, P.A.
Counsel for Defendant,
*Arthur Noriega, City Manager*
Four Seasons Tower, Suite 1100
1441 Brickell Avenue
Miami, Florida 33131
Telephone: (305) 373-1000
Primary email: ccl@knpa.com

By:  */s/ Christina Ceballos-Levy*
     Christina Ceballos-Levy, Esq.
     Florida Bar No. 411965

26

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on this 29th day of February, 2024, I electronically filed the foregoing with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties in this case.

By: _/s/ Mason A. Pertnoy_
          Mason A. Pertnoy, Esq.

27