**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 23-CV-24251-FAM**

WILLIAM O. FULLER, *et al.*,

      Plaintiffs,

v.

CITY OF MIAMI, *et al.,*

      Defendants.

_____/

**<u>DEFENDANT VICTORIA MENDEZ'S</u>**
**<u>MOTION TO DISMISS AND MOTION TO STRIKE</u>**
**<u>PLAINTIFFS' FIRST AMENDED COMPLAINT</u>**

Luis E. Suarez
Patricia Melville
**HEISE SUAREZ MELVILLE, P.A.**
2990 Ponce De Leon Boulevard
Suite 300
Coral Gables, Florida 33134
Telephone (305) 800-4476

*Attorneys for Defendant,*
*City Attorney Victoria Mendez*

Pursuant to FED. R. CIV. P. 12(b)(6) and Local Rule 7.1, Defendant Victoria Mendez ("**Mendez**") moves to dismiss all 17 Counts of Plaintiffs' First Amended Complaint [DE 77] (the "**FAC**"), and pursuant to FED. R. CIV. P. 12 (f)(2), moves alternatively to strike scandalous, redundant, immaterial and impertinent allegations contained in the FAC:

## INTRODUCTION

Mendez is the long-time City Attorney for the City of Miami. Unfortunately, Mendez's fulfillment of her job responsibilities in this high-profile role has placed her in Plaintiffs' aim. Targeting Mendez for doing her job is wrong: Mendez is afforded qualified immunity protections by virtue of acting in her capacity as a public official, and absolute immunity because of her specific role as City Attorney.

Plaintiffs' claims, all of which are predicated on retaliatory conduct under 42 U.S.C. § 1983, or conspiracy to violate §1983, stem from their long-standing vendetta against another City of Miami official, Commissioner Joe Carollo. Plaintiffs have already had their day in court on these very issues. They are not entitled to a second bite at the apple under the r*es judicata* doctrine. Even if they were, and Mendez were not protected by absolute or qualified immunity, the FAC is deficient because whatever vendetta Plaintiffs have with Carollo, or vice versa, cannot be imputed to Mendez. Yet, Plaintiffs use a prohibited "shotgun pleading" and lump Mendez together with Carollo, nine other public officials, and the City of Miami itself. Given this scattershot, lumping approach, Plaintiffs are unable to adequately allege their claims.

Plaintiffs try to distract from their imprecision with a laundry list of scandalous and impertinent allegations, which must be stricken. Nor can this imprecision be covered by the fig leaf of pleading "conspiracy", due to the intracorporate conspiracy doctrine. Finally, the muddled FAC must be dismissed because the alleged key events are simply outdated, and the statute of limitations has expired. All counts, both under § 1983 and conspiracy to violate §1983, fail.

## LEGAL STANDARD

To avoid dismissal under Rule 12(b)(6), a complaint must allege facts that, if accepted as true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim for relief is plausible if the complaint contains factual allegations that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "The plausibility standard is not akin to a 'probability

1

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 545). Conclusory allegations, unwarranted deductions of facts, or legal conclusions masquerading as facts will not prevent dismissal. *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). Further, "[the 11th C]ircuit, along with others, has tightened the application of Rule 8 with respect to § 1983 cases in an effort to weed out nonmeritorious claims, requiring that a § 1983 plaintiff allege with some specificity the facts which make out its claim." *Keating v. City of Miami*, 598 F.3d 753, 762–63 (11th Cir. 2010) (citation omitted). Therefore, in a § 1983 action, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* at 763 (citation omitted). "We must also keep in mind the fact that we generally accord official conduct a presumption of legitimacy." *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir.2003) (alterations omitted) (citing *United States Dep't of State v. Ray*, 502 U.S. 164, 179 (1991)).

## ARGUMENT

### I.  **This Action Is Barred by *Res Judicata.***

The FAC is barred by *res judicata* based on a prior final judgment entered in this very District. Plaintiffs Williams Fuller and Martin Pinilla filed a nearly identical action in 2018, asserting that Carollo and the City of Miami (the "**City**") violated 42 U.S.C. § 1983 and First Amendment rights to free speech and freedom of association ("***Fuller I***"). On June 13, 2019, the *Fuller I* Court dismissed the lawsuit against the City for failure to state a claim. *Fuller I,* DE 99, 118 (the "**2019 Dismissal Order**"). Fuller and Pinilla never re-pled claims against the City.

Now, more than 4 years later, Fuller and Pinilla, along with 15 of their entities[1], bring this 42 U.S.C. § 1983 action, all but identical to the first one, alleging that the City and its officials, including Mendez, violated their First Amendment right to free speech and freedom of association. The FAC is a gross offense to the *res judicata* doctrine, which entirely bars Plaintiffs' claims.

*Res judicata* "is a judicially crafted doctrine, created to provide finality and conserve resources." *Destin v. Brooks*, 2023 WL 6340279, at *3 (S.D. Fla. Apr. 13, 2023). *Res judicata* bars

---

[1] Apart from having never engaged in any speech, let alone protected speech, the entity-Plaintiffs also expressly assigned their purported claims to Fuller and Pinilla in *Fuller I*, which means that their purported claims were tried in *Fuller I*, and they possess *no claims at all*. *See Fuller I*, DE 125, ¶¶ 111, 207, 298.

claims when the following four elements are present:

> (1) there is a final judgment in a prior suit on the merits;
>
> (2) the decision in the prior suit is rendered by a court of competent jurisdiction;
>
> (3) the prior suit involved the same parties, or those in privity with them; and
>
> (4) both suits involve the same cause of action.

*O'Connor v. PCA Fam. Health Plan, Inc.,* 200 F.3d 1349, 1355 (11th Cir. 2000); *Hilliard v. Gutierrez*, 2021 WL 2712122, at *5 (S.D. Fla. July 1, 2021). *Res judicata* bars not only those claims raised in the first suit, but also claims that **could have been raised** in the prior suit if those claims arise "out of the same nucleus of operative fact as a former action." *O'Connor,* 200 F.3d at 1356 (quoting *Citibank, N.A. v. Data Lease Fin. Corp.*, 904 F.2d 1498, 1503 (11th Cir. 1990)).

### A. There is a Prior Final Judgment on the Merits by a Court of Competent Jurisdiction.

The 2019 Dismissal Order is a final judgment on the merits because the basis for dismissal was failure to state a claim and Plaintiffs did not replead their claim against the City before the *Fuller I* court's deadline. The *Fuller I* court granted the City's motion to dismiss under Fed. R. Civ. P. 12(b)(6), finding, *inter alia*, a failure to allege a claim that would survive sovereign immunity, but gave Fuller and Pinilla until June 26, 2019, to amend their complaint against the City. *Fuller I,* 2019 Dismissal Order. Fuller and Pinilla opted not to do so. When Fuller and Pinilla amended their complaint, they dropped their claim against the City and asserted a single cause of action against Carollo. *Fuller I,* DE 125 at 52. Fuller and Pinilla did not seek to further amend their pleadings at any point before the June 26, 2019 deadline, or before trial.

