**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**Case No.: 1:23-cv-24251-FAM**

FULLER, et al.,

     Plaintiffs,

v.

THE CITY OF MIAMI, et al.,

     Defendants.

_____/

**JOE CAROLLO'S MOTION TO DISMISS**
**THE FIRST AMENDED COMPLAINT WITH PREJUDICE**

## TABLE OF CONTENTS

I.  INTRODUCTION .......................................................................................................... 1

II. ARGUMENT ............................................................................................................... 1

   A.  The Amended Complaint and This Action Are STILL Barred by Res Judicata ........ 1

     *1. There Is a Prior Final Judgment on the Merits by a Court of Competent Jurisdiction* .................................................................................................................... 2

     *2. The Fuller I Parties, or Those in Privity with Them, Are Identical to Those in This Case* .............................................................................................................. 3

       *a.  The Entity Plaintiffs Agreed to Be Bound by the Litigation of Others* .................... 4

       *b.  A Substantive Legal Relationship Existed Between the Person to Be Bound and a Party to the Judgment* ............................................................................... 5

       *c.  The Entity Plaintiffs Were Adequately Represented by Someone Who Was a Party to Fuller I* ................................................................................................... 5

       *d.  The Nonparty Assumed Control Over the Litigation in Which the Judgment Was Issued* ........................................................................................................ 6

     *3. The Amended Complaint Arises from the Same Facts and Alleges the Same Claims as Fuller I* ......................................................................................... 6

       *a.  The Entity Plaintiffs' Claims Were Raised and Litigated by Fuller and Pinilla in Fuller I* ................................................................................................... 7

       *b.  The Entity Plaintiffs' Claims Arise from the Same Conduct Already Alleged and Litigated by Fuller and Pinilla in Fuller I* ................................................ 9

   B.  The Amended Complaint Is STILL an Impermissible Shotgun Pleading and the Entity Plaintiffs STILL Fail to State a Claim ...................................................... 11

     *1. The Amended Complaint is STILL an Impermissible "Shotgun Pleading"* ............. 11

       *a.  The Amended Complaint STILL Improperly Asserts an Undifferentiated Mass of Allegations Against Multiple Defendants* ............................................. 11

       *b.  The Amended Complaint is STILL Prolix in the Extreme and Even More Littered with Irrelevancies* ................................................................................. 15

     *2. The Entity Plaintiffs STILL Fail to State a Claim Under § 1983* .............................. 16

       *a.  Plaintiffs' Collective Speech Allegations are Insufficient* ..................................... 17

       *b.  The Only Two Entity Plaintiffs that Make Specific Speech Allegations Do Not Assert a Legally Sufficient § 1983 Claim* ............................................. 18

         i.  Viernes Culturales/Cultural Fridays, Inc. .......................................................... 18

         ii. Calle Ocho Marketplace, LLC ........................................................................... 18

       *c.  Thirteen of the Entity Plaintiffs Do Not Even Attempt to Allege Any Speech* ........ 19

   C.  The Complaint Was Filed Too Late, and the Statute of Limitations Has Run .......... 19

**D. Because the Amended Complaint Admits That Some City Enforcement Actions Were Justified, And Does Nothing to Demonstrate That the Others Were Not, Plaintiffs Have No § 1983 Claim** ................................................................................... **20**

**III. CONCLUSION** ...................................................................................................... **23**

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*6420 Roswell Rd., Inc. v. City of Sandy Springs, Georgia*, 484 F. Supp. 3d 1321 (N.D. Ga. 2020) ............................................................................................................................... 20

*Access for Disabled, Inc. v. Fort Lauderdale Hosp., Inc.*, 826 F. Supp. 2d 1330 (S.D. Fla. 2011) 5

*Andreu v. HP Inc.*, 272 F. Supp. 3d 1329 (S.D. Fla. 2017) ............................................................ 3

*Beach Blitz Co. v. City of Miami Beach*, 2018 WL 11260453 (S.D. Fla. 2018) ......................... 21

*Bey v. City of Tampa Code Enf't*, 607 F. App'x 892 (11th Cir. 2015)................................... 20, 23

*Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981)........................................................ 3

*Chappell v. Rich*, 340 F.3d 1279 (11th Cir. 2003)...................................................................... 19

*Citibank, N.A. v. Data Lease Fin. Corp.*, 904 F.2d 1498 (11th Cir. 1990)................................... 3

*Concordia v. Bendekovic*, 693 F.2d 1073 (11th Cir. 1982) ......................................................... 2

*D.B.C. Corp. v. Nucita Venezolana, C.A.*, 464 F. Supp. 3d 1323 (S.D. Fla. 2020).......................11

*Fernandez v. Sch. Bd. of Miami-Dade Cnty.*, 201 F. Supp. 3d 1353 (S.D. Fla. 2016)................... 5

*Gazzola v. NCL (Bahamas) Ltd.*, 2019 WL 3067506 (S.D. Fla. 2019)...................................... 12

*Griswold v. Cnty. of Hillsborough*, 598 F.3d 1289 (11th Cir. 2010) ........................................ 4, 6

*Harrison v. Bd. of Regents of Univ. Sys. of Georgia*, 519 F. App'x 641 (11th Cir. 2013)............. 15

*Hartman v. Moore*, 547 U.S. 250 (2006) ............................................................................ 18, 23

*Hilliard v. Gutierrez*, 2021 WL 2712122 (S.D. Fla. 2021) .................................................. 3, 9, 10

*Horne v. Russell Cnty. Comm'n*, 295 F. Supp. 2d 1289 (M.D. Ala. 2003) ................................. 10

*Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327 (11th Cir. 2010) ......................................... 15

*Jaffree v. Wallace*, 837 F.2d 1461 (11th Cir. 1988)......................................................... 3, 6, 9

*Montana v. U.S.*, 440 U.S. 147 (1979).......................................................................................... 2

*N.A.A.C.P. v. Hunt*, 891 F.2d 1555 (11th Cir. 1990) ................................................................... 3

*O'Boyle v. Com. Grp., Inc.*, 2023 WL 2579134 (11th Cir. 2023) ............................................... 20

*Omar ex rel. Cannon v. Lindsey*, 334 F.3d 1246 (11th Cir. 2003) ............................................. 19

*Pierson v. Orlando Reg'l Healthcare Sys., Inc.*, 619 F. Supp. 2d 1260 (M.D. Fla. 2009)............ 12

*Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235 (11th Cir. 1999)................................................. 2, 6

*Rehberg v. Paulk*, 611 F.3d 828 (11th Cir. 2010) ..................................................................... 10

*Robson 200, LLC v. City of Lakeland, Fla.*, 593 F. Supp. 3d 1110 (M.D. Fla. 2022)................. 22

*Rogers v. City of Coll. Park, Georgia*, 2019 WL 4168797 (N.D. Ga. 2019) .............................. 22

*Rumsfeld v. Forum for Academic & Inst'l Rights, Inc.*, 547 U.S. 47 (2006) ................................ 17

*H & J Land Invs., Inc. v. City of Jacksonville*, 2014 WL 4540200 (M.D. Fla. 2014).................. 23

*Smith v. Sec'y of Veterans Affs.*, 808 F. App'x 852 (11th Cir. 2020)................................................ 3

*Standard Life Ins. Co. v. First Nat. Bank & Tr. Co. of Vidalia, Georgia*, 510 F.2d 272 (5th Cir.

    1975).................................................................................................................................................. 3

*State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 278 F. Supp.

    3d 1307 (S.D. Fla. 2017) ................................................................................................................ 22

*Synergy Real Estate of SW Fla. v. Premier Prop. Mgmt. of SW Fla., LLC*, 2013 WL 5596795

    (M.D. Fla. 2013) ............................................................................................................................. 12

*Taylor v. Sturgell*, 128 S. Ct. 2161 (2008) ........................................................................... 3, 5, 6

*Trump v. Clinton*, 626 F. Supp. 3d 1264 (S.D. Fla. 2022) .................................................... 16

*Vibe Micro Inc. v. Shabanets*, 878 F.3d 1291 (11th Cir. 2018) ............................................. 15

*Wallace v. Kato*, 549 U.S. 384 (2007) .................................................................................... 19

*Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313 (11th Cir. 2015) ........................ 11

*Wellons v. Comm'r, Ga. Dept. of Corr.*, 754 F.3d 1260 (11th Cir. 2014) ............................... 19

*West v. Atkins*, 487 U.S. 42 (1988) ........................................................................................ 17

*Wolff v. Cash 4 Titles*, 351 F.3d 1348 (11th Cir. 2003) ................................................... 17, 19

*Zinman v. Nova SE. Univ., Inc.*, 2023 WL 2669904 (11th Cir. 2023)................................ 17, 18

**STATUTES**

Fla. Stat. § 605.04091 ............................................................................................................. 6

**RULES**

Fed. R. Civ. P. 8......................................................................................................................... 16

Local Rule 7.1 ............................................................................................................................ 23

## I.   INTRODUCTION

The First Amended Complaint (D.E. 77) could not (and did not) cure the dispositive defects that plagued plaintiffs' initial complaint. They could not plead around the fact that this case demands an impermissible repeat performance of a case (*Fuller I*) that they already tried to a final judgment in another court of this District. It is an immutable fact that the *Fuller I* judgment bars this action. Further, no amendment can cure the fact that what purports to be an action about suppression of protected speech fails to identify any speech at all—protected, suppressed, or otherwise—by any plaintiffs other than the scofflaw developers driving this train.[1] Moreover, no amendment can change the fact that plaintiffs sued too late.[2] Finally, no amendment can change the fact that the challenged City of Miami health, safety, zoning, and building enforcement actions had a lawful basis, and thus cannot support plaintiffs' claims.

