UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 23-cv-24251-MORENO

WILLIAM O. FULLER, *et al.*,

    Plaintiffs,

v.

CITY OF MIAMI, *et al.*,

    Defendants.
_____/

**DEFENDANT RACHEL DOOLEY'S
MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

Defendant Rachel Dooley (**"Ms. Dooley"**), pursuant to Fed. R. Civ. P. 12(b)(6), requests that the Court dismiss the First Amended Complaint (**"FAC"**) [ECF No. 77] with prejudice.

**INTRODUCTION**

Ms. Dooley is an Assistant City Attorney for the City of Miami (the **"City"**). She has been sued, in her individual capacity, for alleged violations of 42 U.S.C. § 1983. Plaintiffs William O. Fuller and Martin Pinilla, II, and various entities they own or (collectively, **"Plaintiffs"**), allege a conspiracy to engage in unlawful First Amendment retaliation, purportedly orchestrated by Defendant Joe Carollo (**"Mr. Carollo"**). Plaintiffs' claims fail for myriad reasons. But as to Ms. Dooley, specifically, the FAC fails to state a valid cause of action for five, wholly separate reasons. *First*, Ms. Dooley was not an official decision maker concerning the conduct of which Plaintiffs complain. *Second,* Ms. Dooley is entitled to absolute immunity. *Third*, Ms. Dooley is entitled to qualified immunity. *Fourth*, Plaintiffs have failed to plead the requisite element of causation as to Ms. Dooley. And *fifth*, particular to Count XII, Plaintiffs' allegations are silent as to Ms. Dooley.

## THE FIRST AMENDED COMPLAINT

The FAC contains seventeen counts. Ms. Dooley is named as a defendant in all seventeen counts. In Counts I–XVI, Plaintiffs attempt to state a "42 USC § 1983 Claim" against certain Defendants, including Ms. Dooley. FAC at 1–119. In Count XVII, Plaintiffs attempt to state a "Claim of Civil Conspiracy to Violate Their Constitutional Rights" against all Defendants. *Id*. at 119–123.

Plaintiffs allege that Mr. Carollo commenced a "five-year campaign of retaliation" against them because, *inter alia*, they supported his opponent in the race for City Commissioner. *Id*. ¶¶ 43–45. Plaintiffs further allege that Mr. Carollo "used his position as a Commissioner to convince the City and its individual employees to help carry out his . . . targeting and punishment of Plaintiffs." *Id*. ¶ 49. According to the FAC, Mr. Carollo set in motion the City's political machinery to interfere with Plaintiffs' properties. *Id*. at 2–3.

The allegations relating to Ms. Dooley are particularly thin.[1] Notably, the FAC is completely devoid of any allegations that attribute to her high-level, *decision-making authority* to target and punish Plaintiffs for engaging in what they claim is constitutionally protected speech and association. Specifically, the allegations against Ms. Dooley relate to:

- revoking permits, withdrawing permits, and refusing to grant new permits, *id*. ¶¶ 51, 86, 336, 527, 535;

---

[1] Contrary to the Court's instruction to Plaintiffs at the February 2, 2024 Status Conference [ECF No. 71], the FAC fails to "separately allege[] what each individual did . . . ." *See* Transcript of February 2, 2024 Status Conference [ECF No. 72 at 44:17–18, 45:9–46:13, 47:19–49:11]. Instead, the FAC again constitutes a shotgun complaint as it lumps Defendants together without specifically alleging what each of them is purported to have done. *See Cruz v. Bruce*, 2022 WL 4381122, at *2 (S.D. Fla. 2022) ("A typically confusing aspect of many shotgun pleadings involving multiple defendants is the lumping together of all those defendants within the same count. This problem is particularly acute in this case where [the plaintiff] alleges each purported cause of action against all the Defendants named in this case, en masse, without specifying which acts each Defendant is individually responsible for.").

- passing ordinances, *id*. ¶¶ 51, 86, 101, 103, 121, 221, 234, 272, 325, 357, 385, 386, 398, 422, 476, 477, 535, 558;

- denying a request to allow an unsafe building to be brought into compliance, *id*. ¶¶ 86, 285–89;

- imposing fines, *id*. ¶¶ 551, 570;

- ensuring that all fees were paid without reduction or waiver, *id*. ¶ 136;

- spearheading the demolition of properties, *id*. ¶ 136;

- initiating an audit of Ortus, a company hired by Plaintiffs to review building plans and applications submitted to the City, *id*. ¶ 234; and

- finding building code violations, *id*. ¶ 284.

