UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

WILLIAM O. FULLER, *et al.*,

      Plaintiffs,

v.                           Case No. 1:23-cv-24251-FAM

THE CITY OF MIAMI, *et al.*,

      Defendants.

_____/

**DEFENDANT CITY OF MIAMI'S MOTION
<u>TO DISMISS THE FIRST AMENDED COMPLAINT WITH PREJUDICE</u>**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................................... 1

LEGAL STANDARD ..................................................................................................................... 2

ARGUMENT .................................................................................................................................. 3

I.    Plaintiffs abandoned their claims against the City in *Fuller I*, and the dismissal in *Fuller I* is a final judgment for res judicata purposes in this case. .................................................... 3

II.    Plaintiffs' FAC must be dismissed based on the doctrine of judicial estoppel. .................. 6

III.    Plaintiffs lack standing to bring this action. ........................................................................ 7

IV.    Plaintiffs' claims against the City are also barred because they would constitute a double recovery of the damages awarded in *Fuller I* for the same injury. ..................................... 7

V.    Plaintiffs have failed to state a *Monell* claim for municipal liability because they do not and cannot plausibly allege a City policy or custom. ......................................................... 9

     A. The City ordinances are facially neutral and constitutional and cannot support a *Monell* claim. ................................................................................................................................9

     B. Plaintiffs have also not alleged that that the City was the "moving force" behind their injury. ...............................................................................................................................12

     C. Plaintiffs have not plausibly alleged that any single decision from any official policymaker established an unconstitutional municipal policy. ....................................13

VI.    Plaintiffs have failed to plead a First Amendment claim. ................................................. 16

VII.    Plaintiffs have failed to allege a conspiracy. .................................................................... 16

VIII. Plaintiffs' case should be dismissed for improper claim-splitting, or alternatively, the Court should exercise *Colorado River* abstention regarding *Tower Hotel*. ...................... 18

IX.    Plaintiffs' claims are barred by the applicable statute of limitations. ............................... 20

X.    Punitive damages are not available against the City. ......................................................... 20

XI.    Certain allegations of the FAC should be stricken. .......................................................... 20

CONCLUSION ............................................................................................................................. 20

REQUEST FOR ORAL ARGUMENT ........................................................................................ 21

Pursuant to Fed. R. Civ. P. 8, 12(b)(1), 12(b)(6), and 12(f), Defendant City of Miami (the "City") moves to dismiss Plaintiffs' First Amended Complaint (ECF 77) ("FAC") for lack of standing and for failure to state a claim upon which relief can be granted, adopts applicable portions of Commissioner Carollo's and City Manager Noriega's motions to dismiss and Director of Zoning Goldberg's motion to strike and dismiss, and states:

## INTRODUCTION

Plaintiffs William O. Fuller, Martin Pinilla, II, and entities they own, have filed an amended complaint against the City and eleven alleged City officials, in their individual capacities, purporting to assert a Section 1983 civil rights action. This is Plaintiffs' fourth lawsuit filed against the City for the *same alleged conduct*, and on January 16, 2024, Plaintiffs filed yet another lawsuit – their ***fifth*** – against the City, trying to remove Commissioner Carollo from office.[1]  In this case, Plaintiffs attempt to allege that the City had an official policy and custom of targeting Plaintiffs on behalf of Joe Carollo, an elected City Commissioner, and retaliating against them in violation of their First Amendment rights to free speech and freedom of association, and that Defendants engaged in a conspiracy in furtherance of these constitutional violations.

For more than a decade, Plaintiffs Fuller and Pinilla (using numerous special purpose entities they own or control) have engaged in an intentional pattern and practice of purchasing (often distressed) real properties within the city and performing extensive remodeling or construction work on those properties without first obtaining the necessary permits, or intentionally obtaining permits for a lesser scope of work and then knowingly exceeding that scope without submitting new permit applications for the additional work. Rather than seeking permits necessary to bring the properties into compliance in advance, they often do so only after being caught and issued citations.[2]  In nearly all such instances, Plaintiffs ended up paying the citations, thus admitting the violations. *See* FAC ¶¶ 63, 143, and 182; *Fuller I*, Def. Tr. Exs. 5, 6, 9-11, 13, 16, 24, 28-30, 32-34, 37, 39, 41, 43, 45, 63-80, 89, 90, 98, 100, 101, 111, 603, 604, 716, 719; *Fuller I* ECF 562 - Tr. 5/11/23 (Fuller) 30:24-31:2, 186:13-187:6.  Plaintiffs then claim such

---

[1] (1) *Fuller, et al. v. Carollo*, Case No. 2018-cv-24190 (S.D. Fla.) ("*Fuller I*") before Judge Smith, which resulted in a trial and Final Judgment that is on appeal; (2) *Mad Room LLC v. City*, Case No. 2021-cv-23485 (S.D. Fla.) ("*Mad Room*") before Judge Altman; and (3) *Tower Hotel LLC, et al. v. City of Miami*, Case No. 2022-8069-CA-44 (Fla. 11th Cir. Ct. 2022) ("*Tower Hotel*"); and (4) *Fuller v. City of Miami*, Case No. 2024-793-CA-07 (Fla. 11th Cir. Ct. 2024) ("*Fuller III*").

[2] *See* Counterclaims in *Mad Room* (ECF 347 ¶¶ 2, 4, 5, 7) and *Tower Hotel* (Dkt. # 169 ¶¶ 5, 6, 9).

citations are proof of the City and its officials targeting them unfairly.  Plaintiffs are serial litigators that continue to sue the City even though the issues they seek to litigate and the damages they wish to recover are not only groundless, but they also were already dismissed as against the City.

Plaintiffs' FAC fails to remedy the issues the City raised in its motion to dismiss the initial Complaint and because none of the defects can be cured, the FAC should be dismissed with prejudice.  Additionally, certain portions of the FAC should be stricken.

## **LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A plausible entitlement to relief exists when the allegations in the complaint traverse the thresholds separating the 'conclusory' from the 'factual' and the 'factually neutral' from the 'factually suggestive.'"  *Barton v. Florida*, 2007 WL 1724943, at *1 (N.D. Fla. June 13, 2007) (quoting *Bell Atlantic Corp.*, 550 U.S. at 557, n. 5).  The Court need not accept Plaintiffs' unsupported conclusions of law or of mixed law and fact.  *See Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1022 (11th Cir. 2001).

