**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 1:23-cv-24251-FAM**

WILLIAM FULLER, et al.,

       Plaintiffs,

v.

THE CITY OF MIAMI, et al.,

       Defendants.

_____/

### DEFENDANT DANIEL GOLDBERG'S MOTION TO DISMISS FIRST AMENDED COMPLAINT AND TO DISMISS/STRIKE FIRST AMENDED COMPLAINT AS SCANDALOUS AND IMPERTINENT AND INCORPORATED MEMORANDUM OF LAW

Pursuant to Fed. R. Civ. P. 12(b) (6), and 12(f), Defendant DANIEL S. GOLDBERG ("Mr. Goldberg") moves to dismiss Plaintiffs' First Amended Complaint ("FAC") [D.E. 77] for failure to state a claim upon which relief may be granted and to dismiss/strike it due to its overloading of redundant, immaterial, impertinent and scandalous allegations and states as follows:

### INTRODUCTION

In or about late March 2021 to April 2021, Mr. Goldberg became the City of Miami Director of Building & Zoning Department ("B&Z Dept."). Plaintiffs have filed a 17-count[1] FAC against all Defendants which, in a broad-brush stroke, claims a vendetta-motivated effort by certain City of Miami ("City") officials to weaponize the City's B&Z Dept. rules and regulations to pressure and economically strangle Plaintiffs' businesses within the City in retaliation for Plaintiffs supporting several political candidate opponents to Joe Carollo ("Carollo") the District 3 Commissioner for the City.

---

[1]   The counts are numbered by Roman numerals. The FAC mistakenly identifies the ninth count as VII.

**STATUS CONFERENCE OF FEBRUARY 2, 2024**

At a status conference on February 2, 2024, this Honorable Court - in an effort to get the pleadings resolved in an efficient manner – directed Plaintiff's to file a FAC and ordered a more detailed and particularized complaint as to the conduct of each Defendant. On February 23, 2024, Plaintiff filed their FAC [D.E. 77].  Respectfully, all Plaintiffs did in this new 124- page pleading (with 671 fact allegation paragraphs) was to "rearrange the chairs on the deck of the Titanic", to quote from one of my co-counsel in this case. Separately, and quite disappointingly, Plaintiffs now inject a host of vitriolic allegations using several distasteful and outrageous descriptors for the Defendants – and described more fully below - as a basis to be able to use the FAC filed in the public record to "silent" Local Rule 77.2 (g) of the Southern District of Florida which prohibits lawyers from publicly discussing – which would include a press conference - pending litigation, "other than a quantitative form or reference to public records". But, in this particular case, the Court *should* admonish Plaintiffs' counsel because here, their "end game" is clear and improperly calculated to prejudice the defendant in public. The best way to do so is to hold the press conference such as the one that was scheduled for and actually occurred at 2:50 pm on Monday February 26, 2024, not coincidentally, the first work day after their FAC was filed. We ask the court for the remedies; one to strike the redundant, immaterial, impertinent and scandalous paragraphs identifies below. Two publicly admonish Plaintiffs, counsel to – such pleadings misbehavior and direct that the Local Rule will be enforced. Below, we identify the specific paragraphs, in the FAC that are *redundant*, and in *scandalous* and in *impertinent*, and in *immaterial*. We cover the entire FAC for the benefit of all of the Defendants they all are affected thereby.

2

## THE FIRST AMENDED COMPLAINT

In each count heading, the FAC identifies which defendant(s) it applies to. Specifically, and only as to Mr. Goldberg, **Count VII** alleges a claim under Title 42 U.S.C. §1983, namely a substantive violation of Plaintiffs' First Amendment rights regarding free speech and freedom of association in relation to the "El Shopping Property".

**Count VII** contains ¶**390-425** Goldberg is accused of harassing a plaintiff without saying whether it was Fuller or Pinella. It claims that this was done "*with the attention of causing plaintiff the most amount of harm*" again without identifying which plaintiff was harmed. The paragraph fails to allege the actual act by Goldberg that constituted harassment. Goldberg is mentioned a second time in ¶**418** as having revoked every certificate of use for El Shopping's tenants. But that paragraph does not allege that the revocation was non-discretionary or otherwise illegal. Goldberg is then next mentioned in ¶**419** which alleges "*that the reconvocation (sic.) of their Certificate of Use not only constituted a political firestorm but was also in violation of the requirements that the Miami-Dade County Public Schools must be informed before any revocation of a school…*" First, plaintiffs fail to allege what these specific Miami-Dade County Public School requirements was violated. Undoubtedly, the Miami-Dade County Public School system has hundreds if not thousands of requirements. Next, no school was revoked as alleged in that paragraph.[2] ¶**420** states that "*[T]hereafter, Goldberg acting in furtherance of Corollo's scheme bottlenecked plaintiff's tenants by having the tenants come one-by-one to apply for temporary permits*". There can be no question that government offices require organization in dealing with public requests and this paragraph does not allege how and why asking tenants to "*come one-by-one to apply for temporary*

---

[2] We assume that this is a scrivener's error and Plaintiff meant to write the Certificate of Use of a school. In any event, a continued reading of this paragraph claims that "*Carollo then had Goldberg to issue a temporary permit to the school*".

*permits*" was unreasonable. Indeed, it does not even allege how long it took for plaintiff's tenants to get through the alleged bottleneck. Was it one hour, was it one day, was it one week, or was it one month? How long was it?

**Count XV**, alleges a claim against "all Defendants" under Title 42 U.S.C. § 1983 alleging the same constitutional violation in relation to "The Barlington Group". But nowhere in that count do Plaintiffs ever name Mr. Goldberg. That count contains **¶616-621** and is a perfect example of a shotgun count within a pleading. **¶616** merely reincorporates prior **¶1-615**. **¶617** says, "*Barlington Group was targeted for its association with Plaintiffs Fuller and Pinella by which Defendants (sic.) violated its rights to free speech, association and assembly and to petition the government for redress of grievances*". This paragraph does not claim how and when Mr. Goldberg allegedly targeted the Barlington Group and/or how Mr. Goldberg violated such rights. **¶619** is merely conclusory, it says "*[A]ll Defendants through their knowing and willing actions have improperly caused Plaintiffs reputational damages*" A problem raised by this allegation is that the count only talks about Plaintiff The Barlington yet **¶619** talks about the reputational damages of all of the Plaintiffs and nowhere in the FAC does Plaintiff The Barlington allege that before the charged claims, it enjoyed any reputation, good, bad or neutral within the community. The count utterly fails to seek compensatory damages; it also fails to allege causation.

