**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**Case No.: 1:23-cv-24251-FAM**

FULLER, et al.,

      Plaintiffs,

v.

THE CITY OF MIAMI, et al.,

      Defendants.

_____/

**JOE CAROLLO'S MOTION TO DISMISS**
**PLAINTIFFS' SECOND AMENDED COMPLAINT WITH PREJUDICE**

## TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................................... 1

II.  ARGUMENT ................................................................................................................. 1

   A.  This Entire Action Is Barred by Res Judicata .................................................... 1

      1.  *There Is a Prior Final Judgment on the Merits by a Court of Competent Jurisdiction* ............................................................................................... 2

      2.  *The Fuller I Parties, or Those in Privity with Them, Are Identical to Those in This Case* ....................................................................................... 3

         a.  *The Entity Plaintiffs Agreed to Be Bound by the Litigation of Others* ................... 4

         b.  *A Substantive Legal Relationship Existed Between the Person to Be Bound and a Party to the Judgment* ............................................................................................... 5

         c.  *The Entity Plaintiffs Were Adequately Represented by Someone Who Was a Party to Fuller I* ......................................................................................... 5

         d.  *The Nonparty Assumed Control Over the Litigation in Which the Judgment Was Issued* ..................................................................................... 6

      3.  *The Second Amended Complaint Arises from the Same Facts and Alleges the Same Claims as Fuller I* ............................................................ 7

         a.  *The Entity Plaintiffs' Claims Were Raised and Litigated by Fuller and* .......... 7

         *Pinilla in Fuller I* ............................................................................................... 7

         b.  *The Entity Plaintiffs' Claims Arise from the Same Conduct Already Alleged* ........ 9

         *and Litigated by Fuller and Pinilla in Fuller I* .................................................. 9

   B.  The Amended Complaint Is an Impermissible Shotgun Pleading and the Entity Plaintiffs Fail to State a Claim ....................................................................... 11

      1.  *The Amended Complaint is STILL an Impermissible "Shotgun Pleading"* ........... 12

         a.  *The Amended Complaint STILL Improperly Lumps Together Allegations Against Multiple Defendants and Relies on Legal Conclusions* ....................................... 12

      2.  *The Entity Plaintiffs STILL Fail to State a Claim Under § 1983* .......................... 15

         a.  *The Entity Plaintiffs Fail to Allege Their Own Speech or Expression* ................. 16

         b.  *The Only Entity Plaintiff that Tries to Make Specific Speech or Expression Allegations Does Not Assert a Legally Sufficient § 1983 Claim* .......................... 17

   C.  The Complaint Was Filed Too Late, and the Statute of Limitations Has Run .......... 18

   D.  Because the Second Amended Complaint Admits that Some City Enforcement Actions Were Justified, And Does Not Demonstrate that the Others Were Unjustified, Plaintiffs Have No § 1983 Claim .................................................. 19

III. CONCLUSION ............................................................................................................ 22

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*6420 Roswell Rd., Inc. v. City of Sandy Springs*,
    484 F. Supp. 3d 1321 (N.D. Ga. 2020) ............................................................. 19

*Access for Disabled, Inc. v. Fort Lauderdale Hosp., Inc.*,
    826 F. Supp. 2d 1330 (S.D. Fla. 2011) ............................................................... 5

*Andreu v. HP Inc.*,
    272 F. Supp. 3d 1329 (S.D. Fla. 2017) ............................................................... 3

*Beach Blitz Co. v. City of Miami Beach*,
    2018 WL 11260453 (S.D. Fla. 2018) ................................................................. 20

*Bey v. City of Tampa Code Enf't*,
    607 F. App'x 892 (11th Cir. 2015) ............................................................... 19, 22

Bonner v. City of Prichard,
    661 F.2d 1206 (11th Cir. 1981) ........................................................................... 3

*Chappell v. Rich*,
    340 F.3d 1279 (11th Cir. 2003) ......................................................................... 18

*Citibank, N.A. v. Data Lease Fin. Corp.*,
    904 F.2d 1498 (11th Cir. 1990) ........................................................................... 3

*Concordia v. Bendekovic*,
    693 F.2d 1073 (11th Cir. 1982) ........................................................................... 2

*D.B.C. Corp. v. Nucita Venezolana, C.A.*,
    464 F. Supp. 3d 1323 (S.D. Fla. 2020) ............................................................. 12

*Fernandez v. Sch. Bd. of Miami-Dade Cnty.*,
    201 F. Supp. 3d 1353 (S.D. Fla. 2016) ............................................................... 5

*Gazzola v. NCL (Bahamas) Ltd.*,
    2019 WL 3067506 (S.D. Fla. 2019) ................................................................. 12

*Griswold v. Cnty. of Hillsborough*,
    598 F.3d 1289 (11th Cir. 2010) .................................................................. 4, 6, 7

*Harrison v. Bd. of Regents of Univ. Sys. of Georgia*,
    519 F. App'x 641 (11th Cir. 2013) ................................................................... 13

*Hilliard v. Gutierrez,*
   2021 WL 2712122 (S.D. Fla. 2021)................................................................ 3, 10

*Horne v. Russell Cnty. Comm'n,*
   295 F. Supp. 2d 1289 (M.D. Ala. 2003)................................................................11

*Jacobs v. Tempur-Pedic Int'l, Inc.,*
   626 F.3d 1327 (11th Cir. 2010) .......................................................................... 13

*Jaffree v. Wallace,*
   837 F.2d 1461 (11th Cir. 1988) .......................................................... 3, 7, 9, 10

*Montana v. U.S.,*
   440 U.S. 147 (1979) .............................................................................................. 2

*N.A.A.C.P. v. Hunt,*
   891 F.2d 1555 (11th Cir. 1990) ............................................................................ 3

*O'Boyle v. Com. Grp., Inc.,*
   2023 WL 2579134 (11th Cir. 2023) ................................................................... 19

*Omar ex rel. Cannon v. Lindsey,*
   334 F.3d 1246 (11th Cir. 2003) .......................................................................... 18

*Pierson v. Orlando Reg'l Healthcare Sys., Inc.,*
   619 F. Supp. 2d 1260 (M.D. Fla. 2009) ............................................................. 12

*Ragsdale v. Rubbermaid, Inc.,*
   193 F.3d 1235 (11th Cir. 1999) ........................................................................ 2, 7

*Rehberg v. Paulk,*
   611 F.3d 828 (11th Cir. 2010) .............................................................................11

*Robson 200, LLC v. City of Lakeland,*
   593 F. Supp. 3d 1110 (M.D. Fla. 2022) ............................................................. 21

*Rogers v. City of Coll. Park,*
   2019 WL 4168797 (N.D. Ga. 2019) ................................................................... 21

*Rumsfeld v. Forum for Academic & Inst'l Rights, Inc.,*
   547 U.S. 47 (2006)............................................................................................... 16

*See H & J Land Invs., Inc. v. City of Jacksonville,*
   2014 WL 4540200 (M.D. Fla. 2014) .................................................................. 21

*Smith v. Sec'y of Veterans Affs.,*
   808 F. App'x 852 (11th Cir. 2020) ....................................................................... 3

*Standard Life Ins. Co. v. First Nat. Bank & Tr. Co. of Vidalia, Georgia,*
    510 F.2d 272 (5th Cir. 1975) ........................................................................... 3

*State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC,*
    278 F. Supp. 3d 1307 (S.D. Fla. 2017) ........................................................... 21

*Synergy Real Estate of SW Fla. v. Premier Prop. Mgmt. of SW Fla., LLC,*
    2013 WL 5596795 (M.D. Fla. 2013) ............................................................. 12

*Taylor v. Sturgell,*
    128 S. Ct. 2161 (2008) ................................................................................. 4, 6

*Trump v. Clinton,*
    626 F. Supp. 3d 1264 (S.D. Fla. 2022) ........................................................... 15

*Vibe Micro Inc. v. Shabanets,*
    878 F.3d 1291 (11th Cir. 2018) ...................................................................... 15

*Wallace v. Kato,*
    549 U.S. 384 (2007) ...................................................................................... 18

*Weiland v. Palm Beach County Sheriff's Office,*
    792 F.3d 1313 (11th Cir. 2015) ...................................................................... 12

*Wellons v. Comm'r. Ga. Dept. of Corr.,*
    754 F.3d 1260 (11th Cir. 2014) ...................................................................... 18

*West v. Atkins,*
    487 U.S. 42 (1988) ........................................................................................ 16

*Wolff v. Cash 4 Titles,*
    351 F.3d 1348 (11th Cir. 2003) ...................................................................... 16

*Zinman v. Nova SE. Univ., Inc.,*
    2023 WL 2669904 (11th Cir. 2023) .......................................................... 16, 17

**STATUTES**

Fla. Stat. § 605.04091 ........................................................................................... 6

**RULES**

Fed. R. Civ. P. 8 .................................................................................................. 16

Local Rule 7.1 ..................................................................................................... 23

## I.  INTRODUCTION

The third time's not the charm when it comes to plaintiffs' latest attempt to allege legally sufficient claims. It should, however, be the charm as to this motion to dismiss with prejudice. Plaintiffs' grossly bloated Second Amended Complaint (D.E. 129) ("SAC") is as fatally flawed as its predecessors. It does not and cannot save this case, which is beyond saving for numerous reasons, not the least of which is that it is barred by the *Fuller I* judgment.[1] Further, plaintiffs' SAC does not plead (and could not plead) legally sufficient claims for suppression of any protected speech by entities[2] that allege no speech at all. Nor could it turn back time to rescue its claims, which also are time-barred. It also fails (as it must) to transform the lawful and justified enforcement of health, safety, zoning, and building laws by the City of Miami ('the City") into any actionable claims, relegating plaintiffs to lawful politicking (which this isn't) in pursuit of their personal vendetta against Mr. Carollo.

