UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 23-cv-24251-MORENO

WILLIAM O. FULLER, *et al.*,

    Plaintiffs,

v.

CITY OF MIAMI, *et al.*,

    Defendants.

_____/

**DEFENDANT RACHEL DOOLEY'S
MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

Defendant Rachel Dooley (**"Ms. Dooley"**), pursuant to Fed. R. Civ. P. 12(b)(6), requests that the Court dismiss the Second Amended Complaint (**"SAC"**) [ECF No. 129] with prejudice.

**INTRODUCTION**

Ms. Dooley is an Assistant City Attorney for the City of Miami (the **"City"**). She has been sued, in her individual capacity, for alleged violations of 42 U.S.C. § 1983. William O. Fuller and Martin Pinilla, II, and various entities that they own or control (collectively, **"Plaintiffs"**), allege a conspiracy to engage in unlawful First Amendment retaliation, purportedly orchestrated by Defendant Joe Carollo (**"Mr. Carollo"**). As to Ms. Dooley, specifically, the SAC fails to state a valid cause of action for six reasons. *First*, she was not an official decision maker concerning the conduct at issue. *Second,* she is entitled to absolute immunity. *Third*, she is entitled to qualified immunity. *Fourth*, Plaintiffs cannot satisfy the element of causation. *Fifth*, particular to Count 72, certain grievances are time-barred. And *sixth*, particular to Counts 66, 86, 92, and 100, Plaintiffs fail to describe with any specificity Ms. Dooley's conduct that forms the basis of those claims.

## THE SECOND AMENDED COMPLAINT

The SAC contains 143 counts and 4403 paragraphs. Each individual Plaintiff attempts to state a "42 U.S.C. § 1983" claim against Ms. Dooley in Counts 4, 11, 20, 27, 35, 42, 49, 59, 66, 72, 77, 86, 92, 100, 105, 115, and 126, respectively. And in Count 137, Plaintiffs attempt to state a "Civil Conspiracy" claim against Ms. Dooley based on their § 1983 claims.

Plaintiffs allege that Mr. Carollo commenced a "campaign of retaliation" against them beginning in 2017 because, *inter alia*, they supported his opponent in the race for City Commissioner. *See* SAC ¶¶ 44–51. Plaintiffs further allege that by February 2020, Mr. Carollo had "transform[ed] his retaliation campaign into an official City policy." *Id*. ¶ 86. Plaintiffs allege that City ordinances and policies relating to building permits and conditions were created and/or selectively enforced to "cause significant harm to [Plaintiffs]." *Id*. ¶¶ 89, 93, 103.

As to Ms. Dooley, the SAC is devoid of any allegations that attribute to her any high-level, *decision-making authority* to target and punish Plaintiffs for engaging in what they claim is constitutionally protected speech and association. Specifically, Plaintiffs offer up the conclusory allegations that she engaged in the following conduct:

- enacting, creating, architecting, drafting, and passing ordinances, *id*. ¶¶ 293, 295, 480, 898, 936, 1395, 1424, 1685, 1705, 1979, 2461, 3061–65, 3376, 3379, 3764, 3767;

- denying a request to allow certain properties to be brought into compliance, *id*. ¶ 643;

- allowing certain properties to be demolished, *id*. ¶¶ 932–35, 1420–23, 1976–78;

- representing the City and advocating on its behalf in litigation relating to Plaintiffs, *id*. ¶¶ 1139–43, 3073, 3368, 3383, 3756, 3771;

- revoking certificates of use ("**CUs**") and temporary use permits ("**TUPs**"), *id*. ¶¶ 2276, 3384, 3772; and

- attempting to ensure that the City's code enforcement board imposed the harshest fines available on Plaintiffs for code violations, *id*. ¶¶ 2464–73, 3077–79, 3386, 3774.

But the SAC fails to establish that Ms. Dooley had the authority to make the decisions of which Plaintiffs complain. To the contrary, the SAC makes plain that she lacked the requisite authority. Accordingly, and for all the additional reasons set forth below, Plaintiffs claims all fail as a matter of law.

