**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**Case No.: 1:23-cv-24251-FAM**

FULLER, et al.,

       Plaintiffs,

v.

THE CITY OF MIAMI, et al.,

       Defendants.

_____/

**DEFENDANT ARTHUR NORIEGA'S MOTION TO DISMISS**
**PLAINTIFFS' SECOND AMENDED COMPLAINT**

**Table of Contents**

I.    Introduction. ................................................................................................................ 1

II.   The Plaintiffs have not complied with the Court's Orders. ................................... 2

III.  The Complaint cannot plausibly state a claim against Noriega because it contains demonstrably false allegations, and it is based on allegations relating to acts of subordinates and passage of laws that remain in effect. ..................................................................... 4

IV.   Plaintiffs still fail to state a claim for retaliation based on freedom of association. ........ 6

V.    Plaintiffs still fail to state a claim for retaliation based on speech. ................................. 9

    A.   Plaintiffs fail to satisfy the first prong requiring that each Plaintiff allege constitutionally protected speech or conduct. ................................................................................................. 9

        1.   Each Plaintiff fails to allege it engaged in its own protected activity. .......................... 9

        2.   The speech alleged by Plaintiffs is not actionable. ..................................................... 10

        3.   Some Plaintiffs' claims are not plausible because they did not exist at the relevant time. ................................................................................................................................. 14

    B.   Plaintiffs fail to satisfy the second prong requiring that the Defendants' conduct adversely affect their protected speech. ........................................................................................... 14

    C.   Plaintiffs fail to satisfy the third prong requiring a causal connection. ........................ 15

        1.   Plaintiffs fail to allege Noriega's actual knowledge. ................................................. 16

        2.   Plaintiffs fail to allege a close temporal proximity. .................................................. 16

          i.    Plaintiffs are not shielded forever due to alleged protected activity in November 2017 ..................................................................................................................... 17

VI.   Noriega had probable cause and non-retaliatory reason to take action. ........................ 17

VII.  The Complaint against Noriega must be dismissed based on qualified immunity. ........ 19

    A.   Noriega was acting within the scope of his discretionary authority. ............................. 19

    B.   Plaintiffs cannot defeat Noriega's qualified immunity because they cannot meet their burden to show his alleged conduct violates clearly established law. .................................... 20

VIII. Plaintiffs do not have standing to bring this action. ..................................................... 21

    A.   Plaintiffs have not established injury in fact. ................................................................. 21

    B.   Plaintiffs have not established traceability. .................................................................... 23

    C.   Plaintiffs have not established redressability. ................................................................ 23

IX.   The Complaint is barred by the statute of limitations. .................................................. 24

X.    Plaintiffs are engaged in improper claim splitting. ....................................................... 25

XI.   Conclusion. ...................................................................................................................... 25

## <u>Table of Authorities</u>

**Cases**

*6420 Roswell Rd., Inc. v. City of Sandy Springs,*
484 F. Supp. 3d 1321 (N.D. Ga. 2020) ...................................................................... 18

*Alexander v. United States,*
2022 WL 17688692 (11th Cir. 2022) ........................................................................ 16

*Ashcroft v. Iqbal,*
556 U.S. 662 ................................................................................................................ 5

*Bateman Harden PA v. Francis,*
2012 WL 3689402 (N.D. Fla. Aug. 27, 2012) ........................................................... 5

*Bd. of Dir. of Rotary Int'l v. Rotary Club of Duarte,*
481 U.S. 537 (1987) .................................................................................................... 7

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) .................................................................................................... 5

*Bennett v. Hendrix,*
423 F.3d 1247 (11th Cir. 2005) ..................................................................... 9, 12, 15

*Bethel v. Town of Loxley,*
221 F. App'x 812 (11th Cir. 2006) ........................................................................... 15

*Bey v. City of Tampa Code Enf't,*
607 F. App'x 892 (11th Cir. 2015) ........................................................................... 18

*Bldg. Empowerment by Stopping Trafficking, Inc. v. Jacobo,*
2013 WL 5435729 (S.D. Fla. Sept. 27, 2013) .......................................................... 19

*Boy Scouts of Am. v. Dale,*
530 U.S. 640 (2000) .................................................................................................... 8

*Brienza v. City of Peachtree City,*
2022 WL 3841095 (11th Cir. Aug. 30, 2022) .......................................................... 18

*Castle v. Appalachian Tech. Coll.,*
631 F.3d 1194 (11th Cir. 2011) ............................................................................... 15

*Chappell v. Rich,*
340 F.3d 1279 (11th Cir. 2003) ............................................................................... 24

*City of S. Miami v. Governor,*

65 F.4th 631 (11th Cir. 2023) ........................................................................ 23

*Day v. Taylor,*
400 F.3d 1272 (11th Cir. 2005) ...................................................................... 5

*Donovan v. Rivadeniera,*
557 F. Supp. 3d 1236 (S.D. Fla. 2021) ......................................................... 24

*Easton v. Sundram,*
947 F.2d 1011 (2d Cir. 1991) .......................................................................... 9

*Edmondson v. Velvet Lifestyles, LLC,*
2016 WL 7048363 (S.D. Fla. Dec. 5, 2016) ................................................... 7

*Evans v. McClain,*
131 F 3d 957 (11th Cir. 1997) ....................................................................... 16

*Falco v. Zimmer,*
767 Fed. Appx. 288 (3d Cir. 2019) ................................................................ 10

*Gardner v. Mutz,*
962 F.3d 1329 (11th Cir. 2020) ................................................................ 21, 22

*Gathright v. City of Portland,*
439 F.3d 573 (9th Cir. 2006) ......................................................................... 11

*Gazzola v. NCL (Bahamas) Ltd.,*
2019 WL 3067506 (S.D. Fla. July 12, 2019) .................................................. 4

*Green v. Miss United States of America, LLC,*
533 F. Supp. 3d 978 (D. Or. Apr. 8, 2021) .................................................... 8

*Harlow v. Fitzgerald,*
457 U.S. 800 (1982) ...................................................................................... 19

*IDK, Inc. v. Clark County,*
836 F2d 1185 (9th Cir. 1988) ...................................................................... 8, 9

*Indigo Room, Inc. v. City of Fort Myers,*
589 Fed. Appx. 938 (11th Cir. 2014) ............................................................ 15

*Innova Inv. Grp., LLC v. Vill. of Key Biscayne,*
2021 WL 1723678 (S.D. Fla. Apr. 30, 2021) ........................................... 16, 17

*Jacobson v. Fla. Sec'y of State,*
974 F.3d 1236 (11th Cir. 2020) ........................................................ 21, 22, 23, 24

*Kennedy v. Floridian Hotel, Inc.*,
998 F.3d 1221(11th Cir. 2021) ................................................................. 25

*Kowalski v. Tesmer*,
543 U.S. 125 (2004) ............................................................................ 22

*Ladies Mem'l Ass'n v. City of Pensacola*,
34 F.4th 988 (11th Cir. 2022) ................................................................. 22

*Leake v. Drinkard*,
14 F.4th 1242 (11th Cir. 2021) ................................................................ 10

*Lee v. Ferraro*,
284 F.3d 1188 (11th Cir. 2002) ............................................................... 19

*Lewis v. Governor of Alabama*,
944 F.3d 1287 (11th Cir. 2019) ........................................................... 23, 24

*Lilly v. Town of Lewiston*,
2019 WL 2501555 (W.D.N.Y. June 17, 2019) ................................................. 10

*Little v. Jacksonville State Univ.*,
2008 WL 11422611(N.D. Ala. Mar. 31, 2008) .................................................. 8

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ...................................................................... 21, 22, 23

*Mad Room LLC, d/b/a Ball and Chain, Altos Mexicano, LLC d/b/a Taquerias El Mexicano, Little
Havana Arts Building, LLC, and La Gran Fiesta, LLC v. City of Miami*,
Case #21-cv-23485-RKA (S.D. Fla.) ....................................................... 13, 25

*Mark v. Spears*,
2021 WL 6841552 (E.D. Tex. Dec. 16, 2021) .................................................. 17

*McCabe v. Sharrett*,
12 F.3d 1558 (11th Cir.1994) .................................................................. 7

*Mech v. Sch. Bd. of Palm Beach Cnty.*,
2014 WL 11444112 (S.D. Fla. 2014) ...................................................... 17, 18

*Miles v. Vill of Dolton*,
2016 WL 1161293 (E.D. Ill. March 23, 2016) ................................................. 22

*Mulloney v. Polk Cnty. Bd. of Cnty. Comm.*,
2018 WL 11485769, (M.D. Fla. Sept. 10, 2018) .............................................. 14

*Nichols v. Carnival Corp.*,
423 F. Supp. 3d 1316 (S.D. Fla. Sept 17, 2019) ............................................................. 4

*Nieves v. Bartlett*,
139 S. Ct. 1715 (2019) ......................................................................................................... 15

*O'Boyle v. Com. Grp., Inc.*,
2023 WL 2579134 (11th Cir. Mar. 21, 2023) ................................................................... 18

*Oirya v. Mando Am. Corp.*,
2024 WL 1462500 (11th Cir. April 4, 2024) ...................................................................... 16

*Peterson v. Vill of Downers Grove*,
103 F. Supp. 3d 918 (N.D. Ill. 2016) ................................................................................ 22

*Prestopnik v. Whelan*,
253 F. Supp. 2d 369 (N.D.N.Y. 2003) ............................................................................... 10

*Rakas v. Illinois*,
439 U.S. 128 (1978) ............................................................................................................. 10

*Reed v. City of Conway*,
2022 WL 3647864 (E.D. Ark. Aug. 24, 2022) ................................................................... 17

*Rehberg v. Paulk*,
566 U.S. 356 (2012) ............................................................................................................... 5

*Rivers v. Campbell*,
791 F.2d 837 (11th Cir. 1986) ............................................................................................. 8

*Roberto v. Shendell & Associates, P.A.*,
2018 WL 1367445 (S.D. Fla. Mar. 16, 2018) .................................................................... 5

*Roberts v. United States Jaycees*,
468 U.S. 609 (1984) .......................................................................................................... 7, 8

