**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 23-CV-24251-FAM**

WILLIAM O. FULLER, *et al.*,

Plaintiffs,

v.

CITY OF MIAMI, *et al.,*

Defendants.

_____/


**MOTION TO DISMISS SECOND AMENDED COMPLAINT WITH**
**PREJUDICE BY DEFENDANTS ADRIAN PLASENCIA AND RENE DIAZ**

## INTRODUCTION

Plaintiffs' Second Amended Complaint ("SAC") is another "sloppy presentation" of their constitutional claims in direct violation of the Court's March 27th Order ("Order"). (ECF 123.) This willful disregard of a Court order is nothing new. Plaintiffs' First Amended Complaint "totally ignored" the Court's specific instructions from the February 2 status conference. (*Id.* at 2.) This time, the Plaintiffs "totally ignored" the Order. In this third attempt to state justiciable claims, Plaintiffs continue to utterly waste the Court's time and the City's resources by filing a complaint that directly violates the Order, the Court's February 2nd instructions, and the rules of civil procedure.

The Order gave numerous specific instructions to Plaintiffs: separate individual claims by individual Plaintiffs, remove argumentative language from the complaint, allege the dates of the alleged violations, and provide a short and plain statement of the claim. Yet again, Plaintiffs scoffed at the Court's direction, tripling down on the same mistakes: the SAC continues to lump seventeen Plaintiffs into counts, uses unsubstantiated argumentative language like "evil" and "massacre," avoids making temporal allegations of violations, and fails to allege a short and plain statement of the claim (the SAC is 644 pages with 4,403 numbered paragraphs). Despite the Order and the February 2nd instructions, the SAC is entirely deficient for many of the same reasons as before.

Looking past Plaintiffs' willful disregard of the Order, it is apparent that Plaintiffs Fuller and Pinilla gained preferential treatment from City of Miami Commissioners over the years and grew their book of business. Plaintiffs nurtured productive relationships with Defendant Carollo's two predecessors, even getting appointed to various City boards and trusts. (SAC ¶ 43.) Through these relationships, Plaintiffs immunized themselves from enforcement of the City's building, zoning, health and safety ordinances, codes, and regulations. Previously, the City was "flexible" with Plaintiffs, many City employees could "negotiate" with the Plaintiffs, and the City gave lenient deadline extensions. (SAC ¶¶ 105-06.). Indeed, one Plaintiff's staircase was a technical violation of an ordinance, which the City never previously took issue with. Another Plaintiff went 18 years without the City requiring any type of event permit. (SAC ¶¶ 100, 2050.)

Once those City Commissioners left office, Plaintiffs were finally required to comply with the law: all aging buildings in Little Havana (which inevitably includes Plaintiffs' historic Little Havana buildings) have code violations; one Plaintiff's certificate of use was revoked because of its property design and lack of parking for the tenants; one of Plaintiff's properties included an

older home with citations and fines accrued; one of the Plaintiff's tenants missed a deadline to comply with requirements and obtain a permit; and Plaintiffs' properties may never be able to comply with the City code. This is not a story spun by Defendants, but instead the Plaintiffs' confessions in their own complaint. (SAC ¶¶ 74, 102, 99, 2485, 1272, 123.)

Notwithstanding these confessions, Plaintiffs now sue an array of Defendants for matters already in litigation or matters they previously chose not to litigate. This action is but one in a series of lawsuits that Fuller, Pinilla, and the entities they control, have brought over the last six years in four different courts that are designed to intimidate the City of Miami and its officials, and obstruct their efforts to enforce the law.[1] Many of the new Defendants brought into this lawsuit have little to do with the highly publicized feud over City policies and enforcement between Carollo and Plaintiffs. Defendants Plasencia and Diaz are not responsible for any alleged City policies. In fact, the SAC admits that Plasencia and Diaz did not have final policymaking authority.

Stripped of its inflammatory and conclusory allegations, the SAC merely alleges that Plasencia (the Assistant Fire Chief and former Fire Marshal) and Diaz (the Senior Chief of the Unsafe Structures department) lawfully acted within the scope of their discretionary authority. And according to the SAC, even if Defendants Plasencia and Diaz were forced to target anybody, it was under coercion and the threat of being demoted or fired, not because they personally held any retaliatory animus towards Plaintiffs.

On these thin allegations, Plaintiffs attempt to hold Defendants Plasencia and Diaz liable for more than $107 million in damages purportedly caused by violations of Plaintiffs' First Amendment rights. Despite their tactical pleading, Plaintiffs cannot avoid multiple fundamental defects. First and foremost, the SAC should be dismissed for repeated willful violations of this Court's Order and instructions. Second, Defendants Plasencia and Diaz should be dismissed from the SAC because they are entitled to qualified immunity and the SAC fails to state a First Amendment retaliation claim against them for various reasons. Third, Plaintiffs' claims against Plasencia and Diaz must be dismissed to the extent they rely on allegations that they played a role in the passing of ordinances because they are entitled to absolute legislative immunity for such

---

[1] *See* (1) *Fuller, et al. v. Carollo*, Case No. 2018-cv-24190 in the S.D. Fla. ("*Fuller I*") before Judge Smith, which has resulted in a trial and Final Judgment that is on appeal; (2) *Mad Room LLC v. City*, Case No. 2021-cv-23485 in the S.D. Fla. before Judge Altman ("*Mad Room*"); (3) *Tower Hotel LLC, et al. v. City of Miami*, Case No. 2022-8069-CA-44 (Fla. 11th J. Cir. 2022) ("*Tower Hotel*"); and (4) *Fuller v. City of Miami*, Case No. 2024-793-CA-07 (Fla. 11th J. Cir. 2024).

actions. Fourth, this action violates the claim-splitting doctrine. Fifth, the conspiracy claim is barred as a matter of law by the intra-corporate conspiracy doctrine and otherwise fails to sufficiently allege an agreement among the Defendants to violate Plaintiffs' constitutional rights. Finally, the statute of limitations bars Plaintiffs' claims to the extent they rely on conduct that occurred on or before November 6, 2019.

After more than five years of litigation over the same set of facts, including multiple rounds of amending complaints, extensive discovery, and a weeks-long jury trial, there is no excuse for these deficiencies. There is no excuse for repeatedly violating the Court's Order and instructions. Plaintiffs know full well the pleading standards they are required to satisfy and their failure to do so is a brazen attempt to expand their legal rights and sway public opinion with inflammatory conclusions. For these reasons, as detailed below and in the Co-Defendants' Motions to Dismiss, the Court should dismiss the SAC with prejudice.

## LEGAL STANDARD

Plaintiffs have the burden of showing a plausible First Amendment retaliation claim against Defendants using well-pleaded facts, not conclusory statements. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* In determining whether a complaint states a plausible claim for relief, "conclusory statements" and "bare assertions" are given no weight. *Id.* at 678, 681. "[W]here the *well-pleaded facts* do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (emphasis supplied) (quoting Fed. R. Civ. P. 8(a)(2)).

