UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Case Number: 23-24251-CIV-MORENO

WILLIAM O. FULLER,
MARTIN PINILLA, II,
BARLINGTON GROUP, LLC,
CALLE OCHO MARKETPLACE, LLC,
YO AMO CALLE SIETE, LLC,
LITTLE HAVANA ARTS BUILDING, LLC,
LITTLE HAVANA ARTS BUILDING TOO,
LLC,
TOWER HOTEL, LLC,
BRICKELL STATION PARTNERS, LLC,
PIEDRA VILLAS, LLC,
FUTURAMA, LLC,
EL SHOPPING, LLC,
BEATSTIK, LLC,
VIERNES CULTURALES/CULTURAL
FRIDAYS, INC.,
LITTLE HAVANA BUNGALOWS, LLC,
LHAB TRES, LLC,
LA GRAN FIESTA, LLC,

        Plaintiffs,

vs.

ASAEL MARRERO,

        Defendant.
_____/

## ORDER GRANTING DEFENDANT MARRERO'S MOTION TO DISMISS

Plaintiffs are numerous business owners who allege that Defendant Asael Marrero, as Director of the City of Miami's Building Department, violated the Plaintiffs' civil rights by unlawfully enforcing codes and regulations governing the construction, alteration, and maintenance of commercial and residential building and structures within the City on behalf City Commissioner Carollo for political retaliation. Specifically, Defendant Marrero met with the City

1

Manager and City Attorney's personnel, to talk about Fuller and Pinilla and to update policies to shut properties down. Further, Defendant Marrero allegedly architected a couple of ordinances to target Plaintiffs' properties.

Defendant Marrero argues that dismissal is required because: (1) *res judicata* bar Plaintiffs' claims; (2) that he is entitled to qualified immunity as a public official; and (3) that the Second Amended Complaint fails to state a claim for First Amendment retaliation and conspiracy. The Court *agrees* that Defendant Marrero is entitled to qualified immunity and thus dismisses counts 6, 12, 21, 28, 36, 43, 50, 60, 80, 88, 95, 106, 116, 127, and 138.

## LEGAL STANDARD: RULE 12(b)(6) MOTION TO DISMISS

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court considers only the four corners of the complaint. A court must accept as true the facts as set forth in the complaint.

"To survive a motion to dismiss, plaintiffs must do more than merely state legal conclusions," instead plaintiffs must "allege some specific factual basis for those conclusions or face dismissal of their claims." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1263 (11th Cir. 2004). When ruling on a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff and accept the plaintiffs well-pleaded facts as true. *See St. Joseph's Hosp., Inc. v. Hosp. Corp. of Am.*, 795 F.2d 948, 953 (11th Cir. 1986). This tenet, however, does not apply to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). Moreover, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 1950. Those "[f]actual allegations must be

enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). In short, the complaint must not merely allege misconduct, but must demonstrate that the pleader is entitled to relief. *See Iqbal*, 129 S. Ct. at 1950.

## LEGAL STANDARD – QUALIFIED IMMUNITY

"Qualified immunity shields public officials from liability for civil damages when their conduct does not violate a constitutional right that was clearly established at the time of the challenged action." *Echols v. Lawton*, 913 F.3d 1313, 1319 (11th Cir. 2019) (citing *Bailey v. Wheeler*, 843 F.3d 473, 480 (11th Cir. 2016)).

To obtain a dismissal based on qualified immunity, "a government official must first establish that he was acting within the scope of his discretionary authority when the alleged wrongful act occurred." *Id.* If he was, the burden then shifts to the plaintiff to overcome the official's qualified immunity. *Mikko v. City of Atlanta*, 857 F.3d 1136, 1144 (11th Cir. 2017). To overcome qualified immunity, a plaintiff must "plead[] facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011).

1. <u>Scope of Discretionary Authority</u>

The Eleventh Circuit in *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004) held that the scope of discretionary authority inquiry is two-fold. A court must ask "whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize."

The Eleventh Circuit has further elaborated that "[t]he inquiry is not whether it was within the defendant's authority to commit the allegedly illegal act." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998). "Instead, a court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties. The scope of immunity should be determined by the relation of the [injury] complained of to the duties entrusted to the officer." *Id.* That is, the court must "look to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." *Holloman*, 370 F.3d at 1266.

