**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

**Case No. 1:23-cv-24251-FAM**

FULLER, et al.,

      Plaintiffs,

v.

THE CITY OF MIAMI, et al.,

      Defendants.

_____/

**ARTHUR NORIEGA'S SUPPLEMENT TO HIS MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED COMPLAINT AND
<u>ALTERNATIVE MOTION FOR SUMMARY JUDGMENT</u>**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION.................................................................................................... 1

I.   Plaintiffs' Claims Against Noriega Fail Because He Was Acting in His Official
     Capacity as City Manager ............................................................................. 2

II.  Plaintiffs' Claims Against Noriega Fail Because He Is Entitled to Qualified Immunity 6

     A.  Legal standard for qualified immunity ................................................. 7

     B.  Noriega was acting within the scope of his discretionary authority ......... 7

     C.  Plaintiffs cannot carry their burden to overcome Noriega's qualified immunity .... 8

          1.  Noriega did not violate Plaintiffs' statutory or constitutional rights ...... 8

               a.  The Entity Plaintiffs have not proven they engaged in protected speech because
                   their claims are based on their commercial association with Fuller and Pinilla,
                   which does not constitute protected First Amendment association ................ 9

               b.  There is no causal connection between Plaintiffs' alleged speech and Noriega's
                   alleged retaliatory conduct ............................................................. 12

                    i.   There is no evidence that Noriega was subjectively motivated to take adverse
                         action because of the protected speech .......................................... 12

                    ii.  There is no evidence supporting temporal proximity between Plaintiffs'
                         protected activity that occurred years earlier and Noriega's alleged
                         retaliatory acts ..................................................................... 15

          2.  Plaintiffs cannot defeat Noriega's qualified immunity because they cannot carry
              their burden to show that his alleged conduct violated clearly established law.... 17

               a.  Plaintiffs fail to establish there is a materially similar case already decided that
                   would give Noriega fair notice that he could be liable under clearly established
                   law ...................................................................................... 18

               b.  Plaintiffs fail to show that case law established the principle with obvious
                   clarity, so that every objectively reasonable government official facing the
                   circumstances would know that the official's conduct violated federal law ...... 21

               c.  Plaintiffs fail to show that Noriega's conduct did not so obviously violate the
                   Constitution that prior case law is unnecessary ................................. 22

CONCLUSION ...................................................................................................... 23

REQUEST FOR ORAL ARGUMENT .................................................................. 23

i

## TABLE OF AUTHORITIES

**Cases**

*Alexander v. United States*,
    No. 21-13720, 2022 WL 17688692 (11th Cir. Dec. 15, 2022) ............................................ 14

*Ashcroft v. al-Kidd*,
    563 U.S. 731 (2011) ............................................................................................................ 17, 18

*Ashmore v. F.A.A.*,
    No. 11-60272-CIV, 2011 WL 5433924 (S.D. Fla. Nov. 8, 2011) ......................................... 14

*Bailey v. Wheeler*,
    843 F.3d 473 (11th Cir. 2016) .......................................................................................... 18, 20

*Bennett v. Hendrix*,
    423 F.3d 1247 (11th Cir. 2005) ............................................................................................. 20

*Busby v. City of Orlando*,
    931 F. 2d 764 (11th Cir. 1991) ................................................................................................ 2

*Carter v. City of Melbourne, Fla.*,
    731 F. 3d 1161 (11th Cir. 2013) ............................................................................................ 15

*Castle v. Appalachian Tech. Coll.*,
    631 F. 3d 1194 (11th Cir. 2011) .................................................................................. 9, 13, 15

*Christmas v. Harris Cnty. Ga.*,
    51 F. 4th 1348 (11th Cir. 2022) ............................................................................................. 22

*Durruthy v. City of Miami*,
    No. 01-4155-CIV-MORENO, 2002 WL 31829582 (S.D. Fla. Dec. 13, 2002) ...................... 2

*Echols v. Lawton*,
    913 F.3d 1313 (11th Cir. 2019) ................................................................................... 7, 17, 18

*Edmondson v. Velvet Lifestyles, LLC*,
    No.15-24442-CIV, 2016 WL 7048363 (S.D. Fla. Dec. 5, 2016) ........................................... 11

*Evans v. McClain of Ga., Inc.*,
    131 F. 3d 957 (11th Cir. 1997) ............................................................................................. 14

*Harbert Int'l, Inc. v. James*,
    157 F. 3d 1271 (11th Cir. 1998) .............................................................................................. 7

*Harden v. Adams*,

    841 F. 2d 1091 (11th Cir. 1988) ...................................................................... 15

*Hazleton v. City of Orlando*,

    No.6:10-cv-342-Orl-35-DAB, 2010 WL 11507191 (M.D. Fla. June 10, 2020).................. 6

*Holloman ex rel. Holloman v. Harland*,

    370 F. 3d 1252 (11th Cir. 2004) ........................................................................ 7

*Innova In. Grp., LLC v. Vill. of Key Biscayne*,

    No. 1:19-CV-22540, 2021 WL 1723678 (S.D. Fla. Apr. 30, 2021) ................................... 15

*Jones v. Robinson*,

    665 Fed. Appx. 776 (11th Cir. 2016).................................................................. 12

*Kentucky v. Graham*,

    473 U.S. 159 (1985).......................................................................................... 2

*Loftus v. Clark-Moore*,

    690 F. 3d 1200 (11th Cir. 2012) ......................................................... 17, 21, 22

*Macuba v. Deboer*,

    193 F. 3d 1316 (11th Cir. 1999) ........................................................................ 14

*McCabe v. Sharrett*,

    12 F.3d 1558 (11th Cir. 1994) ..........................................................................11

*McGriff v. City of Miami Beach*,

    522 F. Supp. 3d 1225 (S.D. Fla. 2020)................................................................. 8

*Mech v. Sch. Bd. of Palm Beach Cnty.*,

    No. 13-80437-CIV, 2014 WL 11444112 (S.D. Fla. Oct. 27, 2014) ................................... 12

*Metz v. Sasser*,

    664 Fed. Appx. 895 (11th Cir. 2016).................................................................. 16

*Monell v. N.Y.C. Dep't of Soc. Servs.*,

    436 U.S. 6585 (1978)....................................................................................... 2

*Mt. Healthy City Bd. of Ed. v. Doyle*,

    429 U.S. 274 (1977).......................................................................................... 15

*Murray v. City of Elizabethtown, Tenn.*,

    661 F. Supp. 3d 786 (E.D. Tenn. 2023)............................................................... 8

*Nieves v. Bartlett*,

    587 U.S. 391 (2019) ................................................................................... 13, 15

*Rivers v. Campbell*,

    791 F.2d 837, 840 (11th Cir. 1986) ...................................................................11

*Roberts v. United States Jaycees*,

    468 U.S. 609 (1984) .........................................................................................11

*Rodemaker v. Shumphard*,

    859 Fed. Appx. 450 (11th Cir. 2021) ............................................................... 15

*Sanimax USA, LLC v. City of S. St. Paul*,

    95 F.4th 551 (8th Cir. 2024) ........................................................................... 16

*Stephens v. Geoghegan*,

    702 So. 2d 517 (Fla. 2d DCA 1997) ................................................................. 6

*Terrell v. Smith*,

    668 F. 3d 1244 (11th Cir. 2012) ................................................................ 21, 22

*Torres-Bonilla v. City of Sweetwater*,

    No. 16-24011-CIV, 2017 WL 11532227 (S.D. Fla. Nov. 15, 2017) ..................... 2

*Vinyard v. Wilson*,

    311 F.3d 1340, 1350 (11th Cir. 2002) ....................................................... 22, 23

**Statutes**

42 U.S.C. § 1988 ............................................................................................... 23

**Rules**

Fed. R. Civ. P. 56 ................................................................................................ 1

Fed. R. Civ. P. 12 ................................................................................................ 1

Local Rule 7.1 ................................................................................................... 23

**Constitutional Provisions**

U.S. CONST. amend. I ....................................................................................... 22

Defendant, City Manager Arthur Noriega ("Noriega"), pursuant to the Court's Order Requiring Parties to Participate in Limited Discovery to Supplement Pending Motions to Dismiss dated November 5, 2024 (ECF No. 218),[1] and Fed. R. Civ. P. 12(b)(6) and 56, files his Supplement to his Motion to Dismiss Plaintiffs' Second Amended Complaint ("SAC"), and his Alternative Motion for Summary Judgment, and supplements his Motion to Dismiss (ECF No. 140) Plaintiffs' Second Amended Complaint ("SAC") (ECF No. 129), his Reply (ECF No. 176), and the exhibits thereto.

