**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE No. 23-CV-24251-FAM**

WILLIAM O. FULLER, *et al.*,

      Plaintiffs,

v.

CITY OF MIAMI, *et al.,*

      Defendants.

_____/


**DEFENDANT VICTORIA MENDEZ'S**
**SUPPLEMENT TO MOTION TO DISMISS**
**AND MOTION FOR SUMMARY JUDGMENT**

Luis E. Suarez
Patricia Melville
Daniel Tropin
**HEISE SUAREZ MELVILLE, P.A.**
2990 Ponce De Leon Boulevard
Suite 300
Coral Gables, Florida 33134
Telephone (305) 800-4476


*Attorneys for Defendant,*
*City Attorney Victoria Mendez*

Pursuant to ECF No. 218, Defendant Victoria Mendez ("**Mendez**") supplements her "**Motion to Dismiss**" [ECF No. 145] and moves for summary judgment for the following reasons:

## INTRODUCTION

Mendez was previously the long-time City Attorney for the City of Miami. Unfortunately, Mendez's fulfillment of her job responsibilities in this high-profile role placed her in Plaintiffs' aim. Targeting Mendez for doing her job is wrong: Mendez is afforded qualified immunity protections by virtue of acting in her capacity as a public official, and absolute immunity because of her specific role as City Attorney. As laid out in the Appendix, each Count fails to allege an intelligible act (to the extent that an act is indeed alleged) that is not barred by either absolute immunity or qualified immunity.

Plaintiffs have already had their day in court on these very issues, at least *twice*. They are not entitled to a second (or third) bite at the apple under the r*es judicata* doctrine. Moreover, the claims, to the extent not barred by either immunity or *res judicata*, remain defective for the reasons set forth in Mendez's Motion to Dismiss, which has yet to be decided by the Court. Thus, this brief, as per ECF No. 218, supplements and expounds upon the arguments incorporated in the Motion to Dismiss.[1] Finally, because Plaintiffs declined to depose Mendez or her co-defendants, and they continue to rely solely on bare allegations devoid of the requisite "affirmative evidence" required to defeat summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

## LEGAL STANDARD

Summary judgment is appropriate where there "is no genuine issue as to any material fact" and the moving party is "entitled to a judgment as a matter of law." Fed. R. Civ. 56(a). Rule 56 requires a court to enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will

---

[1]Additionally, in the interest of judicial efficiency, and to avoid repetition, Mendez adopts and incorporates by reference those arguments that are not unique to her and have been made by certain other Defendants, including, but not necessarily limited to, the following:
- •Plaintiffs' claims are barred by the statute of limitations (*see, e.g.*, Joe Carollo's Supplement to his Motion to Dismiss (ECF No. 241 at 18-19));
- •Plaintiffs fail to state a claim for First Amendment retaliation because Plaintiffs failed to allege that they individually engaged in protected speech (*see e.g.* ECF No. 241 at 19-20, Arthur Noriega's Supplement to his Motion to Dismiss (ECF No. 238 at 9-17)); and
- •Plaintiffs fail to state a claim for First Amendment retaliation based on freedom of association (*see, e.g.,* ECF No. 238 at 9-17).

bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1984) "We must also keep in mind the fact that we generally accord official conduct a presumption of legitimacy." *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003) (alterations and citation omitted). Moreover, "a plaintiff must plead that each Government-official defendant, through the official's **own individual actions**, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (emphasis added).

## ARGUMENT

### I. Plaintiffs' Claims Against Mendez Fail Because She Was Acting in Her Official Capacity as the City Attorney

When an official is sued under 42 U.S.C. § 1983 in her official capacity, "the suit is simply 'another way of pleading an action against an entity of which an officer is an agent.'" *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citing *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978))). "Such suits against municipal officers are therefore, in actuality, suits directly against the city that the officer represents." *Id.* "The Eleventh Circuit has instructed courts to treat suits against government agents in their official capacities as functionally equivalent to suits against the municipality itself."[2] For this reason, the Court correctly dismissed the Second Amended Complaint ("**SAC**") against former defendant Bayona -- Plaintiffs alleged nothing more than official conduct by her:

> As an initial matter, Defendant Bayona notes for the Court that "[a] suit against a defendant in [her] official capacity is, in actuality, a suit against the government entity which employs [her]." *Hazleton v. City of Orlando*, No. 6:10-cv-342-Orl-35-DAB, 2010 U.S. Dist. LEXIS 157243 (M.D. Fla. June 10, 2010) (citing *Stephens v. Geoghegan*, 702 So. 2d 517, 527 (Fla. 2d DCA 1997)). Here, Plaintiffs have brought suit against Defendant Bayona in her individual capacity. However, allegations in the Second Amended Complaint show that **Defendant was acting in her official capacity as a member of the Code Enforcement Board**. . . .

ECF No. 198 at 3 (emphasis added). The same is equally true for Mendez.

Like Bayona, Plaintiffs seek to hold City Attorney Mendez liable in her individual capacity;

---

[2] *Durruthy v. City of Miami*, No. 01-4155-CIV-MORENO, 2002 U.S. Dist. LEXIS 25857, at *3 (S.D. Fla. 2002); *see also Torres-Bonilla v. City of Sweetwater*, No. 16-24011-CIV-MORENO, 2017 U.S. Dist. LEXIS 189826, at *1 (S.D. Fla. Nov. 15, 2017) (dismissing official-capacity claims against detectives as redundant where city was a defendant).

however, as this Court already has found, this label is not determinative. *Id.* Plaintiffs may superficially claim that Mendez and other City officials acted "outside" their official discretion and roles, but review of their testimony shows what they really mean is that they acted within their roles, but allegedly did so with personal animus. *See, e.g.*, Fuller Tr. (ECF No. 235-1), 34:17-35:13; Pinilla Tr. (ECF No. 235-2), 248:25-249:15. Thus, the undisputed evidence is that all of the conduct by Mendez about which Plaintiffs complain are acts that fall squarely within her job functions, and, like Bayona, Mendez's alleged retaliatory actions – meetings with other city officials, "architecting" ordinances, and litigation conduct – were done in her official capacity as the City Attorney. *See* Appendix.

Plaintiffs even admit that Mendez, was acting in her official capacity as City Attorney, implementing the City's policy when she took the alleged retaliatory actions involving meetings with department heads, lists of possibly noncompliant properties, and "architecting" ordinances:

> Q. So is it fair to say that when the city manager is meeting with the city attorney or is meeting with the building director and discussing policies and procedures to implement that then affect you and your -- the entities you are here to speak on behalf of, that that is the city manager, the city attorney, the building director implementing and creating a policy for the City of Miami to implement against you and your entities? Is that fair to say?
> A. Yes.
> Q. **And so they're doing that in their roles as** city manager, the **city attorney**, the building director, et cetera, correct?
> MR. KRAMER: Object to form.
> THE WITNESS: That's where -- **through that role is where they get the power to do that**.

Pinilla Tr., 278:24-279:15 (emphasis added).

To the extent Plaintiffs' claims arise from the City officials' (including Mendez) purported implementation of *the City's policy, practice and custom* of targeting all of Plaintiffs' properties, that further supports the conclusion that Mendez was acting in her official capacity to implement City policy. *See, e.g.*, Pinilla Tr., 277:17-279:15, 306:11-307:13. Pinilla testified:

> Q. So is it your testimony, if I understand it correctly, that the City of Miami, through the city manager, the city attorney, the building department, the code department, they implemented a policy and practice to retaliate against you and the entities you're here to speak on behalf of?
> A. That is my testimony.
> *****
> Q. Is it fair to say that the city attorney, Vicky Mendez, as the city attorney, engaged in implementing a policy and a practice or a custom to retaliate against you and your individual -- and the entities you're here to speak on behalf of?

