**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 1:23-CV-24251-MORENO**

**WILLIAM O. FULLER, et al.,**
    **Plaintiffs,**

**vs.**

**THE CITY OF MIAMI, et al.,**
    **Defendants.**

_____/

**DEFENDANT WILLIAM ORTIZ'S RENEWED AND
SUPPLEMENTAL MOTION TO DISMISS SECOND AMENDED
COMPLAINT WITH PREJUDICE; ALTERNATIVE MOTION FOR
SUMMARY JUDGMENT ON QUALIFIED IMMUNITY;
INCORPORATED MOTION TO ADOPT AND JOIN IN IDENTIFIED
PORTIONS OF MOTIONS TO DISMISS AND MOTIONS FOR
SUMMARY JUDGMENT FILED BY CODEFENDANTS; REQUEST
FOR HEARING; INCORPORATED MEMORANDUM OF LAW**

Pursuant to Federal Rule of Civil Procedure 12(b)(6) and this Court's Order Requiring Parties to Participate in Limited Discovery to Supplement Pending Motions to Dismiss (the "Limited Discovery Order") (DE218), defendant William Ortiz ("Ortiz") renews his request to dismiss the Second Amended Complaint ("SAC") (DE129). Ortiz incorporates his prior motion and reply (DE144 & 179), and the adopted motions and replies of his codefendants. In asking this Court to dismiss this case with prejudice, Ortiz also seeks any form of relief the Court deems appropriate, including granting the alternate relief

of summary judgment in Ortiz's favor for qualified immunity.

Buttressed by the limited discovery authorized by the Court, the plaintiffs' depositions added nothing of substance to the SAC; instead, the plaintiffs' concessions underscore the absence of any material or actionable allegations of wrongdoing by Ortiz. Just as Ortiz explained to this Court in his Motion to Dismiss, Ortiz is a mere City employee acting in the scope and furtherance of his job responsibilities and was neither a decision-maker nor the cause of any of the damages alleged in the SAC. Accordingly, the Cout should dismiss the SAC because it fails to state legally cognizable First Amendment retaliation (Counts 14, 53, 67, 78, 109, 118, and 129) and civil conspiracy (Count 143) claims against Ortiz. Ortiz is also shielded from suit by the doctrine of qualified immunity as a City employee acting without any knowledge that his actions violated a clearly established right.[1]

---

[1] The Third Amended Complaint (DE215) dismissed by the Court (DE221) dropped Ortiz as a defendant.

## I.   RELEVANT FACTUAL INFORMATION FROM PLAINTIFFS' DEPOSITIONS.[2]

When deposed, both plaintiffs testified to their lack of personal knowledge of Ortiz and had no understanding of his duties or responsibilities as a City employee (DE235-2:168; Pinilla Depo. p. 168; DE235-1:401-402; Fuller Depo pp. 401-402). Pinilla testified Ortiz worked for the City of Miami but had no idea "what his responsibilities were." (DE235-2:26-27; Depo pp. 26-27). Fuller acknowledged Ortiz was a City employee at all times (DE235-1:409-410; Fuller Depo pp.409-410).

Regarding the scope of Ortiz's responsibilities, Fuller could only "assume that it has to do with, you know, high-level operations of his [Commissioner Carollo's] office and his political agenda." (DE235-1:402; Fuller Depo pp. 402). Fuller never met Ortiz or had any conversation with him, and agreed he had no knowledge whether Ortiz harbored any personal animosity Ortiz against him (DE235-1:409; Fuller Depo p. 409). Pinilla conceded that Ortiz "exercised his discretion …" (DE235-2:27; Pinilla Depo p. 27).

---

[2] For purposes of the Alternative Motion for Summary Judgment on Qualified Immunity, Ortiz separately filed a Statement of Material Facts in compliance with Local Rule 56.1.

