# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 1:23-cv-24251-FAM

WILLIAM FULLER, et al.,

      Plaintiffs,

v.

THE CITY OF MIAMI, et al.,

      Defendants.

_____/

### DEFENDANT DANIEL GOLDBERG'S AMENDED/CORRECTED SUPPLEMENT TO HIS MOTION TO DISMISS SECOND AMENDED COMPLAINT AND ALTERNATIVELY, MOTION FOR SUMMARY JUDGEMENT[1]

---

[1] The only amendment/clarification appears as a (new) last full paragraph to Argument, Section B on p. 12.

## <u>TABLE OF CONTENTS</u>

RELEVANT FACTUAL BACKGROUND……………………………………….…… 1 – 3

INTRODUCTION TO AND STATUS OF THE LITIGATION..………………….……….3 – 4

RELEVANT DEPOSITION TESTIMONY FROM PLAINTIFFS………………….....4 – 8

LEGAL STANDARD FOR THE MOTION TO DISMISS AND SUMMARY JUDGMENT.......8

ARGUMENT ……………………………………………………………………….9

    A.  Plaintiffs do not have Article III Standing ……………………….…………….9 – 10

    B.  Mr. Goldberg was acting in his Official Capacity ………………………….11 – 12

    C.  Mr. Goldberg is Entitled to Absolute Immunity …………………………………...13-14

    D.  Mr. Goldberg is entitled to Qualified Immunity………………………….…………..14-20

    E.  Mr. Goldberg violated no clearly established right …………………………….....20-21

    F.  There is no temporal proximity between the alleged protected speech and Mr. Goldberg's acts………………………………………………………………………………..21 – 23

    G.  Plaintiffs cannot point to any Motive or Animus by Mr. Goldberg against them….. 23-24

ADOPTION OF SPECIFIC, IDENTIFIED ARGUMENTS OF CO-DEFENDANT(S)………..24

REQUEST FOR HEARING……………………………………………………………..24

CONCLUSION…………………………………………………………………..25

CERTIFICATE OF SERVICE……………………………………………………26

## RELEVANT FACTUAL BACKGROUND

The City of Miami ("City") is a municipality incorporated within Miami-Dade County, Florida. One of its responsibilities is to ensure the public safety of its citizens. For decades, this has been accomplished by establishing several departments such as police, fire, public works and relevant to the litigation herein, a zoning department. The City's Zoning Department is primarily responsible for ensuring that real estate within the City is maintained within certain safety and zoning regulatory guidelines to match the City's Zoning Code. Just like with any and all other City departments, the City's Zoning Department has a Zoning Director.

On September 30th, 2020 – seven (7) months before Dan Goldberg ("Mr. Goldberg") became the City's Zoning Director - Taylor Reid, a then City Unsafe Structures inspector, cited a business within the City located at 300 S.W. 12 Avenue (owned and operated by a Florida limited liability company called "El Shopping LLC". At all times relevant, El Shopping LLC was owned by William Fuller ("Fuller") and Martin Pinilla ("Pinilla"). That property is further described as "El Shopping" or "the property." In essence, it is a typical two-story structure housing several commercial tenants – retail stores and offices one sees in the downtown area of the City.

This First Notice was issued to El Shopping to "repair or demolish" the property as it was deemed an unsafe structure. **Exhibit A.** It allowed El Shopping to start the process to repair, bring the unsafe structure into a "safe" condition and compliance by submitting paper plans and obtaining the required permits/inspections as per the Florida Building Code and local ordinances with a fee of $110 or demolish the property. In other words, *this was not an order for demolition*, but rather gave El Shopping the option and opportunity to make the property safe by correcting the multiple dangerous, unsafe structural issues at the location. Notably, the notice gave El Shopping almost a month to either demolish the property or begin the repair process by securing

1

a building permit. Neither the SAC or El Shopping complain about *that* deadline. Likewise, the notice did not even require that *full compliance* be made by El Shopping *by any certain date.* **Exhibit A.** On its face, the pictures attached to the First Notice to El Shopping show several, serious structural problems, even to the untrained, naked eye. (**Exhibit A – pictures**). The record bears no evidence – and the SAC does not allege – nor did El Shopping's owners testify at their depositions – that a "factual engineering challenge" was raised by El Shopping that the structure was not unsafe.

From September 30th, 2020 until the Spring of 2021 – for seven (7) months – El Shopping did not demolish nor bring the unsafe elements related to the property into compliance. This then triggered a *new "*Notice of Unsafe Structure Violation." **Exhibit B.** It was issued by Rene Diaz, the then Chief of City's Unsafe Structures Department. The photographs taken and attached to *that* violation – when compared to those attached to Taylor Reid's First Notice – *are virtually identical*, demonstrating that El Shopping failed and/or refused to voluntarily comply with the First Notice. This second notice now constituted a lien against the El Shopping property (as permitted and provided by law). Four days later, Maurice Pons, a City building official, issued a notice of hearing directed to El Shopping setting it for May 21st, 2021, noticing and inviting El Shopping's owners to attend. **Exhibit C.**

On or about April 2021, Dan Goldberg ("Mr. Goldberg") – a Florida licensed attorney – was appointed as the City's new Zoning Director. At the (May 21, 2021) hearing, El Shopping was given an ultimatum to either repair or demolish the structure within 180 days, now, eight (8) months after the First Notice of violation was issued against the property. The order (from the Unsafe Structures Panel) is attached hereto as **Exhibit D.** Once again, it clearly sets forth *exactly* what El Shopping needed to do – *even at that late stage* – and by when the primary consideration

of which was to prepare plans and have them submitted to the City's Zoning Department within 30 days thereafter, and obtaining a building permit within 90 days from May 21st, 2021. Parenthetically, once again, Plaintiff El Shopping does not claim that this notice was ambiguous, confusing, or that the deadlines set therein were unreasonable. The record is also void as to whether El Shopping needed any extension or asked for any extensions.

Due to El Shopping's continued defiance, its parking garage Certificate of Use was revoked as allowed by the City's charter 13936. **(SAC, ¶1526).** Following that lawful enforcement action, the City then revoked the Certificates of Use from *all tenants* in El Shopping due to insufficient parking. Once again, Plaintiffs do not challenge or counter the legality of all of this objective, City Code-authorized, zoning enforcement action. Rather, they claim that all of this enforcement activity was all retaliatory enforcement for El Shopping exercising its First Amendment rights three or so years earlier. Also notable, it was not until October 12th, 2021 – over a year after the First Notice – that El Shopping and the City finally entered into a "Compliance Agreement" which speaks for itself and which is attached hereto as **Exhibit E**. **Exhibits A-E** constitute absolute proof and an admission by El Shopping that the property was, in fact, in violation of the City's Code worthy of either demolition or structural repair.

