UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 23-24251-CIV-MORENO

WILLIAM O. FULLER, et al.,

    Plaintiffs,

vs.

VICTORIA MENDEZ,

    Defendant.

_____/

## ORDER GRANTING DEFENDANT VICTORIA MENDEZ'S MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT (ECF 245)

In 2017, Plaintiffs William Fuller and Martin Pinilla supported Joe Carollo's opponent in a run-off election for Carollo's seat on Miami's City Commission. Carollo won the election and assumed his current post as Commissioner for District 3, which encompasses several neighborhoods including Little Havana, where Plaintiffs owned businesses. After defeating his challenger, Carollo allegedly sought retribution against Fuller and Pinilla, carrying out a public campaign of retaliation against them and their businesses. This spurred years of litigation in state and federal court, including a jury trial where Plaintiffs obtained a $63.5 million judgment against Carollo in Case No. 18-24190-CIV-SMITH ("*Fuller I*"). This case is just the latest installment in that saga.

Fuller and Pinilla own several businesses in the Little Havana neighborhood and around Miami. Together with a group of entities they own, they sued Carollo, the City of Miami, former City Attorney Victoria Mendez, City Manager Arthur Noriega, and several other current and former City officials. The Court dismissed the first two iterations of Plaintiffs' complaint for

violating Rule 8 of the Federal Rules of Civil Procedure. Plaintiffs' third complaint, the operative complaint, named eleven defendants. Plaintiffs brought claims under 42 U.S.C. § 1983 for First Amendment retaliation and claims for civil conspiracy against each Defendant.

Most Defendants were subsequently dismissed by order of the Court or voluntarily by Plaintiffs. Pursuant to a settlement agreement reached in *The Mad Room LLC, et al. v. The City of Miami*, No. 21-23485-CIV (S.D. Fla. 2021), Plaintiffs agreed to drop the civil conspiracy counts and certain Plaintiffs from this suit; the Court entered a dismissal order. Now, only three defendants remain: the City of Miami, former City Attorney Victoria Mendez, and City Manager Arthur Noriega.

Defendant Mendez filed a motion to dismiss Plaintiffs' third complaint ("Second Amended Complaint"), seeking dismissal on several grounds. After a hearing on this motion and others, the Court ordered the parties to "participate in limited discovery to assist with narrowing the issues in this case and to help the Court resolve the pending motions to dismiss, particularly the issues involving defenses of immunity." In that order, the Court permitted the parties to depose each other and "supplement the pending motions to dismiss and convert them into motions for summary judgment, if appropriate." However, the Court instructed the parties not to exchange written discovery "in view of all the information already available due to the 7-week trial [in *Fuller I*]."

Consistent with that order, Mendez filed the instant supplement to her motion to dismiss and motion for summary judgment. The Court denied Mendez's original motion to dismiss—which raised the same arguments—as "subsumed in Mendez's supplemental motion to dismiss and alternative motion for summary judgment." The Court then held another hearing on Mendez's motion, on April 21, 2025, during which the Court instructed Mendez to depose former City

Commissioner Ken Russell and former City Manager Emilio Gonzales. Mendez did so, and she and Plaintiffs later filed supplemental briefing.

In the present motion, Mendez argues that she is immune from suit under the doctrines of absolute and qualified immunity. After careful review of the parties' briefing and the record in this case, the Court agrees with Mendez that she is shielded from Plaintiffs' claims by absolute and qualified immunity. The Court also agrees with Mendez that certain counts must be dismissed because they fail to allege any wrongdoing.

## I. LEGAL STANDARD

On a motion for summary judgment, if the court concludes "that there is no genuine dispute as to any material fact," summary judgment must be entered. Fed. R. Civ. 56(a). A motion for summary judgment looks to "assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation modified) (citation omitted). "[S]ummary judgment will not lie if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmoving party must offer more than a mere "scintilla of evidence" to defeat summary judgment. *Id.* at 252. In this vein, "[i]f the non-movant . . . fails to adduce evidence which would be sufficient . . . to support a jury finding for the non-movant, summary judgment may be granted." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1370 (11th Cir. 1997) (citing *id.* at 254–55).