After the June 26, 2019 deadline expired, the 2019 Dismissal Order became final. *See Auto. Alignment Body Serv., Inc. v. State Farm Mut. Auto. Ins. Co*, 953 F.3d 707, 719-20 (11th Cir. 2020) (citing *Hertz Corp. v. Alamo Rent-A-Car, Inc.*, 16 F.3d 1126, 1132-33 (11th Cir. 1994)) ("... an order dismissing a complaint with leave to amend within a specified time becomes a final judgment if the time allowed for amendment expires without the plaintiff seeking an extension….The orders dismissing the first amended complaints . . . became final judgments under *Hertz* when the body shops missed their deadline to amend); *Cummings v. Nissim Corp.*, 2011 WL 13115436, at *2 (S.D. Fla. Aug. 2, 2011) ("Where a party chooses to appeal a dismissal without prejudice without exercising its leave to amend, the dismissal becomes a final decision on the merits.").

3

Further, the 2019 Dismissal Order was "on the merits" because the basis for dismissal was failure to state a claim. The Eleventh Circuit has consistently held that dismissals for failure to state a claim constitute final judgments on the merits.[2]

*Smith* is instructive. There, the Eleventh Circuit held that a prior dismissal *without prejudice* constituted a final judgment on the merits because (1) the plaintiffs waived their right to further amend their complaint by seeking to appeal the dismissal, and (2) the dismissal was for failure to state a claim. 808 Fed. Appx. at 854. Like the *Smith* plaintiffs, Fuller and Pinilla waived their right to amend their complaint—which was dismissed for failure to state a claim—before the court's deadline. For these reasons, the 2019 Dismissal Order is a final judgment on the merits.[3]

### B. The Fuller I Parties, or Those in Privity with Them, Are Deemed Identical to Those in This Case.

This case involves the same parties as *Fuller I* and their privies. The only difference is that Fuller and Pinilla, the plaintiffs in *Fuller I*, added more plaintiffs (their wholly owned entities) and defendants (other City of Miami officials) in this action. Mendez incorporates and adopts by reference Subsection II.A.2. of Joe Carollo's Motion to Dismiss the Complaint With Prejudice ("Carollo Motion to Dismiss") as to Plaintiffs being in privity with each other.[4]

Then, on the defense side of the equation, Mendez is in clear privity with the City, which was a defendant in *Fuller I* and the subject of the 2019 Dismissal Order. Mendez was at all times a City of Miami official. FAC, ¶ 21; *Hilliard*, 2021 WL 2712122 at *5 (holding government officers to be in privity with the government). In *Hillard*, the plaintiff sued the Hialeah Housing

---

[2] *Smith v. Sec'y of Veterans Affairs*, 808 Fed. Appx. 852, 854 (11th Cir. 2020) (dismissal without prejudice was final judgment on the merits because it was based on failure to state a claim); *Solis v. Glob. Acceptance Credit Co., L.P.*, 601 Fed. Appx. 767, 770 (11th Cir. 2015) (dismissal was final judgment on the merits despite ambiguity regarding prejudice because the Supreme Court has flatly stated that "[t]he dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a 'judgment on the merits.'") (quoting *Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, n. 3 (1981)); *N.A.A.C.P. v. Hunt*, 891 F.2d 1555, 1560 (11th Cir. 1990) (same)

[3] The *Fuller I* court, another court of this District, unquestionably was a court of competent jurisdiction as to the § 1983 claims asserted in that case. *E.g.*, *Hilliard*, 2021 WL 2712122, at *5.

[4] Out of respect for the Court's time, where possible, Mendez has incorporated by reference the arguments of her co-defendants rather than burden the Court with setting forth lengthy redundancies. *See e.g. Robert P. Boswell, D.M.V., P.A. v. Scott J. Swerdlin, D.M.V., P.A.*, 2008 WL 11332004, at *4 (S.D. Fla. Sept. 25, 2008), *report and recommendation adopted*, 2008 WL 11333663 (S.D. Fla. Oct. 15, 2008).

Authority (the "**HHA**"), and then later an officer—in his individual capacity—who worked for the HHA under nearly identical facts and claims. *Id.*[5] The Court dismissed the second action based on *res judicata* because the officer and HHA were in privity with each other. *Id.* The court noted that "[t]here is privity between officers of the same government so that a judgment in a suit between a party and a representative...is *res judicata* in [relitigation] of the same issue between that party and another officer of the government." *Id.* (quoting *Montford v. Metro. Dade Cnty. Gov't*, 2002 WL 34382746, at *3 (S.D. Fla. Mar. 27, 2002)).

Even without privity, "the Eleventh Circuit has made perfectly clear that a party '**may not avoid the application of *res judicata* by adding new parties**.'" *Ardis v. Anderson*, 662 F. App'x 729, 732 (11th Cir. 2016) (quoting *Endsley v. City of Macon*, 321 F. App'x. 811, 814 (11th Cir. 2008)) (emphasis added). Indeed, a complaint is barred by *res judicata* where "[t]he claims plaintiff has asserted against the new defendants ... **could and should have been brought**" in the prior action. *Id.* (emphasis added).[6]

*Destin v. Brooks* is instructive. 2023 WL 6340279, at *3 (S.D. Fla. Apr. 13, 2023). There, the plaintiff's previous suit against police officers was dismissed. *Id.* The plaintiff subsequently brought a second, nearly identical suit that added another, new defendant: the Florida Attorney General. *Id.* The court dismissed the second action *with prejudice* based on *res judicata,* explaining that the plaintiff cannot simply circumvent *res judicata* by adding a new defendant:

> As to the third element, the only change in the parties is that Plaintiff has removed State Attorney Fernandez Rundle and added Detective McKinnon and Attorney General Moody as Defendants. "[T]he Eleventh Circuit has recognized that a party '**may not avoid the application of res judicata by adding new parties.**'" A complaint is barred by res judicata where "[t]he claims plaintiff has asserted against

---

[5] Although the officer was named in the first suit, he was never served with process and the parties disputed whether he was technically a party to the first suit for *res judicata* purposes. *Id.* at 6. The court did not need to resolve that dispute because the officer was in privity with HHA. *Id.*

[6] *See also Hilliard*, 2021 WL 2712122 at *6 (dismissing action based on *res judicata* because the "plaintiff cannot avoid the preclusive effects of the *res judicata* doctrine simply by naming additional defendants in the new action, where the plaintiffs' subsequent claims arose from the same facts as those at issue in the prior action and could therefore have been brought previously"); *N.A.S. v. Morada-Haute Furniture Boutique LLC*, 2022 WL 5246828, at *5 (S.D. Fla. July 22, 2022) (dismissing action as to all defendants based on *res judicata* because "the addition of a new defendant will not immunize Plaintiffs from the preclusive effects of res judicata"); *Makozy v. Westcor Land Title*, 2022 WL 2758368, at *2 (S.D. Fla. Apr. 5, 2022) (dismissing complaint under *res judicata* where the plaintiff added a new defendant that he could have brought in prior action).

the new defendants ... **could and should have been brought**" in the prior action. Here, Plaintiff's sole allegation against Detective McKinnon—that she swabbed his DNA—could and should have been included in his complaint in the First Case, which alleged an unlawful search based on the swabbing of his DNA…Therefore, the third element is met.