Where the amended complaint changes anything, it only makes things worse, inflating what had been a ponderous and impermissible shotgun pleading (which the Court ordered plaintiffs to cure) into an absurdly bloated collection of more than a dozen shotgun pleadings. These purported claims are improperly vague and conclusory group pleadings against so many defendants that they are inherently impossible for the Court to manage, for defendants to defend, or for a jury to parse. The amended complaint cured nothing. It should be dismissed with prejudice.

## II.   ARGUMENT

### A.   The Amended Complaint and This Action Are STILL Barred by Res Judicata

No amendment could possibly have cured this action's core defect—this dispute has already been tried to a verdict and final judgment. Because the amended complaint changes nothing, this motion largely reiterates Mr. Carollo's arguments from his Motion to Dismiss the [Initial] Complaint with Prejudice (D.E. 58).

Plaintiffs Fuller and Pinilla filed *Fuller v. Carollo*, Case No. 1:18-cv-24190 ("*Fuller I*"),

---

[1] There are 17 plaintiffs. We refer to William O. Fuller and Martin Pinilla, II, as the "Individual Plaintiffs." There is no allegation of speech by the 15 "Entity Plaintiffs"—the Barlington Group, LLC, Calle Ocho Marketplace, LLC, Yo Amo Calle Siete, LLC, Little Havana Arts Building, LLC, Piedra Villas, LLC, Little Havana Arts Building Too, LLC, Brickell Station, LLC, Tower Hotel, LLC, Futurama, LLC, El Shopping, LLC, Beatstik, LLC, Viernes Culturales/Cultural Fridays, Inc., Little Havana Bungalows, LLC, LHAB Tres, LLC, and La Gran Fiesta, LLC.

[2] Because the amended complaint has the same dispositive defects as the original, Mr. Carollo adopts the arguments from his Motion to Dismiss the Complaint With Prejudice (D.E. 58).

in 2018, asserting there, as they did in their initial complaint here, and as they do in the amended complaint, that Mr. Carollo violated 42 U.S.C. § 1983 and plaintiffs' First Amendment rights. On June 1, 2023, a jury found Mr. Carollo liable and awarded plaintiffs Fuller and Pinilla $63 million in damages. *Fuller I*, D.E. 470. On the same day, the court entered a final judgment against Mr. Carollo. *Id.*, D.E. 479. Now Fuller and Pinilla, along with 15 of their wholly owned entities (which appear to be their corporate alter egos), bring this § 1983 action, all but identical to the first one, alleging that Mr. Carollo violated their First Amendment rights. Because plaintiffs complain of the same conduct, which arises out of the same nucleus of operative facts, as in *Fuller I*, this case is barred on its face by res judicata, which entirely precludes plaintiffs' claims, and requires dismissal of the amended complaint with prejudice.

"Res judicata bars the filing of claims which were raised ***or could have been raised*** in an earlier proceeding." *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1238 (11th Cir. 1999) (emphasis added).[3] "The purpose behind the doctrine of res judicata is that the 'full and fair opportunity to litigate protects [a plaintiff's] adversaries from the expense and vexation [of] attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.'" *Id.* (quoting *Montana v. U.S.*, 440 U.S. 147, 153–54 (1979)). In this Circuit, a claim is barred by res judicata when: "(1) there is a final judgment on the merits; (2) the decision was rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both cases." *Id.* Because all four elements are satisfied here, plaintiffs' claims against Mr. Carollo are barred by the judgment in *Fuller I*.

### 1. There Is a Prior Final Judgment on the Merits by a Court of Competent Jurisdiction

The first two elements of res judicata are easily satisfied here. The *Fuller I* court entered a final judgment on the merits, after a jury verdict, on June 1, 2023. *Fuller I*, D.E. 479.[4] It does

---

[3] "[A] party may raise a res judicata defense by motion rather than by answer where the defense's existence can be judged on the face of the complaint." *Concordia v. Bendekovic*, 693 F.2d 1073, 1075 (11th Cir. 1982).

[4] "Pursuant to the Jury Verdict entered on June 1, 2023, it is hereby ORDERED that judgment is entered in favor of Plaintiff William O. Fuller, and against Defendant, Joe Carollo, in the amount of $34,300,000.00, with interest at the statutory rate from the date of this judgment, and judgment is entered in favor of Plaintiff Martin Pinilla II, and against Defendant, Joe Carollo, in the amount of $29,200,000.00, with interest at the statutory rate from the date of this judgment.

not matter that *Fuller I* is on appeal,[5] because "[t]he established rule in the federal courts is that a final judgment retains all of its res judicata consequences pending decision of the appeal." *Jaffree v. Wallace*, 837 F.2d 1461, 1467 (11th Cir. 1988) (cleaned up). Therefore, "'[a] case pending appeal is res judicata and entitled to full faith and credit unless and until reversed on appeal.'"[6] *Andreu v. HP Inc.*, 272 F. Supp. 3d 1329, 1333 (S.D. Fla. 2017) (quoting *Standard Life Ins. Co. v. First Nat. Bank & Tr. Co. of Vidalia, Georgia*, 510 F.2d 272, 273 (5th Cir. 1975)).[7] The June 1, 2023 *Fuller I* judgment is a final judgment on the merits for purposes of res judicata.[8]

### 2. The Fuller I Parties, or Those in Privity with Them, Are Identical to Those in This Case

The third element of res judicata requires identity of the parties in both actions and bars "subsequent claims involving the same parties or their privies." *Citibank, N.A. v. Data Lease Fin. Corp.*, 904 F.2d 1498, 1502 (11th Cir. 1990). "Identity of parties concerns two sets of persons. The first set is comprised of those persons who were actual parties in the original action." *N.A.A.C.P. v. Hunt*, 891 F.2d 1555, 1560–61 (11th Cir. 1990). Fuller and Pinilla were the plaintiffs in *Fuller I* and are plaintiffs here. Mr. Carollo was a defendant in *Fuller I* and is a defendant here. As to Fuller's and Pinilla's claims against Mr. Carollo, the parties are identical.

"The second set of persons to whom res judicata applies is . . . those persons who are or were in privity with the parties to the original suit." *Hunt*, 891 F.2d at 1560. Privity exists when the party of record in the initial case and a party in the subsequent case are "sufficiently close so a judgment for or against the party should bind or protect the nonparty," or where "the [original] nonparty's interests were represented adequately by the party in the original suit." *Id.* (internal citations omitted). The Eleventh Circuit, following *Taylor v. Sturgell*, 128 S. Ct. 2161 (2008),

---

For all of the foregoing execution shall issue." *Fuller I*, D.E. 479.

[5] *William O. Fuller, et al. v. Joe Carollo*, 23-12167 (11th Cir. 2023).

[6] The *Fuller I* court was a court of competent jurisdiction as to the § 1983 claims asserted in that case. *E.g.*, *Hilliard v. Gutierrez*, 2021 WL 2712122, at *5 (S.D. Fla. 2021).

[7] Decisions issued before October 1, 1981, by the former Fifth Circuit are binding precedent in this Court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

[8] The Court may consider orders and filings in *Fuller I* and in plaintiffs' other actions in deciding this motion to dismiss without converting it into a motion summary judgment. The Court can "implicitly t[ake] judicial notice of [plaintiffs'] prior action[s] because the prior orders were public record, known within the trial court's jurisdiction—as it was the court that issued the orders, and can be accurately and readily determined." *Smith v. Sec'y of Veterans Affs.*, 808 F. App'x 852, 854 (11th Cir. 2020) (no error in district court's failure to convert motion to dismiss based on res judicata into summary judgment motion).

recognizes six instances demonstrating privity:

> (1) the nonparty agreed to be bound by the litigation of others; (2) a substantive legal relationship existed between the person to be bound and a party to the judgment; (3) the nonparty was adequately represented by someone who was a party to the suit; (4) the nonparty assumed control over the litigation in which the judgment was issued; (5) a party attempted to relitigate issues through a proxy; or (6) a statutory scheme foreclosed successive litigation by nonlitigants.