The FAC is conspicuously silent as to Ms. Dooley's authority to make the decisions of which Plaintiffs complain because she clearly does not possess such authority. Instead, Ms. Dooley has been named as a defendant here simply by virtue of her position as Assistant City Attorney. And that is not enough to attach individual liability to her.

## SUMMARY OF ARGUMENT

In the interest of judicial economy, Ms. Dooley adopts and incorporates by reference those arguments that are not unique to her and have been made by certain of the other Defendants, including, but not necessarily limited to, the following:

- The FAC is an improper shotgun pleading.[2]

- Plaintiffs' claims are barred by the statute of limitations.[3]

- Plaintiffs fail to state a claim for First Amendment retaliation – because each Plaintiff has failed to allege that he or it individually engaged in protected speech.[4]

---

[2] *See, e.g.*, Joe Carollo's Motion to Dismiss the First Amended Complaint with Prejudice (**"Carollo's Motion"**) at 11–19; Defendant Victoria Mendez's Motion to Dismiss and Motion to Strike Plaintiff's First Amended Complaint (**"Mendez's Motion"**) at 16–20; Defendant Arthur Noriega's Motion to Dismiss Plaintiffs' First Amended Complaint (**"Noriega's Motion"**) at 2–4.

[3] *See, e.g.*, Carollo's Motion at 19–20; Noriega's Motion at 23–25; Mendez's Motion at 20.

- Plaintiffs fail to state a claim for First Amendment retaliation based on freedom of association.[5]

- Plaintiffs improperly seek to obtain an unlawful double recovery.[6]

- Plaintiffs fail to state a claim for conspiracy because the allegations run afoul of the intra-corporate conspiracy doctrine.[7]

- Plaintiffs' claims are barred by the doctrine of *res judicata*.[8]

- Plaintiffs are engaged in improper claim splitting.[9]

- Plaintiffs lack standing to bring this action.[10]

- Certain allegations of the FAC should be stricken as scandalous and impertinent.[11]

In addition to the foregoing, Ms. Dooley asserts those arguments that are specific to her given her unique posture in this case – i.e., the only Defendant who served as an Assistant City Attorney. Specifically, Ms. Dooley alleges that all of the claims pleaded against her must be dismissed because: (1) she was not an official decision maker concerning the conduct of which Plaintiffs complain; (2) she is entitled to absolute immunity; (3) she is entitled to qualified immunity; (4) Plaintiffs have failed to plead the requisite element of causation as to Ms. Dooley; and (5) particular to Count XII, Plaintiffs' allegations are silent as to Ms. Dooley.

---

[4] *See, e.g.*, Carollo's Motion at 17–19; Noriega's Motion at 12–16; Mendez's Motion at 18–19; Defendant Daniel Goldberg's Motion to Dismiss First Amended Complaint and to Dismiss/Strike First Amended Complaint as Scandalous and Impertinent (**"Goldberg's Motion"**) at 22–24.

[5] *See* Noriega's Motion at 9–12.

[6] *See, e.g.,* Defendant City of Miami's Motion to Dismiss the First Amended Complaint With Prejudice (**"City's Motion"**) at 7–9.

[7] *See, e.g.*, City's Motion at 16–18; Mendez's Motion at 14–16; Motion to Dismiss Plaintiffs' First Amended Complaint by Defendants Luis Torres, Adrian Plasencia, and Rene Diaz at 15–16.

[8] *See, e.g.*, City's Motion at 3–6.

[9] *See, e.g.*, Noriega's Motion at 25.

[10] *See, e.g.*, Noriega's Motion at 5–9; Goldberg's Motion at 13–16.

[11] *See, e.g.*, Goldberg's Motion at 7–12; Mendez's Motion at 17.

## I.     <u>Ms. Dooley Was Not an Official Decision Maker</u>

Ms. Dooley cannot individually be held liable because she is not alleged to have had the decision-making authority to make those official decisions at the heart of the FAC. Indeed, the law is clear that "[f]or individual liability to attach under § 1983, the actor must usually have the power to make official decisions."[12] Even more, the law is clear that failure to plead that the defendant is a decision maker and from where that authority stems is fatal and renders a complaint subject to dismissal.[13]

Often, those with decision-making authority can be identified by a rule or statutory authority that empowers the official in question to make the decisions at issue.[14] But in this case, the authority that is the source of the decisions referenced in the FAC – i.e., the City Charter (**"Charter"**) and the Code of the City of Miami, Florida (**"Code"**) – make clear that Ms. Dooley (an Assistant City Attorney) positively did *not* have the authority to make the decisions of which Plaintiffs complain.[15] For example:

---

[12] *Betancourt v. Florida Dep't of Corr.*, 2023 WL 7548194, at *2 (N.D. Fla. 2023) (*citing Quinn v. Monroe Cnty.*, 330 F.3d 1320, 1326 (11th Cir. 2003)).