"On a motion to dismiss, '[c]onclusory allegations and unwarranted deductions of fact are not admitted as true,'" particularly "when the conclusory allegations contradict the other facts alleged in the complaint."  *Berry v. Coleman*, 172 Fed. App'x 929, 932 (11th Cir. 2006) (citation omitted).  The Court is not required to ignore specific factual details of the pleading in favor of general or conclusory allegations set forth later therein.  *See Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007).  Moreover, the Court may take judicial notice of certain documents and facts without converting a motion to dismiss into a motion for summary judgment.  *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999).  "Public records are among the permissible facts that a district court may consider."  *Universal Express, Inc. v. U.S. S.E.C.*, 177 F. App'x 52, 53 (11th Cir. 2006).[3]  Finally, conclusory allegations cannot be salvaged

---

[3] Here, the Court should take judicial notice of the Amended Complaint, Report & Recommendation dismissing the Amended Complaint, Order adopting the Report & Recommendation, Second Amended Complaint, Jury Verdict, Final Judgment, the plaintiffs' Notice of Appeal, and the recent Order Denying Motion to Clarify Judgment in *Fuller I* (attached as **Exs. 1A, 1B, 1C, 1D, 1E, 1F, 1G, 1H**), as well as the operative complaints in *Mad Room* (attached as **Ex. 2**) and *Tower Hotel* (attached as **Ex. 3**) and the recently filed amended complaint seeking to remove Commissioner Carollo from the City Commission (attached as **Ex. 4**).

by Plaintiffs claiming to "flesh them out" after discovery.  *See Belik v. Carlson Travel Group, Inc.*, 864 F. Supp. 2d 1302, 1313-14 (S.D. Fla. 2011).  Here, the Court should dismiss Plaintiffs' FAC because taking the non-conclusory allegations as true, and based on the actual facts alleged, Plaintiffs have failed to state a claim for relief against the City.

## ARGUMENT

I.  **Plaintiffs abandoned their claims against the City in *Fuller I*, and the dismissal in *Fuller I* is a final judgment for res judicata purposes in this case.**

Plaintiffs' claims against the City should be dismissed with prejudice because Plaintiffs asserted and then abandoned their claims against the City for First Amendment retaliation in *Fuller I*.  This is the fourth lawsuit by Fuller and Pinilla and companies they own against the City.  Each lawsuit purports to arise from the same nucleus of operative facts, namely, the allegation that Commissioner Carollo has taken and directed others to take action and to target Plaintiffs in retaliation for Fuller and Pinilla backing a political challenger and criticizing Carollo.  Even assuming *arguendo* Plaintiffs could plausibly state a claim against the City, those claims would be barred by the final judgment in favor of the City in *Fuller I*, which arose from the dismissal of the City in *Fuller I* from the first amended complaint and Plaintiffs' failure to assert any further claims against the City, or even name it as a defendant, in the second amended complaint.

The well-established legal principle of res judicata was developed to prevent the very type of serial lawsuits Plaintiffs have brought against the City.  Res judicata, also known as claim preclusion, "bars the filing of claims which were raised or could have been raised in an earlier proceeding."  *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1238 (11th Cir. 1999).  Res judicata bars a plaintiff's claim where four elements are satisfied: "(1) there is a final judgment on the merits; (2) the decision was rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both cases."  *Id*.  Here, each of these elements is met for purposes of barring Plaintiffs from suing the City.  Where res judicata is clear from the face of the complaint, it is grounds for dismissal.

First, there is a final judgment on the merits.  Plaintiffs Fuller and Pinilla filed *Fuller I* in 2018, asserting that Commissioner Carollo violated Section 1983 and their First Amendment rights to free speech and freedom of association.  *See Fuller I* (ECF 1).  Several months later, Fuller and

---

Defendants previously submitted a joint request for judicial notice of facts (ECF 56), which also includes several of these documents.

Pinilla amended their complaint to assert a claim for City liability. *See Fuller I* (ECF 43). The crux of Fuller and Pinilla's 2019 claims against the City was that the City allegedly had knowledge of Carollo's "campaign" of harassment against Plaintiffs and condoned, encouraged, and even lent a hand in that harassment on "numerous" occasions. *Fuller I* (ECF 43 at 3). The court granted the City's motion to dismiss under Fed. R. Civ. P. 12(b)(6) (*Fuller I*, ECF 54), finding, *inter alia*, a failure to allege a claim that would survive sovereign immunity, but allowed leave to amend. *Fuller I* (ECF 99 at 27, 118) (Report & Recommendation and Order Adopting the Report & Recommendation). Critically, when Fuller and Pinilla further amended their complaint, they chose to drop the claim against the City and assert a single cause of action: "First Amendment Retaliation—Against Carollo." *Fuller I* (ECF 125 at 52). Fuller and Pinilla did not seek to further amend their pleadings as to the City at any point before trial. Instead, they chose to proceed to trial solely against Carollo in his individual capacity, where they obtained a verdict only in that capacity, neither requesting nor receiving *Monell* or official capacity findings in the jury verdict. *See Fuller I* (ECF 470, 618) (Verdict Form, Order Denying Motion to Clarify Judgment). Then, Plaintiffs chose to file a notice of appeal directed to the order of dismissal. *See Fuller I* (ECF 521) (Notice of Appeal). Accordingly, the dismissal of the City in *Fuller I* became a final judgment as a matter of law as it relates to the City, because Plaintiffs failed to file amended claims within the time specified in the dismissal order in 2019. *See Auto. Alignment Body Serv., Inc. v. State Farm Mut. Auto. Ins. Co.*, 953 F.3d 707, 719-20 (11th Cir. 2020) (citing *Hertz Corp. v. Alamo Rent-A-Car, Inc.*, 16 F.3d 1126, 1132-33 (11th Cir. 1994)) ("*Hertz* establishes that an order dismissing a complaint with leave to amend within a specified time becomes a final judgment if the time allowed for amendment expires without the plaintiff seeking an extension. . . . The orders dismissing the first amended complaints . . . became final judgments under *Hertz* when the body shops missed their deadline to amend); *see also Hertz*, 16 F.3d at 1128 n. 3 ("If the dismissal had been effectuated pursuant to Fed. R. Civ. P. 12(b)(6) . . . we recognize that such a dismissal would have become a dismissal with prejudice when no timely amendment was filed and no request for an extension was submitted."); *Smith v. Sec'y of Veterans Affs.*, 808 F. App'x 852, 853 (11th Cir. 2020) ("[W]here a complaint is dismissed without prejudice and the plaintiff files an appeal instead of amending the complaint, the dismissal becomes final and appealable and the plaintiff waives the right to later amend the complaint.").

Second, the order dismissing Plaintiffs' claims against the City in *Fuller I* was rendered by

a court of competent jurisdiction, namely, the Southern District of Florida.

Third, the parties, or those in privity with them, are identical in both suits. Before being dropped as a party in *Fuller I*, the City was a party in that action, as it is here. *See Fuller I* (ECF 43). Plaintiffs Fuller and Pinilla are plaintiffs in both suits, and all of the Plaintiff entities are owned by Fuller and/or Pinilla, *see* FAC ¶¶ 3-17, and agreed to be bound by the litigation in *Fuller I*, as they expressly assigned their purported claims to Fuller and Pinilla in *Fuller I*, which means that their purported claims against the City were dismissed and their claims against Commissioner Carollo were tried in *Fuller I*. *See Fuller I* (ECF 125 ¶¶ 111, 207, 298) ("All claims related to monetary damages have been assigned by the relevant business entity to Plaintiffs in their individual capacities."). The FAC here contains the identical allegation. FAC ¶ 325.