**Count XVI** contains **¶622-641.**  It is a claim by Plaintiffs Fuller and Pinilla against "all Defendants" under 42 U.S.C. §1983. Strikingly, Mr. Goldberg is not even named in the heading of that count (as he is in **Counts VII** and **XV**) nor within **¶622-641**. The only defendants named are the City of Miami, Carollo, Noriega, Mendez, Marrero and Diaz. We do not know whether **Counts XV** and **XVI** even apply to Mr. Goldberg.

**Count XVII** contains **¶642-671.** It is a conspiracy count. It does not identify a Title 42

U.S.C. §1983 claim but rather a "retaliation against Plaintiffs by "all Defendants" and only mentions Mr. Goldberg in ¶**653** which alleges, "*Defendant Dan Goldberg got his job as Director of Zoning in exchange for agreeing to participate in the conspiracy to violate Plaintiffs' constitutional rights*".  [D.E. 77 @ ¶643].  This count is fatally defective. The first element missing the commencement date of the conspiracy and its ending date, even if it is still ongoing. It fails to identify the specific underlying tort that was the subject of the conspiracy. It does not allege whether Mr. Goldberg was either a conspirator involved in the formation of the conspiracy with one or more person(s), or, he was generally aware of it and willfully agreed to join it at some later point in time, and if so, when. The count fails to identify the manner and means of the conspiracy. Last, it fails to allege one (or more) specific overt acts by one or more of the alleged conspirators and the ultimate goal of the conspiracy.

The FAC contains 671 factual allegations; Mr. Goldberg is first identified in ¶ **24** simply for personal jurisdiction purposes and then not mentioned again until Count VII.  In ¶ **142**, Mr. Goldberg is alleged to  be "*the mentee of Carollo's lawyer, Mark Sarnoff, and was put in place to do the bidding of Carollo and Mendez, his former boss with whom he spends Christmas Eve. Despite reporting directly to City Manager Art Noriega, Noriega never even bothered to interview Goldberg prior to Carollo and Mendez hiring him for Noriega*". In ¶**143**, Mr. Goldberg is alleged to have "*created a new City policy holding that a citation for work without a permit results in a revocation of the certificate of use ("CU") and the property in business will be shut down for not having a CU. Dan Goldberg went out of his way to use this new policy against El AXS Law Group PLLC Shopping, shutting down a [sic] parking garage that had been operating for 35 years in the same condition. Then, with the parking closed, Goldberg, asserting that there was not enough parking for the 30 tenants, revoked the CU's for each of those tenants, costing Plaintiffs*

*$15,000.00 per month. Remarkably, one tenant was a Miami Charter School with political connections who immediately complained to Joe Carollo, resulting in Goldberg restoring the CU for the one politically connected tenant and continuing to block all others".*

Mr. Goldberg was sued in his individual capacity even though the factual allegations in the FAC clearly demonstrate that he was acting in his official capacity as Director for the B&Z Dept. [D.E. 77].  In his motion to dismiss, Mr. Goldberg argues that: (1) he is entitled to absolute quasi-judicial immunity for enforcing the City's CU policy; and (2) he is entitled to qualified immunity because the allegations in the FAC fail to show that he violated a protected constitutional right.  As more specifically stated below, the FAC fails to allege sufficient facts to preclude the entitlement of absolute quasi-judicial immunity and qualified immunity raised by Mr. Goldberg.

### A.  STANDARD FOR MOTION TO STRIKE

Fed.R.Civ.P. 12(f) states: "*the court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter*".  Although Rule 12(f) technically provides relief as a "motion to dismiss", a court can also order the striking of the impertinent scandalous language, which, practically speaking, would require the filing of an amended complaint.  Regardless, the function of a motion to dismiss/strike is to avoid the expenditure of time and money that might arise from litigating spurious issues by dispensing with them early in the case. *Operating Engineers Local 324 Health Care Plan v. G&W Const. Company*,  783 F.3d 1045, 1050 (6th Cir. 2015) "Judges enjoy liberal discretion to strike pleadings under Rule 12(f). *BCJ Health Sys .v Columbia Casualty, Co*., 478 F.3d 908, 917 (8th Cir. 2007). In *Norman* v. *Century Trust Bank, Inc.* 2019 US Dist. Lexis 193705; 2019WL5847845 (November 7, 2019), the district court struck allegations there much like the ones inserted by the Plaintiffs' counsel which we identify.  Some of these comments, in Norman were: *"the buck stops right there"" the*

*alleged perceived Missouri government is an imposter parallel Missouri government scheme,*

*everyone is running a massive criminal double life in a parallel concealment scheme …".  "They*

*are not what they claim to be, they are all interstate extortion imposters".*  Indeed, in that case,

the district court noted that the Plaintiff was pro se and not governed by the rule of professional

conduct which, in Missouri, requires lawyers to maintain a professional and courteous attitude

towards all individuals in the legal system. While that rule is broader than Local Rule 77.2 (g), it

nevertheless violates the Florida Supreme court's requirements as cited herein.

Plaintiffs' counsel's use of such scandalous descriptions squarely violates no such rule and for that,

the additional cited paragraphs and referenced, FAC should be stricken. Plaintiffs; Salacious

descriptor are entirely irrelevant to the controversy and or they include personal attacks on the

parties and even their counsel and confuse the issues, they should be stricken. Which might make

for "juicy news", they demand the courts, the legal profession and publicly prejudice the

defendants in the community and for within local rule 77.2 (g) (2), (4) and (5).

## B. STANDARDS FOR LAWYERS

In 2011, the Florida Supreme Court amended its oath of attorney's admission to require

that attorneys taking the oath pledge to opposing parties and counsel "*fairness, integrity, and*

*civility, not only in court but also in written an oral communication*".  Plaintiffs' FAC wipes the

floor with that rule and is riddled with over a dozen repulsive, unprofessional and derogatory titles,

descriptions and euphemisms. Based on the severity and assortment of the references cited below,

the Court should strike the entire FAC, or, at the very least, order the striking of all of the

paragraphs/references cited and refile as a new FAC.  The Court should also consider admonishing

all of Plaintiffs' counsel with a public reprimand further considering taxing attorney's fees to defense counsel for having to spend dozens of hours surgically identifying and citing the Rule 12(f) violations.