Finally, although the SAC in these respects is no better than its predecessors, it *does* manage to make one aspect worse. What began life as a garden-variety, corpulent shotgun pleading, then grew into an amended version that was even more ponderous but no more justiciable, has now morphed into something *ten times* the size of the original. Yet, even with all these words, plaintiffs still resolutely refuse to say with any clarity who allegedly did what to whom in this parody of a complaint that would be impossible to answer, let alone adjudicate.

Three strikes are all plaintiffs should get. The SAC should be dismissed with prejudice.

## II.  ARGUMENT

### A.  This Entire Action Is Barred by Res Judicata

No amendment ever could cure the SAC's (and this action's) core defect—the claims at the heart of this dispute already were tried to a verdict and final judgment, and no claims have been added that couldn't have been alleged in *Fuller I*. Because the SAC didn't change anything—and doesn't even appear to have attempted to—we largely reiterate the arguments from Mr. Carollo's Motions to Dismiss the [Initial] and First Amended Complaints with

---

[1] *Fuller v. Carollo*, Case No. 1:18-cv-24190 (S.D. Fla. 2018).

[2] There are 17 plaintiffs. We refer to William O. Fuller and Martin Pinilla, II, as the "Individual Plaintiffs." There is no allegation of speech by the 15 "Entity Plaintiffs"—the Barlington Group, LLC, Calle Ocho Marketplace, LLC, Yo Amo Calle Siete, LLC, Little Havana Arts Building, LLC, Piedra Villas, LLC, Little Havana Arts Building Too, LLC, Brickell Station, LLC, Tower Hotel, LLC, Futurama, LLC, El Shopping, LLC, Beatstik, LLC, Viernes Culturales/Cultural Fridays, Inc., Little Havana Bungalows, LLC, LHAB Tres, LLC, and La Gran Fiesta, LLC.

Prejudice (D.E. 58 and 90).

Plaintiffs filed *Fuller I* in 2018, asserting there, as they did (in all three complaints) here, that Mr. Carollo violated 42 U.S.C. § 1983 and plaintiffs' First Amendment rights. On June 1, 2023, a jury found for plaintiffs Fuller and Pinilla and awarded them $63 million in damages. *Fuller I*, D.E. 470. On the same day, the court entered a final judgment against Mr. Carollo. *Id.,* D.E. 479. Here, Fuller and Pinilla, along with 15 of their wholly owned entities (which appear to be their corporate alter egos), bring a second § 1983 action, all but identical to *Fuller I*, alleging that Mr. Carollo violated their First Amendment rights. Because plaintiffs complain of the same conduct, arising out of the same nucleus of operative facts, as in *Fuller I*, this case is barred on its face by res judicata. Every alleged claim here was, or could have been, brought in *Fuller I*, which bars the SAC's claims, and requires its dismissal with prejudice.

"Res judicata bars the filing of claims which were raised ***or could have been raised*** in an earlier proceeding." *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1238 (11th Cir. 1999) (emphasis added).[3] "The purpose behind the doctrine of res judicata is that the 'full and fair opportunity to litigate protects [a plaintiff's] adversaries from the expense and vexation [of] attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.'" *Id.* (quoting *Montana v. U.S.*, 440 U.S. 147, 153–54 (1979)). In this Circuit, a claim is barred by res judicata when: "(1) there is a final judgment on the merits; (2) the decision was rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both cases." *Id.* All four elements are plainly satisfied here, and plaintiffs' claims against Mr. Carollo are barred by the judgment in *Fuller I*.

### 1. *There Is a Prior Final Judgment on the Merits by a Court of Competent Jurisdiction*

The first two elements of res judicata are easily satisfied. The *Fuller I* court entered a final judgment on the merits, after a jury verdict, on June 1, 2023. *Fuller I*, D.E. 479.[4] It does not

---

[3] "[A] party may raise a res judicata defense by motion rather than by answer where the defense's existence can be judged on the face of the complaint." *Concordia v. Bendekovic*, 693 F.2d 1073, 1075 (11th Cir. 1982).

[4] "Pursuant to the Jury Verdict entered on June 1, 2023, it is hereby ORDERED that judgment is entered in favor of Plaintiff William O. Fuller, and against Defendant, Joe Carollo, in the amount of $34,300,000.00, with interest at the statutory rate from the date of this judgment, and judgment is entered in favor of Plaintiff Martin Pinilla II, and against Defendant, Joe Carollo, in

matter that *Fuller I* is on appeal,[5] because "[t]he established rule in the federal courts is that a final judgment retains all of its res judicata consequences pending decision of the appeal." *Jaffree v. Wallace*, 837 F.2d 1461, 1467 (11th Cir. 1988) (cleaned up). Therefore, "'[a] case pending appeal is res judicata and entitled to full faith and credit unless and until reversed on appeal.'"[6] *Andreu v. HP Inc*., 272 F. Supp. 3d 1329, 1333 (S.D. Fla. 2017) (quoting *Standard Life Ins. Co. v. First Nat. Bank & Tr. Co. of Vidalia, Georgia*, 510 F.2d 272, 273 (5th Cir. 1975)).[7] The June 1, 2023 *Fuller I* judgment is a final judgment on the merits for purposes of res judicata.[8]

### 2. The <u>*Fuller I*</u> *Parties, or Those in Privity with Them, Are Identical to Those in This Case*

The third element of res judicata requires identity of the parties in both actions and bars "subsequent claims involving the same parties or their privies." *Citibank, N.A. v. Data Lease Fin. Corp.*, 904 F.2d 1498, 1502 (11th Cir. 1990). "Identity of parties concerns two sets of persons. The first set is comprised of those persons who were actual parties in the original action." *N.A.A.C.P. v. Hunt*, 891 F.2d 1555, 1560–61 (11th Cir. 1990). Fuller and Pinilla were the plaintiffs in *Fuller I* and are plaintiffs here. Mr. Carollo was a defendant in *Fuller I* and is a defendant here. As to Fuller's and Pinilla's claims against Mr. Carollo, the parties are identical.

"The second set of persons to whom res judicata applies is . . . those persons who are or were in privity with the parties to the original suit." *Hunt*, 891 F.2d at 1560. Privity exists when the party of record in the initial case and a party in the subsequent case are "sufficiently close so a judgment for or against the party ***should bind or protect*** the nonparty," or where "the [original]

---

the amount of $29,200,000.00, with interest at the statutory rate from the date of this judgment. For all of the foregoing execution shall issue." *Fuller I*, D.E. 479.

[5] *William O. Fuller, et al. v. Joe Carollo*, 23-12167 (11th Cir. 2023).

[6] The *Fuller I* court was a court of competent jurisdiction as to the § 1983 claims asserted in that case. *E.g.*, *Hilliard v. Gutierrez*, 2021 WL 2712122, at *5 (S.D. Fla. 2021).

[7] Decisions issued before October 1, 1981, by the former Fifth Circuit are binding precedent in this Court. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981).

[8] The Court may consider orders and filings in *Fuller I* and plaintiffs' other actions in deciding this motion to dismiss without converting it into a motion summary judgment. The Court can "implicitly t[ake] judicial notice of [plaintiffs'] prior action[s] because the prior orders were public record, known within the trial court's jurisdiction—as it was the court that issued the orders, and can be accurately and readily determined." *Smith v. Sec'y of Veterans Affs*., 808 F. App'x 852, 854 (11th Cir. 2020) (no error in district court's failure to convert motion to dismiss based on res judicata into summary judgment motion).

nonparty's ***interests were represented*** adequately by the party in the original suit." *Id.* (emphasis added) (internal citations omitted). The Eleventh Circuit, following *Taylor v. Sturgell*, 553 U.S. 880 (2008), recognizes six situations that demonstrate privity:

> (1) the nonparty agreed to be bound by the litigation of others; (2) a substantive legal relationship existed between the person to be bound and a party to the judgment; (3) the nonparty was adequately represented by someone who was a party to the suit; (4) the nonparty assumed control over the litigation in which the judgment was issued; (5) a party attempted to relitigate issues through a proxy; or (6) a statutory scheme foreclosed successive litigation by nonlitigants.