## SUMMARY OF ARGUMENT

In the interest of judicial economy, Ms. Dooley adopts and incorporates by reference those arguments that are not unique to her and have been made by certain of the other Defendants, including, but not necessarily limited to, the following:

- Plaintiffs' claims are barred by the doctrine of *res judicata*.[1]

- Plaintiffs' claims are barred by the statute of limitations.[2]

- Quasi-judicial immunity immunizes the City's attorneys from liability for their representation of the City in civil actions.[3]

- Plaintiffs fail to state a claim for First Amendment retaliation because each Plaintiff has failed to allege that he or it individually engaged in protected speech.[4]

- Plaintiffs fail to state a claim for First Amendment retaliation based on freedom of association.[5]

- Plaintiffs improperly seek to obtain an unlawful double recovery.[6]

---

[1] *See, e.g.*, Defendant City of Miami's Motion to Dismiss Plaintiffs' Second Amended Complaint With Prejudice (**"City's Motion"**) at 3–6; Defendant Victoria Mendez's Motion to Dismiss Plaintiffs' Second Amended Complaint (**"Mendez's Motion"**) at 2–6.

[2] *See, e.g.*, Joe Carollo's Motion to Dismiss Plaintiffs' Second Amended Complaint With Prejudice (**"Carollo's Motion"**) at 18–19; Defendant Arthur Noriega's Motion to Dismiss Plaintiffs' Second Amended Complaint (**"Noriega's Motion"**) at 24; Motion to Dismiss Second Amended Complaint by Defendants Adrian Plasencia and Rene Diaz (**"Plasencia and Diaz's Motion"**) at 19–20.

[3] *See, e.g.*, Mendez's Motion at 7–11.

[4] *See, e.g.*, Carollo's Motion at 15–17; Noriega's Motion at 9–14; Plasencia and Diaz's Motion at 9–10.

[5] *See, e.g.*, Noriega's Motion at 6–9.

[6] *See, e.g.*, City's Motion at 7–9.

- Plaintiffs' conspiracy claim fails because it is insufficiently pleaded and because the allegations run afoul of the intra-corporate conspiracy doctrine.[7]

- Plaintiffs are engaged in improper claim splitting.[8]

- Plaintiffs lack standing to bring this action.[9]

- The allegations in the SAC do not satisfy pleading standards.[10]

In addition to the foregoing, Ms. Dooley asserts those arguments that are specific to her given her unique posture in this case – i.e., the only Defendant who served as an Assistant City Attorney. Specifically, Ms. Dooley argues that all of the claims pleaded against her must be dismissed because: (1) she was not an official decision maker concerning the conduct of which Plaintiffs complain; (2) she is entitled to absolute immunity; (3) she is entitled to qualified immunity; (4) Plaintiffs have failed to plead the requisite element of causation as to Ms. Dooley; (5) as to Count 72, certain of Plaintiffs' grievances are time-barred; and (6) particular to Counts 66, 86, 92, and 100, Plaintiffs fail to plead with the requisite level of specificity Ms. Dooley's conduct that forms the basis of those claims.

**I.  Ms. Dooley Was Not an Official Decision Maker**

Ms. Dooley cannot individually be held liable because she is not alleged to have had the decision-making authority to make the official decisions of which Plaintiffs complain. Indeed, the law is clear that "[f]or individual liability to attach under § 1983, the actor must usually have the power to make official decisions."[11]

---

[7] *See, e.g.*, City's Motion at 17–18; Plasencia and Diaz's Motion at 4–7.

[8] *See, e.g.*, City's Motion at 18–19; Noriega's Motion at 25; Plasencia and Diaz's Motion at 15–18.

[9] *See, e.g.*, Noriega's Motion at 21–24.

[10] *See, e.g.*, Mendez's Motion at 15–19; Carollo's Motion at 11–15; Noriega's Motion at 2–4; Plasencia and Diaz's Motion at 4–7.

[11] *Betancourt v. Florida Dep't of Corr.*, 2023 WL 7548194, at *2 (N.D. Fla. 2023).