*Robson 200, LLC v. City of Lakeland*,
593 F. Supp. 3d 1110 (M.D. Fla. 2022) ............................................................................ 18

*Rumsfeld v. Forum for Academic & Inst'l Rights, Inc.*,
547 U.S. 47 (2006) ................................................................................................. 11, 12, 14

*Skiles v. City of Reading*,
2011 WL 53069 (E.D. Pa. Jan. 7, 2011) ............................................................................. 8

*Support Working Animals, Inc. v. Governor of Fla.*,
8 F.4th 1198 (11th Cir. 2021) ................................................................ 22

*Tower Hotel, LLC, Piedra Villas, LLC, and Beatstik, LLC v. City of Miami*,
Case #22-8069-CA-44 ................................................................ 13, 25

*United States v. Bell*,
414 F.3d 474 (3d Cir. 2005)................................................................ 5, 8

*Vanover v. NCO Fin. Servs.*,
857 F.3d 833 (11th Cir. 2017) ................................................................ 25

*Verrier v. Reno*,
2023 WL 5836837 (N.D. Fla. Aug. 9, 2023) ................................................ 6

*Walt Disney Parks & Resorts United States, Inc. v. DeSantis*,
2024 WL 442546 (N.D. Fla. Jan. 31, 2024)................................................ 21, 23

*Warren v. DeSantis*,
2024 WL 132518 (11th Cir. Jan. 11, 2024) ................................................ 19

*Washington v. County of Rockland*,
373 F.3d 310 (2d Cir. 2004)................................................................ 10

*Washington v. Warden*,
847 Fed. Appx. 734 (11th Cir. 2021)................................................................ 20

*Webb v. Miami-Dade Cnty. Gov't*,
2023 WL 6248856 (S.D. Fla. Sept. 26, 2023)................................................ 3

*Weinberger v. Navarro*,
957 F. Supp. 220 (S.D. Fla. 1997) ................................................................ 7

*Welton v. Durham Cty.*,
781 Fed. Appx. 242 (4th Cir. 2019) ................................................................ 14

*Wolff v. Cash 4 Titles*,
351 F.3d 1348 (11th Cir. 2003) ................................................................ 10

*Zinman v. Nova SE. Univ., Inc.*,
2023 WL 2669904 (11th Cir. Mar. 29, 2023)................................................ 11, 12, 14

**Statutes**

42 U.S.C. § 1983 ................................................................ 4

**Other Authorities**

City of Miami Charter § 4(a) ........................................................................................................ 9

City of Miami Charter § 15.......................................................................................................... 9

## I.      Introduction.

Plaintiffs are weaponizing the First Amendment in yet another saga in their multiyear crusade against City Commissioner Joe Carollo ("Carollo") and the City of Miami (the "City"). Plaintiffs have filed a third iteration of their § 1983 Complaint in an attempt to stop the City and eleven City employees from enforcing the law against them. Contrary to Plaintiffs' assertion, Defendants are not targeting them. Defendants are holding the Plaintiffs accountable to the rules that apply to them as property owners and businesses that operate in the City.

The Second Amended Complaint ("Complaint" or "Compl.") (DE 129) must be dismissed for multiple, independent reasons. First, it is a futile effort to rearrange the deck chairs on the Titanic. Despite this Court's insistence that Plaintiffs specifically allege which Plaintiff engaged in what protected activity, and which Defendant retaliated for said protected activity (Doc. 123 at 2; 2/2/2024 Hrg. Tr. 44:16-18, 45:9-12, 47:19-23 (excerpts attached as Ex. 6)), the Complaint is no more clear than its two prior versions that lumped the parties together. Plaintiffs still fail to comply with the requirements to plead facts to show who spoke, who retaliated based on that speech, and who was damaged. Instead, each Plaintiff has primarily copied and pasted the same allegations against each Defendant without any meaningful distinction between the parties or attributing any protected activity to a particular Plaintiff.

Contrary to the Court's Order, the claims against Noriega fail to plausibly allege what speech by which Plaintiff caused what retaliation by Noriega or any other Defendant for that matter. Ultimately, the Complaint is a hodge podge of vague, conflicting, and sloppy cut-and-paste allegations which ultimately leave Noriega and all of the Defendants guessing as to the basic elements of the claims being asserted by each Plaintiff against each Defendant.

Indeed, ten of the seventeen Plaintiffs (LHAB, Gran Fiesta, Brickell Station, Piedra Villas, Calle Siete, Beatstik, El Shopping, Tower Hotel, Viernes Culturales, and Havana Bungalows), claim that Fuller and Pinilla engaged in eight activities on their behalf. *See* Compl. at ¶¶ 216, 420, 588, 790, 1088, 1288, 1599, 1893, 2088, 2372.  Yet, inexplicably, Calle Siete, El Shopping, and Havana Bungalows, did not even exist when the activity occurred. And, despite those entities' claim that Fuller and Pinilla engaged in activities on their behalf, Fuller and Pinilla allege *only* the November 2017 support of Leon as their protected activity. *See* Compl. at ¶¶ 3271, 3659.

Equally confounding, LHAB Too, Calle Ocho, LHAB Tres, Barlington Group, and all Plaintiffs in the conspiracy claim allege the November 2017 support of Leon as the *sole* protected

activity. *See* Compl. at ¶¶ 2590, 2802, 2868, 2980, 3271, 3659, 4044. Further, those allegations conflict with prior allegations of the Complaint. *Id.* at ¶ 135.

In implicit recognition of its failure to specify instances of speech by any one Plaintiff, the Complaint attempts to circumvent First Amendment pleading requirements based on allegations of the entity Plaintiffs' "association" with Fuller and Pinilla. However, there are two types of protected association under the First Amendment: intimate and expressive association, and the Complaint is devoid of any allegations supporting either. Rather, the association as alleged is commercial and therefore is not protected by the First Amendment.

Additionally, the Complaint must be dismissed for the following, *inter alia*, reasons:

- The Complaint cannot plausibly state a claim against Noriega because it contains demonstrably false allegations, and it is based on allegations relating to acts of subordinates and passage of laws that remain in effect.

- Plaintiffs fail to state a claim for retaliation based on freedom of association.

- Plaintiffs fail to plausibly state a claim for First Amendment retaliation.

- Noriega had probable cause and non-retaliatory reason to take action against Plaintiffs.

- Noriega is entitled to qualified immunity.

- Plaintiffs do not have standing to bring this action.

- The Complaint is time-barred.

- Plaintiffs are engaged in improper claim splitting.[1]

The Complaint against Noriega should be dismissed where the alleged protected activity was not engaged in by any of the Plaintiffs, Plaintiffs fail to allege Noriega had actual knowledge of the alleged protected activity, and Plaintiffs fail to allege a close temporal proximity between the alleged protected activity and alleged adverse action by Noriega. This Court should not allow Plaintiffs to weaponize the First Amendment to shield themselves in perpetuity particularly where it is undisputed that Plaintiffs have violated the Building Code and probable cause existed for the City to take action.  Accordingly, the Complaint should be dismissed with prejudice.

## II.    The Plaintiffs have not complied with the Court's Orders.

The Court repeatedly has instructed Plaintiffs to replead and to allege specifically which

---

[1] Noriega incorporates by reference all arguments and positions raised by other Defendants in their Motions to Dismiss, if applicable, as additional grounds for dismissal of the Complaint, including the motion to strike under Rule 12(f) on behalf of Defendant Daniel S. Goldberg.

Plaintiff engaged in what protected activity and when, and which Defendant retaliated for said protected activity. *See* Doc. 123 at 2; Doc. 70; 2/2/2024 Hrg. Tr. at 44:16-18, 45:9-12, 47:19-23 (Ex. 6). The Complaint fails to remedy these pleading deficiencies.

Plaintiffs' two prior pleadings failed because they improperly lumped numerous Defendants together in broad, conclusory statements, often without specifying which Defendant was responsible for what acts. Now, Plaintiffs have expanded their allegations from 671 paragraphs to 4,403, but the new Complaint fares no better because it still fails to allege that any particular Plaintiff engaged in any speech or activity that qualifies for First Amendment protection or to put Noriega on notice of the claims against him.

In lieu of lumping allegations against collective "Defendants," Plaintiffs simply copy and paste the same allegations across Plaintiffs and Defendants into separate counts by each Plaintiff against each Defendant without any meaningful distinction. *See, e.g.,* Compl. at ¶¶ 219, 424, 592, 793, 1091, 1292, 1602, 1896, 2092, 2375, 2596, 2806, 2872, 2894, 3275, 3663. However, the result of Plaintiffs' edits is the same. On its third iteration, the Complaint still fails to shed the key characteristics of a shotgun pleading. At least one court in this District has rejected amended pleadings of this precise nature. *See, e.g.*, *Webb v. Miami-Dade Cnty. Gov't*, 2023 WL 6248856, at * 1 (S.D. Fla. Sept. 26, 2023) (dismissing plaintiff's amended complaint as a shotgun pleading, stating "it seems that [plaintiff] has attempted to address the issue [of lumping together multiple defendants into the same count] by merely copying and pasting the exact same allegations for different Defendants . . . . In this way, [plaintiff] has completely ignored the Court's instruction to plead facts tethered to his claims against each specific Defendant.").

Plaintiffs also continue to fail to provide any meaningful specificity as to what each Plaintiff said that could be entitled to First Amendment protection. While the Plaintiffs allege their own counts against Noriega, ten of the seventeen claims against Noriega repeat the same allegation as to that Plaintiff's purported speech and association:

> On the one hand, Fuller and Pinilla engaged in political expression on behalf of, and in support of, [that Plaintiff] , . . .  by: a) hosting rallies for Alfie Leon and supporting social media advertising for Leon, a politician who opposed Carollo and, by extension, his political allies like Noriega; b) causing Noriega to harbor the false belief that Plaintiffs were financing a lawsuit that Alfie Leon filed against Carollo challenging his right to run for District 3 Commissioner; c) causing Noriega's false belief that Plaintiffs were organizing or participating in efforts to recall Carollo; d) filing an ethics complaint against Carollo; e) filing lawsuits, including lawsuits to stop the demolition of their buildings, and a federal lawsuit against Carollo; f) hosting

a press conference to expose Carollo's history of code violations at his home in Coconut Grove; g) promoting African-American and Afro-Cuban murals in Calle Ocho; and h) generally expressing a different vision for Calle Ocho and Little Havana in opposition to Noriega's political preferences.