Here, the Court must also analyze the SAC through the lens of qualified immunity, which "protects government actors performing discretionary functions from being sued in their individual capacities." *Chesser v. Sparks*, 248 F.3d 1117, 1121 (11th Cir. 2001). "Claims for money damages against government officials in their individual capacity involve substantial costs not only for the individual official – who incidentally may be innocent – but for society in general." *Foy v. Holston*, 94 F.3d 1528, 1532 (11th Cir. 1996). Qualified immunity is thus both a defense to liability and an entitlement not to stand trial or even face the discovery process. *Iqbal*, 556 U.S. at 672; *Chesser*, 248 F.3d at 1122. The Supreme Court has repeatedly "stressed the importance of resolving

immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

## ARGUMENT

### I.   THE SAC SHOULD BE DISMISSED WITH PREJUDICE BECAUSE OF PLAINTIFFS' REPEATED VIOLATIONS OF COURT ORDERS.

In their third attempt to sue ten government employees, Plaintiffs directly violate the Order. In the Order, the Court dismissed the First Amended Complaint for violating the Court's February 2, 2024, instructions. Plaintiffs' repeated violations are an insult to the Court and a complete waste of judicial resources. The Court can—and should—dismiss this case with prejudice. *See* Fed. R. Civ. P. 41(b). In particular, the SAC violates the Order in four separate ways.

First, the Court ordered Plaintiffs, both in the Order and at the February 2, 2024 hearing, to "delineate separately count by count each claim by each individual Plaintiff against each individual Defendant." (ECF 123 at 2.) The Court further instructed Plaintiffs "to refile with the requirement that each Plaintiff separate his or its own claims against each Defendant separately in a separate count." (*Id.* at 4.) The Court advised Plaintiffs that "[f]ailure to do so by the Plaintiffs will result in a dismissal of the count with prejudice." (ECF 123 at 4.) The Court could not be clearer. Despite this warning, Counts 133-143 are conspiracy claims brought by "All Plaintiffs." (SAC pp. 585-644.) Not only does this violate the Court's Order, but it also violates basic pleading standards. Lumping every one of the seventeen Plaintiffs together is not permitted. *See Fletcher v. City of Madison*, 2023 WL 2087967, *4 (N.D. Ala. Feb. 17, 2023) (dismissing a complaint as a shotgun pleading where "the Complaint does not sufficiently separate Plaintiffs' claims into different counts . . . ."); *McDonough v. City of Homestead, Fla.*, 2023 WL 3035215 (11th Cir. Apr. 21, 2023); *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015). In accordance with the Order, Plaintiffs' conspiracy claims must be dismissed with prejudice.

Second, the Court instructed Plaintiffs that there will be "no 'argumentative language' (e.g., 'cabals,' 'corruption,' 'background information') in the new complaint." (ECF 123 at 4.) As stated by the Court, the First Amended Complaint "appeared to be intended for the media rather than for disposition in a court of law." The SAC is also intended for the media rather than a court of law. While the SAC did remove the words "cabal" and "corruption," it still includes more than 100 paragraphs of "background information" untethered to any claim (SAC ¶¶ 35-165) and it still

contains improper, inflammatory argumentative language. For example, the SAC uses the term "Valentine's Day Massacre." (SAC p. 129, section labeled **THE 2019 VALENTINE'S DAY MASSACRE**.) The SAC accuses Plasencia and Diaz of being "motivated by an ***evil*** intent." (SAC ¶¶ 342, 387, 526, 689, 1027, 1045, 1191, 1513, 1782, 2043, 2648, 2799, 3161, 3482, 3552, 3870, 3940, 4241) (emphasis added). Plaintiffs also repeatedly allege that Plasencia's and Diaz's conduct is "reprehensible" and that they acted "outrageously." (SAC ¶ 341, 387, 525, 688, 1026, 1044, 1190, 1512, 2042, 2252, 2648, 2799, 3161, 3350, 3480, 3482, 3870, 3938, 4241.) Plaintiffs further claim that Plasencia and Diaz are "willing and able to fabricate evidence, complaints, and violations with the sole purpose of shutting down [Plaintiff's] businesses and destroying [Plaintiff's] life. . . ." (SAC ¶¶ 3473, 3545, 3543, 3861, 3931.) Plaintiffs even claim Diaz can "use unlimited City funds and resources to try to destroy [Plaintiff], their business, their families, their livelihood, and ability to provide for [Plaintiff's] kids." (SAC ¶ 3474.) In addition to being inflammatory and argumentative (in violation of the Order), these allegations are devoid of any factual substance.

Third, Plaintiffs were instructed to indicate the date of each alleged violation. (ECF 123 at 4.) Plaintiffs failed to adequately do so. Each count fails to identify the specific conduct that violated a Plaintiff's First Amendment right and fails to allege the date of such violation. Rather, each count contains a flurry of copied-and-pasted allegations not specifically tailored to an individual Defendant nor tailored to specific conduct. Moreover, other material allegations within the SAC completely fail to make temporal allegations. For example, the SAC alleges that Plasencia "would send fire inspectors with the instruction to manufacture violations at Plaintiffs' properties" including LHAB. (SAC ¶¶ 131-32.) While the SAC does not specify when or where this specifically occurred (or whether the unidentified fire inspectors followed Plasencia's alleged instructions), Plaintiffs already claimed this occurred throughout 2018, including on July 6, 2018, and August 28, 2018. *Mad Room*, ECF 212 (First Am. Compl.) ¶¶ 75(c), (d). The SAC additionally claims that Diaz "issued wrongful unsafe structure violations" without a temporal allegation. (SAC ¶ 124.) This is insufficient, violates the Order, and still makes it impossible for the Court to determine whether Plasencia or Diaz acted in response to any Plaintiff exercising First Amendment rights. While Plaintiffs did include some temporal allegations, Plaintiffs actually removed temporal allegations previously made in the First Amended Complaint (ECF 77) which would demonstrate that Plaintiffs' claims are time barred. (ECF 77 ¶ 300 (alleging Piedra Villas

allegations began on May 9, 2019), ECF 77 ¶ 440 (alleging Tower Hotel's comments began on June 12, 2019), ECF 77 ¶ 595 (showing allegations regarding Calle Ocho Marketplace, LLC began on August 20, 2018).)