Plaintiffs argue that Defendant Marrero acted outside the scope of his discretionary authority when he carried out the orders of Carollo, Noriega, and Dooley to draft and revise City policies and ordinances to shut down Plaintiffs' businesses. However, the alleged actions are within the normal discretionary functions of a Building Director. The Building Department enforces codes and regulations governing the construction, alteration, and maintenance of commercial and residential buildings and structures within the City. The allegations that Marrero met with City officials to update policies to shut properties down and was involved in drafting and revising policies are acts over which a Building Director is expected to have discretion. Further the acts performed by Defendant Marrero were in the pursuit of building safety—a job-related goal.

4

And as the *Harbert* panel articulated, the inquiry is whether the act was reasonably related to the outer perimeters of an official's discretionary duties. *See Harbert Int'l.*, 157 F.3d at 1282. So, Defendant Marrero does not need to point to a specific City Charter or Code to show in fact that he was authorized to craft or apply City ordinances and policies. Determining when a property owner has failed to meet the requirements of a city ordinance or playing a part in drafting City policies are at least within the outer perimeters of Defendant Marrero's discretion as Building manager. Accordingly, Defendant Marrero has established that he was acting within the scope of his discretionary authority when the alleged wrongful act occurred.

2. <u>Burden Shifting</u>

Because the Court finds that Defendant Marrero established that he was acting within the scope of his discretionary authority, the burden shifts to the plaintiff to overcome the official's qualified immunity. *See Mikko v. City of Atlanta*, 857 F.3d 1136, 1144 (11th Cir. 2017). As stated above, a plaintiff must plead facts showing that "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011).

   a. *Claim of Retaliation in Violation of the First Amendment*

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech, or . . . the right . . . to petition the government for a redress of grievances." U.S. Const. Amend. I. The Amendment protects "not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." *Echols*, 913 F.3d at 1320

(citing *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000)). To state a claim for First Amendment retaliation, a plaintiff must allege that he engaged in protected speech, that the official's conduct adversely affected the protected speech, and that a causal connection exists between the speech and the official's retaliatory conduct. *Id.* (citing *Bailey*, 843 F.3d at 480-81).

First, the alleged protected speech is that Plaintiffs engaged in hosting rallies and supporting social media advertising in favor of Alfie Leon, Carollo's run-off opponent. While it is not disputed that some of the Plaintiffs engaged in protected speech, Defendant argues that at least three entity Plaintiffs were formed after the alleged protected speech occurred. Thus, the conundrum brought up by Defendant Marrero is that it would be impossible for some of the Plaintiffs to have participated in protected speech. However, just because some of the allegations do not directly involve a few of the Plaintiffs does not defeat the sufficiency of engaging in protected speech. *See Cuevas v. City of Sweetwater*, No. 15-22785-CIV, 2015 U.S. Dist. LEXIS 194245 (S.D. Fla. Oct. 28, 2015). The *Cuevas* court cited *Ranize v. Town of Lady Lake*, No. 5:11-cv-646-Oc-32TBS, 2012 U.S. Dist. LEXIS 147306, 2012 WL 4856749 (M.D. Fla. Oct. 12, 2012). In *Ranize*, the plaintiff alleged the town violated his First Amendment rights by discharging his wife, a town police dispatcher, in retaliation for plaintiff's exercise of protected speech critical of the town's chief of police. The *Ranize* court found it "easy to understand how a spouse's termination could adversely affect the other spouse." *Id.* The *Cuevas* court found this reasoning convincing in comparing its set of facts where the political speech of the owner of a gas station adversely affected the group that operated the gas station, along with a truck rental company. Here, it is alleged, like the facts in *Cuevas* and *Ranize*, that because of the political speech of Plaintiffs Fuller and Pinilla, Defendants were ordered by Carollo to shut down the businesses associated with Plaintiffs. Thus, it is reasonable that Plaintiffs, as businesses or business owners, may be

6

dissuaded from supporting a political candidate in the face of economic sanctions and code violations.

Next, the Court must look at whether the official's conduct adversely affected the protected speech. To do so, the Court must consider whether the official's conduct would have deterred a person of ordinary firmness from exercising his rights under the First Amendment. *See Bennett v. Hendrix*, 423 F.3d 1247, 1254 (11th Cir. 2005). The inquiry is governed by an objective standard, and the adverse effect need not be great, as there is no justification for harassing people for exercising their constitutional rights. *See Bailey*, 843 F.3d at 481; *see also Bennett*, 423 F.3d at 1254. Out of caution, the Court finds that Defendant Marrero's conduct could have deterred a person of ordinary firmness exercising his rights under the First Amendment. Adverse effects upon the businesses in the form of code violations and ordinances could have adverse effects upon the businesses affiliated with Fuller and Pinilla.