## **<u>INTRODUCTION</u>**

The Plaintiffs' operative complaint continues to be nothing more than a blanket attempt to hamstring and thwart the City of Miami and its employees from lawfully enforcing the City's Codes, ordinances, and policies against them. Plaintiffs' legally insufficient assertion that the individual Plaintiffs and the Entity Plaintiffs by association engaged in First Amendment protected activity and are now entitled to perpetual immunity from lawful enforcement of City Codes, ordinances, and policies is based on the equally implausible contention that any and all such action by the City is retaliation for prior alleged "speech" that occurred, if at all, more than seven years ago. It is not retaliation. It is an attempt by the City and its officials to enforce the City Code and its ordinances. Now after Court-ordered limited discovery, Plaintiffs' implausible contention is laid bare.[2]

Plaintiffs' efforts to avoid lawful enforcement of the City's Codes, ordinances, and policies by claiming perpetual First Amendment protection against Noriega, who at all times was acting in his official capacity and within his duties as City Manager should not be countenanced any longer. Simply put, it is not unlawful for the City and its officials to enforce the law.

The allegations and undisputed evidence compel dismissal of City Manager Noriega, just as they compelled dismissal of Code Enforcement Board member Yvonne Bayona, because, at all relevant times, Noriega, like Bayona, was acting in his official capacity. *See* ECF No. 198 at 3.

---

[1] Because the Court has elected to treat the motion to dismiss as one for summary judgment, the prohibition against multiple motions for summary judgment has not been triggered. *See* Fed. R. Civ. P. 56(e). Therefore, if the Court denies this motion, Noriega will file a summary judgment motion, if appropriate, at the close of discovery.

[2] The individual Defendants have availed themselves of the limited depositions of Fuller and Pinilla allowed by the Court, while Plaintiffs did not take any depositions.

Further, the allegations and undisputed evidence compel the conclusion that, like Building Department Director Asael Marrero, who the Court also dismissed, Noriega is entitled to qualified immunity. *See* ECF No. 199 at 2. Dismissal and summary judgment are appropriate on both these grounds.

In addition, as set forth herein, Noriega is entitled to prevail because the undisputed facts show that the Entity Plaintiffs[3] did not engage in any protected activity, as their claims are based on their commercial association with Fuller and Pinilla; there is no temporal proximity or causal connection between Plaintiffs' alleged protected activity and Noriega's alleged retaliatory acts; Noriega's actions were taken for non-retaliatory motives, including to implement City policy to obtain compliance with the Florida Building Code, City Code, and applicable law (the "Code"), not based on Plaintiffs' alleged protected activity; and Plaintiffs otherwise fail to establish a First Amendment retaliation claim.

## I. Plaintiffs' Claims Against Noriega Fail Because He Was Acting in His Official Capacity as City Manager

When officials are sued under 42 U.S.C. § 1983 in their official capacity, "the suit is simply 'another way of pleading an action against an entity of which an officer is an agent.'" *Busby v. City of Orlando*, 931 F. 2d 764, 776 (11th Cir. 1991) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citing *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978))). "Such suits against municipal officers are therefore, in actuality, suits directly against the city that the officer represents." *Id.* "The Eleventh Circuit has instructed courts to treat suits against government agents in their official capacities as functionally equivalent to suits against the municipality itself." *Durruthy v. City of Miami*, No. 01-4155-CIV-MORENO, 2002 WL 31829582, at *1 (S.D. Fla. Dec. 13, 2002); *see Torres-Bonilla v. City of Sweetwater*, No. 16-24011-CIV, 2017 WL 11532227, at *1 (S.D. Fla. Nov. 15, 2017) (dismissing official-capacity claims against detectives as redundant

---

[3] The Entity Plaintiffs are Barlington Group LLC ("Barlington Group"), Yo Amo Calle Siete LLC ("Calle Siete"), Tower Hotel LLC ("Tower Hotel"), Brickell Station Partners LLC ("Brickell Station"), Beatstik LLC ("Beatstik"), LHAB Tres, Little Havana Bungalows LLC ("Havana Bungalows"), Viernes Culturales/Cultural Fridays Inc. ("Viernes"), Piedra Villas LLC ("Piedra"), Little Havana Arts Building Too LLC ("LHAB Too"), Calle Ocho Marketplace LLC ("Calle Ocho"), Futurama LLC, and El Shopping LLC ("El Shopping"). The only entities with remaining claims against Noriega are Brickell Station (Count 18), Piedra (Count 25), Calle Siete (Count 33), Beatstik (Count 40), El Shopping (Count 47), Tower Hotel (Count 57), Viernes (Count 64), Havana Bungalows (Count 75), LHAB Too (Count 84), Calle Ocho (Count 94), LHAB Tres (Count 98), and Barlington Group (Count 103).

where city was a defendant). For this reason, the Court correctly dismissed the SAC against Bayona – Plaintiffs alleged nothing more than conduct by her in her official capacity:

> Here, Plaintiffs have brought suit against Defendant Bayona in her individual capacity. However, allegations in the Second Amended Complaint show that *Defendant was acting in her official capacity as a member of the Code Enforcement Board*. Plaintiffs do not address this argument in the response in opposition. While the Court could stop here, for purposes of completeness, the Court will also address the arguments on absolute quasi-judicial immunity.

ECF No. 198 at 3 (emphasis added). The allegations and evidence as to Noriega compel the same result.

As they did with Bayona, Plaintiffs seek to hold City Manager Noriega liable in his individual capacity. The Court already has found that this label is not determinative. *See* ECF No. 198 at 3. Plaintiffs' unsupported claims that Noriega and other City officials acted "outside" their official discretion and roles in taking action that Plaintiffs do not like is insufficient. *See, e.g.*, ECF No. 235,[4] Ex. A (W. Fuller Dep.) at 341:2-18 (claiming that when Noriega met with City officials to "architect" City policy, he was operating "outside" of his official capacity "for the purpose of animus"). There is no evidence supporting this or any such blanket assertion by Plaintiffs. Rather, the undisputed evidence is that all the conduct by Noriega about which Plaintiffs complain fell squarely within his job functions. Like Bayona, Noriega's alleged retaliatory acts – meeting with City officials, making recommendations regarding measures to be adopted by commissioners, reviewing lists of possibly noncompliant properties, inquiring whether properties comply with City requirements, and "architecting" ordinances – were done in his official capacity as the City Manager. *See* SOF ¶¶ 9 – 27[5] (citing Noriega declaration and listing instances of alleged conduct by Noriega and explaining how each falls within his required official duties). Plaintiffs have no basis to dispute this evidence because they concede that they have no "personal knowledge as to the scope of work of Noriega." SOF ¶ 27 (citing Pinilla Dep. 277:24-278:6, 278:24-279:9).

The City Manager is required to do the acts of which Plaintiffs complain, within his official

---

[4] ECF 235 is the individual Defendants' Notice of Filing in Support of Their Motions to Dismiss Plaintiffs' Second Amended Complaint and Alternative Motions for Summary Judgment, to which Exhibits A-W are attached.

[5] "SOF" refers to Noriega's Statement of Facts filed together with this motion (ECF No. 237). The SOF attaches Noriega's declaration as Exhibit A.

discretionary role as "head of the administrative branch of the city government." *See* SOF ¶¶ 5, 7 (citing Noriega Dec. and City Charter § 15) ("The city manager shall be the head of the administrative branch of the city government . . . . The city manager shall be responsible for the administration of all units of the city government under the city manager's jurisdiction, and for carrying out policies adopted by the city commission.").

The City Manager's powers and duties as the head of the administrative branch of city government are set forth in Section 16 of the City of Miami Charter:

> The powers and duties of the city manager shall be to:
> (a) See that the laws and ordinances are enforced.
> (b) Appoint and remove, except as otherwise provided in this Charter, all directors of the departments and all subordinate officers and employees in the departments in both the classified and unclassified service; all appointments to be upon merit and fitness alone, and in the classified service all appointments and removals to be subject to the civil service provisions of this Charter.
> (c) Exercise control over all departments and divisions created herein or that may be hereafter created by the city commission.
> (d) Attend all meetings of the city commission with the right to take part in the discussion but having no vote.
> (e) Recommend to the mayor and city commission for adoption such measures as the city manager may deem necessary or expedient.
> (f) Keep the mayor and city commission fully advised as to the financial condition and needs of the city; and
> (g) Perform such other duties as may be prescribed by this Charter or be required by the mayor or ordinance or resolution of the city commission.