A. That's correct.
Q. Is it fair to say that that's the case for all of the Defendants in their roles as the
building director or the fire department or as the -- whatever department head they were,
that they were in those capacities implementing policies, practices, customs to retaliate
against you and the entities you are here to speak on behalf of?
20 MR. KRAMER: Object to form.
THE WITNESS: Selective enforcement, definitely, for sure.[3]

See Pinilla Tr., 277:17-23, 278:7-23. Such a claim based on City officials' (including Mendez)
actions in their official capacity is, in actuality, a suit against the City. *Hazleton v. City of Orlando*,
2010 U.S. Dist. LEXIS 157243 (M.D. Fla. June 10, 2010) (citing *Stephens v. Geoghegan*, 702
So.2d 517, 527 (Fla. 2d DCA 1997)). Because the City is a Defendant in this case, the suit against
Mendez, who acted only in her official capacity, is redundant and not permitted.

## II.     Absolute Immunity Protects Attorneys From Liability For Duties in the Judicial and Legislative Process

Mendez is entitled to absolute immunity because the alleged acts are protected by either
judicial immunity or legislative immunity, and as a result, summary judgment must be entered.

Absolute immunity applies where a city attorney is performing duties integral to the
judicial process. *Parette v. Virden,* 173 Fed. Appx. 534, 536 (8th Cir. 2006).[4] The absolute
immunity doctrine shields prosecutors and other lawyers from § 1983 claims, and derives from the
common law: "Like witnesses, prosecutors and other lawyers were absolutely immune from
damages liability at common law for making false or defamatory statements in judicial proceedings
(at least so long as the statements were related to the proceeding), and also for eliciting false and
defamatory testimony from witnesses." *Burns v. Reed*, 500 U.S. 478, 489–92 (1991). This doctrine
is well reasoned, "as absolute immunity for this function serves the policy of protecting the judicial
process." *Id*. Therefore, a prosecutor is entitled to absolute immunity for all actions performed
within the scope of the prosecutor's role as a government advocate. *Rivera v. Leal,* 359 F.3d 1350,
1353 (11th Cir. 2004) (citing *Buckley v. Fitzsimmons,* 509 U.S. 259, 273, (1993)). *See also*
*Flournoy v. Copley*, 2013 WL 5487415, at *1 (M.D. Fla. Sept. 30, 2013) (collecting cases).

---

[3] Plaintiffs' Fourteenth Amendment claims of selective enforcement and disparate treatment were
brought and resolved by settlement in the *Mad Room* case. *See* ECF No. 211-1 at 2.
[4] *See also Dornheim v. Sholes,* 430 F.3d 919, 925 (8th Cir. 2005) (absolute immunity from civil
rights suit applies where official was performing duties that were integrally part of judicial process,
provided function was granted immunity under common law at time § 1983 was enacted); *In re
Castillo,* 297 F.3d 940, 947–48 (9th Cir. 2002) (applying absolute quasi-judicial to bankruptcy
trustee and her assistant and noting many contexts in which immunity doctrine extends).

Absolute immunity unequivocally protects Mendez with respect to most, if not all, of the allegations here. As the City of Miami Charter makes clear, Mendez operated in a prosecutorial function as City Attorney, and "shall be the prosecuting attorney of the municipal court."[5]

Moreover, several Federal Court of Appeals have applied absolute immunity **specifically to a city attorney**. For example, in *Benavidez v. Howard*, the Tenth Circuit recognized that the city attorney and assistant city attorneys were absolutely immune from a collateral § 1983 suit for damages for their acts of preparing and filing motion for protective order on behalf of a city clerk. 931 F.3d 1225 (10th Cir. 2019). The Seventh Circuit also recognized that an assistant city attorney was absolutely immune from a suit alleging retaliation against public criticism by initiating proceedings to demolish a house. *Smith v. Power,* 346 F.3d 740 (7th Cir. 2003). So too in the Sixth Circuit, where a city attorney was shielded by prosecutorial immunity from a § 1983 action based on bringing a nuisance claim against a nightclub owner.[6] Therefore, there can be no doubt that Mendez is protected by absolute immunity for claims based on legal proceedings.

This is critical because the intelligible allegations in the SAC against Mendez[7] are largely based on her role as City Attorney in legal proceedings:

- initiating injunctive proceedings (SAC, ¶ 71);
- spending $15 million on legal fees seeking to bankrupt plaintiffs; filing a Civil RICO claim against Plaintiffs (*id.*, ¶ 120);
- "Attempting to postpone Board votes on historical designations" (*id.*, ¶ 1375-76) (*see also id.* ¶¶ 1856-57, 1884-85, 1915-1916, 1946-47, 1977-78, 2008-09, 2038-39);
- filing an emergency motion for injunctive relief (*Id.*, ¶ 1943);
- spearheading litigation (*id.*, ¶¶ 3327, 3715); and
- defending litigation against the Fuller entities (*id.*, ¶¶1120, 3037, 3342, 3730, 3993).

At deposition, Plaintiffs were unable to rehabilitate these allegations nor provide details

---

[5] City of Miami Charter, Subpart A, § 21 ("[w]hen required to do so by the resolution of the city commission, the city attorney shall prosecute or defend for and in behalf of the city all complaints, suits and controversies in which the city is a party, and such other suits, matters and controversies as he shall, by resolution or ordinance, be directed to prosecute or defend.").

[6] *Red Zone 12 LLC v. City of Columbus*, 758 Fed. Appx. 508 (6th Cir. 2019). *See also Parette*, 173 F. App'x at 536 (Eighth Circuit finding a city attorney absolutely immune from liability arising from prosecuting a condemnation action).

[7] Distinguishing Mendez's acts from those of her co-defendants is of paramount importance. *See, e.g.*, *Alcocer v. Mills*, 906 F.3d 944, 951 (11th Cir. 2018) ("[W]e must be careful to evaluate a given defendant's qualified-immunity claim, considering *only* the actions and omissions in which that particular defendant engaged.") (emphasis added).

that would take them outside of the ambit of legal proceedings. Indeed, Plaintiffs conceded that such actions taken by Mendez were integral to the litigation process.[8]

The nature of the relevant legal proceedings, which include administrative and civil actions, is immaterial: in *Butz v. Economou*, the Supreme Court clarified that the absolute immunity for prosecutors extends to attorneys who participate in administrative proceedings, reasoning that "agency officials performing certain functions analogous to a prosecutor should be able to claim absolute immunity with respect to such acts." 438 U.S. 478, 515 (1978). Pursuant to *Butz*, "[f]ederal courts of appeal have extended absolute immunity to the conduct of prosecutors in civil actions." *Bala v. Stenehjem*, 671 F. Supp. 2d 1067, 1082 (D.N.D. 2009) (collecting cases).[9]

The remaining clear allegations against Mendez are also barred by absolute immunity because they are based on the City Attorney's role in legislation:

- "crafting City policy." (SAC, ¶¶ 613, 844, 1114, 1339, 1642, 1949, 2112, 2415);
- "help[ing] architect" Ordinance 13936 (*id*., ¶¶ 847, 1347, 1650, 3026, 3335, 3723) (*see also id.* ¶ 3340 (referencing Ordinance 13936 as "Mendez's Ordinance"));
- "help[ing] architect" Ordinance 14118 (*id*., ¶¶ 886, 1377, 3338); and
- Mendez help[ing] architect Ordinance 14057" (*id*., ¶ 1670, 1948, 2426, 3028, 3337, 3725).