Aside from his conclusory statement that Ortiz was among those who "corroborated together to attack all of these properties on multiple fronts using different departments ..." (DE235-2:126-127; Pinilla Depo pp. 126-127), Pinilla offered no factual basis for any action taken by Ortiz, other than surmising that he "believed" Ortiz instructed the Code Enforcement Board how to vote but conceding Ortiz had no decision-making authority for the City (DE235-2:318-319; Pinilla Depo pp. 318-319). Ortiz did not serve on any City board, is not a Charter official, had no voting authority (DE235-1:402-403; Fuller Depo pp. 402-403), and never appeared at a Code Enforcement Board hearing involving the plaintiffs' properties (DE235-1:407; Fuller Depo p. 407).

Pinilla stated that Commissioner Carollo "gave direction to" Ortiz and others "to figure out how they could destroy our properties." (DE235-2:131-132; Pinilla Depo. pp. 131-132). Pinilla never mentioned what Ortiz did, however, that destroyed his properties (DE235-2:132; Pinilla Depo p. 132).

## II.    INCORPORATION OF CODEFENDANTS' MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT.

Ortiz asks to adopt the positions of his codefendants that are

equally applicable to his defenses and challenges to the SAC. Adoption of the codefendants' positions is intended to promote judicial efficiency by avoiding duplicative factual information and legal arguments that are fairly presented in other dismissal motions. Ortiz, as a City of Miami employee, is equally situated for the purposes of adoption of the relevant arguments.

### III.   REQUEST FOR HEARING.

Mr. Ortiz seeks a hearing pursuant to Local Rule 7.1(b)(2) for no more than two (2) hours cumulatively with his codefendants. For the reasons set out in this motion and the companion motions to dismiss and alternative motions for summary judgment, a hearing will allow the parties to present and discuss the application of the qualified immunity that bars this litigation, and address the court's questions concerning the other significant grounds for dismissal. The necessity of Ortiz and his City of Miami co-employees to obtain a full resolution of the immunity defenses prior to having to participate in extensive and intrusive litigation is of paramount importance.

### IV.   INTRODUCTION.

Ortiz "is and at all relevant times was" a City of Miami employee described as a "key staffer" to City of Miami Commissioner Joe

Carollo (SAC ¶¶28, 133). The one hundred (100) numbered paragraphs in the 4,403-paragraph SAC that name Ortiz reference only conduct engaged in as a City of Miami employee working for his superior, Commissioner Joe Carollo. The plaintiffs, individually and collectively, testified that Ortiz only and always served as a City employee, had no decision-making authority, had no voting authority, and exercised discretion in the performance of his duties. Based on the allegations in the SAC, whether the Court considers the plaintiffs' deposition testimony or not, Ortiz is entitled to qualified immunity as a matter of law and fact.

**V.    LEGAL STANDARD TO DISMISS COMPLAINT AND FOR SUMMARY JUDGMENT.**

This Court is familiar with the prevailing standard for reviewing a complaint for legal sufficiency. Ortiz adopts his previously presented statement of the legal standard, and also adopts the standards outlined in his codefendants' supplemental submissions pertaining to the alternative motion for summary judgment.

**VI.   GROUNDS FOR DISMISSAL**

**A.    Ortiz, as a City of Miami Municipal Employee, Is Entitled to Qualified Immunity for Actions Taken**

**Solely in his Capacity as a Municipal Employee.[3]**

The doctrine of qualified immunity compels dismissal of the SAC with prejudice as to Ortiz, who is alleged in the SAC to be "at all times" a City of Miami employee acting in accordance with his City of Miami functions. Plaintiffs confirmed that status by conceding Ortiz had no decision-making authority, did not have voting authority, and exercised discretion in the performance of his duties. Plaintiffs did not even know what Ortiz's duties were, except to concede he worked for the City in Commissioner Carollo's office.