### INTRODUCTION TO AND STATUS OF THE LITIGATION

Three years later, and on April 19, 2024, and following two prior failed complaints, Plaintiffs filed a 142-count 643-page SAC (D.E. 129) against the City and several Defendants to include Mr. Goldberg. It generally claimed a vendetta-motivated effort by certain City of Miami ("City") officials led by Joe Carollo ("Carollo") to weaponize the City's Zoning Department's Code (rules and regulations) to pressure and economically strangle several of Plaintiffs' businesses – one of which is El Shopping – all within the City – alleging retaliation for Plaintiffs' *earlier*

3

support of a political candidate – Alfie Leon – an opponent to Carollo for the District 3 Commissioner seat for the City. Mr. Goldberg is named in Counts **54**, **121**, and **132** of the SAC.[2] **Notably and crucial to Mr. Goldberg, those counts all center around a single property, the one called "El Shopping".**

Pursuant to Fed. R. Civ. P. 12(b) (6), and 12(f), Mr. Goldberg moved to dismiss Plaintiffs' Second Amended Complaint ("SAC") [**D.E.129**][3] for failure to state a claim upon which relief may be granted and to strike the SAC due to its redundant, immaterial, impertinent and scandalous allegations[4]. Holding on a ruling on Mr. Goldberg's MTD the SAC, the Court allowed him – and all of the remaining Defendants – to take some limited discovery – namely, the depositions of the Plaintiff property owners – Fuller and Pinilla – of all of the identified "targeted" properties – to allow the Defendants to supplement their arguments, and also welcomed the Defendants to include motions for summary judgement in their supplements.[5] Throughout below, Mr. Goldberg adopts some parts of some of the supplements of his Co-Defendants.

### RELEVANT DEPOSITION TESTIMONY FROM PLAINTIFFS

Fuller was identified as the corporate representative for Plaintiff El Shopping, LLC. He was deposed on December 12, 2024; but at Pinilla's deposition, he was also questioned with regards to El Shopping. At Fuller's deposition, he was presented with **Exhibit 1**, which was a list of several properties alleged to having been "targeted" by Carollo who must have been helped by Steve Miro. Fuller admitted that "El Shopping" was *not* on that list. **Fuller Depo p. 138:20-141:33**. Fuller was then presented with two *other* "hit" lists that Rene Diaz had circulated allegedly for

---

[2] **Count 143** against Mr. Goldberg has been dismissed by this Court. **Count 54** is by El Shopping; **Count 121** is by Fuller; **Count 132** is by Pinilla.
[3] Hereinafter referred to as MTD.
[4] That particular motion was granted.
[5] Mr. Goldberg hereby moves for summary judgment under Fed. R. Civ. P. 56.

similar purposes—**Exhibit 3**—and again, Fuller admitted that El Shopping was not on those two lists either. **Fuller Depo p. 183:12-186:14.**

When questioned, Fuller could not even recall whether, *in fact*, El Shopping had ever exercised its First Amendment right by making a campaign contribution to *any* City of Miami political candidate. **Fuller Depo p. 389:18-22.** Needles to say, as a limited liability company, El Shopping LLC could not even vote at the "Carollo-Leon" election.

When asked to describe the precise evidence supporting the three claims against Mr. Goldberg, all Fuller was able to provide *was a conclusion and not any fact*. He answered, *"he was an extension of the retaliations of Joe Carollo related to the rights that Joe Carollo violated with us, the free speech, in regards to the free speech"*. **Fuller Depo p. 392:5-13**. Fuller was advised that his answer to the question was merely his conclusion – not a fact - and he was then asked a more precise, more pressured questions:

**Q:** "*What I would like to know is, do you have any direct evidence, and by that I mean, either email, an eye witness, yourself included, who can tell us that at some point in time, they witnessed Joe Carollo give a directive or order to Dan Goldberg to do something, anything that would have impacted on the enforcement activity that was experienced by El Shopping*?"

**A:** *"No, unfortunately, I have never had an opportunity -- we have never had an opportunity to speak to Dan Goldberg or determine what ... how that came to be". "But again, it did not come by osmosis.*

**Q***: Alright, but I just want to make sure. There is no fact or witness that you ever know of or document that would indicate a directive, an order, a request, whatever you want to call it, directly between Mr. Carollo and Mr. Goldberg that would have an impact or effect on El Shopping? I got that straight?*

*A: Yes, that's correct.*

**Fuller Depo p. 390:17-391:15**

Fuller was asked what evidence he had that Mr. Goldberg harbored some type of *animus* with regards to El Shopping and he gave a non-responsive, confusing, diversionary answer that he disbelieved Mr. Goldberg's testimony in court a year ago speaking about Mr. Goldberg's relationship with a Greenberg Traurig attorney that Fuller believed was not accurate. **Fuller Depo p. 391:20-392:14**. That answer was totally unresponsive to the laser-sharp question. The take away from that intentional non-responsive answer is that Fuller's honest, responsive answer would have been "none" and this Court can and should take it as such.

In sum, Fuller's answers made clear that he has no proof of Goldberg's involvement in any personalized effort to harm El Shopping and only presented an unsubstantiated, singular-viewed opinion (and factually insufficient conclusion) when he said, "*So, I believe that, in fact, unless he can explain it in another form, Mr. Goldberg did have animus specifically to Mr. Pinilla and ourselves and our business.*" **Fuller Depo p. 393:16-19.** Fuller seems to believe, and is respectfully under the mistaken impression, that he does not have the burden of proof here – that Mr. Goldberg has it – and that such a conclusory statement as opposed to personal knowledge – will suffice and thereby shifts the burden to Mr. Goldberg to dispute it; but Fuller is mistaken and that is violative of the federal pleading rules and standards.

Furthermore, Pinilla claims, without a shred of substantiation, that several Defendants in this case *"came together and [] said, 'How can we impose the maximum amount of damage on these people.'"* **Pinilla Depo p. 172:17-19**. He erroneously claims that he has personal knowledge of this simply "because [he] lived through it." **Pinilla Depo p. 173:1-2**. Again, these answers do not equate to allegations of *fact*. They are suspicions, beliefs and total conjecture.