The court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party . . . and must resolve all reasonable doubts about the facts in favor of the non-movant." *Rioux v. City of Atlanta*, 520 F.3d 1269, 1274 (11th Cir. 2008) (citation modified). But this favorable view extends only as far as a reasonable jury would go with resolving factual disputes. *See Anderson*, 477 U.S. at 248. "Unsupported,

conclusory allegations that a plaintiff suffered a constitutionally cognizant injury are insufficient to withstand a motion for summary judgment." *Howard v. Memnon*, 572 F. App'x 692, 695 (11th Cir. 2014) (citation omitted).

## II.   ANALYSIS

### A. *Counts 19, 71, 85, and 99 Are Dismissed Because They Do Not Adequately Allege Actionable Conduct*

At the outset, the Court dismisses Counts 19, 71, 85, and 99 because Plaintiffs failed to adequately identify Mendez's unlawful conduct. None of these counts provide Mendez with "adequate notice of the claims against [her] and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1322 (11th Cir. 2015). Instead, they are "replete with conclusory, vague, and immaterial facts." *Id.*

### B. *Defendant Mendez Is Entitled to Absolute Prosecutorial Immunity*

"A prosecutor is entitled to absolute immunity for all actions [s]he takes while performing his function as an advocate for the government." *Rivera v. Leal*, 359 F.3d 1350, 1353 (11th Cir. 2004) (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)). "The prosecutorial function includes the initiation and pursuit of criminal prosecution, . . . and most appearances before the court, including examining witnesses and presenting evidence." *Id.* (citations omitted); *see also Jones v. Cannon,* 174 F.3d 1271, 1281 (11th Cir. 1999) ("[A]bsolute immunity extends to a prosecutor's acts undertaken in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State." (citation modified) (citations omitted)). This immunity extends also to "agency officials performing certain functions analogous to those of a prosecutor," such as to attorneys initiating administrative proceedings. *Butz v. Economou*, 438 U.S. 478, 515 (1978).

Mendez argues that certain allegations in Plaintiffs' third complaint must be dismissed because the actions Mendez purportedly carried out are barred by prosecutorial immunity. The relevant allegations are:

- Spending over $15 million in legal fees seeking to bankrupt Plaintiffs, and authorizing filing of a frivolous civil RICO claim against Plaintiffs.

- Defending the City of Miami in "frivolous litigation" against Plaintiff Calle Siete.

- Filing for an injunction.

- Revoking the certificates of use for El Shopping and LHAB pursuant to a city ordinance.

- Fabricating a complaint to indefinitely prevent Viernes Culturales from obtaining a permit.

- Working to target Havana Bungalows by undermining its ability to go to the Code Enforcement Board and appeal its citations (through Assistant City Attorney Rachel Dooley).

Mendez cites to the City of Miami Charter, which lays out the scope of the City Attorney's duties. The City Attorney is the legal advisor to the City, as well as to its officers and departments. Charter, Subpart A, § 21. The City Attorney shall prosecute and defend all suits on behalf of the City, prosecute all cases brought in municipal court, and "[w]hen required to do so by the resolution of the city commission, the city attorney shall prosecute or defend for and in behalf of the city all complaints, suits and controversies in which the city is a party, and such other suits, matters and controversies as he shall, by resolution or ordinance, be directed to prosecute or defend." *Id.* The Court agrees with Mendez that these allegations implicate her prosecutorial functions that she exercised in her official role as City Attorney.