*Id.* (citations omitted) (emphasis added). Because the plaintiff could have brought the Florida Attorney General in the initial action, the second action was dismissed with prejudice against all defendants—new and old alike. *Id.* The same principle applies here—Plaintiffs cannot avoid *res judicata* by simply adding Mendez and other defendants.

### C. The First Amended Complaint Arises from the Same Facts and Alleges the Same Claims as Fuller I.

The facts and claims made in the FAC and nearly identical to those made in *Fuller I.* Both *Fuller I* and this case assert 42 U.S.C. § 1983 claims arising under the First Amendment; the Amended Complaint in *Fuller I* asserted these claims against the City before abandoning them. *Fuller I*, DE 25. In this case, as in *Fuller I*, Plaintiffs seek redress because "Upon taking office, Carollo drew up a list of all Plaintiffs' properties and associated businesses for purposes of targeting those businesses for fines and shutting them down." *Compare* FAC, ¶ 50, *with Fuller I*, DE 125, ¶¶ 59–62 (Second Amended Complaint) ("Upon taking office, Carollo immediately drew up a list of Plaintiffs' properties and associated businesses in District 3 . . . . Carollo said he had a list of addresses for Fuller's properties that he would give to Diez, from which Diez understood Carollo was asking him to selectively target Fuller's properties."); DE 43, ¶¶ 63-66 (First Amended Complaint) (same). Any additional allegations arise from the same core conduct, and either was or should have been raised in *Fuller I.*

Because *res judicata* squarely bars this entire lawsuit and every one of Plaintiffs' claims, all of which were or could have been litigated in *Fuller I*, this Court should dismiss with prejudice.

### II. <u>This Action is Barred by the Claims-Splitting and Double Recovery Doctrines.</u>

Mendez incorporates and adopts by reference Section IV of the Motion to Dismiss Plaintiffs' First Amended Complaint by Defendants Luis Torres, Adrian Plasencia, and Rene Diaz, and Section IV and VIII of Defendant City of Miami's Motion to Dismiss the First Amended Complaint with Prejudice, and Mendez moves to dismiss this entire lawsuit and every one of Plaintiffs' claims.

6

### III.  **Absolute Immunity Protects Attorneys From Liability For Duties in the Judicial and Legislative Process.**

Mendez is entitled to absolute immunity because the alleged acts were conducted pursuant to her role as City Attorney, and as a result, the Complaint must be dismissed.

Absolute immunity applies where a city attorney is performing duties integral to the judicial process. *Parette v. Virden,* 173 Fed. Appx. 534, 536 (8th Cir. 2006).[7] The absolute immunity doctrine shields prosecutors and other lawyers from § 1983 claims, and derives from the common law: "Like witnesses, prosecutors and other lawyers were absolutely immune from damages liability at common law for making false or defamatory statements in judicial proceedings (at least so long as the statements were related to the proceeding), and also for eliciting false and defamatory testimony from witnesses." *Burns v. Reed*, 500 U.S. 478, 489–92 (1991). This doctrine is well reasoned, "as absolute immunity for this function serves the policy of protecting the judicial process." *Id*. Therefore, a prosecutor is entitled to absolute immunity for all actions performed within the scope of the prosecutor's role as a government advocate. *Rivera v. Leal,* 359 F.3d 1350, 1353 (11th Cir. 2004) (citing *Buckley v. Fitzsimmons,* 509 U.S. 259, 273, (1993)). *See also Flournoy v. Copley*, 2013 WL 5487415, at *1 (M.D. Fla. Sept. 30, 2013) (collecting cases).

Absolute immunity unequivocally protects Mendez with respect to most, if not all, of the allegations here. First, as the City of Miami Charter makes clear, she operates in a prosecutorial function: and "shall be the prosecuting attorney of the municipal court." City of Miami Charter, Subpart A, § 21 ("[w]hen required to do so by the resolution of the city commission, the city attorney shall prosecute or defend for and in behalf of the city all complaints, suits and controversies in which the city is a party, and such other suits, matters and controversies as he shall, by resolution or ordinance, be directed to prosecute or defend.").[8]

Moreover, several Federal Court of Appeals have applied absolute **immunity specifically to a city attorney**. For example, in *Benavidez v. Howard*, the Tenth Circuit recognized that the

---

[7] *See also Dornheim v. Sholes,* 430 F.3d 919, 925 (8th Cir. 2005) (absolute immunity from civil rights suit applies where official was performing duties that were integrally part of judicial process, provided function was granted immunity under common law at time § 1983 was enacted); *In re Castillo,* 297 F.3d 940, 947–48 (9th Cir. 2002) (applying absolute quasi-judicial to bankruptcy trustee and her assistant and noting many contexts in which immunity doctrine extends).

[8] This Court can consider the City of Miami Charter because it is public record. *See* Defendants' Joint Motion for Request for Judicial Notice of Facts in Support of their Motions to Dismiss.

city attorney and assistant city attorneys were absolutely immune from collateral § 1983 suit for damages for their acts of preparing and filing motion for protective order on behalf of a city clerk. 931 F.3d 1225 (10th Cir. 2019). The Seventh Circuit also recognized that an assistant city attorney was absolutely immune against a suit alleging that the defendant retaliated against public criticism by initiating proceedings to demolish a house. *Smith v. Power,* 346 F.3d 740 (7th Cir. 2003)*.* So too in the Sixth Circuit, where a city attorney was shielded by prosecutorial immunity from a §1983 claim based on bringing a nuisance claim against a nightclub owner. *Red Zone 12 LLC v. City of Columbus*, 758 Fed. Appx. 508 (6th Cir. 2019). *See also Parette*, 173 F. App'x at 536 (Eighth Circuit finding a city attorney absolutely immune from liability arising from prosecuting a condemnation action). Therefore, there can be no doubt that—as a matter of law—Mendez is protected by absolute immunity as the City Attorney for claims based on legal proceedings.