*Griswold v. Cnty. of Hillsborough*, 598 F.3d 1289, 1292 (11th Cir. 2010).

The first four of the six *Griswold* types of privity are obvious here. All the Entity Plaintiffs are owned or controlled by Fuller, Pinilla, or both and all were in privity with Fuller and Pinilla during *Fuller I*, which alleged the same purported misconduct regarding those entities as the amended complaint.[9]

### a. The Entity Plaintiffs Agreed to Be Bound by the Litigation of Others

All the Entity Plaintiffs agreed to be bound by the litigation in *Fuller I*. Fuller and Pinilla stated in the *Fuller I* complaint that "all claims for monetary damages that have been suffered by entities associated with Plaintiffs ***have been assigned to Plaintiffs in their individual capacities*.**" *Fuller I*, D.E. 125 ¶ 207 (emphasis added); *id*. ¶¶ 111, 298 ("All claims related to monetary damages have been assigned by the relevant business entity to Plaintiffs in their individual capacities.").

Plaintiffs' initial complaint here contained the same assignment allegation. Compl. ¶ 325. In their amended complaint, plaintiffs figured out that they should drop the assignment allegation, but that cannot work. The assignments were litigated in *Fuller I*, and the judgment there incorporated those assigned claims, which means that any claims that plaintiffs now allege are possessed by the purported Entity Plaintiffs were tried to a final judgment in *Fuller I*.

Further, the initial complaint's assignment allegations stand, and the Court may consider them, because it may "disregard the contradictory and manipulated allegations of an amended pleading[]" where the amendment is a "transparent attempt . . . to amend [the] pleading[s] in order to avoid a dispositive defense,"  and the amended complaint directly contradict[s] the original complaint." *Fernandez v. Sch. Bd. of Miami-Dade Cnty*., 201 F. Supp. 3d 1353, 1361 n.1

---

[9] Am. Compl. ¶¶ 3–17. Further, all of the Entity Plaintiffs purportedly assigned their claims to Fuller and Pinilla, as is alleged in both *Fuller I* and the original complaint here. *See Fuller I*, D.E. 125 ¶¶ 111, 207, 298; Compl. ¶ 325. This allegation demonstrates that the Entity Plaintiffs intended to assign whatever claims they possessed to Fuller and Pinilla during *Fuller I.*

(S.D. Fla. 2016) (cleaned up). Further, in *Fuller I*, Fuller and Pinilla argued that because they had been assigned all their entities' claims, the assignments "confirm[ed] Plaintiffs' standing to pursue those claims." *Fuller I*, D.E. 162 at 15. Through these purported assignments, each of the Entity Plaintiffs agreed and intended to be bound by the judgment in *Fuller I*.

> ### b. A Substantive Legal Relationship Existed Between the Person to Be Bound and a Party to the Judgment

Independent of the Entity Plaintiffs' assignments of their claims to Fuller and Pinilla, as the amended complaint states,[10] the Entity Plaintiffs all are closely held entities owned or controlled either by Fuller or Pinilla or both of them. A president or sole owner of a company has "an express or implied legal relationship" with his company for purposes of res judicata and privity. *Access for Disabled, Inc. v. Fort Lauderdale Hosp., Inc.*, 826 F. Supp. 2d 1330, 1337 (S.D. Fla. 2011). That relationship alone would be enough to bind the Entity Plaintiffs to the *Fuller I* judgment and bar re-litigation of their purported claims. But the Entity Plaintiffs' legal relationship to the judgment holders is even more direct since they[11] expressly purported to assign their claims and damages to Fuller and Pinilla.

The relationship between assignees (which Fuller and Pinilla purported to be) and assignors (which the Entity Plaintiffs purported to be) is by definition "a substantive legal relationship" for res judicata purposes. *Taylor*, 128 S. Ct. at 2164 ("[N]onparty preclusion may be based on a pre-existing substantive legal relationship between the person to be bound and a party to the judgment, e.g., assignee and assignor."). Without question, the Entity Plaintiffs were in privity with Fuller and Pinilla and are bound by the judgment in *Fuller I*.

> ### c. The Entity Plaintiffs Were Adequately Represented by Someone Who Was a Party to Fuller I

Fuller and Pinilla already had the opportunity to litigate the Entity Plaintiffs' claims to a final judgment in *Fuller I*, leaving the Entity Plaintiffs with no claims to pursue. But even if no assignments had occurred, the Entity Plaintiffs' interests were adequately represented by their fiduciaries, Fuller and Pinilla. "Representative suits with preclusive effect on nonparties include . . . suits brought by trustees, guardians, and other fiduciaries . . . ." *Id.* at 2172-73. Under Florida law, managers of limited liability companies owe fiduciary duties to the entities they manage.

---

[10] Am. Compl. ¶¶ 3–17.
[11] With the single exception of Yo Amo Calle Siete, LLC, which was created in 2020.

Fla. Stat. § 605.04091(1). Accordingly, the Entity Plaintiffs were adequately represented by their fiduciaries, Fuller and Pinilla, in *Fuller I*.

> ### d. The Nonparty Assumed Control Over the Litigation in Which the Judgment Was Issued

One might be forgiven for thinking that the Entity Plaintiffs are mere alter egos of Fuller and Pinilla. The amended complaint makes clear that Fuller and Pinilla own or control all the Entity Plaintiffs and control all of their activities. Even though they were not named parties in *Fuller I*, the Entity Plaintiffs are presumed to have controlled *Fuller I* because they had "the opportunity to present proofs and argument," and "already had [their] day in court *even though [] not a formal party* to the litigation." *Taylor*, 128 S. Ct. at 2173 (internal quotations omitted) (emphasis added). Pinilla and Fuller, as the Entity Plaintiffs' owners and managers, had the right, duty, and power to sue on their behalf in *Fuller I*. By choosing not to do so, and instead taking purported assignments of the Entity Plaintiffs' claims, Fuller and Pinilla exercised control over *Fuller I* on behalf of those entities. *Griswold*, 598 F.3d at 1293 ("As Griswold's counsel conceded at oral argument, Griswold had complete control over the prior litigation as the Companies' president and sole shareholder. The district court therefore did not err by holding that Griswold was in privity with the Companies.").

In sum, for res judicata purposes, there is identity of parties across both lawsuits as to Fuller and Pinilla, and—with four kinds of *Griswold* privity established—there is identity of parties as to the Entity Plaintiffs as well.

> ### 3. The Amended Complaint Arises from the Same Facts and Alleges the Same Claims as Fuller I

"'[I]f a case arises out of the same nucleus of operative facts, or is based upon the same factual predicate, as a former action, . . . the two cases are really the same "claim" or "cause of action" for purposes of res judicata.'" *Griswold*, 598 F.3d at 1293 (quoting *Ragsdale*, 193 F.3d at 1239). Where the "primary right and duty" are the same in previous and pending lawsuits, the causes of action are the same. *Jaffree*, 837 F.2d at 1469. Both *Fuller I* and this case assert 42 U.S.C. § 1983 claims arising under the First Amendment. The causes of action in both cases are the same. Further, the factual predicate for the claims is the same, and both cases arise from the same nucleus of operative facts. In this case, as in *Fuller I*, plaintiffs seek redress for alleged actions by Mr. Carollo against "Plaintiffs' properties and associated businesses for purposes of targeting those businesses for fines and shutting them down." *Compare* Am. Compl. ¶ 50, *with*

*Fuller I*, D.E. ¶¶ 59–62 ("Upon taking office, Carollo immediately drew up a list of Plaintiffs' properties and associated businesses in District 3 . . . . Carollo said he had a list of addresses for Fuller's properties that he would give to Diez, from which Diez understood Carollo was asking him to selectively target Fuller's properties.").

### a. The Entity Plaintiffs' Claims Were Raised and Litigated by Fuller and Pinilla in *Fuller I*

Plaintiffs' claims in this action arise from the same facts as the claims they already litigated in *Fuller I*, or from alleged acts that arise from a common nucleus of operative facts with those claims.[12] Six such examples[13] include:

- Futurama, LLC alleges that Carollo worked to shut "down the Sanguich business, a tenant of Plaintiff Futurama, LLC, by revoking prior permits, refusing to grant new permits, and changing existing ordinances and passing new ordinances to prohibit the business' operation," and that as a result, "Sanguich was forced to end its tenancy with Plaintiff, resulting in economic damages." Am. Compl. ¶ 51. **Fuller and Pinilla individually made the same allegations in *Fuller I*.** *Fuller I*, D.E. 125 ¶¶ 91–112; 294 ("The machinations of Carollo . . . succeeded in shutting down Sanguich on property owned and rented by Plaintiffs . . . . Plaintiffs have suffered monetary damages as a result of Carollo forcing Sanguich to relocate off of Plaintiffs' property . . . .").