[13] *See Barteet v. Eismann*, 2013 WL 5236640, at *3 (S.D. Fla. 2013) (dismissing § 1983 action and instructing the plaintiff to allege that the defendants are "official decision makers" and to "identify from where this authority stems") (cleaned up).

[14] *See Kamensky v. Dean*, 148 Fed. Appx. 878, 879 (11th Cir. 2005) ("A 'decision[]maker' may often be identified by a rule or by examining the statutory authority of the official alleged to have made the decision.").

[15] Ms. Dooley requests that the Court, pursuant to Fed. R. Evid. 201, take judicial notice of the City Charter, the City Code, and the Florida Statutes as referenced herein. *See Baker v. JEA*, 2023 WL 5528717, at *1 n.2 (11th Cir. 2023) (taking judicial notice of the "Charter and ordinances of the City of Jacksonville as they are 'not subject to reasonable dispute.'") (citing Fed. R. Evid. 201(b)); *Newcomb v. Brennan*, 558 F.2d 825, 829 (7th Cir. 1977) ("We hold that matters of public record such as state statutes, city charters, and city ordinances fall within the category of "common knowledge" and are therefore proper subjects for judicial notice."). The City Charter and the City Code can be accessed here: https://library.municode.com/fl/miami/codes/code_of_ordinances (last accessed February 28, 2024).

- Ms. Dooley is alleged to have made decisions relating to the City's permitting process. FAC ¶¶ 51, 86, 336, 527, 535. But an Assistant City Attorney does not possess the authority to make official decisions relating to the City's permitting process.[16]

- Ms. Dooley is alleged to have made decisions relating to the passing of ordinances. FAC ¶¶ 51, 86, 101, 103, 121, 221, 234, 272, 325, 357, 385, 386, 398, 422, 476, 477, 527, 535, 558. But the authority to make official decisions relating to the passing or enactment of ordinances falls outside the scope of an Assistant City Attorneys' authority.[17]

- Ms. Dooley is alleged to have made decisions concerning the bringing into compliance of certain properties. FAC ¶¶ 86, 285–89. But an Assistant City Attorney has no such authority.[18]

- Ms. Dooley is alleged to have made the decision to impose fines for Code violations. FAC ¶¶ 551, 570. But such authority is not bestowed upon an Assistant City Attorney.[19]

- Ms. Dooley is alleged to have made the decision to ensure that Plaintiffs paid all fees without reduction or waiver. FAC ¶ 136. But decision-making authority relative to the payment or deferment of fees charged in the permitting process falls outside the purview of an Assistant City Attorney.[20]

- Ms. Dooley is alleged to have made the decision to spearhead the demolition of properties. FAC ¶ 136. But an Assistant City Attorney is without such authority.[21]

---

[16] *See Nat'l Advert. Co. v. City of Miami*, 288 F. Supp. 2d 1282, 1286 (S.D. Fla. 2003) (building official for the City testifying that he has the authority to grant a building permit); *see also* City Code, § 2-204 ("The functions of the planning, building, and zoning department shall include the management and supervision of all functions and personnel of the planning, building, electrical, plumbing, and zoning functions, and boiler and elevator inspection."); *id*. §§ 10-71, 10-72 (permits are issued by the City's building official); *id*. § 62-535 (a permit for a temporary structure must be obtained from the office of zoning).

[17] *See* City Charter, § 4(a) ("The city commission shall constitute the governing body with powers (as hereinafter provided) to pass ordinances adopt regulations and exercise all powers conferred upon the city").

[18] *See* City Code, § 10-101 (issues concerning unsafe structures and bringing such structures into compliance falls within the purview of the unsafe structures panel or the City's building official).

[19] *See* City Code, § 2-813 (it is the duty of the City Manager, and his agents, to ensure code compliance); *id*. § 2-814 (it is the duty of the City Manager, and his agents, to initiate code enforcement proceedings of the various code violations); *id*. § 2-817 (the code enforcement board or a special master has the power to impose fines and to determine the amount of the fine).