Fourth, the same causes of action are at issue in both proceedings. According to the FAC, Plaintiffs Fuller and Pinilla, along with 14 of their wholly-owned entities and Viernes Culturales (a non-profit they control), have brought claims based on identical facts and theories, alleging that Carollo acted with others and pursuant to an alleged municipal policy to violate their First Amendment rights to free speech and freedom of association. Plaintiffs expressly incorporated *Fuller I* into this case and rely on it in the FAC. FAC at p. 2. Both *Fuller I* and this case assert 42 U.S.C. § 1983 claims arising under the First Amendment; the amended complaint in *Fuller I* asserted these claims against the City before abandoning them. In this case, as in *Fuller I*, Plaintiffs seek redress for alleged actions by Carollo against "Plaintiffs' properties and associated businesses for purposes of targeting those businesses for fines and shutting them down." *Compare* FAC ¶ 50 *with Fuller I* (ECF 125 ¶¶ 59–62) ("Upon taking office, Carollo immediately drew up a list of Plaintiffs' properties and associated businesses in District 3. . . . Carollo said he had a list of addresses for Fuller's properties that he would give to Diez, from which Diez understood Carollo was asking him to selectively target Fuller's properties."); (ECF 43 ¶¶ 63-66) (same). While the FAC purportedly alleges new retaliation incidents that post-date the amended complaint in *Fuller I*, such incidents were or should have been included in *Fuller I*, which was tried in June last year.[4]

---

[4] The court in *Fuller I* granted plaintiffs' *ore tenus* motion to conform the pleadings to the evidence presented at trial. *Fuller I* Trial Day 22 Transcript (ECF 567) at 125:11–16. *See, e.g., Dubuc v. Green Oak Twp.*, 312 F.3d 736, 751 (6th Cir. 2002) (the "doctrine of res judicata would become meaningless if a party could continue to relitigate the same issue . . . by merely positing a few additional facts that occurred after the initial suit"); *Cox v. Tenn. Valley Auth.*, 1994 WL 43433, at

Accordingly, Plaintiffs are barred by res judicata from pursuing the same claim here.

## II.      Plaintiffs' FAC must be dismissed based on the doctrine of judicial estoppel.

The FAC's allegations that Commissioner Carollo's actions constituted a policy of the City are also barred by judicial estoppel, which is a doctrine "fundamentally different from collateral estoppel and res judicata." *See Mishkin v. Peat, Marwick, Mitchell & Co*., 1988 WL 391648, at *1 (S.D.N.Y. Nov. 7, 1988) (explaining the difference). Where, as here, "a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position . . . ." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). "[J]udicial estoppel 'is intended to protect courts from being manipulated by chameleonic litigants who seek to prevail, twice, on opposite theories.'" *Burger King Corp. v. Barnes*, 1 F. Supp. 2d 1367, 1371 (S.D. Fla. 1998) (citing *Sullivan Properties, Inc. v. City of Winter Springs*, 899 F.Supp. 587, 591 (M.D. Fla. 1995)).[5] That is precisely what Plaintiffs are impermissibly attempting to do here.

*Fuller I* was pled, litigated, and tried as an action based upon actions purportedly taken by Commissioner Carollo in his *individual capacity*. *See Fuller I* (ECF 618). So clear was it that *Fuller I* was based solely on Commissioner Carollo acting in his *individual capacity* that Judge Smith recently denied a motion by the *Fuller I* Plaintiffs to amend the Final Judgment to also apply to Commissioner Carollo in his official capacity. *Id*. This case is based on the same conduct as *Fuller I* but, here, Plaintiffs irreconcilably claim it to be *official* City action and policy. Plaintiffs cannot have it both ways. Through their multiple and duplicative lawsuits, Plaintiffs endeavor to

---

*4 (6th Cir. Feb. 10, 1994) (when a plaintiff becomes aware of additional facts or theories in the process of discovery, she should move to amend or face claim preclusion in subsequent suits).

[5] Although the "circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle," *New Hampshire*, 532 U.S. at 750, courts traditionally consider whether: (1) a later position asserted by a party was clearly inconsistent with an earlier position; (2) a party succeeded in persuading a court to accept an earlier position, such that judicial acceptance of a later inconsistent position would create the perception that either the first or the second court was misled; and (3) the party with an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Stephens v. Tolbert*, 471 F.3d 1173, 1177 (11th Cir. 2006). The Eleventh Circuit has also considered whether the (i) allegedly inconsistent position was made under oath in a prior proceeding and (ii)  the **inconsistencies were calculated to make a mockery of the judicial system**. *Korman v. Iglesias*, 2018 WL 4410226, at *3 (S.D. Fla. June 28, 2018), *report and recommendation adopted*, 2018 WL 4409973 (S.D. Fla. Aug. 7, 2018), *aff'd*, 778 Fed. Appx. 680 (11th Cir. 2019). However, there is no requirement that a prior statement be under oath for judicial estoppel to apply. *In re Palm Beach Fin. Partners, L.P*., 527 B.R. 518, 525 (S.D. Fla. 2015).

make a mockery of the U.S. District Court for the Southern District of Florida, which judicial estoppel is designed to guard against. *See supra* n.5.

### III.    Plaintiffs lack standing to bring this action.

The City adopts[6] the arguments presented in City Manager Noriega's motion to dismiss, Section IV, and Director of Zoning Goldberg's motion to dismiss, Section I, that the Court lacks subject matter jurisdiction over the FAC because Plaintiffs cannot establish standing. *See* Defendant Arthur Noriega's Motion at pp. 5-9; Defendant Daniel Goldberg's Motion at pp. 10-13.

### IV.    Plaintiffs' claims against the City are also barred because they would constitute a double recovery of the damages awarded in *Fuller I* for the same injury.

In addition to the City's res judicata argument, there can be no compensable injury to Plaintiffs in this case because the injury alleged and the damages sought in this FAC were previously sought and awarded in *Fuller I*.  The FAC here alleges the same course of conduct and arises out of the same nucleus of operative facts as *Fuller I*, i.e., Plaintiffs claim they were injured because Commissioner Carollo allegedly took and directed others to take action in retaliation for Plaintiffs Fuller and Pinilla backing a political challenger and criticizing Carollo.  The jury in *Fuller I* found Mr. Carollo liable for First Amendment retaliation in his individual capacity and awarded Fuller and Pinilla $63.5 million in compensatory and punitive damages.  *See Fuller I* (ECF 470).  The court entered a final judgment against Carollo.  *Id.* (ECF 479).[7]  This was not a claim against the City nor Carollo in his official capacity.  *Id.* (ECF 618).  Nevertheless, Plaintiffs, including all Plaintiff entities (*see* Section I, *supra*), have already been made whole for the injuries they allege resulted from Carollo's actions.  Because Plaintiffs seek to hold the City responsible for the same injury alleged in *Fuller I*, their FAC against the City should be dismissed.