### PARAGRAPHS WITH RULE 12(f) REDUNDANT, IMMATERIAL, IMPERTIENT OR SCANDALOUS MATTERS[3]

- **Page 2 Second Full Paragraph.** Plaintiffs allege *"[T]hese Defendants- a government machine mobilizes by Carollo have used untold resources derived from taxpayer funds to corrupt City staff members as part of their years long effort to drive Plaintiffs and their businesses into bankruptcy. In addition, the City under the direction of Carollo has spent more than $15 million in taxpayer money in an endless effort to exhaust and destroy plaintiffs through a legal minefield by filing bogus and frivolous claims."* This is extremely scandalous but also breaches all Rule 4(f) criteria and is one of the most egregious examples of an improper pleading in the FAC as it constitutes and attack on a defendant's right to defend itself, but worse yet, it is an attack on any counsel who dares to defend the City or any of its employees when the Plaintiffs decide to sue them.

- **Page 3 First Full Paragraph.** Plaintiffs allege *"[I]n addition to the City's shared responsibility for causing the $63.5 million in reputational, emotional, and punitive damages awarded by the jury against Carollo"*… which is demonstrably false.  The Honorable Untied States District Court Judge Rodney Smith pointedly denied Plaintiffs' Motion to Clarify Judgment in the ill-fated attempt to make the City responsible or damages in Fuller ruling that, *"…punitive damages from Carollo … are*

---

[3] Some of these matters fall into one or more of the four categories identified in Rule 12(f). We do not discretely discriminate the categories because for the most part every identified pleading and propriety crosses over to one or more of the four categories. And whether the Court dismisses or strikes for one reason versus another should not matter.

*not available in an official capacity suit*." *City of Newport v. Fact Concerts Inc.*, 453 U.S. 248, 271 (1981) ("a municipality is immune from punitive damages under 42 U.S.C. §1983"). As such, it should be stricken as scandalous, immaterial and impertinent.

- **Page 11 Heading. "***The Cabal forms its favorite tools for targeting plaintiffs by crafting selective ordinances and uniquely enforcing them against plaintiffs***". The use of the word Cabal is just another way of calling Defendants – as a whole - a mafia. Its sinister use was popularized in <u>A Child's History of England</u> by Charles Dickens when it was used as an acronym for five English government ministers during the reign of King Charles II.

  Reference to "the Cabal" repeats on Page 28, "*the Roles of the Members of the Cabal*" and it again appears on **Page 35** as a header to a diagram containing the pictures of 10 of the 11 individual defendants in this matter. There is no good reason for Plaintiffs' counsel to inflame the basic necessary factual allegations in the FAC while evading the strict language of Rule 77-2(g) of the Local Rules of the Southern District of Florida.

- **Page 12 Heading "***Valentine's Day Massacre***". This is a mere per quod inference to one of the most violent days in "U.S. gangster" history when, on February 14, 1929, seven members and associates of Chicago's North Side gang were gathered at Lincoln Park Chicago garage and lined up against a brick wall and machine-gunned to death. To this day, Mafia head boss Al Capone remains the prime suspect. The Valentine's Day Massacre reference repeats in **¶s 75** and **129**. This is an outrageous inuendo that the Defendants in this case have committed murder, with Carollo making the ultimate

decision and kill orders to the other Defendants in this case. Nothing within the description of the Valentine's Day Massacre is a fact allegation necessary to plead cause of actions in any of the 16 counts of the FAC.

- ¶ **36** Paul George's opinions that Fuller and Pinilla *"are very history-minded and are also very civic-minded ..."'*" does not even comport with the federal rules of evidence regarding character testimony. This, self -serving, pandering allegation has nothing to do with any essential element of any of the 17 counts of the FAC.

- ¶ **43** Cites to Miami Herald author/writer David Smiley's opinions that Carollo had a history of "*abusing power, profiting from taxpayers and using government resources to intimidate his political opponents*" is a mere hearsay opinion from a news writer. Again, this commentary is not an essential fact to pleading any cause of action in the FAC.

- ¶**72** reads, "*Multiple times through Carollo's reign of terror, which continues today, Defendants created hit lists of Plaintiffs' properties for the sole purpose of their retaliation.*"  Similar to the Valentine's Day Massacre reference, calling Carollo's conspiracy a reign of terror involving hit lists is akin to calling Carollo not only just a murderer, but rather, a serial killer.

- ¶**79** refers to the Defendants as "the syndicate".  It reoccurs again in ¶**195**.

- ¶**80** eludes to a description of Carollo as "*an unethical public servant*". This is not only argumentative but it is also a personal attack against Carollo. It has no place or space in the FAC.

- ¶**135** reads, "*City Attorney Victoria Mendez operates as the Black Widow for Carollo in much the same manner as Griselda Blanco Restrepo operated as the Black Widow for the Medellin Cartel*". There are two references here which conflate and compound

each other – referring to Ms. Mendez as a Black Widow and also comparing her to Griselda Blanco Restrepo. This is particularly offensive because of its calculated timing. Only recently, an 8 episode Netflix series exploded and it is called "Griselda Blanco". These descriptors are the most outrageous in the FAC. We start with Griselda Blanco. She was a notorious, murderous, violent Columbian drug lord, who met her own death violently gunned down in Medellin, Columbia. The "Black Widow" reference only compounds the salacious and unprofessional characterizations of defendant Victoria Mendez an experienced attorney and respected member of the Florida bar. The Merriam-Webster dictionary defines a black widow spider as venomous. Collins Dictionary's definition adds that a black widow spider's bite can be fatal. Last, Webster's Dictionary adds that this female spider sometimes eats its mates.

- **¶136** reads "*Defendant Rachel Dooley is Vic Mendez' personal assassin carrying out all of the City's targeting making sure Plaintiffs pay the maximum fees with no reduction whatsoever and spearheading the demolition properties*". Personal assassin, really?

- **¶178** reads**: "***This was openly known throughout the City, I mean down in the park people talk about it, the community talks about it, it was in wide open knowledge in Miami that he was being targeted*." A complaint must allege facts, not what the pleader alleges was common knowledge. Plaintiffs use this particular allegation to then claim in **¶179** that given such knowledge, all of the Defendants have individual liability in this matter. This is a huge leap to claim that a person's common knowledge of a conspiracy by certain individuals makes them chargeable Defendants and if they are City employees even exposed them to individual liability.

- **¶s180** and **183** are not  allegations of fact but rather argument and have no place in the FAC.

-  **¶221** the words "*Syndicate architects.*" It also reoccurs in **¶249.**  While Plaintiffs can certainly refer to the Defendants' conduct as conspiratorial, the words *syndicate* – not unlike the descriptor "the Cabal" is another unprofessional inuendo that the entire City of Miami and the Defendants are an organized criminal enterprise. Under Thessaursus.com, a syndicate has the following synonyms: "a cartel, a gang, a mob, or a ring". The theme of this and other similar references paints the Defendant as nothing less than an organized criminal cartel or mobster.