*Griswold v. Cnty. of Hillsborough*, 598 F.3d 1289, 1292 (11th Cir. 2010).

The first four of the six *Griswold* types of privity are obvious here. All the Entity Plaintiffs are owned or controlled by Fuller, Pinilla, or both, and all were in privity with Fuller and Pinilla during *Fuller I*, which alleged the same purported misconduct regarding those entities as the SAC does here.[9]

### a.   *The Entity Plaintiffs Agreed to Be Bound by the Litigation of Others*

All the Entity Plaintiffs agreed to be bound by the litigation in *Fuller I*. Fuller and Pinilla stated in the *Fuller I* complaint that "all claims for monetary damages that have been suffered by entities associated with Plaintiffs ***have been assigned to Plaintiffs in their individual capacities***." *Fuller I*, D.E. 125 ¶ 207 (emphasis added); *id.* ¶¶ 111, 298 ("All claims related to monetary damages have been assigned by the relevant business entity to Plaintiffs in their individual capacities.").

Plaintiffs' initial complaint here contained the same assignment allegation. Compl. ¶ 325, D.E. 1. In their amended complaint and the SAC, plaintiffs figured out that they should drop the assignment allegation, but it was too late. Those assignments were litigated in *Fuller I*, and the judgment there incorporated the assigned claims. Any claims that plaintiffs might now allege are possessed by the Entity Plaintiffs already were tried to a final judgment in *Fuller I*.

Further, the initial complaint's assignment allegations stand. The Court may consider them and "disregard the contradictory and manipulated allegations of an amended pleading[,]" where the amendment is a "transparent attempt . . . to amend [the] pleading[s] in order to avoid a

---

[9] SAC ¶¶ 6–20. Further, all of the Entity Plaintiffs purportedly assigned their claims to Fuller and Pinilla, as is alleged in both *Fuller I* and the original complaint here. *See Fuller I*, D.E. 125 ¶¶ 111, 207, 298; Compl. ¶ 325. This allegation demonstrates that the Entity Plaintiffs intended to assign whatever claims they possessed to Fuller and Pinilla during *Fuller I*.

dispositive defense," and the amended complaint directly contradict[s] the original complaint." *Fernandez v. Sch. Bd. of Miami-Dade Cnty.*, 201 F. Supp. 3d 1353, 1361 n.1 (S.D. Fla. 2016) (cleaned up). Further, in *Fuller I*, Fuller and Pinilla argued that because they had been assigned all their entities' claims, the assignments "confirm[ed] Plaintiffs' standing to pursue those claims." *Fuller I*, D.E. 162 at 15. Through those purported assignments, each of the Entity Plaintiffs agreed and intended to be bound by the judgment in *Fuller I*.

> ### b. A Substantive Legal Relationship Existed Between the Person to Be Bound and a Party to the Judgment

Independent of the Entity Plaintiffs' assignments of their claims to Fuller and Pinilla, and as the SAC alleges,[10] the Entity Plaintiffs are closely held entities owned and controlled by Fuller or Pinilla or both of them. A president or owner of a company has "an express or implied legal relationship" with the company with regard to res judicata and privity. *Access for Disabled, Inc. v. Fort Lauderdale Hosp., Inc.*, 826 F. Supp. 2d 1330, 1337 (S.D. Fla. 2011). That relationship alone would bind the Entity Plaintiffs to the *Fuller I* judgment and bar re-litigation of their purported claims. But the Entity Plaintiffs' relationship to the judgment holders is even more direct because they[11] expressly purported to assign their claims to Fuller and Pinilla.

The relationship between assignees (which Fuller and Pinilla purported to be) and assignors (which the Entity Plaintiffs purported to be) is by definition "a substantive legal relationship" for res judicata purposes. *Taylor*, 553 U.S. at 880 ("[N]onparty preclusion may be based on a pre-existing substantive legal relationship between the person to be bound and a party to the judgment, e.g., assignee and assignor."). Thus, the Entity Plaintiffs were in privity with Fuller and Pinilla and are bound by the judgment in *Fuller I* as a matter of law.

> ### c. The Entity Plaintiffs Were Adequately Represented by Someone Who Was a Party to Fuller I

Fuller and Pinilla already had the opportunity to litigate the Entity Plaintiffs' claims to a final judgment in *Fuller I*, leaving the Entity Plaintiffs with no claims to pursue. But even if no assignments had occurred, the Entity Plaintiffs' interests would have been adequately represented by their fiduciaries, Fuller and Pinilla. "Representative suits with preclusive effect on nonparties include . . . suits brought by trustees, guardians, and other fiduciaries . . . ." *Id.* at 2172–73. Under Florida law, managers of limited liability companies owe fiduciary duties to the entities

---

[10] SAC ¶¶ 6–20.
[11] With the single exception of Yo Amo Calle Siete, LLC, which was created in 2020.

they manage. Fla. Stat. § 605.04091(1). Accordingly, the Entity Plaintiffs were adequately represented by their fiduciaries, Fuller and Pinilla, in *Fuller I*.

> ### d. The Nonparty Assumed Control Over the Litigation in Which the Judgment Was Issued

One might be forgiven for thinking that the Entity Plaintiffs are mere alter egos of Fuller and Pinilla. The SAC makes clear that Fuller and Pinilla own or control all the Entity Plaintiffs and control all of their activities. *See, e.g.*, SAC ¶ 135 ("The retaliatory acts that are the subject of this lawsuit stem from a variety of protected political activity that Fuller and Pinilla expressed on their own behalf and on behalf of the businesses and properties associated with them . . . ."). Even though they were not named parties in *Fuller I*, the Entity Plaintiffs are presumed to have controlled *Fuller I* because they had "the opportunity to present proofs and argument," and "already had [their] day in court *even though [] not a formal party* to the litigation." *Taylor*, 553 U.S. at 895 (internal quotations omitted) (emphasis added). And the Entity Plaintiffs did in fact present "proofs and arguments" during *Fuller I. See, e.g.*, *Fuller I*, D.E. 563 at 27–45 (presenting evidence at trial of alleged retaliatory acts against Tower Hotel); *id.* at 58:25–59:13 (presenting evidence at trial of alleged retaliatory acts against Viernes Culturales); *id.* at 73:25–74:2 and *Fuller I*, D.E. 551 at 98–112 (presenting evidence at trial of alleged retaliatory acts against Futurama); *Fuller I*, D.E. 551 at 182–220 (presenting evidence at trial of alleged retaliatory acts against La Gran Fiesta, LLC).[12]

 Further, Pinilla and Fuller, as the Entity Plaintiffs' owners and managers, had the right, duty, and power to sue on their behalf in *Fuller I*. By choosing not to do so, and instead taking purported assignments of the Entity Plaintiffs' claims, presenting evidence of the Entity Plaintiffs' claims during the *Fuller* I trial, and requesting that that the pleadings there be conformed to the evidence, Fuller and Pinilla exercised control on behalf of those entities in *Fuller I. See Griswold*, 598 F.3d at 1293 ("As Griswold's counsel conceded at oral argument, Griswold had complete control over the prior litigation as the Companies' president and sole shareholder. The district court therefore did not err by holding that Griswold was in privity with the Companies.").

---

[12] At the end of the *Fuller I* trial, the court granted Fuller and Pinilla's request to conform the pleadings to the evidence. *Fuller I*, D.E. 567 at 125:11–16.

In sum, for res judicata purposes, there is identity of parties across both lawsuits as to Fuller and Pinilla, and—with four kinds of *Griswold* privity established—there is identity of parties as to the Entity Plaintiffs as well.

### 3. The Second Amended Complaint Arises from the Same Facts and Alleges the Same Claims as *Fuller I*

"'[I]f a case arises out of the same nucleus of operative facts, or is based upon the same factual predicate, as a former action, . . . the two cases are really the same "claim" or "cause of action" for purposes of res judicata.'" *Griswold*, 598 F.3d at 1293 (quoting *Ragsdale*, 193 F.3d at 1239). Where the "primary right and duty" in previous and pending lawsuits are the same, the causes of action are the same. *Jaffree*, 837 F.2d at 1469. Both *Fuller I* and this case assert 42 U.S.C. § 1983 claims arising under the First Amendment. The causes of action in both cases are the same. Further, the factual predicate for the claims is the same, and both cases arise from a common nucleus of operative facts. In this case, as in *Fuller I*, plaintiffs seek damages for alleged actions by Mr. Carollo against "Fuller and Pinilla, including by targeting their business interests." *Compare* SAC ¶¶ 55–62, *with Fuller I*, D.E. ¶¶ 59–62 ("Upon taking office, Carollo immediately drew up a list of Plaintiffs' properties and associated businesses in District 3 . . . . Carollo said he had a list of addresses for Fuller's properties that he would give to Diez, from which Diez understood Carollo was asking him to selectively target Fuller's properties.").