Even more, the law is clear that failure to plead that the defendant is a decision maker and from where that authority stems is fatal and renders a complaint subject to dismissal.[12]

Often, those with decision-making authority can be identified by a rule or statutory authority that empowers the official in question to make the decisions at issue.[13] But in this case, the authority that is the source of the decisions referenced in the SAC – i.e., the City Charter (**"Charter"**) and the Code of the City of Miami, Florida (**"Code"**) – make clear that Ms. Dooley (an Assistant City Attorney) did *not* have the authority to make the decisions of which Plaintiffs complain.[14] For example:

- Ms. Dooley is alleged to have made decisions relating to the City's ordinances. SAC ¶¶ ¶¶ 293, 295, 480, 898, 936, 1395, 1424, 1685, 1705, 1979, 2461, 3376, 3379, 3764, 3767. But the authority to make official decisions relating to the passing or enactment of ordinances falls outside the scope of an Assistant City Attorney's authority.[15]

- Ms. Dooley is alleged to have made decisions relating to the revocation of CUs and TUPs. SAC ¶¶ 2276, 3384, 3772. But an Assistant City Attorney does not possess such authority.[16]

---

[12] *See Barteet v. Eismann*, 2013 WL 5236640, at *3 (S.D. Fla. 2013) (dismissing § 1983 action and instructing the plaintiff to allege that the defendants are "official decision makers" and to "identify from where this authority stems") (cleaned up).

[13] *See Kamensky v. Dean*, 148 Fed. Appx. 878, 879 (11th Cir. 2005) ("A 'decision-maker' may often be identified by a rule or by examining the statutory authority of the official alleged to have made the decision.").

[14] Ms. Dooley requests that the Court, pursuant to Fed. R. Evid. 201, take judicial notice of the City Charter, the City Code, and the City's Ordinances as referenced herein. *See Baker v. JEA*, 2023 WL 5528717, at *1 n.2 (11th Cir. 2023) (taking judicial notice of the "Charter and ordinances of the City of Jacksonville as they are 'not subject to reasonable dispute.'") (citing Fed. R. Evid. 201(b)). The City Charter and the City Code can be accessed here:

https://library.municode.com/fl/miami/codes/code_of_ordinances (last accessed May 14, 2024).

[15] *See* City Charter, § 4(a) ("The city commission shall constitute the governing body with powers . . . to pass ordinances adopt regulations and exercise all powers conferred upon the city").

[16] *See* City Code, § 2-211(b) (enumerating the reasons for which *the zoning administrator* shall revoke a CU) (emphasis added); City Ordinance 13733 (the removal of TUPs for District 3 was done by way of City Ordinance 13733, which, as noted above, an Assistant City Attorney cannot pass). The ordinance can be accessed at the following link:

https://documents.miamigov.com/WebLink/DocView.aspx?id=961930&dbid=0&repo=Administration (last accessed May 13, 2024).

- Ms. Dooley is alleged to have made decisions concerning the bringing into compliance of certain properties. SAC ¶ 643. But an Assistant City Attorney has no such authority.[17]

- Ms. Dooley is alleged to have made the decision to allow certain properties to be demolished. SAC ¶¶ 932–35, 1420–23, 1976–78. But an Assistant City Attorney is without such authority.[18]

- Ms. Dooley is alleged to have made the decisions taken by the City in litigation against Plaintiffs. SAC ¶¶ 1139–43, 3073, 3368, 3383, 3756, 3771. But an Assistant City Attorney does not have the final word concerning such matters.[19]

- Ms. Dooley is alleged to have made the decision to ensure that the City's code enforcement board imposed the harshest fines available on Plaintiffs for code violations. SAC ¶¶ 2464–73, 3077–79, 3386, 3774. But decision-making authority relative to the imposition of fines for code violations falls outside the purview of an Assistant City Attorney.[20]

In light of the foregoing, individual liability under § 1983 cannot be attributed to Ms. Dooley and, therefore, all of the claims pleaded against her must be dismissed with prejudice.

**II.    Ms. Dooley is Entitled to Absolute Immunity**

Ms. Dooley has <u>absolute</u> <u>immunity</u> for two reasons. *First,* she qualifies for quasi-judicial immunity. *Second,* she qualifies for legislative immunity.

---

[17] *See* City Code, § 10-101 (issues concerning unsafe structures and bringing such structures into compliance falls within the purview of the unsafe structures panel, the City's building official, and enforcement personnel).

[18] *See* City Code, § 10-101(l)(4) (decisions relating to the demolition of unsafe structures are made by the unsafe structures panel); *id*. § 10-101(l)(5) (the City Attorney only serves as counsel to the unsafe structures panel or represents the City by presenting cases to the unsafe structures panel, but the City Attorney cannot do both).

[19] *See* City Code, § 2-63(a) ("All attorneys at law retained or employed by the city . . . are hereby placed under the direct supervision and control of the city attorney."); City Charter, § 20 (the City Attorney "shall be responsible for the conduct of the officers and employees of his or her department, [and] for the performance of its business . . . .").