Compl. at Count 2 (¶ 216), Count 9 (¶ 420), Count 18 (¶ 588) Count 25 (¶ 790), Count 33 (¶ 1088), Count 40 (¶ 1288), Count 47 (¶ 1599), Count 57 (¶ 1893), Count 64 (¶ 2088), Count 75 (¶ 2372).

Inexplicably, the remaining claims by the entity Plaintiffs against Noriega do not allege speech by that particular Plaintiff. Instead, they allege that "Fuller and Pinilla supported Alfie Leon." *See* Compl. at Count 84 (¶ 2590), Count 94 (¶ 2802), Count 98 (¶ 2868), Count 103 (¶ 2980), Count 135 (¶ 4044). As for Fuller and Pinilla's claims against Noriega, while they allege that they "supported Alfie Leon," they do not specify the claimed speech. Compl. at Count 113 (¶ 3271), Count 124 (¶ 3659). None of these counts indicates the date(s) on which the Plaintiffs purportedly engaged in their "speech" or when their constitutional rights were allegedly violated. In short, none of the counts comply with the Court's order requiring each Plaintiff to specify "what civil right [the particular Defendant] violated and . . . each Defendant's action" and "the date of the alleged violation of that Plaintiff's constitutional right." *See* Doc. 123 at 2, 4.

Plaintiffs' re-configuration and repetition of allegations is also inappropriate because the identical paragraphs in each count do not bear relevance to the particular claim, and provide insufficient facts to support *how* each Defendant uniquely carried out the alleged bad acts. *See Nichols v. Carnival Corp.*, 423 F. Supp. 3d 1316, 1322 (S.D. Fla. Sept 17, 2019) (determining that "the Complaint still falls short of Rule 8's requirement" where "plaintiff has added a group of nine identical paragraphs to each Count . . . without regard to whether each paragraph has any bearing on the particular cause of action," and further "is too conclusory to establish causation.").

At bottom, the core inquiry remains whether Plaintiffs' amended pleading "give[s] fair notice of what one defendant allegedly failed to do as opposed to the other." *See Gazzola v. NCL (Bahamas) Ltd.*, 2019 WL 3067506, at *2 (S.D. Fla. July 12, 2019) (Moreno, J.). This, the Complaint does not do. Accordingly, it must be dismissed.

### III.    The Complaint cannot plausibly state a claim against Noriega because it contains demonstrably false allegations, and it is based on allegations relating to acts of subordinates and passage of laws that remain in effect.

This Court is the gatekeeper to determine whether the Complaint plausibly gives rise to an entitlement to relief. "To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

First, the Complaint contains numerous demonstrably false allegations that, when they fail, they cause the entire Complaint to fail. For example, Plaintiffs LHAB, Gran Fiesta, Brickell Station, Piedra Villas, Calle Siete, Beatstik, El Shopping, Tower Hotel, Viernes Culturales, and Havana Bungalows each allege as the basis for their speech claim that Fuller and Pinilla "hosted rallies for Alfie Leon," filed an ethics complaint, and filed a federal lawsuit, all "on behalf of" these Plaintiffs. *See* Compl. at ¶¶ 216, 420, 588, 790, 1088, 1288, 1599, 1893, 2088, 2372. This cannot be true because 1393 LLC owned the properties on which the rallies were held, Barlington Group filed the ethics complaint, and only Fuller and Pinilla, individually, filed the lawsuit. *See* Compl. at ¶¶ 67, 135, 216; *see* Ex. 4 (*Fuller I*, DE 559, Tr. 5/8/23 (Pinilla) 192:13-15; DE 560, Tr. 5/9/23 (Pinilla) 68:4-70:12); *Fuller I*, DE 1.[2]

Indeed, several Plaintiffs did not exist in 2017-2018 and thus they could not have engaged in all of the alleged conduct. *See, e.g.*, Havana Bungalows, formed 5/5/2018; El Shopping, formed 12/12/2018; and Calle Siete formed 8/27/2020. *See* Ex. 1 (Sunbiz public records).

As a basis for their retaliation claims, Plaintiffs allege that Defendants, including Noriega, conjured or caused imposition of improper code violations or changed policies to favor arbitrary issuance of such violations. *See* Compl. at ¶¶ 96-97, 435, 595, 598, 1287, 1598, 1902, 2994. These allegations are demonstrably false. Plaintiffs admitted that they are Code violators and that they

---

[2] The Court can consider testimony and evidence from the 2023 trial of *Fuller v. Carollo*, Case No. 1:18-cv-24190 (S.D. Fla. 2018) ("*Fuller I*") to determine the objective falsity of Plaintiffs' allegations. *See Roberto v. Shendell & Associates, P.A.*, 2018 WL 1367445, at *2 (S.D. Fla. Mar. 16, 2018) (taking judicial notice of public records attached to motion to dismiss where defendant used them to demonstrate that plaintiff's allegations were objectively false); *Bateman Harden PA v. Francis*, 2012 WL 3689402, at *2 (N.D. Fla. Aug. 27, 2012) (taking judicial notice of documents from other lawsuit because "court documents from a prior proceeding are matters of public record 'capable of accurate and ready determination by resort to sources whose accuracy could not reasonably be questioned'"). Further, the Complaint relies heavily on testimony and evidence from *Fuller I. See, e.g.*, Compl. at ¶¶ 54, 75, 76, 141-144, 147, 160. A court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if it is central to the plaintiff's claim and undisputed meaning that the authenticity of the document is not challenged. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). Excerpts of the trial transcripts in *Fuller I* that are cited herein are attached hereto as Ex. 4, and their authenticity cannot be challenged (*Fuller I*, DE 506, DE 546-569). To any extent Plaintiffs' claims are based on Noriega's testimony as a witness (*see* Compl. at ¶ 118), he is entitled to absolute immunity. *See Rehberg v. Paulk*, 566 U.S. 356, 367 (2012).

performed work without permits, including admissions in their Compliance Agreements with the City. *See Fuller I*, Def. Tr. Exs. 5, 6, 9-11, 13, 16, 24, 28-30, 32-34, 37, 39, 41, 43, 45, 63-80, 89, 90, 98, 100, 101, 111, 603, 604, 716, 719; *see also* Ex. 4 (DE 562 Tr. 5/11/23 (Fuller) 30:24-31:2, 186:13-187:6). Because these allegations cannot possibly be true, they cannot satisfy the *Twombly* standard, and, any claims based upon them must be dismissed.

Second, the allegations against Noriega largely stem from the acts of his subordinates and attempt to establish respondeat superior liability. *See* Compl. at ¶¶ 596, 798, 1303, 1306, 1606, 1617, 1624, 1629 (City employees issued notices and stop work orders, revoked CUs, and made accusations of work without a permit as to Brickell Station, Piedra Villas, Beatstik, El Shopping). The Complaint is brought against Noriega in his individual capacity, but it fails to meet the "extremely rigorous" pleading standard for supervisory liability. *See, e.g.*, *Verrier v. Reno*, 2023 WL 5836837, at *5 (N.D. Fla. Aug. 9, 2023) (dismissing § 1983 claims for failure to plausibly allege individual liability under "extremely rigorous standard for supervisory liability"). Because the allegations against Noriega fail to meet the requisite standard, the Complaint fails to plausibly give rise to an entitlement to relief.

Third, the Complaint contains hyperbolic and implausible allegations of Noriega "architecting" two City Ordinances as well as five other Defendants. *See, e.g.*, Compl. at ¶¶ 226, 429, 1917, 2386 (Noriega), 413, 1886, 2346 (Carollo), 261, 1948, 2426 (Mendez), 293, 1979, 2461 (Dooley), 353, 2530 (Marrero), 323, 2549 (Diaz). Only the Commission can pass ordinances, and as the City Manager, Noriega has no authority to pass an ordinance. *See* City of Miami Charter, §§ 4(a), 15. No specifics as to any alleged lobbying or voting by Noriega are alleged. There is no allegation that the Ordinances have been declared unconstitutional, and in fact, they remain in effect. Because the allegations as to passage of Ordinances are conclusory, inapplicable to Noriega and fail to plausibly state a claim, the Complaint must be dismissed.

**IV.     Plaintiffs still fail to state a claim for retaliation based on freedom of association.**

While still not clear, Plaintiffs' First Amendment claims also seem to be based on freedom of association. All fifteen entity Plaintiffs' causes of action appear to solely assert that their First Amendment rights were violated because they were "targeted . . . in reckless disregard for *Fuller and Pinilla's* First Amendment Rights of Free Speech, and [that Plaintiff's] Rights of Free Association." *See* Compl. at ¶¶ 248, 444, 606, 838, 1108, 1333, 1636, 1921, 2105, 2409, 3010, 3320, 3708, 4081; *see also id.* at ¶ 145 (alleging that Plaintiffs "were targeted based on their

affiliation with Fuller and Pinilla and their association with Fuller and Pinilla's political activities"). These allegations fail to plausibly state a First Amendment claim because they are conclusory at best. The factual allegations that do describe the Plaintiffs' relationships give rise to nothing more than a commercial relationship, which is not a cognizable basis for a First Amendment freedom of association claim.

There are two types of protected association under the First Amendment: intimate association and expressive association. *See McCabe v. Sharrett*, 12 F.3d 1558, 1562–63 (11th Cir.1994) (citing *Roberts v. United States Jaycees*, 468 U.S. 609, 617-18 (1984)). The right to intimate association is "the freedom to choose to enter into and maintain certain intimate human relationships," whereas the right to expressive association is "the freedom to associate for the purpose of engaging in activities protected by the First Amendment, such as speech, assembly, petition for the redress of grievances, and the exercise of religion". *McCabe*, 12 F.3d at 1563.