Fourth, the Court dismissed the First Amended Complaint for failing to comply with the rules of civil procedure, which require a short and plain statement of the claim. (ECF 123 at 2.) In the same vein, the Court required that "each count will be clearer as to the alleged wrongdoing by an individually named Defendant." (*Id.* at 4.) The Court advised that the 124-page First Amended Complaint with 671 numbered paragraphs appeared to be intended for the media rather than for disposition in a court of law. (*Id.* at 2.) In response, Plaintiffs filed the 644-page SAC with 4,403 numbered paragraphs. This ridiculous length is not because the Court instructed Plaintiffs to allege separate counts—it is because Plaintiffs repeatedly make immaterial allegations (*e.g.* SAC ¶¶ 3, 35-43, 152, 161-63), copy and paste the same allegations in counts (*e.g.* SAC ¶¶ 4243-82), and include countless paragraphs of inflammatory, argumentative language. Many allegations do not even specify which Defendant took which action (SAC ¶¶ 4255-58). Other allegations are internally inconsistent and seek to improperly attribute the same actions to multiple individual Defendants. For example, in Count 113 against City Manager Noriega, Fuller alleges the Building Department—not Plasencia or the Fire Department—delayed the opening of Piedra Villas. (SAC ¶ 3293.) Yet, in Count 120, Fuller alleges that Plasencia caused the delay. (SAC ¶ 3537.) Some allegations claim Defendants targeted property "owners related to Fuller and Pinilla" without specifying who these relatives are. (SAC ¶¶ 121, 319, 379, 430, 675.) The SAC is not "clearer as to the alleged wrongdoing by an individually named Defendant." (ECF 123 at 4.) The SAC violates the rules of civil procedure.

Lastly, while not a direct violation of the Order, the SAC remains a "sloppy presentation" with grammatical errors. The Court previously chastised Plaintiffs' counsel for this. (ECF 123 at 1 n.1.) Plaintiffs even misspelled Defendant Adrian Plasencia's name. (SAC ¶¶ 29, 130, 131 ("Adrien").) *See also* SAC ¶¶ 2933, 2967, 3002, 3038, 3074, 3108, 3139, 3424, 3464, 3606, 3683, 3812, 3852, 4032, 4072, 4112, 4153, 4193, 4232, 4272, 4312, 4353, 4393 (erroneously including the word "of"); SAC ¶¶ 2251, 2279, 2189, 2219 (erroneously forgetting the word "owner" after

the word "Sanguich's").[2] It is thus questionable whether Plaintiffs' counsel complied with the Order and "actually proofread the entire complaint before signing it." (ECF 123 at 4.)

Plaintiffs failed to separate each claim into separate counts, failed to refrain from using argumentative language, failed to allege critical temporal allegations, and failed to allege a short and plain statement of their claims. Yet again, Plaintiffs' counsel "ignored those instructions by the Court." (ECF 123 at 2.) And if the SAC's deficiencies are not the result of willfully disregarding the Court's instructions, then they show that Plaintiffs simply cannot meet the Court's pleading requirements. Either way, the SAC should be dismissed with prejudice.

## II.   THE COURT SHOULD DISMISS THE SAC BECAUSE PLASENCIA AND DIAZ ARE ENTITLED TO QUALIFIED IMMUNITY.

Qualified immunity involves a burden shifting analysis. Public officials first have the burden to show qualified immunity applies by establishing they were acting within the scope of their discretionary authority when the allegedly wrongful act occurred. *Carollo v. Boria*, 833 F.3d 1322, 1328 (11th Cir. 2016). The burden then shifts to the plaintiffs to show qualified immunity is not appropriate. *Id.*; *Montoute v. Carr*, 114 F.3d 181, 184 (11th Cir. 1997) ("Once an officer or official has raised the defense of qualified immunity, the burden of persuasion as to that issue is on the plaintiff."). To defeat qualified immunity, Plaintiffs must establish that "(1) [their] complaint pleads a plausible claim that the defendant violated [their] federal rights (the 'merits' prong), and that (2) precedent in this Circuit at the time of the alleged violation 'clearly established' those rights (the 'immunity' prong)." *Carollo*, 833 F.3d at 1328. *See also Wilson v. Layne*, 526 U.S. 603, 609 (1999); *Stanley v. City of Dalton*, 219 F.3d 1280, 1285 (11th Cir. 2000).

Plaintiffs' "burden is not easily discharged: 'That qualified immunity protects government actors is the usual rule; only in exceptional cases will government actors have no shield against claims made against them in their *individual capacities.*'" *Foy*, 94 F.3d at 1532 (emphasis in original; quoting *Lassiter v. Alabama A & M Univ.*, 28 F.3d 1146, 1150 (11th Cir. 1994) (*en banc*)). "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who would knowingly violate the law.'" *Hunter*, 502 U.S. at 229 (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 343 (1986)).

---

[2] These repeated, identical grammatical errors further demonstrates that paragraphs were simply copied and pasted throughout the SAC.

Plaintiffs cannot defeat qualified immunity. The face of the SAC establishes that Defendants Plasencia and Diaz were acting within the scope of their discretionary authority. The SAC does not establish, however, a plausible First Amendment retaliation claim, much less the violation of clearly established law, for three reasons. First, Plaintiffs did not engage in constitutionally protected speech or conduct. Second, none of Plaintiffs' allegations show that the actions of Defendants Plasencia or Diaz adversely affected protected speech. Third, the SAC fails to allege a plausible causal connection between the actions of Defendants Plasencia or Diaz and an adverse effect on Plaintiffs' First Amendment speech or association. Defendants Plasencia and Diaz are accordingly entitled to dismissal from the SAC.

### A.      Plasencia And Diaz Acted Within Their Discretionary Authority.

There can be no dispute that the SAC alleges Defendants Plasencia and Diaz acted within their discretionary authority. When determining whether a government official acted within his discretionary authority, the Court looks only "to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or other conditionally inappropriate circumstances." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998). Stripped of Defendants' subjective intent, the SAC alleges only that Defendants Plasencia and Diaz investigated Plaintiffs and enforced City ordinances against them.

<u>Plasencia.</u> Plasencia is the Assistant Fire Chief and at all relevant times was the City of Miami Fire Marshal. (SAC ¶ 29.) The Fire Marshal is the chief in charge of the fire prevention bureau. City Code § 2-235(b). The fire prevention bureau is responsible for enforcing the fire code. *Id*. at § 2-235(a). Plaintiffs claim Plasencia "made the determination to shut down [Plaintiff] LHAB because of [an] alleged fire safety issue, stating the property needed a sprinkler system installed," and "denied the use of a 'fire watcher.'" (*E.g.* SAC ¶¶ 380, 382.) With respect to Plaintiff Piedra Villas, Plaintiffs claim the City's Fire Department requested the dimensions of the staircase, and at a meeting, Plasencia "could not identify any section of the Code that would require the requested work on the back staircases." (*E.g.* SAC ¶¶ 1034, 1040.) Such conduct involves enforcing the fire code and falls within Plasencia's discretionary authority as Fire Marshal. *See H & J Land Invs., Inc. v. City of Jacksonville,* 2014 WL 4540200, at *3 n.3 (M.D. Fla. Sept. 11, 2014) (concluding the Fire Marshal acted within his discretionary authority when conducting inspections of buildings and enforcing the fire code).