Lastly, Plaintiffs have plausibly alleged that a causal connection exists between the speech and the official's retaliatory conduct. To establish a causal connection, Plaintiffs had to allege their protected conduct was a "motivating factor" behind Defendant Marrero's alleged misconduct. *See Gibbons v. McBride*, 124 F. Supp. 3d 1342, 2015 WL 5017021, at *23 (S.D. Ga. 2015). A Court reviewing a motion to dismiss must draw all reasonable inferences from the factual allegations in a plaintiff's complaint in the plaintiff's favor. *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010). Doing that here, it is alleged that Carollo was the motivating force but relied on many others like Marrero to participate in implementing official City policies. The Complaint also alleges that Marrero had a lengthy meeting with City Manager Noriega and the City Attorneys' office about Fuller and Pinilla. Defendant Marrero wrote that "[t]he Manager wants us to revise and update our policies and to be more stringent when it comes to work without permit, clearly define what

are unsafe conditions, and shut down all structures that don't comply." Even though Marrero is down the line of the chain of command within the government, there is an existence of a causal connection between Defendant Marrero and the protected speech. For that reason, the Court will not dismiss on the grounds of stating a valid claim of retaliation in violation of the First Amendment.

Thus, the Court finds that Plaintiffs in their Amended Complaint have stated a valid claim of retaliation in violation of the First Amendment. However, as analyzed below, that right was not clearly established when Defendant Marrero allegedly violated it.

### b. *Clearly Established Right*

To defeat Defendant Marrero's qualified immunity, Plaintiffs must also prove that Marrero violated a constitutional right that "was 'clearly established' at the time of the challenged conduct." *Plumhoff v. Rickard*, 572 U.S. 765, 778, 134 S. Ct. 2012, 188 L. Ed. 2d 1056 (2014) (quoting *al-Kidd*, 563 U.S. at 735)

An official's conduct violates clearly established law when "the contours of [the] right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *al-Kidd*, 563 U.S. at 741 (alterations adopted) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987)). Courts consider the official's conduct in "'the specific context of the case,' not as 'broad general proposition[s].'" *Echols*, 913 F.3d at 1323-24 (citing *Bailey*, 843 F.3d at 484); *see also al-Kidd*, 563 U.S. at 742 ("We have repeatedly told courts . . . not to define clearly established law at a high level of generality."). And we ask the "salient question . . . whether the state of law at the time of [an official's conduct]

8

provided 'fair warning,' to every reasonable official that the conduct clearly violates the Constitution." *Mikko*, 857 F.3d at 1146.

The *Echols* panel held that the appellant could demonstrate that the "contours of the right were clearly established in one of three ways." *Echols*, 913 F.3d at 1324 (citing *Loftus v. Clark-Moore*, 690 F.3d 1200, 1204 (11th Cir. 2012)).

> First, he can point us to a "materially similar case [that] has already been decided." Second, he can point us to "a broader, clearly established principle that should control the novel facts of the situation." Third, "the conduct involved in the case may so obviously violate the [C]onstitution that prior case law is unnecessary."

*Loftus*, 690 F.3d at 1204-05.

Plaintiffs fail to demonstrate that the contours of the right were clearly established in any of the three ways set out by the Eleventh Circuit. First, Plaintiffs contend that Defendants reformulate arguments used in *Fuller I*. While there may be a similar flavor as Plaintiffs point out, the Defendants are different. Whether Carollo violated a clearly established First Amendment right or whether Defendant Marrero violated a clearly established First Amendment right are questions that can be answered very differently, as their roles were completely different. Plaintiffs rely on multiple decisions that are outside of our district. The decisions that are within are district are inapposite. In *Bennett v. Hendrix*, 423 F.3d 1247, 1254 (11th Cir. 2005), the defendants were sheriffs that pulled over, cited, intimidated, and otherwise harassed the plaintiffs in retaliation for supporting a county referendum that the sheriff opposed. Further, the defendants accessed confidential government databases containing information on the plaintiffs, attempted to obtain arrest warrants against the plaintiffs without probable cause, and distributed flyers that called the plaintiffs "real criminals," "members of a 'chain gang,'" and "the same type of criminals that terrorize Forsyth County. *Id.* at 1249.