SOF ¶ 8 (citing City Charter § 16).

It is telling that Plaintiffs admit Noriega was acting in his role as City Manager, implementing City policy, when he took the alleged retaliatory actions involving meetings with department heads, lists of possibly noncompliant properties, and "architecting" ordinances:

> Q. So is it fair to say that when the city manager is meeting with the city attorney or is meeting with the building director and discussing policies and procedures to implement that then affect you and your -- the entities you are here to speak on behalf of, that that is the city manager, the city attorney, the building director implementing and creating a policy for the City of Miami to implement against you and your entities? Is that fair to say?
> A. Yes.
> Q. **And so they're doing that in their roles as city manager**, the city attorney, the building director, et cetera, correct?
> THE WITNESS: That's where -- **through that role is where they get the power to do that**.

4

SOF ¶ 27 (citing M. Pinilla Dep. 278:24-279:15 (emphasis added) (objection and colloquy omitted)).

To the extent Plaintiffs' claims arise from City officials' (including Noriega's) alleged implementation of *a purported City policy, practice and custom* of targeting all of Plaintiffs' properties,[6] that further supports the conclusion that Noriega was acting in his official capacity to implement City policy. *See, e.g.*, SOF ¶ 27; *see also* ECF No. 235, Ex. B (M. Pinilla Dep.) at 277:17-279:15, 306:11-307:13. Pinilla testified:

> Q. So is it your testimony, if I understand it correctly, that the City of Miami, through the city manager, the city attorney, the building department, the code department, they implemented a policy and practice to retaliate against you and the entities you're here to speak on behalf of?
> A. That is my testimony.
> Q. And so if I understand that correctly, your allegation is that Art Noriega, as the city manager, implemented a policy and a practice and a custom for the City of Miami to retaliate against you individually and the entities that you're here to speak on behalf of; is that correct?
> A. He was a big part of that leadership, yeah.
> Q. Is it fair to say that the city attorney, Vicky Mendez, as the city attorney, engaged in implementing a policy and a practice or a custom to retaliate against you and your individual -- and the entities you're here to speak on behalf of?
> A. That's correct.
> Q. Is it fair to say that that's the case for all of the Defendants in their roles as the building director or the fire department or as the -- whatever department head they were, that they were in those capacities implementing policies, practices, customs to retaliate against you and the entities you are here to speak on behalf of?
> THE WITNESS: Selective enforcement, definitely, for sure.[7]

_____

[6] Plaintiffs vaguely referred to City ordinances and polices. *See* ECF No. 235, Ex. A (Fuller Dep.) at 198:19-23 ("The City continues to act in tandem and hold these ordinances and policies over our head."). The "ordinances and policies" about which Plaintiffs complain, Nos. 11936, 14118, 13936, and 14057, apply to everyone; remain in effect; have not been declared unconstitutional; and Plaintiffs did not bring a claim to challenge them. *See* SOF ¶¶ 15 (citing Noriega Dec.), 28 (citing Pinilla Dep. 277:17-278:22, 278:24-279:9, 287:4-18). It is undisputed that these ordinances were passed by the City Commission, not Noriega. *See* SOF ¶ 15. While Plaintiffs claim Noriega "architected" Ordinance 14118 (ECF 129 (SAC) ¶ 1328), Fuller concedes he has no evidence that Noriega wrote it. *See* SOF ¶ 29 (citing Fuller Dep. 236:5-7). Instead of providing evidence of specific retaliatory acts of the individual Defendants, Plaintiffs complain of broad policies and customs *of the City* that supposedly target their businesses. For example, Plaintiffs testified that everything changed when Noriega came in and implemented *City practices and policies* to treat their businesses differently. *See* SOF ¶ 44 (citing Fuller Dep. 339:13-15, 340:16-21; Pinilla Dep. 276:18-277:9). Applying laws of general application to Plaintiffs was not treating them differently.

[7] Plaintiffs asserted and settled Fourteenth Amendment claims of selective enforcement and

*See* SOF ¶ 28 (citing Pinilla Dep. 277:17-278:22) (colloquy omitted). Such a claim based on City officials' (including Noriega) actions in their official capacity is, in actuality, a suit against the City. *See Hazleton v. City of Orlando*, No.6:10-cv-342-Orl-35-DAB, 2010 WL 11507191, at *2 (M.D. Fla. June 10, 2020) (quoting *Stephens v. Geoghegan*, 702 So. 2d 517, 527 (Fla. 2d DCA 1997)). Since the City is a Defendant in this case, the suit against Noriega, who acted only in his official capacity, is redundant and not permitted.

      In sum, each of Noriega's alleged retaliatory acts was taken in his official capacity within his powers and duties as the head of the administrative branch of City government. *See* SOF ¶¶ 5-27. As the Court previously indicated in dismissing Bayona, it need go no further. *See* ECF No. 198 at 3. However, the same result is compelled by a full-blown qualified immunity analysis.

## II.   Plaintiffs' Claims Against Noriega Fail Because He Is Entitled to Qualified Immunity

      This section supplements the arguments set forth in Noriega's Motion to Dismiss (ECF No. 140 at 19-21) and Reply (ECF No. 176 at 7-8). As the Court held in dismissing Plaintiffs' claims against Building Director Marrero, ECF No. 199, the claims against Noriega should be dismissed based on qualified immunity. The Court already found that Marrero's alleged retaliatory acts – drafting and revising City policies and ordinances and meeting with City officials to update policies to shut down properties – "are within the normal discretionary functions of a Building Director" and the acts performed "were in pursuit of building safety – a job-related goal." *Id.* at 4. So too were Noriega's alleged retaliatory acts. It is undisputed that they were within the "normal discretionary functions" of the City Manager. As expressly set forth in sections 15 and 16 of the City Charter, the City Manager's powers and duties as the head of the administrative branch of the city government include seeing that the laws and ordinances are enforced, exercising control over City departments, attending all Commission meetings, making recommendations to the Mayor and Commission for adoption of such measures as the City Manager deems necessary or expedient, keeping the Mayor and Commission advised as to the financial condition and needs of the City, and performing such other duties as may be prescribed by the Charter or required by the Mayor or ordinance or resolution of the Commission. *See* SOF ¶¶ 7, 8; *see also* ECF No. 235, Ex. F, G (City Charter §§ 15, 16). All of Noriega's alleged conduct falls within these powers and duties. *See* SOF ¶¶ 5-27.

---

disparate treatment in *Mad Room LLC et al. v. The City of Miami*, no. 1:21-cv-23485 (S.D. Fla.). *See* ECF No. 211-1 at 2. There is no such claim in this case. *See* ECF No. 129 (SAC).

**A.  Legal standard for qualified immunity**

To obtain dismissal based on qualified immunity, government officials first must establish that they were acting within the scope of their discretionary authority when the alleged wrongful acts occurred. *See, e.g.*, *Echols v. Lawton*, 913 F.3d 1313, 1319 (11th Cir. 2019). If this showing is made, the burden then "shifts to the plaintiff to overcome the official's qualified immunity." *Id.* To do so, a plaintiff must plead and prove "(1) that the official violated a statutory or constitutional right, and (2) the right was 'clearly established' at the time of the challenged conduct." *Id.* (citation omitted). As set forth below, the undisputed evidence demonstrates that, at all times, Noriega was acting within the scope of his discretionary authority. Plaintiffs have neither pled nor introduced any evidence to overcome this conclusion.

**B.  Noriega was acting within the scope of his discretionary authority**

The Court stated the following in dismissing Building Director Marrero (ECF No. 199 at 4):

> The Eleventh Circuit in *Holloman ex rel. Holloman v. Harland*, 370 F. 3d 1252, 1265 (11th Cir. 2004) held that the scope of discretionary authority inquiry is two-fold. A court must ask "whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize."
>
> The Eleventh Circuit has further elaborated that "[t]he inquiry is not whether it was within the defendant's authority to commit the allegedly illegal act." *Harbert Int'l, Inc. v. James*, 157 F. 3d 1271, 1282 (11th Cir. 1998). "Instead, a court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties. The scope of immunity should be determined by the relation of the [injury] complained of to the duties entrusted to the officer." *Id.* That is, the court must "look to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." *Holloman*, 370 F. 3d at 1266.