---

[8] Fuller Tr., 31:4-10; 159:3-21 (Calle Ocho Marketplace's claim predicated on Mendez filing a legal proceeding, as was her job as city attorney); 164:21-165:17 (Calle Ocho's temporary use permit was revoked through court proceedings); 166:23-167:16 (claiming damage caused by filing motions in legal proceedings); 290:22-291:6, 292:17-23 (when Mendez appears in Court or in front of Court and administrative bodies, she's there in her administrative capacity, which is integral to judicial proceedings); Pinilla Tr., 182:10-13 (Beatstik's alleged damages are from defending themselves in litigation); 251:2-251:19 (admitting that allegations stem from Mendez role in judicial process).

[9] *See also e.g., Redlich v. Leen*, 2016 WL 3670575, at *5 (S.D. Fla. May 20, 2016) (private attorney "entitled to absolute immunity in his hired role as a prosecutor on behalf of the City of Coral Gables in the traffic court proceeding"); *Henry v. Morris*, 2009 WL 1651395, at *2 (M.D. Fla. June 12, 2009) (attorneys "representing the Government in civil litigation are entitled to absolute immunity for their official conduct during adjudication of cases involving the Government."); *Parette*, *supra*; *Cooper v. Parrish*, 203 F.3d 937, 947 (6th Cir. 2000) (finding a district attorney absolutely immune from liability arising from preparing and deciding to file public nuisance and civil forfeiture complaints); *Mendenhall v. Goldsmith*, 59 F.3d 685, 691 (7th Cir. 1995) (prosecuting attorney was entitled to absolute immunity for administering civil forfeiture proceedings because of functioning in an enforcement role analogous to a prosecutor); *Schrob v. Catterson*, 948 F.2d 1402, 1413 (3d Cir. 1991) (prosecutor was entitled to absolute immunity for his actions in initiating a civil forfeiture proceeding); *Fry v. Melaragno*, 939 F.2d 832, 837 (9th Cir. 1991) ( "the principles outlined in *Butz* should a fortiori apply to the government attorney's initiation and handling of civil litigation in a state or federal court").

At deposition, Plaintiffs failed to rehabilitate these allegations into something other than Mendez's legislative role. As with Mendez's litigation role, Plaintiffs offered key admissions that her alleged tortious actions were integral to the legislative process.[10]

*Beach Blitz Co. v. City of Miami Beach* is on all fours to these allegations. 2018 WL 11260453 (S.D. Fla. Feb. 5, 2018). There, the plaintiff, a liquor store owner, brought several § 1983 claims, including for retaliatory conduct, against several City of Miami Beach officials. *Id*. Amongst the purported misconduct was the passing of ordinances. The court, however, properly recognized that these claims against the "individually-named Defendants fail as a matter of law because local legislators are entitled to absolute immunity from civil liability for their legislative activities." *Id*. at *4 (citing *Bogan v. Scott-Harris*, 523 U.S. 44, 54-55 (1998) (barring claims against city mayor and council members related to their conduct in introducing, voting for, and signing an ordinance that eliminated plaintiff's office)). In so holding, the court recognized that this immunity extends to the City Attorney:

> The City Attorney's office allegedly assisted in the process of passing the ordinances by preparing and revising the drafts. Therefore, the City Attorney's office also has absolute immunity as "officials outside the legislative branch are entitled to immunity when they perform legislative functions." The City Attorneys' actions "were legislative because they were integral in the legislative process."

*Id*. at n. 16. (citations omitted). *Beach Blitz* is correct as it relies on clear Supreme Court precedent, and it is indistinguishable from the present case with respect to Mendez's alleged role in passing ordinances and policies. Therefore, Mendez is protected by absolute immunity against all allegations stemming from her role in the legislative process.

Nonetheless, to the extent that Plaintiffs allege sufficiently concrete acts in the context of legislative activity, the claims relating to legislative acts also fail because Mendez, as the City

---

[10] *See, e.g.*, Fuller Tr., 21:12-14 ("I became aware of situations where Vick Mendez was working to change and write and draft legislation against us"); 48:18-49:16 (alleged meetings were to develop legislation against Fuller's properties); 148:7-6 (removal of Temporary Use Permits from District 3 was a legislative act, and Mendez was not the final decision-maker); 175:12-176:6 (claim against Mendez is based on her role in crafting litigation which the commission than votes on); 202:8-203:25 (Mendez was involved in drafting and designing Ordinance 13996 as attorneys for the City of Miami); 234:11-21 (same for Ordinance 14118); 299:25-300:21 (acknowledging that Mendez has a role in advising and drafting ordinances and that this role is integral to legislative process); Pinilla Tr., 159:7-11 (explaining that architecting means crafting, building and devising legislation); 255:2-256:9 (Mendez's drafting of ordinances was within scope of her role as City Attorney); 256:22-257:3 (Mendez's work on ordinances was integral to legislative process).

Attorney, was not the final policymaker, as she could not and did not pass ordinances unilaterally.[11] Indeed, none of the Counts even allege Mendez is a final policymaker. Moreover, at deposition, Plaintiffs admitted that Mendez was not the key policymaker regarding the alleged legislative acts or Viernes Culturales.[12]

Stripped of these acts protected by absolute immunity, each Count is left without actionable conduct. *See* Appendix.[13] Thus, summary judgment must be granted in favor of Mendez.

### III.   Mendez Is Entitled to Qualified Immunity

Qualified immunity protects government officials sued in their individual capacities as long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Bldg. Empowerment by Stopping Trafficking, Inc. v. Jacobo*, 2013 WL 5435729, at *1 (S.D. Fla. Sept. 27, 2013) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation." *Id.* (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)). This defense will be granted if the complaint "fails to allege the violation of a clearly established constitutional right." *Jacobo*, 2013 WL 5435729 at *1 (quoting *Williams v. Ala. State Univ.*, 102 F.3d 1179, 1182 (11th Cir. 2003)).

To establish a qualified immunity defense, "the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Jacobo*, 2013 WL 5435729 at *2 (quoting *Lee*, 284 F.3d at 1197). To act within the scope of

---

[11] *See* City of Miami Charter, § 4(a) ("The city commission shall constitute the governing body with powers (as hereinafter provided) to pass ordinances adopt regulations and exercise all powers conferred upon the city except as hereinafter provided."); *Gilroy v. Baldwin*, 843 Fed.Appx. 194, 196 (11th Cir. 2021) (in order for a public employee to be individually liable, they had to not merely recommend a decision, but to effectuate it); *Martinez v. City of Opa-Locka, Fla.*, 971 F.2d 708, 714 (11th Cir. 1992) (reviewing city charter before recognizing city manager did not have final policymaking authority); *Kamensky v. Dean*, 148 Fed. Appx. 878, 880 (11th Cir. 2005) (applying final policymaker doctrine to official who could only recommend action but did not have final authority). *ee also Barteet v. Eismann*, 2013 WL 5236640, at *3 (S.D. Fla. 2013) (dismissing § 1983 action for failing to allege that the defendants are "official decision makers" and to "identify from where this authority stems") (cleaned up).