Ortiz is absolutely allowed by law to communicate with Code Enforcement Board members, over whom he had no authority whatsoever. Florida law is clear on this point. Code enforcement boards are statutory creatures of the municipality creating them, governed by Chapter 162, Florida Statutes. Nothing in that legislative code prohibits board members from communicating with municipal employees and vice versa. To the contrary, enforcement boards are statutorily directed to work with the "administrative staff of the local governing body." § 162.07(2), Fla. Stat. (2023). As a result, the

---

[3] Ortiz adopts and incorporates the qualified immunity arguments presented in his codefendants' dismissal motions.

allegation of Ortiz communicating with the Code Enforcement Board in his administrative capacity, no matter what he said as a City of Miami employee, is entirely within the scope of his City employment.

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Stanton v. Sims*, 571 U.S. 3, 5-6, 134 S. Ct. 3, 4-5 (2013) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 815 (2009)). Qualified immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Scott v. Harris*, 550 U.S. 372, 376, 127 S. Ct. 1769, 1773-74 (2007). Qualified immunity recognizes the "strong public interest in protecting public officials from the costs associated with the defense of damages actions." *Crawford-El v. Britton*, 523 U.S. 574, 590, 118 S. Ct. 1584, 1592-93 (1998). The burden on the public official, and the public itself, as explained in *Harlow v. Fitzgerald*, 457 U.S. 800, 814, 102 S. Ct. 2727, 2736 (1982), can be insurmountable, implicating life, career consequences, and the ongoing business of government. *See Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir. 1949),

*cert. denied*, 339 U.S. 949, 70 S. Ct. 803 (1950).

Qualified immunity "is intended to 'allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law.'" *Brown v. City of Huntsville*, 608 F.3d 724, 733 (11th Cir. 2010) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)); *Grider v. City of Aubern, Ala.*, 618 F.3d 1240, 1254 (11th Cir. 2010). Qualified immunity attaches for conduct that is within the scope of the government representative's authority. *Kingsland v. City of Miami*, 382 F. 3d 1220, 1232 (11th Cir. 2004).

Based on both the required objective appraisal of the SAC and the plaintiffs' revealing deposition testimony, Ortiz functioned in his administrative staff role as a City of Miami employee working for Commissioner Carollo. The actions he took were discretionary, and consistent with his statutory authorization to work with the Code Enforcement Board. He was never a decision-maker and admittedly had no authority on the Code Enforcement Board or the ability to make any final decisions. He did nothing that caused any harm to the plaintiffs.

Since the plaintiffs concede that Ortiz functioned as a City employee at all times, and offered no facts supporting the assertion that he was not allowed to confer with Code Enforcement Board members, he was within his discretionary authority because the objective circumstances show that the challenged actions occurred in the performance of his duties and within the scope of this authority. *Boyce v. Andrew*, 510 F.3d 1333, 1341 (11th Cir. 2008) (citing *Mercado v. City of Orlando*, 407 F.3d 1152, 1156 (11th Cir. 2005) (affirming dismissal of Fourth Amendment claim as to supervisor).

Ortiz's alleged conduct, while apparently disapproved of by the plaintiffs, was nevertheless within the allowable authority of a municipal employee who merely worked as directed by his superiors, especially since he had no authority over the matters complained about by the plaintiffs. Consequently, his discretionary actions as a City of Miami employee cannot subject him to liability as a matter of law and fact.

The adverse consequences to all municipal employees, and to the municipality that could result from forcing mere subordinate employees to defend their actions against private interests is

incalculable and would effectively shutter local governments. That is the reason qualified immunity exists, enabling government servants to do their jobs without fear or favor.

Ortiz cannot be liable as a claimed aider and abettor merely because he did his job. His degree of involvement, knowledge, and culpability is not that of a decision-maker in any conduct alleged by the plaintiffs. *Failla v. City of Passaic*, 146 F.3d 149, 159 (3d Cir. 1998). Only employees who meet a heightened standard of knowledge, involvement, or responsibility can be held culpable as an aider and abettor. Ortiz was never put on notice that doing his job, acting at his superior's behest while engaged in his authorized duties, would subject him to civil rights liability. He is entitled to qualified immunity.