Fuller supported his "conclusions" with an example that other nearby businesses did not have their Certificates of Use revoked (suggesting either favorable treatment to those businesses and/or the selective weaponization against El Shopping), but he could only identify one, a Chinese restaurant which he claims suffered a CU revocation but was still allowed to stay open and operate. But when Fuller was *specifically* asked whether that violation was similar to the one of El Shopping – an unsafe structure – he begrudgingly confessed that it was not, **Fuller Depo p. 397:6-8**, and acknowledged that it was a "work without a permit" issue, the first one being a public safety matter, the other being a technical matter. **Id.** When asked whether Mr. Goldberg was the decisionmaker with regards to the alleged "favorable" permit/Certificate of Use issue with regards to the Chinese restaurant, Fuller's answer was, "*No, I have no knowledge of that.*" **Fuller Depo p. 395:17-397:5.**

As demonstrated, this Fuller and Pinilla testimony – together with other deposition testimony cited below – *now* make clear that Mr. Goldberg should be dismissed with prejudice out of the SAC or that summary judgment should be granted.

| Date | *Alleged* protected activity | Citations |
|---|---|---|
| 11/2017 | Fuller and Pinilla supported Leon, Carollo's political opponent, including rallies hosted by Jenny Lee Molina which were held on property owned by 1393 LLC; Tower Hotel posted Leon signs | Pinilla Dep. 271:9-12, 276:15-21; Fuller Dep. 345:3-5; DE 140-4 (*Fuller I*, DE 559, Tr. 5/8/23 (Pinilla) 192:13-15; DE 560, Tr. 5/9/23 (Pinilla) 68:4-70:12) |

| Date | *Alleged* protected activity | Citations |
|------|------------------------------|-----------|
| 3/12/2018 | Barlington Group filed an ethics complaint against Carollo and others, not Noriega | Pinilla Dep. 271:19-22; Fuller Dep. 345:6-8; *Fuller I* DE 506-5, Pl. Tr. Ex. 425 |
| 9/9/2018 | Calle Ocho filed a complaint for injunction against the City and others not Noriega | Fuller Dep. 345:16-20 |
| 10/11/2018 | Fuller and Pinilla filed a complaint in *Fuller I* against Carollo and others not Noriega | Fuller Dep. 345:9-11; Pinilla Dep. 271:16-18 |
| 2/14/2019 | Fuller made statements at a Commission meeting against Carollo and the City not Noriega | Fuller Dep. 345:12-15 |
| 5/2019 | Fuller and Pinilla held a press conference against Carollo not Noriega | Pinilla Dep. 269:17-20, 271:13-15 |

Notably, *all* of these "expressions" occurred years before Mr. Goldberg was appointed as the City's Zoning Director. Mr. Goldberg's Declaration Exhibit A to his Statement of Material Facts.

**LEGAL STANDARD FOR MOTION TO DISMISS/SUMMARY JUDGEMENT**

To avoid unnecessary duplication, Mr. Goldberg adopts the memorandum of law on a motion to dismiss cited in his MTD @ pp 2-3. As for summary judgement, Mr. Goldberg adopts the legal standard in the Victoria Menendez' MTD Supplement/Motion for Summary Judgement @ p.1.

<b>ARGUMENT</b>

## A.  <u>PLAINTIFFS DO NOT HAVE ARTICLE III STANDING</u>

To avoid unnecessary duplication here, Mr. Goldberg adopts the memorandum of law cited in his MTD, Argument, Section A @ pp 3-10. [**D.E. 129**]. However, Mr. Goldberg supplements this argument by adding that based on the depositions of Fuller and Pinilla, El Shopping – as an entity – did not exercise any free speech that supports any count against Mr. Goldberg. After all, El Shopping had no voting rights in the "Leon-Carollo" election and the SAC does not allege that El Shopping ever donated to Alfie Leon's election campaign, much less, that Mr. Goldberg was aware of such and, at best – but legally insufficient – Fuller said that he was "uncertain" as to whether El Shopping "might" have made a contribution to the Alfie Leon campaign. **Fuller Depo p. 398:18-22.** This, alone, should put an end to Plaintiffs' SAC against Mr. Goldberg. Also, at the very least, *Pinilla and Fuller* individually have no Article III standing and Counts **121** and **132** should be dismissed with prejudice. No doubt, they will raise "intimate relationship" and "expressive association arguments." But they will fail too.

There are only two types of protected association under the First Amendment: intimate association ("personal relationships that attend the creation and sustenance of a family"), and expressive association ("the purpose of the association is to engage in activities independently protected by the First Amendment."). *McCabe v. Sharrett*, 12 F.3d 1558, 1563 (11th Cir.1994) (citing *Roberts v. United States Jaycees*, 468 U.S. 609, 617-18 (1984)). Plaintiffs claim that the basis of the alleged constitutional violation against Mr. Goldberg was Pinilla's and Fuller's association with El Shopping. *See* **Fuller Depo p. 337:3-338:12, 78:5-79:2.**[6] But Fuller concedes

---

[6] The only evidence reflecting that any of the entities may have allegedly engaged in their *own* speech is Barlington Group filing an ethics complaint against Carollo (Pinilla Dep. 269:21-22, 270:13-15, 271:19-22, 333:3-22; Fuller Dep. 336:24-337:2) on March 12, 2018 (*Fuller I* DE 506-5, Pl. Tr. Ex. 425); Tower Hotel posting Leon signs in

9

that El Shopping did not engage in its own protected speech, save for some "potential" campaign contributions that were not hindered by Mr. Goldberg's actions. **Fuller Depo p. 73:14-74:13; Fuller Depo p. 389:18-22**. Evidently, Fuller and Pinilla seek to attribute *their speech* to El Shopping, LLC simply because they own and operate the business. This association is insufficient to establish an intimate or expressive association for First Amendment purposes.[7]

Furthermore, as set forth previously in Mr. Goldberg's MTD (**D.E. 140 @ 14-15**) and Reply (**D.E. 176 @ 5**), Plaintiffs fails to allege or show any speech from Pinilla, Fuller, and/or El Shopping, LLC that was deterred or chilled, and therefore they fail to satisfy the second prong of their retaliation claim. While El Shopping cannot vote, it remains free to make any political campaign contribution it desires. In light of Plaintiffs admissions that they regularly violated City Code,[8] the alleged retaliatory actions would have occurred *regardless of alleged protected activity*, even if Plaintiffs' claims that Certificates of Use were revoked for tenants of El Shopping, LLC, thereby interfering with Plaintiffs' tenants and business[9]. In short, neither El Shopping LLC, nor Pinilla or Fuller have Article III standing.