Plaintiffs do not specifically address these allegations or Mendez's arguments on prosecutorial immunity. They argue simply that Mendez should not receive "absolute immunity

5

merely based on her title as City Attorney." Opp'n., ECF 260, at 7–8. But this misses the mark. Mendez's arguments for prosecutorial immunity do not rise and fall solely on the basis of her title. Instead, she points to specific allegations in Plaintiffs' third complaint and explains—while analogizing to case law—how these acts trigger absolute immunity. Mendez also points to the deposition testimony of Plaintiffs Fuller and Pinilla. *See* Fuller Tr., ECF 235-1; Pinilla Tr., ECF 235-2. During these depositions, Fuller and Pinilla confirmed that their claims against Mendez rest in part on what the Court—not Fuller or Pinilla—deems prosecutorial acts. *See, e.g.,* Fuller Tr., 159:4–9 (initiating legal proceeding), 166:23–167:16 (filing motions in legal proceeding); Pinilla Tr., 182:9–13 (Plaintiff Beatstik's damages stem from defending itself in litigation). This tracks the above allegations. Bringing a civil RICO claim, defending the City in litigation, representing the City in administrative proceedings—these are all clearly within the ambit of what absolute prosecutorial immunity is designed to protect.

Plaintiffs caution that if Mendez receives absolute immunity for these acts, then "every corrupt government official could be similarly characterized in broad terms as supposedly 'integral' to the . . . adjudicatory process and no constitutional claim could ever succeed." Opp'n. at 7. To the contrary, granting Mendez absolute immunity for these alleged acts "serves the policy of protecting the judicial process." *Burns v. Reed,* 500 U.S. 478, 492 (1991). It is imperative that a city attorney be free to carry out her duties without fear that faithfully doing so may "provoke a retaliatory response" and somehow trigger personal liability. *Butz,* 438 U.S. at 515.

### C. Defendant Mendez Is Entitled to Absolute Legislative Immunity

"Absolute legislative immunity attaches to all actions taken 'in the sphere of legitimate legislative activity.'" *Bogan v. Scott-Harris,* 523 U.S. 44, 54 (1998) (quoting *Tenney v. Brandhove,* 341 U.S. 367, 372 (1951)). It is the "nature of the act"—not "the motive or intent of

6

the official performing it"—which determines whether a defendant enjoys such immunity. *Id.* A legislative act is one that is an "integral step[] in the legislative process." *Id.* (citations omitted). "[O]fficials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." *Id.* at 55.

Plaintiffs allege throughout their third complaint that Mendez "helped architect" city ordinances, which were later used to selectively target Plaintiffs. Mendez argues that she is absolutely immune from liability flowing from this alleged conduct. She points the Court to *Beach Blitz Co. v. City of Miami Beach* for guidance. *See* 2018 WL 11260453 (S.D. Fla. Feb. 5, 2018). There, the court concluded that because the plaintiff alleged that the city attorney's office "assisted in the process of passing the ordinances by preparing and revising the drafts," the officials were absolutely immune because they performed legislative functions integral to the legislative process. *Id.* at *4 n.16 (citing *Bogan*, 522 U.S. at 55).

Plaintiffs argue that *Bogan v. Scott-Harris* requires something more for legislative immunity than merely playing a role in passing ordinances. Opp'n. at 7. Plaintiffs are correct in their interpretation of that case. Nevertheless, the allegations here are sufficiently similar to the allegations levied against the city attorney's office in *Beach Blitz*. Like the court concluded there, this Court has little trouble concluding that Mendez is entitled to absolute legislative immunity for her alleged participation in the legislative process. Plaintiffs cannot avoid this result by resting on their vaguely worded allegations, in lieu of offering evidence to establish that Mendez's role was insufficient to trigger absolute immunity.

In one final attempt at evading legislative immunity, Plaintiffs contend that the allegations against Mendez primarily challenge her implementation or enforcement of the law, rather than her enactment of the law. But this ignores the language Plaintiffs chose—"architect." And it is belied

7

by Pinilla's testimony (*see* Pinilla Tr., 159:7–11 ("architecting . . . means crafting. It means concocting. It means building. It means devising. It means all of those things.")), and Fuller's admissions that Plaintiffs seek to hold Mendez liable for her role in the legislative process. *See, e.g.*, Fuller Tr., 21:12–14, 49:5–15, 175:12–21, 202:8–203:2, 234:11–16.