The intelligible allegations in the FAC against Mendez are largely based on her role as City Attorney in legal proceedings:

- FAC, p. 2: an "an endless effort to exhaust and destroy plaintiffs through a legal minefield by filing bogus and frivolous claims";
- FAC, ¶¶ 118, 599-600: making statements at a hearing before the code enforcement board;[9]
- FAC, ¶¶ 56-59: helming a task force "regarding violations relating to no certificate of use, certificate of use obtained under false pretenses and/or properties with violations that pose life-safety issues, **and initiate injunctive proceedings against said properties until the properties are brought into compliance**" (quoting Resolution [4-1]) (emphasis added).
- FAC, ¶ 135: spending $15 million on legal fees seeking to bankrupt plaintiffs; filings a Civil RICO claim against Plaintiffs;
- FAC, ¶¶ 66, 186: "targeting" that, while vague, presumably means initiating code enforcement actions; and
- FAC, ¶ 597: filing an emergency motion for injunctive relief.

The nature of the instant legal proceedings, which include administrative and civil actions, is immaterial: in *Butz v. Economou*, the Supreme Court clarified that the absolute immunity for prosecutors extends to attorneys who participate in administrative proceedings, reasoning that

---

[9] If this allegation intends to indicate Mendez was a witness rather than an attorney at this hearing, that too is barred. "[W]itnesses are absolutely immune from damages based on their testimony". *Baker v. City of Hollywood*, 391 Fed. Appx. 819, 822 (11th Cir. 2010) (affirming dismissal of complaint for constitutional violations and conspiracy under § 1983); *Chaney v. Sec'y, Fla. Dep't of Corr.*, 2019 U.S. Dist. LEXIS 63480, *9 (S.D. Fla. Apr. 11, 2019) (citing *Briscoe v. LaHue*, 460 U.S. 325 (1983)) ("it is well settled that witnesses in a judicial proceeding are immune from liability regarding their testimony in court.").

"agency officials performing certain functions analogous to a prosecutor should be able to claim absolute immunity with respect to such acts." 438 U.S. 478, 515 (1978). Pursuant to *Butz*, "[f]ederal courts of appeal have extended absolute immunity to the conduct of prosecutors in civil actions." *Bala v. Stenehjem*, 671 F. Supp. 2d 1067, 1082 (D.N.D. 2009) (collecting cases).[10]

The remaining clear allegations against Mendez are also barred by absolute immunity because they are based on the City Attorney's role in legislation:

- FAC, ¶ 51: "Carollo found his first allies in City Attorney Mendez and her Assistant City Attorney, Dooley, both of whom worked willingly … changing existing ordinances and passing new ordinances.";
- FAC, ¶ 86: "…Carollo, Noriega, Mendez, Dooley, Marrero, and Diaz had accomplished their goal of passing new ordinances to shut down one of Fuller's most prominent properties";
- FAC, ¶ 121: "… the City of Miami, Carollo, Noriega, Mendez, Dooley, Marrero and Diaz did in fact pass an ordinance to allow for demolition of historic buildings, Ordinance 14118." *See also id.*, ¶¶ 385, 476 (also alleging that Mendez and others passed Ordinance 14118);
- FAC, ¶ 135: "Mendez develops the City codes, ordinances, resolutions, tasks forces, and policies…";
- FAC, ¶ 221: "Defendants Carollo, Noriega, Mendez, Dooley, Marrero, and Diaz passed Ordinance 13936…" *See also id.*, ¶¶ 235, 272, 357, 398 (also alleging that Mendez and others targeted Plaintiff by passing Ordinance 13936);
- FAC, ¶ 325. "...Defendants the City, Carollo, Noriega, Mendez, Dooley, and Marrero's passing of Ordinance 11936…";
- FAC, ¶ 386: "Defendants the City of Miami, Carollo, Noriega, Mendez, Dooley, and Marrero have also targeted Plaintiff Beatstik through the passage of Ordinance 14057 …"

---

[10] *See also e.g., Redlich v. Leen*, 2016 WL 3670575, at *5 (S.D. Fla. May 20, 2016) (private attorney "entitled to absolute immunity in his hired role as a prosecutor on behalf of the City of Coral Gables in the traffic court proceeding"); *Henry v. Morris,* 2009 WL 1651395, at *2 (M.D. Fla. June 12, 2009) (recognizing that attorneys "representing the Government in civil litigation are entitled to absolute immunity for their official conduct during adjudication of cases involving the Government."); *Parette*, *supra*; *Cooper v. Parrish*, 203 F.3d 937, 947 (6th Cir. 2000) (finding a district attorney absolutely immune from liability arising from preparing and deciding to file public nuisance and civil forfeiture complaints); *Mendenhall v. Goldsmith*, 59 F.3d 685, 691 (7th Cir. 1995) (finding that a prosecuting attorney was entitled to absolute immunity for administering civil forfeiture proceedings because the attorney was functioning in an enforcement role analogous to a prosecutor); *Schrob v. Catterson*, 948 F.2d 1402, 1413 (3d Cir. 1991) (finding that a prosecutor was entitled to absolute immunity for his actions in initiating a civil forfeiture proceeding); *Fry v. Melaragno*, 939 F.2d 832, 837 (9th Cir. 1991) (reasoning that "the principles outlined in *Butz* should a fortiori apply to the government attorney's initiation and handling of civil litigation in a state or federal court").

*See also id.*, ¶¶ 422, 477, 558 (Plaintiffs El Shopping, Tower hotel, Bungalows respectively, were targeted by Ordinance 14057); and

- FAC, ¶ 535: "Carollo, Mendez and Dooley worked together … changing existing ordinances and passing new ordinances to prohibit the business' operation."

*Beach Blitz Co. v. City of Miami Beach* is on all fours to these allegations. 2018 WL 11260453 (S.D. Fla. Feb. 5, 2018). There, the plaintiff, a liquor store owner, brought several 1983 claims, including for retaliatory conduct, against several City of Miami Beach officials. *Id.* Amongst the purported misconduct was passing ordinances. The court, however, properly recognized that these claims against the "individually-named Defendants fail as a matter of law because local legislators are entitled to absolute immunity from civil liability for their legislative activities." *Id.* at *4 (citing *Bogan v. Scott-Harris*, 523 U.S. 44, 54-55 (1998) (barring claims against city mayor and council members related to their conduct in introducing, voting for, and signing an ordinance that eliminated plaintiff's office)). In so holding, the court recognized that this immunity extends to the City Attorney:

> The City Attorney's office allegedly assisted in the process of passing the ordinances by preparing and revising the drafts. *Id.* ¶ 49. Therefore, the City Attorney's office also has absolute immunity as "officials outside the legislative branch are entitled to immunity when they perform legislative functions." *Bogan*, 522 U.S. at 55 (internal citation omitted). The City Attorneys' actions "were legislative because they were integral in the legislative process." *Id.*

*Id.* at n. 16. *Beach Blitz* is correct as it relies on clear Supreme Court precedent, and it is indistinguishable from the present case with respect to Mendez's alleged role in passing ordinances and policies. Therefore, Mendez is protected by absolute immunity against allegations regarding her role in the legislative process.