- Calle Ocho Marketplace, LLC alleges that it incurred more than $14.48 million in damages when Mr. Carollo allegedly worked to revoke a Temporary Use Permit and a Building Permit on the property in September 2018. Am. Compl. ¶ 593–602. **Fuller and Pinilla individually made the same allegations in *Fuller I*.** *Fuller I*, D.E. 125 ¶¶ 176–90 ("Another target on Carollo's hit list was Plaintiffs' property located at 1380 SW 8th Street, known as Calle Ocho Marketplace . . . . On September 4, 2018, Plaintiffs received a letter from the City indicating that it was revoking the Farmer's Market TUP on the property . . . the City also indicated

---

[12] The amended complaint is not merely a re-hash of *Fuller I*, but in many places, an outright cut-and-paste job. *Compare Fuller I*, D.E. 125 ¶¶ 23–26, *with* Am. Compl. ¶ 41–42; *Fuller I*, D.E. 125 ¶ 59, *with* Am. Compl. ¶ 50; *Fuller I*, D.E. 125 ¶¶ 176, *with* Am. Compl. ¶ 593; *Fuller I*, D.E. 125 ¶¶ 284–86, *with* Am. Compl. ¶ 630–32; *Fuller I*, D.E. 125 ¶ 292, *with* Am. Compl. ¶ 638. The most telling example may be the amended complaint's Count XVI which makes crystal clear that Fuller and Pinilla have sued here to recover a second time on claims for which a jury already awarded them damages in *Fuller I*. Plaintiffs' Count XVI allegations are copied from the "summary of damages" in *Fuller I* and their amended complaint here alleges no facts that do not arise from the same facts alleged in *Fuller I*. *Compare* Am. Compl. ¶¶ 630–39 (seeking $5 million in damages), *with Fuller I*, D.E. 125 ¶¶ 283–93 (same).

[13] These six Entity Plaintiffs' purported claims already were litigated, and so were all the others' except for one: Yo Amo Calle Siete, LLC, organized in 2020. Every other Entity Plaintiff in *Fuller II* is a party that purportedly assigned its claims to Fuller and Pinilla in *Fuller I*, and travels on purported bad acts that were alleged, litigated, and tried in *Fuller I.*

it would revoke the building permit, which it did 7 days later on September 11, 2018.").

- Lhab Tres, LLC alleges that it incurred more than $5 million in damages when it "entered into a contract to acquire the property located at 1510 SW 7th St," and that "[i]n the middle of these negotiations, however, the seller refused to grant the extension because the City of Miami was seeking to buy the property, which it did for $1 million." Am. Compl. ¶¶ 609–11. **Fuller and Pinilla made the same allegation in *Fuller I*.** Fuller I, D.E. 125 ¶¶ 276–78 ("Plaintiffs have learned that since late 2018, Carollo has engaged in a campaign to direct City officials . . . to purchase properties adjacent to Plaintiff's current properties . . . includ[ing] 711 SW 15th Ave., 1474 SW 7th St., 1510 SW 7th St., and 200-230 SW 12th Ave . . . .").

- Viernes Culturales/Cultural Fridays, Inc., for which Fuller served as president at least through October 2021, alleges that it has sustained more than $10 million in damages as a result of Mr. Carollo's alleged attempt to "learn whether he could use the City of Miami permitting process to steal the last Friday of every month for his own festival and, with it," the organization's goodwill. Am. Compl. ¶ 487. **This same conduct was complained of in and arises from the same nucleus of operative facts as, *Fuller I*.** *Fuller I*, D.E. 125 ¶¶ 216–24 ("In August 2018, Carollo ordered that Domino Plaza be shut down and physically barricaded . . . . Carollo's closing of Domino Plaza is a direct attempt to target and destroy Viernes Culturales simply because Fuller is the President . . . .").

- Futurama, LLC alleges that it has incurred more than $7.87 million in damages due to Mr. Carollo having allegedly "driven away tenants who were celebrated in the community and cost Plaintiffs hundreds of thousands in lost rent." Am. Compl. ¶ 537.[14] **The same conduct was alleged in *Fuller I*.** *Fuller I*, D.E. 125 ¶ 295 ("Carollo's various attacks on Plaintiffs' businesses and tenants in the Futurama building have caused Plaintiffs to suffer monetary damages in excess of $600,000.").

- La Gran Fiesta, LLC seeks recovery for Mr. Carollo's alleged targeting of their restaurant Taquerias el Mexicano. Am. Compl. ¶¶ 247–51. **This claim, too, is a re-allegation from *Fuller I*.** *Fuller I*, D.E. 125 ¶ 296.

The claims of Barlington Group, LLC, Calle Ocho Marketplace, LLC, Lhab Tres, LLC, Viernes Culturales/Cultural Fridays, Inc., and Futurama, LLC—like claims of La Gran Fiesta, LLC, based on an alleged raid on Taquerias el Mexicano, and all other alleged claims here—arise from the same nucleus of operative fact as the conduct and claims already litigated in *Fuller I*. Those claims were already tried to a jury by Fuller and Pinilla.

---

[14] In keeping with their fast and loose approach to pleading, plaintiffs first allege that Sanguich was a tenant of Futurama, LLC, Am. Compl. ¶ 51, then later allege that Sanguich was a tenant of the Barlington Group, LLC, Am. Compl. ¶ 535.

Because Fuller and Pinilla sued on and recovered for their individual (and assigned) First Amendment claims in *Fuller I*, those claims here are barred by res judicata and should be dismissed with prejudice.

> *b.* The Entity Plaintiffs' Claims Arise from the Same Conduct Already Alleged *and Litigated by Fuller and Pinilla in Fuller I*

There is no claim in the amended complaint which alleges that it accrued, or is based on any purported "bad acts" that occurred, after the *Fuller I* complaint (plaintiffs failed to date most allegations).[15] Even if they'd been dated, those claims would remain barred because "these events arose directly from the same 'operative nucleus of facts,' involving the same 'primary right and duty.'" *Jaffree*, 837 F.2d at 1469. "The doctrine of res judicata bars all subsequent suits raising allegedly new theories, unless a substantial change in the underlying facts or law has transpired." *Id.*

In *Jaffree*, plaintiffs sued on behalf of five minor children. *Id.* at 1464. The case arose directly from a previously filed case to which plaintiffs had been parties but later withdrew. *Id.* The Eleventh Circuit affirmed the district court's finding that plaintiffs were "estopped to file a second action *raising the same issues which they [previously] had the opportunity to litigate* but chose to abandon." *Id.* (emphasis added). The Eleventh Circuit rejected plaintiffs' theory that their action concerned "events that occurred after they dropped out" of the first lawsuit because a comparison of the two actions "reveal[ed] that the two cases arose from the same 'operative nucleus of facts' and involved the same 'primary right and duty.'" *Id.* at 1469. In both cases, plaintiffs "sought to enjoin state and local officials from 'executing any agreement between themselves or others which denies plaintiffs their free speech rights . . . and/or establishes religion in the public schools.'" *Id.* To that end, plaintiffs sued the same parties as in the first lawsuit and alleged the same First Amendment claims as in the first lawsuit. *Id.* The court found that res judicata barred the Jaffrees' claims. *Id.*[16]

---

[15] *See, e.g.*, Brickell Station, LLC's allegations in Count III, Yo Amo Calle Siete, LLC's allegations in Count V, Lhab Tres, LLC's allegations in Count XIV, the Barlington Group, LLC's allegations in Count XV.

[16] In *Hilliard v. Gutierrez*, the court stated that "[t]he causes of action in this case are almost identical to those in *Hilliard I* and they are based upon the same events on May 17, 2016." *See* 2021 WL 2712122, at *5 (S.D. Fla. 2021). The court found the fact that "the claims in this action assert different theories of liability than the claims in *Hilliard I* is immaterial to the Court's analysis. As with many of the claims that were ultimately adjudicated in *Hilliard I*, both claims

So it is here. Nothing about this case is new. Plaintiffs allege the same First Amendment claims, arising from the same conduct, as in *Fuller I*. They allege that since February 2019, Mr. Carollo caused the City of Miami Commission to pass resolutions targeting Fuller's and Pinilla's businesses by finding violations related to "no certificate of use, certificate of use obtained under false pretenses and/or properties with violations that pose life-safety issues, and initiat[ing] injunctive proceedings against said properties until the properties are brought into compliance." Am. Compl. ¶ 57. All of this alleged conduct preceded plaintiffs' filing of the operative complaint in *Fuller I*, and all of it was alleged (and litigated) in that case. *See Fuller I*, D.E. 125 ¶¶ 255–68. The Entity Plaintiffs all bring claims arising from the alleged February 2019 actions, as to which their fiduciaries and privies, Fuller and Pinilla, already litigated First Amendment claims. *See, e.g.*, Am. Compl. ¶ 286 ("Plaintiff Brickell Station was under contract to sell the property. However, Defendants the City, Diaz, and Marrero baselessly accused Plaintiff of having done work without a permit[]"); *id*. ¶ 299 (starting on May 2019, "[t]he City prevented Plaintiff from renting a retail space and two apartments at the Piedra Villas Property and is currently attempting to demolish the structure.").