[20] *See* City Code, § 10-5(a) (the City Manager has the authority to defer permitting fees); *id*. § 2-817 (the code enforcement board or a special master has the power to impose fines and to determine the amount of the fine).

[21] *See* City Code, § 10-101(l)(4) (decisions relating to the demolition of unsafe structures are made by the unsafe structures panel); *id*. § 10-101(l)(5) (the City Attorney only serves as counsel to the unsafe

- Ms. Dooley is alleged to have made the decision to audit Ortus. FAC ¶ 234. But an Assistant City Attorney does not have the authority to make that decision.[22]

- Ms. Dooley is alleged to have decided to find that Plaintiffs violated the City Code. FAC ¶ 284. But an Assistant City Attorney does not have the authority to make that decision.[23]

In light of the foregoing, individual liability under § 1983 cannot be attributed to Ms. Dooley and, therefore, all of the claims pleaded against her must be dismissed with prejudice.

## II.   Ms. Dooley is Entitled to Absolute Immunity

Ms. Dooley has absolute immunity for two reasons. *First,* she qualifies for quasi-judicial immunity. *Second,* she qualifies for legislative immunity.

### A.   Quasi-Judicial Immunity

The allegations concerning Ms. Dooley relate to actions taken by her in her capacity as Assistant City Attorney and relative to the adjudicative process before certain of the City's administrative bodies and agencies. *See* FAC ¶¶ 22, 57, 134, 156, 284, 484, 551. Even more, the City Charter and the City Code establish that an Assistant City Attorney shall, *inter alia*, be the prosecuting attorney of the municipal court (*see* City Charter, § 21) and represent the City by

---

structures panel or represents the City by presenting cases to the unsafe structures panel, but the City Attorney cannot do both).

[22] *See* Fla. Stat. 553.791(19) ("Each local building code enforcement agency may audit the performance of building code inspection services by private provides within the local jurisdiction."); FAC ¶ 225 ("The City's Quality Control Manager is responsible for private provider audits in the City."); City Code, § 2-204 ("The functions of the planning, building, and zoning department shall include the management and supervision of all functions and personnel of the planning, building, electrical, plumbing, and zoning functions, and boiler and elevator inspection.").

[23] *See* City Code, § 2-813 (it is the duty of the City Manager, and his agents, to ensure code compliance); *id*. § 2-814 (it is the duty of the City Manager, and his agents, to initiate code enforcement proceedings of the various code violations); *id*. § 2-817 (the code enforcement board or a special master has the power to impose fines and to determine the amount of the fine); *id*. § 2-812(d) ("The city attorney, an assistant city attorney, or the city attorney's designee acting by and through the city attorney shall represent the city by presenting cases before the [code enforcement] board.").

7

presenting cases before the code enforcement board (*see* City Code, § 2-812(d)).  As a matter of law, it follows that such actions are entitled to absolute quasi-judicial immunity.

Indeed, "[t]he Supreme Court has recognized that individuals, when performing functions that are judicial in nature, or who have a sufficiently close nexus to the adjudicative process, are entitled to a grant of absolute quasi-judicial immunity."[24]  Particularly apt to Ms. Dooley, it is noteworthy that absolute immunity has been extended to government attorneys prosecuting non-criminal matters before administrative agencies.[25]  And even more apt to Ms. Dooley, Florida courts have held that "code enforcement proceedings are quasi-judicial in nature." [26]

In light of the foregoing, it follows that any actions undertaken by Ms. Dooley in her capacity as a prosecutor for the City were quasi-judicial in nature, which are entitled to absolute immunity and cannot form the basis for liability under § 1983.

B.  **Legislative Immunity**

Separately, Plaintiffs attempt to expose Ms. Dooley individually to § 1983 liability for her role in the passing of ordinances. *See* FAC ¶¶ 51, 86, 101, 103, 121, 221, 234, 272, 325, 357, 385, 386, 398, 422, 476, 477, 527, 535, 558.  But that conduct too is entitled to absolute immunity.  Indeed, the law is decided that "local legislators are entitled to absolute immunity from civil liability for their legislative activities."[27]

---

[24] *In re Castillo*, 297 F.3d 940, 948 (9th Cir. 2002) (citing *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976)); *see also Jones v. Cannon*, 174 F.3d 1271, 1281 (11th Cir. 1999) ("quasi-judicial officers also enjoy absolute immunity.") (citing *Imbler*, 424 U.S. at 420–21).