As discussed in Section V, *infra*, a municipality becomes liable for damages under 42 U.S.C. § 1983 only where the alleged constitutional violation results from a municipal policy or

---

[6] As to each of the arguments adopted herein, the City is in an identical position to the other Defendants to advance these adopted arguments because, in addition to the other reasons asserted, the City does not have liability if there is no underlying constitutional violation, the interests of judicial economy warrant their adoption, and granting this motion to adopt will not prejudice Plaintiffs.  *See Robert P. Boswell, D.M.V., P.A. v. Scott J. Swerdlin, D.M.V., P.A.*, 2008 WL 11332004, at *4 (S.D. Fla. Sept. 25, 2008), *report and recommendation adopted*, 2008 WL 11333663 (S.D. Fla. Oct. 15, 2008) (granting motion where argument applied equally to adopting defendants, no prejudice was found, and it promoted judicial economy to join the arguments).

[7] This judgment was appealed.  *Fuller I* (ECF 500).

custom.[8]  *See Finch v. City of Vernon*, 877 F.2d 1497, 1502-03 (11th Cir. 1989) ("In this case, the district court, applying a federal rule of damages, correctly held the City jointly and severally liable for the damages Finch suffered from the wrongful discharge.").  But the mere existence of a policy or custom *does not increase or alter the amount of damages suffered by a plaintiff*.  Instead, a finding of municipal liability simply provides an avenue to seek recovery from the municipality. Accordingly, awarding compensatory damages for both the alleged constitutional violation (retaliation), as well as for the existence of a municipal policy or practice giving rise to that violation, would impermissibly constitute duplicate awards for the same injury.

The prohibition against such duplicative awards was demonstrated clearly in *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293 (7th Cir. 2010).  There, the court considered whether a jury verdict was duplicative where it appeared to award damages for both the constitutional violation (denial of medical care) and a government's policy and practice.  The court ultimately determined the verdict could stand because it apportioned liability and did not award the same damages twice, which would have been prohibited as a matter of law.  *Id.*  In *Thomas*, because "[t]he defendants were jointly and severally liable for one indivisible injury," "the damage award represent[ed] the amount required to compensate the plaintiff for that harm," and "[t]hat amount remains the same because it is tied to the injury itself." *Id.* at 312 (citations omitted).  The same is true here.  Because the alleged City officials' constitutional violations and the City's supposed "policy and practice" "result[] in the same injury," a jury may "not award compensatory damages twice for the same injury." *Id.*  At most, adding the City to this lawsuit (and indeed the other new defendants) adds "another source of collection," if the allegations were true (they are not) but "does not affect the amount of damages to which the plaintiff is entitled." *Id.*; *see also Elrod v. City of Chicago*, 2007 WL 3241352, at *3 (N.D. Ill. Nov. 1, 2007) ("If Plaintiffs prove that [individual defendant] violated their constitutional rights, they are not entitled to recover any additional compensatory damages from the City because of their *Monell* claims.") (citing *Spanish Action Comm. of Chicago v. City of Chicago*, 766 F.2d 315, 321 (7th Cir. 1985)); *Almaraz v. Haleas*, 602 F. Supp. 2d 920, 926 (N.D. Ill. 2008) (considering bifurcation, holding, "*Monell* would only be an alternative means of holding the City liable for the false arrest and would not increase or decrease the damages—nominal or compensatory—that plaintiff is entitled to receive for his injuries.").

---

[8] Here, Plaintiffs have failed to make this showing for the reasons discussed in Section V, *infra.*

Accordingly, Plaintiffs cannot seek duplicative compensatory damages here against the City to those already awarded against Carollo personally for the same alleged injury in *Fuller I*.

**V.      Plaintiffs have failed to state a *Monell* claim for municipal liability because they do not and cannot plausibly allege a City policy or custom.**

To the extent the Court finds Plaintiffs are not precluded from suing the City on their *Fuller I* claims, Plaintiffs' case against the City requires the existence of a policy or custom targeting them in violation of their constitutional rights.[9]  This is because "only deprivations undertaken pursuant to governmental 'custom' or 'policy' may lead to the imposition of governmental liability."  *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1307 (11th Cir. 2001) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 663 n. 7 (1978)).

Plaintiffs' allegations fail to meet this exacting standard.  "The Supreme Court has placed strict limitations on municipal liability under § 1983."  *Grech v. Clayton Cnty, Ga.*, 335 F. 3d 1326, 1329 (11th Cir. 2003).  Municipal liability under Section 1983 does not exist for an "injury solely inflicted by its employees or agents."  *Monell*, 436 U.S. at 694.  A plaintiff must allege facts showing: "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation."  *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).  The policy or custom must be the "moving force" behind the constitutional deprivation for there to be causation.  *Monell*, 436 U.S. at 690-94.

Plaintiffs have failed to state a *Monell* claim for three primary reasons: (1) Plaintiffs have not plausibly alleged the existence of a policy or custom underlying the alleged constitutional violation; (2) Plaintiffs have failed to claim the alleged policy or custom is the "moving force" causing the violation; and (3) Plaintiffs have not plausibly alleged that any single decision from any official policymaker established an unconstitutional municipal policy here.

**A.      The City ordinances are facially neutral and constitutional and cannot support a *Monell* claim.**

A plaintiff may establish a municipal policy or custom through one of two methods: "(1) an officially promulgated policy or (2) an unofficial custom or practice of the [municipality] shown through the repeated acts of a final policy maker for the [municipality]."  *Grech*, 335 F.3d at 1329 (citing *Monell*, 436 U.S. at 694).  A policy or custom "is established by showing a persistent and

---

[9] Should the Court grant the City's motion to dismiss as to the absence of a First Amendment claim, the claim for municipal liability should also be dismissed on that basis.

widespread practice and an entity's actual or constructive knowledge of such customs, though the custom need not receive formal approval." *German v. Broward Cty. Sheriff's Office*, 315 F. App'x 773, 776 (11th Cir. 2009) (citing *Depew v. City of St. Marys, Ga.*, 787 F.2d 1496, 1499 (11th Cir. 1986)).  However, "isolated incidents are insufficient to establish a custom or policy."  *Id.*

Plaintiffs fail to plausibly allege an officially promulgated policy or unofficial custom. FAC ¶¶ 166-70.  Contradicting *Fuller I*, Plaintiffs allege Mr. Carollo, Ms. Mendez, and Ms. Dooley created "an official policy of targeting Plaintiffs on Carollo's behalf for political retaliation" and also created "a pervasive custom of targeting Plaintiffs on Carollo's behalf for political retaliation."  *Id.* ¶¶ 166, 172.  However, the specifics of this alleged "official policy" are conclusory and lack plausibility because they are facially neutral.  The supposed policies implemented in violation of federal law "took the forms of a) administrative policy changes; b) [t]he City's emails that referred to the 'Carollo Investigation' of Plaintiffs' properties; and c) the ordinances sponsored by Carollo directly targeting Plaintiffs' properties."  *Id.* ¶ 170.  The alleged "policy changes" and "ordinances"  include:

> (1) the February 14, 2019 City Commission resolution directing the City Attorney to investigate to address code enforcement for "violations relating to no certificate of use, certificate of use obtained under false pretenses and/or properties with violations that pose life-safety issues, and initiate injunctive proceedings against said properties until the properties are brought into compliance," *id.* ¶¶ 57, 166;

> (2) the existence of Ordinance Nos. 13941, 13936, 14057, 14115, and 14118 by the City Commission, regarding outdoor music, revocations of certificates of use for code violations, capping mitigation of fines, food trucks, and penalties for allowing "historically designated structures" to require demolition, *id.* ¶¶ 85, 86 (Table), 101-04, 121, 143, 221, 234, 272, 325, 357, 385, 386, 398, 422, 476, 477, 558; and

> (3) administrative policy changes, without attribution to a policy maker, revoking "policy permitting unsafe structures to enter into compliance agreements with property owners" to "allow only the Unsafe Structure Panel to enter into compliance agreements" (previously attributed to Assistant City Attorney Dooley, *see* ECF 1 ¶ 122) and revoking "policy permitting dual occupancies within one venue" (the relevance of which is not referenced), FAC ¶¶ 86 (Table), 92.