## ADOPTION

The City and the other Co-Defendants have filed motions to dismiss Plaintiffs' FAC. Mr. Goldberg adopts and incorporates by reference all the arguments raised in the motions to dismiss filed by the City and the other Co-Defendants in this case.

More specifically, with regards to the Victoria Mendez Motion to Dismiss the FAC, Goldberg adopts her arguments. Goldberg also adopts argument III B of Mendez's Motion to Dismiss and claims that Goldberg did not have fair notice that his alleged conduct violates a clearly established right. Goldberg adopts Mendez's VI's argument that the FAC is an impermissible shotgun pleading even after plaintiff was given leave to amend. With specific reference to Goldberg… Goldberg also adopts Mendez' argument in section VII of her motion in that the FAC fails to state a claim for first amendment retaliation due to impermissible lumping and over a lack of specificity. Goldberg also joins in VIII of Mendez's motion… Goldberg also adopts argument IX of Mendez's motion raising a statutes of limitations defense to the FAC. Mr. Goldberg also adopts argument IIB – Legislative Immunity from Rachel Dooley's motion to dismiss (on pp. 8-9

therein).

### C.  STANDARD FOR MOTIONS TO DISMISS

A Rule 12 (b)(6) motion to dismiss tests the sufficiency of the Complaint against the legal standard set forth in Rule 8 of Fed. Civ. P., which provides for a "*a short and plain statement of the claims showing that the pleader is entitled to relief*."  In general, to survive a motion to dismiss, a complaint must contain sufficient factual matters, accepted as true, to state a claim of relief that is plausible on its face.  *McGriff v. City of Miami Beach*, 522 F. Supp. 3d 1225, 1239 (S.D. Fla. 2020) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937(2009).  Moreover, a plaintiff's claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard requires more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint plead facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.  Determining whether a complaint states a plausible claim for relief is a context-specific undertaking that requires the court to draw upon its judicial experience and common sense." *Id*. at 1239.

While a motion to dismiss generally will be treated as motion for summary judgment under the Federal Rules of Civil Procedure if the district court considers matters outside the complaint, the "district court need not convert a motion to dismiss into one for summary judgment where the documents are (1) central to the plaintiff's claims and (2) undisputed."  *McGriff*, 522 F. Supp. at 1239 (citing *Day v. Taylor*, 400 F. 3d 1272, 1276 (11th Cir. 2005)).  To defeat a motion to dismiss against a §1983 claim, the "plaintiff must allege that a person acting under color of state law committed an act that deprived him of some right protected by the Constitution or laws of the United States. *Alcocer v. Mills*, 906 F. 3d 944, 950-51 (11th Cir. 2018).  Here, the Plaintiffs failed

to allege that Mr. Goldberg committed an act that deprived them of some right protected by the Constitution or laws of the United States.

**I.      THE FAC SHOULD BE DISMISSED BECAUSE PLAINTIFFS CANNOT ESTABLISH THAT THEY HAVE ARTICLE III STANDING**

To prove that a plaintiff has standing, they must "allege enough facts to establish [1] injury in fact, [2] causation, and [3] redressability." *Ladies Mem'l Ass'n v. City of Pensacola*, 34 F.4th 988, 992 (11th Cir. 2022). The plaintiff bears the burden of proving each of these elements. *Id*. The Eleventh Circuit places a high burden on plaintiffs to establish standing to sue "[b]ecause [it] implicates jurisdiction. [Thus], a court *must* satisfy itself that the plaintiff has standing before proceeding to consider the merits of her claim, no matter how weighty or interesting." *Gardner v. Mutz*, 962 F.3d 1329, 1339 (11th Cir. 2020) (citing *Lewis v. Gov. of Ala.*, 944 F.3d 1287, 1296 (11th Cir. 2019) ; *accord, e.g., Swann v. Sec'y*, 668 F.3d 1285, 1288 (11th Cir. 2012).

**i.      Revocation Of El Shopping's CU Does Not Constitute An Invasion Of A Legally Protected Right.**

Plaintiffs "[f]irst must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. *Ft. Lauderdale Food not Bombs v. City of Ft. Lauderdale*, 11 F.4th 1266, 1286 (11th Cir. 2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). The Eleventh Circuit applied this test in *Gardner v. Mutz*, where plaintiffs filed a Section 1983 suit due to the relocation of a cenotaph, which the plaintiffs alleged violated their right to free speech by "infring[ing] their interests in 'preserv[ing] the history of the south,' 'expressing their free speech from a Southern perspective,' 'vindicat[ing] the cause for the which the Confederate Veteran fought,' etc." *Gardner v. Mutz*, 962 F.3d 1329, 1341 (11th Cir. 2020). Plaintiffs' claims in the case at bar are strikingly similar—namely, that Plaintiffs are "preserving

[Little Havana's] historical significance and cultural identity" and "protecting the heritage, the culture, and the history". (D.E. 77; ¶ 37-39). In that case, the Eleventh Circuit provided the following forceful prescription:

> At bottom, it seems to us, the plaintiffs endorse some meaning that they ascribe to the monument; they agree with what they take to be the cenotaph's message because it aligns with their values. And because they agree with that message, they disagree with—object to—the monument's removal from Munn Park. But the plaintiffs' inchoate agreement with what they take to be the cenotaph's meaning or message—and their consequent disagreement with the monument's relocation—does not alone give rise to a concrete injury for Article III purposes. *Cf. Diamond*, 476 U.S. at 62 ("The presence of a disagreement, however sharp and acrimonious it may be, is insufficient by itself to meet Art. III's requirements."); *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 485-86, 102 S. Ct. 752, 70 L. Ed. 2d 700 (1982) (holding that "the psychological consequence presumably produced by observation of conduct with which one disagrees . . . is not an injury sufficient to confer standing under Art. III, even though the disagreement is phrased in constitutional terms"

*Gardner v. Mutz*, 962 F.3d 1329, 1341 (11th Cir. 2020). There, plaintiffs assigned meaning, and thus a message, to the cenotaph and, consequently, its removal; their disagreement and the psychological consequence thereof does not constitute an injury-in-fact. *See also Ladies Mem'l Ass'n v. City of Pensacola*, 34 F.4th 988, 993 (11th Cir. 2022) (finding that disagreeing with government action and "mere recitation that the Government is violating one's constitutional rights" fall short of the 'concreteness' standard). Here, Plaintiffs allege the revocation of El Shopping's CU infringed on their First Amendment rights but make no concrete allegation of any speech impeded by Mr. Goldberg's role in the CU's revocation. Put differently, Plaintiffs fail to show how the CU's revocation poses an actual or imminent threat to their free speech rights.