#### a. The Entity Plaintiffs' Claims Were Raised and Litigated by Fuller and Pinilla in *Fuller I*

Plaintiffs' claims in this action arise from the same facts as the claims they already litigated in *Fuller I* or from a common nucleus of operative facts as to those claims.[13] Six such examples[14] include:

---

[13] The SAC is not merely a re-hash of *Fuller I*, but in many places, an outright cut-and-paste job. *Compare Fuller I*, D.E. 125 ¶¶ 23–26, *with* SAC ¶ 42; *Fuller I*, D.E. 125 ¶¶ 284–86, *with* SAC ¶¶ 3256–58; *Fuller I*, D.E. 125 ¶ 292, *with* SAC ¶ 3264. A telling example is found in the SAC's Counts 112 and 123, which make clear that Fuller and Pinilla have sued here to recover a second time on claims for which a jury already awarded them damages in *Fuller I*. The allegations of Counts 112 and 123 are copied and pasted from the "summary of damages" in *Fuller I*, and the SAC alleges no facts arising from facts different than those alleged in *Fuller I*. *Compare* SAC ¶¶ 3262–65; 3643–53 (seeking $5 million in damages), *with Fuller I*, D.E. 125 ¶¶ 283–93 (same).

[14] These six Entity Plaintiffs' purported claims already were litigated, and so were the others' except for one: Yo Amo Calle Siete, LLC, organized in 2020. Every other Entity Plaintiff in *Fuller II* is a party that assigned its claims to Fuller and Pinilla in *Fuller I* and travels on purported bad acts that were alleged, litigated, and tried in *Fuller I*.

- Futurama, LLC alleges that "Carollo enlisted the City Attorney (Mendez) and the Assistant City Attorney (Dooley) to assist him in revoking prior permits, refusing to grant new permits, changing existing ordinances and passing new ordinances to prohibit the operation of Futurama's tenant— a popular restaurant named 'Sanguich de Miami'—forcing Sanguich to end its tenancy with Futurama SAC ¶ 63. *Fuller and Pinilla individually made the same allegations in Fuller I*. *Fuller I*, D.E. 125 ¶¶ 91–112; 294 ("The machinations of Carollo . . . succeeded in shutting down Sanguich on property owned and rented by Plaintiffs . . . . Plaintiffs have suffered monetary damages as a result of Carollo forcing Sanguich to relocate off of Plaintiffs' property . . . .").

- Calle Ocho Marketplace, LLC alleges that it incurred more than $14.48 million in damages when Mr. Carollo allegedly worked to revoke a Temporary Use Permit and a Building Permit on the property in September 2018. SAC ¶¶ 2699–2703; 2720. *Fuller and Pinilla individually made the same allegations in Fuller I*. *Fuller I*, D.E. 125 ¶¶ 176–90 ("Another target on Carollo's hit list was Plaintiffs' property located at 1380 SW 8th Street, known as Calle Ocho Marketplace . . . . On September 4, 2018, Plaintiffs received a letter from the City indicating that it was revoking the Farmer's Market TUP on the property . . . the City also indicated it would revoke the building permit, which it did 7 days later on September 11, 2018.").

- Lhab Tres, LLC alleges that it incurred more than $5 million in damages when it "entered into a contract to acquire the property located at 1510 SW 7th St," and "[i]n the middle of these negotiations, the seller refused to continue negotiating because the City of Miami was seeking to buy the property, which it did for $1 million . . . ." SAC ¶¶ 2847–51. *Fuller and Pinilla made the same allegation in Fuller I*. Fuller I, D.E. 125 ¶¶ 276–78 ("Plaintiffs have learned that since late 2018, Carollo has engaged in a campaign to direct City officials . . . to purchase properties adjacent to Plaintiff's current properties . . . includ[ing] 711 SW 15th Ave., 1474 SW 7th St., 1510 SW 7th St., and 200-230 SW 12th Ave . . . .").

- Viernes Culturales/Cultural Fridays, Inc., for which Fuller served as president at least through October 2021, alleges that it has sustained more than $10 million in damages as a result of Mr. Carollo's alleged attempt to use the City's permitting process to shut down the Viernes Culturales festival. SAC ¶¶ 2067–83. *This same conduct was alleged in, and arises from the same nucleus of operative facts as, Fuller I*. *Fuller I*, D.E. 125 ¶¶ 216–24 ("In August 2018, Carollo ordered that Domino Plaza be shut down and physically barricaded . . . . Carollo's closing of Domino Plaza is a direct attempt to target and destroy Viernes Culturales simply because Fuller is the President . . . .").

- Futurama, LLC alleges that it has incurred more than $7.87 million in damages due to Mr. Carollo allegedly having driven away tenants. SAC ¶¶ 2210–34. *The same conduct was alleged in Fuller I*. *Fuller I*, D.E. 125 ¶ 295 ("Carollo's various attacks on Plaintiffs' businesses and tenants in the Futurama building have caused Plaintiffs to suffer monetary damages in excess of $600,000.").

- La Gran Fiesta, LLC seeks recovery for Mr. Carollo's alleged targeting of their restaurant Taquerias el Mexicano. SAC ¶¶ 398–408. ***This claim, too, is a re-allegation from Fuller I***. *Fuller I*, D.E. 125 ¶ 296.

The claims of Barlington Group, LLC, Calle Ocho Marketplace, LLC, Lhab Tres, LLC, Viernes Culturales/Cultural Fridays, Inc., and Futurama, LLC—like claims of La Gran Fiesta, LLC, based on an alleged raid on Taquerias el Mexicano, and all other alleged claims here—arise from the same nucleus of operative fact as the conduct and claims already litigated in *Fuller I*. Those claims already were tried to a jury by Fuller and Pinilla.

Because Fuller and Pinilla sued, and recovered, on their individual (and assigned) First Amendment claims in *Fuller I*, those claims here are barred by res judicata and should be dismissed with prejudice.

  b. *The Entity Plaintiffs' Claims Arise from the Same Conduct Already Alleged and Litigated by Fuller and Pinilla in* <u>Fuller I</u>

The *Fuller I* jury trial began on April 10, 2023. *Fuller I*, D.E. 384. Only a single allegation in the SAC, naming Mr. Noriega as a defendant, postdates the *Fuller I* trial. *See* SAC ¶ 2585.[15] That bears repeating: only a single paragraph out of 4,403 paragraphs. At the end of the *Fuller I* trial, after Fuller and Pinilla, for weeks, presented evidence of their and their entities' claims, the *Fuller I* court conformed the pleadings to the evidence at trial, and the jury considered all evidence of all claims in issuing its verdict. *Fuller I*, D.E. 567 at 125:11–16. ***There are no allegations against Mr. Carollo in plaintiffs' SAC that accrued, or are based on "bad acts" that occurred, after the Fuller I complaint.***[16] All of plaintiffs' allegations here were raised at trial in *Fuller I* with an opportunity to present evidence on each claim (all evidence that already existed at the time of trial), and "arose directly from the same 'operative nucleus of facts,' involving the same 'primary right and duty.'" *Jaffree*, 837 F.2d at 1469. "The doctrine of res judicata bars all subsequent suits raising allegedly new theories, unless a substantial change in the underlying facts or law has transpired." *Id.*

There is no doubt that Fuller and Pinilla knew of their individual claims and the Entity

---

[15] "Recently, in late October of 2023, the City Manager (Noriega) instructed the Code Enforcement Department to research placing a violation on LHAB TOO for removal of trees." Nowhere does the SAC go on to allege that anything actionable came of this.

[16] *See, e.g.*, Brickell Station, LLC's allegations in Count III, Yo Amo Calle Siete, LLC's allegations in Count V, Lhab Tres, LLC's allegations in Count XIV, the Barlington Group, LLC's allegations in Count XV.

Plaintiffs' claims before and during the *Fuller I* trial. *See* SAC ¶ 51 ("Carollo's political retaliation against Fuller and Pinilla for their support of his opponent began immediately upon his taking office in December 2017."); *id.* ¶ 144 (It "'was openly known throughout the city, I mean, down in the park people talk about it, the community talks about it, it was in wide open knowledge in Miami that [Fuller] was being targeted.'"); *id.* ¶ 159 ("[I]n 2018, Carollo repeatedly appeared on radio shows to maliciously defame ***Plaintiffs*** by falsely stating they were criminals . . . .") (emphasis added).  Because any purported claims arose as early as 2017, and because from 2017 through the conclusion of the *Fuller I* trial all plaintiffs knew of all their claims, all the claims in the SAC could have, and should, have been raised then.