[20] *See* City Code, § 2-817 (the code enforcement board or a special master has the power to impose fines and to determine the amount of the fine); *id*. § 2-812(d) (an Assistant City Attorney's role is limited to representing the City in presenting cases before the code enforcement board).

6

A. **Quasi-Judicial Immunity**

Certain allegations against Ms. Dooley relate to actions taken by her in her capacity as Assistant City Attorney and relative to the adjudicative process before certain of the City's administrative bodies and agencies. *See* SAC ¶¶ 932–35, 1420–23, 1976–78, 2464–73, 3077–79, 3383, 3386, 3771, 3774. Even more, the City Charter and the City Code establish that an Assistant City Attorney shall, *inter alia*, be the prosecuting attorney of the municipal court (*see* City Charter, § 21) and represent the City by presenting cases before the code enforcement board (*see* City Code, § 2-812(d)). As a matter of law, it follows that such actions are entitled to absolute quasi-judicial immunity.

Indeed, "[t]he Supreme Court has recognized that individuals, when performing functions that are judicial in nature, or who have a sufficiently close nexus to the adjudicative process, are entitled to a grant of absolute quasi-judicial immunity."[21] Particularly apt to Ms. Dooley, it is noteworthy that absolute immunity has been extended to government attorneys prosecuting non-criminal matters before administrative agencies.[22] And even more apt to Ms. Dooley, Florida courts have held that "code enforcement proceedings are quasi-judicial in nature."[23]

In light of the foregoing, it follows that any actions undertaken by Ms. Dooley in her capacity as a prosecutor for the City were quasi-judicial in nature, which are entitled to absolute immunity and cannot form the basis for liability under § 1983.

---

[21] *In re Castillo*, 297 F.3d 940, 948 (9th Cir. 2002) (citing *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976)); *see also Jones v. Cannon*, 174 F.3d 1271, 1281 (11th Cir. 1999) ("quasi-judicial officers also enjoy absolute immunity.") (citing *Imbler*, 424 U.S. at 420–21).

[22] *See Butz v. Economou*, 438 U.S. 478, 516 (1978) ("If agency attorneys were held personally liable in damages as guarantors of the quality of their evidence, they might hesitate to bring forward some witnesses or documents."); *Cosby v. Lee Cnty.*, 55 F. Supp. 3d 1393, 1400 (M.D. Fla. 2014) ("Absolute immunity has been extended to agency officials performing certain functions analogous to that of a prosecutor.") (citing *Rindley v. Gallagher*, 890 F. Supp. 1540, 1556 (S.D. Fla. 1995)).

[23] *Verdi v. Metro. Dade Cnty.*, 684 So. 2d 870, 874 (Fla. 3d DCA 1996).

### B.     Legislative Immunity

Separately, Plaintiffs attempt to expose Ms. Dooley individually to § 1983 liability for her role in the passing of ordinances. *See* SAC ¶¶ 293, 295, 480, 898, 936, 1395, 1424, 1685, 1705, 1979, 2461, 3376, 3379, 3764, 3767. But that conduct too is entitled to absolute immunity. Indeed, the law is decided that "local legislators are entitled to absolute immunity from civil liability for their legislative activities."[24]

And to eliminate all doubt about the breadth and scope of that rule, the law is clear that "[a]bsolute legislative immunity attaches to all actions taken 'in the sphere of legitimate legislative activity.'"[25] To be even more clear, that includes all conduct that is "quintessentially legislative."[26] It follows that "officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions" and actions that are "integral steps in the legislative process."[27] As such, it is decided law that any assistance rendered by Ms. Dooley in connection with the passing of ordinances constituted an integral step in the legislative process.[28]

In light of the foregoing, it follows that all actions undertaken by Ms. Dooley in connection with the passing of ordinances are entitled to absolute legislative immunity and cannot form the basis for liability under § 1983.

---

[24] *Beach Blitz Co. v. City of Miami Beach, Florida*, 2018 WL 11260453, at *4 (S.D. Fla. 2018) (citing *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998)).

[25] *Bogan*, 523 U.S. at 54 (citing *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951)).

[26] *Macuba v. Deboer*, 193 F.3d 1316, 1321 (11th Cir. 1999).