Plaintiffs have not alleged any facts to establish either intimate or expressive association. Plaintiffs do not assert claims based on intimate association standing, which encompasses relationships such as "marriage, childbirth, the raising and education of children, and cohabitation with one's relatives." *Id.*; *see also Bd. of Dir. of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 546 (1987) (holding rotary club members' relationship was not sufficiently intimate). Nor have Plaintiffs alleged facts to establish expressive association, which exists when "***the purpose of the association*** is to engage in activities independently protected by the First Amendment." *McCabe*, 12 F.3d at 1563; *see also Weinberger v. Navarro*, 957 F. Supp. 220, 223 (S.D. Fla. 1997) (emphasis added) (dismissing First Amendment association complaint where plaintiff failed to allege group activity to pursue goals independently protected by First Amendment).

Here, Plaintiffs' general allegation that they were associated with Fuller and Pinilla's "political activities" does not satisfy the pleading requirement for expressive association. Plaintiffs have not alleged that the predominant purpose of their association actually was to petition the government, to engage in speech, to redress any grievances, or to exercise religion. Instead, the entity Plaintiffs are in commercial relationships with Fuller and Pinilla. This is fatal for Plaintiffs' association claims because "activities and services that are primarily commercial rather than communicative do not qualify as expressive association that is protected under the First Amendment." *Edmondson v. Velvet Lifestyles, LLC*, 2016 WL 7048363, *10 (S.D. Fla. Dec. 5, 2016). As the Eleventh Circuit has explained, "the more commercial the associational interest

involved the less likely first amendment protection attaches." *Rivers v. Campbell*, 791 F.2d 837, 840 (11th Cir. 1986) (citing *Roberts*, 468 U.S. at 609) (holding that snow cone vendor's association was based on commercial gain only and therefore "association" was not entitled to First Amendment protection); *see also United States v. Bell*, 414 F.3d 474, 485 (3d Cir. 2005) (holding that seller of tax avoidance strategies ran "primarily a commercial enterprise, not a political group," and therefore was not entitled to First Amendment protection); *IDK, Inc. v. Clark County*, 836 F2d 1185, 1196 (9th Cir. 1988) (holding that escort service was not entitled to expressive association protections because their activities and purposes were "primarily commercial, rather than communicative"); *Skiles v. City of Reading*, 2011 WL 53069, *5 (E.D. Pa. Jan. 7, 2011) (dismissing First Amendment association claim by plaintiff who claimed that city was unfairly enforcing zoning rules and targeting his rental properties and restaurants where plaintiff failed to allege that his establishments functioned as an organization for the purpose of engaging in political speech, activism, or any other social or cultural end and it was apparent that bar was "first and foremost, a commercial enterprise with no expressive purpose"); *Little v. Jacksonville State Univ.*, 2008 WL 11422611, *7 (N.D. Ala. Mar. 31, 2008) (dismissing complaint filed by lab employees, in part, due to failure to allege facts to establish either intimate or expressive association).

Indeed, the Supreme Court has determined that there is only minimal constitutional protection for commercial association. *Roberts*, 468 U.S. at 634 (O'Connor, J., concurring). In determining whether an association is commercial, courts look to the "purpose" of the association and whether the activities are "predominantly" commercial or expressive. *Id.* at 635-37. Here, based on the allegations, the sole purpose of the entities' association with their members is commercial (operating a commercial business or property), and the predominant purpose of these commercial associations is to make money. Look no further than each of the Plaintiffs' alleged damages, which include loss of revenue, lost reinvestment opportunity, and lost rent and sale value. *See, e.g.,* Compl. at ¶¶ 246, 442, 604, 836, 1106, 1331, 1634, 1919, 2103, 2407, 2604, 2818, 2878.

The Supreme Court in *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 649-650 (2000), adopting Justice O'Connor's concurrence in *Roberts*,[3] analyzed whether the Boy Scouts was a commercial

---

[3] In addition to the Supreme Court adopting the concurrence, circuit courts have acknowledged the adoption. *See, e.g., Green v. Miss United States of America, LLC*, 533 F. Supp. 3d 978, 993 (D. Or. Apr. 8, 2021), *aff'd*, 52 F.4th 773 (9th Cir. 2022) (citations omitted) ("While Supreme Court concurrences generally lack precedential effect, the Ninth Circuit has adopted the expressive-commercial distinction as described by Justice O'Connor, as have most other circuits.").

or expressive association and concluded it was expressive because it is an association that seeks to transmit a system of values and therefore engages in expressive activity. In contrast, the entities here are vehicles for owning commercial businesses and properties. Each Plaintiff that asserted a freedom of association claim, other than Viernes, is a Florida for profit entity, and even Viernes, whose purpose was to coordinate a monthly festival, seeks "economic damages in excess of $10 million." *See* Compl. at ¶¶ 6-20, ¶ 2103. The Complaint is devoid of *any* allegation from which the Court can conclude Plaintiffs associated to engage in expressive activities protected by the First Amendment. This failure to allege any facts to support the conclusion "that expression is a significant or necessary component of [Plaintiffs'] activities", *IDK, Inc.*, 836 F.2d at 1195, compels dismissal of the freedom of association claims against Noriega.

## V.     Plaintiffs still fail to state a claim for retaliation based on speech.

To state a First Amendment retaliation claim based on speech, "a plaintiff must establish first, that his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech." *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005). The Court should exercise its gatekeeping role and dismiss the Complaint because Plaintiffs have failed to adequately allege sufficient facts to state a plausible claim for First Amendment retaliation based on speech.

### A.     Plaintiffs fail to satisfy the first prong requiring that each Plaintiff allege constitutionally protected speech or conduct.

To satisfy the first prong of a First Amendment retaliation claim, each plaintiff must allege sufficient facts for the Court to conclude "that his speech or act was constitutionally protected." *Bennett*, 423 F.3d at 1250. As set forth below, no Plaintiff has satisfied this requirement.

#### 1.     Each Plaintiff fails to allege it engaged in its own protected activity.

While the Complaint attempts to separate the Plaintiffs into different counts, it falls short of satisfying the first element, which requires each Plaintiff to allege "he himself" engaged in protected activity. *See Easton v. Sundram*, 947 F.2d 1011, 1015 (2d Cir. 1991) (affirming dismissal and holding individual's retaliation claim "fails at the outset because he himself has not engaged in conduct deserving of first amendment protection" where corporation, not individual, engaged in protected activity), *abrogated on other grounds by Washington v. County of Rockland*, 373 F.3d

310 (2d Cir. 2004); *see also Falco v. Zimmer*, 767 F. App'x 288, 307 (3d Cir. 2019) (affirming dismissal and finding activity not protected under First Amendment, in part, because "one cannot claim First Amendment protection for the speech of another"); *Prestopnik v. Whelan*, 253 F. Supp. 2d 369, 374 (N.D.N.Y. 2003), *aff'd*, 83 Fed. App'x 363 (2d Cir. 2003) ("[P]laintiffs may not rely upon the conduct of others to support their claimed First Amendment violations."); *Lilly v. Town of Lewiston*, 2019 WL 2501555, at *5 (W.D.N.Y. June 17, 2019) (granting dismissal where Plaintiff has not alleged that he himself engaged in any protected activity."). This is because constitutional rights are personal rights that "may not be vicariously asserted." *See Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978) (citation omitted); *see also Leake v. Drinkard*, 14 F.4th 1242, 1247 (11th Cir. 2021) ("[W]hether that personal right [protected by the First Amendment] has been abridged depends crucially on whose speech is at issue."); *Wolff v. Cash 4 Titles*, 351 F.3d 1348, 1353 (11th Cir. 2003) ("[P]laintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.").

As discussed in Section II, *supra*, **none** of the Plaintiffs has alleged his or its **own** instance of protected activity. Instead, in ten of the seventeen claims against Noriega, Plaintiffs raise the same allegations as to speech: that Fuller and Pinilla engaged in speech on their behalf without specifying what that speech was or when it occurred. *See* Compl. at Count 2 (¶ 216), Count 9 (¶ 420), Count 18 (¶ 588) Count 25 (¶ 790), Count 33 (¶ 1088), Count 40 (¶ 1288), Count 47 (¶ 1599), Count 57 (¶ 1893), Count 64 (¶ 2088), Count 75 (¶ 2372). The remaining entity claims allege that "Fuller and Pinilla supported Alfie Leon," without alleging that the Plaintiff bringing that claim uttered any speech. *See* Compl. at Count 84 (¶ 2590), Count 94 (¶ 2802), Count 98 (¶ 2868), Count 103 (¶ 2980), Count 135 (¶ 4044). While Fuller and Pinilla allege that they "supported Alfie Leon," they do not specify the speech in which they engaged. Compl. at Count 113 (¶ 3271), Count 124 (¶ 3659). For this reason alone, Plaintiffs cannot satisfy the first element of their First Amendment speech claim.

**2.     The speech alleged by Plaintiffs is not actionable.**

Assuming these allegations somehow can be construed as speech by each Plaintiff, which they are not, they still fail to plausibly state a claim entitled to First Amendment protection.

**Support for Leon:** All instances of protected activity and targeting flow from Plaintiffs' alleged support of Carollo's opponent, Alfie Leon, including hosting rallies, in November 2017. *See* Compl. at ¶¶ 216, 420, 588, 790, 1088, 1288, 1599, 1893, 2088, 2372; *see also id.* at ¶¶ 2590,

10

2802, 2868, 2980, 4044, 3271, 3659. Without that claimed initial political activity, the rug is pulled out from Plaintiffs' entire First Amendment claim. However, the alleged support of Leon is not legally protected speech or conduct by any of the Plaintiffs in this case.

Importantly, the rallies were held on property owned by non-party, 1393 LLC. *See* Ex. 4 (*Fuller I*, DE 559, Tr. 5/8/23 (Pinilla) 221:11-20). The rallies were hosted by Jenny Lee Molina, her company JLPR, and/or Leon's campaign, not Plaintiffs. (*Fuller I*, Pl. Tr. Exs. 314, 315, 413). Fuller did not attend the rallies. (*Fuller I*, DE 560, Tr. 5/9/23 (Fuller) 187:20-21). Pinilla's claimed presence at the rallies is not evidence that he adopted the rally organizer's speech, *see Gathright v. City of Portland*, 439 F.3d 573, 577 (9th Cir. 2006) ("Merely being present at a public event does not make one part of organizer's message for First Amendment purposes"), and thus does not suffice to establish individual speech or activity by Pinilla. Even if any of the Plaintiffs hosted the rallies, which is not the case, a host's accommodation of the message of another does not equate to speech by the host. *See Rumsfeld v. Forum for Academic & Inst'l Rights, Inc.*, 547 U.S. 47, 64 (2006) ("[S]chools are not speaking when they host interviews and recruiting receptions.").