Diaz. Diaz is the Senior Chief of the Unsafe Structures department. (SAC ¶ 30.) The officials of the Unsafe Structures department are responsible for examining the safety of buildings within the City and issuing notices of violations for unsafe structures. *See generally* City Code § 10-101. Plaintiffs allege that Diaz spoke to Defendant Marrero on May 27, 2020, and the next day Diaz sent a list of Plaintiffs' properties to Marrero. (*E.g.* SAC ¶¶ 90-91; 320-21.) Plaintiffs allege Marrero and Diaz once stated, to someone at some unspecified time, that a certain "trilateral agreement" "was not available to [Plaintiff Brickell Station]," and that Diaz "imposed a baseless citation on Brickell Station." (*E.g.* SAC ¶¶ 663, 3462.) Plaintiffs allege that Diaz issued a violation to Calle Siete and that Diaz instructed unnamed City personnel to search for violations. (SAC ¶¶ 1187, 3463.) Plaintiffs allege that Diaz "informed Plaintiff Beatstik's tenant" of the requirements needed for the Beatstik property. (SAC ¶¶ 1503-05.) Plaintiffs allege Diaz issued an Unsafe Structure Notice on Plaintiff El Shopping's property and revoked its Certificates of Use ("CU"). (SAC ¶¶ 1756, 3465.) Plaintiffs allege Diaz "revoked" CUs for Plaintiff LHAB. (SAC ¶ 3458.) Based on these allegations, all the conduct allegedly committed by Diaz was within the scope of his discretionary authority as the Senior Chief of the Unsafe Structures department.

Accordingly, Plasencia and Diaz are entitled to raise the defense of qualified immunity and the burden shifts to Plaintiffs to defeat their qualified immunity.

**B.      The SAC Fails To Allege A Violation Of Plaintiffs' First Amendment Rights.**

Plaintiffs assert First Amendment retaliation claims against all Defendants. To survive a motion to dismiss based on a claim of First Amendment retaliation under Section 1983, a plaintiff must allege facts establishing: (1) speech or conduct that was constitutionally protected; (2) the defendant's retaliatory conduct adversely affected the protected speech or conduct; and (3) a causal connection between the retaliatory actions and the adverse effect on speech or conduct. *Randall v. Scott*, 610 F.3d 701, 716 (11th Cir. 2010). The SAC fails to adequately allege each element.

*1.      Plaintiffs did not engage in constitutionally protected speech or conduct.*

None of the Plaintiffs have alleged they engaged in speech or conduct protected by the First Amendment. Only Plaintiffs Fuller and Pinilla allege they personally engaged in speech or conduct covered by the First Amendment. The remaining corporate Plaintiffs base their claims on a purported right of freedom to associate with Fuller and Pinilla. For the reasons stated in Co-Defendant Noriega's Motion to Dismiss, which Defendants Plasencia and Diaz join and adopt in full, none of Plaintiffs' alleged speech or conduct supports a First Amendment retaliation claim.

*2.   Neither Plascencia nor Diaz adversely affected Plaintiffs' protected speech.*

The second prong of a retaliation claim requires a plaintiff to establish that the defendant's retaliatory conduct adversely affected the protected speech. *Thompson v. Hall*, 426 F. App'x 855, 859 (11th Cir. 2011). A plaintiff suffers such adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from exercising First Amendment rights. *Id.* While the SAC added hundreds of paragraphs and pages, the SAC did not cure the original complaint's basic deficiencies: none of the SAC's allegations demonstrate Defendants Plascencia and Diaz engaged in conduct that would likely deter a person of ordinary firmness from exercising First Amendment rights.

<u>Plascencia.</u> The SAC alleges Plascencia directly participated in only two specific actions: (1) Plascencia shut down Plaintiff LHAB due to a fire issue and denied it a fire watcher (*E.g.* SAC ¶¶ 380, 382); and (2) the City requested dimensions of Piedra Villa's staircase and Plascencia could not identify the violation. (*E.g.* SAC ¶¶ 1034, 1040.) With respect to LHAB, the SAC does not allege which of the three LHAB buildings[3] this is regarding (SAC ¶ 9) and does not allege that LHAB was in compliant with the fire codes. With respect to Piedra Villas, the SAC does not allege that the staircases were compliant with fire codes or that Piedra Villas was shut down or fined. In any event, neither issuing a notice of violation nor requesting the dimensions of staircases—which do not impose a fine or other penalty—would deter persons of ordinary firmness from exercising their First Amendment rights. *See Frankel v. Town of Bay Harbor Islands*, 2007 WL 9709777, at *3 (S.D. Fla. Apr. 16, 2007) ("Even if these Notices [of code violations] were sent in retaliation as Plaintiff contends, the Court does not find an actionable claim because a person of ordinary firmness, when faced with the Notices, would not be deterred from exercising her/his First Amendment rights.").

<u>Diaz.</u> The SAC attempts to hold Diaz liable for other parties' actions. For example, Plaintiffs allege a meeting occurred on May 27, 2020, where another Defendant (not Diaz) talked about a Plaintiff and instructed "employees" to be more stringent. (*E.g.* SAC ¶¶ 88-89.) This lacks any logical inference that Diaz committed any affirmative act that adversely affected Plaintiffs' protected speech. *See Gomez v. City of Miami*, 2023 WL 6376511 *10, -- F. Supp. 3d --, -- (S.D. Fla. Sept. 29, 2023) (dismissing First Amendment retaliation claim where the plaintiff did "not

---

[3] Plaintiffs allude to, but do not specify, this being the Ball & Chain property, likely because this claim would then clearly be barred by the statute of limitations. *See* § VI, *infra*.

specify when each retaliatory action occurred, who engaged in each action, or what role" each defendant "played in each event"). Additionally, the mere allegations that Diaz sent an email including Plaintiffs' properties (SAC ¶ 321) and failed to respond to an email he was copied on (SAC ¶ 1486) do not amount to actionable conduct. *See Coker v. Warren*, 660 F. Supp. 3d 1308, 1332 (M.D. Fla. 2023) ("Allegations of inaction are not sufficient to establish an actionable claim for retaliation."). Nor is circulating information about the Plaintiffs gathered through an investigation. *See Hernandez v. City of Homestead, Fla.*, 2022 WL 6569684 at *12 (S.D. Fla. Aug. 8, 2022) ("The Supreme Court has never defined retaliatory investigation, standing alone, as a constitutional tort, and neither has the Eleventh Circuit.") (cleaned up; quoting *Thompson v. Hall*, 426 F. App'x 855, 858 (11th Cir. 2011)).