What is different in the case here and the pair of Eleventh Circuit cases *Bennett* and *Bailey* is that there are layers to the First Amendment speech and direct action by the parties. In both of the Eleventh Circuit cases, there is direct speech by the plaintiff, and that speech is followed by direct intimidation from sheriffs. Here, it is not clear whether there is political speech by all of the Plaintiffs. While that may not matter as much for Plaintiffs in alleging a valid claim of retaliation, it matters more for proving that Defendant Marrero violated a clearly established right. Also, it is alleged that Carollo was the "motivating force in instigating the unconstitutional retaliation," not Defendant Marrero. Further, Defendant Marrero did not physically intimidate or harass Plaintiffs. Marrero was performing job-related functions as the City Building Director, such as strengthening city policies and determining when a property owner has failed to meet the requirements of the city's building ordinances. The Court finds Plaintiffs' precedent either not controlling or inapposite to this case.

Second, a plaintiff may rely on a "broader, clearly established principle [that] should control the novel facts [of the] situation." *Loftus v. Clark-Moore*, 690 F.3d 1200, 1204-05 (11th Cir. 2012). The Eleventh Circuit explained that "when a plaintiff proceeds in this way, he must show that case law established the principle with 'obvious clarity . . . so that every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted.'" *Id.* at 1205. Plaintiffs contend that the Eleventh Circuit has affirmed the principle that "clearly established law that prohibits government officials from facilitating a campaign of petty harassments and engaging the punitive machinery of government in order to engage in First Amendment retaliation and to punish plaintiffs for speaking out." Again, the Court is faced with the issue that there is a layer of control that is present in *Bailey* and *Bennett* that is not present here. In both cases sheriffs are directly retaliating against the

plaintiffs. Further, the Eleventh Circuit found it especially repugnant that law-enforcement officers are sworn to protect and defend the lives of others. *See Bailey*, 843 F.3d at 485. "It is completely antithetical to those sworn duties for a law-enforcement officer to use his position to harness the power of an entire county's law-enforcement force to teach a lesson to—and potentially very seriously endanger—someone who had the temerity to speak up about alleged abuses." *Id.* Here, it is alleged that Defendant Marrero, met with the City Attorneys' office and told them that "[t]he Manager wants us to revise and update our policies to be more stringent when it comes to work without permit, clearly define what are unsafe conditions, and shut down all structures that don't comply." It is not clear to the Court that every objectively reasonable government official facing the circumstances would know that the official's conduct violated federal law when the official acted. Nor is it clear that the state of the law provided fair warning to every reasonable official that the conduct clearly violates the Constitution. It is squarely within the Building Director's job function to enforce codes and regulate buildings and structures within the City. *See Loftus*, 690 F.3d at 1205. Further, as Defendant Marrero points out, it is not alleged that he harbored any personal animus against Plaintiffs, nor do they allege that he even knew that Plaintiffs were purporting to exercise their constitutionally protected speech rights. As the Supreme Court in *Reichle v. Howards*, 566 U.S. 658, 665, 132 S. Ct. 2088, 182 L. Ed. 2d 985 (2012) held, the general right to be free from retaliation for one's speech does not clearly establish a violation of the First Amendment.

Lastly, the Court is not persuaded that Defendant Marrero's conduct "so obviously violate[d] the [C]onstitution that prior case law is unnecessary." *Loftus*, 690 F.3d at 1205. The Eleventh Circuit also recognizes the "obvious clarity exception" where conduct is "so bad that case law is not needed to establish that the conduct cannot be lawful. *Vinyard v. Wilson*, 311 F.3d

1340, 1350 (11th Cir. 2002). Defendant Marrero's conduct, as alleged by Plaintiffs, does not rise to this level. Defendant Marrero's job is to enforce codes and regulations governing the construction, alteration, and maintenance of commercial and residential buildings and structures within the City. It is alleged that he met with City Manager and the City Attorneys' Office to update polices and shut properties down, "architected" a couple of ordinances to "target" Plaintiff's properties, and issue citations and violation for certain properties. The alleged protected activity was that Carollo's run-off opponent, Alfie Leon, held two rallies on the property of two Plaintiffs, Fuller and Pinilla. Defendant points out that at least three of the entity Plaintiffs were formed after the alleged protected speech. Thus, there is a need for allegations of Defendant Marrero knowing that Plaintiffs were purporting to exercise their constitutionally protected speech rights or that Defendant Marrero harbored personal animus against Plaintiffs. With that in mind, Defendant Marrero's conduct is not "so bad that case law is not needed to establish that the conduct cannot be lawful. *Vinyard*, 311 F.3d at 1350.

Accordingly, the Court finds that Defendant Marrero is entitled to qualified immunity and thus grants Defendant Marrero's Motion to Dismiss.

## CONCLUSION

**DONE AND ORDERED** in Chambers at Miami, Florida, this 11th of September 2024.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record