"[T]he inquiry is whether the act was reasonably related to the outer perimeters of an official's discretionary duties." ECF No. 199 at 5 (citing *Harbert Int'l*, 157 F. 3d at 1282). As the Court explained, "Marrero does not need to point to a specific City Charter or Code to show in fact that he was authorized to craft or apply City ordinances and policies. Determining when a property owner has failed to meet the requirements of a city ordinance or playing a part in drafting City policies are at least within the outer perimeters of Defendant Marrero's discretion as Building

7

manager." *Id.* The Court also found that "Marrero was performing job-related functions as the City Building Director, such as strengthening city policies and determining when a property owner has failed to meet the requirements of the city's building ordinances." *Id.* at 10.

Like Marrero, all of Noriega's acts were within the "normal discretionary functions" of the City Manager. As City Manager and head of the administrative branch of City government, Noriega has discretion to be involved in implementing City policy, meeting with department heads, making recommendations related to ordinances, speaking with City officials and others, making determinations or inquiring as to whether properties comply with the law, and making and reviewing lists of possibly noncompliant properties, "architecting" ordinances that have not been declared unconstitutional and remain in effect, and inquiring about a tree that was removed. *See* SOF ¶¶ 9-26 (citing Noriega Dec.). All of the SAC's allegations against Noriega challenge conduct within his job functions. *See* SOF, Ex. A at ¶¶ 7-13 (describing SAC allegations against Noriega). Moreover, all of Noriega's complained-of acts were in the pursuit of implementing City-wide policy to bring properties into compliance with the Code and to disincentivize illegal work being done without permits. *See* SOF ¶ 26 (citing Noriega Dec.). City managers facing similar suits have found that similar circumstances warrant qualified immunity. *See, e.g.*, *Murray v. City of Elizabethtown, Tenn.*, 661 F. Supp. 3d 786, 811-16 (E.D. Tenn. 2023) (granting summary judgment in favor of city manager who was protected by qualified immunity because his determination that plaintiff's conduct was a fireable offense was within his responsibility of making employment decisions regarding fire department); *McGriff v. City of Miami Beach*, 522 F. Supp. 3d 1225, 1252-53 (S.D. Fla. 2020) (holding that city manager acted within scope of discretionary authority when he ordered the removal of memorial from a city-funded event). Accordingly, the undisputed evidence supports the conclusion that Noriega was acting within the scope of his discretionary authority.

### C. Plaintiffs cannot carry their burden to overcome Noriega's qualified immunity

Noriega was acting within the scope of his discretionary authority, which shifts the burden to Plaintiffs to overcome his qualified immunity. *See* ECF No. 199 at 3. Plaintiffs must establish that (1) Noriega violated a statutory or constitutional right, and (2) the right was clearly established at the time of the challenged conduct. *Id.* Plaintiffs have not carried and cannot carry this burden.

#### 1. Noriega did not violate Plaintiffs' statutory or constitutional rights

Plaintiffs have not shown a clearly established statutory or constitutional right. When asked

during their depositions what right was affected, they repeatedly stated that it was the right to do business the way they want (*i.e.*, not in compliance with the Code). *See* SOF ¶ 34 (citing Fuller Dep. 101:18-102:12 (the Entity Plaintiffs "have not been able to conduct business freely"); Pinilla Dep. 72:8-15 (the right "to conduct business as it should be allowed to do in the United States of America.")). No such right exists. Doing business is subject to numerous lawful constraints, including obeying building and zoning ordinances, fire and safety codes, and all relevant laws of general application.

In dismissing Building Director Marrero based on qualified immunity, the Court used a three-part analysis to determine whether Noriega violated a statutory or constitutional right of Plaintiffs. *See* ECF No. 199 at 5-6. In order to state a claim for First Amendment retaliation, Plaintiffs must prove that (i) they engaged in protected speech, (ii) Noriega's conduct adversely affected the protected speech, and (iii) a causal connection exists between the speech and Noriega's retaliatory conduct. *Id.* at 6. Although the Court found that Plaintiffs' allegations were sufficient to state a claim of First Amendment retaliation against Marrero, that is not enough for Plaintiffs' § 1983 claims.[8] At bottom, there is no evidence to support Plaintiffs' claims against Noriega, and summary judgment is appropriate.

> **a. The Entity Plaintiffs have not proven they engaged in protected speech because their claims are based on their commercial association with Fuller and Pinilla, which does not constitute protected First Amendment association**

This section supplements the arguments set forth in Noriega's Motion to Dismiss (ECF No. 140 at 6-9) and Reply (ECF No. 176 at 2-3). The sole and entire basis of the Entity Plaintiffs' First Amendment retaliation claims (other than Barlington Group, Tower Hotel, and Calle Ocho as set forth herein) is their association or affiliation with Fuller and Pinilla:

> Q. To your knowledge, what political speech, if any, did Little Havana Bungalows, LLC engage in?

---

[8] Plaintiffs' actual claims are not for infringement of free speech rights, but for infringement of their alleged right "to conduct business freely," *i.e.*, free of regulation by local ordinances, codes, and laws of general application. No such "right" exists. If it did exist, it would be a substantive due process right, and a retaliatory motive would be (and is) legally insufficient where, as here, a lawful basis existed for the City's (and Noriega's) decisions and actions. *See, e.g.*, *Castle v. Appalachian Tech. Coll.*, 631 F. 3d 1194, 1199 (11th Cir. 2011) (affirming summary judgment based on qualified immunity, where, even if there was a retaliatory motive for suspending plaintiff, record also established a lawful motive).

A. Bill Fuller, principal of Little Havana Bungalows, engaged in political speech, and I was retaliated against because of it. And as a result, because of my affiliation to Little Havana Bungalows, Little Havana Bungalows suffered as a result of that political speech.

Q. To your knowledge, what political speech did Little Havana Arts Building Too, LLC engage in?

A. Because of Bill Fuller's affiliation and because of the violation of Bill Fuller's political speech, Little Havana Arts Too suffered as a result of that retaliation, violation of my political speech.

Q. To your knowledge, what political speech did Calle Ocho Marketplace, LLC engage in?

A. Because of my -- violation of my political speech, Bill Fuller, and my affiliation as principal to Calle Ocho Marketplace, Calle Ocho Marketplace suffered from retaliation of political speech.

Q. Is your answer the same for LHAB?

A. Yes.

*                               *                               *

Q. But because Piedra Villas has associated with you and Mr. Pinilla, they have been retaliated against?

A. That's correct.

Q. And so the First Amendment activity that you are alleging they have exercised is the right to freedom of association; is that fair to say?

A. Yes.

Q. Is that fair to say as to all the entities you're speaking on behalf of?

A. All of them -- all of them are -- all of them have been impacted by the retaliation from the very first speech and every ongoing speech. All of them have been impacted.

Q. Because of their association, correct?

A. Because of my involvement in those organizations.

*See* SOF ¶ 31 (citing Fuller Dep. 78:5-79:2, 337:3-19).[9] Fuller concedes that only these three entities, and none of the others, engaged in any speech. *See* SOF ¶ 31 (citing Fuller Dep. 73:14-

---

[9] The only "evidence" reflecting that any of the entities allegedly may have engaged in their *own* speech is Barlington Group's filing of an ethics complaint against Carollo in 2018; Tower Hotel purportedly posting Leon signs in 2017; and Calle Ocho filing a complaint against the City in 2018. *See* SOF ¶ 31. However, as demonstrated below, those entities have no viable claims against Noriega because there is no temporal proximity between their purported speech and Noriega's alleged retaliatory conduct. Further, Noriega adopts the statutes of limitations arguments of other Defendants. Indeed, three Entity Plaintiffs, Havana Bungalows, El Shopping, and Calle Siete did not even exist when some or all of the alleged protected activity occurred. *See* SOF ¶ 32 (citing ECF No. 140-1). Moreover, the only alleged protected activity of Fuller and Pinilla, individually, is the filing the 2018 lawsuit against Carollo and holding the 2019 press conference. A non-party, 1393 LLC owned the properties on which the 2017 rallies were held, and Barlington Group filed the 2018 ethics complaint. *See* ECF No. 140-4 (*Fuller I*, ECF No. 559, Tr. 5/8/23 (Pinilla) 192:13-

74:13 (conceding Piedra did not engage in speech; perhaps El Shopping made campaign contributions but he did not recall any); 275:13-18 ("because of our affiliation to those companies, they were impacted")).