[12] Fuller Tr., 208:2-7 (Noriega, not Mendez, was the key decisionmaker regarding Viernes Culturales); Pinilla Tr., 266:12-267:5 (ordinances are passed by the commissioners).

[13] For instance, the SAC is littered with vagaries like "mobilizing the City government" without explaining what this means or how it was done. *E.g.* SAC, ¶¶ 611 (Count 19), 843 (Count 26), 1113 (Count 34), 1338 (Count 41), 1641 (Count 48), 2110 (Count 65), 2241 (Count 71), 2414 (Count 76).

discretionary authority means that the actions were: (1) undertaken pursuant to the performance of her duties; and (2) within the scope of her authority. *Id.* Once Mendez establishes that she was acting within her discretionary authority, the **burden shifts** to Plaintiffs to demonstrate that qualified immunity is not appropriate. *Id.* Plaintiffs must demonstrate that Mendez had notice that her actions would violate a "clearly established" constitutional right. *Id.*

> As the Court held in its Order dismissing Marrero:

> Here, it is not clear whether there is political speech by all of the Plaintiffs.. While that may not matter as much for Plaintiffs in alleging a valid claim for retaliation, it matters more for proving that Defendant Marrero violated a clearly established right. Also, it is alleged that Carollo was the "motivating force in instigating the unconstitutional retaliation," not Defendant Marrero. Further, Defendant Marrero did not physically intimidate or harass Plaintiffs. Marrero was performing job-related functions as the City Building Director, such as strengthening city policies and determining when a property owner has failed to meet the requirements of the city's building ordinances. The Court finds Plaintiffs' precedent either not controlling or inapposite to this case.

ECF No. 199 at 10. This is squarely true for Mendez as well.. The functions Mendez exercised were job-related, even if Plaintiffs criticize her performance of those functions, to put it mildly. *See e.g.,* Fuller Tr., 32:1-11. Nor did Mendez physically intimidate, trespass, detain or touch any of the Plaintiffs. Pinilla Tr., 10:14-16; Fuller Tr., 55:22-56:8, 57:10-58:11. Any purported physical intimidation was in fact not that, but alleged statements from the dais, which notably, is not pled in the SAC. Pinilla Tr., 150:2-152:5 (any purported intimidation was not physical, statements made on the dais) (152:12-15 (acknowledging statements from dais were made as City Attorney).

City Attorney Mendez is entitled to qualified immunity because (1) she was acting in her discretionary role as City Attorney; and (2) she was not on notice that her conduct as City Attorney would violate a "clearly established" right.

### A.  *Mendez Was Acting in her Discretionary Role as City Attorney*

Mendez was acting within her discretionary function as the City Attorney because the alleged actions were: (1) undertaken pursuant to the performance of her duties, and (2) within the scope of her authority. *Jacobo*, 2013 WL 5435729 at *2. This "inquiry is not whether it was within the defendant's authority to commit the allegedly illegal act." *O'Boyle v. Sweetapple*, 2015 WL 13574304, at *11 (S.D. Fla. June 4, 2015). "Instead, a court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the **outer perimeter** of an official's discretionary duties." *Id*. (emphasis added). Clearly, City Attorney Mendez's alleged

conduct was at least within the outer perimeter of her official duties.[14]

First, "[t]he City of Miami's Charter sets out the role of the City Attorney." *Watts v. City of Miami*, 2015 WL 13310057, at *2 (S.D. Fla. July 22, 2015) (citing City of Miami Charter, Part 1, § 21). The Charter provides that the City Attorney shall be the "legal advisor of and attorney and counsel for the city, and for all officers and departments thereof in matters relating to their official duties" and "shall be the prosecuting attorney of the municipal court." *See* City of Miami Charter, Part 1, § 21. The Charter also provides that, "[w]hen required to do so by the resolution of the city commission, the city attorney shall prosecute or defend for and in behalf of the city all complaints, suits and controversies in which the city is a party, and such other suits, matters and controversies as he shall, by resolution or ordinance, be directed to prosecute or defend." *Id.* Moreover, the "mayor, city commission, the city manager, the director of any department, or any officer ... may require the opinion of the city attorney upon any question of law involving their respective powers and duties." *Id.*

While the SAC is heavy on vagaries, the intelligibly alleged acts that Mendez took were clearly in her capacity as City Attorney including those listed above in Section II, and below in Section III.B.[15] As this Court recognized in dismissing Marrero, the legislative acts, which are is protected under absolute immunity as set forth above, are also protected by qualified immunity. ECF No. 199 at 4. Plaintiffs have since admitted that they were not aware of the scope of Mendez's job and responsibilities. Pinilla Tr., 139:1-3; *id.*, 155:4-7. Thus, they could not provide any reliable evidence that her activities were outside of it. Because Plaintiffs declined the chance to depose Mendez, they resultantly have no evidence to support any argument to the contrary.

Although Fuller and Pinilla tried to spin her acts as "extracurricular", (*e.g.* Fuller Tr., 31:12-

---

[14] Fuller Tr., 297:21-298:17 ("attacks" happened under the "responsibility of being in the office"); Pinilla Tr., 247:18-248:3 ("she's probably functioning under her scope").

[15] *See also* Appendix. Moreover, at deposition, Plaintiffs complained of an additional purported act, that Mendez criticized them at a hearing before Magistrate Louis. Fuller Tr., 18:4-15. Of course, this allegation, nor any count for defamation, was part of the SAC. *See generally*, ECF No. 129. Thus, any purported defamation claim must be disregarded because Plaintiffs may not raise new claims at the summary judgement stage. *Poer v. Jefferson Cnty. Comm'n*, 100 F.4th 1325, 1337-38 (11th Cir. 2024). Regardless, even if Plaintiffs **had** brought a claim for defamation, it would still fail: statements made in "the course of judicial proceedings" are absolutely privileged, and no cause of action for damages can lie so long as they are "relevant to the subject of inquiry." *Fridovich v. Fridovich*, 598 So. 2d 65, 66 (Fla. 1992). In sum, because there is not and could not be a defamation claim, this "bad-mouthing" is an irrelevancy.

24) they undermined that spin with admissions that the potentially actionable conduct was well within Mendez's job as City Attorney. First, the supposed extracurricular activity is non-actionable research and "meetings", as well as unpled "bad-mouthing:"

> Q. Within your personal knowledge, sir, what extracurricular activity outside her scope did she do, sir?
> MR. KRAMER: Object to form.
> THE WITNESS: She met with Commissioner Carollo. She spoke after hours with him. She was doing research on our -- on our properties. She was bad-mouthing us.
> BY MR. SUAREZ: Q. What else, sir?
> A. That's all-encompassing.

Fuller Tr., 32:1-11. Then, Plaintiffs admitted that they lack any knowledge that the referenced meetings were outside of her role as City Attorney. Fuller Tr., 33:2-14. So it follows that they do not have any knowledge or evidence of what even was discussed, let alone that anything tortious occurred at said meetings. And of course, meeting with city officials is within the job description of the City Attorney, and attorneys everywhere regularly work beyond 9 to 5.[16] Additionally, Plaintiffs admitted that what they meant by extracurricular was not that it was outside her job, but their belief that the manner in which Mendez performed her job was wrong.