## B. Ortiz Was Not an Official City Decision-Maker.[4]

In light of the plaintiffs' concession that Ortiz was never a decision-maker, he cannot be held liable on the First Amendment retaliation or the Civil Conspiracy counts. "[F]or individual liability to attach under § 1983, the actor must usually have the power to make

_____

[4] Ortiz adopts and incorporates this argument from his codefendants' motions.

official decisions." *Betancourt v. Florida Dep't of Corr.*, 2023 WL 7548194, at *2 (N.D. Fla. 2023) (citing *Quinn v. Monroe Cnty.*, 330 F.3d 1320, 1326 (11th Cir. 2003)). The plaintiffs' admission that Ortiz is not an authoritative decision maker is a fatal flaw, subjecting the complaint to dismissal. *See Barteet v. Eismann*, 2013 WL 5236640, at *3 (S.D. Fla. 2013) (dismissing § 1983 action and instructing plaintiff to allege that the defendants are "official decision makers" and to "identify from where this authority stems") (cleaned up).

### C. The SAC Does Not Plead the Required Element of Causation.[5]

First Amendment retaliation requires that a plaintiff plead and prove the required element of causation, an essential element that is absent here. "[A] plaintiff must show that (1) he engaged in protected speech; (2) the defendant's conduct adversely affected his protected speech; and (3) a causal connection exists between the adverse conduct and the protected speech." *Watkins v. Bigwood*, 2023 WL 3711827, at *4 (11th Cir. 2023). The "plaintiff must establish a 'causal connection' between a government defendant's 'retaliatory

---

[5] Ortiz adopts and incorporates this argument from his codefendants' motions.

animus' and the plaintiff's subsequent injury." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019). Here, the plaintiffs admitted Ortiz harbored no animus against them (DE235-1:409; Fuller Depo p. 409). Nor did Ortiz take any action that caused harm to them. Doing his job as a City employee does not state a claim of First Amendment retaliation.

### D. The SAC Is an Impermissible Shotgun Pleading and Lumps Together Allegations Against Multiple Defendants.[6]

Ortiz renews his objection to the SAC as an impermissible shotgun pleading.

### E. Count 141 Is Barred by the Intracorporate Conspiracy Doctrine.[7]

Count 141 is barred by the intracorporate conspiracy doctrine applicable to public entities and employees.

### F. The § 1983 Claim Is Invalid Because the SAC Alleges that the City's Enforcement Actions Were Justified.[8]

Because the SAC makes clear that the City's enforcement actions were justified and based on probable cause, the § 1983 claims

---

[6] Ortiz adopts and incorporates this argument from his codefendants' motions.

[7] Ortiz adopts and incorporates this argument from his codefendants' motions.

[8] Ortiz adopts and incorporates this argument from his codefendants' motions.

cannot stand against Ortiz.

**G.    The SAC Is Barred by the Statute of Limitations.[9]**

To the extent plaintiffs seek to impose liability on Ortiz based on acts that occurred beyond the four-year limitations period applicable to § 1983 claims (whether individually or through a theory of conspiracy liability, the lawsuit is barred as untimely.

**H.    The SAC Does Not State a Claim for First Amendment Retaliation.[10]**

The SAC does not adequately allege a claim for First Amendment retaliation.

**I.    The SAC Does Not State a Claim for Civil Conspiracy.[11]**

The SAC does not adequately allege a claim for Civil Conspiracy in Count 141 against Ortiz.

**J.    The Doctrine of Legislative Immunity Prohibits Any Claim Arising from Conduct Concerning Commissioner Carollo's Legislative Obligations.[12]**

---

[9] Ortiz adopts and incorporates this argument from his codefendants' motions.

[10] Ortiz adopts and incorporates this argument from his codefendants' motions.

[11] Ortiz adopts and incorporates this argument from his codefendants' motions.

[12] Ortiz adopts and incorporates this argument from his codefendants' motions.