---

2017 (Pinilla Dep. 276:15-21); and Calle Ocho filing a complaint against the City in 2018 (Fuller Dep. 345:16-20). However, as set forth below, those entities cannot maintain claims against Noriega because there is no temporal proximity between their purported speech and Noriega's alleged retaliatory conduct. Further, Noriega adopts statutes of limitations positions of other Defendants. Indeed, three Plaintiff entities, Havana Bungalows, El Shopping, and Calle Siete did not exist when some or all of the alleged protected activity occurred. *See* DE 140-1. Moreover, the alleged protected activity of Fuller and Pinilla, individually, is limited to filing the 2018 lawsuit against Carollo and holding the 2019 press conference. A non-party, 1393 LLC owned the properties on which the 2017 rallies were held, and Barlington Group filed the 2018 ethics complaint. *See* Compl. at ¶¶ 67, 135, 216; *see* DE 140-4 (*Fuller I*, DE 559, Tr. 5/8/23 (Pinilla) 192:13-15; DE 560, Tr. 5/9/23 (Pinilla) 68:4-70:12); *Fuller I*, DE 1.

[7] *See also* "Activities and services that are primarily **commercial** rather than communicative do not qualify as expressive association that is protected under the First Amendment." *Edmondson v. Velvet Lifestyles, LLC*, No. 15-24442-CIV, 2016 WL 7048363, *10 (S.D. Fla. Dec. 5, 2016) (original emphasis). As the Eleventh Circuit has explained, "the more commercial the associational interest involved the less likely first amendment protection attaches." *Rivers v. Campbell*, 791 F.2d 837, 840 (11th Cir. 1986) ("Rivers's seeks to associate with the Bay County area school children for commercial gain only. In our view, such 'association' is not entitled to first amendment protection.").

[8] *See* Pinilla Dep. 209:11; Fuller Dep. 47:24-48:5, 330:4-331:10; *see also Fuller I*, Def. Tr. Exs. 5, 6, 9-11, 13, 16, 24, 28-30, 32-34, 37, 39, 41, 43, 45, 63-80, 89, 90, 98, 100, 101, 111, 603, 604, 716, 719; DE 140-4 (DE 562 Tr. 5/11/23 (Fuller) 30:24-31:2, 186:13-187:6).

[9] Pinilla Depo p. 185:6-12

### B. **MR. GOLDBERG WAS ACTING IN HIS OFFICIAL CAPACITY**

Mr. Goldberg asserts that at all times relevant, he was acting in his official capacity and only within his discretionary authority. **S.O.F., Ex 1. ¶ 5-8.**

When an official is sued under his/her § 1983 in his official capacity, "the suit is simply 'another way of pleading an action against an entity of which an officer is an agent.'" *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citing *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978))). "Such suits against municipal officers are therefore, in actuality, suits directly against the city that the officer represents." *Id.* "The Eleventh Circuit has instructed courts to treat suits against government agents in their official capacities as functionally equivalent to suits against the municipality itself."[10] For this reason, this Court correctly dismissed the SAC against Yvonne Bayona – Plaintiffs alleged nothing more than official conduct by her and they allege nothing more in the SAC by Mr. Goldberg. Moreover, the deposition testimony of Pinilla and Fuller did not "fill in the SAC's gaps" with regard to Mr. Goldberg. Indeed, if anything, with their deposition testimony, they dug themselves into a hole all the way down to the center of the Earth.

The Court wrote "[a]s an initial matter, Defendant Bayona notes for the Court that "[a] suit against a defendant in [her] official capacity is, in actuality, a suit against the government entity which employs [her]." *Hazleton v. City of Orlando*, No. 6:10-cv-342-Orl-35-DAB, 2010 U.S. Dist. LEXIS 157243 (M.D. Fla. June 10, 2010) (citing *Stephens v. Geoghegan*, 702 So. 2d 517, 527 (Fla. 2d DCA 1997)). Here, Plaintiffs have brought suit against Defendant Bayona in her individual

---

[10] *Durruthy v. City of Miami*, No. 01-4155-CIV-MORENO, 2002 U.S. Dist. LEXIS 25857, at *3 (S.D. Fla. 2002); *see also Torres-Bonilla v. City of Sweetwater*, No. 16-24011-CIV-MORENO, 2017 U.S. Dist. LEXIS 189826, at *1 (S.D. Fla. Nov. 15, 2017) (dismissing official-capacity claims against detectives as redundant where city was a defendant).

11

capacity. However, allegations in the Second Amended Complaint show that Defendant was acting in her official capacity as a member of the Code Enforcement Board. . . ." D.E. 198 at 3 (emphasis added).

Mr. Goldberg's declaration makes clear that all of his actions taken with regards to El Shopping were under his cloak and discretion as the City's Zoning Director. **S.O.F. Ex 1, ¶ 3, 5**. That action was consistent with not only the City's Zoning Code, but also with merely processing enforcement action initiated by Taylor Reid, seven months before Mr. Goldberg was even appointed as the City's Zoning Director. **S.O.F. 7**.

Chapter 10, Section 2 of the City Code deals with the City's Planning, Building and Zoning Department and Section 2-211 addresses the denial or revocation of Certificates of Use. It has been amended several times over years, but relevant to Mr. Goldberg (and El Shopping), is the October 22, 2020 amendment (via City Ordinance 13936).  Section (a) – not relevant here – because once Mr. Goldberg became involved with El Shopping, the Certificate of Use had already been granted and the matter before Mr. Goldberg did not involve a renewal. Section (b) – the relevant section - deals with the revocations of Certificates of Use. Before his tenure as the Zoning Director, the revocation of a Certificate of Use was discretionary, but no longer when he took over that office. Mr. Goldberg had nothing to do with that change in legislation.  The amendment to Section (b) had seven (7) criteria, any one of which, if applicable, mandated revocation.  As such, with regard to Mr. Goldberg's actions in specific relation to El Shopping, he had zero discretion; Mr. Goldberg followed the mandate of City Code 2-211 Section B. Criteria 7 applied as to the Certificate of Use revocation for the garage (it was deemed unsafe). Criteria 5 applied as to the other Certificates of Use as the shopping center had case a large chunk if its required parking to be unusable which cross reference to another provision of the City Code that required a minimal number of parking

12

spots to exist as usable space and the garage closure – due to being unsafe- eliminated them from use.   Thus, in this specific regard, Mr. Goldberg's enforcement action was mandatory and not discretionary.   Also, Section 2-211 did not provide an option of "suspending" the revocation of a Certificate of Use pending resolution between the City and the property owner.