### D. Defendant Mendez Is Entitled to Qualified Immunity

The remainder of Mendez's alleged acts are barred by qualified immunity. Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights." *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009) (citation modified) (citation omitted). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation." *Bldg. Empowerment by Stopping Trafficking, Inc. v. Jacobo*, 2013 WL 5435729, at *1 (S.D. Fla. Sept. 27, 2013) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

To establish this defense, the government official must first demonstrate that she "was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991) (citation modified) (citations omitted). If she was, the burden then shifts to the plaintiff to show that qualified immunity is inappropriate. *See Lee*, 284 F.3d at 1194 (citation omitted). To defeat qualified immunity, the plaintiff must establish (1) the government official violated a constitutional right; and (2) the right

was clearly established at the time of the alleged violation. *See Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010) (citations omitted).

### *1. Discretionary Function*

A government official acts within her discretionary function when she is pursuing a job-related goal through means that are within her power to utilize. *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004). "The inquiry is *not* whether it was within the defendant's authority to commit the allegedly illegal act." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998) (emphasis added). Rather, the question is "whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties." *Id.* Courts must "look to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." *Holloman*, 370 F.3d at 1266.

Mendez must first establish that her alleged acts fall within her discretionary function as City Attorney. Beyond the acts discussed above, the only other conduct Plaintiffs allege in the live counts against Mendez is: (1) Mendez "tried to postpone and cancel" votes by the Code Enforcement Board on Plaintiffs' historic designation status; (2) at Carollo's behest, "Mendez researched Viernes Culturales to determine its association with Bill Fuller and whether there was any way, through the City's permitting process, that Carollo could take over the Friday event and destroy Viernes Culturales;" and (3) Mendez "circulat[ed] a list of properties and property owners related to Fuller and Pinilla." Second Amended Complaint ¶¶ 881–85, 1375–76, 1946, 2114, 2735.

Plaintiffs offer declarations by Fuller and Pinilla, which were created after they were deposed by Defendants, consistent with the Court-authorized limited discovery in this case. Both

9

attest to being "informed" in June 2022 "that Noriega and Mendez spoke directly with Anna Pernas to attempt to delay or stop the City's historic designation on our properties." Sidestepping the hearsay issue, the Court will not consider these late-game declarations, especially when Plaintiffs already conceded that Mendez did not cause any delays to the historical designation votes.

Bearing directly on the only remaining allegations—those identified in (2) and (3) above—Plaintiffs offer email chains showing that Mendez did indeed circulate a list of properties on February 20, 2019, asking for "assistance" in carrying out a City Commission resolution which directs her to "research properties described at the February 14, 2019 City Commission Meeting." ECF 259-22; ECF 259-24; ECF 259-26. During the April 21, 2025 motion hearing, Plaintiffs' counsel proffered that Mendez told Emilio Gonzalez and Ken Russell that she was "add[ing] like one or two other properties" to "the list of primarily Fuller properties" "so it would look like they were not only [targeting] Fuller properties." Hrg. Tr., ECF 330, 47:16–23. There is only one Plaintiff (Calle Ocho) in one count (Count 91) that mentions anything about Mendez circulating this list. There are no allegations anywhere that Mendez added properties to the February 20, 2019, list to mask what this list really was—a hit list of Fuller's properties; an instrument for Carollo's revenge. Moreover, Plaintiffs did not raise this issue in their opposition to the instant motion. It is apparent that the sources from which Plaintiffs derived that proffer have long been in Plaintiffs' possession. In other words, Plaintiffs already had the relevant information. They should have alleged this in their third complaint, or, at the very least, they should have raised it well before the April 2025 hearing, after summary judgment briefing had already concluded. For this reason, the Court accepts Mendez's call to disregard this eleventh-hour amendment. *See Akai Custom Guns, LLC v. KKM Precision, Inc.*, 707 F. Supp. 3d 1273, 1295 n.7 (S.D. Fla. 2023)

("Plaintiffs cannot attempt to raise new claims or plead new allegations on summary judgment.") (citation omitted).