The claims regarding legislative acts also fail because Mendez, as the City Attorney, was not the final policymaker, as she could not and did not pass ordinances on her own. *See* City of Miami Charter, § 4(a) ("The city commission shall constitute the governing body with powers (as hereinafter provided) to pass ordinances adopt regulations and exercise all powers conferred upon the city except as hereinafter provided."); *Gilroy v. Baldwin*, 843 Fed.Appx. 194, 196 (11th Cir. 2021) (in order for a public employee to be individually liable, they had to not merely recommend a decision, but to effectuate it). Mendez incorporates by reference Section I of Defendant Rachel Dooley's Motion to Dismiss Plaintiffs' First Amended Complaint on this issue.

Stripped of the prosecutorial and legislative acts protected by absolute immunity, each

10

Count is left without actionable conduct.[11] Thus, all claims against Mendez must be dismissed.

## IV.   City Attorney Mendez Is Entitled to Qualified Immunity.

Qualified immunity protects government officials sued in their individual capacities[12] as long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Bldg. Empowerment by Stopping Trafficking, Inc. v. Jacobo*, 2013 WL 5435729, at *1 (S.D. Fla. Sept. 27, 2013) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation." *Id.* (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)). The defense may be raised and addressed on a motion to dismiss, and will be granted if the complaint "fails to allege the violation of a clearly established constitutional right." *Jacobo*, 2013 WL 5435729 at *1 (quoting *Williams v. Ala. State Univ.*, 102 F.3d 1179, 1182 (11th Cir. 2003)).

To establish a qualified immunity defense, "the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Jacobo*, 2013 WL 5435729 at *2 (quoting *Lee*, 284 F.3d at 1197). To act within the scope of discretionary authority means that the actions were (1) undertaken pursuant to the performance of her duties and (2) within the scope of her authority. *Id.* Once Mendez establishes that she was acting within her discretionary authority, the **burden shifts** to Plaintiffs to demonstrate that qualified immunity is not appropriate. *Id.* Plaintiffs must demonstrate that Mendez had notice that her actions would violate a "clearly established" constitutional right. *Id.*

City Attorney Mendez is entitled to qualified immunity because (1) she was acting in her discretionary role as City Attorney, and (2) she was not on notice that her conduct as City Attorney would violate a "clearly established" right.

### A.  Mendez Was Acting in her Discretionary Role as City Attorney.

Mendez was acting within her discretionary function as the City Attorney under the facts

---

[11] For instance, the FAC is littered with vagaries like "mobilizing city resources" without explaining what this means or how it was done. *E.g.* FAC, ¶¶ 191, 266, 296, 325, 332, 347, 357, 392, 398, 428, 484, 518. Remaining specific acts are protected under qualified immunity, as set stated below.
[12] Although Plaintiffs sue Mendez in her individual capacity, to the extent that Plaintiffs allege that they are suing Mendez in her official capacity, Mendez incorporates by reference Section X of the City's Motion to Dismiss.

alleged by the Plaintiffs because those actions were (1) undertaken pursuant to the performance of her duties, and (2) within the scope of her authority. *Jacobo*, 2013 WL 5435729 at *2. This "inquiry is not whether it was within the defendant's authority to commit the allegedly illegal act." *O'Boyle v. Sweetapple*, 2015 WL 13574304, at *11 (S.D. Fla. June 4, 2015). "Instead, a court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the **outer perimeter** of an official's discretionary duties." *Id.* (emphasis added).

Clearly, City Attorney Mendez's alleged conduct was at least within the outer perimeter of her official duties. "The City of Miami's Charter sets out the role of the City Attorney." *Watts v. City of Miami*, 2015 WL 13310057, at *2 (S.D. Fla. July 22, 2015) (citing City of Miami Charter, Part 1, § 21). The City of Miami's Charter provides that the City Attorney shall be the "legal advisor of and attorney and counsel for the city, and for all officers and departments thereof in matters relating to their official duties" and "shall be the prosecuting attorney of the municipal court." *See* City of Miami Charter, Part 1, § 21.

The City of Miami's Charter provides that, "[w]hen required to do so by the resolution of the city commission, the city attorney shall prosecute or defend for and in behalf of the city all complaints, suits and controversies in which the city is a party, and such other suits, matters and controversies as he shall, by resolution or ordinance, be directed to prosecute or defend." *Id.* Moreover, the "mayor, city commission, the city manager, the director of any department, or any officer ... may require the opinion of the city attorney upon any question of law involving their respective powers and duties." *Id.*

The FAC is heavy on vagaries, but the intelligibly alleged acts that Mendez took were in clearly in her capacity as City Attorney including those listed above in Section III, below in Section IV.B., and, additionally, providing advice to Commissioner Carollo (FAC, ¶ 33), trying to postpone and cancel a final hearing (*id.*, ¶ 117), advising city personnel (*id.*, ¶ 135), creating official policies (*id.*, ¶ 166), enforcing city policies (*id.*, ¶¶ 193, 245, 347), and withdrawing or revoking permits (*id.*, ¶¶ 336, 598). The Eleventh Circuit has been clear that under circumstances like here, legal advice should be protected by qualified immunity. *See Holden v. Sticher*, 427 Fed. Appx. 749, 752 (11th Cir. 2011) (attorney who provided legal advice alleged to have caused arrest without probable cause was protected by qualified immunity) (citing *Durruthy v. Pastor*, 351 F.3d 1080, 1087 (11th Cir.2003) (if discretionary authority is not contested, plaintiff must show that

HSM   2990 Ponce De Leon Blvd., Suite 300, Coral Gables, FL 33134   |   305-800-4476

attorney violated a constitutional right and that constitutional right was clearly established); *Jones v. Cannon*, 174 F.3d 1271, 1282 (11th Cir.1999) ("a plaintiff cannot strip a § 1983 defendant of his qualified immunity by citing to general rules or abstract rights")).

This is all conduct that is "within, or reasonably related to, the outer perimeter of" Mendez's broad authority. *O'Boyle,* 2015 WL 13574304 at *11 (holding that filing a bar complaint was within outer perimeter of mayor's duties after analyzing the subject town's charter). Accordingly, she was acting within her discretionary functions as the City Attorney.

### B.   City Attorney Mendez Did Not Have Fair Notice That Her Alleged Conduct Violates a Clearly Established Right.

Plaintiffs cannot show that Mendez had "fair notice that [her] conduct would violate the Constitution." *Echols v. Lawton*, 913 F.3d 1313, 1325 (11th Cir. 2019) ("the Supreme Court has long ruled that qualified immunity protects a badly behaving official unless he had fair notice that his conduct would violate the Constitution"). Although the Eleventh Circuit has recognized a broad, clearly established principle that "the government may not retaliate against citizens for the exercise of First Amendment rights[,]" the Plaintiffs cannot show that Mendez had fair notice that she was violating this principle. *Shiver*, 2021 WL 5174526 at *9 (quoting *Bennett v. Hendrix*, 423 F.3d 1247, 1256 (11th Cir. 2005)).