In sum, the doctrine of res judicata squarely bars this action—even as amended—and every one of plaintiffs' claims, all of which were or could have been litigated in *Fuller I*. A final judgment on the merits was issued in *Fuller I* by a court of competent jurisdiction. The parties, Fuller and Pinilla, and the Entity Plaintiffs, in privity with them, are identical in both suits. Both cases assert the same claims arising from the same conduct and a common nucleus of operative facts. Calling it a "conspiracy" and suing a dozen people doesn't change the fact that all four elements of res judicata are satisfied.[17] Putting a new label on previously litigated (and adjudicated) facts doesn't alter the calculus. Plaintiffs' claims against Mr. Carollo are barred by

---

in this action center around whether Plaintiff's Fourth Amendment rights were violated when Officer Gutierrez arrested him." *Id*.

[17] The amended complaint's "conspiracy" allegations (and Count XVII) should be dismissed because the purported conspiracy occurred "within a governmental entity," which is legally incapable of conspiring with its employees and elected officials. *Rehberg v. Paulk*, 611 F.3d 828, 854 (11th Cir. 2010). "[T]here does not appear to be a distinction drawn in the case law between agents of the governmental entity who are elected officials and agents of the governmental entity who are employees." *Horne v. Russell Cnty. Comm'n*, 295 F. Supp. 2d 1289, 1294 (M.D. Ala. 2003). In this regard, Mr. Carollo fully adopts the City's intracorporate conspiracy argument on pages 19-21 of its motion to dismiss, D.E. 59, and Section VII of its motion to dismiss the amended complaint.

judgment and this Court should dismiss them with prejudice.

**B. The Amended Complaint Is STILL an Impermissible Shotgun Pleading and the Entity Plaintiffs STILL Fail to State a Claim**

Plaintiffs were told to fix their shotgun pleading. (Hr'g Tr., 44:13-25, 45:1-25, 46:1-6, Feb. 2, 2024, D.E. 72). They didn't fix it. Instead, they made things worse by splitting up a single, enormous shotgun pleading into seventeen, equally improper shotgun pleadings which, despite some "organizational" labeling, still fail to put any individual defendant on notice of the claims against him, her, or it. Furthermore, as Mr. Carollo predicted in his Motion to Dismiss the [Iniital] Complaint,[18] breaking out the claims of each plaintiff has made it even more clear that none of the Entity Plaintiffs have alleged that they engaged in any speech or activity that qualifies for First Amendment protection. Because the amended complaint is still a shotgun pleading, and because no Entity Plaintiff has alleged any protected speech or conduct, the amended complaint is fatally flawed and deserves dismissal with prejudice.

**1. The Amended Complaint is STILL an Impermissible "Shotgun Pleading"**

The Eleventh Circuit and other courts heavily criticize shotgun pleadings. *See Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1321 n.9 (11th Cir. 2015) (collecting cases) (A shotgun pleading is one that, among other things, "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions" or is littered with "conclusory, vague and immaterial facts not obviously connected to any particular cause of action."). The amended complaint offends both those *Weiland* factors.

**a. The Amended Complaint STILL Improperly Asserts an Undifferentiated Mass of Allegations Against Multiple Defendants**

Plaintiffs attempt to fix the complaint's shotgun pleading by creating subtitles that appear to be organized by plaintiff and promise to detail each plaintiff's claims against certain defendants. However, this "fix" does nothing to address the underlying issue: plaintiffs and defendants are referred to collectively throughout the amended complaint, and the new "individual" counts still allege all the relevant conduct against all (or nearly all) of the defendants in a way that fails to put each defendant on notice of the allegations against him. *See D.B.C. Corp. v. Nucita Venezolana, C.A.*, 464 F. Supp. 3d 1323, 1327 (S.D. Fla. 2020) ("[M]ere referencing of a multitude of allegations makes it difficult for the many Defendants (and Court)

---

[18] D.E. 58 at 15–19.

to ascertain what, exactly, their specific alleged misconduct entails . . . . [T]he Court must still 'sift out the irrelevancies, a task that can be quite onerous'—and one the Court declines to undertake given the numerosity of allegations.").

These sweeping allegations do not "give fair notice of what one defendant allegedly failed to do as opposed to the other." *See Gazzola v. NCL (Bahamas) Ltd*., 2019 WL 3067506, at *2 (S.D. Fla. 2019); *Pierson v. Orlando Reg'l Healthcare Sys., Inc.*, 619 F. Supp. 2d 1260, 1271– 74 (M.D. Fla. 2009) (using a single defined term for all defendants to allege each of their involvement in a complex, peer-review process was improper), *aff'd*, 451 Fed. App'x 862 (11th Cir. 2012) (per curiam); *Synergy Real Estate of SW Fla. v. Premier Prop. Mgmt. of SW Fla., LLC*, 2013 WL 5596795, at *2 (M.D. Fla. 2013) (same).

For example, and typical of each succeeding count, Count I is styled "PLAINTIFF LITTLE HAVANA ARTS BUILDING'S 42 USC § 1983 CLAIM AGAINST DEFENDANTS THE [sic] CAROLLO, NORIEGA, MENDEZ, DOOLEY, DIAZ, TORRES, MARRERO AND PLASENCIA." A legally sufficient claim would have to allege Little Havana Arts Building's allegations against each defendant. This does not. Further, breaching the promise of its title, this count lapses into the improperly vague, generalized group pleading that plagued the initial complaint and plagues this one. It alleges that every defendant did everything, even where such collective allegations defy logic:

- "Defendants' attacks continued until the City improperly shut the business down." Am. Compl. ¶ 197.

- "On March 14, 2018, Defendants handed out cell-phone numbers to residents near Ball & Chain and instructed them to call them should they hear any loud music." Am. Compl. ¶ 198.

- "It is not a coincidence that Plaintiff LHAB was subjected to constant raids and inspections and that Defendants wanted to harass Plaintiffs Fuller and Pinilla. Defendants were targeting LHAB because of its association with Plaintiffs." Am. Compl. ¶ 210.

- "In the end, the Defendants shut down the property because of a fire safety issue, stating the property needed a sprinkler system installed. However, Defendant Plasencia, who made the determination of the necessity, relied on plans which either "mysteriously disappeared" or never existed." Am. Compl. ¶ 230.

Likewise, in Count III, styled "PLAINTIFF BRICKELL STATION PARTNERS' 42 USC § 1983 CLAIM AGAINST DEFENDANTS CITY OF MIAMI, CAROLLO, NORIEGA, MENDEZ, DOOLEY, MARRERO, AND DIAZ," plaintiffs name Mr. Carollo in the heading, yet

the count fails to allege any act by Mr. Carollo and falls back on alleging that he and other defendants "colluded to conjure fictitious building violations . . ." and "altered longstanding City practices and policies . . . ." Am. Compl. ¶ 284. Also absent are any factual allegations concerning Mr. Noreiga and Ms. Mendez. *See* Am. Compl. ¶¶ 282–93.

The same can be said for Count V, styled "PLAINTIFF YO AMO CALLE SIETE'S 42 USC § 1983 CLAIM AGAINST DEFENDANTS THE CITY OF MIAMI, CAROLLO, NORIEGA, MENDEZ, DOOLEY, MARRERO, AND DIAZ." Mr. Carollo's name appears in the heading, however in the rest of Count V's fourteen paragraphs, he is only mentioned again in a legal conclusion alleging that he and others "craft[ed] City policies," "influenc[ed] other departments," and "mobiliz[ed] City resources. . . ." Am. Compl. ¶ 332. In fact, *nowhere else in the amended complaint* is Mr. Carollo even mentioned with regard to Yo Amo Calle Siete, LLC. *See* Am. Compl. ¶¶ 330–44; 1–1.

This same deficiency infects the entire amended complaint. *See* Am. Compl. ¶¶ 282–93 (Brickell Station, LLC's allegations mention Mr. Carollo only in a legal conclusion in ¶ 284); Am. Compl. ¶¶ 294–329 (Piedra Villas, LLC's allegations assert legal conclusions about Mr. Carollo (in ¶¶ 296 and 325), but no factual allegations); Am. Compl. ¶¶ 576–86 (Little Havana Arts Too, LLC's allegations name Mr. Carollo only in a legal conclusion in ¶ 578); Am. Compl. ¶¶ 605–15 (LHAB Tres, LLC's allegations mention Mr. Carollo only in a legal conclusion in ¶ 607).