[25] *See Butz v. Economou*, 438 U.S. 478, 516 (1978) ("If agency attorneys were held personally liable in damages as guarantors of the quality of their evidence, they might hesitate to bring forward some witnesses or documents."); *Cosby v. Lee Cnty.*, 55 F. Supp. 3d 1393, 1400 (M.D. Fla. 2014) ("Absolute immunity has been extended to agency officials performing certain functions analogous to that of a prosecutor.") (*citing Rindley v. Gallagher*, 890 F. Supp. 1540, 1556 (S.D. Fla. 1995)).

[26] *Verdi v. Metro. Dade Cnty.*, 684 So. 2d 870, 874 (Fla. 3d DCA 1996).

[27] *Beach Blitz Co. v. City of Miami Beach, Florida*, 2018 WL 11260453, at *4 (S.D. Fla. 2018) (citing *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998)).

And to eliminate all doubt about the breadth and scope of that rule, the law is clear that "[a]bsolute legislative immunity attaches to all actions taken 'in the sphere of legitimate legislative activity.'"[28] To be even more clear, that includes all conduct that is "quintessentially legislative."[29] It follows that "officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions" and actions that are "integral steps in the legislative process."[30] As such, it is decided law that any assistance rendered by Ms. Dooley in connection with the passing of ordinances constituted an integral step in the legislative process.[31]

In light of the foregoing, it follows that all actions undertaken by Ms. Dooley in connection with the passing of ordinances are entitled to absolute legislative immunity and cannot form the basis for liability under § 1983.

### III. Plaintiffs' Claims Against Ms. Dooley are Barred by Qualified Immunity

Separately, Ms. Dooley is also entitled to qualified immunity that shields her from liability given the allegations pleaded in the FAC.

"'Qualified immunity shields government officials who perform discretionary governmental functions from civil liability so long as their conduct does not violate any clearly established statutory or constitutional rights of which a reasonable person would have known.'"[32]

---

[28] *Bogan*, 523 U.S. at 54 (citing *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951)).

[29] *Macuba v. Deboer*, 193 F.3d 1316, 1321 (11th Cir. 1999).

[30] *Bogan*, 523 U.S. at 55 (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)).

[31] *See Beach Blitz Co*, 2018 WL 11260453, at *4 n.16 (holding that the city attorney was entitled to absolute immunity in assisting "in the process of passing the ordinances by preparing and revising the drafts" because such actions were "integral in the legislative process") (citing *Bogan*, 523 U.S. at 55).

[32] *Ward v Chafin*, 2023 WL 2661527, at *4 (11th Cir. 2023) (quoting *Rehberg v. Paulk*, 611 F.3d 828, 838 (11th Cir. 2010)).

"Qualified immunity thus represents the rule, rather than the exception: 'Because qualified immunity shields government actors in all but exceptional cases, courts should think long and hard before stripping defendants of immunity.'"[33]

"For qualified immunity to apply, the government official must first show that he or she was 'acting within the scope of his or her discretionary authority.'"[34] If the government official satisfies that burden, then the plaintiff has the burden to demonstrate that qualified immunity is not appropriate.[35] To satisfy that burden, the plaintiff "must show that (1) the facts alleged demonstrate that the officer's conduct violated a constitutional right, and (2) the right was clearly established at the time of the alleged misconduct."[36] If the plaintiff fails to satisfy its burden as to either prong, the government official is entitled to qualified immunity.[37]

### A. Discretionary Authority

Here, it is clear beyond all reasonable peradventure that Ms. Dooley was acting within her discretionary authority as Assistant City Attorney. Indeed, the law recognizes that "'[a] government official acts within his or her discretionary authority if objective circumstances compel the conclusion that challenged actions occurred in the performance of the official's duties and within the scope of this authority.'"[38] "In other words, 'a court must ask whether the

---

[33] *Sanders v. Howze*, 177 F.3d 1245, 1249 (11th Cir. 1999) (quoting *Lassiter v. Alabama A & M Univ., Bd. of Trustees*, 28 F.3d 1146, 1149 (11th Cir. 1994)).

[34] *Rodriguez v. Gomez*, 645 F. Supp. 3d 1343, 1347 (S.D. Fla. 2022) (quoting *Moore v. Pederson*, 806 F.3d 1036, 1042 (11th Cir. 2015)).

[35] *Rodriguez*, 645 F. Supp. 3d at 1347 (citing *Moore*, 806 F.3d at 1042).