Multiple "policy changes" allegedly "devised" by individual Defendants were, in fact, references to ordinances passed by the City Commission, rather than "passed" by the individual Defendants. *See id.* ¶¶ 85 (referencing ordinances "sponsored" by Carollo), 101, 221, 234, 272, 325, 357, 385, 398 (referencing policy "devised" or "passed" by "the City," "Carollo, Noriega, Mendez, Dooley, and Marrero," "and Diaz," describing Ordinance No. 13936), 121, 476 (referencing Ordinance No.

14118 "passed" by the City, Carollo, Noriega, Mendez, Dooley, Marrero and Diaz), 143 (referencing Ordinance No. 13936 as "created by" Goldberg), 221 (referencing Ordinance No. 13941 as "sponsored" by "Defendants"), 386, 422, 477, 558 (referencing Ordinance No. 14057 as "passed" by Carollo, Noriega, Mendez, Dooley, Marrero and Diaz).

However, these alleged retaliatory policies reveal facially neutral and general instructions to address code violations and unsafe conditions, not any directed official City policy of political retaliation.  These statements of policy bear no resemblance to other instances of a formal municipal policy that were found to satisfy the *Monell* standard.  For instance, in *Monell*, the defendant agencies' policy requiring pregnant employees to take unnecessary, unpaid maternity leave violated the Fourteenth Amendment's Equal Protection Clause.  436 U.S. at 661-62; *see also Little v. City of N. Miami*, 805 F.2d 962, 964, 967 (11th Cir. 1986) (addressing city council resolution publicly censuring professor directly for improper use of funds in retaliation for representation of an adverse party).

As to the ordinances and resolution passed by the City Commission, which do not "regulate speech or other expressive activity at all" nor "single out any particular person or group," Plaintiffs face a clear hurdle.  *See O'Boyle v. Sweetapple*, 187 F. Supp. 3d 1365, 1373-75 (S.D. Fla. 2016). The Eleventh Circuit has addressed whether "the improper subjective motivation (which at this stage the [c]ourt accepts as true) for enacting an otherwise neutral ordinance can serve as a basis for finding a First Amendment violation," and "answered that question in the negative."  *Id.* at 1373 (citing *Ala. Educ. Ass'n v. Bentley (In re Hubbard)*, 803 F.3d 1298, 1312 (11th Cir. 2015)). The Eleventh Circuit applied *United States v. O'Brien*, 391 U.S. 367 (1968) to hold "that, when a statute is facially constitutional, a plaintiff cannot bring a free-speech challenge by claiming that the lawmakers who passed it acted with a constitutionally impermissible purpose."  In *O'Boyle v. Sweetapple*, this district confirmed that the *O'Brien* rule applies to issues like "a facially-neutral, generally-applicable parking ordinance."  187 F. Supp. 3d at 1375; *see also Walt Disney Parks & Resorts U.S., Inc. v. DeSantis*, 2024 WL 442546, at *6 (N.D. Fla. Jan. 31, 2024) ("Regardless, nothing in *Hubbard* suggests it is inapplicable when there is significant—or even overwhelming— evidence of illicit motivation. It says instead that there is no cognizable claim. Period.").

These facially neutral policies are insufficient to state a claim for municipal liability. Additionally, Plaintiffs' allegations are insufficient because they do not allege which specific purported policy or custom affected each of them.

**B. Plaintiffs have also not alleged that that the City was the "moving force" behind their injury.**

It is not enough to merely identify conduct attributable to the municipality. Plaintiffs must also demonstrate that because of deliberate conduct, the municipality was the "moving force" behind the alleged injury. *Monell*, 436 U.S. at 690–94; *Vineyard v. Cnty. of Murray, Ga.*, 990 F.2d 1207, 1213 (11th Cir. 1993) ("The existence of an official policy is insufficient to impose liability on the county. Vineyard must also show that the policy was the moving force of the constitutional violation.") (citation omitted). "That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 397 (1997). "To meet this requirement, the plaintiff must show both causation-in-fact and proximate causation." *Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008); *see also Cash v. Cnty. of Erie*, 654 F.3d 324, 342 (2d Cir. 2011).

Announcing policies and ordinances to address code violations and unsafe conditions in terms that, even in the FAC, are described neutrally, does not provide a sufficient basis to infer that the City is the "moving force" or proximate cause behind the alleged selective enforcement of such policies and ordinances. None of the listed "policies" above violate federal law or direct any employees to do so. Plaintiffs' allegations conclusorily attributing this "policy" to the City are legally insufficient given their more specific allegations as to the neutral and apparently legal nature of each policy and ordinance. Moreover, as argued in City Manager Noriega's Motion, the FAC admits that the City had probable cause to issue the violations. *See* Defendant Arthur Noriega's Motion at pp. 18-20. Probable cause defeats a claim under Section 1983. *See, e.g., O'Boyle*, 2023 WL 2579134, at *4.

Furthermore, in *Fuller I*, [10] Plaintiffs Fuller and Pinilla sued Commissioner Carollo *in his individual capacity* for allegedly instigating code enforcement actions against Fuller's and Pinilla's businesses, including those complained of in the FAC at issue in this matter. *Fuller I* went to trial, and a jury verdict was returned in favor of Fuller and Pinilla on June 1, 2023. *See Fuller I* (ECF 470). Nowhere on the Verdict Form did Fuller and Pinilla seek a determination from the jury, and the jury never made any findings on, any *Monell* issue. *See Fuller I* (ECF 618). Accordingly,

---

[10] As discussed in Section I, *supra*, Fuller and Pinilla abandoned their claims against the City, and this serves as an independent basis for dismissal of the FAC.

liability and damages in *Fuller I* were pursued and awarded only against Carollo *as an individual*. It is inherently inconsistent for Plaintiffs to now claim in this action that *the same code enforcement actions at issue* in *Fuller I* are the result of a City of Miami policy or practice, when Plaintiffs Fuller and Pinilla in *Fuller I* sought and received a jury finding that the same actions were the responsibility of and driven by Carollo's personal motives.[11] Based on Plaintiffs' irreconcilable allegations in *Fuller I*, dismissal of this case is proper. Plaintiffs have provided no basis to find that the City was the "moving force" behind the alleged violations, and this lack of causation warrants dismissal as well.

### C. Plaintiffs have not plausibly alleged that any single decision from any official policymaker established an unconstitutional municipal policy.