ii.   **Even If Plaintiffs Could Prove an Injury-In-Fact, They Cannot Meet the Particularity Prong of the Standing Inquiry.**

If a plaintiff successfully demonstrates an injury-in-fact, they then must establish "a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third

party not before the court. *Ft. Lauderdale Food not Bombs v. City of Ft. Lauderdale*, 11 F.4th 1266, 1286 (11th Cir. 2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). *See also Falls v. DeSantis*, 609 F. Supp. 3d 1273, 1283 (N.D. Fla. 2022). In *Falls*, the Florida Northern District Court applied this test to a dispute between teachers and the Florida Department of Education, finding a theory of traceability based on a hypothetical and "flow[ing] from the Board to the school district, from the school district to the teachers' school, and—only then—to the teachers….simply require[d] too many inferential leaps to demonstrating standing at the preliminary injunction stage." *Falls*, 609 F. Supp. 3d at 1283. Similarly here, Plaintiffs' theory of traceability flows from the City of Miami to the Division of Environmental Resource Management, to the Unsafe Structures Panel, and *finally* to the Plaintiffs. The Florida Northern District Court's caution against impermissible stacking of inferences is certainly applicable in the instance case. Accordingly, Plaintiffs have also failed to meet the second prong of the standing inquiry.

iii.     **Plaintiffs Also Cannot Prove the Final Prong: Redressability**

The final element of standing requires a plaintiff to show "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Ft. Lauderdale Food not Bombs v. City of Ft. Lauderdale*, 11 F.4th 1266, 1286 (11th Cir. 2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). *See also Donovan v. Rivadeneira*, 557 F. Supp. 3d 1236, 1245 (S.D. Fla. 2021) (concluding that protesting plaintiffs failed to establish redressability where plaintiffs' claims arose from defendants' past actions and there were no allegations that the same defendants would respond in a similar manner if plaintiffs protested again). Here, the bulk of Plaintiffs' allegedly protected conduct took place in 2017 and 2018, prior to El Shopping's incorporation as an entity and prior to Mr. Goldberg's tenure as

Zoning Director for the City. Even more, Plaintiffs' issues with El Shopping began in September of 2020 per their FAC—months before Mr. Goldberg accepted his position as B&Z Director.

**II.** **COUNTS VII, XV, XVI AND XVII  SHOULD BE DISMISSED BECAUSE MR. GOLDBERG IS ENTITLED TO ABSOLUTE AND QUALIFIED IMMUNITY**

**A.  AS ZONING DIRECTOR FOR THE CITY OF MIAMI, MR. GOLDBERG IS ENTITLED TO ABSOLUTE IMMUNITY**

Judicial immunity is designed to protect judges from personal liability "even when the judge's acts are in error, malicious, or excess of his or her jurisdiction." *Sibley v. Lando*, 437 F. 3d 1067, 1070 (11th Cir. 2005) (quoting *Bolin v. Story*, 225 F. 3d 1234, 1239 (11th Cir. 2000)).  While judicial immunity is intended to provide judges with the liberty to make decisions without corrupt influence, the following factors must exist for judicial immunity to apply: "(1) the act complained of constituted a normal judicial function; (2) the events occurred in the judge's chambers in open court; (3)  the controversy involved a case pending before the judge; and (4) the confrontation arose immediately out of a visit to the judge in her official capacity." *Sibley v. Lando*, 437 F. 3d 1067, 1070 (11th Cir. 2005).

In terms of non-judicial officials, the Eleventh Circuit has consistently extended judicial immunity to apply other persons whose "official duties have an integral relationship with the judicial process." *Roland v. Phillips*, 19 F. 3d 552, 555 (11th Cir. 1994); *see also Fuller v. Georgia State Bd. of Pardons and Paroles*, 851 F. 2d 1307 (1988) (holding that individual members of state Parole Board are entitled to absolute quasi-judicial immunity from suit for damages filed by black inmates challenging the denial of parole). Furthermore, a court determines quasi-judicial immunity "through a functional analysis of the action taken by the official in relation to the judicial process". *Roland*, 19 F. 3d at 555.  More specifically, "[w]hen judicial immunity is extended to officials other than judges, it is because their judgments are functionally comparable to judges—that is,

because they, too, exercise a discretionary judgment as a part of their function." *Antoine v. Byers & Anderson, Inc.,* 508 U.S. 429, 436 (1993).

In analyzing whether to characterize a rezoning action as legislative or quasi-judicial, the Florida Supreme Court reasoned that "legislative action results in the *formulation* of a general rule of policy, whereas judicial action results in the *application* of a general rule of policy." *Bd. Of County Comm'Rs v. Snyder*, 627 So.2d 469, 474 (Fla. 1993). The court explained that because the issue in a rezoning action hinges on "facts arrived at from distinct alternatives presented at a hearing, and where the decision can be functionally viewed as policy application, rather than policy setting," such acts are of a quasi-judicial nature. *Id*. In this case, Article 21 of the City of Miami's Zoning Ordinance both empowers the Zoning Administrator with investigative and enforcement authority[4] *and* requires initiation of enforcement procedures before the Code Enforcement Board[5] pursuant to Chapter 2 Article 10 of the Miami City Code. *See* Art. 21 § 2101 and § 2108 of the City of Miami Zoning Ordinance; *see also* City of Miami Zoning Ordinance Art. 21, § 2101 and

---

[4]  Section 2101.1 reads: "A zoning administrator, appointed by and responsible to the city manager, shall be responsible for administration and enforcement of this zoning ordinance, except as otherwise provided herein, with such assistance as the city manager may direct. It shall be the duty of all employees of the city, and especially of all officers and inspectors of the department of planning, building and zoning, the fire and rescue department, and the police department, to report to the zoning administrator any seeming violations."
   Section 2101.2 reads: "The zoning administrator shall be guided and limited in findings and determinations, in the issuance or denial of permits or certificates, in the attachment of any conditions and safeguards, or in other actions relating to administration and enforcement of this zoning ordinance by the terms, provisions, and requirements set out herein and shall not have the power to waive, vary, or modify such terms, provisions, or requirements except where specifically authorized to do so by this zoning ordinance and within limitations established by such authorization."

[5] Section 2108 reads (in pertinent part): "The zoning administrator shall enforce vigorously the provisions of this zoning ordinance, prevent violations or detect and secure their correction, and investigate promptly complaints of violations and report the findings and actions on complaints. If the administrator shall find that any of the provisions of this ordinance are being violated, notification shall be made in writing to those responsible, indicating the nature of the offense and ordering the action necessary to correct it… If any structure or sign is erected, constructed, reconstructed, altered, repaired, or maintained, or any structure, land, or water is used in violation of any regulation herein contained, enforcement procedures shall be initiated before the code enforcement board as provided in chapter 2, article X of the Miami City Code."