In *Jaffree*, plaintiffs sued on behalf of five minor children. *Jaffree v. Wallace*, 837 F.2d 1461, 1464 (11th Cir. 1988). The case arose directly from a previously filed case to which plaintiffs had been parties but later withdrew. *Id*. The Eleventh Circuit affirmed the district court's finding that plaintiffs were "estopped to file a second action *raising the same issues which they [previously] had the opportunity to litigate* but chose to abandon." *Id*. (emphasis added). The Eleventh Circuit rejected plaintiffs' theory that their action concerned "events that occurred after they dropped out" of the first action, because a comparison of the two actions "reveal[ed] that the two cases arose from the same 'operative nucleus of facts' and involved the same 'primary right and duty.'" *Id*. at 1469 (citation omitted). In both actions, plaintiffs "sought to enjoin state and local officials from 'executing any agreement between themselves or others which denies plaintiffs their free speech rights . . . and/or establishes religion in the public schools.'" *Id*. In their second action, plaintiffs sued the same parties as in their first action, and alleged the same First Amendment claims as in their first action. *Id*. The court found that res judicata barred the Jaffrees' claims. *Id*.[17]

So it is here. Plaintiffs allege the same First Amendment claims, arising from the same conduct, as in *Fuller I*. They allege that since February 2019, Mr. Carollo caused the City of Miami Commission to pass resolutions targeting Fuller's and Pinilla's businesses by finding

---

[17] In *Hilliard v. Gutierrez*, the court stated that "[t]he causes of action in this case are almost identical to those in *Hilliard I* and they are based upon the same events on May 17, 2016." *See* 2021 WL 2712122, at *5 (S.D. Fla. 2021). The court found the fact that "the claims in this action assert different theories of liability than the claims in *Hilliard I* is immaterial to the Court's analysis. As with many of the claims that were ultimately adjudicated in *Hilliard I*, both claims in this action center around whether Plaintiff's Fourth Amendment rights were violated when Officer Gutierrez arrested him." *Id*.

violations related to "no certificate of use, certificate of use obtained under false pretenses and/or properties with violations that pose life-safety issues, and initiat[ing] injunctive proceedings against said properties until the properties are brought into compliance." SAC ¶¶ 68-71. All of this alleged conduct preceded plaintiffs' filing of the operative complaint in *Fuller I*, and all of it was alleged (and litigated) in that case. *See Fuller I*, D.E. 125 ¶¶ 255–68. The Entity Plaintiffs all bring claims arising from alleged "bad acts" in and after February 2019, as to which their fiduciaries and privies, Fuller and Pinilla, already litigated First Amendment claims.

In sum, the doctrine of res judicata squarely bars this action—even as twice amended—and each of plaintiffs' claims, all of which were or could have been litigated in *Fuller I*. A court of competent jurisdiction issued a final judgment on the merits in *Fuller I*. The parties, Fuller and Pinilla, and the Entity Plaintiffs in privity with them, are identical in both suits. Both cases assert the same claims arising from the same conduct and a common nucleus of operative facts. Calling it a "conspiracy" and suing a dozen people doesn't change the fact that all four elements of res judicata are satisfied.[18] Putting a new label on previously litigated (and adjudicated) facts doesn't alter the calculus. Plaintiffs' claims against Mr. Carollo are barred by judgment and this Court should dismiss them with prejudice.

## B. The Amended Complaint Is an Impermissible Shotgun Pleading and the Entity Plaintiffs Fail to State a Claim

Although plaintiffs this time set forth their claims against Mr. Carollo individually, the allegations that follow still lump together multiple defendants, again failing to put any individual defendant on notice of the claims against him, her, or it. Legal conclusions are still rampant throughout. Further, as Mr. Carollo predicted in his Motion to Dismiss the [Initial] Complaint,[19] breaking out the claims of each plaintiff has made it even more clear that none of the Entity Plaintiffs has alleged that they engaged in any speech or other activity that qualifies for First

---

[18] The SAC's "conspiracy" allegations (and Count 135) should be dismissed because the purported conspiracy occurred "within a governmental entity," which is legally incapable of conspiring with its employees and elected officials. *Rehberg v. Paulk*, 611 F.3d 828, 854 (11th Cir. 2010). "[T]here does not appear to be a distinction drawn in the case law between agents of the governmental entity who are elected officials and agents of the governmental entity who are employees." *Horne v. Russell Cnty. Comm'n*, 295 F. Supp. 2d 1289, 1294 (M.D. Ala. 2003). In this regard, Mr. Carollo fully adopts the City's intracorporate-conspiracy argument on pages 19-21 of its motion to dismiss the complaint, D.E. 59, pages 16-18 of its motion to dismiss the amended complaint, D.E. 92, and pages 17-18 of its motion to dismiss the SAC.
[19] D.E. 58 at 15–19.

Amendment protection. Because the SAC is still a shotgun pleading, and because no Entity Plaintiff has alleged any protected speech or conduct, the SAC is fatally flawed and warrants dismissal with prejudice.

### 1. The Amended Complaint is STILL an Impermissible "Shotgun Pleading"

The Eleventh Circuit and other courts condemn shotgun pleadings. *See Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1321 n.9 (11th Cir. 2015) (collecting cases) (A shotgun pleading is one that, among other things, is littered with "conclusory, vague and immaterial facts not obviously connected to any particular cause of action."). The amended complaint demonstrates every infirmity *Weiland* condemns.

#### a. The Amended Complaint STILL Improperly Lumps Together Allegations Against Multiple Defendants and Relies on Legal Conclusions

Plaintiffs purported to cure their previous complaints' shotgun pleading by creating subtitles and separate counts that appear to be organized by plaintiff and promise to detail each plaintiff's claims against a specific defendant. This was no cure-all, and only made things worse, by creating a new problem: the new "individual" counts still allege the same conduct in a way that fails to put each defendant on notice of the allegations solely against him, her, or it. *See D.B.C. Corp. v. Nucita Venezolana, C.A.*, 464 F. Supp. 3d 1323, 1327 (S.D. Fla. 2020) ("[M]ere referencing of a multitude of allegations makes it difficult for the many Defendants (and Court) to ascertain what, exactly, their specific alleged misconduct entails . . . . [T]he Court must still 'sift out the irrelevancies, a task that can be quite onerous'—and one the Court declines to undertake given the numerosity of allegations.").

The SAC's sweeping, repetitive, undifferentiated allegations do not "give fair notice of what one defendant allegedly failed to do as opposed to the other." *See Gazzola v. NCL (Bahamas) Ltd.*, 2019 WL 3067506, at *2 (S.D. Fla. 2019); *Pierson v. Orlando Reg'l Healthcare Sys., Inc.*, 619 F. Supp. 2d 1260, 1271–74 (M.D. Fla. 2009) (using a single defined term for all defendants to allege each of their involvement in a complex, peer-review process was improper), *aff'd*, 451 Fed. App'x 862 (11th Cir. 2012) (per curiam); *Synergy Real Estate of SW Fla. v. Premier Prop. Mgmt. of SW Fla., LLC*, 2013 WL 5596795, at *2 (M.D. Fla. 2013) (same).

For example, and typical of each succeeding count against Mr. Carollo, Count 1 is styled "PLAINTIFF LHAB'S 42 U.S.C. § 1983 CLAIM AGAINST DEFENDANT CAROLLO." A legally sufficient claim would have to set out Little Havana Arts Building's allegations against Mr. Carollo. However, extensive allegations against other defendants plague this count:

- "On February 14, 2019—under Carollo's pressure and with the help of the City Attorney (Mendez)—the City created a multi-department task force under Mendez to target properties and property owners related to Fuller and Pinilla." SAC ¶ 172.

- "Despite disagreeing with the merits underlying the supposed violation, LHAB nevertheless worked diligently with the City to develop and submit a plan to cure the purported 'issues.'" SAC ¶ 174.

- "On or about May 27, 2020, the City Manager met with the City Building Director and 'almost the entire City Attorney office' to 'talk[ ] about Bill Fuller' and Martin Pinilla and to update policies to shut properties down." SAC ¶ 183.

- "The very next day, on May 28, 2020, the Chief of Unsafe Structures sent the Building Director a list of properties and property owners associated with Fuller and Pinilla." SAC ¶ 184.

Further, the SAC remains a chaotic mash-up of legal conclusions and speculation. *See Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1333 (11th Cir. 2010) (Legal conclusions "are not entitled to the assumption of truth."); *Harrison v. Bd. of Regents of Univ. Sys. of Georgia*, 519 F. App'x 641, 643 (11th Cir. 2013) ("Despite specific instructions to the contrary, the second amended complaint contained conclusory legal allegations, did not allege specific facts . . . and, at 82 pages and 295 paragraphs in length, could not be characterized" as short and plain) (per curiam).