[27] *Bogan*, 523 U.S. at 55 (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)).

[28] *See Beach Blitz Co*, 2018 WL 11260453, at *4 n.16 (holding that the city attorney was entitled to absolute immunity in assisting "in the process of passing the ordinances by preparing and revising the drafts" because such actions were "integral in the legislative process") (citing *Bogan*, 523 U.S. at 55).

### III. Plaintiffs' Claims Against Ms. Dooley are Barred by Qualified Immunity

Separately, Ms. Dooley is also entitled to qualified immunity that shields her from liability given the allegations pleaded in the SAC.

"'Qualified immunity shields government officials who perform discretionary governmental functions from civil liability so long as their conduct does not violate any clearly established statutory or constitutional rights of which a reasonable person would have known.'"[29]

"Qualified immunity thus represents the rule, rather than the exception: 'Because qualified immunity shields government actors in all but exceptional cases, courts should think long and hard before stripping defendants of immunity.'"[30]

"For qualified immunity to apply, the government official must first show that he or she was 'acting within the scope of his or her discretionary authority.'"[31] If the government official satisfies that burden, then the plaintiff has the burden to demonstrate that qualified immunity is not appropriate.[32]

To satisfy that burden, the plaintiff "must show that (1) the facts alleged demonstrate that the officer's conduct violated a constitutional right, and (2) the right was clearly established at the time of the alleged misconduct."[33] If the plaintiff fails to satisfy its burden as to either prong, the government official is entitled to qualified immunity.[34]

---

[29] *Ward v Chafin*, 2023 WL 2661527, at *4 (11th Cir. 2023) (quoting *Rehberg v. Paulk*, 611 F.3d 828, 838 (11th Cir. 2010)).

[30] *Sanders v. Howze*, 177 F.3d 1245, 1249 (11th Cir. 1999) (quoting *Lassiter v. Alabama A & M Univ., Bd. of Trustees*, 28 F.3d 1146, 1149 (11th Cir. 1994)).

[31] *Rodriguez v. Gomez*, 645 F. Supp. 3d 1343, 1347 (S.D. Fla. 2022) (quoting *Moore v. Pederson*, 806 F.3d 1036, 1042 (11th Cir. 2015)).

[32] *Rodriguez*, 645 F. Supp. 3d at 1347 (citing *Moore*, 806 F.3d at 1042).

[33] *Rodriguez*, 645 F. Supp. 3d at 1347 (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

[34] *Rodriguez*, 645 F. Supp. 3d at 1347–48 (citing *Piazza v. Jefferson Cnty., Alabama*, 923 F.3d 947, 951 (11th Cir. 2019)).

A. **Discretionary Authority**

Here, it is clear beyond all reasonable peradventure that Ms. Dooley was acting within her discretionary authority as Assistant City Attorney. Indeed, the law recognizes that "'[a] government official acts within his or her discretionary authority if objective circumstances compel the conclusion that challenged actions occurred in the performance of the official's duties and within the scope of this authority.'"[35] "In other words, 'a court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, *the outer perimeter* of an official's discretionary duties.'"[36]

Here, the actions allegedly taken by Ms. Dooley would be within or reasonably related to the outer perimeter of her duties as an Assistant City Attorney.

As it relates to Ms. Dooley's involvement in the passing of the City's ordinances, her representation of the City in litigation, or any advice that she rendered to the City's officials, the City Charter is clear that "the city attorney shall be the legal advisor and attorney for the city, and for all officers and departments thereof in matters relating their official duties[,]" "the city attorney shall prosecute or defend for and in behalf of the city all complaints, suits and controversies in which the city is a party, and such other suits, matters and controversies[,]" and that "[t]he mayor, city commission, the city manager, the director of any department, or any officer or board not included within a department may require the opinion of the city attorney upon any question of law involving their respective powers and duties."[37]

---

[35] *Perez v. City of Opa-Locka*, 629 F. Supp. 3d 1164, 1189–90 (S.D. Fla. 2022) (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1185 n.17 (11th Cir. 1994) (overruled on other grounds)).

[36] *Mikko v. City of Atlanta, Georgia*, 857 F.3d 1136, 1144 (11th Cir. 2017) (emphasis in original) (quoting *Harbert Intern., Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998)).

[37] *See* City Charter, § 21; *see also* City Code, § 2-63(a) ("All attorneys at law . . . employed by the city . . . are hereby placed under the direct supervision and control of the city attorney.").