The First Amendment protects only "conduct that is inherently expressive." *Id.* To determine if conduct is expressive, the law requires both an "intent to convey a particularized message" and "the likelihood must be great that 'the message would be understood by those who viewed it.'" *Zinman v. Nova SE. Univ., Inc.*, 2023 WL 2669904, at *5 (11th Cir. Mar. 29, 2023) (citation omitted). The second prong asks "whether the reasonable person would interpret the conduct as *some* sort of message, not whether an observer would necessarily infer a *specific* message." *Id.* (original emphasis) (citation omitted). Here, there was no intent of "Plaintiffs" to convey any message, or likelihood that reasonable persons would interpret the alleged speech as an attempt to convey any message by any of the Plaintiffs. Rallies on property owned by non-party, 1393 LLC, are not "inherently expressive" speech of any of the seventeen Plaintiffs, let alone all "Plaintiffs." Moreover, Fuller and Pinilla's alleged support of Leon was purposefully concealed to avoid public disclosure. *See* Ex. 4 (*Fuller I*, DE 560, Tr. 5/9/23 (Fuller) 171:9-15, 174:23-25, 186:11-15). Their names were deliberately kept off promotional materials, and no publicly available information in connection with the rallies identified them. *See* Ex. 4 (*Fuller I*, DE 559, Tr. 5/8/23 (Pinilla) 223:6-14, 223:20-23, 224:19-22; DE 558, Tr. 5/5/23 (Bernheim) 189:10-12; Pl. Tr. Ex. 314, 315, 413). Plaintiffs' alleged "conduct at issue here is not so inherently expressive that it warrants [First Amendment] protection." *See Rumsfeld*, 547 U.S. at 66.

Therefore, none of the Plaintiffs engaged in protected activity in connection with alleged support of Leon, including the rallies, which is the basis of all of Plaintiffs' retaliation claim.

**False beliefs:** Ten counts of the Complaint are also based on Noriega's "false belief" that "Plaintiff*s*" were financing a lawsuit by Leon against Carollo and organizing or participating in efforts to recall Carollo. *See* Compl. at Count 2 (¶ 216), Count 9 (¶ 420), Count 18 (¶ 588) Count 25 (¶ 790), Count 33 (¶ 1088), Count 40 (¶ 1288), Count 47 (¶ 1599), Count 57 (¶ 1893), Count 64 (¶ 2088), Count 75 (¶ 2372). Noriega's alleged "false belief" is not speech at all, let alone speech by any plaintiff. *See Rumsfeld*, 547 U.S. at 49 (stating that symbolic speech requires inherently expressive conduct, like flag burning.); *Zinman*, 2023 WL 2669904, at *5 (11th Cir. 2023) (stating that speech requires "intent to convey a particular message," a great likelihood "that the message would be understood by those who viewed it," and whether a "reasonable person would interpret the conduct as some sort of message").

Contrary to the requirements of alleging the first prong to state a retaliation claim, Plaintiffs allege they did *not* engage in the protected activity at issue (financing or organizing lawsuits against Carollo). *See* Compl. at ¶¶ 135, 216, 420, 588, 790, 1088, 1288, 1599, 1893, 2088, 2372. *Bennett*, 423 F.3d at 1250 ("plaintiff must establish first, that his speech or act was constitutionally protected"). Just as a plaintiff cannot state a tort claim without a completed tort, a plaintiff cannot state a First Amendment retaliation claim without having engaged in protected activity.

Moreover, in all of these cut and paste allegations, numerous Defendants allegedly had the same "false belief" with no specific facts. *See* Compl. at ¶¶ 167 (Carollo), 216 (Noriega), 251 (Mendez), 286 (Dooley), 316 (Diaz), 345 (Marrero), 376 (Plascencia), 529 (Ortiz), 543 (Bayona), 1814 (Goldberg). And the Leon lawsuit was in 2017, years before Noriega became City Manager.

**Ethics complaint:** The Complaint implausibly alleges that Fuller and Pinilla filed the 3/2018 ethics complaint on behalf of ten of the Plaintiffs. *See* Compl. at Count 2 (¶ 216), Count 9 (¶ 420), Count 18 (¶ 588) Count 25 (¶ 790), Count 33 (¶ 1088), Count 40 (¶ 1288), Count 47 (¶ 1599), Count 57 (¶ 1893), Count 64 (¶ 2088), Count 75 (¶ 2372). However, only one Plaintiff, the Barlington Group, LLC, filed the ethics complaint (not Fuller and Pinilla), and Plaintiffs inexplicably do not even allege this as a basis for Barlington Group's claim against Noriega. *See* Compl. at Count 103 (¶¶ 2977-3011); *see also* Ex. 4 (*Fuller I*, DE 1-1; DE 506-15 at 48, Def. Tr. Ex. 126; DE 559, Tr. 5/8/23 (Pinilla) 215:13-15; DE 560, Tr. 5/9/23 (Pinilla) 84:6-7 (Pinilla testified, "Q. Who filed this complaint? A. Barlington Group did."); DE 562, Tr. 5/11/23 (Fuller)

12

221:8-17 (Fuller testified, "I was signing on behalf of the Barlington Group.").[4]

**Filing lawsuits:** As a basis for ten claims against Noriega, the Complaint implausibly alleges that Fuller and Pinilla, on behalf of those entity Plaintiffs, filed lawsuits to stop the demolition of their buildings and filed a federal lawsuit against Carollo. *See* Compl. at Count 2 (¶ 216), Count 9 (¶ 420), Count 18 (¶ 588) Count 25 (¶ 790), Count 33 (¶ 1088), Count 40 (¶ 1288), Count 47 (¶ 1599), Count 57 (¶ 1893), Count 64 (¶ 2088), Count 75 (¶ 2372). However, Fuller and Pinilla did not file lawsuits to stop the demolition of the buildings; only certain Plaintiffs did. *See* Exs. 2 and 3 (Complaints in *Mad Room* and *Tower Hotel* cases,[5] respectively). Moreover, Fuller and Pinilla could not have filed the 10/2018 *Fuller I* case on behalf of any entity Plaintiffs because they filed the claims in that case individually. *See Fuller I*, DE 1.

**Press conference:** The Complaint implausibly alleges Fuller and Pinilla hosted a press conference on behalf of ten Plaintiffs. *See* Compl. at Count 2 (¶ 216), Count 9 (¶ 420), Count 18 (¶ 588) Count 25 (¶ 790), Count 33 (¶ 1088), Count 40 (¶ 1288), Count 47 (¶ 1599), Count 57 (¶ 1893), Count 64 (¶ 2088), Count 75 (¶ 2372). However, only Fuller and Pinilla individually held that press conference. *See* Ex. 4 (*Fuller I*, DE 559, Tr. 5/8/23 (Pinilla) 192:13-15; DE 560, Tr. 5/9/23 (Pinilla) 68:4-70:12). Plaintiff Calle Siete did not exist when the press conference occurred in May 2019. *See* Ex. 1 (Sunbiz public records). Remarkably, Fuller and Pinilla did not allege the press conference as a basis for their own First Amendment claims. *See* Compl. at ¶¶ 3271, 3659.

**Promoting art:** The Complaint implausibly alleges Fuller and Pinilla promoted African-American and Afro-Cuban murals in Calle Ocho on behalf of ten Plaintiffs. *See* Compl. at Count 2 (¶ 216), Count 9 (¶ 420), Count 18 (¶ 588) Count 25 (¶ 790), Count 33 (¶ 1088), Count 40 (¶ 1288), Count 47 (¶ 1599), Count 57 (¶ 1893), Count 64 (¶ 2088), Count 75 (¶ 2372). These allegations are vague and conclusory and fail to put Noriega on notice of the claim in that they fail to state, *inter alia*, who made the speech, the content of the speech, the date of the speech, how the speech was made, and to whom the speech was made. *See, e.g.*, *Mulloney v. Polk Cnty. Bd. of*

---

[4] *See supra* note 2. Excerpts of trial transcripts in *Fuller I* cited herein are attached as Ex. 4, and their authenticity cannot be challenged (*Fuller I*, DE 506, DE 546-569).

[5] *Mad Room LLC, d/b/a Ball and Chain, Altos Mexicano, LLC d/b/a Taquerias El Mexicano, Little Havana Arts Building, LLC, and La Gran Fiesta, LLC v. City of Miami*, Case #21-cv-23485-RKA (S.D. Fla.) ("*Mad Room* case"); *Tower Hotel, LLC, Piedra Villas, LLC, and Beatstik, LLC v. City of Miami*, Case #22-8069-CA-44 (Miami-Dade County Circuit Court) ("*Tower Hotel*" case). El Shopping and Calle Siete were added as plaintiffs in May 2022 in the *Tower Hotel* case.

*Cnty. Comm.*, 2018 WL 11485769, at *5 (M.D. Fla. Sept. 10, 2018) (determining that "the Complaint is vague and conclusory and lacks sufficient factual matter to state a cognizable claim for retaliation in violation of the First Amendment" where plaintiff "does not state how or when she made the speech, describe the content of her speech, or state who she made the speech to.").