In the end, Plaintiffs' claims against Defendants Plasencia and Diaz stem from their enforcement of generally applicable government regulations and investigation of Plaintiffs. But "Plaintiffs may not 'claim special protection from governmental regulations of general applicability simply by virtue of their First Amendment protected activities.'" *H & J Land Invs.*, 2014 WL 4540200, at *11 (quoting *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 705 (1986)). Plaintiffs thus fail to state a First Amendment retaliation claim that deprives Defendants Plasencia and Diaz of their qualified immunity.

### 3. The SAC fails to plausibly establish causation under the doctrine of qualified immunity.

As to the third prong of a retaliation claim, "a plaintiff must establish a 'causal connection' between the government defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury.'" *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 259 (2006)). "It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must cause the injury." *Id.* "Specifically, it must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id.* (quoting *Hartman*, 547 U.S. at 260). Causation may be shown by pleading "(1) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory act, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lozman v. City of Riviera Beach*, 39 F. Supp. 1392, 1405-06 (S.D. Fla. 2014).

The SAC fails to plausibly allege causation for four reasons. First, Plaintiffs have not alleged that either Plasencia or Diaz possessed any retaliatory animus against Plaintiffs, or how any such animus is connected to Plaintiffs' injuries, that would plausibly establish causation.

Plaintiffs instead allege that the conduct of Defendants Plasencia and Diaz is a product of coercion because they were required to act in the manner they did so to avoid being demoted or fired. (*See* SAC ¶ 159 ("Carollo threatened City employees that they would be fired, demoted, or chased out of office if they opposed his political vendetta. . . .") Indeed, the only retaliatory animus against Plaintiffs alleged with any specificity belonged to Carollo and Mendez. (SAC ¶¶ 1070, 1115.) Plaintiffs fail to allege a causal connection between (i) the actions of Plasencia or Diaz, and (ii) any such personally held retaliatory animus by Plasencia or Diaz towards Plaintiffs. This is fatal to Plaintiffs' claims. *See Turner v. Williams*, 65 F.4th 564, 581 (11th Cir. 2023) ("To prevail on a First Amendment retaliation claim, a plaintiff must establish a causal connection between the government defendant's retaliatory animus and the plaintiff's subsequent injury.") (cleaned up) (quoting *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019)).

Second, "[o]nly those with 'the power to make official decisions' may 'be held individually liable under § 1983.'" *See Gomez*, 2023 WL 6376511 *10. "The causal relation does not exist when the continuum between Defendant's action and the ultimate harm is occupied by the conduct of deliberative and autonomous decision-makers." *Dixon v. Burke County*, 303 F.3d 1271, 1275 (11th Cir.2002*); see also Troupe v. Sarasota Cnty., Fla.*, 419 F.3d 1160, 1165 (11th Cir. 2005) ("A § 1983 claim requires proof of an affirmative causal connection between the defendant's acts or omissions and the alleged constitutional deprivation."). The SAC admits that Defendants Plasencia and Diaz were not official decision makers. The SAC claims only that Carollo, Noriega, and Mendez had "final policymaking authority." (SAC ¶ 153 ("there were three individuals targeting Plaintiffs with final policymaking authority: Carollo, Noriega, and Mendez"); *see also* SAC ¶¶ 120, 123, 154.) Dismissal is warranted on this basis alone.

Third, in the context of qualified immunity, a defendant cannot be held liable for First Amendment retaliation where he is motivated at least in part by a single lawful consideration. *Stanley*, 219 F.3d at 1295-96; *Foy*, 94 F.3d at 1535; *see also Brannon v. Finkelstein*, 754 F.3d 1269, 1278-79 (11th Cir. 2014) (qualified immunity applies where "there exists evidence of both lawful and unlawful motivations" for the defendant's conduct). Defendants Plasencia and Diaz incorporate and adopt Defendants' arguments that because the actions were justified and because there was probable cause for the Defendants' actions, the retaliation claims fail. *See* Carollo Mot. § (II)(D); Noriega Mot. § VI. Specifically with regards to Defendants Plasencia and Diaz, Plaintiffs

do not allege how or if their actions were unjustified considering Plaintiffs' own admissions to violating City ordinances.

Finally, the SAC fails to allege any temporal connection between Plaintiffs' protected speech and the actions of Defendants Plasencia and Diaz. Despite having 4,403 paragraphs in the SAC, the only factual allegations of Plaintiffs' speech are limited to the following: Plaintiffs Fuller and Pinilla hosting political rallies for Defendant Carollo's political opponent, Defendants' false belief that unnamed Plaintiffs financed a lawsuit against Carollo, Defendants' false belief that unnamed Plaintiffs were organizing efforts to recall Carollo, unnamed Plaintiffs filing an ethics complaint against Carollo, unnamed Plaintiffs filing lawsuits, unnamed Plaintiffs hosting a press conference to "expose" Carollo, unnamed Plaintiffs "promotion" of murals, and unnamed Plaintiffs engaging in "vocal support." (SAC ¶ 135.) The only temporal allegations of Plaintiffs' protected speech pertain to the political rally (in 2017) and filing the lawsuit (in 2018) (SAC ¶¶ 46, 67.) The remaining allegations of protected activities lack temporal allegations.

To make matters worse, the corporate Plaintiffs admit that they did not engage in free speech—they were simply "affiliated" with Plaintiffs Fuller and Pinilla. (SAC ¶ 145 ("In short, all of the Plaintiffs were targeted based on their affiliation with Fuller and Pinilla and their association with Fuller and Pinilla's political activities that contravened Defendants' political objectives.").) Absent factual details describing when or which of the Plaintiffs engaged in the protected speech, the Court cannot reasonably infer that any actions of Defendants Plasencia or Diaz were taken in response to each Plaintiff's exercising their First Amendment rights. *See Gomez*, 2023 WL 6376511 *10 n.9 (explaining the court could not determine whether defendant's actions were taken in response to plaintiff's allegedly protected speech because the complaint lacked details regarding the timing of events); *Eisenberg v. City of Miami Beach*, 1 F. Supp. 3d 1327, 1345 (S.D. Fla. 2014) (dismissing First Amendment retaliation claim to the extent it relied on "relatively bare" allegations about "the nature and frequency" of protected speech because "[w]ithout more factual detail," the court could not "assess whether a sufficient causal connection—and thereby a retaliatory motive—can be inferred"). This, too, provides the Court with an independent basis to dismiss Defendants Plasencia and Diaz from the SAC.