Plaintiffs also concede that when they allegedly engaged in protected speech, they did not do so "on behalf of" the Entity Plaintiffs. *See* SOF ¶ 33 (citing Fuller Dep. 81:2-12). Instead, Fuller and Pinilla seek to attribute their speech to their entities simply because they "***are*** those entities." *See* SOF ¶ 33 (citing Fuller Dep. 336:21-22). This alter-ego association is insufficient to establish protected speech by the Entity Plaintiffs.

There are only two types of protected association under the First Amendment: intimate association ("personal relationships that attend the creation and sustenance of a family"), and expressive association ("the purpose of the association is to engage in activities independently protected by the First Amendment."). *McCabe v. Sharrett*, 12 F.3d 1558, 1562-63 (11th Cir. 1994) (citing *Roberts v. United States Jaycees*, 468 U.S. 609, 617-18 (1984)). In this case, there is no evidence to establish either intimate or expressive association.

Instead, it is undisputed that the relationships between the Entity Plaintiffs and Fuller and Pinilla are commercial and do not constitute protected association under the First Amendment. "Activities and services that are primarily **commercial** rather than communicative do not qualify as expressive association that is protected under the First Amendment." *Edmondson v. Velvet Lifestyles, LLC*, No.15-24442-CIV, 2016 WL 7048363, *10 (S.D. Fla. Dec. 5, 2016) (emphasis in original). As the Eleventh Circuit has explained, "the more commercial the associational interest involved the less likely first amendment protection attaches." *Rivers v. Campbell*, 791 F.2d 837, 840 (11th Cir. 1986) ("Rivers's seeks to associate with the Bay County area school children for commercial gain only. In our view, such 'association' is not entitled to first amendment protection.").

The Supreme Court held that there is only minimal constitutional protection for commercial association. *See Roberts*, 468 U.S. at 634 (O'Connor, J., concurring). In determining if an association is commercial, courts look to its "purpose" and whether the activities are "predominantly" commercial or expressive. *Id.* at 635-37. Here, the sole purpose of the entities' association with their members is commercial (operating a commercial business or property), and

15; ECF No. 560, Tr. 5/9/23 (Pinilla) 68:4-70:12); *Fuller I*, ECF No. 1.

the predominant purpose of these commercial associations is to make money. When asked during their depositions what right was affected, Fuller and Pinilla repeatedly stated that it was the right to do business the way they want. *See* SOF ¶ 34 (citing Fuller Dep. 101:18-102:12 (The Entity Plaintiffs "have not been able to conduct business freely"); Pinilla Dep. 72:8-15 (the right "to conduct business as it should be allowed to do in the United States of America.")). The Court need look no further than each Plaintiff's alleged damages, which are loss of revenue, lost reinvestment opportunity, and lost rent and sale value. *See* SOF ¶ 34 (citing Pinilla Dep. 188:12-19); *see also* ECF No. 129 (SAC) ¶¶ 246, 442, 604, 836, 1106, 1331, 1634, 1919, 2103, 2407, 2604, 2818, 2878.

The Entity Plaintiffs cannot establish that they engaged in protected speech, as their speech arises exclusively from their association with Fuller and Pinilla, which is entirely commercial in nature and therefore not protected. Accordingly, Noriega is entitled to qualified immunity.[10]

> **b.  There is no causal connection between Plaintiffs' alleged speech and Noriega's alleged retaliatory conduct**

> **i.   There is no evidence that Noriega was subjectively motivated to take adverse action because of the protected speech**

This section supplements the arguments set forth in Noriega's Motion to Dismiss (ECF No. 140 at 15-17) and Reply (ECF No. 176 at 5-7). "In order to establish a causal connection, the plaintiff must show that the defendant was subjectively motivated to take the adverse action *because of the protected speech*." *Castle*, 631 F. 3d at 1197 (emphasis added); *Jones v. Robinson*, 665 Fed. Appx. 776, 778 (11th Cir. 2016) (citations omitted) (establishing the "causal connection between the retaliatory actions and the adverse effect on speech . . . requires a showing that the defendant's subjective motivation for the adverse action was the plaintiff's protected speech"); *Mech v. Sch. Bd. of Palm Beach Cnty.*, No. 13-80437-CIV, 2014 WL 11444112, at *4 (S.D. Fla. Oct. 27, 2014) (granting summary judgment where the evidence showed that "Defendant did not remove Plaintiff's banners because of the expression contained therein" but rather for "a reason unrelated to Plaintiff's speech" and "[t]here is no genuine dispute that Defendant's actions were not motivated by Plaintiff's commercial speech"). In this case, there is no evidence whatsoever that Noriega "was subjectively motivated to take the adverse action *because of the protected*

---

[10] As set forth in Noriega's Motion to Dismiss (ECF No. 140 at 14-15) and Reply (ECF No. 176 at 5), Plaintiffs fail to allege or show they were deterred or chilled, and thus fail to satisfy the second prong of a retaliation claim – that the defendant's retaliatory conduct adversely affected the protected speech.

*speech*." *Castle*, 631 F. 3d at 1197.

Plaintiffs failed to establish that Noriega had a "retaliatory motive" for purposes of their First Amendment retaliation claim. And even if one existed, there is no evidence that it was the "but-for" cause of any challenged conduct because laws of general application are enforceable against everyone. In *Nieves v. Bartlett*, 587 U.S. 391 (2019), the Supreme Court held:

> To prevail on such a claim, a plaintiff must establish a "causal connection" between the government defendant's "retaliatory animus" and the plaintiff's "subsequent injury." It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must cause the injury. Specifically, it must be a "but-for" cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive.

*Id.* at 398-99; *see also Castle*, 631 F. 3d at 1199 (affirming summary judgment based on qualified immunity where evidence showed that individual defendants "did in fact also possess a lawful motive for suspending Castle, and that they reasonably believed that they would have suspended Castle in the absence of her protected speech because of her other conduct"). In this case, there is abundant, undisputed evidence, including Plaintiffs' admitted, ongoing Code violations,[11] that the alleged retaliatory actions would have occurred despite any alleged protected activity.

To qualify as a retaliatory motive for purposes of a First Amendment retaliation claim under § 1983, a defendant's motive must be to retaliate *because of plaintiff's protected activity*, not for any other motive, including personal animus. Fuller testified he does not like Noriega and the other Defendants, SOF ¶ 36 (citing Fuller Dep. 331:25-332:16), but Noriega had and has no personal animus against Plaintiffs. *See* SOF ¶ 35 (citing Noriega Dec.). In fact, before 2020, Noriega had a good relationship with Fuller, and Noriega introduced him to Carollo in 2017. *See* SOF ¶ 38 (citing Fuller Dep. 341:20-25). As City Manager, it was Noriega's job to implement City policy to bring properties into Code compliance and to disincentivize illegal work being done without permits, and doing his job was the motivation for his actions. SOF ¶ 39 (citing Noriega Dec.).

Further, Plaintiffs claim that Defendants' retaliatory acts were motivated by a desire to keep their jobs, not to retaliate for any alleged protected activity. Plaintiffs testified that the individual Defendants, including Noriega, took retaliatory acts due to a desire to keep their jobs by doing "Joe [Carollo]'s bidding," *not because of alleged protected activity of any Plaintiffs*.

---

[11] *See* SOF ¶ 41 (citing Pinilla Dep. 209:11; Fuller Dep. 47:24-48:5, 330:4-331:10).

Q. I am looking for the specific reason why they -- you claim that they took these retaliatory acts. What is the specific reason, sir?

A. Look, the reason that everyone did it, okay, is because Joe Carollo requested for them to do it.

Q. Any other reason?

A. And they -- yes, because there was a benefit. There was a financial benefit to them doing it. Because those that did Joe's bidding were promoted, and those that did not do Joe's bidding were either demoted or fired. And --

Q. Any --

A. -- there are over a dozen examples --

Q. Okay.

A. -- dozen examples of both sides of that, those that were promoted, many of them that are the Defendants in this room were rewarded for their efforts against us, and those that stood strong and said that they didn't have been demoted, and we have lots of evidence related to those matters.

Q. Any other reason why any of the individual Defendants or the City took the retaliatory actions other than what you just said?