> THE WITNESS: I believe that the role she took against us and our businesses were outside the roles that she was undertaking. **But for the purpose of your question and so that we can shortcut this, I believe the proper answer is to say that your client, Victoria Mendez, under her attorney capacity had the right to do whatever she wanted to destroy our businesses. It was all within her right to do so.**
> BY MR. SUAREZ: Q. Within your personal knowledge, sir, what basis do you have to say that researching properties of yours is beyond her role as a city attorney for the City of Miami?
> A. **Because it is disparate. It is unethical**. It is a violation of the Florida Bar to treat individuals differently. So it goes even beyond the City of Miami role as an attorney. It goes to any attorney role. **She knew the difference between right and wrong, and she was operating wrongly. That's the difference.**

Fuller Tr., 34:17-35:13. *See also* Pinilla Tr., 248:25-249:15. These admissions are fatal to

---

[16] The City of Miami's Charter provides that the City Attorney shall be the "legal advisor of and attorney and counsel for the city, and for all officers and departments thereof in matters relating to their official duties" Part 1, § 21. *See also Cleveland v. City of Cocoa Beach, Florida*, No. 6:02-CV-1294 ORL22KR, 2003 WL 25739839, at *6 (M.D. Fla. Nov. 21, 2003), *aff'd,* 221 Fed. Appx. 875 (11th Cir. 2007) (recognizing that qualified immunity covers statements made by city attorney at meeting with other city officials). And, "attorneys routinely work through the night, responding to late-evening calls from clients for work they want completed by morning." *International High-Tech Clients Want 24/7 Services*, A.B.A.J., OCT 2000, at 16.

Plaintiffs' claims because the remaining allegations against Mendez, not readily disposed of via absolute immunity, are heavily based on allegations that Mendez participated in investigations, including the vague allegations regarding targeting that, based on context, must mean either investigation or litigation with respect to Mendez. To fully set forth the deficiencies of each Count against Mendez in a readily digestible manner, the undersigned has prepared the Appendix hereto.

The conduct alleged against Mendez is well "within, or reasonably related to, the outer perimeter of" Mendez's broad authority. *O'Boyle,* 2015 WL 13574304 at *11 (holding that filing a bar complaint was within outer perimeter of mayor's duties after analyzing the subject town's charter). Accordingly, she was acting within her discretionary functions as the City Attorney.

### B.   City Attorney Mendez Did Not Have Fair Notice That Her Alleged Conduct Would Violate a Clearly Established Right

Plaintiffs cannot show that Mendez had "fair notice that [her] conduct would violate the Constitution." *Echols v. Lawton*, 913 F.3d 1313, 1325 (11th Cir. 2019). "[T]he Supreme Court has long ruled that qualified immunity protects a badly behaving official unless he had fair notice that his conduct would violate the Constitution." *Id*. Although the Eleventh Circuit has recognized a broad, clearly established principle that "the government may not retaliate against citizens for the exercise of First Amendment rights[,]" the Plaintiffs cannot show that Mendez had fair notice that she was violating this principle. *Shiver v. City of Homestead, Fla.*, 2021 WL 5174526, at *9 (S.D. Fla. Oct. 4, 2021) (quoting *Bennett v. Hendrix*, 423 F.3d 1247, 1256 (11th Cir. 2005)).[17]

Fair notice requires showing the violation of a "clearly established" right. *Id*. at *7-8. Plaintiffs need to show that Mendez had fair notice that the absolute immunity she is normally afforded does not apply here. *See Echols*, 913 F.3d at 1325. They cannot because the conduct alleged against Mendez, whether legislative, judicial, undefined, or otherwise, concerns actions in connection with the enforcement of the City's Code (relative to Plaintiffs' properties). And courts

---

[17] In *Shiver*, the court held that a government official did not violate clearly established law by investigating the plaintiff in retaliation for exercising his First Amendment rights, including gathering confidential information about the plaintiff without a legitimate law enforcement purpose, preparing a 109-page memorandum about the plaintiff's illegal activities, and disseminating that information to third parties, like the plaintiff's employer. *Id*. Similarly, in *O'Hare v. Town of Gulf Stream*, 2015 WL 12977393 (S.D. Fla. June 22, 2015), the court held that government officials who enforced the town code did not violate a clearly established right where the plaintiff alleged that, in retaliation for expressing his First Amendment rights, the officials trespassed on his property, cited him for various code violations, issued stop work orders, and directed the plaintiff to obtain permits.

have held that disputes concerning the enforcement of city codes relating to properties and land use do not invoke questions of clearly established constitutional rights.[18] Given those holdings, it would not be obvious to all government actors that such actions allegedly violate federal law.

Moreover, the Eleventh Circuit specifically held that the "right to be free from a retaliatory investigation is **not** clearly established." *Shiver v. City of Homestead, Fla.*, 2021 WL 5174526, at *9 (S.D. Fla. Oct. 4, 2021) (citing *Rehberg v. Paulk*, 611 F.3d 828, 851 (11th Cir. 2010)) (emphasis added).[19] *Rehberg* held that a district attorney's actions were protected against a § 1983 claim by absolute and qualified immunity because his alleged actions in connection with investigating the plaintiff with a "retaliatory animus" did not violate any clearly established law and were protected by qualified immunity. *Id.* at *10. This is fatal to the SAC because the remaining allegations against Mendez, not readily disposed of via absolute immunity, are heavily based on allegations that Mendez participated in investigations, including the vague allegations regarding targeting that, based on context, must mean either investigation or litigation. At deposition, Plaintiffs did not help their cause, pointing to non-actionable investigative activities such as "research[ing]" Viernes Culturales. Fuller Tr., 36:11-16. Therefore, Plaintiffs' claims against Mendez based on supposedly retaliatory investigations must be dismissed.

Further, because Plaintiffs cannot point to any specific precedent putting Mendez on notice that her actions violated Plaintiffs' constitutional rights, Mendez's qualified immunity merits dismissal. *Randall v. Scott*, 610 F.3d 701, 715-716 (11th Cir. 2010). In *Randall*, a district attorney, Scott, fired her chief of staff, Randall, after Randall decided to run for election against Scott's husband. *Id.* at 703-704. Randall brought a § 1983 claim against Scott for First Amendment retaliation, alleging that Scott interfered with Randall's constitutional right to run for office. *Id.* at 703-704. The Eleventh Circuit affirmed the lower court's dismissal based on qualified immunity,

---

[18] *See Town of Sw. Ranches v. Kalam*, 980 So. 2d 1121, 1123–24 (Fla. 4th DCA 2008) ("More explicitly, courts have recognized that conventional land use disputes between landowners or developers and local planning authorities do not implicate the constitution.") (cleaned up); *Spence v. Zimmerman,* 873 F.2d 256, 262 (11th Cir.1989)); ("We stress that federal courts do not sit as zoning boards of review and should be most circumspect in determining that constitutional rights are violated in quarrels over zoning decisions.").