Because the SAC is based in substantial part on actions allegedly taken by City of Miami Commissioner Carollo in his legislative capacity (e.g., SAC ¶¶68-75, 94-102), Ortiz is immune from liability by application of the legislative immunity doctrine, based on his public service responsibilities facilitating Commissioner Carollo's legislative duties.

### K. The Business Entity Plaintiffs Lack Standing to Bring Claims Against Ortiz.[13]

To the extent the company plaintiffs purportedly assigned their claims to Fuller and Pinilla or did not exist at the times of the alleged conduct identified in the SAC, they lack standing to sue.

### L. Plaintiffs' Claims Are Barred as an Impermissible Attempt to Obtain Double Recovery for the Same Alleged Injuries.[14]

Plaintiffs seek a double recovery for the same damages alleged against Commissioner Carollo in *Fuller v. Carollo*, U.S.D.C. Case No. 1:18-CV-24190-Smith (S.D. Fla.). Such double recovery is not allowed.

---

[13] Ortiz adopts and incorporates this argument from his codefendants' motions.

[14] Ortiz adopts and incorporates this argument from his codefendants' motions.

**M.   The Doctrine of *Res Judicata* Bars the Plaintiffs from Bringing this Action Against Ortiz that Could and Should Have Been Brought During the Earlier Litigation.[15]**

The SAC alleges and relies on the same conduct that is the subject of *Fuller v. Carollo*, U.S.D.C. Case No. 1:18-Cv-24190-Smith (S.D. Fla.). Because Plaintiffs could have brought and were required to bring these claims in that litigation, the doctrine of *res judicata* bars this action against Ortiz.

**N.   The SAC Should Be Dismissed for Improper Claim Splitting.[16]**

The SAC should be dismissed for improper claim splitting.

**VI.   PLAINTIFFS' DEMAND FOR PUNITIVE DAMAGES SHOULD BE STRICKEN AS TO ORTIZ.**

Although the SAC purports to sue Ortiz in his individual capacity, all allegations involving him arise from his official municipal position. The plaintiffs' testimony confirms that Ortiz always functioned as a City employee (DE235-1:409-410; Fuller Depo pp.409-410). Therefore, the punitive damages asserted against Ortiz

---

[15] Ortiz adopts and incorporates this argument from his codefendants' motions.
[16] Ortiz adopts and incorporates this argument from his codefendants' motions.

should be stricken. *See generally Marcus v. Carrasquillo*, 782 F. Supp. 593, 600, 601 (M.D. Fla. 1992) ("Unless and until record evidence supports that there is a basis for recovery of punitive damages, the demand is premature."). *But see Johnson v. Israel*, 576 F. Supp. 3d at 1267 ("So, while Johnson's punitive damages claim against the City (or against the Defendants in their official capacities) must be STRICKEN, the Defendants have provided no basis to disturb Johnson's claim for punitive damages against the Deputies in their individual capacities.").

## VII.  CONCLUSION.

William Ortiz is entitled to a dismissal with prejudice or a judgment in his favor on all counts. He is entitled to an award of attorney's fees and costs pursuant to 42 U.S.C. §1988(b), and such other relief consistent with the interests of justice.

Respectfully submitted,

**KUEHNE DAVIS LAW, P.A.**
100 SE 2 Street, Suite 3105
Miami, FL 33131
Tel: 305.789.5989
Ben.Kuehne@KuehneLaw.com
IAedo@KuehneLaw.com
Efiling@KuehneLaw.com

By:    *S/ Benedict P. Kuehne*

**BENEDICT P. KUEHNE**
Florida Bar No. 233293

## CERTIFICATE OF SERVICE

I certify on January 17, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify the foregoing document is being served this day on all counsel of record either via transmission of Notices of Electronic Filing generated by CM/ECF or in another authorized manner for those counsel or parties not authorized to receive electronically Notices of Electronic Filing.

By:   *S/ Benedict P. Kuehne*
**BENEDICT P. KUEHNE**