### C. <u>MR. GOLDBERG IS ENTITLED TO ABSOLUTE IMMUNITY</u>

Mr. Goldberg is entitled to absolute immunity because, as stated, the acts alleged as to him were conducted pursuant to his role as the City's City Zoning Director, and as a result, summary judgment (or dismissal) must be entered. **S.O.F. Ex 1, ¶ 5-8**.  Absolute immunity applies where a city legislator is performing duties integral to the judicial process. *Parette v. Virden,* 173 Fed. Appx. 534, 536 (8th Cir. 2006).[11] The absolute immunity doctrine shields prosecutors and other lawyers from § 1983 claims, and derives from the common law: "[l]ike witnesses, prosecutors and other lawyers were absolutely immune from damages liability at common law for making false or defamatory statements in judicial proceedings (at least so long as the statements were related to the proceeding), and also for eliciting false and defamatory testimony from witnesses." *Burns v. Reed*, 500 U.S. 478, 489–92 (1991). This doctrine is well reasoned, "as absolute immunity for this function serves the policy of protecting the judicial process." *Id*. See, also, *Rivera v. Leal,* 359 F.3d 1350, 1353 (11th Cir. 2004) (citing *Buckley v. Fitzsimmons,* 509 U.S. 259, 273, (1993)). *See also Flournoy v. Copley*, 2013 WL 5487415, at *1 (M.D. Fla. Sept. 30, 2013) (collecting cases).

Several other Federal Court of Appeals have applied absolute immunity specifically to a

---

[11] *See also Dornheim v. Sholes,* 430 F.3d 919, 925 (8th Cir. 2005) (absolute immunity from civil rights suit applies where official was performing duties that were integrally part of judicial process, provided function was granted immunity under common law at time § 1983 was enacted); *In re Castillo,* 297 F.3d 940, 947–48 (9th Cir. 2002) (applying absolute quasi-judicial to bankruptcy trustee and her assistant and noting many contexts in which immunity doctrine extends).

city attorney. For example, in *Benavidez v. Howard*, the Tenth Circuit recognized that the city attorney and assistant city attorneys were absolutely immune from collateral § 1983 suit for damages for their acts of preparing and filing motion for protective order on behalf of a city clerk. 931 F.3d 1225 (10th Cir. 2019). The Seventh Circuit also recognized that an assistant city attorney was absolutely immune against a suit alleging that they had retaliated against public criticism by initiating proceedings to demolish a house. *Smith v. Power,* 346 F.3d 740 (7th Cir. 2003). So too in the Sixth Circuit, where a city attorney was shielded by prosecutorial immunity from a § 1983 claim based on bringing a nuisance claim against a nightclub owner.[12] Similarly, Mr. Goldberg is protected by absolute immunity as the City's Zoning Director. The Eleventh Circuit has extended such absolute immunity under the "integral relationship test".[13] See Mr. Goldberg's **MTD @ Section B(i).** Absolute immunity unequivocally protects Mr. Goldberg with respect to the allegations here, as his actions were integrally related to his authority that was provided under the City Code and Zoning Department's jurisdiction and authority.

### D.  MR. GOLDBERG IS ENTITLED TO QUALIFIED IMMUNITY

Mr. Goldberg's role was virtually identical to that of the City's Building Director – Asael Marrero ("Marrero"), who this Court already dismissed. As to Marrero, this Court determined that drafting and revising City policies/ordinances and discussing such changes with other City Officials "are within the normal discretionary functions of a Building Director" in their interest of building safety—a job related goal. **DE 199 at 4.** Similarly, Mr. Goldberg's zoning enforcement

---

[12] *Red Zone 12 LLC v. City of Columbus*, 758 Fed. Appx. 508 (6th Cir. 2019). *See also Parette*, 173 F. App'x at 536 (Eighth Circuit finding a city attorney absolutely immune from liability arising from prosecuting a condemnation action).

[13] *See Jones v. Cannon*, 174 F.3d 1271, 1281 (11th Cir. 1999) ("quasi-judicial officers also enjoy absolute immunity.") (citing *Imbler*, 424 U.S. at 420–21).

decisions constituted "normal discretionary functions" (of a Zoning Director).[14] *See* §16 City of Miami Charter.

As the Court stated in its Order dismissing Marrero:

"The Eleventh Circuit in *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004) held that the scope of discretionary authority inquiry is two-fold. A court must ask "whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize."

"The Eleventh Circuit has further elaborated that "[t]he inquiry is not whether it was within the defendant's authority to commit the allegedly illegal act." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998). "Instead, a court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties. The scope of immunity should be determined by the relation of the [injury] complained of to the duties entrusted to the officer." *Id.* That is, the court must "look to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." *Holloman*, 370 F.3d at 1266."

**DE 199 at 4.**

As **Exhibit A** demonstrates, the first enforcement notice/action against El Shopping took place in September, 2020, over seven (7) months before Mr. Goldberg was even hired by the City as its Zoning Director. So, what was Mr. Goldberg supposed to do when he took the helm at the Zoning Department? Negligently (or corruptly) hide (or ignore) El Shopping's unsafe structure violation, a matter of public record? Should he have just swept it all under the rug? Or, should he have simply

---

[14] The City Manager's powers and duties as the head of the administrative branch of the city government are set forth in Section 16 of the City of Miami Charter: "The powers and duties of the city manager shall be to: (a) See that the laws and ordinances are enforced; (b) Appoint and remove, except as otherwise provided in this Charter, all directors of the departments and all subordinate officers and employees in the departments in both the classified and unclassified service; all appointments to be upon merit and fitness alone, and in the classified service all appointments and removals to be subject to the civil service provisions of this Charter; (c) Exercise control over all departments and divisions created herein or that may be hereafter created by the city commission; (d) Attend all meetings of the city commission with the right to take part in the discussion but having no vote; (e) Recommend to the mayor and city commission for adoption such measures as the city manager may deem necessary or expedient; (f) Keep the mayor and city commission fully advised as to the financial condition and needs of the city; and (g) Perform such other duties as may be prescribed by this Charter or be required by the mayor or ordinance or resolution of the city commission.

followed up - such as he did – with what was already in the Zoning Department's lawfully permissible enforcement process and pipeline?