Mendez argues that she was acting within her discretionary function because at all relevant times she was executing her duties as City Attorney, and these acts were within her discretionary authority. Mendez again points to the City Charter, which, as highlighted above, outlines the City Attorney's role. *See* Charter, Subpart A, § 21. The Charter names the City Attorney as the City's legal advisor and counsel, as well as the "prosecuting attorney in municipal court." *Id.* The Charter also provides that "[w]hen required to do so by the resolution of the city commission, the city attorney shall prosecute or defend for and in behalf of the city all complaints, suits and controversies in which the city is a party, and such other suits, matters and controversies as he shall, by resolution or ordinance, be directed to prosecute or defend." *Id.* Additionally, city officials including the mayor, city commissioners, and city manager "may require the opinion of the city attorney upon any question of law involving their respective powers and duties." *Id.*

Plaintiffs challenge Mendez's claim that she was acting within her discretionary function. They cite provisions of the Miami-Dade County Citizens' Bill of Rights, as incorporated into the City Charter. *See* Charter, Citizens' Bill of Rights. The provisions Plaintiffs offer state:

- The City of Miami Charter is the Constitution of the City of Miami and the City shall abide by all of its express provisions.

- The City shall not interfere with the rights: (i) of freedom of speech; (ii) of freedom of the press; (iii) to petition the government, or (iv) to peaceable assembly.

- The City shall not, directly or indirectly, discriminate among persons because of race, color, creed, religion, sex, domestic relationship status, parental status, familial status, sexual orientation, national origin, political affiliation, gender identity and expression, or racial profiling.

11

*Id.* §§ (A)(1), (A)(3), (A)(5). While these provisions are relevant inasmuch as Plaintiffs allege violations of their First Amendment rights, they are no help to Plaintiffs in establishing that Mendez acted outside of her discretionary authority.

Plaintiffs also argue that Mendez provides no evidence of the authority she had to lead an investigative task force on code compliance. But Mendez laid this to rest by pointing to the City Commission resolutions that do just that. *See* City of Miami Resolution R-19-0118 (creating the task force on code compliance and naming the City Attorney "as legal counsel to the Task Force" and directing her to "provide legal advice on all matters considered by the Task Force"); City of Miami Resolution R-19-0072, ECF 297-1 (directing the City Attorney "to research properties described at the February 14, 2019 City Commission meeting . . . regarding violations related to no certificate of use, certificate of use obtained under false pretenses, and/or properties with violations that pose life-safety issues and initiate injunctive proceedings against said properties until the properties are brought into compliance").

Plaintiffs declined to depose Mendez. Without pointing to any evidence themselves relevant to the remaining allegations, Plaintiffs resort to asserting that "[c]arrying out a campaign of political retaliation aiming to shut down dozens of businesses in the City on behalf of Joe Carollo can never be within the discretionary authority of any City official." Opp'n. at 11. However, as Mendez highlights, the question is whether the acts "if done for a proper purpose" are "within, or reasonably related to, the outer perimeter of" Mendez's authority. *O'Boyle v. Sweetapple*, 2015 WL 13574304, at *11 (S.D. Fla. June 4, 2015). The Court concludes that there is no genuine dispute of material fact that Mendez was acting within her discretionary function with respect to each of her remaining alleged acts.

## 2. *Clearly Established Constitutional Right*

Having determined that Mendez was acting within her discretionary function, the burden now shifts to Plaintiffs to overcome her qualified immunity. *See Echols v. Lawton*, 913 F.3d 1313, 1319 (11th Cir. 2019) (citation omitted). To do this, Plaintiffs must show that the right allegedly violated was clearly established. *Foy v. Holston*, 94 F.3d 1528, 1532 (11th Cir. 1996) (citation omitted). This burden is not easily discharged. "For a constitutional right to be clearly established, its contours []must be sufficiently clear that a reasonable official would understand that what [s]he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). "[T]he Supreme Court has long ruled that qualified immunity protects a badly behaving official unless [s]he had fair notice that his conduct would violate the Constitution." *Echols*, 913 F.3d at 1325 (citations omitted).