Fair notice requires showing the violation of a "clearly established" right. *Id*. at *7-8. Plaintiffs need to show that Mendez had fair notice that the absolute immunity she is normally afforded does not apply here. *See Echols*, 913 F.3d at 1325.  But the Eleventh Circuit specifically held the "right to be free from a retaliatory investigation is **not** clearly established." *Shiver v. City of Homestead, Fla.*, 2021 WL 5174526, at *9 (S.D. Fla. Oct. 4, 2021) (citing *Rehberg v. Paulk*, 611 F.3d 828, 851 (11th Cir. 2010)) (emphasis added).[13] *Rehberg* held that a Court district attorney's actions were protected against a § 1983 claim by absolute and qualified immunity because his alleged actions in connection with investigating the plaintiff with a "retaliatory animus" did not violate any clearly established law and were protected by qualified immunity. *Id.* at *10. This is fatal to the FAC because the remaining allegations against Mendez not readily

---

[13] *See also Hernandez v. City of Homestead, Fla.*, 2022 WL 6569684 at *12 (S.D. Fla. Aug. 8, 2022) ("The Supreme Court has never defined retaliatory investigation, standing alone, as a constitutional tort, and neither has the Eleventh Circuit.") (cleaned up; quoting *Thompson v. Hall*, 426 F. App'x 855, 858 (11th Cir. 2011)).

disposed of via absolute immunity are heavily based on allegations that Mendez participated in investigations. *See e.g.* FAC, ¶¶ 56-69, 487, 531. Thus, to the extent Plaintiffs' claims against Mendez are based on supposedly retaliatory investigations, they should be dismissed.

If Plaintiffs cannot point to any specific precedent on point putting Mendez on notice that her actions violated Plaintiffs' constitutional rights, then Mendez's qualified immunity merits dismissal here. *Randall v. Scott*, 610 F.3d 701, 715-716 (11th Cir. 2010). In *Randall*, a Georgia district attorney, Scott, fired her chief of staff, Randall, after Randall decided to run for election against Scott's husband. *Id.* at 703-704. Randall brought a §1983 claim against Scott for First Amendment retaliation, alleging that Scott interfered with Randall's constitutional right to run for office. *Id.* at 703-704. The Eleventh Circuit affirmed the lower court's dismissal based on qualified immunity, holding that, although there is a constitutional right to run for office, it is not a clearly defined right. *Id.* at 715. The court reasoned that it was "aware of no precedential case with similar facts to those described here…"[14] *Id.* In other words, there was no precedent putting Scott on notice that firing Randall would violate her constitution rights. Nor is there such precedent here establishing that Mendez's conduct violated Plaintiffs' First Amendment rights. Therefore, the entire lawsuit against Mendez is barred by qualified immunity as and should be dismissed.

## V.   **The Conspiracy Claim is Barred by the Intracorporate Conspiracy Doctrine.**

In Count XVII, all Plaintiffs allege that all Defendants conspired with each other to retaliate against Plaintiffs. FAC, ¶¶ 642-671. Under the intracorporate conspiracy doctrine, a corporation's employees, acting as agents of the corporation, are deemed incapable of conspiring among themselves or with the corporation. *Rehberg*, 611 F.3d at 854. This doctrine stems from basic agency principles that "'attribute the acts of agents of a corporation to the corporation, so that all of their acts are considered to be those of a single legal actor.'" *Dickerson v. Alachua Cnty. Comm'n*, 200 F.3d 761 (11th Cir. 2000).

This doctrine applies to public entities and its employees under § 1983 and § 1985(3).

---

[14] To be sure, Plaintiffs cannot simply point to broad principles of freedom of speech or assembly as clearly established laws. *Gaines v. Wardynski*, 871 F.3d 1203, 1214 (11th Cir. 2017) (holding defendant was entitled to qualified immunity, reasoning: "[b]ecause the case law that Gaines has relied upon was not particularized to the facts of the case, but rather it merely set out First Amendment principles at a high level of generality, it was not 'apparent' that passing her over for promotion based on things her father said would violate *her* constitutional rights.")

*McMillan v. Dekalb Cnty., Georgia*, 2005 WL 5121856, at *4-5 (N.D. Ga. 2005). The Eleventh Circuit and its district courts have routinely held that the intracorporate conspiracy doctrine bars conspiracy claims against employees of a single government entity, including in cases involving constitutional and First Amendment claims. *Rehberg*, 611 F.3d at 854; *White v. City of Athens*, 169 F. Supp. 3d 1254, 1270 (N.D. Ala. 2016).

The doctrine applies when an employee was acting within the scope of their employment. *McAndrew*, 206 F.3d at 1036. Whether an individual was acting within the scope of his or her employment requires a determination that the "[individual] was performing a function that, but for the alleged constitutional infirmity, was within the ambit of the [individual's] scope of authority (i.e., job-related duties) and in furtherance of the employer's business." *Villar v. City of Aventura*, 2014 WL 3400988, at * 8 (S.D. Fla. July 11, 2014) (quoting *Grider v. City of Auburn*, 618 F.3d 1240, 1261 (11th Cir. 2010)). Here, Plaintiffs do not allege Defendants, in particular Mendez, were acting outside of the scope of their employment. Rather, in this case, the alleged conspirators, including Mendez, were all alleged to be City of Miami government officials (or the City itself) at all relevant times. FAC, ¶¶ 18-26, 28-30.[15]

Additionally, Plaintiffs must allege that Defendants reached an agreement to deprive them of their constitutional rights and committed an act in furtherance of that conspiracy. *Grider*, 618 F.3d at 1261 (citing *Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir. 1990) ("The plaintiff attempting to prove such conspiracy must show that the parties 'reached an understanding' to deny the plaintiff his or her rights. The conspiratorial acts must impinge upon the federal right; the plaintiff must prove an actional wrong to support the conspiracy."). Here, they fail to do so. Plaintiffs only allege without specificity that "Defendants reached an agreement to deny Plaintiffs their constitutional right to free speech and freedom of association." FAC, ¶ 661. Beyond that, the FAC makes baseless allegations of "benefits" (*id.,* at ¶¶ 644-660), but not an understanding. The vague assertion that "Defendants" as a group "reached an agreement" fails to state a claim.

---

[15] Plaintiffs allege that City Manager Noriega "was not a City employee (rather, he was employed by the Parking Authority) . . . when he agreed to engage in the conspiracy" FAC, ¶ 664. This allegation, however, should be disregarded both because it contradicts the allegation that Noriega "at all relevant times was the City Manager" and also because earlier events fall outside the statute of limitations. *See id.*, ¶¶ 20, 127-128 (events in 2018).

15

As such, Count XVII must be dismissed with prejudice for failure to state a cause of action.