The amended complaint reiterates, *word for word*, illogical collective allegations from the initial complaint, repeatedly claiming that bad things happened to "Plaintiffs"—two persons and 15 entities—but citing things that can happen only to human beings, not entities:

- "Throughout 2018, Carollo himself made his targeting of Plaintiffs clear, not only to the entire City staff but also to the residents of the City at large, by repeatedly going on radio shows and maliciously defaming Plaintiffs by falsely stating they were criminals with ties to corrupt South American politicians, mafiosos, leasing to pimps and prostitutes, among other falsehoods." Am. Compl. ¶ 128, copied from Compl. ¶ 327.

- "The fact that the City has its private investigators following a Police Chief after his testimony is just the tip of the iceberg of the deception and intimidation Defendants are employing against City Staff and City Residents in their efforts to destroy Plaintiffs mentally, psychologically, and financially." Am. Compl. ¶ 126, copied from Compl. ¶ 299.

13

- "As a result of Defendants' retaliation, Plaintiffs are reluctant to participate in the political process by supporting candidates for office." Am. Compl. ¶ 181, copied from Compl. ¶ 362.

- "As a result of Defendants' conspiracy to retaliate and violate Plaintiffs' First Amendment rights, Plaintiffs are reluctant to participate in the political process by supporting candidates for office or by petitioning their local government for the redress of their grievances." Am. Compl. ¶ 668, copied from Compl. ¶ 380.

- "In addition to the monetary losses, Plaintiffs have suffered impairment to their reputation, personal humiliation, emotional distress, and mental anguish and suffering." Am. Compl. ¶ 670, copied from Compl. ¶¶ 369, 382.

Further, it is not only the defendants who are left trying to sort out what they are alleged to have done. Even with its new system of subtitles, the amended complaint repeatedly fails to specify to which plaintiffs it refers:

- "Because of Carollo's reputation for political vengeance, Plaintiffs sought to keep their support for Carollo's opponent clandestine, becoming key members of the ABC–Anyone But Carollo–group." Am. Compl. ¶ 44.

- "For example, Defendants the City, Diaz, Torres, and Marrero would, in bad faith, obstruct Plaintiffs' ability to meet the compliance agreement deadlines, either by searching out new violations on the property requiring Plaintiffs pull a different permit; arbitrarily requiring Plaintiffs to pull an obscure permit; or wasting Plaintiffs' time and resources by insisting—only after Plaintiffs' performed substantial work aligned with prior permits and agreements—that the end product would not satisfy certain Code requirements." Am. Compl. ¶ 96.

- "Carollo, upon winning office, worked with Mendez and Dooley to immediately retaliate against Plaintiffs. And, after each of Plaintiffs' exercise of their First Amendment rights that were contrary to Defendants, Defendants continued to retaliate." Am. Compl. ¶ 163.

Did *all* plaintiffs engage in clandestine political activities? Did *all* plaintiffs have to pull "different" or "obscure" or "prior" permits? Did *all* plaintiffs "exercise" First Amendment rights? Of course not. Readers of the amended complaint are left to sort it all for themselves.

Finally, many purported "bad acts" were supposedly committed by non-parties whom the amended complaint doesn't identify, which renders even more opaque the insoluble question of which claims lie against which defendants. These unidentified mystery players include:

- "[T]hree City of Miami Code Enforcement Officers and a police officer . . . ." Am. Compl. ¶ 199.

- "[T]he Code Enforcement Officer . . . ." Am. Compl. ¶ 200 (emphasis in original).

- "[A] Member of Code Enforcement Board . . . ." Am. Compl. ¶ 202.

- "The Zoning Administrator who revoked Ball & Chain's CU . . . ." Am. Compl. ¶ 233.

- "[T]hree Building Department inspectors . . . ." Am. Compl. ¶ 267.

It is unsurprising that nearly doubling the size of an already bloated complaint failed to make it *clearer*. But, even with 124 pages and nearly 700 paragraphs to accomplish its task, the amended complaint fails to do the bare minimum: put defendants on fair notice of what the allegations are against them. This failure requires dismissal with prejudice. *See Vibe Micro Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018) (affirming dismissal with prejudice of a shotgun second amended complaint that "ballooned to 70 pages," "'continue[d] to fail to provide even minimal notice to the individual Defendants as to what conduct they are alleged to have participated in,'" and contained duplicative allegations, labeling and numerical inconsistencies, but remanding for a limited unrelated purpose) (cleaned up).

> b. *The Amended Complaint is STILL Prolix in the Extreme and Even More Littered with Irrelevancies*

It would be a rare thing, indeed, for prolixity to be cured by doubling the word count, and the amended complaint is not that rare thing. The amended complaint remains a chaotic mash-up of legal conclusions, irrelevancies, tale-spinning, and speculation.[19] *See Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1333 (11th Cir. 2010) (Legal conclusions "are not entitled to the assumption of truth."); *Harrison v. Bd. of Regents of Univ. Sys. of Georgia*, 519 F. App'x 641, 643 (11th Cir. 2013) ("Despite specific instructions to the contrary, the second amended complaint contained conclusory legal allegations, did not allege specific facts . . . and, at 82 pages and 295 paragraphs in length, could not be characterized" as short and plain) (per curiam).

Some of the amended complaint's legal conclusions, speculation, and hyperbole include:

- "Carollo, believing that he was above the law, balked at this requirement to issue orders only through the City Manager, and instead used his position as a Commissioner to convince the City and its individual employees to help carry out his egregious targeting and punishment of Plaintiffs." Am. Compl. ¶ 49.

- "Showcasing Defendants' selective enforcement of policies against Plaintiff, Ministerio de Juan actually shares a wall with and is in the same building as a local liquor store 'El Gato Tuerto,' located at 476 SW 8th Street. As with Taquerias, the CU for Ministerio de Juan predates El Gato Tuerto's CU and permit to operate as a liquor store. This is also the case for thirteen (13) other 4COP

---

[19] The amended complaint even contains a paragraph that alleges only a date and nothing else: "Again, on August 20, 2021." Am. Compl. ¶ 263.

licensed establishments operating within 300 ft. of a 'religious facility.' In other words, the City had no issue in allowing a liquor store to operate next to other 'religious facilities,' but revoked Taquerias' liquor reservation on the arbitrary basis it needed to review its 'compliance with the 300' distance separation from a Religious Facility.'" Am. Compl. ¶ 252.

- "When Defendants realized that the liquor license was not a fruitful avenue to cause Plaintiff the ultimate harm—a shutdown—Defendants turned to its tried-and-true playbook strategy of manipulating City code, issuing violations for work performed many years ago, and relying on a technicality about an outdoor staircase despite the City's previous approval." Am. Compl. ¶ 264.

- "Carollo was not happy about these sponsorships and the goodwill Viernes Culturales attained from such sponsors." Am. Compl. ¶ 495.

- "Pictured below, Defendants Dooley and Bayona making eye contact while speaking during that April 27 hearing. Defendant Bayona sitting on the far left. And Defendant Dooley sitting on the far right." Am. Compl. ¶ 569.

- "This is in direct contrast to the Code Enforcement Board's treatment of an average appellant as described by Defendant Victoria Mendez and her husband, where it is routine that Mendez's husband, who spoke to the Code Enforcement Board for **a mere minute** was able to wipe away more than $300,000 in fines to zero – **without having properly permitted any of the work**." Am. Compl. ¶ 572 (emphasis in original).

- "In fact, upon information and belief, some of Defendant Bayona's permitless work is visible on Google Maps' view. Where in February of 2019, Defendant Bayona's windows are pictured below. And in February 2021, Defendant Bayona's windows are pictured below, with exposed concrete showing from the renovation." Am. Compl. ¶ 659.

And so on. Whatever the amended complaint is, it is not the "short and plain statement of the claim" that Fed. R. Civ. P. 8(a)(2) requires. Instead, "[w]hat the [complaint] lacks in substance and legal support[,] it seeks to substitute with length, hyperbole, and the settling of scores and grievances." *Trump v. Clinton*, 626 F. Supp. 3d 1264, 1285 (S.D. Fla. 2022).

### 2.  *The Entity Plaintiffs STILL Fail to State a Claim Under § 1983*

Plaintiffs reworded their amended complaint to purportedly allege violations of First Amendment rights of free speech, association, assembly, and to petition the government for redress of grievances. But, not one Entity Plaintiff alleges *any* speech sufficient to state a claim

under § 1983.[20] Even taking the allegations of the amended complaint as true, the *only* speech alleged is by Fuller and Pinilla. That will not suffice. The Entity Plaintiffs "must assert [their] own legal rights and interests[] and cannot rest [their] claim to relief on the legal rights or interests of third parties." *Wolff v. Cash 4 Titles*, 351 F.3d 1348, 1353 (11th Cir. 2003) (cleaned up); *see, e.g.*, *West v. Atkins*, 487 U.S. 42, 48 (1988) (explaining the elements that each plaintiff must plead and prove to show its constitutional rights were violated).

a.  *Plaintiffs' Collective Speech Allegations are Insufficient*

The amended complaint does nothing to cure collective speech allegations that fail to identify an actual speaker:

> Carollo's five-year campaign of retaliation against Plaintiffs stemmed from a) ***Plaintiffs*** hosting rallies for his opponent Alfie Leon and supporting social media advertising for Leon, b) Carollo's false belief that ***Plaintiffs*** were financing a lawsuit that Alfie Leon filed against Carollo challenging his right to run for District 3 Commissioner, c) Carollo's false belief that ***Plaintiffs*** were organizing or participating in efforts to recall Carollo, d) ***Plaintiffs*** filing an ethics complaint against Carollo, e) ***Plaintiffs*** filing a federal lawsuit against Carollo, f) ***Plaintiffs*** hosting a press conference to expose Carollo's history of code violations at his home in Coconut Grove, g) Plaintiffs promoting African American and Afro Cuban murals in Calle Ocho that Carollo disliked, and h) ***Plaintiffs*** generally having a different vision for Calle Ocho and Little Havana that threatened Carollo's desire to dominate the District for his own power and corruption.