[36] *Rodriguez*, 645 F. Supp. 3d at 1347 (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

[37] *Rodriguez*, 645 F. Supp. 3d at 1347–48 (citing *Piazza v. Jefferson Cnty., Alabama*, 923 F.3d 947, 951 (11th Cir. 2019)).

[38] *Perez v. City of Opa-Locka*, 629 F. Supp. 3d 1164, 1189–90 (S.D. Fla. 2022) (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1185 n.17 (11th Cir. 1994) (overruled on other grounds)).

act complained of, if done for a proper purpose, would be within, or reasonably related to, *the outer perimeter* of an official's discretionary duties.'"[39]

Here, the actions allegedly taken by Ms. Dooley would be within or reasonably related to the outer perimeter of her duties as an Assistant City Attorney. As it relates to issues concerning enforcement of City Code, the City Code provides that "an assistant city attorney . . . acting by and through the city attorney shall represent the city by presenting cases before the board."[40] The same applies even if the case is being presented to a special magistrate.[41] And the City Attorney's office serves as counsel to the unsafe structures panel or represents the City by presenting cases to the unsafe structures panel.[42] The City Charter further provides that the "city attorney shall be the prosecuting attorney of the municipal court" and "shall prosecute all cases brought before such court and perform the same duties . . . as are required of the prosecuting attorney of the county."[43]

As it relates to issues concerning legal advice provided to City officials, the City Charter is clear that "the city attorney shall be the legal advisor and attorney for the city, and for all officers and departments thereof in matters relating their official duties" and that "[t]he mayor, city commission, the city manager, the director of any department, or any officer or board not included within a department may require the opinion of the city attorney upon any question of law involving their respective powers and duties."[44]

---

[39] *Mikko v. City of Atlanta, Georgia*, 857 F.3d 1136, 1144 (11th Cir. 2017) (emphasis in original) (quoting *Harbert Intern., Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998)).

[40] *See* City Code, §2-812(d).

[41] *See* City Code, § 2-830(d).

[42] *See* City Code, § 10-101(l)(5).

[43] *See* City Charter, § 21.

[44] *See* City Charter, § 21; *see also* City Code, § 2-63(a) ("All attorneys at law . . . employed by the city . . . are hereby placed under the direct supervision and control of the city attorney.").

The FAC further alleges that any investigation performed by Ms. Dooley was made pursuant to the authority bestowed upon the City Attorney's office by Resolution 4-1.[45]

So, no matter how one looks at this issue, it is clear that Ms. Dooley was acting within the scope of her discretionary authority as Assistant City Attorney.

### B. No Clearly Established Constitutional Right

Because Ms. Dooley obviously was acting within the scope of her discretionary authority, the burden is on Plaintiffs to show that qualified immunity is not appropriate because *her conduct* violated a clearly established constitutional right. But they have failed to do so.

As set forth above, Plaintiffs cannot establish that *Ms. Dooley's conduct* violated a clearly established constitutional right because Ms. Dooley did not have the authority to make the official decisions of which Plaintiffs complain. Logically then, it follows that *Ms. Dooley's conduct* could not have been a violation of a clearly established right. But even assuming, *arguendo*, those decisions could be attributed to Ms. Dooley, they fail to establish the violation of a clearly established constitutional right.

"For an asserted right to be clearly established for purposes of qualified immunity, the law must have earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal law."[46] The conduct attributed to Ms. Dooley concerns decisions made in connection with the enforcement of the City's Code (relative to Plaintiffs' properties). But,

---

[45] FAC ¶ 57.
[46] *Lucas v. Cabezas*, 2019 WL 78981, at *4 (S.D. Fla. 2019) (cleaned up) (quoting *Jackson v. Sauls*, 206 F.3d 1156, 1164-65 (11th Cir. 2000)).

courts have held that disputes concerning the enforcement of city codes relating to properties and land use do not invoke questions of clearly established constitutional rights.[47]

This is not an exceptional case warranting the stripping of Ms. Dooley's right to qualified immunity. If her right to qualified immunity were stripped, then how many citizens would become municipal attorneys when the enforcement of the city's code could result in their becoming individually liable for just doing their job? That would defeat the purpose of the doctrine of qualified immunity, which is to encourage public service without fear of reprisal.[48]

In light of the foregoing, Ms. Dooley has met her burden, but Plaintiffs have not met theirs. Therefore, Ms. Dooley is entitled to qualified immunity and cannot be subjected to liability under § 1983.