Plaintiffs attempt to assert that a "single decision by an official policymaker can establish the existence of an unconstitutional municipal policy," but this argument fails on the facts of this case. *See* FAC ¶¶ 183-87. Plaintiffs allege that Commissioner Carollo, City Attorney Mendez, and City Manager Noriega had "final policymaking authority" because the Mendez and Noriega's actions "were completely insulated from review by the City Commission" and Carollo "could not be reviewed or controlled by anyone." FAC ¶¶ 184-87. This assertion is baseless. Plaintiffs provide no legal basis to claim these individuals have final policymaking authority under state law that led to insulation from review in the areas at issue.

There are four guiding principles that determine when a single act is enough to establish an unconstitutional municipal policy. *Davis v. City of Apopka*, 424 F. Supp. 3d 1161, 1173 (M.D. Fla. 2019) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988)). First, "municipalities may be held liable under § 1983 only for acts for which the municipality itself is actually responsible . . ." *Praprotnik*, 485 U.S. at 123 (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986)). Second, municipalities may be subject to Section 1983 liability only by the acts of "those municipal officials who have 'final policymaking authority.'" *Id.* (quoting *Pembaur*, 475 U.S. at 482-83). Third, state law determines whether an official has "final policy making

---

[11] If the Court rules for Commissioner Carollo that the claims against him are barred by res judicata due to the Final Judgment in *Fuller I*, at pp. 1-11, because Plaintiffs rely on the claims against Carollo as the underlying constitutional violation to support their claim of a municipal policy, dismissal of those claims would at the very least change the FAC in this matter significantly, and if not fatal to any case against the City, would require reassessment of whether there is sufficient matter in the FAC to make out any claim against the City. (Further, dismissal of the claims against any of the individual Defendants may impact the claim against the City.)

authority." *Id.*  Fourth, "the challenged action must have been taken pursuant to a policy adopted by the official or officials responsible under state law for making policy in *that area* of the city's business." *Id.* (emphasis in original).

Under the City Charter, the City Commission is the body authorized to "exercise all powers conferred upon the [C]ity except as hereinafter provided," and it consists of five members, which *together* pass ordinances and adopt regulations, constituting City policy.  City Charter, § 4(a). Importantly, no City commissioner acting alone has any express or implied authority to make policy on behalf of the City.  The Mayor appoints a chief administrative officer known as the City Manager.  *Id.*  The City Manager is "responsible for the administration of all units of the city government under the city manager's jurisdiction, and for carrying out policies adopted by the city commission." *Id*. § 15.  He or she also is charged with seeing that the "laws and ordinances be enforced," among other things.  *Id.* § 16(a).  The Charter provides insulated authority to the City Manager in only one area: the Commission and the Mayor cannot "in any manner interfere . . . in the appointment of officers and employees in the administrative service." *See id.* § 4(d).  The City Commission has the power to appoint the City Attorney.  *Id.* § 4(e).  The City Attorney shall be the legal advisor of and attorney and counsel for the City, and for all officers and departments thereof in matters relating to their official duties.  *Id.* § 21.  The City Charter provides insulated authority to the City Attorney as to the appointment, removal, and salary of assistant city attorneys. *Id.* § 36(c)(1)(C).  Additionally, in Section 18-232 of the City Code, the City Commission delegated to the City Attorney the authority to "perform or supervise the performance of all legal services," subject to the Commission's direction.  City Code § 18-232; City Charter § 21.

While Commissioner Carollo, City Attorney Mendez, and City Manager Noriega each have certain limited authority under the City Charter, that does not establish them separately or collectively as policymaking officials who *on their own* took or adopted action establishing a policy in their assigned area of responsibility.  *See Praprotnik*, 485 U.S. at 123, *supra*.  The Eleventh Circuit's decision in *Martinez v. City of Opa-Locka, Fla.*, 971 F.2d 708, 714 (11th Cir. 1992), is instructive.  In *Martinez*, the Eleventh Circuit examined whether the Opa-Locka city manager was completely insulated from review.  The court looked to the city's charter which, similar to the City Charter provisions above, provided that policy matters were vested in the commission, and focused on specific language providing that the commission could not "in any manner take part in the appointment or removal of officers and employes [sic] in the administrative

14

service of the city." *Id.* That provision in the Opa-Locka charter specifically insulated the city manager's decision to hire or fire administrative personnel from review by the commission. *Id.*

Here, by contrast, Plaintiffs cannot show that Commissioner Carollo, City Attorney Mendez, and City Manager Noriega have final policymaking authority. As detailed in Section V.A., *supra*, there are three groups of actions Plaintiffs reference as constituting operative City policy. The alleged conduct consisted of facially neutral, city-wide actions, not specific to any Plaintiff. *See* FAC ¶¶ 57, 85, 86 (Table), 92, 101-04, 121, 143, 166, 221, 234, 272, 325, 357, 385, 386, 398, 422, 476, 477, 558. Almost all were ordinances or resolutions issued by the City Commission, not just Commissioner Carollo, and only the two administrative policy changes were not attributed to any policymaker in the FAC (one was previously alleged to be a policy change by Dooley, and the other has no apparent relevance to the FAC). *See id.*

Looking first at the action that may be attributed to Dooley, the City Charter does not grant unlimited, unilateral decision-making authority to an Assistant City Attorney. *See* City Charter §§ 4(d), 36(c)(1)(C). As to the two categories of actions taken by the City Commission, while Plaintiffs attribute these actions to Commissioner Carollo or the other individual Defendants, the other individuals are not commissioners, and Carollo does not possess final policymaking authority by himself, nor is there any allegation that the Commission adopted his allegedly unconstitutional motives. It is legally insufficient to impute his personal motives to the entire City Commission, nor does the FAC make any attempt to do so or allege an improper motive of the City Commission as a whole, and the actions themselves were allegedly city-wide and not specific to Plaintiffs. *See Matthews v. Columbia Cnty.*, 294 F.3d 1294, 1297 (11th Cir. 2002) ("Because policymaking authority rests with the Commission as an entity, the County can be subject to liability only if the Commission itself acted with an unconstitutional motive. *An unconstitutional motive on the part of one member of a three-member majority is insufficient to impute an unconstitutional motive to the Commission as a whole.*") (citing *Mason v. Village of El Portal*, 240 F.3d 1337, 1339 (11th Cir. 2001)) (emphasis added). Courts in this district have already recognized that an individual commissioner does not have final policymaking authority for the City for purposes of *Monell*. *See Belizaire v. City of Miami*, 2013 WL 5780396, at *8 (S.D. Fla. Oct. 25, 2013) ("The final policy-making authority for the City of Miami rests solely with the *Office of the Mayor or City Commissioners*.") (citing *Wilson ex rel. Est. of Wilson v. Miami-Dade Cnty.*, 2005 WL 3597737, at *8 (S.D. Fla. Sept. 19, 2005), *on reconsideration in part* (Oct. 11, 2005) (emphasis added)).