2108.[6]

In the instant case, Plaintiffs were extended the rights outlined in the Florida's Local Government Code Enforcement Boards Act before the Code Enforcement Board. Nevertheless, Plaintiffs allege that Mr. Goldberg violated their constitutional rights by enforcing the City's zoning code against Plaintiffs' property, a "parking garage that had been operating for more than 35 years in the same condition." (D.E. 77; ¶ 143). Plaintiffs fail to mention any facts with respect to their building's compliance with the City's zoning ordinance and instead paranoidally attack what Plaintiffs perceive as disparate treatment. On its face, this allegation does not rise to a violation of constitutional rights—and certainly not one of free speech. More importantly, Mr. Goldberg's conduct was within the zone of protection for absolute quasi-judicial immunity to apply and since Plaintiffs' claim against Mr. Goldberg is based on his enforcement of the City's CU policy, Mr. Goldberg is entitled to absolute quasi-judicial immunity.

## B. AS ZONING DIRECTOR FOR THE CITY OF MIAMI, MR. GOLDBERG IS ENTITLED TO QUALIFIED IMMUNITY

To be entitled to a qualified immunity defense, a government official must demonstrate the acts alleged were within the scope of the officials' discretionary authority. *See Kirkland v. City of Miami,* 382 F. 3d 1220, 1232 (11th Cir 2004). A government official proves they acted within the purview of their discretionary authority by showing "objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of authority." *Hutton v. Strickland*, 919 F. 2d 1531, 1537 (11th Cir. 1990). "Once

---

[6] Additionally, the Eleventh Circuit has affirmed that Code Enforcement Proceedings under local and state law in Florida involve the exercise of discretionary judgment. *See Club Madonna v. City of Miami Beach*, (11th Cir. 2020). *See also Lindbloom v Manatee County*, 800 Fed. Appx. 745, 751 (2020) (outlining the minimum process that local governments in Florida must provide to private property owners in regulating conditions of their properties, which has been codified by the City of Miami in Sections 2-811-2-830 of the City of Miami Code of Ordinances).

discretionary authority is established, the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity." *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003). The Eleventh Circuit applies a two-part "objective reasonableness" test for qualified immunity, the factors of which are: (1) The defendant public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred; and (2) once the defendant public official satisfies his burden of moving forward with the evidence, the burden shifts to the plaintiff to show lack of good faith on the defendant's part. This burden is met by demonstrating that the public official's actions violated clearly established constitutional law. *O'Boyle v. Sweetapple*, No. 9:14-CV-81250-KAM, 2015 U.S. Dist. LEXIS 192278, at *29 (S.D. Fla. June 4, 2015) (citing *Hutton v. Strickland*, 919 F.2d 1531, 1537 (11th Cir. 1990)).

"To overcome qualified immunity, the plaintiff must show that (1) the defendant violated a constitutional right, (2) this right was clearly established at the time of the alleged violation." *McGriff*, 522 F. Supp. at 1252 (S.D. Fla. 2020). Essentially, the purpose of the doctrine of qualified immunity is to permit "officials to perform their duties, without the threat of civil liability, if they act in a lawful manner. It is immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

**i.      Mr. Goldberg Had Discretionary Authority as Zoning Director for the City of Miami**

To determine whether a public figure was acting within their discretionary authority, the Eleventh Circuit directs courts to consider "whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." *O'Boyle v. Sweetapple*, No. 9:14-CV-81250-KAM, 2015 U.S. Dist. LEXIS 192278, at *29 (S.D. Fla. June 4, 2015) (citing *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004)).

Plaintiffs first allege that Mr. Goldberg "created a new policy" to target and harm the Plaintiffs, as if the Zoning Director has unilateral or dictatorial authority to enact municipal legislation. In actuality, any amendment to the City's Zoning Ordinances is taken on by the authority vested in the City Commission pursuant to the City Charter. *See* City of Miami Charter § 38. In accordance with that authority, it is undisputed that the City of Miami Zoning Ordinance grants the Zoning Administrator authority to administer and enforce the City of Miami's Zoning Ordinances. *See* City of Miami Charter Art. 21 § 2101. As such, viewing the facts in the light most favorable to Plaintiffs, Mr. Goldberg was acting within his discretionary authority to shut down the parking garage at El Shopping after a hearing before the Unsafe Structures Panel was held and a Final Order was issued (D.E. 77 ¶). The subsequent revocation of El Shopping's Certificate of Use for violation of the City's zoning ordinance after almost two years of violations and infractions was certainly a discretionary function within Mr. Goldberg's authority. *See* City of Miami Zoning Ordinance Art. 21 § 2101. Mr. Goldberg's actions were unequivocally within his office's discretionary functions, thereby entitling Mr. Goldberg to qualified immunity.

### ii.    Plaintiffs Do Not Adequately Allege A Violation Of An Established Constitutional Right

To defeat qualified immunity, a plaintiff must show that the conduct in question violates clearly established law. *Minnifield v. City of Birmingham Dep't of Police*, 791 Fed. Appx. 86, 89-90 (11th Cir. 2019). While a plaintiff need not identify an "on-point" case, "the clearly established law must be particularized to the facts of the case. The inquiry thus focuses "on whether the officer had fair notice that [his] conduct was unlawful." *Id. See also Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010). In *Randall*, a Georgia District Attorney's Chief of Staff filed a §1983 claim against a Georgia District Attorney for First Amendment retaliation after the former's termination for running in an election against the latter's husband. *Randall*, 610 F.3d at 716. The Eleventh Circuit affirmed

dismissal based on qualified immunity, concluding that the right to run for office is a constitutional right, but not a "clearly established" right. *Id*. There, as here, the Plaintiffs failed to cite any source or precedent for the right they claim is protected and for any unconstitutional acts on Mr. Goldberg's behalf. Most strikingly, Plaintiffs fail to identify any right that existed with respect to El Shopping that relates to their First Amendment rights or any violation thereof. The FAC merely outlines Plaintiffs' grievances and disagreement with the City's enforcement mechanisms. Unfortunately for Plaintiffs, their investment capital does not create a right to continuous operation of their business, let alone if it is in violation of zoning ordinances. The allegations against Mr. Goldberg in the FAC thus fail to adequately identify what, if any, of Plaintiffs' rights Mr. Goldberg allegedly violated. As the Director of the City's B&Z Dept., he had the discretion to create or adopt the CU permit policy such as he did. That discretion also allowed him to restore CUs previously revoked.