Count 17, styled "PLAINTIFF BRICKELL STATION'S 42 USC § 1983 CLAIM AGAINST DEFENDANT CAROLLO," names Mr. Carollo in the heading, yet the count is devoid of *factual* allegations against Mr. Carollo, and instead recites legal conclusions:

- "Carollo spearheaded a campaign of selective enforcement that was designed to retaliate against Brickell Station in order oppose and silence such political expression, including by 'using his position and power to weaponize the City government' against those who 'chose to exercise their First Amendment rights' in opposition to him." SAC ¶ 571.

- "In February of 2020, Carollo met with the City Manager (Noriega) and the City Attorney (Mendez) dozens of times concerning Fuller, Pinilla, and the businesses associated with them, with the intention of deliberately crafting City policy to punish and deter their First Amendment activities." SAC ¶ 572.

- "Carollo, in retaliation against Plaintiffs' Fuller and Pinilla, targeted Brickell Station in reckless disregard for Fuller and Pinilla's First Amendment Rights of Free Speech, and Brickell Station's Rights of Free Association. And Carollo was, and still is, motivated by an evil intent to drive Plaintiff out of business and deprive them of their constitutional rights." SAC ¶ 585.

This count also is littered with allegations against other defendants:

13

- "On May 27, 2020—the City Manager met with the Building Director and 'almost the entire City Attorney office' to 'talk[ ] about Bill Fuller' and Martin Pinilla to update ordinances and policies to target them and properties and property owners related to them." SAC ¶ 573.

- "On or about January 6, 2022, the City of Miami—consistent with the official policies and widespread customs implemented by Carollo—baselessly accused Brickell Station of having done work without a permit." SAC ¶ 574.

- "This accusation was baseless as the City of Miami's own microfilm department knew that all of the work it accused Brickell Station of doing without a permit had in fact been done years ago, with a permit." SAC ¶ 575.

- "Even if the January 6 violation were not plainly meritless, it should not have affected the sale of the property because the City allowed for 'trilateral agreements' to place the burden of bringing a property under sale into compliance on the buyer." SAC ¶ 577.

- "However, the City of Miami refused to extend this policy to Plaintiff Brickell Station simply because of its association with Plaintiffs Fuller and Pinilla." SAC ¶ 580.

- "The City stated such a favorable policy 'was not available to them.'" SAC ¶ 581.

- "On February 22, 2022, the City altered its longstanding City practices and policies in the Building and Legal Departments to justify its denial of allowing Brickell Station to enter into the trilateral agreement." SAC ¶ 582.

These same deficiencies infect the all the counts naming Mr. Carollo. *See* SAC ¶¶ 744–45, 747, 751–52, 754–57, 761, 765, 768–70, 776, 781–82, 784 (Piedra Villas, LLC's allegations against Mr. Carollo include Marrero, Dooley, and the City); SAC ¶¶ 1072–81 (Yo Amo Calle Siete, LLC's allegations against Mr. Carollo include the City and Dooley); SAC ¶¶ 1245, 1257, 1259–60, 1262–73, 1277–78 (Beatstik, LLC's allegations against Mr. Carollo include Diaz, the City, Noriega, Mendez, and Dooley); SAC ¶¶ 1562, 1564–66, 1569–70, 1573, 1579, 1582–92 (El Shopping, LLC's allegations against Mr. Carollo include Diaz, the City, and Ortiz); and so on for all the Entity Plaintiffs.

The SAC also restates illogical, improper group pleading allegations from the initial and first amended complaints, repeatedly claiming that bad things happened to "Plaintiffs"—two persons and 15 entities—but alleging things that only can happen to human beings, not entities:

- "Carollo himself made his targeting of Plaintiffs clear through his prior conduct, which was known to the other Defendants. For instance, in 2018, Carollo repeatedly appeared on radio shows to maliciously defame Plaintiffs by falsely stating they were criminals with ties to corrupt South American politicians, mafiosos, and leasing to pimps and prostitutes, among other falsehoods." SAC ¶ 159, compared to Am. Compl. ¶ 128 and Compl. ¶ 327.

14

- "As a result of Defendants' retaliation, Plaintiffs are reluctant to participate in the political process by supporting candidates for office." SAC ¶ 150, copied from Am. Compl. ¶ 181 and Compl. ¶ 362.

Finally, many purported "bad acts" supposedly were committed by non-parties whom the SAC doesn't identify, which renders even more opaque the insoluble question of which claims lie against which defendants. These unidentified mystery players include:

- "10 or more armed officers wearing bulletproof vests, and multiple code enforcement raids, consisting of dozens of code enforcement, police, fire department officers and inspectors with Florida's Department of Alcohol Beverage and Tobacco ("ABT")." SAC ¶ 392.

- "The Zoning Administrator who revoked LHAB's CU . . . ." SAC ¶ 210.

- "Raids by Police, Fire, and Code Officers continued . . . ." SAC ¶ 409.

- "[T]hree Building Department inspectors . . . ." SAC ¶ 410.

- "25-30 City of Miami personnel including police, fire, building and code enforcement officers." SAC ¶ 2213.

Whatever the SAC is, at 4,403 repetitious, improperly framed and aimed paragraphs, it is not the "short and plain statement of the claim" that Fed. R. Civ. P. 8(a)(2) requires. Instead, "[w]hat the [complaint] lacks in substance and legal support[,] it seeks to substitute with length, hyperbole, and the settling of scores and grievances." *Trump v. Clinton*, 626 F. Supp. 3d 1264, 1285 (S.D. Fla. 2022). It is no surprise that quintupling the size of the amended complaint, to a size *ten times* that of the initial complaint—failed to make it *clearer*. The SAC may be a masterpiece of copy-and-paste, but even with 643 pages and 4403 paragraphs to accomplish its task, fails to do the bare minimum: put defendants on notice of the allegations against them.

This failure warrants dismissal with prejudice. *See, e.g., Vibe Micro Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018) (affirming dismissal with prejudice of a shotgun second amended complaint that had "ballooned to 70 pages," contained duplicative allegations, labeling and numerical inconsistencies, and "'continue[d] to fail to provide even minimal notice to the individual Defendants as to what conduct they are alleged to have participated in'") (cleaned up); *Harrison v. Bd. of Regents of Univ. Sys. of Georgia*, 519 F. App'x 641, 643 (11th Cir. 2013) ("Despite specific instructions to the contrary, the second amended complaint contained conclusory legal allegations, did not allege specific facts . . . and, at 82 pages and 295 paragraphs in length, could not be characterized" as short and plain.) (per curiam).

## 2.  *The Entity Plaintiffs STILL Fail to State a Claim Under § 1983*

Plaintiffs reworded the SAC, purportedly to allege violations of First Amendment rights

of free speech and association. But not one Entity Plaintiff alleges *any* speech of its own, let alone a Section 1983 claim based on purported suppression of speech.[20]

> a.   *The Entity Plaintiffs Fail to Allege Their Own Speech or Expression*

In the counts aimed at Mr. Carollo, the SAC alleges that Fuller and Pinilla "engaged in political expression on behalf of, and in support of, the Entity Plaintiffs" by:

> a) hosting rallies for Carollo's opponent Alfie Leon and supporting social media advertising for Leon, b) causing Carollo to harbor the false belief that Plaintiffs were financing a lawsuit that Alfie Leon filed against Carollo challenging his right to run for District 3 Commissioner, c) causing Carollo's false belief that Plaintiffs were organizing or participating in efforts to recall Carollo, d) filing an ethics complaint against Carollo, e) filing lawsuits, including lawsuits to stop the demolition of their buildings, and a federal lawsuit against Carollo, f) hosting a press conference to expose Carollo's history of code violations at his home in Coconut Grove, g) promoting African-American and Afro-Cuban murals in Calle Ocho that Carollo disliked, and h) generally expressing a different vision for Calle Ocho and Little Havana that threatened Carollo's desires [or contravened Defendants' or Carollo's political preferences].