As it relates to issues concerning enforcement of City Code, the City Code provides that "an assistant city attorney . . . acting by and through the city attorney shall represent the city by presenting cases before the board."[38] The same applies even if the case is being presented to a special magistrate.[39] And the City Attorney's office serves as counsel to the unsafe structures panel or represents the City by presenting cases to the unsafe structures panel.[40] The City Charter further provides that the "city attorney shall be the prosecuting attorney of the municipal court" and "shall prosecute all cases brought before such court and perform the same duties . . . as are required of the prosecuting attorney of the county."[41]

So, no matter how one looks at this issue, it is clear that Ms. Dooley was acting within the scope of her discretionary authority as Assistant City Attorney.

### B.   No Violation of a Clearly Established Constitutional Right

Because Ms. Dooley obviously was acting within the scope of her discretionary authority, the burden is on Plaintiffs to show that Ms. Dooley's *conduct* violated a clearly established constitutional right. But they have failed to do so.

As set forth above, Plaintiffs cannot establish that Ms. Dooley's *conduct* violated a clearly established constitutional right because Ms. Dooley did not have the authority to make the official decisions of which Plaintiffs complain. Logically then, it follows that it was not Ms. Dooley's *conduct* that is alleged to have resulted in a violation of a clearly established right.

---

[38] *See* City Code, § 2-812(d).
[39] *See* City Code, § 2-830(d).
[40] *See* City Code, § 10-101(l)(5).
[41] *See* City Charter, § 21.

But even assuming, *arguendo*, those decisions could be attributed to Ms. Dooley, they fail to establish the violation of a constitutional right that is "*clearly established.*"[42]

"For an asserted right to be clearly established for purposes of qualified immunity, the law must have earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal law."[43] The conduct attributed to Ms. Dooley concerns decisions made in connection with the enforcement of the City's Code (relative to Plaintiffs' properties). But, courts have held that disputes concerning the enforcement of city codes relating to properties and land use do not invoke questions of clearly established constitutional rights.[44]

This is not an exceptional case warranting the stripping of Ms. Dooley's right to qualified immunity. If her right to qualified immunity were stripped, then how many citizens would choose to become municipal attorneys when the enforcement of the city's code could result in their becoming individually liable for just doing their job? That would defeat the purpose of the doctrine of qualified immunity, which is to encourage public service without fear of reprisal.[45]

In light of the foregoing, it follows that Ms. Dooley has met her burden, but Plaintiffs have not met theirs and, therefore, Ms. Dooley is entitled to qualified immunity.

---

[42] *Ward*, 2023 WL 2661527, at *4.

[43] *Lucas v. Cabezas*, 2019 WL 78981, at *4 (S.D. Fla. 2019) (cleaned up) (quoting *Jackson v. Sauls*, 206 F.3d 1156, 1164-65 (11th Cir. 2000)).

[44] *See Town of Sw. Ranches v. Kalam*, 980 So. 2d 1121, 1123–24 (Fla. 4th DCA 2008) ("More explicitly, courts have recognized that conventional land use disputes between landowners or developers and local planning authorities do not implicate the constitution.") (cleaned up) (quoting *Carter v. Rollins Cablevision,* 618 F.Supp. 425, 428 (D.Mass.1985)); *Sullivan Properties, Inc. v. City of Winter Springs*, 899 F. Supp. 587, 594 (M.D. Fla. 1995) ("Not every wronged party has a valid claim for a constitutional violation whenever a local building official makes an incorrect decision regarding a building permit.") (cleaned up) (quoting *Spence v. Zimmerman,* 873 F.2d 256, 260 n. 5 (11th Cir.1989)); *Spence*, 873 F.2d at 262 ("We stress that federal courts do not sit as zoning boards of review and should be most circumspect in determining that constitutional rights are violated in quarrels over zoning decisions.").

[45] *See Corbitt v. Vickers,* 929 F.3d 1304, 1311 (11th Cir. 2019).

## IV. Plaintiffs Have Failed To Plead the Required Element of Causation

To state a claim for First Amendment retaliation, Plaintiffs must satisfy the required element of causation. More specifically, "a plaintiff must show that (1) he engaged in protected speech; (2) the defendant's conduct adversely affected his protected speech; and (3) a ***causal connection*** exists between the adverse conduct and the protected speech."[46] But Plaintiffs fail to plead the requisite element of causation for three separate reasons.