**Different vision:** Plaintiffs rely on "Plaintiffs generally having a different vision" for Calle Ocho and Little Havana than Carollo as an instance of protected activity. *See* Compl. at Count 2 (¶ 216), Count 9 (¶ 420), Count 18 (¶ 588) Count 25 (¶ 790), Count 33 (¶ 1088), Count 40 (¶ 1288), Count 47 (¶ 1599), Count 57 (¶ 1893), Count 64 (¶ 2088), Count 75 (¶ 2372). Not only is this allegation vague and conclusory, but it is also not actionable because the First Amendment protects only "conduct that is inherently expressive." *Rumsfeld*, 547 U.S. at 65-66. "Having a different vision" is simply not inherently expressive. Rather, it is similar to engaging in "a general course of conduct" which does not constitute protected conduct. *See Welton v. Durham Cty.*, 781 F. App'x 242, 244 (4th Cir. 2019) (citation omitted) (affirming dismissal of First Amendment retaliation claim in county employee's § 1983 case, stating, "we agree with the district court's conclusion that Welton merely engaged in a general course of conduct unprotected by the First Amendment."); *see also Rumsfeld*, 547 U.S. at 65–66; *Zinman.*, 2023 WL 2669904, at *5.

For all of these reasons, none of the instances of "speech" alleged in the Complaint can plausibly give rise to an actionable First Amendment claim.

### 3.    Some Plaintiffs' claims are not plausible because they did not exist at the relevant time.

Havana Bungalows, El Shopping, and Calle Siete cannot plausibly state a claim as they did not exist in November 2017-March 2018, when the Complaint alleges that "Plaintiffs" allegedly supported Carollo's opponent and filed an ethics complaint, the primary instances of alleged protected activity from which all retaliation stems. Thus, those entities did not and could not have engaged in the alleged protected conduct. *See, e.g.*, Little Havana Bungalows LLC, formed 5/5/2018; El Shopping LLC, formed 12/12/2018; and Yo Amo Calle Siete LLC formed 8/27/2020. *See* Ex. 1 (Sunbiz public records). Accordingly, Counts 33, 47, and 75 must be dismissed.

### B.    Plaintiffs fail to satisfy the second prong requiring that the Defendants' conduct adversely affect their protected speech.

None of the Plaintiffs allege they were deterred or chilled, and therefore they fail to satisfy the second prong of a retaliation claim – that the defendant's retaliatory conduct adversely affected

the protected speech. *See Bennett*, 423 F.3d at 1250. "A plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Id.* at 1254.

Moreover, while the test directs the Court to consider a person of ordinary firmness, "the plaintiff's actual response to the defendant's conduct 'provides some evidence of the tendency of that conduct to chill First Amendment activity.'" *Bethel v. Town of Loxley*, 221 F. App'x 812, 813 (11th Cir. 2006) (citation omitted). Here, Plaintiffs fail to allege facts satisfying the ordinary firmness test because the face of the Complaint reflects that they have not been chilled in their speech by their alleged actions. the Complaint alleges Plaintiffs aggressively voiced their opinions by filing an ethics complaint against Carollo, filing a federal lawsuit against Carollo and the City, filing a second lawsuit against the City, filing this third lawsuit against the City and eleven City officials, holding a press conference at City Hall to expose Carollo and complain about Carollo and the City, promoting their views and vision, and speaking out against the City. *See, e.g.,* Compl. at ¶ 135. Because these allegations show that Plaintiffs have not been deterred in exercising their First Amendment rights, they cannot plausibly satisfy the second prong of their claim.

### C.      Plaintiffs fail to satisfy the third prong requiring a causal connection.

Plaintiffs also fail to satisfy the third prong, "that there is a causal connection between the retaliatory actions and the adverse effect on speech." *See Bennett*, 423 F.3d at 1250. "[P]laintiff must establish a 'causal connection' between the government defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury.'" *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (citation omitted). "It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must *cause* the injury." *Id.* (original emphasis). "[I]t must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id*. If the government takes adverse action against someone based on an official's prohibited motive, but there are non-retaliatory grounds that cause the adverse consequences, then retaliatory animus is not the "but-for" cause of the injury. *Id.*

To establish a causal connection, a "plaintiff must show that the defendant was subjectively motivated to take the adverse action because of the protected speech." *Castle v. Appalachian Tech. Coll*., 631 F.3d 1194, 1197 (11th Cir. 2011) (citation omitted). "Subjective motivation in turn requires that the defendants had actual knowledge of the plaintiffs' protected speech". *Indigo Room, Inc. v. City of Ft. Myers*, 589 F. App'x 938, 947 (11th Cir. 2014).

### 1. Plaintiffs fail to allege Noriega's actual knowledge.

Assuming that Plaintiffs' allegations establish protected speech, which they do not, Plaintiffs fail to allege that Noriega had actual knowledge of that speech. Plaintiffs' core allegations are based on two alleged "protected activities" – support of Leon and the filing of the ethics complaint. *See* Compl. at ¶¶ 135, 216, 420, 588, 790, 1088, 1288, 1599, 1893, 2088, 2372, 2590, 2802, 2868, 2980, 3009. Both of these occurred in November 2017-March 2018, well before Noriega became City Manager in 2020. Plaintiffs do not otherwise adequately allege Noriega's knowledge of that speech which allegedly occurred before he was City Manager. Thus, it is not plausible that Noriega was subjectively motivated to take any adverse action against the Plaintiffs when he was not even a City employee when they engaged in the purported protected activity.

Instead of pleading Noriega's actual knowledge, Plaintiffs inadequately rely on general allegations of what was "widely known throughout the City". *See* Compl. at ¶ 146. Plaintiffs allege "all of the Defendants had actual knowledge" that the alleged "scheme" was "a form of First Amendment retaliation." *Id.* These general allegations are legally insufficient.[6]

### 2. Plaintiffs fail to allege a close temporal proximity.

Having failed to allege Noriega's knowledge of alleged protected conduct that occurred before he became the City Manager, Plaintiffs also fail to allege "a close temporal proximity between this awareness and the adverse action." *Oirya v. Mando Am. Corp.*, 2024 WL 1462500, *19 (11th Cir. April 4, 2024). "The Court will 'also consider the temporal proximity between a plaintiff's exercise of free speech and the adverse effect in gauging the causal connection.'" *Innova Inv. Grp., LLC v. Vill. of Key Biscayne*, 2021 WL 1723678, *5 (S.D. Fla. Apr. 30, 2021) (Gayles, J.) (dismissing First Amendment retaliation claim). Here, the alleged protected activity primarily occurred between November 2017-March 2018 (Compl. at ¶¶ 44-49, 67, 135, 216, 420, 588, 790, 1088, 1288, 1599, 1893, 2088, 2372, 2590, 2802, 2868, 2980, 3009), and Noriega's alleged adverse action commenced in February 2020 (*id.* at ¶ 87). The temporal proximity between

---

[6] In addition to failing to sufficiently plead Noriega's "actual knowledge" of alleged protected activity, the allegation as to what was "widely known throughout the City" is inadmissible hearsay. *See* Compl. at ¶ 146; *see also Evans v. McClain*, 131 F. 3d 957, 962 (11th Cir. 1997) ("The district court correctly dismissed this evidence as 'not significantly probative' because it was based on gossip, common knowledge, and the hearsay statement of an unidentified representative."); *Alexander v. United States*, 2022 WL 17688692, *5 (11th Cir. 2022) (affirming exclusion of "common knowledge" evidence, and district court's explanation, "we don't try cases on rumors.").

November 2017-March 2018 and February 2020 is 2-3 years, which "is simply too attenuated to infer a causal connection." *Innova*, 2021 WL 1723678, *14 (dismissing complaint due to "almost a year" between alleged protected conduct in July 2018 and adverse action in May 2019).

### i. Plaintiffs are not shielded forever due to alleged protected activity in November 2017.

Plaintiffs' claim that every action they perceive as adverse from November 2017 continuing to today due to their alleged protected conduct in November 2017 must be rejected. *See* Compl. at ¶¶ 247-248, 443-444, 605-606, 837-838, 1107-1108, 1332-1333, 1635-1636, 1920-1921, 2103-2105, 2408-2409, 2602, 2605, 2819, 2879, 3010, 3320, 3708, 4081. Even if Plaintiffs plausibly alleged protected activity, which they do not, they are not "cloaked in a perpetual-protected-activity status" or entitled to "forever draw the shield of retaliation" around themselves based on claimed protected conduct years earlier. *See Reed v. City of Conway*, 2022 WL 3647864, *10 (E.D. Ark. Aug. 24, 2022) ("being a named plaintiff in a long-running lawsuit does not mean that Mr. Reed was cloaked in a perpetual-protected-activity status"); *Mark v. Spears*, 2021 WL 6841552, *16 (E.D. Tex. Dec. 16, 2021). Plaintiffs' alleged protected speech stems from Fuller and Pinilla's alleged support of Leon in 2017, six years and two elections ago, before Noriega was the city manager. *See* Compl. at ¶¶ 44-49, 135. Such alleged support does not give Plaintiffs and their tenants absolution in perpetuity from enforcement of City laws, Building Codes, etc.

Therefore, these Plaintiffs fail to adequately allege a causal connection between any protected activity in which they allegedly engaged and any alleged retaliation by Noriega.

### VI.   Noriega had probable cause and non-retaliatory reason to take action.

Scrutiny of governmental action based on a plaintiff's allegations of free-speech infringement is warranted only "where the government directly limits speech itself or takes action *because of the speech in question*." *Mech v. Sch. Bd. of Palm Beach Cnty.*, 2014 WL 11444112, at *3 (S.D. Fla. 2014), *aff'd sub nom. Mech v. Sch. Bd. of Palm Beach Cnty.*, 806 F.3d 1070 (11th Cir. 2015) (emphasis added). Given that more than two years passed between Plaintiffs' alleged "speech" (November 2017-March 2018) and when Noriega took office (February 2020), it is not plausible that Noriega took action "because of" the speech in question. *See Innova*, WL 1723678, *5 (dismissing complaint due to "almost a year" between protected conduct and adverse action).

Moreover, courts have long recognized that a lawful basis for governmental action breaks the causal link between a defendant's retaliatory animus and a plaintiff's alleged § 1983 injury.

*See, e.g.*, *O'Boyle v. Com. Grp., Inc*., 2023 WL 2579134, at *4 (11th Cir. Mar. 21, 2023) (stating that when a government actor has "probable cause to take legal action against the plaintiff's protected activity," even if personal animus also was a motive, the plaintiff's retaliation claim fails "as a matter of law"); *Brienza v. City of Peachtree City*, 2022 WL 3841095, at *5-6 (11th Cir. Aug. 30, 2022). To show probable cause for enforcement, officials need only "a reasonable belief, based on the facts and circumstances known to [them] that the citation was valid." *Robson 200, LLC v. City of Lakeland*, 593 F. Supp. 3d 1110, 1128 (M.D. Fla. 2022) (citation omitted).