### C.   The SAC Does Not Allege That Plasencia Or Diaz Violated A Clearly Established Right.

Even if the SAC sufficiently pleads First Amendment retaliation claims (it does not), Plaintiffs have not alleged the violation of a clearly established right. Plaintiffs rely on the broad,

generalized principle that government officials may not retaliate against citizens for expressing their First Amendment rights. That broad principle, however, was not sufficiently clear to put Defendants Plasencia and Diaz on notice that their enforcement of the City code against and investigation of Plaintiffs was unlawful.

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Shiver v. City of Homestead, Fla.*, 2021 WL 5174526, at *17 (S.D. Fla. Oct. 4, 2021) (cleaned up) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). Although a case directly on point is not required, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft*, 563 U.S. at 741.

At all times material, existing precedent did not establish "beyond debate" that the complained of conduct of Defendants Plasencia and Diaz violated the First Amendment. For example, in *O'Hare v. Town of Gulf Stream*, 2015 WL 12977393 (S.D. Fla. June 22, 2015), the court held that government officials who enforced the town code did not violate a clearly established right where plaintiff alleged that, in retaliation for expressing his First Amendment rights, the officials trespassed on his property, cited him for various violations of the code, issued stop work orders, and directed the plaintiff to obtain permits. In *H & J Land Invs., Inc. v. City of Jacksonville,* 2014 WL 4540200 (M.D. Fla. Sept. 11, 2014), the court held that the defendant fire marshal was entitled to qualified immunity because allegations that the fire marshal participated in a campaign of harassment by utilizing code enforcement proceedings as a pretext to punish the plaintiffs for their exercise of First Amendment rights did not violate clearly established constitutional rights. And in *Shiver v. City of Homestead, Fla.*, 2021 WL 5174526 (S.D. Fla. Oct. 4, 2021), the court held that a government official did not violate clearly established rights by investigating plaintiff in retaliation for exercising First Amendment rights, including gathering confidential information about the plaintiff without a legitimate law enforcement purpose, preparing a 109-page memorandum about the plaintiff's illegal activities, and disseminating that information to third parties, like the plaintiff's employer.

Defendants Plasencia and Diaz "are entitled to rely on existing lower court cases without facing personal liability for their actions." *Pearson v. Callahan*, 555 U.S. 223, 244-45 (2009). Based on the existing lower court cases described above, Defendants Plasencia and Diaz had reason to believe their actions were lawful and they were not on fair notice that investigating

Plaintiffs and enforcing the City ordinances against them violated clearly established rights. Defendants Plasencia and Diaz are thus entitled to qualified immunity.

## III.   PLASENCIA AND DIAZ ARE ENTITLED TO ABSOLUTE LEGISLATIVE IMMUNITY.

In addition to qualified immunity, Plasencia and Diaz are also entitled to absolute legislative immunity. Plaintiffs seek to hold Diaz liable for his role in the passing of City ordinances. (*E.g.* SAC ¶¶ 323, 325, 1023, 4208, 4212, 4216, 4217, 4222, 4223.). And, to a lesser extent, Plasencia as well.[4] (*E.g.* SAC ¶¶ 4247, 4252, 4256, 4257, 4262.) As a matter of law, Plasencia and Diaz are immune from liability for any actions undertaken in connection with the passing of ordinances.

"[L]ocal legislators are entitled to absolute immunity from civil liability for their legislative activities." *Beach Blitz Co. v. City of Miami Beach, Fla*., 2018 WL 11260453, at *4 (S.D. Fla. Feb. 5, 2018) (citing *Bogan v. Scott-Harris*, 523 U.S. 44, 54-55 (1998)). Absolute legislative immunity also extends to "officials outside the legislative branch . . . when they perform legislative functions," including actions that "were integral steps in the legislative process." *Bogan*, 523 U.S. at 55. "Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." *Id*. at 54; *see also Beach Blitz*, 2018 WL 11260453, at *4 (holding the defendants were "entitled to absolute immunity in connection with their legislative activity regardless of any purported ill motive or intent"). Activities such as "considering and passing ordinances" are "quintessentially legislative." *Beach Blitz Co.*, 2018 WL 11260453, at *4.

Accordingly, Plaintiffs' claims against Diaz and Plasencia must be dismissed to the extent they rely on allegations that they played a role in the passing of ordinances.

## IV.   THE SAC SHOULD BE DISMISSED WITH PREJUDICE AGAINST DEFENDANTS PLASENCIA AND DIAZ FOR IMPROPER CLAIM SPLITTING.

The Court should also dismiss the SAC against Plasencia and Diaz because it violates the claim-splitting doctrine. "The rule against claim-splitting requires a plaintiff to assert all of its causes of action arising from a common set of facts in one lawsuit. By spreading claims around in multiple lawsuits in other courts or before other judges, parties waste 'scarce judicial resources' and undermine 'the efficient and comprehensive disposition of cases.'" *Vanover v. NCO Fin.*

---

[4] Plaintiffs attempt to sue Plasencia by alleging he is part of the "Group" that passed ordinances to target properties and property owners affiliated with Plaintiffs. (SAC ¶ 4216.)

*Servs., Inc.*, 857 F.3d 833, 841 (11th Cir. 2017).[5] Claim-splitting "applies where a second suit has been filed before the first suit has reached a final judgment." *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1236 (11th Cir. 2021). "Claim-splitting has been analyzed as an aspect of res judicata or claim preclusion." *Vanover*, 857 F.3d at 841.[6]

In determining whether a party has improperly split its claims among lawsuits, courts examine "(1) whether the case involves the same parties and their privies, and (2) whether separate cases arise from the same transaction or series of transactions." *Vanover*, 857 F.3d at 841-42 (quotation marks omitted). Both factors are readily met here with respect to the *Mad Room* and *Tower Hotel* actions. *See also* City Mot. § VIII; Noriega Mot. § X.

On the first factor, "[p]rivity exists where a party to the original suit is so closely aligned to a nonparty's interest as to be his virtual representative." *Sound Around, Inc. v. O'Donnell*, No. 22-23395-CIV, 2023 WL 2306017, at *2 (S.D. Fla. Mar. 1, 2023). For example, in the context of claim splitting, privity exists when the defendant in the second action is the president of the companies named as defendants in the first action. *Id*. Privity also exists when the second action names as defendants the employees of the defendant in the first action. *See Bakov v. Consol. Travel Holdings Grp., Inc.*, 2020 WL 9934410, at *3 (S.D. Fla. Apr. 9, 2020). Such is the case here. The City is the defendant in both the *Mad Room* and *Tower Hotel* actions. Defendants Plasencia and Diaz are each an employee of the City, and their interests are closely aligned. As for the Plaintiff Little Havana Arts Building, LLC and Plaintiff La Gran Fiesta LLC, they are plaintiffs in both this case and in *Mad Room*. (*See Mad Room*, ECF 212 (First Am. Compl.) ¶¶ 10, 11.) And the two

---

[5] The claim-splitting doctrine may be asserted in a motion to dismiss. *Vanover*, 857 F.3d at 836, n.1. For the reasons set forth in Defendants' Request for Judicial Notice (ECF 95), filed on behalf of all Defendants, including Plasencia and Diaz, the Court may consider the pleadings referenced herein, which are attached to the Request.