A. Not that I can recall right now.

*See* SOF ¶ 30 (citing Fuller Dep. 349:15-350:15). Plaintiffs' claim that Carollo is the "master mind" and his "master project, is to have our properties demolished." *See* SOF ¶ 42 (citing Fuller Dep. 284:18-285:9). But that "evidence" is legally insufficient because, when asked for the basis of this claim, Plaintiffs rely on rank hearsay:

A. I know that. Most of the people in city hall know that. **That's common knowledge. That's what everybody knows.** That's why we're here, because he put this into motion.

SOF ¶ 42 (citing Fuller Dep. 284:18-285:9) (emphasis added). Plaintiffs' testimony as to "what everybody knows" and claiming that a fact is "common knowledge" is inadmissible hearsay and insufficient to defeat summary judgment.[12]

---

[12] *See, e.g.*, *Evans v. McClain of Ga., Inc.*, 131 F. 3d 957, 962 (11th Cir. 1997) ("The district court correctly dismissed this evidence as 'not significantly probative' because it was based on gossip, common knowledge, and the hearsay statement of an unidentified representative."); *Alexander v. United States*, No. 21-13720, 2022 WL 17688692, *5 (11th Cir. Dec. 15, 2022) (affirming exclusion of "common knowledge" evidence, stating, "we don't try cases on rumors"); *Ashmore v. F.A.A.*, No. 11-60272-CIV, 2011 WL 5433924, *10 n.4 (S.D. Fla. Nov. 8, 2011) (disregarding plaintiff's testimony that a fact was "common knowledge" as "inadmissible hearsay" and granting summary judgment against him). Inadmissible hearsay cannot be considered on summary judgment. *Macuba v. Deboer*, 193 F. 3d 1316, 1322 (11th Cir. 1999); *see* Status Conf. Tr. 40:6-21, Feb. 2, 2024 (admonishing that the Court, "can't deal with what everybody knew" in response to Plaintiffs' counsel's statement that "everybody knew from years ago that this was just outright retaliation") (excerpt attached as Ex. A).

14

There is no genuine dispute that Noriega's actions were motivated by his desire to do his job to implement City policy, and were not motivated by a desire to retaliate based on alleged protected activity of Plaintiffs.[13] Accordingly, summary judgment should be granted. *See, e.g.*, *Nieves*, 587 U.S. at 408.

ii. **There is no evidence supporting temporal proximity between Plaintiffs' protected activity that occurred years earlier and Noriega's alleged retaliatory acts**

This section supplements the arguments in Noriega's Motion to Dismiss (ECF No. 140 at 16-17) and Reply (ECF No. 176 at 6). The causal connection between Plaintiffs' protected activity and Noriega's alleged retaliatory acts is too attenuated because there is no temporal proximity between them. The Court should "consider the temporal proximity between a plaintiff's exercise of free speech and the adverse effect in gauging the causal connection." *Innova In. Grp., LLC v. Vill. of Key Biscayne*, No. 1:19-CV-22540, 2021 WL 1723678, *5 (S.D. Fla. Apr. 30, 2021) (citation omitted).

All of Plaintiffs' alleged protected activity occurred between November 2017 and May 2019, before Noriega became City Manager in February 2020. On multiple occasions, Plaintiffs were asked to list their protected speech, and they testified as follows:

---

[13] Even if there were any evidence that Noriega was motivated by a desire to retaliate based on Plaintiffs' purported speech (there is none), his and the City's lawful motivation (to deter offenders who admittedly violated the City Code) would trump any purported lawful motivation, as a lawful cause in fact of the challenged conduct, which would have occurred anyway. *See, e.g.*, *Nieves*, 587 U.S. at 408; *Mt. Healthy City Bd. of Ed. v. Doyle*, 429 U.S. 274, 286-87 (1977) (holding that teacher's dismissal by school board would not be unconstitutional if the board would have made the decision regardless of protected conduct); *Castle*, 631 F.3d at 1189, 1199; *Rodemaker v. Shumphard*, 859 Fed. Appx. 450, 453 (11th Cir. 2021) (holding that plaintiff failed to state a racial discrimination claim under § 1983 because plaintiff did not allege facts demonstrating that but-for plaintiff's race, the defendants would have renewed plaintiff's employment contract); *Carter v. City of Melbourne, Fla.*, 731 F. 3d 1161, 1170 (11th Cir. 2013) (holding that police department officials were entitled to summary judgment against police officer's First Amendment claims based on dismissal because the evidence presented demonstrated the reason for the dismissal was the police officer's misconduct rather than the police officer's speech); *Harden v. Adams*, 841 F. 2d 1091, 1092-93 (11th Cir. 1988) (holding professor's dismissal did not violate professor's freedom of speech where the evidence in support of dismissal demonstrated that the professor "had been remiss in his duties . . . had not kept regular office hours, and had repeatedly violated minor rules and regulations").

| Date | *Alleged* protected activity | Citations |
|------|------------------------------|-----------|
| 11/2017 | Fuller and Pinilla supported Leon, Carollo's political opponent, including rallies hosted by Jenny Lee Molina which were held on property owned by 1393 LLC; Tower Hotel posted Leon signs | SOF ¶ 43 (citing Pinilla Dep. 271:9-12, 276:15-21; Fuller Dep. 345:3-5); DE 140-4 (*Fuller I*, DE 559, Tr. 5/8/23 (Pinilla) 221:11-20, 223:10-14) |
| 3/12/2018 | Barlington Group filed an ethics complaint against Carollo and others not Noriega | SOF ¶ 43 (citing Pinilla Dep. 271:19-22; Fuller Dep. 345:6-8) |
| 9/9/2018 | Calle Ocho filed a complaint for injunction against the City and others not Noriega | SOF ¶ 31 (citing Fuller Dep. 345:16-20) |
| 10/11/2018 | Fuller and Pinilla filed a complaint in *Fuller I* against Carollo and others not Noriega | SOF ¶ 43 (citing Pinilla Dep. 271:16-18) |
| 2/14/2019 | Fuller made statements at a Commission meeting against Carollo and the City not Noriega | SOF ¶ 43; ECF No. 235, Ex. A (Fuller Dep.) at 345:12-15 |
| 5/2019 | Fuller and Pinilla held a press conference against Carollo not Noriega | SOF ¶ 43 (citing Pinilla Dep. 269:17-20, 271:13-15); ECF No. 140-4 (*Fuller I*, ECF No. 560, Tr. 5/9/23 (Pinilla) 68:4-69:11) |

The alleged retaliatory acts of Noriega – meeting with department heads, compiling lists of possibly noncompliant properties, inquiring about a tree removal, and "architecting" ordinances – did not commence until after February 2020 when he became City Manager. *See* ECF No. 129 (SAC) ¶ 87; SOF ¶ 44 (citing Fuller Dep. 338:15-24, 339:16-24). Plaintiffs do not blame Noriega for alleged retaliation before that date, nor could they. *See* SOF ¶ 44 (citing Fuller Dep. 339:16-24; Pinilla Dep. 276:18-277:9). Plaintiffs contend that their instances of "speech" between 2017 and 2019 caused Noriega to retaliate against them beginning in 2020, even though he was not a City official when they allegedly "spoke." That causal connection is too remote. *See Metz v. Sasser*, 664 Fed. Appx. 895, 897 (11th Cir. 2016) (holding that plaintiff's mother's accusations six months prior to termination were "too remote" to show temporal proximity).

Plaintiffs are not entitled to perpetual immunity from Code enforcement based on their alleged support of a candidate in 2017, seven years and two elections ago. *See Sanimax USA, LLC v. City of S. St. Paul*, 95 F.4th 551, 559 (8th Cir. 2024) ("Extrapolating Sanimax's argument underscores its untenability: A plaintiff affected by a local regulation could unilaterally hamstring municipal lawmakers in perpetuity by merely challenging the regulation's effect, as any attempt

by the municipality to thereafter amend the law would necessarily be in response to — and thus in "retaliation" for — the initial challenge brought by the plaintiff. Sanimax has cited no case adopting such a broad conception of but-for causation in the retaliation context, and we will not be the first to so hold."). The Court recognized as much in *Fuller I*, more than six years ago, when it told Fuller and Pinilla's counsel:

> Now, let me ask you this: If you were to win this, does that mean that every business gets a pass on code violations? All you have to do is -- think about the irony of it. All you've got to do is raise money and hold a campaign rally for an opponent to a commissioner and then every time they come in for noise or parking or the valet -- I mean, there are all sorts of code violations that routinely occur. ... Think about what you're asking to do. You're asking basically don't give us tickets for what we do that is wrong. ... Maybe the solution is don't do anything wrong ... Don't do anything wrong and we won't get tickets.