[19] *See also Hernandez v. City of Homestead, Fla.*, 2022 WL 6569684 at *12 (S.D. Fla. Aug. 8, 2022) ("The Supreme Court has never defined retaliatory investigation, standing alone, as a constitutional tort, and neither has the Eleventh Circuit.") (cleaned up; quoting *Thompson v. Hall*, 426 F. App'x 855, 858 (11th Cir. 2011)).

holding that, although there is a constitutional right to run for office, it is not a clearly defined right. *Id.* at 715. The court reasoned that it was "aware of no precedential case with similar facts to those described here…"[20] *Id.* In other words, there was no precedent putting Scott on notice that firing Randall would violate her constitution rights. Nor is there such precedent here establishing that Mendez's conduct violated Plaintiffs' First Amendment rights. *See also*, *O'Hare* and *Shiver*, n. 17, *supra*. Thus, this Court's previous holding regarding Marrero's meeting with the City Attorney's office applies to the City Attorney just as it does to Marrero:

> Here, it is alleged that Defendant Marrero, met with the City's Attorney's office and told them that "[t]he Manager wants us to revise and update our policies to be more stringent when it comes to work without permit, clearly define what are unsafe conditions, and shut down all structures that don't comply." It is not clear to the Court that every objectively reasonable government official facing the circumstances would know that the official's conduct violated federal law when the official acted. Nor is it clear that the state of the law provided fair warning to every reasonable official that the conduct clearly violates the Constitution. It is squarely within the Building Director's job function to enforce codes and regulate buildings and structures within the City. *See Loftus*, 690 F.3d at 1205.

ECF No. 199 at 11. *See also id.* at 12 (Marrero's meetings with City Manager and City Attorney's Office where they "architected" ordinances to "target" certain properties were protected by qualified immunity). This is exactly on all fours with respect to Mendez as well.

Therefore, the entire lawsuit against Mendez is barred by qualified immunity.

## IV.    This Action Is Barred by *Res Judicata*

The SAC is barred by *res judicata* based on a prior final judgment entered in this very District in not one but <u>two</u> cases. Plaintiffs Williams Fuller and Martin Pinilla filed a nearly identical action in 2018, asserting that Carollo and the City violated 42 U.S.C. § 1983 and First Amendment rights to free speech and freedom of association ("***Fuller I***"). On June 13, 2019, the *Fuller I* Court dismissed the lawsuit against the City for failure to state a claim. *Fuller I,* ECF No. 99, 118 (the "**2019 Dismissal Order**"). Fuller and Pinilla never re-pled claims against the City.

---

[20] To be sure, Plaintiffs cannot simply point to broad principles of freedom of speech or assembly as clearly established laws. *Gaines v. Wardynski*, 871 F.3d 1203, 1214 (11th Cir. 2017) (defendant was entitled to qualified immunity "[b]ecause the case law that Gaines has relied upon was not particularized to the facts of the case, but rather it merely set out First Amendment principles at a high level of generality, it was not 'apparent' that passing her over for promotion based on things her father said would violate *her* constitutional rights.") Yet, that is what Plaintiffs did at deposition, claiming that their freedom of speech and freedom of association were violated. *See e.g.*, Fuller Tr., 336:14-22; Pinilla Tr., 71:2-3, 9-10.

Additionally, two of the entity Plaintiffs settled claims <u>predicated on the exact same</u> <u>conduct by City officials</u> in *The Mad Room LLC et al. v. The City of Miami*, No. 1:21-cv-23485 (S.D. Fla.) (the "***Mad Room***" litigation). [ECF No. 227].

Now, Fuller and Pinilla, along with their entities[21], bring this § 1983 action, all but identical to *Fuller I*, alleging that the City and its officials, including Mendez, violated their First Amendment right to free speech and freedom of association. The SAC is a gross offense to the *res judicata* doctrine, which entirely bars Plaintiffs' claims.

*Res judicata* "is a judicially crafted doctrine, created to provide finality and conserve resources." *Destin v. Brooks*, 2023 WL 6340279, at *3 (S.D. Fla. Apr. 13, 2023). *Res judicata* bars claims when, as here, the following four elements are present:

(1) there is a final judgment in a prior suit on the merits;

(2) the decision in the prior suit is rendered by a court of competent jurisdiction;

(3) the prior suit involved the same parties, or those in privity with them; and

(4) both suits involve the same cause of action.

*O'Connor v. PCA Fam. Health Plan, Inc.*, 200 F.3d 1349, 1355 (11th Cir. 2000); *Hilliard v. Gutierrez*, 2021 WL 2712122, at *5 (S.D. Fla. July 1, 2021). *Res judicata* bars not only those claims raised in the first suit, but also claims that **could have been raised** in the prior suit if those claims arise "out of the same nucleus of operative fact as a former action." *O'Connor,* 200 F.3d at 1356 (quoting *Citibank, N.A. v. Data Lease Fin. Corp.*, 904 F.2d 1498, 1503 (11th Cir. 1990) (emphasis added)).

### A. There are Prior Final Judgments on the Merits by a Court of Competent Jurisdiction

The 2019 Dismissal Order in *Fuller I* is a final judgment on the merits because the basis for dismissal was failure to state a claim, and Plaintiffs did not replead their claim against the City before the *Fuller I* court's deadline. The *Fuller I* court granted the City's motion to dismiss under Fed. R. Civ. P. 12(b)(6), finding, *inter alia*, a failure to allege a claim that would survive sovereign immunity, but gave Fuller and Pinilla until June 26, 2019, to amend their complaint against the City. *Fuller I*, ECF No. 99, 2019 Dismissal Order. Fuller and Pinilla opted not to do so. When

---

[21] Apart from having never engaged in any speech, let alone protected speech, the entity-Plaintiffs also expressly assigned their purported claims to Fuller and Pinilla in *Fuller I*, which means that their purported claims were tried in *Fuller I*, and they possess *no claims at all*. *See Fuller I*, ECF No. 125, ¶¶ 111, 207, 298.

Fuller and Pinilla amended their complaint, they dropped their claim against the City and asserted only a claim against Carollo. *Fuller I,* ECF No. 125 at 52. Fuller and Pinilla did not seek to further amend their pleadings at any point before the June 26, 2019, deadline, or before trial.

After the June 26, 2019, deadline expired, the 2019 Dismissal Order became final. "Where a party chooses to appeal a dismissal without prejudice, without exercising its leave to amend, the dismissal becomes a final decision on the merits." *Cummings v. Nissim Corp.*, 2011 WL 13115436, at *2 (S.D. Fla. Aug. 2, 2011).[22]  Further, the 2019 Dismissal Order was "on the merits" because the basis for dismissal was failure to state a claim. The Eleventh Circuit has consistently held that dismissals for failure to state a claim constitute final judgments on the merits.[23]

*Smith* is instructive. There, the Eleventh Circuit held that a prior dismissal *without prejudice* constituted a final judgment on the merits because: (1) the plaintiffs waived their right to further amend their complaint by seeking to appeal the dismissal; and (2) the dismissal was for failure to state a claim. 808 Fed. Appx. at 854. Like the *Smith* plaintiffs, Fuller and Pinilla waived their right to amend their complaint—which was dismissed for failure to state a claim—before the court's deadline. For these reasons, the 2019 Dismissal Order is a final judgment on the merits.[24]

The *Mad Room* settlement is also, for *res judicata* purposes, a final merits judgment. *Ragsdale v. Rubbermaid, Inc.* is instructive in holding that a settlement is a final judgement on the merits for *res judicata* purposes. 193 F.3d 1235, 1238 (11th Cir. 1999). So too here.