In addition to the SAC's admission that Mr. Goldberg was at all times material acting in his official capacity as the City's Zoning Director (as the head of an administrative department in the City government), Pinilla recognizes that Mr. Goldberg had discretion to discuss safety-related actions with City officials, including contributing to policy, citing parking violations, and enforcing the City's Zoning Code. **Pinilla Depo p. 171:5-10**; **S.O.F., Ex 1, ¶ 3-5**.

So, in rejoinder, according to Pinilla, the issue was that El Shopping's parking garage (which contains three separate folio numbers) was cited three times, one per folio number, rather than only once for the whole structure. **Pinilla Depo p. 171:12-172:11.** That's just word salad and mental gymnastics combined. Pinilla does not identify any policy or procedure that would make even *that* discretionary action improper. He cannot cite to any provision of the City's Code that attaches a violation to a property consisting of various parcels, rather than to each separate parcel and correlating folio number. Instead, he states that this is "inconsistent with his experience" without articulating that experience, but on that basis, in Pinilla's world, it *must* have been illegal. The conclusory nature of this allegation is best summarized in his own words: "*So it was done—I can only assume it was done maliciously because it was done incorrect.*" **Pinilla Depo p. 172: 5-6.** An assumption cannot substitute for an allegation of fact, no more than a mere conclusion. And, Neither Pinilla nor Fuller cite any law, rule, regulation, statute or code, that prohibits one City Code violation per folio number. Indeed, reason, logic and common sense would suggest otherwise.

Such an allegation is insufficient to state a claim upon which relief can be granted. "[T]he inquiry is whether the act was reasonably related to the outer perimeters of an official's

discretionary duties." DE 199 at 5 (citing *Harbert Int'l*, 157 F.3d at 1282). As this Court explained, "Marrero does not need to point to a specific City Charter or Code to show in fact that he was authorized to craft or apply City ordinances and policies. Determining when a property owner has failed to meet the requirements of a city ordinance or playing a part in drafting City policies are at least within the outer perimeters of Defendant Marrero's discretion as Building manager." *Id.* The Court also found that "Marrero was performing job-related functions as the City Building Director, such as strengthening city policies and determining when a property owner has failed to meet the requirements of the city's building ordinances." *Id.* at 10.

As stated, but to repeat, Mr. Goldberg is quite similarly situated – indeed better situated – than Marrero was for dismissal as the enforcement action against El Shopping was initiated before Mr. Goldberg became a City employee. All he did was follow those through with that enforcement already put in play by somebody in the Zoning Department who possessed the discretion and authority to cite the defiant El Shopping.

In dismissing Building Director Marrero based on qualified immunity, the Court distinguished previous cases in the Eleventh Circuit, *Bennett* and *Bailey v. Wheeler*, 843 F.3d 473 (11th Cir. 2016), as follows: "What is different in the case here and the pair of Eleventh Circuit cases *Bennett* and *Bailey* is that there are layers to the First Amendment speech and direct action by the parties. In both of the Eleventh Circuit cases, there is direct speech by the plaintiff, and that speech is followed by direct intimidation from sheriffs. Here, it is not clear whether there is political speech by all of the Plaintiffs. While that may not matter as much for Plaintiffs in alleging a valid claim of retaliation, it matters more for proving that Defendant Marrero violated a clearly established right. Also, it is alleged that Carollo was the 'motivating force in instigating the unconstitutional retaliation,' not Defendant Marrero. Further, Defendant Marrero did not physically intimidate or

17

harassed Fuller, Pinilla or El Shopping. Marrero was performing job-related functions as the City Building Director, such as strengthening city policies and determining when a property owner has failed to meet the requirements of the city's building ordinances. The Court finds Plaintiffs' precedent either not controlling or inapposite to this case." **D.E. 199 @ 10**.

The same reasoning applies to Mr. Goldberg. There is no evidence of any direct intimidation or malicious intent by Mr. Goldberg of any Plaintiff following that Plaintiff's alleged speech. **S.O.F. Ex 1, ¶ 9-10, 12**. As with Plaintiffs' allegations against Marrero, in their claims against Mr. Goldberg, they also allege that Carollo was the "motivating force in instigating the unconstitutional retaliation". *See* SAC ¶¶ 590, 792, 1090, 1290, 1601, 2090, 2374. Mr. Goldberg did not physically intimidate or harass Plaintiffs. He was performing job-related functions as the Zoning Director such as strengthening City zoning policies.

As the head of the administrative branch of the City's Zoning Department, Mr. Goldberg was also performing job-related functions when he looked into property building, maintenance, and zoning compliance. In accordance with that authority, it is undisputed that the City grants its Zoning Administrator authority to administer and enforce the City of Miami's Zoning Ordinances. *See* City of Miami Charter Art. 21 § 2101. **S.O.F. Ex 1, ¶ 3-5, 6-8**.  As such, even viewing the facts in the light most favorable to Plaintiffs, Mr. Goldberg was clearly acting within his discretionary authority to shut down the parking garage at El Shopping after a hearing before the Unsafe Structures Panel was held and a Final Order was issued.

The subsequent revocation of El Shopping's Certificate of Use for violation of the City's zoning ordinance after almost two years of ignored violations and infractions on another than an unsafe structure was certainly a discretionary function within Mr. Goldberg's authority. *See* City of Miami Zoning Ordinance Art. 21 § 2101. **S.O.F. Ex 1, ¶ 6, 8**.  Plainly stated, the SAC, Fuller

and Pinilla cannot sufficiently connect any "Carollo-furor weaponizing" against El Shopping with Mr. Goldberg's follow up with what Mr. Goldberg's predecessors had put into motion many months earlier and before Mr. Goldberg joined the City, and which in fact, was objectively justified by Unsafe Structures Inspector, Taylor Reid. Finally, there is no allegation in the SAC – or testimony by Fuller and Pinilla – *that Mr. Goldberg knew of any then existing animus between Carollo and Fuller and/or Pinilla*.

The SAC and Fuller skirt that reality with a claim that Mr. Goldberg gave preferential treatment to a Miami-Dade County Charter School – a tenant at El Shopping – by restoring its Certificate of Use after the school objected and grieved. (**SAC @ \*1536; Fuller Depo. p. 190: 3-16 and 191: 1-12**), claiming that the City failed to follow a pre-action notice to Miami-Dade County Public Schools. That argument actually cuts *against* El Shopping because the City re-issued that Certificate of Use on a bona fide legal deficiency in its failure to send a pre-action notice to that tenant before the revocation. That oversight does not support a § 1983 claim against Mr. Goldberg as it fell within his discretion. **S.O.F. Ex 1, ¶ 8**.