The Eleventh Circuit has identified three ways in which a plaintiff may show that a right is clearly established:

> (1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law.

*Perez v. Suszczynski*, 809 F.3d 1213, 1222 (11th Cir. 2016) (citation omitted). Thus, to demonstrate that Mendez had fair notice that her actions violated the Constitution, Plaintiffs must show that one of these is met. However, even if Plaintiffs demonstrate that a clearly established right may be at stake, the Court must nevertheless examine whether Mendez's conduct was objectively reasonable in light of that clearly established right. *See Rioux*, 520 F.3d at 1283 (citation omitted).

13

### a. *Case Law*

Both sides acknowledge that "since at least 1988" it has been "settled law" in the Eleventh Circuit that "the government may not retaliate against citizens for the exercise of First Amendment rights." *Bennett v. Hendrix*, 423 F.3d 1247, 1256 (11th Cir. 2005) (citation omitted). Plaintiffs point to several cases they claim illustrate that Plaintiffs' right was clearly established.

***Fuller I.*** In *Fuller I*, Carollo was the defendant, not Mendez. Plaintiffs aver that because the Eleventh Circuit rejected Carollo's qualified immunity in that case, "the same analysis of the same arguments attacking the same allegations of the same violations of the same clearly established rights at issue can only lead to the same outcome in this case." Opp'n. at 12. As the Court reasoned in its order dismissing all claims against Defendant Asael Marrero, whether Carollo and Mendez violated a clearly established constitutional right are different inquiries because the two had different roles. *See* ECF 199 at 9. Plaintiffs' position is emblematic of the issues that plagued the first two versions of Plaintiffs' complaint (and, though to a lesser extent, the third version)—they did not break down and separate out each individual Defendant and specify the alleged wrongful conduct attributed to each. Carollo's qualified immunity ruling in another case cannot be imputed to Mendez in this case.

***Bennett v. Hendrix.*** In *Bennett*, the plaintiffs supported a referendum which would have diminished the power of the sheriff's department. 423 F.3d at 1248. The sheriff opposed the referendum, and it was defeated at the polls. *Id.* at 1249. The plaintiffs alleged that the sheriff and his officers later retaliated against them by taking down vehicle license plate numbers of cars at a forum in support of the referendum, surveilling the plaintiffs' homes and businesses, setting up roadblocks near the plaintiffs' homes and stopping their cars without reason, issuing baseless traffic citations, accessing government databases to secure confidential information about the

plaintiffs, attempting to obtain baseless warrants for their arrest, and mailing disparaging flyers about the plaintiffs to 35,000 homes in the county. *Id.* The Court affirmed denial of qualified immunity for these police officer defendants in view of a record "replete" with troubling conduct. *Id.* at 1254. Mendez's alleged conduct hardly stands up to these allegations. Unlike these officers who were acting well outside their sworn duties to serve and protect, Mendez was executing her authority as City Attorney as delegated to her by the City Charter and City Commission resolutions.

***Bailey v. Wheeler.*** In *Bailey*, the plaintiff appealed his termination, believing that he was let go for speaking out against the police department's profiling practices, other unconstitutional conduct, and racist remarks. 843 F.3d 473, 479 (11th Cir. 2016). That same night, two officers tailed the plaintiff's car, followed him into his intended destination, and stared him down. *Id.* Most serious of all, the officer defendant issued a BOLO (i.e., "Be on the Lookout") notice with the plaintiff's photograph and a message that he is a "loose cannon and should be considered a danger to law enforcement. *Id.* The Eleventh Circuit affirmed denial of qualified immunity for the officer defendant. *Id.* at 486. *Bailey*, involving legitimate threats to the plaintiff's personal safety, is much unlike this case, where the remaining allegations against Mendez do not suggest that Mendez physically intimidated or harassed Plaintiffs.