**VI.**     **The First Amended Complaint Is an Impermissible Shotgun Pleading, and Filled with Allegations Which Must Be Stricken.**

Mendez incorporates and adopts by reference Section II.B.1. of the Carollo Motion to Dismiss. To supplement that argument, Mendez further notes that the FAC is a shotgun pleading under the third category identified in *Weiland*, as well as the second and fourth prohibited category as set forth in the Carollo Motion to Dismiss:

> 1. "[A] complaint containing multiple counts, where each count adopts the allegations of the preceding counts";[16]
>
> 2. A complaint littered with "conclusory, vague and immaterial facts not obviously connected to any particular cause of action";
>
> 3. A complaint that fails to "separate[e] into a different count each cause of action or claim for relief"; and
>
> 4. A complaint that "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions[.]"

*Weiland v. Palm Beach Cty. Sheriff's Off.*, 792 F.3d 1313, 1321 n.9 (11th Cir. 2015); *McDonough v. City of Homestead*, 771 Fed. Appx. 952, 955 (11th Cir. 2019) (same).

With respect to the third category of shotgun pleading, *McDonough v. City of Homestead*, 2023 WL 3035215 (11th Cir. Apr. 21, 2023), is on all fours. There, the Eleventh Circuit recognized the complaint was a shotgun pleading where each count asserts complaints against five defendants, four of whom were individuals and one of whom was a city, and thus subject to different claims. *Id*. at *2. A complaint which did not separate into a different count each cause of action or claim for relief was held to be a shotgun pleading. *Id. See also Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 979–80 (11th Cir. 2008) (condemning shotgun pleading that bunched together "untold causes of action" in one count). The *McDonough* court also recognized that the complaint was a shotgun pleading because:

> Besides the fact that all defendants are lumped together, there is no specificity as to who is responsible for certain acts or omissions. Each count alleges First, Fourth, and Fourteenth Amendment violations. And the counts vacillate between holding "each" defendant responsible for the alleged constitutional violations, and claiming that only "some" of them participated. Overall, the complaint is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular

---

[16] Counts XV, XVI, and XVII incorporate all of the preceding counts' allegations.

cause of action."

2023 WL 3035215, at *2 (internal citation omitted). The FAC is even more egregious with respect to these defects, as seen in the countless examples of "conclusory vague and immaterial facts", and therefore requires dismissal or repleading. "To fix these problems, the complaint must contain specific allegations with respect to each Defendant, separating the distinct allegations against the various Defendants into separate counts, which must each identify a particular cause of action." *Webb v. Miami-Dade Cnty. Gov't,* 2023 WL 5951821, at *2 (S.D. Fla Aug. 25, 2023)*.* The FAC did not fix any of these problems; it only separated § 1983 Claims by Plaintiff, but the Defendants remained lumped together. As for the Civil Conspiracy Claim, Plaintiffs did not bother even separating the Plaintiffs. Considering the FAC did not fix this problem, it is evidently unfixable, and requires dismissal with prejudice. Because Plaintiffs have had the opportunity to fix the shotgun pleading, but have failed to, dismissal of the FAC **with prejudice** is appropriate. *See e.g.*, *McDonough*, 771 F. App'x at 955–56.

Next, Subsection II.B.1.b. of Carollo's Motion to Dismiss correctly sets forth that the FAC's legions of improper speculation and legal conclusions are flanked by platoons of rank immateriality. The FAC is a shotgun pleading because it is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Peele v. Jones Day*, 2023 WL 3088830, at *2 (S.D. Fla. Apr. 26, 2023) (citing *Weiland*, 792 F.3d at 1322). Additionally, these allegations should also be stricken as scandalous, redundant, immaterial and impertinent under Rule 12(f). Rule 12(f)(1) and (2) provide the court with the power to strike redundant, immaterial, impertinent, or scandalous matter *sua sponte* or upon motion by a party.[17] In addition to the allegations that Carollo highlights, Mendez also points to:

> 135.   City Attorney Victoria Mendez operates as the Black Widow for Carollo, in much the same manner as Griselda Blanco Restrepo operated as the Black Widow for the Medellin Cartel. Under the guise of attorney-client privilege, Mendez develops the City codes, ordinances,

---

[17] *See Dershowitz v. Cable News Network, Inc.*, 541 F. Supp. 3d 1354, 1370 (S.D. Fla. 2021) (striking immaterial allegations as an "impertinent salvo that do no not belong in this case."); *see also Jenkins v. City of Las Vegas*, 333 F.R.D. 544, 548 (D.N.M. 2019) (striking statements implying mayor is prone to criminality and immoral, and allegations regarding investigation of mayor for bid-rigging, bribery, kickbacks, voter fraud, and elections tampering did not have any direct relevance to employee's claims of discrimination or retaliation.)

> 136. Defendant Rachel Dooley is Vic Mendez's personal assassin, carrying out all of the City's targeting, making sure Plaintiffs pay the maximum fees without any reduction or waiver,

Mendez is, of course, the City Attorney, not a "Black Widow" nor a Medellin Cartel gangster, nor any other such trope, and she does not employ (nor do Plaintiffs seriously allege) that she employs a personal assassin. Such lurid and scurrilous metaphors are not suited for a legal filing; they are better suited for a pulp detective novel. Nor do cheap shots at her husband have any place in this litigation. Such allegations[18] should be stricken.

### VII. Plaintiffs Fail to State a Claim for First Amendment Retaliation Due to the Impermissible Lumping and Overall Lack of Specificity.

Closely related to the shotgun pleading doctrine is "lumping": indeed, the terms are often used in tandem or interchangeably. *See e.g. Webb,* 2023 WL 5951821, at *2 ("A typically confusing aspect of many shotgun pleadings involving multiple defendants is the lumping together of all those defendants within the same count."). The lumping and overall lack of specificity leaves Plaintiffs unable to state a claim for First Amendment retaliation because each plaintiff fails to plead the elements. Here, Mendez incorporates and adopts by reference Subsections II.B.1.a. and II.B.2. from the Carollo Motion to Dismiss, Sections V and VI from Defendant Arthur Noriega's Motion to Dismiss Plaintiffs' Complaint, and Section IV of Dooley's Motion to Dismiss.

The elements of First Amendment retaliation claim are: (1) speech that was constitutionally protected; (2) the defendant's retaliatory conduct adversely affected the protected speech; and (3) a causal connection between the retaliatory actions and the adverse effect on speech. *Jacobo*, 2013 WL 5435729 at *3. As to the first prong, it appears that only Pinilla and Fuller engaged in speech. Further, it is unclear what speech, if any, the entity Plaintiffs engaged in---even with each Plaintiff now pleading their counts separately. Instead, they now rely on "freedom of association", which is unavailing for the reasons set forth in Section V of Noriega's Motion to Dismiss.