Am. Compl. ¶ 45 (emphasis added); *see id.* ¶ 162, 661.[21] There are no factual allegations that even *suggest* who spoke. Common sense demands the conclusion that the speakers were Fuller or Pinilla. But nothing allows their speech to be imputed to the Entity Plaintiffs, each of which must establish its own constitutional rights and allege facts supporting a claim of infringement. *See Wolff*, 351 F.3d at 1353. Further, plaintiffs allege that they—presumably all of them together—"continued to exercise their First Amendment rights by filing lawsuits, including to

---

[20] With regard to plaintiffs' purported allegations involving First Amendment rights of association, assembly, and petitioning the government for redress of grievances, Mr. Carollo adopts in full Section V of Arthur Noriega's Motion to Dismiss Amended Complaint.

[21] Mr. Carollo's alleged "false beliefs" and "generally having a different vision" are not "speech" at all, let alone speech by any plaintiff. Am. Compl. ¶ 4(b), (c), (h); *see Rumsfeld v. Forum for Academic & Inst'l Rights, Inc.*, 547 U.S. 47, 49, 65–66 (2006) (Symbolic speech requires inherently expressive conduct, like flag burning.); *Zinman v. Nova SE. Univ., Inc.*, 2023 WL 2669904, at *5 (11th Cir. 2023) (stating that speech requires "intent to convey a particular message," a great likelihood "that the message would be understood by those who viewed it," and whether a "reasonable person would interpret the conduct as some sort of message").

stop the demolition of the buildings," but fail to identify which lawsuits, brought by which plaintiffs, against whom, when, and in what court. *See* Am. Compl. ¶ 162.

> ### b. The Only Two Entity Plaintiffs that Make Specific Speech Allegations Do Not Assert a Legally Sufficient § 1983 Claim

The amended complaint contains specific speech allegations regarding only two Entity Plaintiffs, Viernes Culturales/Cultural Fridays, Inc. and Calle Ocho Marketplace, LLC. Neither is legally sufficient.

### i. Viernes Culturales/Cultural Fridays, Inc.

In Count VII, titled "PLAINTIFF VIERNES CULTURALES' 42 USC § 1983 CLAIM AGAINST DEFENDANTS THE CITY OF MIAMI, JOE CAROLLO, NORIEGA, DOOLEY, MENDEZ, ORTIZ AND BAYONA," plaintiffs allege that Viernes Culturales/Cultural Fridays, Inc. "coordinates the popular Viernes Culturales/Cultural Fridays art, music[,] and culture festival" held every last Friday of every month. Am. Compl. ¶ 486. However, there are no allegations that this event is held "in pursuit" of any "political, social, economic, educational, religious, and cultural ends" or whether the festival intends "to convey a particular message"— allegations that are essential to making a claim about protected speech. *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984); *Zinman*, 2023 WL 2669904, at *5. Defendants are left to speculate about what this event promotes, besides alcohol sampling. *See* Am. Compl. ¶ 494.

### ii. Calle Ocho Marketplace, LLC

In Count XIII, titled "PLAINTIFF CALLE OCHO MARKETPLACE'S 42 USC § 1983 CLAIM AGAINST DEFENDANTS THE CITY OF MIAMI, CAROLLO, MENDEZ, DOOLEY, AND DIAZ," the amended complaint mentions that "[o]n September 6, 2018, representatives of Plaintiff appeared at a Code Enforcement Board Hearing to discuss citations issued by the City at Calle Ocho Marketplace." Am. Compl. ¶ 599. These  "representatives" are not identified, nor is it alleged that they said anything, let alone what they said. Plaintiffs failed to allege who spoke, what was said, or a causal connection between what was said and retaliation that supposedly followed. *Lambert v. Herrington*, 2021 WL 566528, at *15 (S.D. Ala. 2021) ("Showing injury alone is insufficient, the retaliatory motive must be the 'but-for' cause of the adverse action.") (citation omitted); *Hartman v. Moore*, 547 U.S. 250, 260 (2006) ("If there is a finding that retaliation was not the but-for cause of the discharge, the claim fails for lack of

causal connection between unconstitutional motive and resulting harm, despite proof of some retaliatory animus in the official's mind.").

> c. Thirteen of the Entity Plaintiffs Do Not Even Attempt to Allege Any Speech

Just as in the original complaint, nowhere in the amended complaint is there a single allegation that plaintiffs Little Havana Arts Building, LLC, La Gran Fiesta, LLC,[22] Brickell Station, LLC, Piedra Villas, LLC, Yo Amo Calle Siete, LLC, Beatstik, LLC, El Shopping, LLC, Tower Hotel, LLC, Futurama, LLC, Little Havana Bungalows, LLC, Little Havana Arts Building Too, LLC, LHAB Tres, LLC, or Barlington Group, LLC ever said anything to anyone.

The amended complaint gave Plaintiffs a chance to cure their previous shotgun pleading. They failed to do so. The amended complaint should be dismissed with prejudice.

## C. The Complaint Was Filed Too Late, and the Statute of Limitations Has Run

The complaint was clear on its face that it was brought too late. The amendment offers nothing—because there is nothing to offer—to address, let alone cure, this infirmity.

Claims brought under § 1983 "are subject to the statute of limitations period governing personal injury actions in the state where the action is brought." *Wellons v. Comm'r. Ga. Dept. of Corr.*, 754 F.3d 1260, 1263 (11th Cir. 2014) (citation omitted). Here, the applicable limitations period under Florida law is four years. *Omar ex rel. Cannon v. Lindsey*, 334 F.3d 1246, 1251 (11th Cir. 2003). That said, "the accrual date of a § 1983 cause of action is a question of federal law that is ***not*** resolved by reference to state law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (emphasis added). The limitations period on a § 1983 claim starts running when a plaintiff knows or should have known it has "suffered the injury that forms the basis of [its] complaint and [] who has inflicted the injury." *Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003).

Plaintiffs say they knew in 2018 that Mr. Carollo purportedly was targeting them. Am. Compl. ¶ 128 ("Throughout 2018, Carollo himself made his targeting of Plaintiffs clear, not only to the entire City staff but also to the residents of the City at large, by repeatedly going on radio shows and maliciously defaming Plaintiffs by falsely stating they were criminals . . . ."). Further, plaintiffs doubtless knew of any purported conspiracy at least by February 14, 2019—more than four years ago. Am. Compl. ¶ 129 ("During the Valentine's Day Massacre in February 2019, the City's most senior policy makers – including Mayor Suarez, City Manager Gonzalez and Police

---

[22] Mr. Carollo acknowledges that La Gran Fiesta, LLC was not in the original complaint. But it alleges no speech here.

Chief Colina – **publicly** stated Carollo was targeting Plaintiffs and seeking to close their businesses as political payback.") (emphasis added). Even if some plaintiffs could try to sustain a claim on grounds of a continuing violation, most—alleging only a single, discrete act of retaliation—would still be time-barred. In this regard, Mr. Carollo adopts in full the arguments made by Arthur Noriega in Section IV of his Motion to Dismiss the Complaint, D.E. 53, and in Section VIII of his Motion to Dismiss the Amended Complaint.

### D. Because the Amended Complaint Admits That Some City Enforcement Actions Were Justified, And Does Nothing to Demonstrate That the Others Were Not, Plaintiffs Have No § 1983 Claim

The amended complaint does nothing to rebut the fact that the Individual Plaintiffs are scofflaws who—even in the amended complaint—continue to admit to violating City of Miami codes and ordinances in some instances, and fail to allege that the subject properties were in compliance as to the rest. This means there was probable cause for every alleged enforcement action, which nullifies plaintiffs' allegations of constitutional violations.