## IV. Plaintiffs Have Failed To Plead the Required Element of Causation

To state a claim for First Amendment retaliation, Plaintiffs must satisfy the required element of causation. More specifically, "a plaintiff must show that (1) he engaged in protected speech; (2) the defendant's conduct adversely affected his protected speech; and (3) a ***causal***

---

[47] *See Town of Sw. Ranches v. Kalam*, 980 So. 2d 1121, 1123–24 (Fla. 4th DCA 2008) ("More explicitly, courts have recognized that conventional land use disputes between landowners or developers and local planning authorities do not implicate the constitution.") (cleaned up) (quoting *Carter v. Rollins Cablevision,* 618 F.Supp. 425, 428 (D.Mass.1985)); *Sullivan Properties, Inc. v. City of Winter Springs*, 899 F. Supp. 587, 594 (M.D. Fla. 1995) ("Not every wronged party has a valid claim for a constitutional violation whenever a local building official makes an incorrect decision regarding a building permit.") (cleaned up) (quoting *Spence v. Zimmerman,* 873 F.2d 256, 260 n. 5 (11th Cir.1989)); *Spence*, 873 F.2d at 262 ("We stress that federal courts do not sit as zoning boards of review and should be most circumspect in determining that constitutional rights are violated in quarrels over zoning decisions." (citing *Raskiewicz v. Town of New Boston,* 754 F.2d 38, 44 (1st Cir. 1985)).

[48] *See Corbitt v. Vickers,* 929 F.3d 1304, 1311 (11th Cir. 2019) ("[Qualified immunity] allows officials to work without fear of liability, protecting all but the plainly incompetent or those who knowingly violate the law.") (cleaned up) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

*connection* exists between the adverse conduct and the protected speech."[49] But Plaintiffs fail to plead the requisite element of causation for three separate reasons.

*First*, the law is well established that "[t]he causal relation does not exist when the continuum between Defendant's action and the ultimate harm is occupied by the conduct of deliberative and autonomous decision-makers."[50] And as noted above, Ms. Dooley was not an official decision maker relative to the decisions of which Plaintiffs complain. For that reason alone, Plaintiffs fail to plead the required element of causation.

*Second,* Plaintiffs also have not alleged that *Ms. Dooley* possessed any retaliatory animus against Plaintiffs that would satisfy the element of causation.[51] But that too is required.[52] As a result, Plaintiffs fail to plead causation for yet another reason.

*Third*, the law is well established that to satisfy the element of causation, Plaintiffs must allege that Ms. Dooley lacked probable cause to engage in the conduct attributed to her because that is what establishes the causal link between *her conduct* and Plaintiffs' claimed injuries.[53] Stated differently, courts have long recognized that a lawful basis for governmental action breaks

---

[49] *Watkins v. Bigwood*, 2023 WL 3711827, at *4 (11th Cir. 2023) (emphasis added) (citing *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005)).

[50] *Dixon v. Burke County*, 303 F.3d 1271, 1275 (11th Cir.2002); *see also Troupe v. Sarasota Cnty., Fla.*, 419 F.3d 1160, 1165 (11th Cir. 2005) ("A § 1983 claim requires proof of an affirmative causal connection between the defendant's acts or omissions and the alleged constitutional deprivation.") (citing *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir.1986)).

[51] Indeed, the only retaliatory animus against Plaintiffs alleged with any specificity belonged to Mr. Carollo. *See* FAC ¶¶ 45, 76, 162, 661.

[52] *See Turner v. Williams*, 65 F.4th 564, 581 (11th Cir. 2023) ("To prevail on a First Amendment retaliation claim, a plaintiff must establish a causal connection between the government defendant's retaliatory animus and the plaintiff's subsequent injury.") (cleaned up) (quoting *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019)).

[53] *See DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1289 (11th Cir. 2019) (stating that a plaintiff pursuing a claim for First Amendment retaliation must allege and prove an absence of probable cause as to the conduct at issue "in order to establish the causation link between the defendant's retaliatory animus and the plaintiff's injury.") (citing *Nieves*, 139 S. Ct. at 1726).

the causal link between a defendant's retaliatory animus and a plaintiff's alleged § 1983 injury. Indeed, the law standing for that proposition is legion.[54]

The foregoing body of law is dispositive here because none of the actions attributed to Ms. Dooley are alleged to have been undertaken without probable cause. Much the same, Plaintiffs do not deny that the Code violations with which they were charged were found to be legitimate. To the contrary, Plaintiffs concede that they were in violation of the City Code.[55]

In light of the foregoing, Plaintiffs have failed to plead the requisite element of causation and, therefore, all of Plaintiffs' § 1983 claims should be dismissed with prejudice.