Further, even if an official *was* vested with final policymaking authority, "not every act of that official will subject the city to liability under section 1983." *See Manor Healthcare Corp. v. Lomelo*, 929 F.2d 633, 638 (11th Cir. 1991) ("The city of Sunrise neither adopted nor ratified Lomelo's bribery and extortive activities. Lomelo conducted these activities to benefit himself and his friends, not the city. To hold the city liable for Lomelo's actions in this case would in essence subject the city to vicarious liability for Lomelo's personal acts."). Ultimately, Plaintiffs have not provided a sufficient basis to allege that the City, or even any Defendant, had and used final policymaking authority to carry out the alleged constitutional violations.

**VI.    Plaintiffs have failed to plead a First Amendment claim.**

The City adopts the arguments presented in Commissioner Carollo's motion to dismiss, Sections II.B. and II.D., and City Manager Noriega's motion to dismiss, Sections II, V and VI, that (1) the FAC remains an impermissible shotgun pleading; (2) correcting the FAC would leave the Plaintiff entities unable to state a claim that their constitutional rights were violated; (3) Plaintiffs have no claim because the FAC alleges that the referenced enforcement actions were justified, *see O'Boyle v. Com. Grp., Inc.*, 2023 WL 2579134, at *4 (11th Cir. Mar. 21, 2023); (4) the Plaintiffs fail to state a claim for retaliation based on freedom of association, *see McCabe v. Sharrett*, 12 F.3d 1558, 1562–63 (11th Cir. 1994); and (5) Plaintiffs fail to state a claim for retaliation based on speech, *see Bennett v. Hendrix*, 423 F.3d 1247, 1250–54 (11th Cir. 2005). Defendant Joe Carollo's Motion at 11-19; Defendant Arthur Noriega's Motion at 2-4, 9-20. Further, to satisfy the first prong of a First Amendment retaliation claim, each Plaintiff must allege that he or it individually engaged in constitutionally protected activity, and Plaintiffs did not do so. *See 145 Fisk, LLC v. Nicklas*, 986 F.3d 759, 766 (7th Cir. 2021) (affirming dismissal of retaliation claims asserted by plaintiff business because it was not the person that engaged in protected activity); *Colonies Partners LP v. Cnty. of San Bernardino*, 2020 WL 5102160, at *28 (C.D. Cal. July 28, 2020) ("The Court therefore agrees with Defendants that Plaintiffs cannot assert retaliation claims based on one-another's protected conduct, even if it is harmed by the asserted retaliation.").

**VII.   Plaintiffs have failed to allege a conspiracy.**

Plaintiffs have brought a count for conspiracy against the City. Plaintiffs' conspiracy claims should be dismissed because they are fatally vague and because they impermissibly attempt to allege the existence of a conspiracy between the City and its agents, which is legally prohibited.

[12] The elements of a prima facie case of Section 1983 conspiracy are: (1) a violation of the plaintiff's federal rights, and (2) an agreement among the defendants to violate those rights. *See Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1260 (11th Cir. 2010) ("A plaintiff may state a § 1983 claim for conspiracy to violate constitutional rights by showing a conspiracy existed that resulted in the actual denial of some underlying constitutional right."). However, "'the intracorporate conspiracy doctrine holds that acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy.'" *See Grider*, 618 F.3d at 1261 (quoting *McAndrew v. Lockheed Martin Corp.,* 206 F.3d 1031, 1036 (11th Cir. 2000) (*en banc*)). "'[U]nder the doctrine, a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves.'" *Id.* "The doctrine applies to public entities such as the City and its personnel." *Id.* (citation omitted).

First, the existence of a conspiracy is insufficiently alleged as to Defendants, who Plaintiffs lumped together in the FAC. Plaintiffs allege without specificity that "Defendants reached an agreement to deny Plaintiffs their constitutional right to free speech and freedom of association, in retaliation for" certain allegedly protected conduct. FAC ¶ 661. Plaintiffs further allege that Defendants "possessed an independent personal stake" in doing so. *Id.* ¶ 662. However, Plaintiffs must allege that the parties reached an agreement to deprive them of their constitutional rights and committed an act in furtherance of that conspiracy. *Grider*, 618 F.3d at 1261 (citing *Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir. 1990). Here, they fail to do so. The vague assertion that "Defendants" as a group "reached an agreement" does not fairly provide notice of what would constitute an agreement to conspire, and the claim should be dismissed on this basis alone.

Second, Plaintiffs allege that all Defendants were "at all relevant times" employees and/or actors on behalf of the City, and thus the intracorporate conspiracy doctrine applies. *Id.* ¶¶ 19-30. The relevant issue in determining its application is whether an employee was acting within the scope of their employment, *McAndrew*, 206 F.3d at 1036, and Plaintiffs do not allege Defendants were acting outside of the scope of their employment as they did in *Fuller I*. Whether an individual was acting within the scope of his or her employment requires a determination that the "[individual] was performing a function that, but for the alleged constitutional infirmity, was

---

[12] Should the Court grant the City's motion to dismiss the municipal policy claim, the claim for conspiracy should also be dismissed on that basis.

within the ambit of the [individual's] scope of authority (i.e., job-related duties) and in furtherance of the employer's business." *Villar v. City of Aventura*, 2014 WL 3400988, at * 8 (S.D. Fla. July 11, 2014) (quoting *Grider*, 618 F.3d at 1261). Because a municipality cannot conspire with itself, Plaintiffs' conspiracy claim should be dismissed. [13]

Plaintiffs' allegations do not fall within any exception to the intracorporate conspiracy doctrine. The Eleventh Circuit has explicitly "declined to adopt any exceptions to the intracorporate conspiracy doctrine where corporate employees conspire for their own personal benefit or when they engage in a criminal conspiracy." *Williamson v. Alabama Dep't of Mental Health & Mental Retardation*, 2023 WL 5287873, at *10 (11th Cir. Aug. 17, 2023) (citing *Dickerson v. Alachua Cnty.. Comm'n*, 200 F.3d 761, 769-70 (11th Cir. 2000); *Grider*, 618 F.3d at 1263 ("Because none of the exceptions discussed in *Dickerson* would apply on the facts of this case, we, like the Court in *Dickerson*, do not reach the issue of whether to adopt them.")). In the absence of any exception recognized and adopted by the Eleventh Circuit, the conspiracy claim is barred as a matter of law. *Harris v. City of Boynton Beach*, 2016 WL 3971409, at *9 (S.D. Fla. July 25, 2016) ("[W]hile the Eleventh Circuit subsequently 'recognized [in the § 1985(2) context] an exception to the doctrine for criminal conspiracies . . . ,' it has yet to adopt any other exception. In the absence of any applicable exception recognized and adopted by the Eleventh Circuit, Count XIX is barred by the intracorporate conspiracy doctrine.") (citations omitted).

## VIII.   Plaintiffs' case should be dismissed for improper claim-splitting, or alternatively, the Court should exercise *Colorado River* abstention regarding *Tower Hotel*.