Importantly, Plaintiffs concede Mr. Goldberg was not Zoning Director in 2017 when they allegedly hosted rallies and supported Leon; or in 2018 when they filed an ethics complaint and civil rights action; or in 2019 when they held a press conference exposing violations. (D.E. 77; ¶44). Yet Plaintiffs inconsistently claim Mr. Goldberg was Zoning Director "at all relevant times". (D.E. 77; ¶24). This is a critical pleading deficiency that renders the core allegations insufficient to state a retaliation claim against Mr. Goldberg, a government official sued individually. Particularly considering Plaintiffs' failure to adequately allege Mr. Goldberg's actual knowledge of such past activity, Plaintiffs fail to defeat Mr. Goldberg's entitlement to qualified immunity.

### IV. COUNTS VII, XV, XVI and XVII  FAIL TO ADEQUATELY STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

To successfully raise a First Amendment retaliation claim, "a plaintiff must establish first, that his speech or act – association - was constitutionally protected; second, that the defendant's

retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech." *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005).

### i.      Plaintiffs Fail To Establish Their Speech/Association Is Constitutionally Protected.

To establish a viable claim for First Amendment retaliation, each Plaintiff must allege they engaged in protected activity. *Leake v. Drinkard*, 14 F.4th 1242, 1247 (11th Cir. 2021); *Wolff v. Cash 4 Titles*, 351 F.3d 1348, 1353 (11th Cir. 2003) ("plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties"); *Rakas v. Illinois*, 439 U.S. 128, 133-134 (1978) (constitutional rights are personal rights which may not be vicariously asserted); *Easton v. Sundram*, 947 F.2d 1011, 1015 (2d Cir. 1991) (holding individual's First Amendment retaliation claim "fails at the outset because he himself has not engaged in conduct deserving of first amendment protection" where corporation, not individual, engaged in protected activity). In this case, the FAC alleges that all 16 Plaintiffs lumped together—and in two instances, "Plaintiffs Fuller and Pinilla" together— collectively engaged in protected speech or conduct.

These instances of allegedly protected activity by fourteen entities and two individuals *collectively* do not support Plaintiffs' First Amendment retaliation claim. In fact, several Plaintiffs did not even exist in 2017-2018 when the FAC asserts that "Plaintiffs" allegedly supported Carollo's opponent and filed an ethics complaint, the primary instances of alleged protected activity from which all retaliation stems, and thus those entities did not and could not have engaged in the alleged protected conduct. *See, e.g.*, Little Havana Bungalows LLC formed 5/5/2018, El Shopping LLC formed 12/12/2018, and Yo Amo Calle Siete LLC formed 8/27/2020, per Sunbiz

public records.[7] Resultantly, as Plaintiffs failed to sufficiently establish they were engaged in constitutionally protected activity at the time El Shopping existed as an entity *and* at the time Mr. Goldberg took any action as Zoning Director, no Plaintiff has a First Amendment retaliation claim to assign, as the Court found in *Fuller I*. *See Fuller I*, [DE 186], 5/13/2021 Order on Defendant's Motion to Dismiss at 8-9 ("Even if the non- parties have assigned their claims to Plaintiffs, there are no claims of First Amendment retaliation pled as to the non-parties. Plaintiffs have not pled that the non-parties exercised their First Amendment rights and were then retaliated against by Defendant. Thus, there is no alleged 'claim' for the non-parties to assign.").

    **ii.**    **Plaintiffs Fail To Establish Mr. Goldberg's Conduct Adversely Affected Their Protected Speech/Association.**

Pursuant to *Bennett*, "a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Bennett v. Hendrix*, 423 F.3d 1247, 1254 (11th Cir. 2005). While the test directs the Court to consider a person of ordinary firmness, "the plaintiff's actual response to the defendant's conduct provides some evidence of the tendency of that conduct to chill First Amendment activity." *Bethel v. Town of Loxley*, 221 F. App'x 812, 813 (11th Cir. 2006). Here, based on their own allegations, Plaintiffs have aggressively voiced their opinions by filing an ethics complaint against Carollo, filing a federal lawsuit against Carollo and the City, filing a second

---

[7] What's more, in § 1983 cases, plaintiffs cannot individually sue for injury sustained by entities in which they hold membership interests even if the value of their interests has decreased. *See, e.g.*, *Gregory v. Mitchell*, 634 F.2d 199, 202 (5th Cir. 1981) (due process and equal protection); *Callaway v. Hornbake*, 2012 U.S. Dist. LEXIS 12011, *10- 12, 2012 WL 333769 (M.D. Fla. Feb. 1, 2012) (deprivation of constitutional rights); *Cherry v. D.B. Zwirn Special Opportunities Fund, L.P.*, 2009 U.S. Dist. LEXIS 124114, *12-13 (M.D. Fla. Dec. 23, 2009) (racial discrimination). *See also* §§ 605.0108 ("A limited liability company is an entity distinct from its members."), 605.0110, Florida Statutes ("A member of a limited liability company has no interest in any specific limited liability company property.").

lawsuit against the City, filing this third lawsuit against the City and eleven City officials, holding a press conference at City Hall to expose Carollo and complain about Carollo and the City, promoting their views and vision, and speaking out against the City. (D.E. 77; ¶45). As demonstrated by their overzealous self-advocacy and as reflected in their FAC, Plaintiffs have not been chilled in their speech by the alleged actions and thus have failed to adequately allege facts satisfying the ordinary firmness test.

### iii. Plaintiffs Fail To Establish A "Causal Connection"—That Mr. Goldberg's Adverse Action Would Not Have Been Taken "But For" Retaliatory Motive.

To satisfy the third prong of a First Amendment retaliation claim, "a plaintiff must establish a 'causal connection' between the government defendant's 'retaliatory animus' and the plaintiff's subsequent injury." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019). To meet the causation element, "[i]t is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must cause the injury…Specifically, it must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id*. To "establish a causal connection, the plaintiff must show that the defendant was subjectively motivated to take the adverse action because of the protected speech." *Castle v. Appalachian Tech. Coll*., 631 F.3d 1194, 1197 (11th Cir. 2011). Subjective motivation "requires that the defendants had actual knowledge of the plaintiffs' protected speech". *Indigo Room, Inc. v. City of Fort Myers*, 589 Fed. Appx. 938, 947 (11th Cir. 2014) (citations omitted).