SAC ¶ 135, 167, 390, 570, 740, 1067, 1240, 1557, 1862, 2065, 2206, 2331.[21]

This is legally insufficient. The law is clear that the Entity Plaintiffs "must assert [their] own legal rights and interests[] and cannot rest [their] claim to relief on the legal rights or interests of third parties." *Wolff v. Cash 4 Titles*, 351 F.3d 1348, 1353 (11th Cir. 2003) (cleaned up); *see West v. Atkins*, 487 U.S. 42, 48 (1988) (explaining the elements that each plaintiff must plead and prove to show that its constitutional rights were violated); *145 Fisk, LLC v. Nicklas*, 986 F.3d 759, 767 (7th Cir. 2021) (dismissing retaliation claim where entity plaintiff did not allege the exercise of its own free-speech rights); *Bridges v. Gilbert*, 557 F.3d 541, 554 (7th Cir. 2009) (holding that plaintiff "ha[d] no 'underlying claim' that implicates his own right of access to the courts"); *Falco v. Zimmer*, 767 F. App'x 288, 307 (3d Cir. 2019) ("[O]ne cannot claim First Amendment protection for the speech of another."); *Leake v. Drinkard*, 14 F.4th 1242, 1247

---

[20] With regard to plaintiffs' purported allegations involving First Amendment rights of association, Mr. Carollo adopts in full Section V of Arthur Noriega's motion to dismiss the amended complaint, D.E. 88.

[21] Mr. Carollo's alleged "false belief" and "different vision" are not speech at all, let alone speech by any plaintiff. SAC ¶ 135; *see Rumsfeld v. Forum for Academic & Inst'l Rights, Inc.*, 547 U.S. 47, 49, 65–66 (2006) (Symbolic speech requires inherently expressive conduct, like flag burning.); *Zinman v. Nova SE. Univ., Inc.*, 2023 WL 2669904, at *5 (11th Cir. 2023) (stating that speech requires the "intent to convey a particular message," a great likelihood "that the message would be understood by those who viewed it," and that a "reasonable person would interpret the conduct as some sort of message").

(11th Cir. 2021) (Whether someone's "personal right" to free speech "has been abridged depends crucially on whose speech is at issue.").

Crucially, several of the Entity Plaintiffs didn't even exist when plaintiffs allege that: they "host[ed] rallies for Carollo's opponent Alfie Leon and support[ed] social media advertising for Leon" on November 18 and 19 of 2017; when they "fil[ed] an ethics complaint against Carollo" on March 12, 2018; when they "fil[ed] a federal lawsuit against Carollo" on October 11, 2018; or when they "host[ed] a press conference to expose Carollo's history of code violations at his home in Coconut Grove" in May 2019. SAC ¶ 135, 1067, 1557, 2331; *see 145 Fisk, LLC*, 986 F.3d at 767 (Entity plaintiff failed to assert its own rights when it alleged another person's petition rights in 2017, and "did not even exist prior to 2018."); D.E. 88, Ex. 1, 2 (Little Havana Bungalows LLC, formed 5/5/2018; El Shopping LLC, formed 12/12/2018; and Yo Amo Calle Siete LLC formed 8/27/2020).

As for the Entity Plaintiffs that *did* exist at the time of Fuller and Pinilla's alleged speech, none have alleged *any facts* to support the bald assertion that Fuller and Pinilla were speaking and acting on their behalf, only their own self-serving legal conclusions. Nothing allows Fuller and Pinilla's speech to be imputed to the Entity Plaintiffs, each of which must allege its own constitutional rights and facts supporting a claim of infringement. *See Wolff*, 351 F.3d at 1353.

> *b.   The Only Entity Plaintiff that Tries to Make Specific Speech or Expression Allegations Does Not Assert a Legally Sufficient § 1983 Claim*

In Count 63, titled "PLAINTIFF VIERNES CULTURALES' 42 USC § 1983 CLAIM AGAINST DEFENDANT CAROLLO," plaintiffs allege that Viernes Culturales/Cultural Fridays, Inc. "coordinates the popular Viernes Culturales/Cultural Fridays art, music[,] and culture festival" held on the last Friday of every month. SAC ¶ 2068. However, there are no allegations that this "festival" is held "in pursuit" of any "political, social, economic, educational, religious, and cultural ends," or that it intends "to convey a particular message"— allegations that are essential to a claim involving protected speech. *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984); *Zinman*, 2023 WL 2669904, at *5. The reader is left to wonder whether this event promotes anything more than alcohol sampling. *See* SAC ¶¶ 2068, 2073-2074.

The original complaint and amended complaint failed to allege that plaintiffs Little Havana Arts Building, LLC, La Gran Fiesta, LLC, Brickell Station, LLC, Piedra Villas, LLC, Yo Amo Calle Siete, LLC, Beatstik, LLC, El Shopping, LLC, Tower Hotel, LLC, Futurama, LLC, Little Havana Bungalows, LLC, Little Havana Arts Building Too, LLC, Calle Ocho Marketplace,

LLC, LHAB Tres, LLC, or Barlington Group, LLC *ever said anything to anyone*. The SAC does nothing to disturb this perfect record of *no speech allegations*. It was plaintiffs' chance to remedy, or at least improve on, their previous shotgun pleadings. They failed, and the SAC should be dismissed with prejudice.

### C.  The Complaint Was Filed Too Late, and the Statute of Limitations Has Run

It was clear on its face that the initial complaint was time-barred. Two versions later, the SAC offers nothing—because there is nothing to offer—to address, let alone cure, this infirmity.

Section 1983 claims "are subject to the statute of limitations period governing personal injury actions in the state where the action is brought." *Wellons v. Comm'r. Ga. Dept. of Corr.*, 754 F.3d 1260, 1263 (11th Cir. 2014) (citation omitted). Here, the applicable limitations period under Florida law is four years. *Omar ex rel. Cannon v. Lindsey*, 334 F.3d 1246, 1251 (11th Cir. 2003). That said, "the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (emphasis added). The limitations period for a § 1983 claim starts running when a plaintiff knows or should have known it has "suffered the injury that forms the basis of [its] complaint and [] who has inflicted the injury." *Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003).

Plaintiffs say they knew in 2018 that Mr. Carollo purportedly was targeting them. SAC ¶ 159 ("[I]n 2018, Carollo repeatedly appeared on radio shows to maliciously defame Plaintiffs by falsely stating they were criminals with ties to corrupt South American politicians, mafiosos, and leasing to pimps and prostitutes, among other falsehoods."). Further, plaintiffs doubtless knew of any purported conspiracy no later than February 14, 2019—more than four prior to the commencement of this action. SAC ¶ 159 ("And, during the Valentine's Day Massacre in February 2019, the City's most senior policy makers – including Mayor Suarez, City Manager Gonzalez, and Police Chief Colina – *publicly stated* Carollo was targeting Plaintiffs and seeking to close their businesses as political payback.") (emphasis added). Plaintiffs expressly allege that Mr. Carollo's purported disdain for them was widely known to Fuller, Pinilla, and their businesses. SAC ¶¶ 141-44 (It "'was openly known throughout the city, I mean, down in the park people talk about it, the community talks about it, *it was in wide open knowledge in Miami* that [Fuller and any Fuller related business] was being targeted.") (emphasis added). Even if some plaintiffs could try to sustain a claim on grounds of a continuing violation, most—alleging only a single, discrete act of retaliation—would still be time-barred. In this regard, Mr. Carollo adopts in full the arguments made by Arthur Noriega in section IV of his Motion to Dismiss the

Complaint, D.E. 53, section VIII of his Motion to Dismiss the Amended Complaint, D.E. 88, and section IX of his Motion to Dismiss the Second Amended Complaint.

### D. Because the Second Amended Complaint Admits that Some City Enforcement Actions Were Justified, And Does Not Demonstrate that the Others Were Unjustified, Plaintiffs Have No § 1983 Claim

The SAC still does not remedy a core problem: the Individual Plaintiffs are scofflaws who admit violating City of Miami codes and ordinances in some instances, and fail to allege that the subject properties were in compliance as to the rest. This means that probable cause existed for each alleged enforcement action, which nullifies plaintiffs' allegations of constitutional violations.

Violations of local laws or codes nullify a § 1983 action alleging improper enforcement of those laws or codes. *See O'Boyle v. Com. Grp., Inc.*, 2023 WL 2579134, at *3 (11th Cir. 2023) ("[T]he parties' stipulation that there was probable cause to charge Martin O'Boyle with trespass and disorderly conduct was fatal to his retaliatory prosecution claim."); *Bey v. City of Tampa Code Enf't*, 607 F. App'x 892, 896–97 (11th Cir. 2015) (Plaintiff could not state a case for § 1983 religious discrimination where she admitted to the code violations and had simply chosen not to comply with land-use ordinances); *6420 Roswell Rd., Inc. v. City of Sandy Springs*, 484 F. Supp. 3d 1321, 1339 (N.D. Ga. 2020) ("Defendants have presented a bona fide, serious fire code violation. The Court therefore finds that Defendants' conduct did not violate Plaintiff's First Amendment rights."). Put simply, a lawful basis for governmental action breaks the causal link between a defendant's alleged retaliatory animus and a plaintiff's alleged § 1983 injury. *O'Boyle*, 2023 WL 2579134, at *4.