*First*, the law is well established that "[t]he causal relation does not exist when the continuum between Defendant's action and the ultimate harm is occupied by the conduct of deliberative and autonomous decision-makers."[47] And as noted above, Ms. Dooley was not an official decision maker relative to the decisions of which Plaintiffs complain. For that reason alone, Plaintiffs fail to plead the required element of causation.

*Second,* Plaintiffs also have not alleged that *Ms. Dooley* possessed any retaliatory animus against Plaintiffs that would satisfy the element of causation.[48] But that too is required.[49] Yet, Plaintiffs readily admit that they do not know why Ms. Dooley would have participated in the "conspiracy" against them.[50]

---

[46] *Watkins v. Bigwood*, 2023 WL 3711827, at *4 (11th Cir. 2023) (emphasis added) (citing *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005)).

[47] *Dixon v. Burke County*, 303 F.3d 1271, 1275 (11th Cir.2002); *see also Troupe v. Sarasota Cnty., Fla.*, 419 F.3d 1160, 1165 (11th Cir. 2005) ("A § 1983 claim requires proof of an affirmative causal connection between the defendant's acts or omissions and the alleged constitutional deprivation.") (citing *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir.1986)).

[48] Indeed, Plaintiffs allege that the retaliatory animus belonged to Mr. Carollo. *See, e.g.*, SAC ¶¶ 288, 1070.

[49] *See Turner v. Williams*, 65 F.4th 564, 581 (11th Cir. 2023) ("To prevail on a First Amendment retaliation claim, a plaintiff must establish a causal connection between the government defendant's retaliatory animus and the plaintiff's subsequent injury.") (cleaned up) (quoting *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019)).

[50] *See* SAC ¶ 4192.

13

*Third*, the law is well established that to satisfy the element of causation, Plaintiffs must allege that Ms. Dooley lacked probable cause to engage in the conduct attributed to her because that is what establishes the causal link between her *conduct* and Plaintiffs' claimed injuries.[51] Stated differently, courts have long recognized that a lawful basis for governmental action breaks the causal link between a defendant's retaliatory animus and a plaintiff's alleged § 1983 injury. Indeed, the law standing for that proposition is legion.[52]

The foregoing body of law is dispositive here because none of the actions attributed to Ms. Dooley are alleged to have been undertaken without probable cause.

In light of the foregoing, Plaintiffs have failed to plead the requisite element of causation and, therefore, all of Plaintiffs' § 1983 claims should be dismissed with prejudice.

---

[51] *See DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1289 (11th Cir. 2019) (stating that a plaintiff pursuing a claim for First Amendment retaliation must allege and prove an absence of probable cause as to the conduct at issue "in order to establish the causation link between the defendant's retaliatory animus and the plaintiff's injury.") (citing *Nieves*, 139 S. Ct. at 1726).

[52] *See O'Boyle v. Com. Grp, Inc.,* 2023 WL 2579134, *4 (11th Cir. 2023) (when a government actor has "probable cause to take legal action against the plaintiffs protected activity," even if personal animus also was a motive, the plaintiff's retaliation claim fails "as a matter of law"); *Brienza v. City of Peachtree City, Georgia,* 2022 WL 3841095, *8 (11th Cir. 2022) (the law requires "the plaintiff to plead and prove an absence of probable cause as to the challenged retaliatory [conduct] in order to establish the causation link between the defendant's retaliatory animus and the plaintiff's injury" and "[t]he presence of probable cause should generally defeat" a claim for First Amendment retaliation); *Robson 200, LLC v. City of Lakeland, Fla.,* 593 F. Supp.3d 1110, 1128 (M.D. Fla. 2022) (to show probable cause for enforcement, officials need "only a reasonable belief, based on the facts and circumstances known to them that the citation was valid"); *see also Bey v. City of Tampa Code Enf't*, 607 F. App'x 892, 896–97 (11th Cir. 2015) (finding that Plaintiff could not state a case for § 1983 religious discrimination where she admitted to the code violations and has simply chosen not to comply with land-use ordinances); *6420 Roswell Rd., Inc. v. City of Sandy Springs, Georgia*, 484 F. Supp. 3d 1321, 1339 (N.D. Ga. 2020) (being cited for an actual, serious fire-code violation does not violate First Amendment rights); *Mech v. School Board of Palm Beach County*, 2014 WL 11444112, *4 (finding no retaliation claim where "[d]efendant did not remove Plaintiff's banners because of the expression contained therein" but rather "for a reason unrelated to Plaintiff's speech").