In this case, the actions of Noriega and all Defendants were justified, and probable cause existed for their enforcement of the City's building, zoning, health and safety ordinances, codes, and regulations. The Complaint admits as much as to some enforcement actions and fails to allege that the others lacked probable cause. Although Plaintiffs have attempted to plead around their previously admitted Code violations, the Complaint still confirms that there was a "reasonable belief" that Plaintiffs had violated the City's Code when enforcement actions occurred. *See O'Boyle*, 2023 WL 2579134, at *5 (stating that parties' stipulation to probable cause for charging plaintiff with trespass and disorderly conduct was fatal to his retaliatory prosecution claim). The Complaint continues to concede numerous Code violations, but dismisses them as "baseless", "arbitrary", "manufactured", and "bogus". *See* Compl. at ¶¶ 435, 595, 598, 1287, 1902. Most tellingly, however, is what the Plaintiffs do not plead: that they and their properties were in compliance with the City Code and that, therefore, the Defendants' actions were not justified.

Plaintiffs' admissions concede code violations for which any property owner should reasonably expect enforcement action, as set forth in Section III, *supra*. Yet Plaintiffs contend they are immune in perpetuity from complying with laws that apply to every other Miami property owner. Plaintiffs' admissions of their code violations bar any related § 1983 claim. *See Bey v. City of Tampa Code Enf't*, 607 F. App'x 892, 896–97 (11th Cir. 2015) (finding plaintiff could not state a case for § 1983 religious discrimination where she admitted to the code violations and had simply chosen not to comply with land-use ordinances); *6420 Roswell Rd., Inc. v. City of Sandy Springs*, 484 F. Supp. 3d 1321, 1339 (N.D. Ga. 2020) (being cited for an actual, serious fire-code violation does not violate First Amendment rights); *Mech*, 2014 WL 11444112, at *4 (finding no retaliation where "[d]efendant did not remove Plaintiff's banners because of the expression contained therein" but rather "for a reason unrelated to Plaintiff's speech").

Plaintiffs' failure to allege that any enforcement action taken against any of their properties

lacked probable cause or a lawful motive is fatal to their § 1983 claim against Noriega and the other Defendants. Indeed, in light of Plaintiffs' history of admitted Code violations and unpermitted work, Noriega had probable cause and non-retaliatory reasons to take the alleged actions. *See Warren v. DeSantis*, 2024 WL 132518, at *9 (11th Cir. Jan. 11, 2024) (acknowledging no First Amendment retaliation claim exists if defendant would have made same decision even if plaintiff did not engage in protected activity). Here, the retaliation claim against Noriega is not plausible because, based on the face of the Complaint that concedes Code violations, Noriega would have made the same decisions. Accordingly, Plaintiffs' First Amendment claims must be dismissed on these grounds as well.

**VII.    The Complaint against Noriega must be dismissed based on qualified immunity.**

Noriega is entitled to qualified immunity as to Plaintiffs' claims. Qualified immunity protects government officials sued in their individual capacities as long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Bldg. Empowerment by Stopping Trafficking, Inc. v. Jacobo*, 2013 WL 5435729, at *1 (S.D. Fla. Sept. 27, 2013) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation." *Id*. (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)).

**A.    Noriega was acting within the scope of his discretionary authority.**

To the extent Plaintiffs have alleged any conduct specific to Noriega, those alleged acts were within the scope of his discretionary authority and therefore immune from civil liability. Noriega is employed as City Manager. *See* Compl. at ¶ 23.

All of Noriega's alleged acts are within the broad scope of his authority as the head of the administrative branch of City government including carrying out alleged policies of the City.

The Complaint implausibly alleges Noriega's "architecting" two City Ordinances as well as five other Defendants, as set forth in Section III, *supra*. Only the Commission can pass ordinances. No specifics as to any alleged lobbying by Noriega are alleged. There is no allegation that the Ordinances have been declared unconstitutional, and in fact, they remain in effect. Even under a conspiracy analysis, Plaintiffs sued only one Commissioner, yet it takes a majority of the five City Commissioners to pass an Ordinance. Noriega's actions in carrying out ordinances passed

by the Commission "would be within, or reasonably related to, the outer perimeter of an official's discretionary duties." *Minnifeld v. City of Birmingham Dep't of Police*, 791 F. App'x 86, 89 (11th Cir. 2019). Therefore, Plaintiffs fail to set forth plausible allegations against Noriega, and the Complaint should be dismissed.

The Complaint also contains Plaintiffs' characterizations of Noriega's alleged role – that he was "one of the prime architects directly behind the City's political retaliation for Carollo." *See, e.g.*, Compl. at ¶ 117. Where the alleged acts are within an official's discretionary function, *i.e.*, organizing a meeting with City officials, hyperbolic allegations as to alleged motive and intent do not abrogate immunity. *See* Compl. at ¶¶ 117, 222, 425, 593, 794, 1092, 1293, 1603, 1897, 2093, 2376, 2597, 2807, 2873, 2985, 3276, 3664.

### B.   Plaintiffs cannot defeat Noriega's qualified immunity because they cannot meet their burden to show his alleged conduct violates clearly established law.

A plaintiff seeking to defeat qualified immunity must show that:

> the conduct in question violates clearly established law. A plaintiff need not identify a case directly on point, but "existing precedent must have placed the statutory or constitutional question beyond debate." Clearly established law must not be identified with a "high level of generality." General legal propositions are not enough. Rather, the clearly established law must be "particularized" to the facts of the case. In this way, the test focuses "on whether the officer had fair notice that [his] conduct was unlawful." "[P]re-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated reasonable government agent that what defendant is doing violates federal law in the circumstances. "This standard does not require that the "very action in question has previously been held unlawful," but "the unlawfulness must be apparent" under then-existing law.

*Minnifield*, 791 F. App'x at 89-90 (citations omitted); *see also Washington v. Warden*, 847 F. App'x 734, 737 (11th Cir. 2021) (for right to be clearly established, plaintiff must either identify precedents with materially similar facts or that the violation was "so obvious that every reasonable officer would know that his actions were unconstitutional.").

Noriega's alleged violations were not "so obvious" that he would have known his actions were unconstitutional where Plaintiffs fail to allege Noriega's knowledge of the alleged protected speech, they rely on inadmissible hearsay, and they fail to overcome their admitted repeated Code violations which provided probable cause for Noriega's alleged acts. Moreover, Noriega cannot be said to have been on "fair notice" that he could be liable under "clearly established law" for

retaliating due to protected activity that occurred before he became City Manager. Plaintiffs concede Noriega was not City Manager six years and two elections ago in 2017 when they allegedly hosted rallies and supported Leon, in 2018 when they filed an ethics complaint and civil rights action, or in 2019 when they held a press conference exposing violations, and that he was not appointed as City Manager until February 2020, yet they inconsistently claim he was City Manager "at all relevant times." *See* Compl. at ¶¶ 23, 87. This critical pleading deficiency renders the core allegations implausible and insufficient to state a retaliation claim against Noriega. In light of Plaintiffs' failure to adequately allege Noriega's actual knowledge of such past activity, Plaintiffs fail to defeat Noriega's entitlement to rely on qualified immunity.

Plaintiffs also fail to overcome Noriega's immunity because he cannot be said to have been on fair notice that he could be liable under clearly established law for violating rights of Plaintiffs who did not engage in speech, whose associations are commercial, entities that did not exist at the time of the alleged speech, and where probable cause existed. Noriega cannot be said to have been on "fair notice" that he could be liable under "clearly established law" for involvement in passage of City Ordinances that have not been declared unconstitutional and that remain in effect.

## VIII.   Plaintiffs do not have standing to bring this action.

The Court lacks subject matter jurisdiction over the Complaint because Plaintiffs cannot establish Article III standing. In order to establish standing, each Plaintiff must allege facts that, if true, would support the following elements as to each Plaintiff: "(1) an injury in fact that (2) is fairly traceable to the challenged action of the defendant and (3) is likely to be redressed by a favorable decision." *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1245 (11th Cir. 2020) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)); *see also Walt Disney Parks & Resorts United States, Inc. v. DeSantis*, 2024 WL 442546, at *2 (N.D. Fla. Jan. 31, 2024) ("[Plaintiff] must show standing as to each Defendant it has sued.") (citation omitted). Further, the Eleventh Circuit places a high burden on plaintiffs to establish standing. *See Gardner v. Mutz*, 962 F.3d 1329, 1339 (11th Cir. 2020). As set forth below, none of the Plaintiffs has met these requirements as to Noriega.

### A.      Plaintiffs have not established injury in fact.

In order to satisfy the injury in fact requirement, Plaintiffs must establish "an invasion of a legally protected interest that is both (1) 'concrete and particularized' and (2) 'actual or imminent, not conjectural or hypothetical.'" *Support Working Animals, Inc. v. Governor of Fla.*, 8 F.4th 1198,

1201 (11th Cir. 2021) (quoting *Lujan*, 504 U.S. at 560). A claim for retaliation, and therefore standing, lies directly with the person who was the subject of the retaliation, not with a third person. *See Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) (citations omitted) (A party "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."). Since a corporation constitutes a legal entity separate and apart from its owners, the shareholders cannot sue to vindicate its alleged constitutional rights, even where they are sole stockholders. *See, e.g.*, *Miles v. Vill of Dolton*, No. 15 CV 5017, 2016 WL 1161293, *2 (E.D. Ill. March 23, 2016) (holding that shareholder lacked standing to bring § 1983 claim for injuries suffered by corporation); *Peterson v. Vill of Downers Grove*, 103 F. Supp. 3d 918, 924 (N.D. Ill. 2016) (same for case challenging sign ordinance). Fuller and Pinilla have no standing to assert claims for injuries allegedly suffered by their entities.