[6] As articulated in co-Defendants' motions to dismiss, Plaintiffs' claims are also barred against City officials due to the prior final judgment in *Fuller I*. Defendants Plasencia and Diaz incorporate and adopt these arguments, including co-Defendant Carollo's arguments as to Plaintiffs being in privity with each other and that the cases arise from the same facts with the same claims, and co-Defendant Mendez's Motion to Dismiss. *See* Mendez Mot. § I; Carollo Mot. §§ II(A)(2), (3); *see also* City Mot. § I. Plaintiffs' claims against Defendants Plasencia and Diaz are barred for the same reasons Plaintiffs' claims against Mendez are barred. Defendants Plasencia and Diaz did not, and still do not, agree to be bound by the judgment against Carollo in *Fuller I*. Rather, Plaintiffs' claims are barred because Plaintiffs' claims seek double recovery of a claim against Carollo, seek recovery against Carollo (again), and any claims brought against other City employees, should they even exist, could have been brought in *Fuller I*—but Plaintiffs chose not to do so.

remaining *Mad Room* plaintiffs (Mad Room, LLC d/b/a Ball & Chain and Altos Mexicano, LLC d/b/a Taquerias) are each owned and controlled, in whole or in part, by Plaintiff Fuller. (*See id*. ¶¶ 8-9.) The same is true with respect to the *Tower Hotel* plaintiffs. Tower Hotel, LLC, Piedra Villas, LLC, Beatstik, LLC, El Shopping, LLC, and Yo Amo Calle Siete, LLC are Plaintiffs both here and in *Tower Hotel*. (*See Tower Hotel*, ECF 132 (Corr. Third Am. Compl.) ¶¶ 3-7.) Privity thus exists among the parties here and in *Mad Room* and *Tower Hotel*.

As to the second factor, "[s]uccessive causes of action arise from the same transaction or series of transactions when the two actions are based on the same nucleus of operative facts." *Vanover*, 857 F.3d at 842. There can be no dispute that this action is based on the same nucleus of operative facts as the *Mad Room* and *Tower Hotel* actions. Both this action and *Mad Room* assert claims based on City officials' alleged unjustified interference with the operations of Ball & Chain and Taquerias through code enforcement, as alleged throughout the SAC. (*Compare* SAC ¶¶ 9, 107, 399 *with Mad Room*, ECF 212 (First Am. Compl.) ¶¶ 28, 31, 49, 149.) For example, both lawsuits make specific allegations about the same occurrences on January 7, January 8, March 7, April 21, May 16, May 27, and September 11 of 2020. (*Compare* SAC ¶¶ 182-188 *with Mad Room*, ECF 212 (First Am. Compl.) ¶ 75(s)-(w).) Similarly, both this action and *Tower Hotel* assert claims based on allegations that the properties owned by Tower Hotel, LLC, Piedra Villas, LLC, Beatstik, LLC, El Shopping, LLC, and Yo Amo Calle Siete, LLC were threatened to be demolished. (*Compare* SAC ¶¶ 93, 102, 107 *with Tower Hotel*, ECF 132 (Corr. Third Am. Compl.) ¶¶ 2, 24.) The two lawsuits are based on the same set of facts. For example, both actions allege Defendant Plasencia alleged requested for the dimensions of the Piedra Villas staircases. (*Compare* SAC ¶¶ 707-08 *with Tower Hotel*, ECF 132 (Corr. Third Am. Compl.) ¶¶ 47-48.) Lastly, all three actions further share the common nexus of the alleged misconduct being committed in furtherance of Carollo's vendetta against Plaintiffs Fuller and Pinilla. (*See, e.g.,* ¶ 51, 159, 1070, 3209; *Mad Room*, ECF 212 (First Am. Compl.) ¶¶ 1, 25, 28, 30-40, 44-46, 69, 129-30, 202, 222; *Tower Hotel*, ECF 132 (Corr. Third Am. Compl.) ¶¶ 1, 12-15.)

Moreover, "it is well settled that a plaintiff may not file duplicative complaints in order to expand their legal rights." *Vanover*, 857 F.3d at 841 (internal quotations omitted). Plaintiffs are doing just that. Plaintiffs seek millions of dollars on behalf of Tower Hotel, LLC, Piedra Villas, LLC, Beatstik, LLC, El Shopping, LLC, and Yo Amo Calle Siete, LLC both here and in *Tower Hotel*, (*Tower Hotel*, ECF 132 (Corr. Third Am. Compl.) pp. 29-34). Plaintiffs Fuller and Pinilla

seek business disruption and emotional distress damages for alleged interference with the operations of Ball & Chain and Taquerias, while the Plaintiffs in *Mad Room*, all owned by Fuller, seek the same damages, (*Mad Room*, ECF 212 (First Am. Compl.) ¶¶ 20-27, 247). The Plaintiffs are not entitled to a double recovery through various lawsuits and their tactics are impermissible under the claim-splitting doctrine, which "ensures that a plaintiff may not split up his demand and prosecute it by piecemeal, or present only a portion of the grounds upon which relief is sought, and leave the rest to be presented in a second suit, if the first fails." *Vanover*, 857 F.3d at 841.

If Plaintiffs wanted to sue Defendants Plasencia and Diaz for the conduct alleged in the SAC, then Plaintiffs were required to bring their claims in the other actions. Plaintiffs' failure to do so violates the claim-splitting doctrine and Defendants Plasencia and Diaz must be dismissed from the SAC. Because the violation of the claim-splitting doctrine is an incurable defect, the claims against Defendants Plasencia and Diaz should be dismissed with prejudice.

## V.   THE SAC FAILS TO STATE A SECTION 1983 CONSPIRACY CLAIM.

As a threshold matter, because the SAC fails to plausibly allege a First Amendment retaliation claim against any of the Defendants, the conspiracy claim fails as a matter of law. *See Denney v. City of Albany*, 247 F.3d 1172, 1190 (11th Cir. 2001) ("Having concluded that Plaintiffs' substantive claims fail on the merits, their conspiracy claim fails as well because Plaintiffs would not have been 'deprived of any rights or privilege' by the Defendants' allegedly wrongful acts."). But even if Plaintiffs did sufficiently allege their First Amendment retaliation claims, the conspiracy claim still fails for two reasons. First, the conspiracy claim is barred as a matter of law by the intra-corporate conspiracy doctrine. Second, the SAC fails to allege a plausible agreement among the Defendants to violate Plaintiffs' First Amendment rights.