*Fuller I* Status Conf. Tr. 7:12-8:11, Oct. 17, 2018 (excerpt attached as Ex. B).

Thus, Noriega is entitled to qualified immunity because the undisputed evidence demonstrates no temporal proximity between the alleged protected activity and Noriega's alleged retaliatory acts.

> **2. Plaintiffs cannot defeat Noriega's qualified immunity because they cannot carry their burden to show that his alleged conduct violated clearly established law**

The Court has recognized that, even if it were to hold that Plaintiffs have a valid First Amendment retaliation claim, Noriega should be dismissed if that right was not clearly established when he allegedly violated it. *See* ECF No. 199 at 8. Plaintiffs have not satisfied this requirement.

An official's conduct violates clearly established law when the contours of the right are sufficiently clear that any reasonable official would have understood that what he or she is doing violates that right. Courts consider the official's conduct in the specific context of the case, not as broad general propositions. *See* ECF No. 199 at 8 (citing *Echols*, 913 F.3d at 1323-24; *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). A plaintiff may show that right was clearly established in one of three ways, none of which apply here. *See* ECF No. 199 at 9 (citing *Echols*, 913 F.3d at 1324; *Loftus v. Clark-Moore*, 690 F. 3d 1200, 1204 (11th Cir. 2012)). "First, he can point us to a 'materially similar case [that] has already been decided.' Second, he can point us to 'a broader, clearly established principle that should control the novel facts of the situation.' Third, 'the conduct involved in the case may so obviously violate the [C]onstitution that prior case law is unnecessary.'" *Echols*, 913 F. 3d at 1324 (quoting *Loftus*, 690 F. 3d at 1204-05).

### a. Plaintiffs fail to establish there is a materially similar case already decided that would give Noriega fair notice that he could be liable under clearly established law

First, to determine if there is a materially similar, already decided case that makes the right's contours sufficiently clear that any reasonable official would understand when he or she is violating it, courts consider the official's conduct in the specific context of the case, not as broad general propositions. *See* ECF No. 199 at 8-9 (citing *Echols*, 913 F. 3d at 1324-25 (citing *Bailey v. Wheeler*, 843 F.3d 473, 484 (11th Cir. 2016)); *al-Kidd* 563 U.S. at 742. As the court explained in *Loftus*, "[t]o assess whether previous cases clearly establish the law under the materially similar inquiry, we ask whether the factual scenario that the official faced is fairly distinguishable from the circumstances facing a government official in a previous case.'" 690 F.3d at 1204 (citation omitted).

In *Echols*, the Eleventh Circuit concluded that the defendant official did not violate a First Amendment right that was clearly established where the plaintiff cited "no controlling precedent that would have provided Lawton fair notice that his conduct would violate the First Amendment." 913 F.3d at 1324. Here, Noriega did not have "fair notice" that he could be liable under clearly established law for violating rights of Plaintiffs who did not speak, whose associations are commercial, who did not exist at the time of the alleged speech, and whose purportedly protected speech occurred years before he took office. *See id.* at 1325. Although a case on all fours is not required, existing precedent at the time of the challenged conduct must place the constitutional question "beyond debate." *Id.* at 1324 (citing *al-Kidd*, 563 U.S. at 741). Here, there is no case directly on point, and existing precedent does not place the constitutional question beyond debate.

There was no materially similar case already decided that would have given Noriega "fair notice" that he could be liable under clearly established law for his role as City Manager in implementing City policy, meetings with department heads, speaking with City officials, compiling lists of possibly noncompliant properties, "architecting" ordinances that have not been declared unconstitutional and remain in effect, and inquiring about a tree that had been removed, or measuring the distance between a religious establishment and property owned by a (dismissed) Plaintiff. *See Echols*, 913 F.3d at 1325 (citations omitted) (recognizing fair notice protects an official from liability for conduct he reasonably could have believed was lawful). As demonstrated above, all of Noriega's challenged acts were done in his official capacity, within the scope of his official, discretionary duties.

18

Further, Noriega cannot be said to have had fair notice that he could be liable under clearly established law where his alleged retaliatory acts were to implement City policy to enforce and obtain compliance with laws of general application, *i.e.*, the Code against habitual offenders. Plaintiffs admit that, from 2017 until now, they violated the Code, engaged in construction work without permits, and performed work beyond the scope of permits. *See* SOF ¶ 41 (citing Pinilla Dep. 209:11; Fuller Dep. 47:24-48:5, 330:4-331:10). Plaintiffs admit they have a duty to act honorably and ethically as business owners and that by failing to pull permits and having Code violations, they are failing to act honorably and ethically:

> Q. And you also talked about how the individual Defendants have this duty to be honorable and ethical, right?
> A. Yes.
> Q. Do you have that same duty as a business owner?
> A. Yes.
> Q. And is it fair to say that, when you don't pull permits or when you have violations, you're not acting honorable and ethical?
> A. You can say that.

*See* SOF ¶ 41 (citing Fuller Dep. 330:4-331:10). Plaintiffs concede the Code's importance to public safety. *See* SOF ¶ 40 (citing Pinilla Dep. 203:11-22). They admit that City has a right to take, and should take, enforcement action each and every time there is a Code violation, and that such actions of the City are not retaliatory. *See* SOF ¶ 40 (citing Fuller Dep. 255:12-19). As City Manager, Noriega implemented City policy to bring properties into compliance with the Code and to disincentivize illegal work being done without permits. *See* SOF ¶ 39 (citing Noriega Dec.).

In dismissing the claims against Marrero, the Court stated, "Marrero was performing job-related functions as the City Building Director, such as strengthening city policies and determining when a property owner has failed to meet the requirements of the city's building ordinances." ECF No. 199 at 10. The same is true of Noriega, who also was performing job-related functions as the City Manager, such as implementing and strengthening city policies, requesting City officials to investigate whether properties were in compliance with the Code, and taking action to obtain compliance by habitual offenders. In fact, the Building Director's text message on which Plaintiffs rely states that the City Manager "wants us to revise and update our policies to be more stringent when it comes to work without permit, clearly define what are unsafe conditions, and shut down all structures that don't comply." *See* ECF No. 154-1 at 3. This text indisputably describes tasks that are within Noriega's role as City Manager. As City Manager, pursuant to the powers and duties

19

granted to him in section 16 of the City Charter, Noriega is required to see that the City's laws and ordinances are enforced, to exercise control over City departments and divisions, to attend all City Commission meetings with a right to take part in discussions but not vote, to make recommendations to the Mayor and the City Commission for adoption of such measures as he may deem necessary or expedient, to keep the Mayor and the City Commission fully advised as to the financial condition and needs of the City, and to perform such other duties as may be prescribed by the City Charter or required by the Mayor or ordinance or resolution of the City Commission. *See* SOF ¶ 8 (City Charter §16).

In dismissing Building Director Marrero based on qualified immunity, the Court distinguished Eleventh Circuit decisions, *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005) and *Bailey v. Wheeler*, 843 F.3d 473, 484 (11th Cir. 2016), as follows:

> What is different in the case here and the pair of Eleventh Circuit cases *Bennett* and *Bailey* is that there are layers to the First Amendment speech and direct action by the parties. In both of the Eleventh Circuit cases, there is direct speech by the plaintiff, and that speech is followed by direct intimidation from sheriffs. Here, it is not clear whether there is political speech by all of the Plaintiffs. While that may not matter as much for Plaintiffs in alleging a valid claim of retaliation, it matters more for proving that Defendant Marrero violated a clearly established right. Also, it is alleged that Carollo was the "motivating force in instigating the unconstitutional retaliation," not Defendant Marrero. Further, Defendant Marrero did not physically intimidate or harass Plaintiffs. Marrero was performing job-related functions as the City Building Director, such as strengthening city policies and determining when a property owner has failed to meet the requirements of the city's building ordinances. The Court finds Plaintiffs' precedent either not controlling or inapposite to this case.