### B.   The Fuller I and Mad Room Parties, or Those in Privity with Them, Are Deemed Identical to Those in This Case

This case involves the same parties as *Fuller I* and their privies. The only difference is that

---

[22] *See also Auto. Alignment Body Serv., Inc. v. State Farm Mut. Auto. Ins. Co*, 953 F.3d 707, 719-20 (11th Cir. 2020) (citing *Hertz Corp. v. Alamo Rent-A-Car, Inc.*, 16 F.3d 1126, 1132-33 (11th Cir. 1994)) ("... an order dismissing a complaint with leave to amend within a specified time becomes a final judgment if the time allowed for amendment expires without the plaintiff seeking an extension....The orders dismissing the first amended complaints . . . became final judgments under *Hertz* when the body shops missed their deadline to amend[.]").

[23] *See Smith v. Sec'y of Veterans Affairs*, 808 Fed. Appx. 852, 854 (11th Cir. 2020) (dismissal without prejudice was final judgment on the merits because it was based on failure to state a claim); *Solis v. Glob. Acceptance Credit Co., L.P.*, 601 Fed. Appx. 767, 770 (11th Cir. 2015) (dismissal was final judgment on the merits despite ambiguity regarding prejudice because the Supreme Court has flatly stated that "[t]he dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a 'judgment on the merits.'") (quoting *Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, n. 3 (1981)); *N.A.A.C.P. v. Hunt*, 891 F.2d 1555, 1560 (11th Cir. 1990) (same).

[24] The *Fuller I* court, another court of this District, unquestionably was a court of competent jurisdiction as to the § 1983 claims asserted in that case. *E.g.*, *Hilliard*, 2021 WL 2712122, at *5.

---

Fuller and Pinilla, the plaintiffs in *Fuller I*, added additional plaintiffs (their entities) and defendants (other City of Miami officials) in this action. Mendez incorporates and adopts by reference Subsection II.A.2. of Joe Carollo's Motion to Dismiss the Complaint With Prejudice ("**Carollo Motion to Dismiss**") as to Plaintiffs being in privity with each other.

As to privity between the Plaintiffs, Plaintiffs conceded this at Fuller's deposition when he said "We [meaning he and Pinilla] are those entities." Fuller Tr., 336:14-22. This is true and dispositive on this element.[25] Plaintiff Viernes Culturales/Cultural Fridays, Inc. ("Viernes Culturales") is a Florida Corporation comprised of "community stakeholders," whose former chairman was Fuller. *See* Ex. A at ¶ 17. This alone is sufficient to satisfy privity.[26] Moreover, in the SAC, with respect to each of the entities except Barlington, Calle Ocho, LHAB Tres, and LHAB Too, Plaintiffs allege that *Fuller I* was filed on the entities' behalf. ECF No. 129.

On the defense side of the equation, Mendez is in clear privity with the City, which was both a defendant in *Fuller I* and the subject of the 2019 Dismissal Order and a defendant in the *Mad Room* litigation and a party to that settlement. Mendez was indisputably a City of Miami official at all relevant times. SAC, ¶ 24, In *Hillard*, the plaintiff sued the Hialeah Housing Authority (the "**HHA**"), and then later an officer—in his individual capacity—who worked for the HHA under nearly identical facts and claims. *Hilliard*, 2021 WL 2712122 at *5 (holding

---

[25] Entity Plaintiffs Barlington Group, LLC ("Barlington"); Calle Ocho Marketplace, LLC ("Calle Ocho"); Yo Amo Calle Siete, LLC ("Calle Siete"); Brickell Station Partners, LLC ("Brickell Station"); Tower Hotel, LLC ("Tower Hotel"); Futurama, LLC ("Futurama"); El Shopping, LLC ("El Shopping"); Beatstik, LLC ("Beatstik"); and LHAB Tres, LLC ("LHAB Tres") are wholly or partially owned, and controlled, by Fuller and Pinilla. See ECF No. 129 ¶¶ 6-8, 12-16, 20 (attached as Ex. A). Entity Plaintiffs Piedra Villas, LLC ("Piedra Villas"); Little Havana Arts Building Too, LLC ("LHAB TOO"); and Little Havana Bungalows, LLC ("Havana Bungalows") are owned by Fuller. *Id*. at ¶¶ 9, 11, 18. La Gran Fiesta, LLC ("Gran Fiesta") and Little Havana Arts Building, LLC ("LHAB") were plaintiffs in this action but were dismissed pursuant to the Mad Room settlement agreement. See ECF No. 227. Gran Fiesta is partially owned by Fuller and Pinilla, and LHAB is partially owned by Fuller. ECF No. 129 ¶¶ 9, 20.

[26] *See Griswold v. Hillsborough*, 598 F.3d 1289, 1293 (11th Cir. 2010) (an individual, who was president and sole shareholder of two companies, was in privity with his two companies for purposes of *res judicata* because the individual used his relationship with the companies to control a prior litigation and his counsel had conceded that the individual had complete control over the prior litigation); *Leary v. Infolink Global Corp*, No. 12–21339, 2013 WL 943539 *5 (S.D. Fla. Mar. 11, 2013 )(finding that president was in privity with company because there was a substantive legal relationship and the president controlled the company).

government officers to be in privity with the government).[27] The court dismissed the second action based on *res judicata* because the officer and HHA were in privity with each other. *Id.* The court noted that "[t]here is privity between officers of the same government so that a judgment in a suit between a party and a representative...is *res judicata* in [relitigation] of the same issue between that party and another officer of the government." *Id.* (quoting *Montford v. Metro. Dade Cnty. Gov't*, 2002 WL 34382746, at \*3 (S.D. Fla. Mar. 27, 2002)).

The Eleventh Circuit's decisions in *Rodemaker v. Shumphard*, 859 Fed. Appx. 450 (11th Cir. 2021) ("*Rodemaker I*") and *Rodemaker v. City of Valdosta*, 110 F.4th 1318 (11th Cir. 2024). ("*Rodemaker II*") offer valuable insight into the concept of privity between a government and its official sued in their individual capacity, and form a striking parallel here.

In *Rodemaker I*, Rodemaker sued five members of the Valdosta Board of Education in their individual capacities under 42 U.S.C. §§ 1981 and 1983. However, the Board was not named as a party, and the case was dismissed for failure to state a claim. *See Rodemaker I*. Shortly thereafter, *Rodemaker II* was filed, this time naming the Board itself along with the same individual board members as defendants. In *Rodemaker II*, the Eleventh Circuit clarified that privity can exist between an entity and an individual sued in their personal capacity when "one party's actions are *legally* another party's actions." *Id*. at 1328. The actions attributed to Mendez in this case are actions that legally belong to the City of Miami. *See* Section I, *supra*. In *Rodemaker II*, the court found that the five Board members were acting in privity with the Board because they were performing official duties and controlling the Board's actions as its majority. *Id*. at 1329. In other words, the behavior of the individual board members was the same as the behavior alleged against the Board itself. Similarly, the same two factors present here—performance of official duties and control—also establish privity between Mendez and the City. The allegations in the SAC are primarily based on actions Mendez took as City Attorney, and the actions by Mendez---in both cases----are alleged to be actions of the City of Miami.

Even without privity, "the Eleventh Circuit has made perfectly clear that a party '**may not avoid the application of *res judicata* by adding new parties**.'" *Ardis v. Anderson*, 662 F. App'x 729, 732 (11th Cir. 2016) (quoting *Endsley v. City of Macon*, 321 F. App'x. 811, 814 (11th Cir.