Plaintiffs cannot overcome the burden once it shifts to them. "Once discretionary authority is established, the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity." *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003). "To overcome qualified immunity, the plaintiff must show that (1) the defendant violated a constitutional right, (2) this right was clearly established at the time of the alleged violation." *McGriff*, 522 F. Supp. at 1252 (S.D. Fla. 2020). From the face of the Plaintiffs' SAC and supported by the depositions of Fuller and Pinilla they cannot show that Mr. Goldberg knew that Carollo was "behind" Taylor Reid's (earlier) enforcement action against El Shopping. **Pinilla Depo p. 168:15-170:1**.

The public record, **Exhibits 1-5** hereto belie Fuller's misplaced (and misdirected) conclusions

against Mr. Goldberg. Rather, they show El Shopping's defiance, disdain for and disobedience against lawful City enforcement action which began *well before Mr. Goldberg even worked at the City.*

### E.  <u>MR. GOLDBERG VIOLATED NO CLEARLY ESTABLISHED RIGHT</u>

Plaintiffs also cannot establish that the right was clearly established at the time of the challenged conduct. *Id.* They simply cannot meet this burden.

To show a clearly established right, a plaintiff may "point [] to a 'materially similar case [that] has already been decided[,]' [] point [] to 'a broader, clearly established principle that should control the novel facts of the situation[; or] the conduct involved in the case may so obviously violate the [C]onstitution that prior case law is unnecessary. *Echols*, 913 F.3d at 1324 (quoting *Loftus*, 690 F.3d at 1204-05). Here, there is no case directly on point nor does any precedent "place[] the constitutional question 'beyond debate.'" *Echols*, 913 F.3d at 1324 (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). Plaintiff cites no case law that would have given Mr. Goldberg "fair notice" that he could be liable under clearly established law for enforcing City Code, punishing repeated (and admitted)[15] City zoning violations, and coordinating with City officials with respect to those violations, initiated by another City inspector, before his becoming the City's Zoning Director.

Plaintiffs even agree that the City is entitled to take and should take enforcement action each and every time there is a City Code violation, and that such actions of the City are not retaliatory. *See* **Fuller Depo p. 255:12-19.** As this Court concluded in dismissing Plaintiffs' claims against Building Director, Marrero, the alleged conduct was not "so bad that case law is not needed

---

[15] *See* Pinilla Dep. 209:11; Fuller Dep. 47:24-48:5, 330:4-331:10; *see also Fuller I*, Def. Tr. Exs. 5, 6, 9-11, 13, 16, 24, 28-30, 32-34, 37, 39, 41, 43, 45, 63-80, 89, 90, 98, 100, 101, 111, 603, 604, 716, 719; DE 140-4 (DE 562 Tr. 5/11/23 (Fuller) 30:24-31:2, 186:13-187:6); *See* Fuller Dep. 330:4-331:10.

to establish that the conduct cannot be lawful." DE 199 at 11-12 (quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1350 (11th Cir. 2002)).

F.  **THERE IS NO TEMPORAL PROXIMITY BETWEEN THE ALLEGED PROTECTED SPEECH AND MR. GOLDBERG'S ACTS**

All of the purported protected speech was in 2017-2019. Mr. Goldberg did not become the Zoning Director until late spring 2021. This Court may "consider the temporal proximity between a plaintiff's exercise of free speech and the adverse effect in gauging the causal connection." *Innova In. Grp., LLC v. Vill. of Key Biscayne*, 2021 WL 1723678, *12 (S.D. Fla. Apr. 30, 2021).

The alleged retaliatory acts of Mr. Goldberg did not begin until before March 2021 when he became the City's Zoning Director. *See* SAC ¶ 87; **Fuller Depo p. 338:15-24, 339:16-24**. Plaintiffs do not blame Mr. Goldberg for alleged retaliation before that date. *See* **Fuller Depo p. 339:16-24**; **Pinilla Depo p. 276:18-277:9**. Plaintiffs contend that their instances of "speech" between 2017 and 2019 caused Mr. Goldberg to retaliate against them once he became the City's Zoning Director in 2021, even though he was not a City official when that "speech" took place and had no authority until many years later. Moreover, with respect to El Shopping, Plaintiff Pinilla stated that this entity has been targeted "for years by the City of Miami," failing to identify with any specificity the point at which any conspiracy formed or when animus developed therefrom, much less involving Mr. Goldberg. **Fuller Depo p. 390:17-391:15.**

Fuller even admits he has no direct evidence of any conduct of conversation *ever*, between Carollo and Mr. Goldberg with respect El Shopping. Fuller Depo p. 390:17-391:15; *Metz v. Sasser*, 664 Fed. Appx. 895, 897 (11th Cir. 2016) (holding that plaintiff's mother's accusations six months prior to termination were "too remote" to establish temporal proximity); *Innova*, 2021 U.S. Dist. LEXIS 83676, *13-14 (dismissing First Amendment retaliation claim where "the temporal proximity between the July 2018 'Help Me Howard' segment and Defendant's May 2019 denial

of Plaintiff's request for a second mitigation hearing—almost a year apart—is simply too attenuated to infer a causal connection."); *Smith v. Bell*, 2008 U.S. Dist. LEXIS 29014, *4 (S.D. Fla. Mar. 31, 2008) ("there can be no assumption that eighteen months after a police officer is called names by an arrestee, that the officer's alleged false testimony at a trial where a defendant is partially acquitted meets the causal connection requirement. There must be a greater temporal proximity or other evidence of a causal connection to link the protected conduct occurring 18 months prior to the adverse action, as would be the case is most retaliation type analyses.").

The SAC concedes, and Plaintiff Fuller corroborates, that code violations for which any property owner should reasonably expect enforcement action. In his deposition, Fuller stated the following:

> *Q: Is there anything else that you rely upon as evidence or facts to support a claim in the standing complaint that Mr. Goldberg harbored an animus against either you, your partner, meaning Mr. Pinilla, or El Shopping as a company or as a commercial property?*
>
> A: *Well, on several occasions, I approached Dan Goldberg and asked him why it was that a city policy was developed to revoke CUs on properties that had building violations, and I wanted to understand how there were other properties that we were aware of and businesses that had received the same type of violations that remained open.  And on at least three occasions he explained to me that where it was his task to issue letters to revoke CUs, it was not his responsibility to make sure that businesses were the closed so that, therefore, he washed his hands.*

**Fuller Depo p. 392:16-393:8**

Plaintiffs believe they are immune in perpetuity from complying with laws that apply to every other Miami property owner; that they are immune from enforcement and/or prosecution. Plaintiffs' admissions of their code violations and their execution of the compliance agreement – **Exhibit E** - bar any related § 1983 claim as to Mr. Goldberg.