***Espanola Way v. Meyerson.*** In *Espanola Way*, the Eleventh Circuit declined to extend qualified immunity to the city commissioner defendants for several reasons, including that the defendants did not properly raise the defense, the factual record was insufficiently developed at that stage, and the commissioner defendants' alleged conduct fell outside the scope of their discretionary authority. *See* 690 F.2d 827, 830 (11th Cir. 1982). *Espanola Way* bears no meaningful resemblance to this case.

Though the burden rests with Plaintiff to furnish a sufficiently similar case, Mendez offers her own. She cites *Rehberg v. Paulk*, 611 F.3d 828 (11th Cir. 2010)) for the proposition that the "right to be free from a retaliatory investigation is not clearly established." *Shiver v. City of Homestead, Fla.*, 2021 WL 5174526, at *9 (S.D. Fla. Oct. 4, 2021) (citation omitted) (citing *id.* at 850–51).

In *Rehberg*, the Eleventh Circuit started by pointing out that "only qualified immunity, not absolute immunity, applies to conduct taken in an investigatory capacity as opposed to a prosecutorial capacity." 611 F.3d at 850. The panel held that even "assum[ing] [the plaintiff] has stated a constitutional violation by alleging that [the district attorney defendant] initiated an investigation and issued subpoenas in retaliation for [the plaintiff's] exercise of First Amendment rights, [the attorney] still receive[s] qualified immunity because [the] right to be free from a retaliatory investigation is not clearly established." *Id.* at 850–51. This is because "[t]he Supreme Court has never defined retaliatory investigation, standing alone, as a constitutional tort, . . . and neither has [the Eleventh Circuit]." The Court agrees with Mendez that this case is most applicable of all the cases the parties collectively identify. After all, Plaintiffs remaining allegations against Mendez implicate what Plaintiffs construe as retaliatory investigation.

### b. General Principle

Second, Plaintiffs try their hand at identifying a general principle that should control these facts. "The principle must be established with obvious clarity by the case law so that every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted." *Loftus v. Clark-Moore*, 690 F.3d 1200, 1205 (11th Cir. 2012) (citation modified) (citation omitted). Plaintiffs maintain that the Eleventh Circuit has "reaffirm[ed] that clearly established law that prohibits government officials from

facilitating a 'campaign of petty harassments' and 'engaging the punitive machinery of government in order to' engage in First Amendment retaliation and 'to punish plaintiffs for speaking out.'" Opp'n. at 12 (quoting *Bailey*, 843 F.3d at 484). But this is not a general principle. It is a concoction of individual holdings from cases that the Eleventh Circuit used to decide "*Bennett* and the broad principle it establishes." *Bailey*, 843 F.3d at 484–85.

The general principle that *Bennett* establishes (and which *Bailey* applied) cannot control our facts because both cases involved law enforcement officers; the Eleventh Circuit reasoned that this is of particular import. *See id.* at 485 ("Law-enforcement officers are sworn to protect and defend the lives of others. It is completely antithetical to those sworn duties for a law-enforcement officer to use his position to harness the power of an entire county's law-enforcement force to teach a lesson to—and potentially very seriously endanger—someone who had the temerity to speak up about alleged abuses."). Mendez was exercising her duties as City Attorney—researching Plaintiffs' properties and disseminating a list of Plaintiffs' properties that are potentially in violation of City code—which the City Commission's resolutions required her to do. The Court cannot conclude that every reasonable government official in Mendez's position would be on notice that she is clearly violating Plaintiffs' constitutional rights in doing so.

### c. *Egregious Conduct*

Finally, Plaintiffs argue that even if there is no case law on point, Mendez's conduct was so outrageously unconstitutional that qualified immunity does not shield her from personal liability. For support, they offer statements of other government officials.

- February 21, 2019, email from former Deputy City Manager Joe Napoli to former City Manager Emilio Gonzalez expressing concerns "that what the City Attorney is directing our staff to do is beyond what was directed by the Commission and can be interpreted as targeting businesses." ECF 259-22 at 1.