---

[18] FAC, p. 12 (heading), ¶¶ 75, 129 (lurid accusations of a "Valentine's Day Massacre"); ¶ 67-68, 572, 650 (impertinent and scurrilous allegations regarding Mendez's husband); ¶ 120 ("Mendez threatened ominously"); ¶ 156 (allegation and chart of a "cabal" or "syndicate"); p. 11 (heading), p. 28 (heading), ¶¶ 79, 127, 195, 221, 249, 386, 422, 477, 560 (more references to a "syndicate"). Mendez incorporates by reference the motion to strike portion of Defendant Daniel Goldberg's Motion to Dismiss First Amended Complaint and to Dismiss/Strike First Amended Complaint as Scandalous and Impertinent.

HSM   2990 Ponce De Leon Blvd., Suite 300, Coral Gables, FL 33134   |   305-800-4476

Then, to satisfy the second and third prongs, "[a] plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Jacobo*, 2013 WL 5435729 at *3. Further, the conduct must adversely affect the first amendment activity, and there must be a causal connection between the defendant's retaliatory conduct and the adverse effect. *DeMartini v. Town of Gulf Stream*, 942 F.3d 1377 (11th Cir. 2019) (citation omitted). Plaintiffs do not allege that Mendez even knew that Plaintiffs were purporting to exercise their speech, nor do Plaintiffs, beyond generalities, allege a chilling effect---for instance, the entity Plaintiffs continue to associate with Fuller and Pinilla. Further, Mendez is not even alleged to have any personal animus towards Plaintiffs. The vendetta is Carollo's, not Mendez's. *E.g.* FAC, ¶ 127 ("...Carollo was targeting Plaintiffs for political payback..."). All specific allegations regarding the retaliatory animus apply to Carollo, not Mendez. *Id.*, ¶¶ 43-45. There are no such allegations regarding Mendez—not a hint of what could cause her to bear a "grudge" against any of the Plaintiffs, let alone any specific Plaintiff. Rather than animus, Plaintiffs simply plead that Mendez was any "ally" of Carollo—this does not suffice. *Compare Id.*, ¶¶ 66-67. Vicarious liability for Carollo cannot be imputed to Mendez. *See Turner v. Williams*, 65 F. 4th 564 (11th Cir. 2023). As a result, the claims against Mendez fail because the First Amended Complaint fails to adequately allege that Mendez had "retaliatory animus" that was a but-for cause of any particular alleged adverse action, let alone one that adversely affected their exercise of first amendment rights. *Nieves*, 139 S. Ct. at 1722.

Further, establishing which of the Plaintiffs was actually harmed by which of the Defendants, and which actions were in retaliation for whom, is no mere academic exercise. The Supreme Court has held that corporations possess First Amendment rights that are personal to the corporation itself, rather than its shareholders, directors, or employees, and are thus capable of bringing suit directly under § 1983. *Citizens United v. Fed. Election Com'n*, 558 U.S. 310 (2010). Moreover, when a person suffers retaliation for someone else's actions, the claim for retaliation, and standing, lies directly with the person who was retaliated against.[19] This is a particularly

---

[19] *See e.g. Merritt v. Dillard Paper Co*., 120 F.3d 1181, 1188-89 (11th Cir. 1997) (recognizing in an employment discrimination context that an employer can engage in retaliation by targeting an employee's family members, but that the employee would not have standing to pursue that claim on behalf of the family member because the claim lies directly with the family member).

pronounced issue here because of another case concurrently pending, *Mad Room v. City of Miami*, 1:21-cv-23485-RKA (S.D. Fla.), on behalf of just four of the Fuller entities. This is not only impermissible claim-splitting, but a standing issue: Mad Room LLC d/b/a Ball & Chain and Altos Mexicano, LLC d/b/a Taquerias El Mexicano are plaintiffs in *Mad Room* but not here, yet, per *Mad Room*, own and operate Ball & Chain and Taquerias El Mexicano, respectively. *Id.*, DE 1 at ¶¶ 8, 9. *Compare* FAC, ¶¶ 27, 52-53, 85-86, 125, 194-239, 247-278 (allegations regarding Ball & Chain and Taquerias El Mexicano). This standing issue shows why Plaintiffs cannot lump themselves or Defendants together—each plaintiff must establish each element of each claim against each defendant. They wholly fail to do so. Mendez further incorporates by reference Section IV of Noriega's Motion to Dismiss on Plaintiffs' lack of standing. For the reasons stated herein, and therein, the FAC must be dismissed.

## VIII.   Because the First Amended Complaint Alleges That the City's Enforcement Actions Were Justified, Plaintiffs Have No § 1983 Claim.

Mendez incorporates and adopts by reference Section II.D. of the Carollo Motion to Dismiss and Section VI.D. of Defendant Noriega's Motion to Dismiss.

## IX.   The Statute of Limitations Bars the Claims for Acts Taken On or Before November 6, 2019.

Mendez incorporates and adopts by reference Section II.C. of Carollo's Motion to Dismiss and Section VIII of Noriega's Motion to Dismiss. *See also In USA Entm't Grp., Inc. v. Tony*, 847 Fed. Appx. 642, 646 (11th Cir. 2021) (explaining that the statute of limitations for a §1983 suit is four years). Further, the face of the FAC shows that several of the allegations against Mendez specifically are for actions that took place before November 6, 2019. *See* FAC at ¶¶ 54-71, 75, 127, 166, 174, 528, 597-600. The FAC should, at a minimum, be dismissed as to those allegations.

## CONCLUSION

For the foregoing reasons, Mendez respectfully requests that this Court dismiss the FAC **with prejudice**, or alternatively, strike the headings on pages 11, 12, 28 and paragraphs 67-68, 75, 79, 120, 127, 129, 135, 136, 156, 195, 221, 249, 386, 422, 477, 560, 572, 650 and grant other and further relief that this Court deems just and proper.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(b)(2), Mendez respectfully requests a two-hour hearing on this motion, which raises numerous complex issues which oral argument would address and illuminate.

HSM   2990 Ponce De Leon Blvd., Suite 300, Coral Gables, FL 33134   |   305-800-4476

Dated: February 29, 2024.

Respectfully submitted,

**HEISE SUAREZ MELVILLE, P.A.**
2990 Ponce De Leon Boulevard
Suite 300
Coral Gables, Florida 33134
Telephone (305) 800-4476

By: */s/ Luis E. Suarez*
       Luis E. Suarez
       Florida Bar No. 390021
       lsuarez@hsmpa.com
       Patricia Melville
       Florida Bar No. 475467
       pmelville@hsmpa.com

       *Attorneys for Defendant,*
       *City Attorney Victoria Mendez*

## CERTIFICATE OF SERVICE

I hereby certify that, on February 29, 2024, I electronically filed the foregoing with the Clerk of the Court using CM/ECF. Copies of the foregoing document will be served on all parties via transmission of Notice of Electronic Filing generated by CM/ECF.

By: */s/ Luis E. Suarez*
       Luis E. Suarez
       Florida Bar No. 390021