It is well settled that violations of local laws or codes nullify a § 1983 action alleging improper enforcement of those laws or codes. *See O'Boyle v. Com. Grp., Inc.*, 2023 WL 2579134, at *3 (11th Cir. 2023) ("[T]he parties' stipulation that there was probable cause to charge Martin O'Boyle with trespass and disorderly conduct was fatal to his retaliatory prosecution claim."); *Bey v. City of Tampa Code Enf't*, 607 F. App'x 892, 896–97 (11th Cir. 2015) (Plaintiff could not state a case for § 1983 religious discrimination where she admitted to the code violations and had simply chosen not to comply with land-use ordinances); *6420 Roswell Rd., Inc. v. City of Sandy Springs, Georgia*, 484 F. Supp. 3d 1321, 1339 (N.D. Ga. 2020) ("Defendants have presented a bona fide, serious fire code violation. The Court therefore finds that Defendants' conduct did not violate Plaintiff's First Amendment rights."). Simply put, a lawful basis for governmental action breaks the causal link between a defendant's alleged retaliatory animus and a plaintiff's alleged § 1983 injury. *O'Boyle*, 2023 WL 2579134, at *4.

In their amended complaint, however, plaintiffs double down on their admissions that they violated City building and zoning, and health and safety, ordinances. Several were simply copied and pasted from the initial complaint:

- "[T]he dimensions would not need to meet the current fire code standards given that they were grandfathered in." Am. Compl. ¶ 313, copied from Compl. ¶ 143.

- "On or about December 20, 2021, Reid responded to Sotolongo, via an email, indicating that the permit application required a scope of work that more specifically addressed the violation for prior work performed without a permit . . . ." Am. Compl. ¶ 361, copied from Compl. ¶ 182.

- "During the 18-year history of the Viernes Culturales festival, and right up until October 2018, Viernes Culturales had never applied for or obtained a special events permit in relation to Domino Plaza, where a key part of the festival occurred." Am. Compl. ¶ 488, copied from Compl. ¶ 63.

Arguably more offensive than these admissions copied from the initial complaint is plaintiffs' continued silence as to other code violations. Those violations also are inimical to their purported claims, and the amendment was plaintiffs' chance to address or deny them. They did neither. For example, plaintiffs maintain that:

- "After Carollo was elected, on May 9, 2019, the City issued the first of two Unsafe Structure Notices relating to the Piedra Villas Property." Am. Compl. ¶ 300, copied from Compl. ¶ 130.

- "Because Plaintiffs had established another culturally significant property, this time in Overtown, the City issued several violations to the property seeking to shut down the business to intentionally harm Plaintiffs without regard to the negative consequences to Copper Door Properties or the Overtown community." Am. Compl. ¶ 355, copied from Compl. ¶176.

- "On October 13, 2021, as a result of the threats made by the City to demolish the El Shopping Property, El Shopping was left with no alternative but to sign a Compliance Agreement . . . ." Am. Compl. ¶ 401, copied from Compl. ¶¶ 207–09.

In addition to their silence regarding the merits of these enforcement actions, plaintiffs make no effort to allege that they were not justified by plaintiffs' own "bad acts." Instead, plaintiffs make conclusory allegations based on the timing of the enforcement actions and the location of the properties in question. These statements are insufficient to adequately allege that enforcement was unjustified, which is required for a § 1983 claim. *See, e.g.*, *Beach Blitz Co. v. City of Miami Beach*, 2018 WL 11260453, at *8 (S.D. Fla. 2018) (A retaliation claim "based solely on the timing of Ocean 9's closure" was "conclusory" and "insufficient to support a section 1983 claim for retaliation based on First Amendment expression.") (cleaned up).

Plaintiffs' practice of admitting some code violations and failing to allege that others were unjustified, has expanded in the amended complaint, which contains new examples:

- "On March 26, 2019, Code issued a violation for structure repairs and Plaintiff immediately began hiring contractors and initiated a new permit. On March 27,

2019, Code issued a citation for failure to obtain a building permit . . . ." Am. Compl. ¶ 205.

- "[T]he City placed a hold on Taquerias' Outdoor Dining Warrant" . . . "claim[ing] that because Taquerias was allegedly within 300-feet of an alleged 'religious' facility (Ministerio de Juan) Taquerias' pursuance of the Outdoor Dining Warrant was placed on hold." Am. Compl. ¶ 251.

- "As a technicality, El Shopping's parking garage sits on top of 'three different,' contiguous parcels of land. **All owned by El Shopping**. Even so, the parking garage only extends onto the two additional parcels a minute amount. However, because of this technicality, Defendants, on the same day and for the same reason, issued three different citations for each parcel." Am. Compl. ¶¶ 414–15 (emphasis in original).

The additional allegations establish that plaintiffs have a "history of code violations . . ." and that [t]his history, along with [p]laintiff[s'] continued noncompliance, shows that the City would have issued this citation regardless . . . ." *Rogers v. City of Coll. Park, Georgia*, 2019 WL 4168797, at *14 (N.D. Ga. 2019). "To meet the probable cause standard[,] the City officials needed only 'a reasonable belief, based on the facts and circumstances known to [them]' that the citation was valid." *Robson 200, LLC v. City of Lakeland, Fla.*, 593 F. Supp. 3d 1110, 1128 (M.D. Fla. 2022) (citation omitted). Plaintiffs have done nothing but bolster the evidence of City officials' reasonable basis for issuing these citations to serial code violators.

Further, even where plaintiffs attempt to justify their code violations, their scant efforts are rife with legal conclusions and references to "common practice" and selective enforcement. For example, plaintiffs contend that "[t]he adjacent parking garage was built in the 1980s with rebar intentionally exposed to allow for future construction. This building style was common trade practice and Plaintiff confirmed with engineers that it had had no detrimental affect [sic] on the building's safety and structural integrity. Yet Defendants still issued this citation." Am. Compl. ¶ 397. Claiming that something is "common practice" does not negate its illegality. *State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307, 1317 (S.D. Fla. 2017) ("[E]ven if the alleged [] practice were common, such prevalence would not be dispositive as to its legality.").

Plaintiffs also contend that "Plaintiff Brickell Station was under contract to sell the property. However, Defendants the City, Diaz, and Marrero baselessly accused Plaintiff of having done work without a permit, when the City's own microfilm department **knew** that all the work they accused Plaintiffs of doing without a permit had been done years ago with a permit."

22

Am. Compl. ¶ 286 (emphasis in original). This argument boils down to saying that "everybody does it," which is legally insufficient. *See H & J Land Invs., Inc. v. City of Jacksonville*, 2014 WL 4540200, at \*10 (M.D. Fla. 2014) (Allegations of pretextual grounds for enforcement were unavailing where plaintiffs alleged that "[d]efendants know that there are no serious code violations at any of the Jacksonville bikini bars . . . that Plaintiffs' business does not pose an immediate threat to the health, safety or welfare of the community," and that "[t]he raids and closure Orders were motivated entirely by an intent to harass Plaintiffs, and other bikini bars, and deny them their right of free speech.") (cleaned up).

At bottom, "it appears from the face of the complaint that [plaintiffs] merely need[] to comply with the permitting process, like all property owners in the City . . . ." *Bey*, 607 F. App'x at 897. The amended complaint does nothing to negate plaintiffs' prior, on-the-record admissions that they serially violated the City's building and zoning, and health and safety laws, the enforcement of which they now claim was retaliation. A lawful motivation for that enforcement renders an unlawful motive not actionable. *Hartman*, 547 U.S. at 260–61. Even if enforcing officials are alleged to hold animus for a plaintiff, a lawful basis (aka probable cause) for enforcement negates claims like those plaintiffs purport to bring here. On this point, Mr. Carollo adopts in full Arthur Noriega's arguments in Section V of his Motion to Dismiss the Complaint, D.E. 53, and Section VI.D of his Motion to Dismiss the Amended Complaint

### III. CONCLUSION

For all these good and sufficient reasons, the amended complaint should be dismissed with prejudice.

### <u>REQUEST FOR ORAL ARGUMENT</u>

Under Local Rule 7.1(b)(2), Mr. Carollo respectfully requests a two-hour hearing on his motion to dismiss. Mr. Carollo's motion raises a number of complex issues, and oral argument would be beneficial to address and illuminate those issues.

Dated: February 29, 2024                              Respectfully submitted,

**RIVERO MESTRE LLP**
*Attorneys for Joe Carollo*
2525 Ponce de Leon Blvd. Suite
1000 Miami, Florida 33134
Tel.: (305) 445-2500
Fax: (305) 445-2505

By: */s/ Jorge A. Mestre*
Jorge A. Mestre
Florida Bar No. 88145
jmestre@riveromestre.com
Alan H. Rolnick
Florida Bar No. 715085
arolnick@riveromestre.com
Amanda Fernandez
Florida Bar No. 106931
afernandez@riveromestre.com

## CERTIFICATE OF SERVICE

I certify that on February 29, 2024, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify that this document is being served today on all counsel of record by transmission of Notices of Electronic Filing generated by CM/ECF.

By: */s/ Jorge A. Mestre*
    JORGE A. MESTRE

24