## V. As to Count XII, Plaintiffs' Allegations are Silent as to Ms. Dooley

The heading for Count XII indicates that the "42 USC § 1983 Claim" is being asserted against certain Defendants, including Ms. Dooley.[56] But, the allegations that comprise Count

---

[54] *See O'Boyle v. Com. Grp, Inc.,* 2023 WL 2579134, *4 (11th Cir. 2023) (when a government actor has "probable cause to take legal action against the plaintiffs protected activity," even if personal animus also was a motive, the plaintiff's retaliation claim fails "as a matter of law"); *Brienza v. City of Peachtree City, Georgia,* 2022 WL 3841095, *8 (11th Cir. 2022) (the law requires "the plaintiff to plead and prove an absence of probable cause as to the challenged retaliatory [conduct] in order to establish the causation link between the defendant's retaliatory animus and the plaintiff's injury" and "[t]he presence of probable cause should generally defeat" a claim for First Amendment retaliation); *Robson 200, LLC v. City of Lakeland, Fla.,* 593 F. Supp.3d 1110, 1128 (M.D. Fla. 2022) (to show probable cause for enforcement, officials need "only a reasonable belief, based on the facts and circumstances known to them that the citation was valid"); *see also Bey v. City of Tampa Code Enf't*, 607 F. App'x 892, 896-97 (11th Cir. 2015) (finding that Plaintiff could not state a case for § 1983 religious discrimination where she admitted to the code violations and has simply chosen not to comply with land-use ordinances); *6420 Roswell Rd., Inc. v. City of Sandy Springs, Georgia*, 484 F. Supp. 3d 1321, 1339 (N.D. Ga. 2020) (being cited for an actual, serious fire-code violation does not violate First Amendment rights); *Mech v. School Board of Palm Beach County*, 2014 WL 11444112, *4 (finding no retaliation claim where "[d]efendant did not remove Plaintiff's banners because of the expression contained therein" but rather "for a reason unrelated to Plaintiff's speech").

[55] *See, e.g.*, FAC ¶¶ 81, 90–95, 288.

[56] *See* FAC at 108.

XII are silent as to Ms. Dooley.[57] Accordingly, Count XII should be dismissed as it fails to state a claim against Ms. Dooley.[58]

## CONCLUSION

Plaintiffs seek to hold Ms. Dooley liable, in her individual capacity, for a purported campaign of focused retaliation whereby the resources of the City were utilized to punish Plaintiffs for their constitutionally protected speech. But to the extent that there was a campaign of focused retaliation – which is vehemently denied – it simply was not *her* campaign. The allegations of the FAC establish that Ms. Dooley did nothing more than what was required of a dedicated civil servant faithfully fulfilling the functions required of her office. Thankfully, well established law makes clear such allegations are not actionable.

**WHEREFORE**, Ms. Dooley respectfully requests that the Court grant this Motion, dismiss the FAC with prejudice, award Ms. Dooley her attorneys' fees pursuant to 42 U.S.C. § 1988(b), and grant all other relief that the Court deems just and proper.

## REQUEST FOR HEARING

Ms. Dooley, pursuant to S.D. Fla. L.R. 7.1(b)(2), respectfully requests that the Court set this matter for oral argument. Oral argument would be helpful to the Court because it would help focus the Court's analysis of the material allegations and the applicability of those allegations to the complex areas of law at issue here. Ms. Dooley estimates that the time required for argument on issues specific to her would be one hour.

---

[57] *See* FAC at 108–110.

[58] *See* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plaint statement of the claim showing that the pleader is entitled to relief.").

Dated: February 29, 2024                    Respectfully submitted,

                                                 DIMOND KAPLAN & ROTHSTEIN, P.A.
                                                 Offices at Grand Bay Plaza
                                                 2665 South Bayshore Drive, PH-2B
                                                 Miami, Florida 33133
                                                 Telephone: (305) 374-1920

                                                 By: */s/ David A. Rothstein*
                                                          David A. Rothstein, Esq.
                                                          Fla. Bar No. 995762
                                                          *DRothstein@dkrpa.com*
                                                          Alexander M. Peraza, Esq.
                                                          Fla. Bar No. 107044
                                                          *APeraza@dkrpa.com*
                                                          Eshaba Jahir-Sharuz, Esq.
                                                          Fla. Bar No. 1038846
                                                          *Eshaba@dkrpa.com*

                                                 *Attorneys for Defendant Rachel Dooley*

17