The Court should also dismiss this FAC because it violates the claim-splitting doctrine, which "requires a plaintiff to assert all of its causes of action arising from a common set of facts in one lawsuit." *See Vanover v. NCO Fin. Servs., Inc.*, 857 F.3d 833, 841 (11th Cir. 2017). "By spreading claims around in multiple lawsuits in other courts or before other judges, parties waste 'scarce judicial resources' and undermine 'the efficient and comprehensive disposition of cases.'" *Id.* Claim-splitting "applies where a second suit has been filed before the first suit has reached a final judgment." *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1236 (11th Cir. 2021). Courts examine "'(1) whether the case involves the same parties and their privies, and (2) whether separate

---

[13] Plaintiffs allege City Manager Noriega "was not a City employee . . . when he agreed to engage in the conspiracy." FAC ¶ 665. However, this allegation impermissibly contradicts the allegation that he "at all relevant times was the City Manager" and also falls outside the statute of limitations. *See id.* ¶¶ 20, 491 (referencing events in 2018).

cases arise from the same transaction or series of transactions.'" *Vanover*, 857 F.3d at 841-42.

On the first factor, "[p]rivity exists where a party to the original suit is so closely aligned to a nonparty's interest as to be his virtual representative." *Sound Around, Inc. v. O'Donnell*, 2023 WL 2306017, at *2 (S.D. Fla. Mar. 1, 2023). The City is or was a defendant in each of the three actions. As to the Plaintiffs, Fuller and Pinilla are plaintiffs in *Fuller III*, five of the Plaintiff entities are plaintiffs in *Tower Hotel*, two of the Plaintiff entities are plaintiffs in *Mad Room*, and all of the Plaintiff entities in each case are entities owned, operated, or controlled by Fuller and/or Pinilla. *See* Exs. 2-4; *Sound Around*, 2023 WL 2306017, at *2 (concluding relationship between individual defendant and LLCs supported finding of privity where he was primary decision maker, owner, and president of company that managed, owned, and controlled the LLCs).

As for the second factor, "[s]uccessive causes of action arise from the same transaction or series of transactions when the two actions are based on the same nucleus of operative facts." *Vanover*, 857 F.3d at 842, this action is based on the same nucleus of operative facts as the *Mad Room*, *Tower Hotel*, and *Fuller III* actions. Each action shares the common nexus of the alleged misconduct committed in furtherance of Commissioner Carollo's alleged vendetta against Plaintiffs Fuller and Pinilla. *See, e.g.,* FAC at 1-2; Ex. 2 ¶¶ 28-29; Ex. 3 ¶¶ 1-2, 12-14; Ex. 4 ¶¶ 3-5, 15-17. In fact, many of Plaintiffs' new allegations regarding Taquerias and Ball & Chain (with the factually untrue pretense that the alleged actions harmed Little Havana Arts Building and La Gran Fiesta) seem to be pulled directly from the *Mad Room* amended complaint. *Compare* Ex. 2. Other allegation regarding Tower Hotel, Beatstik, El Shopping, and Piedras Villas appear to match the *Tower Hotel* third amended complaint. *Compare* Ex. 3. Accordingly, the splitting of Plaintiffs' claims across these suits warrants dismissal with prejudice for improper claim-splitting.

Alternatively, the Court should abstain under *Colorado River* where, as here, there is overlap in issues with the *Tower Hotel* matter, [14] which was filed prior to this action, pertains to Plaintiffs Tower Hotel, Piedras Villas, Beatstik, El Shopping, and Yo Amo Calle Siete, and may moot certain relief sought. Under *Colorado River*, "[t]he Supreme Court has recognized that in a few exceptional cases consideration of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation also permit the federal court to decline jurisdiction in favor of concurrent state proceedings." *Redner v. City of Tampa*, 723 F.

---

[14] The state trial court denied Plaintiffs' motion for preliminary injunction, and the matter is now on appeal. Tower Hotel (Dkt. 142, 146).

Supp. 1448, 1453 (M.D. Fla. 1989) (internal quotation and citation omitted). Courts have established six factors to determine the existence of exceptional circumstances, including "the potential for piecemeal litigation." *See id*. "A threshold requirement for application of the *Colorado River* [abstention] doctrine is that the federal and state cases be sufficiently parallel." *Reiseck v. Universal Communications of Miami, Inc.*, 141 F. Supp. 3d 1295, 1304 (S.D. Fla. 2015). The *Tower Hotel* case is sufficiently parallel to satisfy the threshold requirement. The outcome will address an issue at the core of this lawsuit—whether the alleged actions of City officials related to the *Tower Hotel* were proper and required under the facts presented. The potential for piecemeal litigation also favors abstention here. If the actions of City officials were required, those acts could not possibly meet the high standards for the constitutional violations alleged.

**IX.     Plaintiffs' claims are barred by the applicable statute of limitations.**

The City adopts the argument presented in City Manager Noriega's motion, Section VIII, that Plaintiffs' claims are barred by Florida's four-year statute of limitations. *See* Defendant Arthur Noriega's Motion at pp. 23-25.

**X.      Punitive damages are not available against the City.**

The FAC seeks punitive damages against all Defendants as an undifferentiated group. *See* FAC at 2, ¶¶ 241, 280, 292, 328, 343, 388, 424, 480, 512, 546, 574, 585, 603, 614, 620, 640, 671. However, as a matter of law, punitive damages cannot be recovered from the City. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981); *see also Colvin v. McDougall*, 62 F.3d 1316, 1319 (11th Cir. 1995) (holding that "punitive damages are generally not allowed against a municipality" and that "a punitive damage award against [the sheriff] in his official capacity" is likewise barred); *Johnson v. Israel*, 576 F. Supp. 3d 1231, 1266 (S.D. Fla. 2021) (listing cases). Accordingly, any punitive damages claim is not viable against the City and should be dismissed.

**XI.     Certain allegations of the FAC should be stricken.**

The City adopts the argument presented in Director of Zoning Goldberg's motion under Fed. R. Civ. P. 12(f). *See* Defendant Daniel Goldberg's Motion at pp. 2, 5-9.

<u>**CONCLUSION**</u>

For the foregoing reasons, Defendant City of Miami respectfully requests that the Court grant its motion to dismiss the First Amended Complaint and grant it such other and further relief as the Court deems just and proper.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(b)(2), the City of Miami respectfully requests a two-hour hearing on its motion to dismiss.  The City's motion to dismiss raises a number of complex issues, and oral argument would be beneficial to the Court.

Respectfully submitted,

/s/ *Angel A. Cortiñas*

Angel A. Cortiñas, FBN 797529
DENTONS US LLP
1 Alhambra Plaza, Penthouse
Coral Gables, Florida 33134
Telephone: 305-537-0015
angel.cortinas@dentons.com

Raquel A. Rodriguez, FBN 511439
BUCHANAN INGERSOLL & ROONEY PC
One Biscayne Tower
2 S. Biscayne Blvd, Ste. 1500
Miami, Florida 33131-1822
Telephone: 305-347-4080
raquel.rodriguez@bipc.com

*Counsel for Defendant City of Miami*

## CERTIFICATE OF SERVICE

I hereby certify that on February 29, 2024, the foregoing was filed using the Court's CM/ECF system and served via email or transmission of Notices of Electronic Filing generated by CM/ECF to all counsel of record by the Court's CM/ECF system.

/s/ *Angel A. Cortiñas*