Plaintiffs fail to allege Mr. Goldberg's "actual knowledge of the plaintiffs' protected speech," the core of which occurred in 2017-2018 (D.E. 77; ¶¶ s 43-45) and was well before Mr. Goldberg became Zoning Director in 2021. Instead, Plaintiffs inappropriately and inadequately rely on what "everyone knows" in their futile attempt to establish a causal connection between

their speech and Mr. Goldberg's actions. (D.E. 77; ¶ 142). Plaintiffs erroneously allege that Mr. Goldberg's associations from years before Plaintiffs' allegedly protected conduct compelled him to participate in a years-old political vendetta and served as the basis for his enforcement of a city policy in accordance with the City of Miami's Zoning Ordinances. (D.E. 77; ¶ 143). More realistically, as outlined in ¶s 417 through 420 of the FAC, whatever injury occurred was not the result of retaliatory animus but rather the result of compliance with City procedure.

## V. <u>COUNTS XVII FAILS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED</u>

Based on Plaintiffs' failure to state a claim in **Counts VII, XV, and XVI** for a substantive First Amendment free speech/freedom of association violation, **Count XVII** also fails. To establish a § 1983 conspiracy claim, a plaintiff "must first plausibly allege an underlying denial of their constitutional rights" and also demonstrate "that the defendants 'reached an understanding to violate [his] rights." *Harper v. Admin. Lieutenant*, 857 Fed. Appx. 551, 556 (11th Cir. 2021) (reasoning that an "inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement") (citing *Farrow v West*, 320 F.3d 1235, 1248 (11th Cir. 2003). In *Harper*, different than the case at bar, the plaintiff relied on a clearly established legal principle—namely, inmates have First Amendment rights when speaking about confinement conditions. *Id*. However, even viewing the allegations in the light most favorable to Plaintiffs, undersigned counsel is unaware of and Plaintiffs fail to identify a right or a source of a right affected by Mr. Goldberg's alleged actions. Plaintiffs' operation of El Shopping and its parking garage do not have a right based in law to continue functioning *at all*, and particularly not after receiving several citations for violations of city zoning ordinances. Additionally, Plaintiffs do not allege that Mr. Goldberg reached an

"agreement" with any other Defendant to support a conspiracy claim. Instead, Plaintiffs make baseless allegations accusing Mr. Goldberg of being a 'Carollo plant' and suggesting that the only way Mr. Goldberg could have received his position as Zoning Director is via quid pro quo. (D.E. 77; ¶ 142). According to Plaintiffs, Mr. Goldberg *must* have been part of a conspiracy merely for his professional associations and networks. *Id.*  Pleading by conclusion or speculation is not enough; it requires substantive allegations.

Indeed, the FAC fails to track the essential elements of a conspiracy claim. It does not clearly set forth the day the conspiracy began; who were at least two of the conspirators who hatched the conspiracy; the object of the conspiracy; and the manner and means thereof. More glaringly, the FAC fails to allege that Mr. Goldberg was aware of any alleged conspiracy and willfully joined it. It also fails to identify clearly pled overt acts that promoted the conspiracy forwarded. *United States v. Hasson*, 333 F.3d 1264, 1270 (11th Cir. 2003).

## VI. COUNT XVII FOR CONSPIRACY IS BARRED BY THE INTRACORPORATE CONSPIRACY DOCTRINE

Count XVII of the FAC alleges that Defendants conspired with one another to retaliate against the Plaintiffs. (D.E. 77; ¶, 152, 149). The intercorporate conspiracy doctrine applies to government entities and its employees under § 1985(3) and under § 1983. *See Reed v. Williams*, No. 3:22-cv-419-MMH-PDB, 2023 U.S. Dist. LEXIS 131533, at *1-2 (M.D. Fla. Mar. 6, 2023); *McMillan v. Dekalb County, Georgia*, 2005 WL 5121856, at *4-5 (N.D. Ga. 2005); *Desrouleaux v. Vill. of Biscayne Park*, No. 18-cv-23797-GAYLES/OTAZO-REYES, 2019 U.S. Dist. LEXIS 79335, at *8 (S.D. Fla. May 10, 2019).

Under the corporate conspiracy doctrine, "a corporation's employees, acting as agents of the corporation, are deemed incapable of conspiring among themselves or with the corporation. This doctrine stems from basic agency principles that "attribute the acts of agents of a corporation to

the corporation, so that all of their acts are considered to be those of a single legal actor." *Dickerson v. Alachua Cty. Comm'n*, 200 F.3d 761, 767 (11th Cir. 2000). Each employee's actions, when attributed to the entity, negates "the multiplicity of actors necessary to conspiracy." *Id.* (citing *Nelson Radio & Supply Co., Inc. v. Motorola, Inc.,* 200 F.2d 911, 914 (5th Cir. 1952)). The Eleventh Circuit and several of its district courts have applied this principle to constitutional claims, including First Amendment claims, involving employees of the same municipal entity. *See Rehberg v. Paulk*, 611 F.3d 828, 855 (11th Cir. 2010); *White v. City of Athens*, 169 F. Supp. 3d 1254, 1270 (N.D. Ala. 2016); *Kang v. Mayor of Savannah*, No. CV421-111, 2022 U.S. Dist. LEXIS 60356, at *18 (S.D. Ga. Mar. 31, 2022). Mr. Goldberg and other alleged conspirators were all City employees at all relevant times and all allegations stem from their conduct as City employees. (D.E. 77; ¶ 24). Consequently, Counts VII, XV, XVI and XVII of the FAC should be dismissed with prejudice as to Mr. Goldberg.

## REQUEST FOR HEARING

Pursuant to Local Rule 7.1(b)(2), Mr. Goldberg requests a one-hour hearing on his motion to strike and to dismiss. The motion raises numerous complex issues and a hearing would be beneficial to address same.

## CONCLUSION

For all the good and sufficient reasons stated above, the Court should grant Defendant Daniel Goldberg's motion to dismiss with prejudice. Additionally, pursuant to Local Rule 7.1(b)(2), Daniel Goldberg respectfully requests oral argument on his motion to dismiss given the volume and complexity of the issues addressed herein. Daniel Goldberg respectfully requests that this Court grant his Motion to Dismiss Plaintiffs' Complaint with prejudice, award Defendant's

attorneys' fees pursuant to 42 U.S.C. § 1988(b), and grant such other and further relief as this Court deems just, equitable, and proper.

Dated: February 29, 2024

Respectfully submitted:

s/ Richard J. Diaz

_____
Richard J. Diaz, Esq.
3127 Ponce De Leon Blvd.
Coral Gables, FL  33134
Telephone: (305) 444-7181
Facsimile: (305) 444-8178
F.B.N. 0767697

**CERTIFICATE OF SERVICE**

I certify that on February 29, 2024, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify that this document is being served today on all counsel of record by transmission of Notices of Electronic Filing generated by CM/ECF.

s/ Richard Diaz

_____
Richard J. Diaz, Esq.