In the SAC, however, plaintiffs again admit that they violated City building and zoning, and health and safety ordinances. Here, plaintiffs re-worded several allegations in their first amended complaint to avoid admitting a lawful basis for code enforcement. Nonetheless, plaintiffs' attempt to plead around their previously admitted violations is unavailing. The SAC still contains admissions that in the following instances, plaintiffs were not compliant with safety standards and were operating without necessary permits:

- "The back staircases had never been deemed unsafe or not in compliance. Moreover, due to the passage of time, the staircases had been grandfathered in." SAC ¶ 758, *compare* Am. Compl. ¶ 313 ("[T]he dimensions would not need to meet the current fire code standards that they were grandfathered in").

19

- "Prior to October 2018, despite its heavy involvement in and support of the festival, the City of Miami had never requested or required Viernes Culturales in its 18 years of existence to pull any type of events permit." SAC ¶ 2069, *compare* Am. Compl. ¶ 488 ("During the 18-year history of the Viernes Culturales festival, and right up until October 2018, Viernes Culturales had never applied for or obtained a special events permit in relation to Domino Plaza, where a key part of the festival occurred.").

Plaintiffs' continued, stubborn silence as to other code violations is just as damning as the foregoing admissions. Those violations also are inimical to their purported claims, and the SAC was another chance for plaintiffs to address or deny them. They did neither. For example, plaintiffs maintain that:

- "On December 2, 2020, the City of Miami entered a third Unsafe Structure Notice (BB20200220082614) for failure to obtain the required 40-50-Year Recertification Process. Thereafter, Piedra Villas hired: (a) JCD Architect, Inc. to prepare the plans, (b) Roman Engineering & Associates as the structural engineer, and (c) Fritz Masson as the permit expeditor." SAC ¶¶ 747-8.

- "On October 13, 2021, after the City of Miami threatened to demolish El Shopping's Property, El Shopping signed a Compliance Agreement." SAC ¶ 1579.

- "On February 18, 2022, the City's Order of the Unsafe Structure Panel was issued ("the Beatstik Order") without a hearing." SAC ¶ 1257.

- "On October 21, 2022, the City went to Futurama to issue a violation for Viernes Culturales' event for playing live music without a permit." SAC ¶2058.

In addition to its silence regarding the merits of these enforcement actions, the SAC made no effort to allege that they were not justified by plaintiffs' own "bad acts." Instead, plaintiffs make conclusory allegations based on the timing of the enforcement actions and the location of the properties in question. Those statements are insufficient to adequately allege that enforcement was unjustified, which is required for a § 1983 claim. *See, e.g.*, *Beach Blitz Co. v. City of Miami Beach*, 2018 WL 11260453, at *8 (S.D. Fla. 2018) (A retaliation claim "based solely on the timing of Ocean 9's closure" was "conclusory" and "insufficient to support a section 1983 claim for retaliation based on First Amendment expression.") (cleaned up).

Plaintiffs' practice of admitting some code violations and failing to allege that others were unjustified, persists in the SAC:

- "In April 2021, Carollo sought to revoke Taquerias' Outdoor Dining Warrant— which pursuant to Article 6.3 of Miami 21 allowed Taquerias to operate as an Alcohol Service . . . by claiming that Taquerias was allegedly located within 300 feet of an 'religious' facility [sic] (Ministerio de Juan) in an effort to threaten Taquerias' Outdoor Dining Warrant, and placing it on hold." SAC ¶¶ 398-99.

20

- "On May 13, 2021, the Code Department cited El Shopping three separate times for the same alleged issue—merely because of a technicality." SAC ¶ 1570.

- "Nevertheless—the City claimed the technicality of Gran Fiesta's staircase being close to the property line was sufficient to shut down the property—yet did not raise any issue for years while Gran Fiesta was working with the City regarding prior permits." SAC ¶ 2961.

The additional allegations establish that plaintiffs have a "history of code violations . . ." and that [t]his history, along with [p]laintiff[s'] continued noncompliance, shows that the City would have issued this citation regardless . . . ." *Rogers v. City of Coll. Park*, 2019 WL 4168797, at *14 (N.D. Ga. 2019). "To meet the probable cause standard[,] the City officials needed only 'a reasonable belief, based on the facts and circumstances known to [them]' that the citation was valid." *Robson 200, LLC v. City of Lakeland*, 593 F. Supp. 3d 1110, 1128 (M.D. Fla. 2022) (citation omitted). The SAC did nothing but bolster the evidence of City officials' reasonable basis for issuing these citations to serial code violators.

Further, even where the SAC attempted to justify plaintiffs' code violations, that limited effort was rife with legal conclusions and drive-by references to "common practice" and selective enforcement. For example, plaintiffs contend that "[t]he adjacent parking garage was built in the 1980s with rebar intentionally exposed to allow for future construction. . . [t]his building style was common trade practice and El Shopping confirmed with engineers that it had no detrimental impact on the building's safety and structural integrity, the City still cited the property." SAC ¶¶ 1565-66. Claiming that something is "common practice" does not negate its illegality. *State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307, 1317 (S.D. Fla. 2017) ("[E]ven if the alleged [] practice were common, such prevalence would not be dispositive as to its legality.").

Plaintiffs also contend that "the City of Miami . . . baselessly accused Brickell Station of having done work without a permit [which] was baseless as the City of Miami's own microfilm department *knew* that all of the work it accused Brickell Station of doing without a permit had in fact been done years ago, with a permit." SAC ¶¶ 574-5 (emphasis in original). This argument boils down to saying that "everybody does it," which is legally insufficient. *See H & J Land Invs., Inc. v. City of Jacksonville*, 2014 WL 4540200, at *10 (M.D. Fla. 2014) (Allegations of pretextual grounds for enforcement were unavailing where plaintiffs alleged that "[d]efendants know that there are no serious code violations at any of the Jacksonville bikini bars . . . that Plaintiffs' business does not pose an immediate threat to the health, safety or welfare of the

21

community," and that "[t]he raids and closure Orders were motivated entirely by an intent to harass Plaintiffs, and other bikini bars, and deny them their right of free speech.") (cleaned up).

Plaintiffs' clearest (though still inadequate) attempt to demonstrate that the City's enforcement actions were unjustified appears in Count 1 of the SAC, where plaintiff LHAB cites several dates between January 2020 and May 2020 on which "no violation[s]" were found at LHAB's property, and further alleges that on May 28, 2020, LHAB was listed as having "no unsafe violations" by the Chief of Unsafe Structures. *See* SAC ¶¶ 182, 185. So what? Allegations that at some points in time LHAB was in compliance do not immunize plaintiffs for subsequent code violations that justifiably led to City enforcement actions. Plaintiffs' similar assertion that Gran Fiesta had "no unsafe violations" on May 28, 2020 is equally unavailing. SAC ¶ 396.

At bottom, "it appears from the face of the complaint that [plaintiffs] merely need[] to comply with the permitting process, like all property owners in the City . . . ." *Bey*, 607 F. App'x at 897. The SAC does nothing to negate plaintiffs' prior, on-the-record admissions that they were serial violators of City building and zoning, and health and safety laws, the enforcement of which they now claim was retaliation. A lawful motivation for that enforcement renders an unlawful motive not actionable. *Hartman*, 547 U.S. at 260–61. Even if enforcing officials are alleged to hold animus for a plaintiff, a lawful basis (aka probable cause) for enforcement negates claims like those plaintiffs purport to bring here. On this point, Mr. Carollo adopts in full Arthur Noriega's arguments in section V of his Motion to Dismiss the Complaint, D.E. 53, section VI(D) of his Motion to Dismiss the Amended Complaint, D.E. 88, and section VI of his Motion to Dismiss the Second Amended Complaint.

### III. CONCLUSION

For all these good and sufficient reasons, the Second Amended Complaint should be dismissed with prejudice.

## REQUEST FOR ORAL ARGUMENT

Under Local Rule 7.1(b)(2), Mr. Carollo requests a two-hour hearing on his motion to dismiss. Mr. Carollo's motion raises a number of complex issues, and oral argument would be beneficial to address and illuminate those issues.

Dated: May 15, 2024                                      Respectfully submitted,

**RIVERO MESTRE LLP**
*Attorneys for Joe Carollo*
2525 Ponce de Leon Blvd. Suite
1000 Miami, Florida 33134
Tel.: (305) 445-2500
Fax: (305) 445-2505

By: */s/ Jorge A. Mestre*
Jorge A. Mestre
Florida Bar No. 88145
jmestre@riveromestre.com
Alan H. Rolnick
Florida Bar No. 715085
arolnick@riveromestre.com
Amanda Fernandez
Florida Bar No. 106931
afernandez@riveromestre.com

## CERTIFICATE OF SERVICE

I certify that on May 15, 2024, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify that this document is being served today on all counsel of record by transmission of Notices of Electronic Filing generated by CM/ECF.

By: */s/ Jorge A. Mestre*
    JORGE A. MESTRE