## V. As to Count 72, Certain of the Conduct at Issue of is Time-Barred

Count 72 of the SAC alleges that Mr. Carollo retaliated against Plaintiffs by working with Ms. Dooley to remove TUPs for District 3.[53] The removal of TUPs was done by way of City Ordinance 13733, which became effective in 2018. The statute of limitations for a § 1983 claim is 4 years.[54] Meaning that any § 1983 claim based on the passing of City Ordinance 13733 became time-barred in 2022. Because this action was filed in November 2023, Count 72, to the extent that it is based on the removal of TUPs for District 3, must be dismissed as time-barred.

## VI. Counts 66, 86, 92, and 100 Lack Sufficient Specificity

The law on pleading standards is clear. To survive a motion to dismiss, "a plaintiff must plead only enough facts to state a claim to relief that is plausible on its face."[55] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. This standard requires more than a sheer possibility that a defendant has acted unlawfully. An unadorned, the-defendant-unlawfully-harmed-me accusation will not suffice."[56]

The allegations in Counts 66, 86, 92, and 100 do not identify with any level of specificity conduct attributable to *Ms. Dooley* that forms the basis of the § 1983 claims brought against her. Rather, Plaintiffs commingle Ms. Dooley with other Defendants and do no more than present the unadorned allegation that "the-defendant-unlawfully-harmed-me," which is insufficient."[57]

Accordingly, Counts 66, 86, 92, and 100 should also be dismissed because they fail to state a claim against Ms. Dooley.

---

[53] *See* SAC ¶ 2276.

[54] *New Muslim Party v. State*, 2024 WL 1701929, at *1 (S.D. Fla. 2024).

[55] *Bayport Fin. Serv. (USA) Inc. v. BayBoston Managers, LLC*, 2023 WL 2633298, at *9 (S.D. Fla. 2023).

[56] *Bayport Fin. Serv. (USA) Inc.*, 2023 WL 2633298, at *9 (cleaned up).

[57] *Bayport Fin. Serv. (USA) Inc.*, 2023 WL 2633298, at *9.

## CONCLUSION

Plaintiffs seek to hold Ms. Dooley liable, in her individual capacity, for a purported campaign of focused retaliation whereby the resources of the City were utilized to punish Plaintiffs for their constitutionally protected speech and association. But to the extent that there was a campaign of focused retaliation – which is vehemently denied – it simply was not *Ms. Dooley*'s campaign. The allegations of the SAC establish nothing more than that Ms. Dooley did only what was required of a dedicated civil servant faithfully fulfilling the functions required of her office. Thankfully, well established law makes clear such allegations are not actionable.

**WHEREFORE**, Ms. Dooley respectfully requests that the Court grant this Motion, dismiss the SAC with prejudice, award Ms. Dooley her attorneys' fees pursuant to 42 U.S.C. § 1988(b), and grant all other relief that the Court deems just and proper.

## REQUEST FOR HEARING

Ms. Dooley, pursuant to S.D. Fla. L.R. 7.1(b)(2), respectfully requests that the Court set this matter for oral argument. Oral argument would be helpful to the Court because it would help focus the Court's analysis of the material allegations and the applicability of those allegations to the complex areas of law at issue here. Ms. Dooley estimates that the time required for argument on issues specific to her would be 30 minutes.

Dated: <u>May 15, 2024</u>                    Respectfully submitted,

                                                             DIMOND KAPLAN & ROTHSTEIN, P.A.
Offices at Grand Bay Plaza
2665 South Bayshore Drive, PH-2B
Miami, Florida 33133
Telephone: (305) 374-1920

By: <u>*/s/ David A. Rothstein*</u>
    David A. Rothstein, Esq.
    Fla. Bar No. 995762
    *DRothstein@dkrpa.com*
    Alexander M. Peraza, Esq.
    Fla. Bar No. 107044
    *APeraza@dkrpa.com*
    Eshaba Jahir-Sharuz, Esq.
    Fla. Bar No. 1038846
    *Eshaba@dkrpa.com*

*Attorneys for Defendant Rachel Dooley*