As to the entities' claims against Noriega, many of the counts allege precisely what they cannot – harm to yet another entity. For example, Plaintiffs asserting Counts 2 (LHAB), 9 (Gran Fiesta), 40 (Beatstik), 47 (El Shopping), 84 (LHAB Too), 103 (Barlington Group) are entities that own property. *See, e.g.*, Compl. at ¶¶ 9, 419, 1300, 1598, 2977. While each entity seeks damages in its own name, it alleges only harm to its tenants. There are no allegations supporting the conclusion that the harm to the tenants has resulted in harm to Plaintiffs. Even further attenuated, Count 103 is by Barlington Group, which alleges it is the "real estate 'sponsor' behind" thirteen other Plaintiffs. *See, e.g.,* Compl. at ¶ 2977. Leaving aside the fact that a "real estate 'sponsor'" is not a legally recognized entity, Barlington Group has not alleged any injury to itself. Because Plaintiffs asserting these counts have not alleged any facts to give rise to a reasonable inference that there has been retaliation against them (and, therefore, no harm that has been suffered), they have not established injury in fact. *See Jacobson*, 974 F.3d at 1246 (holding plaintiffs did not establish injury because there was no evidence as to what harm they suffered or would suffer).

Plaintiffs' allegations about attempts to preserve Little Havana's historical significance and cultural identity and the City's alleged retaliation, Compl. at ¶¶ 36, 38-41, 135, fall short of establishing injury in fact. *See Gardner*, 962 F.3d at 1341 (holding that assignment of meaning and message to a monument, its subsequent removal, and attendant psychological consequences do not constitute injury in fact). Similarly, disagreeing with government action and recitation that the government is violating one's constitutional rights do not establish a concrete injury in fact. *See Ladies Mem'l Ass'n v. City of Pensacola*, 34 F.4th 988, 993 (11th Cir. 2022).

B.      **Plaintiffs have not established traceability.**

Even if Plaintiffs had sufficiently alleged injury in fact, which they have not, they fail to establish traceability. To satisfy this element of standing, a plaintiff's injury must be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party . . . ." *Jacobson*, 974 F.3d at 1253 (quoting *Lujan*, 504 U.S. at 560)); *see also City of S. Miami v. Governor,* 65 F.4th 631, 640 (11th Cir. 2023) (stating that Article III standing requires a plaintiff to show a "causal connection" between its injury and the defendant's challenged conduct). The Court must ask what Noriega did wrong, and how do Plaintiffs trace their injury to this conduct. *See Lewis v. Governor of Alabama*, 944 F.3d 1287, 1301 (11th Cir. 2019) (finding that plaintiffs did not establish traceability because defendant did not do or fail to do anything that contributed to plaintiffs' harm). Because Plaintiffs have not alleged how Noriega caused them harm, they cannot satisfy this requirement.

Plaintiffs' allegation that Noriega "instructed" unidentified City "staff" to issue a violation against LHAB does not establish traceability because it was not Noriega that imposed the violation, and Plaintiffs have not satisfied the extremely rigorous standard for supervisory liability. *See* Compl. at ¶¶ 98, 230; *see also* Compl. at ¶¶ 596, 798, 1303, 1306, 1606, 1617, 1624, 1629 (alleging that City employees issued notices and stop work orders, revoked CUs, and made accusations of work without a permit); *City of S. Miami*, 65 F.4th at 640 (determining that traceability was not established where it was others who detained and transported illegal aliens, not the named defendants); *Walt Disney Parks*, 2024 WL 442546, at *3 (holding that allegations others were acting under the "Governor's thumb" were legally insufficient). In other counts, Plaintiffs do not allege any specific conduct by Noriega. *See, e.g.,* Counts 18 (Brickell Station), 95 (Calle Ocho), 98 (LHAB Tres); *see also Walt Disney Parks*, 2024 WL 442546, at *3 (holding traceability not established where plaintiffs failed to articulate any injury attributable to that defendant).

C.      **Plaintiffs have not established redressability.**

Plaintiffs also fail to establish standing because they have not alleged sufficient facts from which to conclude that any purported injury allegedly caused by Noriega (again, neither requirement which they have alleged) would be redressable by relief against Noriega. *See Jacobson*, 974 F.3d at 1254 (finding relief against defendant secretary of state would not satisfy redressability requirement where injuries were not traceable to secretary).

Redressability requires a plaintiff to show that a decision in its favor would significantly increase the likelihood that it would obtain relief that directly redresses the injury it claims to have suffered. *Lewis*, 944 F.3d at 1301. It must be the effect of the court's judgment on the defendant that redresses the plaintiff's injury. *Jacobson*, 974 F.3d at 1254. Here, no relief against Noriega could redress Plaintiffs' purported harm, particularly because most, if not all, of Plaintiffs' claims arise from Noriega's alleged past actions, yet the relief Plaintiffs seek is prospective. *See, e.g., Donovan v. Rivadeniera*, 557 F. Supp. 3d 1236, 1245 (S.D. Fla. 2021) (holding that protesters failed to establish redressability where their claims arose from defendants' past actions, and there were no allegations that defendants would respond similarly if plaintiffs protested again).

As to that prospective relief, while Plaintiffs' request is vague, they seem to be asking the Court to require the Defendants to stop enforcing duly enacted ordinances against them. This is essentially an obey-the-law injunction that has already been rejected by the Court in *Fuller I*. *See Fuller I*, Doc. 621 at 3 (describing injunction sought by plaintiffs as "pure malarkey – an injunction is not a 'get out of jail free' card"); *see also* 2/2/2024 Hrg. Tr. 24:3-4 (Ex. 6) ("I'm not sure I can restrain law enforcement from enforcing certain laws."). And it is not even clear that the relief that Plaintiffs seek is enforceable against Noriega because, as set forth in Section III, *supra*, Plaintiffs make conclusory allegations of Noriega's "architecting" two Ordinances, yet he has no authority to do so. *See Lewis,* 944 F.3d at 1301-02 (redressability not established). Further, because most of the alleged conduct occurred prior to Noriega becoming City Manager, it is not plausible to conclude that the Court can award Plaintiffs any relief against Noriega to address others' conduct that occurred before his tenure.

### IX.     The Complaint is barred by the statute of limitations.

Six Plaintiffs' claims (plus all Plaintiffs in the conspiracy claim) are based solely on alleged support of Leon in November 2017. *See* Compl. at ¶¶ 2590, 2802, 2868, 2980, 3271, 3659, 4044. Those claims are time-barred. The limitations period is four years which starts running when a plaintiff knows or should have known it has "suffered the injury that forms the basis of [its] complaint and who has inflicted the injury." *Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003). Here, "Plaintiffs'" October 2018 complaint relied on here (*see, e.g.,* Compl. at ¶ 135) is based on alleged "political payback", "targeting" and "retaliation". *See Fuller I*, DE 1. Because Plaintiffs knew or should have known that their alleged claims accrued no later than October 2018, their claims expired in October 2022. Having filed their initial Complaint on November 6, 2023,

their claims are time-barred and must be dismissed.

Even if all Plaintiffs' claims did not expire, claims against Noriega based on actions which occurred before he became City Manager, have expired. *See* Compl. at ¶¶ 51-85.

**X.     Plaintiffs are engaged in improper claim splitting.**

The Complaint should be dismissed as it involves the same parties and a common nucleus of operative fact as the *Mad Room* and *Tower Hotel* cases. In *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1236 (11th Cir. 2021) (affirming dismissal) (citations omitted), the court explained:

> In determining whether a party has improperly split its claims among lawsuits, this Court examines: "(1) whether the case involves the same parties and their privies, and (2) whether separate cases arise from the same transaction or series of transactions." . . . "Successive causes of action arise from the same transaction or series of transactions when the two actions are based on the same nucleus of operative facts."

Here, all three cases involve alleged "targeting" of Plaintiffs' businesses, six Plaintiffs here are plaintiffs in one of those cases, and the City is a defendant in all three cases. *Cf.* Compl. at ¶¶ 94, 103; Exs. 2 and 3 (Complaints in *Mad Room* and *Tower Hotel* cases alleging the same). *See Vanover v. NCO Fin. Servs.*, 857 F.3d 833, 837 (11th Cir. 2017) (affirming dismissal with prejudice where two cases "involve the same parties along with a common nucleus of operative fact"). Because the cases involve the same parties and their privies and arise from the same series of transactions, this case should be dismissed as an improper attempt to split Plaintiffs' claims.

**XI.    Conclusion.**

Defendant Arthur Noriega respectfully requests that this Court grant his Motion to Dismiss Plaintiffs' Second Amended Complaint with prejudice, award him attorneys' fees pursuant to 42 U.S.C. § 1988(b), and grant such further relief as this Court deems just, equitable, and proper.

<u>**REQUEST FOR ORAL ARGUMENT**</u>

Pursuant to Local Rule 7.1(b)(2), Noriega respectfully requests a two-hour hearing on his motion to dismiss. Noriega's motion raises a number of complex issues, and oral argument would be beneficial to address and illuminate those issues.

Respectfully submitted,

KRINZMAN HUSS LUBETSKY
FELDMAN & HOTTE
Counsel for Defendant,
*Arthur Noriega, City Manager*

Alfred I. duPont Building
169 E. Flagler Street, Suite 500
Miami, Florida 33131
Telephone: (305) 854-9700
Primary email:  map@khllaw.com
Primary email:  lg@khllaw.com
Primary email:  mschneider@khllaw.com
Secondary email:  eservicemia@khllaw.com

By:  /s/ Mason A. Pertnoy
        Mason A. Pertnoy, Esq.
        Florida Bar No. 18334

and

RIVERO MESTRE LLP
Counsel for Defendant,
*Arthur Noriega, City Manager*
2525 Ponce De Leon Blvd
Miami, FL 33134-6037
Telephone: (305) 445-2500
Primary email: ccl@riveromestre.com
Secondary email:
receptionist@riveromestre.com

By:  /s/ Christina Ceballos-Levy
        Christina Ceballos-Levy, Esq.
        Florida Bar No. 411965

## **CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that on this 15th day of May, 2024, I electronically filed the foregoing with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties in this case.

By:  /s/ Mason A. Pertnoy
        Mason A. Pertnoy, Esq.