### A.   The Conspiracy Claims Are Barred As A Matter Of Law By The Intra-corporate Conspiracy Doctrine.

Under the intra-corporate conspiracy doctrine, it is impossible "for a single legal entity consisting of the corporation and its agents to conspire with itself." *See McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000); *see also Denney*, 247 F.3d at 1190 (applying intra-corporate conspiracy doctrine to city, city fire chief, and city manager); *Rehberg v. Paulk*, 611 F. 3d 828, 854 (11th Cir. 2010). All individual Defendants are City employees. (SAC ¶¶ 22-31.) Any conspiracy claim is therefore barred as a matter of law. Defendants Plasencia and Diaz additionally incorporate and adopt the City's argument on this issue. *See* City Mot. § VII.

**B.**     **The SAC Fails to Plausibly Allege An Agreement Among Defendants To Violate Plaintiffs' First Amendment Rights.**

Even without the intra-corporate conspiracy doctrine, Plaintiffs' conspiracy claims fail. To survive a motion to dismiss a Section 1983 conspiracy, a plaintiff must allege that the defendants reached an agreement to deprive plaintiff of his constitutional rights and committed an act in furtherance of that conspiracy. *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1261 (11th Cir. 2010) (citing *Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir. 1990) ("The plaintiff attempting to prove such conspiracy must show that the parties 'reached an understanding' to deny the plaintiff his or her rights. The conspiratorial acts must impinge upon the federal right; the plaintiff must prove an actionable wrong to support the conspiracy.").

Plaintiffs do not sufficiently allege an agreement among Defendants Plasencia or Diaz and any of the other Defendants to deprive Plaintiffs of their constitutional rights. The SAC merely makes conclusory allegations that they agreed to a conspiracy. (*E.g.* SAC ¶¶ 4211, 4219.) The SAC concludes the conspiracy was formed by just Mendez, Carollo, and Noriega. (*E.g.* SAC ¶ 4210.) The SAC also claims that Carollo created the conspiracy. (*E.g.* SAC ¶ 4009.) Moreover, the allegations of the investigations and other conduct of Defendants Plasencia and Diaz were performed in accordance with their official duties — a "far cry from showing" an agreement. *See Grider*, 618 F.3d 1240, 1260. And simply being aware of another official's misconduct does not equate to a conspiracy. *See id.* The SAC does not adequately allege a conspiracy claim against Defendants Plasencia or Diaz.

**VI.     THE STATUTE OF LIMITATIONS BARS PLAINTIFFS' CLAIMS TO THE EXTENT THEY RELY ON ACTIONS TAKEN ON OR BEFORE NOVEMBER 6, 2019.**

Section 1983 claims are governed by the forum state's residual personal injury statute of limitations, which in Florida is four years. *See City of Hialeah v. Rojas*, 311 F.3d 1096, 1103 n.2 (11th Cir. 2002) (citing *Burton v. City of Belle Glade*, 178 F.3d 1175, 1188 (11th Cir. 1999)). Defendants Plasencia and Diaz incorporate and adopt co-Defendants' arguments demonstrating the SAC is barred by the statute of limitations. *See* Carollo Mot. § II(C); Mendez Mot. § IX; Noriega Mot. § IX. Any allegations stemming from conduct that occurred before November 6, 2019, four years before the filing of this lawsuit, are time barred.

Many of Plaintiffs' claims are barred by the statute of limitations based on Plaintiffs' own allegations. The alleged conduct started in 2017, when Defendant Carollo shut down a political

rally and was circulating lists of Plaintiffs' properties. (SAC ¶¶ 46, 51, 52, 169.) Plaintiffs claim damages for "more than five years of emotional distress and mental anguish." (*E.g.* SAC ¶¶ 3229, 3856.) Allegations concerning Plaintiff LHAB began in 2017, and Defendant Carollo began "harassing" LHAB in 2018. (SAC ¶¶ 169-70.) The allegations relating to La Gran Fiesta, LLC (Taquerias) began in December 2018. (SAC ¶¶ 64, *see also* Mad Room, ECF 212 (First Am. Compl.) ¶ 22 (alleging this began in January 2018).)[7] The allegations regarding Piedra Villas began on May 9, 2019. *See Tower Hotel*, ECF 132 (Corr. Third Am. Compl.) ¶ 33. The allegations regarding Tower Hotel began on June 12, 2019. *See Tower Hotel*, ECF 132 (Corr. Third Am. Compl.) ¶ 86. Plaintiffs allege that Diaz circulated an excel sheet of Plaintiffs' properties on May 28, 2020, after a conversation with Defendant Marrero. (SAC ¶¶ 90, 184.) But Plaintiffs already alleged such lists were Carollo's lists and Mendez's lists, and were created in 2017 and 2019. (SAC ¶¶ 59, 61, 82.) These allegations stem from conduct that occurred before November 6, 2019. These claims are not subject to the continuing violation doctrine. *Tony*, 847 Fed. Appx. 642, 646-47. They must be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should dismiss the SAC against Plasencia and Diaz with prejudice.

---

[7] On a motion to dismiss, when considering whether claims that omit "critical dates" are barred by the statute of limitations, "courts may take judicial notice of public records, such as a pleading filed in another court, because such documents are capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." *Navarro v. City of Riviera Beach*, 192 F. Supp. 3d 1353, 1364-65 (S.D. Fla. 2016) (internal quotations omitted) (taking judicial notice, on a motion to dismiss, of a pleading in another case "to ascertain" the "critical date" of a plaintiff's arrest in a section 1983 action to determine whether the claim is barred by the statute of limitations).

## REQUEST FOR HEARING

Plasencia and Diaz, pursuant to S.D. Fla. L.R. 7.1(b)(2), respectfully request that the Court set this matter for oral argument. Oral argument would be helpful to the Court because it would help focus the Court's analysis of the material allegations and the applicability of those allegations to the complex areas of law at issue here. Plasencia and Diaz estimate that the time required for argument on issues specific to them would be one hour.

Dated: May 15, 2024.

Respectfully submitted,

By: */s/Jorge L. Piedra*
Jorge L. Piedra (FBN 88315)
jpiedra@kttlaw.com
Michael R. Lorigas (FBN 123597)
mlorigas@kttlaw.com
Daniel T. DiClemente (FBN 1025369)
ddiclemente@kttlaw.com
**KOZYAK TROPIN &**
**THROCKMORTON LLP**
2525 Ponce de Leon Boulevard, 9th Floor
Miami, FL 33134
(305) 372-1800
*Counsel for Defendants*
*Adrian Plasencia and Rene Diaz*

## CERTIFICATE OF SERVICE

I certify that on May 15, 2024, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify that this document is being served today on all counsel of record by transmission of Notices of Electronic Filing generated by CM/ECF.

By: /s/ *Jorge L. Piedra*
Jorge L. Piedra

21