ECF No. 199 at 10. The same conclusions apply to Noriega. Plaintiffs' depositions (like their SAC) fail to allege direct speech by all Plaintiffs. Moreover, there is no evidence of any direct intimidation by Noriega of any Plaintiff following any Plaintiff's alleged speech. As they did with Marrero, Plaintiffs also allege that Carollo, not Noriega, "was the motivating force in instigating the unconstitutional retaliation." *See* ECF No. 129 (SAC) ¶¶ 590, 792, 1090, 1290, 1601, 2090, 2374. Noriega "did not physically intimidate or harass Plaintiffs." ECF No. 199 at 10. Noriega was performing job-related functions as the City Manager pursuant to the powers and duties given to him in Section 16 of the City Charter. *See* SOF ¶¶ 6-26. Accordingly, Plaintiffs have failed to demonstrate a materially similar case already decided that would have given Noriega fair notice that he could be liable under clearly established law, and the City Manager is also entitled to

qualified immunity.

> **b. Plaintiffs fail to show that case law established the principle with obvious clarity, so that every objectively reasonable government official facing the circumstances would know that the official's conduct violated federal law**

Second, in order to rely on a broader, clearly established principle that should control the novel facts of this situation, Plaintiffs must show that case law established the principle with obvious clarity so that every objectively reasonable government official facing the circumstances would know that his or her conduct did violate federal law when the official acted. *See Loftus*, 690 F. 3d at 1205 (citing *Terrell v. Smith*, 668 F. 3d 1244, 1255-1256 (11th Cir. 2012)). In other words, "in the light of pre-existing law the unlawfulness must be apparent." *Loftus*, 690 F. 3d at 1205 (citation omitted). In dismissing Building Director Marrero, the Court distinguished prior case law:

> Again, the Court is faced with the issue that there is a layer of control that is present in *Bailey* and *Bennett* that is not present here. In both cases sheriffs are directly retaliating against the plaintiffs. Further, the Eleventh Circuit found it especially repugnant that law-enforcement officers are sworn to protect and defend the lives of others. *See Bailey*, 843 F. 3d at 485. "It is completely antithetical to those sworn duties for a law-enforcement officer to use his position to harness the power of an entire county's law-enforcement force to teach a lesson to—and potentially very seriously endanger—someone who had the temerity to speak up about alleged abuses." *Id.* Here, it is alleged that Defendant Marrero, met with the City Attorneys' office and told them that "[t]he Manager wants us to revise and update our policies to be more stringent when it comes to work without permit, clearly define what are unsafe conditions, and shut down all structures that don't comply." It is not clear to the Court that every objectively reasonable government official facing the circumstances would know that the official's conduct violated federal law when the official acted. Nor is it clear that the state of the law provided fair warning to every reasonable official that the conduct clearly violates the Constitution. It is squarely within the Building Director's job function to enforce codes and regulate buildings and structures within the City. *See Loftus*, 690 F. 3d at 1205. Further, as Defendant Marrero points out, it is not alleged that he harbored any personal animus against Plaintiffs, nor do they allege that he even knew that Plaintiffs were purporting to exercise their constitutionally protected speech rights. As the Supreme Court in *Reichle v. Howards*, 566 U.S. 658, 665, 132 S. Ct. 2088, 182 L. Ed. 2d 985 (2012) held, the general right to be free from retaliation for one's speech does not clearly establish a violation of the First Amendment.

ECF No. 199 at 10-11. Similarly, Noriega did not directly retaliate against Plaintiffs,[14] and there

---

[14] Many of Noriega's alleged retaliatory acts actually were the acts of his subordinates, in an improper attempt by Plaintiffs to establish respondeat superior liability, which does not exist under § 1983. *See* ECF No. 129 (SAC) ¶¶ 596, 798, 1303, 1306, 1606, 1617, 1624, 1629 (City employees

is no evidence he harbored any personal animus against Plaintiffs. As set forth above, the undisputed evidence is to the contrary. Plaintiffs also fail to allege that Noriega knew of specific First Amendment protected activity of any specific Plaintiff, nor have they established such knowledge with evidence. Accordingly, Plaintiffs cannot satisfy this requirement either.

   **c.  Plaintiffs fail to show that Noriega's conduct did not so obviously violate the Constitution that prior case law is unnecessary**

Third, Noriega's conduct did not so obviously violate the words of the relevant Constitutional provision that prior case law is unnecessary. *Loftus*, 690 F. 3d at 1205. "This 'narrow' category encompasses those situations where 'the official's conduct lies so obviously at the very core of what the [relevant constitutional provision] prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of case law.'" *Id.* (quoting *Terrell*, 668 F.3d at 1257). Noriega's challenged conduct does not satisfy this standard. *See* U.S. CONST. amend. I ("Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.").[15]

Here, the alleged "unlawfulness of the conduct" of Noriega – *i.e.*, implementing City policy, having meetings with department heads, speaking with City officials, being involved with lists of possibly noncompliant properties, "architecting" ordinances that have not been declared unconstitutional and remain in effect, inquiring about a tree that had been removed, and measuring

---

issued notices and stop work orders, revoked CUs, and made accusations of work without a permit as to Brickell Station, Piedra, Beatstik, El Shopping). "It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Christmas v. Harris Cnty. Ga.*, 51 F. 4th 1348, 1355 (11th Cir. 2022) (citation omitted).

[15] The *Terrell* court explained that this "narrow exception" only can apply if "the words of the pertinent federal statute or federal constitutional provision in some cases will be specific enough to establish clearly the law applicable to particular conduct and circumstances and to overcome qualified immunity, even in the total absence of case law." *Id.*, 668 F.3d at 1257 (quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1350 (11th Cir. 2002)). The court cited prior Fourth Amendment cases as examples: "a police officer who allegedly allowed his canine to attack for two minutes a prone and wholly compliant suspect who had stolen twenty dollars worth of snacks; a police officer who allegedly slammed a suspect's head against the trunk of his cruiser after the suspect had been arrested and fully secured; and a group of police officers who allegedly threw a secured suspect headfirst into the pavement before kicking him repeatedly." *Id.* at 1257-58 (citations omitted).

the distances between properties – would not have been "readily apparent" to Noriega because, like Marrero, his conduct was not "unlawful" but within his official, discretionary role and duties as "head of the administrative branch of the city government." *See* SOF ¶¶ 5-26.

As the Court concluded in dismissing Plaintiffs' claims against Building Director Marrero, Noriega's alleged conduct was not "so bad that case law is not needed to establish that the conduct cannot be lawful." ECF No. 199 at 11-12 (quoting *Vinyard*, 311 F.3d at 1350). Accordingly, and consistent with the Court's dismissal of Marrero based on qualified immunity, the case against Noriega should be dismissed.

## CONCLUSION

For all the good and sufficient reasons set forth above, Defendant Arthur Noriega respectfully requests that the Court grant his Motion to Dismiss Plaintiffs' SAC (ECF No. 140), and his Alternative Motion for Summary Judgment, with prejudice, award him attorneys' fees pursuant to 42 U.S.C. § 1988(b), and grant such further relief as the Court deems just, equitable, and proper.[16]

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(b)(2), Noriega respectfully requests a two-hour hearing on the motions to dismiss and alternative motions for summary judgment. Noriega's motion raises complex issues, and oral argument would be useful in illuminating and addressing those issues.

---

[16] Noriega adopts and incorporates the positions asserted in his Motion to Dismiss and Reply (ECF No. 140 and ECF No. 176) and adopts and incorporates all arguments and positions raised by other Defendants, if applicable, as additional grounds for dismissal and summary judgment.

23

Dated: January 17, 2025

Respectfully submitted,

KRINZMAN HUSS LUBETSKY
FELDMAN & HOTTE
Counsel for Defendant,
*Arthur Noriega, City Manager*
Alfred I. duPont Building
169 E. Flagler Street, Suite 500
Miami, Florida 33131
Telephone: (305) 854-9700
Primary email: map@khllaw.com
Primary email: lg@khllaw.com
Primary email: mschneider@khllaw.com
Secondary: eservicemia@khllaw.com

By:   */s/ Mason A. Pertnoy*
      Mason A. Pertnoy, Esq.
      Florida Bar No. 18334

and

RIVERO MESTRE, LLP
Counsel for Defendant,
*Arthur Noriega, City Manager*
2525 Ponce de Leon Blvd.
Miami, FL 33134-6037
Telephone: (305) 445-2500
Primary email: ccl@riveromestre.com
Secondary: receptionist@riveromestre.com

By:  */s/ Christina Ceballos-Levy*
      Christina Ceballos-Levy, Esq.
      Florida Bar No. 411965

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 17,  2025, a true and correct copy of the foregoing was served on all counsel of record via the CM-ECF.

By:  */s/ Christina Ceballos-Levy*
      Christina Ceballos-Levy, Esq.