---

[27] Although the officer was named in the first suit, he was never served with process and the parties disputed whether he was technically a party to the first suit for *res judicata* purposes. *Id.* at 6. The court did not need to resolve that dispute because the officer was in privity with HHA. *Id.*

2008)) (emphasis added). Indeed, a complaint is barred by *res judicata* where "[t]he claims plaintiff has asserted against the new defendants ... **could and should have been brought**" in the prior action. *Id.* (emphasis added).[28]

*Destin v. Brooks* is also instructive. 2023 WL 6340279, at \*3 (S.D. Fla. Apr. 13, 2023). There, the plaintiff's previous suit against police officers was dismissed. *Id.* The plaintiff subsequently brought a second, nearly identical suit that added another, new defendant: the Florida Attorney General. *Id.* The Court dismissed the second action *with prejudice* based on *res judicata,* explaining that the plaintiff cannot simply circumvent *res judicata* by adding a new defendant when those claims **could and should have been brought** in the prior action. Because the plaintiff in *Destin* could have brought the Florida Attorney General in the initial action, the second action was dismissed with prejudice against all defendants—new and old alike. *Id.* The same principle applies here—Plaintiffs cannot avoid *res judicata* by simply adding Mendez and other defendants.

### C.   *The Second Amended Complaint Arises from the Same Facts and Alleges the Same Claims as Fuller I and Mad Room*

The facts and claims made in the SAC are nearly identical to those made in *Fuller I* and heavily overlap with *Mad Room.* Both *Fuller I* and this case assert 42 U.S.C. § 1983 claims arising under the First Amendment; the Amended Complaint in *Fuller I* asserted these claims against the City before abandoning them. *Fuller I*, ECF No. 25.

Two cases involve the same cause of action for the purposes of res judicata if the claims "arise out of the same nucleus of operative facts, or are based upon the same factual predicate." *Rodemaker II* at 1330. (internal citation omitted). "Causes of action share a nucleus of operative fact if the same facts are involved in both cases, so that the present claim could have been effectively litigated with the prior one." *Id.* The factual allegations in Fuller I and this case, however, do not need to be identical to arise out of the same nucleus of operative fact. See *Id.*

In this case, as in *Fuller I*, Plaintiffs seek redress because "Carollo's political retaliation

---

[28] *See also Hilliard*, 2021 WL 2712122 at \*6 (dismissing action based on *res judicata* because the "plaintiff cannot avoid the preclusive effects of the *res judicata* doctrine simply by naming additional defendants in the new action, where the plaintiffs' subsequent claims arose from the same facts as those at issue in the prior action and could therefore have been brought previously"); *N.A.S. v. Morada-Haute Furniture Boutique LLC*, 2022 WL 5246828, at \*5 (S.D. Fla. July 22, 2022) (dismissing action as to all defendants based on *res judicata* because "the addition of a new defendant will not immunize Plaintiffs from the preclusive effects of res judicata"); *Makozy v. Westcor Land Title*, 2022 WL 2758368, at \*2 (S.D. Fla. Apr. 5, 2022) (dismissing complaint under *res judicata* where the plaintiff added a new defendant that he could have brought in prior action).

against Fuller and Pinilla for their support of his opponent began immediately upon his taking office in December 2017."[29] Any additional allegations arise from the same core conduct (and are extensions thereof), and either were or should have been raised in *Fuller I*.

Moreover, the conduct subject to res judicata extends through the date of final judgment in *Fuller I*. Here Fuller and Pinilla moved to conform the pleadings to the evidence introduced at trial. Fuller I, ECF No. 567 at 125:11-16.

Although *Mad Room* does not plead the same exact claim, the underlying theory is the same. Res judicata is not solely concerned with the precise legal theory raised in the original case, but rather, to "all legal theories and claims arising out of the same nucleus of operative fact." *Rodemaker II* at 1330. The same nucleus of operative facts is found in both cases: a supposed pattern of retaliation by the City of Miami, the supposed discriminatory treatment of Fuller and Pinilla's entities compared to those of others, and even certain specific acts of retaliation: the *Mad Room* plaintiffs alleged an official City policy and custom to "target all properties owned by Plaintiffs' owner Fuller," and a plan to "deprive Plaintiffs of their property and business rights" by "weaponizing code enforcement and all the various departments of the City to concoct a set of violations targeted at the Fuller-affiliated businesses that would eventually lead to a deprivation of property rights, while attempting to make it all look 'legal' and 'legitimate.'" *Mad Room* Am. Compl., ¶ 28. As here, the *Mad Room* plaintiffs alleged that the City's actions were motivated and instigated by Commissioner Carollo in alleged retaliation because of their affiliation with Plaintiffs Fuller and Pinilla, who had supported Carollo's opponent in the 2017 election.[30] Thus, regardless of legal theories, both matters arise from the same underlying facts.

---

[29] *Compare* SAC, ¶ 51, *with Fuller I*, ECF No. 125, ¶¶ 59–62 (Second Am. Compl.) ("[u]pon taking office, Carollo immediately drew up a list of Plaintiffs' properties and associated businesses in District 3 . . . . Carollo said he had a list of addresses for Fuller's properties that he would give to Diez, from which Diez understood Carollo was asking him to selectively target Fuller's properties."); ECF No. 43, ¶¶ 63-66 (First Am. Compl.) (same).

[30] *See, e.g., id.*, ¶ 25 (alleging Taquerias "became subject to severe harassment that ramped up upon the filing of [*Fuller I*] against this key Commissioner for the Commissioner's retribution against Fuller for supporting his political opponents (among other things)"), ¶ 40 (alleging "the City devised and deployed the property list to target Fuller/Plaintiff affiliates properties, and, that the City had no independent reason to do so other than for political vendetta"), ¶ 46 ("[T]he only reason for the City to target Plaintiffs' properties and establishments was because of their related ownership; that that reason was pretextual and arbitrary, related only to political vendetta and animus"), and ¶ 69 (alleging City's policy was "emplaced only because of unsupported political animus directed at perceived enemies of a City Commissioner").

Because *res judicata* squarely bars every one of Plaintiffs' claims, all of which were or could have been litigated in *Fuller I*, summary judgment should be entered in Mendez's favor.

## CONCLUSION

For the foregoing reasons, Mendez respectfully requests that this Court enter summary judgment in her favor and grant other and further relief that this Court deems just and proper.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(b)(2), Mendez respectfully requests a two-hour hearing on this motion, which raises numerous complex issues which oral argument would address and illuminate. Dated: January 17, 2025.

Respectfully submitted,

**HEISE SUAREZ MELVILLE, P.A.**
2990 Ponce De Leon Boulevard, Suite 300
Coral Gables, Florida 33134
Telephone (305) 800-4476

By: */s/ Luis E. Suarez*
        Luis E. Suarez
        Florida Bar No. 390021
        lsuarez@hsmpa.com
        Patricia Melville
        Florida Bar No. 475467
        pmelville@hsmpa.com
        Daniel Tropin
        Florida Bar No. 100424
        dtropin@hsmpa.com

        *Attorneys for Defendant,*
        *City Attorney Victoria Mendez*

## CERTIFICATE OF SERVICE

I hereby certify that, on January 17, 2025, I electronically filed the foregoing with the Clerk of the Court using CM/ECF. Copies of the foregoing document will be served on all parties via transmission of Notice of Electronic Filing generated by CM/ECF.

By: */s/ Luis E. Suarez*
        Luis E. Suarez
        Florida Bar No. 390021