G. **PLAINTIFFS CANNOT POINT TO ANY MOTIVE OR ANIMUS BY MR. GOLDBERG AGAINST THEM**

Mr. Goldberg harbored no animus to any plaintiff. **S.O.F. Ex 1, ¶ 12**. Plaintiffs present no evidence to create a genuine dispute as to Mr. Goldberg's motivations for doing his job in implementing and enforcing City policy. Moreover, Plaintiffs fail to identify a specific retaliatory motive for their retaliation claim as required by *Nieves*. At most, Plaintiffs can only *conclude* that Mr. Goldberg's actions came from a desire to do "Joe [Carollo]'s bidding" and that he operates "as an extension of…Joe Carollo" but rely on baseless, hearsay statements for which they have no personal or direct knowledge. **Fuller Depo p. 349:15-350:15**[16]**; Fuller Depo p. 390:10-13.** Plaintiffs' testimony as to "what everybody knows" and claiming that a fact is "common knowledge" violates Rule 602 of the Federal Rules of Evidence, is inadmissible hearsay, is a conclusion of the entire universe's state of mind and thus, is insufficient to carry their claims against Mr. Goldberg.[17] Rule 602 is all about laying a foundation and predicate as a pathway for admissible testimony, i.e., testimony must be based on personal knowledge not "common knowledge." El Shopping makes no factual allegation against Mr. Goldberg that subjects him to (individual) §1983 liability *based upon any personal knowledge* coming from Fuller or Pinilla.

We do not try cases on common knowledge, gossip and hearsay statements of unidentified representatives. *Evans v. McClain*, 131 F.3d 957 (11th Cir. 1997) ("The district court correctly dismissed this evidence as 'not significantly probative' because it was based on gossip, common

---

[16] "I know that. Most of the people in city hall know that. **That's common knowledge. That's what everybody knows.** That's why we're here, because he put this into motion. (*Id.*) (emphasis added)." Fuller Dep. 349:15-350:15.

[17] *See, e.g.*, *Evans v. McClain*, 131 F. 3d 957, 962 (11th Cir. 1997) ("The district court correctly dismissed this evidence as 'not significantly probative' because it was based on gossip, common knowledge, and the hearsay statement of an unidentified representative."); *Alexander v. U.S.*, 2022 U.S. App. LEXIS 34669, *15 (11th Cir. 2022) (affirming exclusion of "common knowledge" evidence, stating, "we don't try cases on rumors."); *Ashmore v. FAA*, 2011 U.S. Dist. LEXIS 133557, *20, n.4, 2011 WL 5433924 (S.D. Fla. Nov. 8, 2011) (court disregarded plaintiff's testimony that a fact was "common knowledge" as "inadmissible hearsay" and granted summary judgment against him). Inadmissible hearsay cannot be considered at summary judgment. *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999); *see also* 2/2/2024 Status Conference Transcript at 40:6-21 (in response to Plaintiffs' counsel statement that "everybody knew from years ago that this was just outright retaliation," Court admonished, "I can't deal with what everybody knew").

knowledge, and the hearsay statement of an unidentified representative."); *Alexander v. U.S.*, 2022 U.S. App. LEXIS 34669, *15 (11th Cir. 2022) (affirming exclusion of "common knowledge" evidence, stating, "we don't try cases on rumors."); *Ashmore v. FAA*, 2011 U.S. Dist. LEXIS 133557, *20, n.4, 2011 WL 5433924 (S.D. Fla. Nov. 8, 2011) (court disregarded plaintiff's testimony that a fact was "common knowledge" as "inadmissible hearsay" and granted summary judgment against him).

Also, inadmissible hearsay cannot be considered at summary judgment. *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999); *see also* 2/2/2024 Status Conference Transcript at 40:6-21 (in response to Plaintiffs' counsel statement that "everybody knew from years ago that this was just outright retaliation," the Court admonished, "I can't deal with what everybody knew"); see equally, *Alexander v. United States*, 2022 U.S. App. LEXIS 34669 (11th Cir. 2022). Accordingly, Mr. Goldberg's MTD should be granted. *See, e.g.*, *Nieves*, 587 U.S. at 408; *Castle*, 631 F.3d at 1199.

In short, neither Fuller, Pinilla or El Shopping have any testimony, document, letter, email, witness, or "cooperative witness" who can even suggest, much less allege that Mr. Goldberg acted in any retaliatory manner against any one or more of them. It is just not there.

## ADOPTION OF SPECIFIC, IDENTIFIED ARGUMENTS OF CERTAIN CO-DEFENDANT(S)

Mr. Goldberg argues without condition, limitations or modification, Section IV "This action is Barred by Res Judicated" in Victoria Menendez' Motion to Dismiss Supplement; and in Section I of Carollo's Motion to Dismiss Supplement.

## REQUEST FOR HEARING

Pursuant to Local Rule 7.1(b)(2), Goldberg requests a two-hour hearing on all motions to dismiss and alternative motions for summary judgment. The motion raises numerous complex issues and oral argument would be beneficial to address same.

## CONCLUSION

For all the good and sufficient reasons stated above, the Court should grant Defendant Daniel Goldberg's motion to dismiss with prejudice. Additionally, pursuant to Local Rule 7.1(b)(2), Daniel Goldberg respectfully requests oral argument on his motion to dismiss given the volume and complexity of the issues addressed herein. Daniel Goldberg respectfully requests that this Court grant his Motion to Dismiss Plaintiffs' Complaint with prejudice, award Defendant's attorneys' fees pursuant to 42 U.S.C. § 1988(b), and grant such other and further relief as this Court deems just, equitable, and proper.

Dated: February 26, 2025

Respectfully submitted:

s/ Richard J. Diaz

Richard J. Diaz, Esq.
3127 Ponce De Leon Blvd.
Coral Gables, FL  33134
Telephone: (305) 444-7181
Facsimile: (305) 444-8178
F.B.N. 0767697

**<u>CERTIFICATE OF SERVICE</u>**

      I certify that on February 26, 2025, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify that this document is being served today on all counsel of record by transmission of Notices of Electronic Filing generated by CM/ECF.

      s/ Richard Diaz

      _____

      Richard J. Diaz, Esq.

26