- February 21, 2019, email from former Chief of Police Jorge Colina to Gonzalez expressing his "concern regarding the city attorney's request for assistance in carrying out a resolution passed last week at the February 14, 2019 commission meeting." Specifically, "the addresses forwarded in [Mendez's] email targets the particular business owner which gives the impression that the city is selectively targeting his businesses for new investigations." Colina concluded that "this is selective enforcement against the business owner's properties using city ordinances." ECF 259-24 at 1.

- February 21, 2019, email from Assistant City Manager Zerry Ihekwaba to Gonzales and other City officials, expressing concerns—"[w]e ought to be enforcing the Cody citywide and not just targets." ECF 259-26 at 1.

- Emilio Gonzalez testified that he agreed with Napoli, Colina, and Ihekwaba's assessments. *See Fuller I* Trial Tr., ECF 265-64, 48–52.

- Declaration of Steven Miro, former "campaign manager/consultant" to Joe Carollo and "District Liaison." Miro declared that during his time working for Joe Carollo, he "observed Mr. Carollo's significant influence over the City Attorney's Office, and his close relationship with City Attorney Victoria Mendez, which allowed him to effectuate those policies throughout the City. Carollo was the controlling vote in the City Commission to keep Ms. Mendez as the City Attorney, despite other[] Commissioners not supporting her." ECF 259-38 ¶ 5.

- Former Chief of Police Art Acevedo testified that he reported "Carollo's conduct" to the FBI Field Office, the Assistant United States Attorney, and the United States Assistant Attorney General in the Civil Rights Division in Washington, D.C. Acevedo testified that the mayor and City Manager were aware of his reports. *Fuller I* Trial Tr., ECF 259-65, 167:12–169:7.

These statements are insufficient to defeat qualified immunity. For starters, the part of Acevedo's testimony that Plaintiffs cite does not even mention Mendez; the question directed to Acevedo was: "Did you report Defendant Carollo's conduct to the Department of Justice?" *Id.* at 167:12–13. To which Acevedo responded "[y]es," and he proceeded to list the entities and individuals to whom he made these reports. *Id.* at 167:17–168:7. The opinions of Napoli, Colina, Ihekwaba, and Gonzalez are just that—opinions. And they were offered in response to Mendez circulating the list of properties in her February 20, 2019, emails. Mendez circulated this list

18

pursuant to City Resolution R-19-0072, which required her to "research properties described at the February 14, 2019 City Commission meeting."

The Court concludes that Mendez's conduct is not "so egregious" such that she should have been on notice, even without case law, that she was clearly violating Plaintiffs' constitutional rights by exercising her role as City Attorney or her delegated authority under City Commission resolutions. *Suszczynski*, 809 F.3d at 1222 (citation omitted). Mendez's "conduct [is not] so bad that case law is not needed to establish that the conduct cannot be lawful." *Vinyard v. Wilson*, 311 F.3d 1340, 1350 (11th Cir. 2002).

In sum, Plaintiffs have not shown that Mendez violated their clearly established constitutional rights. It is not clear that every objectively reasonable government official in Mendez's position would know that she was clearly violating Plaintiffs' First Amendment rights. The doctrine of qualified immunity, therefore, immunizes Mendez from personal liability with respect to the allegations of Mendez's investigative retaliation.

### III. CONCLUSION

For the reasons outlined above, the Court concludes that Defendant Victoria Mendez is immune from Plaintiffs' claims under the doctrines of absolute prosecutorial and legislative immunity, as well as qualified immunity. Even viewing the evidence presented in the light most favorable to Plaintiffs, resolving all reasonable doubts in their favor, Mendez is entitled to summary judgment. Accordingly, it is

**ADJUDGED** that Defendant Victoria Mendez's Supplemental Motion to Dismiss and Motion for Summary Judgment **(ECF 245)** is **GRANTED**. All claims against Victoria Mendez are dismissed.

DONE AND ORDERED in Chambers at Miami, Florida, this 15th of September 2025.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record